CLOSED, JURYDEMAND

# U.S. District Court
## WESTERN DISTRICT OF WASHINGTON (Seattle)
## CIVIL DOCKET FOR CASE #: 2:05-cv-01137-RSM
## Internal Use Only

Amazon.com Inc et al v. Cendant Corporation et al
Assigned to: Hon. Ricardo S Martinez
Cause: 35:271 Patent Infringement

Date Filed: 06/22/2005
Jury Demand: Plaintiff
Nature of Suit: 830 Patent
Jurisdiction: Federal Question

**Plaintiff**

**Amazon.com Inc**                    represented by    **C J Alice Chen**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500
Fax: 650-938-5200
Email: AChen@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren E Donnelly**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500
Email: ddonnelly@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Thomas McDonald**
PRESTON GATES & ELLIS (SEA)
925 FOURTH AVE
STE 2900
SEATTLE, WA 98104-1158
206-623-7580
Fax: FAX 224-7095
Email: davidm@prestongates.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hector Ribera**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500

Fax: 650-938-5200
Email: HRibera@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J David Hadden**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500
Fax: 650-494-0600
Email: dhadden@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lynn H Pasahow**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500
Email: lpasahow@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy L Bjerkness**
FENWICK & WEST (MT VIEW)
801 CALIFORNIA ST
MOUNTAIN VIEW, CA 94041
650-988-8500
Fax: 650-938-5200
Email: wbjerknes@fenwick.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**A9.com Inc**                    represented by **C J Alice Chen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Darren E Donnelly**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Thomas McDonald**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hector Ribera**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J David Hadden**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lynn H Pasahow**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy L Bjerkness**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Cendant Corporation**                     represented by     **Douglas E Olson**
PAUL HASTINGS JANOFSKY &
WALKER (SD)
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130
858-720-2500
Fax: 858-720-2555
Email: dougolson@paulhastings.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
PAUL HASTINGS JANOFSKY &
WALKER (SD)
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130
858-720-2500
Fax: 858-720-2555
Email: jamesfazio@paulhastings.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
GRAHAM & DUNN
2801 ALASKAN WAY
STE 300 PIER 70
SEATTLE, WA 98121-1128

206-624-8300
Fax: FAX 340-9599
Email: mfandel@grahamdunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
PAUL HASTINGS JANOFSKY &
WALKER (SD)
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130
858-720-2500
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
GRAHAM & DUNN (SEA)
2801 ALASKAN WAY
STE 300 PIER 70
SEATTLE, WA 98121-1128
206-340-9386
Email: cleffler@grahamdunn.com
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
GRAHAM & DUNN
2801 ALASKAN WAY
STE 300 PIER 70
SEATTLE, WA 98121-1128
206-624-8300
Fax: 206-340-9599
Email: dbyers@grahamdunn.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Trilegiant Corporation**                    represented by **Douglas E Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Orbitz LLC**                    represented by   **Douglas E Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Orbitz Inc**                    represented by   **Douglas E Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Budget Rent A Car System Inc**                represented by **Douglas E Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Avis Rent A Car System Inc**                    represented by  **Douglas E Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James V Fazio, III**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kent Michael Fandel**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Stephen S Korniczky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Cristofer Ivan Leffler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**David Mark Byers**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 06/22/2005 | 🔵1 | COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL against defendant(s) Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc (Summons(es) issued) (Receipt # 411866) , filed by Amazon.com Inc, A9.com Inc. (Attachments: # 1 Exhibit 1 Patent No. 5,715,399# 2 Exhibit 2 Patent No. 6,029,141# 3 Exhibit 3 Patent No. 6,629,079# 4 Exhibit 4 Patent No. 6,625,609# 5 Civil Cover Sheet)(PM, ) (Entered: 06/24/2005) |
| 06/28/2005 |   | **NON-PUBLIC** ***Staff notes Preassignment of Judge Theiler in the event of consent. (PM, ) (Entered: 06/28/2005) |
| 06/28/2005 | 🔵2 | SERVICE OF SUMMONS and Complaint returned executed upon defendant Trilegiant Corporation on 6/23/2005; Orbitz LLC on 6/23/2005; Orbitz Inc on 6/23/2005 (RS, ) (Entered: 06/29/2005) |
| 06/29/2005 | 🔵3 | SERVICE OF SUMMONS and Complaint returned executed upon defendant Avis Rent A Car System Inc on 6/23/2005 (Attachments: # 1 return of service of summons executed upon Budget Rent a Car System on 6/23/05)(RS, ) (Entered: |

| | | |
|---|---|---|
| | | 07/01/2005) |
| 06/30/2005 | 🌐4 | SERVICE OF SUMMONS and Complaint returned executed upon defendant Cendant Corporation on 6/23/2005 (RS, ) (Entered: 07/01/2005) |
| 07/06/2005 | 🌐5 | NOTICE of Appearance by attorney Kent Michael Fandel on behalf of Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc (Fandel, Kent) (Entered: 07/06/2005) |
| 07/06/2005 | | ***Attorney David Mark Byers for Cendant Corporation; Trilegiant Corporation; Orbitz LLC; Orbitz Inc; Budget Rent A Car System Inc and Avis Rent A Car System Inc, Cristofer Ivan Leffler for Cendant Corporation; Trilegiant Corporation; Orbitz LLC; Orbitz Inc; Budget Rent A Car System Inc and Avis Rent A Car System Inc added. (VB, ) (Entered: 07/08/2005) |
| 07/11/2005 | 🌐6 | REPORT on the filing or determination of an action. E-mailed to the US Patent Office. (MKB) (Entered: 07/11/2005) |
| 07/11/2005 | 🌐7 | REPORT on the filing or determination of an action. E-mailed to the US Patent Office. (MKB) (Entered: 07/11/2005) |
| 07/20/2005 | 🌐8 | APPLICATION by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc AND ORDER admitting Stephen S Korniczky for Cendant Corporation; Trilegiant Corporation; Orbitz LLC; Orbitz Inc; Budget Rent A Car System Inc and Avis Rent A Car System Inc pro hac vice. Receipt # 319950. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | 🌐9 | APPLICATION by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc AND ORDER admitting James V Fazio, III for Cendant Corporation; Trilegiant Corporation; Orbitz LLC; Orbitz Inc; Budget Rent A Car System Inc and Avis Rent A Car System Inc pro hac vice. Receipt # 319951. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | 🌐10 | APPLICATION by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc AND ORDER admitting Douglas E Olson for Cendant Corporation; Trilegiant Corporation; Orbitz LLC; Orbitz Inc; Budget Rent A Car System Inc and Avis Rent A Car System Inc pro hac vice. Receipt # 319952. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | 🌐11 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting J David Hadden for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | 🌐12 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting Darren E Donnelly for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | 🌐13 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting Lynn H Pasahow for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |

| 07/20/2005 | ⬤14 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting Wendy L Bjerkness for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |
|---|---|---|
| 07/20/2005 | ⬤15 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting C J Alice Chen for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |
| 07/20/2005 | ⬤16 | APPLICATION by Plaintiffs Amazon.com Inc, A9.com Inc AND ORDER admitting Hector Ribera for Amazon.com Inc and A9.com Inc pro hac vice. Receipt # 852772. (RS, ) (Entered: 07/20/2005) |
| 08/12/2005 | ⬤17 | MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule* by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc. Noting Date 9/9/2005.Oral Argument Requested. (Attachments: # 1 Proposed Order)(Fandel, Kent) (Entered: 08/12/2005) |
| 08/12/2005 | ⬤18 | MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Motion to Stay Discovery Pending Resolution of the Motions* by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc. Noting Date 9/9/2005.Oral Argument Requested. (Attachments: # 1 Supplement Motion to Dismiss Part Two# 2 Proposed Order)(Fandel, Kent) (Entered: 08/12/2005) |
| 08/12/2005 | ⬤19 | MEMORANDUM filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc re 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo Request for Judicial Notice in Support of their Motion to Dismiss or, in the alternative, for more definite statement, motion to stay all Discovery Pending Resolution of the Motions, and Motion to Transfer Venue* (Fandel, Kent) (Entered: 08/12/2005) |
| 08/12/2005 | ⬤20 | DECLARATION of Eric J. Bock filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc re 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule*, 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* (Fandel, Kent) (Entered: 08/12/2005) |
| 08/12/2005 | ⬤21 | DECLARATION of James V. Fazio, III filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc re 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer* |

| | | |
|---|---|---|
| | | *this action pursuant to the first to file rule*, 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* (Attachments: # 1 *Exhibit A, part one, pgs. 7-18#* 2 *Exhibit A, part 2, pgs. 19-26#* 3 *Exhibit B#* 4 *Exhibit C#* 5 *Exhibit D, part one, pgs. 29-36#* 6 *Exhibit D, part two, pgs. 37-43#* 7 *Exhibit E, part one, pgs. 44-55#* 8 *Exhibit E, part two, pgs. 56-67#* 9 *Exhibit E, part three, pgs. 68-79#* 10 *Exhibit E, part four, pgs. 80-87#* 11 *Exhibit F#* 12 *Exhibit G#* 13 *Exhibit H#* 14 *Exhibit I#* 15 *Exhibit J#* 16 *Exhibit K#* 17 *Exhibit L#* 18 *Exhibit M#* 19 *Exhibit N#* 20 *Exhibit O#* 21 *Exhibit P#* 22 *Exhibit Q#* 23 *Exhibit R#* 24 *Exhibit S#* 25 *Exhibit T#* 26 *Exhibit U#* 27 *Exhibit V#* 28 *Exhibit W#* 29 *Exhibit X#* 30 *Exhibit Y#* 31 *Exhibit Z#* 32 *Exhibit AA#* 33 *Exhibit BB#* 34 *Exhibit CC#* 35 *Exhibit DD#* 36 *Exhibit EE#* 37 *Exhibit FF#* 38 *Exhibit GG#* 39 *Exhibit H, part one, pgs. 204-214#* 40 *Exhibit H, part two, pgs. 215-224#* 41 *Exhibit II#* 42 *Exhibit JJ#* 43 *Exhibit KK#* 44 *Exhibit LL#* 45 *Exhibit MM)*(Fandel, Kent) (Entered: 08/12/2005) |
| 08/31/2005 | 22 | NOTICE by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz Inc that the following is RE-NOTED: 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule* Noting Date 9/16/2005. (Fandel, Kent) (Entered: 08/31/2005) |
| 08/31/2005 | 23 | NOTICE by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz Inc that the following is RE-NOTED: 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* Noting Date 9/16/2005. (Fandel, Kent) (Entered: 08/31/2005) |
| 09/12/2005 | 24 | RESPONSE, by Plaintiffs Amazon.com Inc, A9.com Inc, to 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo.* (McDonald, David) (Entered: 09/12/2005) |
| 09/12/2005 | 25 | DECLARATION of C. J. Alice Chen filed by Plaintiffs Amazon.com Inc, A9.com Inc re 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* (Attachments: # 1 *Exhibit A1#* 2 *Exhibit A2#* 3 *Exhibit B#* 4 *Exhibit C#* 5 *Exhibit D#* 6 *Exhibit E#* 7 *Exhibit F#* 8 *Exhibit G)*(McDonald, David) (Entered: 09/12/2005) |
| 09/12/2005 | 26 | RESPONSE, by Plaintiffs Amazon.com Inc, A9.com Inc, to 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule*. (McDonald, David) (Entered: 09/12/2005) |
| 09/12/2005 | 27 | DECLARATION of Wendy Bjerknes filed by Plaintiffs Amazon.com Inc, A9.com Inc re 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C.* |

| | | |
|---|---|---|
| | | *1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule* (McDonald, David) (Entered: 09/12/2005) |
| 09/12/2005 | 28 | DECLARATION of Kathryn Sheehan filed by Plaintiffs Amazon.com Inc, A9.com Inc re 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule* (McDonald, David) (Entered: 09/12/2005) |
| 09/12/2005 | 29 | CERTIFICATE OF SERVICE by Plaintiffs Amazon.com Inc, A9.com Inc re 28 Declaration,, 24 Response to Motion,, 25 Declaration,, 26 Response to Motion, 27 Declaration,. (McDonald, David) (Entered: 09/12/2005) |
| 09/16/2005 | 30 | REPLY, filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc, TO RESPONSE to 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule* (Fandel, Kent) (Entered: 09/16/2005) |
| 09/16/2005 | 31 | REPLY, filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc, TO RESPONSE to 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* (Fandel, Kent) (Entered: 09/16/2005) |
| 09/16/2005 | 32 | DECLARATION of James V. Fazio filed by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc re 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule*, 18 MOTION to Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo* (Attachments: # 1 Exhibit Ex A pgs. 4 - Ex. C pg. 15# 2 Exhibit C pgs. 16-21# 3 Exhibit C pgs. 22-27# 4 Exhibit C pg. 28 - Ex. D pg. 39# 5 Exhibit Ex D pg. 40- Ex F pg 51# 6 Exhibit F pg. 52- H pg. 63# 7 Exhibit H pg. 64 - K pg. 75# 8 Exhibit K pg. 76-80)(Fandel, Kent) (Entered: 09/16/2005) |
| 10/21/2005 | | Set Oral Argument on 17 MOTION to Transfer Case *Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule*, 18 MOTION to Dismiss *All Claims Against Cendant Corporation); 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo: Motion Hearing set for 11/21/2005 at 1:30 PM before Hon. Ricardo S Martinez. (LW)* (Entered: 10/21/2005) |
| 11/15/2005 | 33 | REQUEST by Defendants Budget Rent A Car System Inc, Avis Rent A Car System Inc, Cendant Corporation, Trilegiant Corporation, Orbitz LLC, Orbitz Inc for Judicial Notice in Support of Defendants' Motion to Dismiss or, in the alternative, for more definite statement, motion to stay all discovery pending resolution of the motions, and motion to transfer venue re 18 MOTION to |

| | | |
|---|---|---|
| | | Dismiss *All Claims Against Cendant Corporation; 2) Motion to Dismiss the Complaint for Failure to State a claim Pursuant to Fed.R.Civ.P.12(b)(6) or, in the alternative, for more definite statement pursuant to Fed.R.Civ.P.12(E); and (3) Mo,* [17] *MOTION to Transfer Case Venue Pursuant to 28 U.S.C. 1404(a) or, in the alternative, to dismiss, stay or transfer this action pursuant to the first to file rule. (Attachments: #* [1] *Exhibit A)(Fandel, Kent) (Entered: 11/15/2005)* |
| 11/21/2005 | 🔵34 | MINUTE ENTRY for proceedings held before Judge Ricardo S Martinez - Dep Clerk: *Laurie Cuaresma*; Pla Counsel: *David McDonald, Lynn Pasahow, Dave Hadden*; Def Counsel: *Steven Korniczky, James Fazio, Douglas Olson, K. Michael Fandel*; CR: *Laurene Kelly*; Time of Hearing: *1:30 PM*; Courtroom: *13206*;**Motion Hearing** held on 11/21/2005 re [18] MOTION to Dismiss *17 MOTION to Transfer Case Court hears argument of counsel. Court takes matter under advisement and will rule as soon as possible. (LC, ) (Entered: 11/21/2005)* |
| 11/22/2005 | 🔵35 | Letter from David T. McDonald. (McDonald, David) (Entered: 11/22/2005) |
| 12/13/2005 | 🔵36 | ORDER granting dfts' [17] Motion to Transfer Case to District of Delaware;denying dfts' [18] Motion to Dismiss without prejudice to renewal in the Delaware court by Judge Ricardo S Martinez.(RS, ) (Entered: 12/13/2005) |

I hereby certify that the attached is a true and correct copy of the docket on file at the Western District of Washington

BRUCE RIFKIN, Clerk



By ___S/Rhonda Stiles_____
        Deputy Clerk

1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE
9
AMAZON.COM, INC. and A9.COM, INC.,
10                                                    No.
                                     Plaintiffs,
11                                                    **COMPLAINT FOR PATENT**
        v.                                            **INFRINGEMENT**
12
CENDANT CORPORATION;                                  **DEMAND FOR JURY TRIAL**
13   TRILEGIANT CORPORATION; ORBITZ,
     LLC; ORBITZ, INC.; BUDGET RENT A
14   CAR SYSTEM, INC.; and AVIS RENT A
     CAR SYSTEM, INC.,
15
                                     Defendants.
16

17          Plaintiffs Amazon.com, Inc. ("Amazon.com") and A9.com, Inc. ("A9.com") for their

18   Complaint against Cendant Corporation ("Cendant"), Trilegiant Corporation ("Trilegiant"),

19   Orbitz, LLC and Orbitz, Inc. ("Orbitz"), Budget Rent A Car System, Inc. ("Budget"), and

20   Avis Rent a Car System, Inc. ("Avis"), allege the following:

21                          <u>**NATURE OF THE ACTION**</u>

22          1.      This is a civil action for the infringement of United States Patents Nos.

23   5,715,399 ("the '399 Patent"), 6,029,141 ("the '141 Patent"), 6,629,079 ("the '079 Patent"),

24   and 6,625,609 ("the '609 Patent") (collectively, the "Patents-in-Suit"), brought pursuant to the

25   patent laws of the United States, Title 35 of the United States Code.

26

COMPLAINT FOR PATENT
INFRINGEMENT - 1

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1        **PARTIES**

2        2.      Plaintiff Amazon.com is a corporation duly organized and existing under the

3    laws of Delaware, and has its principal place of business at 1200 Twelfth Avenue South,

4    Seattle, Washington.  Amazon.com is a leading online retailer providing consumers with the

5    largest selection of products available for online purchase through the Internet.  Since its

6    launch in 1995, Amazon.com has been a pioneer in the field of electronic commerce ("e-

7    commerce").  Industry observers have lauded Amazon.com's creative and innovative

8    technological solutions in the field and the United States Patent and Trademark Office has

9    issued to Amazon.com patents for its technical innovations.  Amazon.com owns, by valid

10   assignment, all rights, title and interest in the '399 Patent, the '141 Patent, and the

11   '079 Patent.

12       3.      Plaintiff A9.com is a corporation duly organized and existing under the laws of

13   Delaware, and has its principal place of business at 130 Lytton Avenue, Suite 300, Palo Alto,

14   California 94301.  A9.com is a wholly owned subsidiary of Amazon.com established to

15   research and build innovative search technologies.  A9.com owns, by valid assignment, all

16   rights, title, and interest in the '609 Patent.

17       4.      On information and belief, defendant Cendant is a Delaware corporation with

18   its principal place of business at Nine West Fifty-Seventh Street, New York, New York.  On

19   information and belief, defendant Cendant is a world-wide provider of real estate, travel, and

20   marketing services.  On information and belief, Cendant is the parent corporation owner in

21   whole or in part of defendants Trilegiant, Orbitz, Budget, and Avis.  Cendant has entered the

22   e-commerce space with some of its businesses, which operate websites such as, for example

23   www.orbitz.com and www.cheaptickets.com for travel services, www.avis.com and

24   www.budget.com for car rentals, and www.netmarket.com and www.avgautostore.com for

25   consumer goods among many others.  Cendant, through its various real estate, travel, and

26

COMPLAINT FOR PATENT
INFRINGEMENT - 2

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  marketing businesses, conducts business throughout the United States, including in this

2  district.

3      5.    On information and belief, defendant Trilegiant Corporation is a Delaware

4  corporation with its principal place of business at One Campus Drive, Parsippany, New

5  Jersey.  On information and belief, Trilegiant is the successor to Cendant Membership

6  Services, Inc. and Cendant Incentives and is a wholly owned subsidiary of Cendant.

7  Trilegiant describes itself as a membership-based provider of travel, shopping, health, dental,

8  entertainment, and consumer protection services.  Trilegiant provides products and services

9  through its membership club and loyalty product businesses and programs.  On information

10  and belief, Trilegiant operates websites for its e-commerce businesses and programs,

11  including but not limited to, www.trilegiantaffiliates.com, www.netmarket.com,

12  www.completehome.com, and www.avgautostore.com, among others.  On information and

13  belief, Trilegiant transacts business, including operating its websites, selling discounted

14  consumer goods, providing marketing services for other businesses, providing credit card and

15  purchase protection services among other things, throughout the United States, including

16  within the boundaries of this district.

17      6.    On information and belief, defendants Orbitz, LLC and Orbitz, Inc. ("Orbitz")

18  are Delaware limited liability company and corporation with principal place of business at

19  200 South Wacker Drive, Chicago, Illinois.  On information and belief, Orbitz is a wholly

20  owned subsidiary of Cendant.  Orbitz describes itself as an online travel company that

21  provides customers with e-commerce tools for the selection and purchase of airline tickets,

22  lodging, car rentals, cruises, vacation packages, and other travel services.  On information and

23  belief, Orbitz operates the www.orbitz.com website as part of its online travel business.

24  Orbitz transacts business, including selling airline tickets, providing rental car and hotel

25  reservations, and operating its website among other things, throughout the United States,

26  including within the boundaries of this district.

COMPLAINT FOR PATENT
INFRINGEMENT - 3

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    7.    On information and belief, defendant Budget Rent A Car System, Inc., is a

2  Delaware corporation with its principal place of business at Six Sylvan Way, Parsippany,

3  New Jersey.  On information and belief, Budget is a wholly owned subsidiary of Cendant.

4  Budget describes itself as the owner and franchiser of one of the world's best-known car

5  rental brands with nearly 2,000 car rental locations in the United States and other countries.

6  On information and belief, Budget operates the www.budget.com website as part of its car

7  rental business.  Budget transacts business, including operating its website, renting cars and

8  franchising its brand throughout the United States, including within the boundaries of this

9  district.

10    8.    On information and belief, defendant Avis Rent A Car System, Inc., is a

11  Delaware corporation with its principal place of business at Six Sylvan Way, Parsippany,

12  New Jersey.  On information and belief, Avis is a wholly owned subsidiary of Cendant.  Avis

13  describes itself as a general-use car rental business, providing customers with a wide range of

14  car rental services.  On information and belief, Avis operates the www.avis.com website as

15  part of its car rental business.  Avis transacts business, including operating its website, renting

16  cars and operating car rental facilities at airports and other sites throughout the United States,

17  including within the boundaries of this district.

18  <div align="center">**JURISDICTION**</div>

19    9.    This is an action for patent infringement arising under the Patent Laws of the

20  United States, Title 35 of the United States Code.  Therefore, this court has subject matter

21  jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

22  <div align="center">**VENUE**</div>

23    10.    Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c) and

24  1400(b).

25

26

COMPLAINT FOR PATENT
INFRINGEMENT - 4

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1                                            **CLAIMS FOR RELIEF**

2              **First Claim for Relief for Infringement of the '399 Patent**

3         11.     Plaintiffs incorporate by reference Paragraphs 1 through 10 above as if fully

4 set forth herein.

5         12.     On February 3, 1998, United States Patent No. 5,715,399, titled "Secure

6 Method and System for Communicating a List of Credit Cards Numbers Over a Non-Secure

7 Network" was duly and legally issued to plaintiff Amazon.com.  A copy of the '399 Patent is

8 attached to this Complaint as Exhibit 1.  Amazon.com has been and still is the owner of the

9 '399 Patent, which is still in full force and effect.

10         13.     Plaintiffs have provided statutory notice of the '399 Patent via a listing of the

11 patent number on one or more of their websites.

12         14.     Upon information and belief, defendants Cendant, Trilegiant, Orbitz, and Avis

13 have been, currently are, and will continue to directly and/or indirectly infringe, solely or

14 jointly with others, or induce others to infringe one or more claims of the '399 Patent by

15 directly or indirectly, individually or jointly, using or causing to be used plaintiffs' patented

16 credit card number transmission methods and systems in the operation of their businesses,

17 including but not limited to the operation of the www.orbitz.com, www.avis.com, and

18 www.avgautostore.com websites.

19         15.     Defendants' acts of infringement are willful as defendants know or should

20 have known of the '399 Patent and that the operation of their businesses infringe the

21 '399 Patent.

22         16.     As a direct and proximate consequence of defendants' infringement and willful

23 infringement of the '399 Patent, plaintiffs have suffered and will continue to suffer irreparable

24 injury and damages, in an amount not yet determined, for which plaintiffs are entitled to

25 relief.  Accordingly, pursuant to 35 U.S.C. § 284, plaintiffs are entitled to damages and treble

26

COMPLAINT FOR PATENT
INFRINGEMENT - 5

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    damages.  Plaintiffs are also entitled to preliminary and final injunctive relief against further

2    infringement.

3              **Second Claim for Relief for Infringement of the '141 Patent**

4          17.    Plaintiffs incorporate by reference Paragraphs 1 through 16 above as if fully

5    set forth herein.

6          18.    On February 22, 2000, United States Patent No. 6,029,141, titled "Internet-

7    based Customer Referral System" was duly and legally issued to plaintiff Amazon.com.  A

8    copy of the '141 Patent is attached to this Complaint as Exhibit 2.  Amazon.com has been and

9    still is the owner of the '141 Patent, which is still in full force and effect.

10         19.    Plaintiffs have provided statutory notice of the '141 Patent via a listing of the

11   patent number on one or more of their websites.

12         20.    Upon information and belief, defendants Cendant, Trilegiant, Orbitz, and

13   Budget have been, currently are, and will continue to directly and/or indirectly infringe,

14   individually or jointly with others, or induce others to infringe one or more claims of the

15   '141 Patent by directly or indirectly, individually or jointly, using or causing to be used

16   plaintiff's patented Internet-based customer referral methods and systems in the operation

17   their online e-commerce businesses, including but not limited to the operation of the

18   www.trilegiantaffiliates.com, www.orbitz.com, and www.budget.com websites.

19         21.    Defendants' acts of infringement are willful as Cendant, Trilegiant, Orbitz,

20   and/or Budget know or should have known of the '141 Patent and that its online e-commerce

21   businesses infringe the '141 Patent.

22         22.    As a direct and proximate consequence of defendants' infringement and willful

23   infringement of the '141 Patent, plaintiffs have suffered and will continue to suffer irreparable

24   injury and damages, in an amount not yet determined, for which plaintiffs are entitled to

25   relief.  Accordingly, pursuant to 35 U.S.C. § 284, plaintiffs are entitled to damages and treble

26

COMPLAINT FOR PATENT
INFRINGEMENT - 6

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

damages.  Plaintiffs are also entitled to preliminary and final injunctive relief against further infringement.

### **Third Claim for Relief for Infringement of the '079 Patent**

23.    Plaintiffs incorporate by reference Paragraphs 1 through 22 above as if fully set forth herein.

24.    On September 30, 2003, United States Patent No. 6,629,079, titled "Method and System for Electronic Commerce Using Multiple Roles" was duly and legally issued to plaintiff Amazon.com.  A copy of the '079 Patent is attached to this Complaint as Exhibit 3. Amazon.com has been and still is the owner of the '079 Patent, which is still in full force and effect.

25.    Upon information and belief, defendants Cendant and Orbitz have been, currently are, and will continue to directly and indirectly infringe, individually or jointly with others, or induce others to infringe one or more claims of the '079 Patent by directly or indirectly, individually or jointly, using or causing to be used plaintiffs' patented multiple roles e-commerce methods and systems in the operation of their online e-commerce businesses, including but not limited to the operation of the www.orbitz.com website.

26.    Defendants' acts of infringement are willful as Cendant and/or Orbitz know or should have known of the '079 Patent and that their online businesses infringe the '079 Patent.

27.    As a direct and proximate consequence of defendants' infringement and willful infringement of the '079 Patent, plaintiffs have suffered and will continue to suffer irreparable injury and damages, in an amount not yet determined, for which plaintiffs are entitled to relief.  Accordingly, pursuant to 35 U.S.C. § 284, plaintiffs are entitled to damages and treble damages.  Plaintiffs are also entitled to preliminary and final injunctive relief against further infringement.

COMPLAINT FOR PATENT
INFRINGEMENT - 7

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**Fourth Claim for Relief for Infringement of the '609 Patent**

2      28.     Plaintiffs incorporate by reference Paragraphs 1 through 27 above as if fully

3   set forth herein.

4      29.     On September 23, 2003, United States Patent No. 6,625,609, titled "Method

5   and System for Navigating Within a Body of Data Using One of a Number of Alternative

6   Browse Graphs" was duly and legally issued to plaintiff Amazon.com.  A copy of the

7   '609 Patent is attached to this Complaint as Exhibit 4.  Amazon.com has been the owner of

8   the '609 Patent and duly transferred its ownership to plaintiff A9.com, who still retains full

9   ownership of the '609 Patent.  The '609 Patent is still in full force and effect.

10     30.     Upon information and belief, defendants Cendant and Orbitz have been,

11  currently are, and will continue to directly and indirectly infringe, individually or jointly with

12  others, or induce others to infringe one or more claims of the '609 Patent by directly or

13  indirectly, individually or jointly, using or causing to be used plaintiff's patented browse-

14  graph-based navigation methods and systems in the operation of their online e-commerce

15  businesses, including but not limited to the operation of the www.orbitz.com website.

16     31.     Defendants' acts of infringement are willful as Cendant and/or Orbitz know or

17  should have known of the '609 Patent and that their online businesses infringe the

18  '609 Patent.

19     32.     As a direct and proximate consequence of defendants' infringement and willful

20  infringement of the '609 Patent, plaintiffs have suffered and will continue to suffer irreparable

21  injury and damages, in an amount not yet determined, for which plaintiffs are entitled to

22  relief.  Accordingly, pursuant to 35 U.S.C. § 284, plaintiffs are entitled to damages and treble

23  damages.  Plaintiffs are also entitled to preliminary and final injunctive relief against further

24  infringement.

25

26

COMPLAINT FOR PATENT
INFRINGEMENT - 8

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**PRAYER FOR RELIEF**

2    WHEREFORE, plaintiffs Amazon.com and A9.com pray for the following relief

3    against defendants:

4    A.    For entry of a judgment declaring that Cendant and Orbitz have infringed one

5    or more claims of the '399 Patent, the '141 Patent, the '079 Patent, and the '609 Patent, that

6    defendant Trilegiant has infringed one or more claims of the '399 Patent and the '141 Patent,

7    that defendant Avis has infringed one or more claims of the '399 Patent, and that defendant

8    Budget has infringed one or more claims of the '141 Patent;

9    B.    For preliminary and permanent injunctive relief restraining and enjoining

10    defendants and their officers, agents, servants, employees, attorneys, and those persons in

11    active concert or participation with them who receive actual notice of the order by personal

12    service or otherwise, from any further infringement of the '399 Patent, the '141 Patent, the

13    '079 Patent, and the '609 Patent;

14    C.    For damages to compensate plaintiffs for defendants' infringement, pursuant to

15    35 U.S.C. § 284, said damages to be trebled because of defendants' willful infringement;

16    D.    For an award of pre-judgment and post-judgment interest and costs to plaintiffs

17    in accordance with 35 U.S.C. § 284;

18    E.    For an award of plaintiffs' reasonable attorneys' fees pursuant to 35 U.S.C.

19    § 285;

20    //

21    //

22    //

23    //

24    //

25    //

26    //

COMPLAINT FOR PATENT
INFRINGEMENT - 9

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1      F.      For such other and further relief as the Court may deem just and fair.

2      Dated:  June 22, 2005.

3                              PRESTON GATES & ELLIS, LLP

4

5                            By: _____

                                 David T. McDonald, WSBA # 5260

6

7                            Lynn H. Pasahow (pending *pro hac vice*)
                          J. David Hadden (pending *pro hac vice*)

8                            Darren E. Donnelly (pending *pro hac vice*)
                          Hector Ribera (pending *pro hac vice*)

9                            FENWICK & WEST LLP
                          Silicon Valley Center

10                         801 California Street
                       Mountain View, CA  94041

11                         Tel:  (650) 988-8500
                       Fax: (650) 938-5200

12                         Attorneys for Plaintiffs
                       AMAZON.COM, INC. and

13                         A9.COM, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR PATENT
INFRINGEMENT - 10

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Fed. R. Civ. P. 38, plaintiff Amazon.com, Inc. demands a jury trial as to

3     all matters triable of right by a jury.

4          Dated:  June 22, 2005.

5                                                    PRESTON GATES & ELLIS, LLP

6

7                                          By:  _____
                                                   David T. McDonald, WSBA # 5260
8
                                              Lynn H. Pasahow (pending *pro hac vice*)
9                                             J. David Hadden (pending *pro hac vice*)
                                              Darren E. Donnelly (pending *pro hac vice*)
10                                            Hector Ribera (pending *pro hac vice*)
                                              FENWICK & WEST LLP
11                                            Silicon Valley Center
                                              801 California Street
12                                            Mountain View, CA  94041
                                              Tel:  (650) 988-8500
13                                            Fax: (650) 938-5200

14                                            Attorneys for Plaintiffs
                                              AMAZON.COM, INC. and
15                                            A9.COM, INC.

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT FOR PATENT
INFRINGEMENT - 11

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

US005715399A

# United States Patent [19]

## Bezos

[11] Patent Number: 5,715,399

[45] Date of Patent: Feb. 3, 1998

[54] **SECURE METHOD AND SYSTEM FOR COMMUNICATING A LIST OF CREDIT CARD NUMBERS OVER A NON-SECURE NETWORK**

[75] Inventor: **Jeffrey P. Bezos**, Bellevue, Wash.

[73] Assignee: **Amazon.Com, Inc.**, Seattle, Wash.

[21] Appl. No.: **453,273**

[22] Filed: **May 30, 1995**

### Related U.S. Application Data

[63] Continuation-in-part of Ser. No. 413,242, Mar. 30, 1995.

[51] **Int. Cl.6** .............................. **G06F 17/60**; G06G 7/52

[52] **U.S. Cl.** .......................... **395/227**; 235/379; 235/380; 235/381; 395/239

[58] **Field of Search** ...................................... 235/379, 380, 235/487, 381; 902/24; 364/401 R; 340/827, 825.33, 825.34, 825.35; 395/239, 240, 227

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

5,336,870   8/1994   Huges et al. ............................ 235/379

#### OTHER PUBLICATIONS

Loshin, P., "Selling Online With . . . First Virtual", Chapters 3 and 4, Charles River Media, Inc., 1996.
Borenstein, N. "Perils and Pitfalls of Practical Internet Commerce (Part I)." <http://www.fv.com/company/first year1.html>, 1996.
Templeton, B., "USENIX–Race to Develop Internet Commerce," Newsbytes News Network, IAC Newsletter, Jan. 1995.
"Wells Fargo and CyberCash Team Up to Provide Secure Online Payment Systems," CyberCash News Release, Dec. 1994.
Somogyi, S., "How Would You Like to Pay for That? A Guide to Digital Cash and Carry Technology," Digital Media, v4, n7, p. 13, Dec. 1994.

*Primary Examiner*—Wellington Chin
*Assistant Examiner*—Melissa Kay Carman
*Attorney, Agent, or Firm*—Ronald M. Anderson

[57] **ABSTRACT**

A method and system for securely indicating to a customer one or more credit card numbers that a merchant has on file for the customer when communicating with the customer over a non-secure network. The merchant sends a message to the customer that contains only a portion of each of the credit card numbers that are on file with the merchant. The message may also contain a notation explaining which portion of each of the credit card numbers has been extracted. A computer (38) retrieves the credit card numbers on file for the customer in a database (40), constructs the message, and transits the message to a customer location (10) over the Internet network (30) or other non-secure network. The customer can then confirm in a return message that a specific one of the credit card numbers on file with the merchant should be used in charging a transaction. Since only a portion of the credit card number(s) are included in any message transmitted, a third party cannot discover the customer's complete credit card number(s).

**20 Claims, 3 Drawing Sheets**





*FIG. 1*

U.S. Patent          Feb. 3, 1998          Sheet 2 of 3          5,715,399

TO: JOHN@CUSTOMER.COM                          56
FROM: MAILBOT@MERCHANT.COM
SUBJECT: CREDIT CARD SELECTION;
              ORDER MESSAGE ID (MID) MID-JOHN-7452
---------------

[ORDER SPECIFIC INFORMATION WOULD BE INCLUDED IN
THE FIRST PARAGRAPH.]

WE ALREADY HAVE YOUR SHIPPING ADDRESS AND CREDIT
CARD INFORMATION ON FILE.  PLEASE CONFIRM IN A REPLY
MESSAGE THAT THE INFORMATION LISTED BELOW IS
CORRECT BY INCLUDING THE WORDS "AS USUAL" AS THE
FIRST TWO WORDS IN THE BODY OF THE MESSAGE OR,
PROVIDE ANY CORRECTIONS TO THE INFORMATION.

YOUR SHIPPING ADDRESS WILL BE:
         JOHN W. CUSTOMER
         123 ANYSTREET
58       ANYCITY, AS 12345

WE HAVE THE FOLLOWING CREDIT CARD NUMBERS ON FILE
FOR YOU (ONLY THE LAST FIVE DIGITS ARE SHOWN FOR
SECURITY REASONS).  PLEASE INDICATE THE CREDIT CARD
NUMBER THAT SHOULD BE USED TO PAY FOR THIS ORDER
BY INCLUDING THE REFERENCE LETTER OF THAT CREDIT
CARD, WHICH IS USED BELOW, IN YOUR REPLY MESSAGE.
                                              54
| REF. LETTER | TYPE | LAST 5 DIGITS | EXP. DATE |
|-------------|------|---------------|-----------|
| A.          | VISA | 86543         | 10/98     |
| B.          | VISA | 21883         | 04/97     |
| C.          | MC   | 15609         | 08/98     |

                                              52
                                              50

FIG. 2



*FIG. 4*

*FIG. 3*

5,715,399

# 1

## SECURE METHOD AND SYSTEM FOR COMMUNICATING A LIST OF CREDIT CARD NUMBERS OVER A NON-SECURE NETWORK

### RELATED APPLICATIONS

This application is a continuation-in-part of prior copending application Ser. No. 08/413,242, filed Mar. 30, 1995, the benefit of the filing date of which is hereby claimed under 35 U.S.C. § 120.

### FIELD OF THE INVENTION

The present invention generally relates to a method and system for communicating confidential information over a non-secure network, and more specifically, for communicating credit card data over the non-secure network.

### BACKGROUND OF THE INVENTION

Catalog shopping represents an increasing part of the economy. The growth in its popularity can in part be explained because consumers have learned that goods purchased from a catalog are often much less expensive than if purchased through a normal retail store. In addition, because a customer can shop without leaving the comfort of home or office, placing an order for merchandise from a catalog makes much more efficient use of the customer's time.

Shopping for goods and services using a personal computer to place an order on a network is a natural extension to the more traditional catalog shopping, since the customer enjoys these same benefits. The COMPUSERVE™ network and other private networks have long offered members the opportunity to browse through on-line "Electronic Shopping Malls" and place orders for goods shown and described therein. New opportunities for shopping via personal computers arise daily as more people gain access to the Internet network, with its interconnectivity and easy access to locations throughout the world via the World Wide Web or E-mail.

A credit card facilitates making purchases via telephone or over the network. However, users are justifiably concerned about their credit card numbers being transmitted over networks such as the Internet, for example, via E-mail, because of the lack of secure communications.

Security on public networks at the present time is virtually non-existent, making it relatively easy for an unauthorized third party to gain access to credit card data transmitted over the network. Once a dishonest person has another person's credit card number, thousands of dollars can be improperly charged to that credit card account.

Currently, most transactions occurring over networks such as the Internet are done in two parts. The majority of the order information, such as customer name and shipping address, is transmitted over the network. In the second step, the customer places a telephone call to the merchant to provide credit card information for billing purposes. Alternatively, the customer may fax the credit card information to the merchant.

Regardless of the method used by the customer to convey the credit card information to the merchant, after the information has once been conveyed, it can remain "on file" with the merchant in a customer database. For subsequent purchases, the customer need not communicate a credit card number to the merchant. The customer need only provide his or her name to the merchant, and so long as the shipping address provided by the customer matches that on file, the merchant will use the credit card number the customer previously gave to the merchant to charge the order placed. If the shipping address is different than that on file with the merchant, the transaction can still be completed if the customer confirms his or her identity, possibly by providing an account ID and/or password established at the time the credit card number was initially conveyed.

Leaving a credit card number on file with the merchant is advantageous to the customer, because it eliminates the need to communicate the credit card information when making subsequent purchases. Providing the credit card information each time that a purchase is made is inconvenient to a customer. Furthermore, each time that the credit card information is communicated to a merchant, another opportunity is presented for an unauthorized third party to gain access to the credit card data.

Credit cards are so convenient to use and easy to obtain that most people have several general purpose credit cards of different types. As a result, a problem can arise when placing orders with a merchant that maintains credit card information from previous orders for each customer. Since a substantial period of time may elapse between orders placed with a particular merchant, it is possible that the customer may forget which credit card number (or numbers) were left on file with a merchant. The specific credit card number on file with the merchant may be important to the customer for any number of reasons, including the possibility that the credit card to which the merchant may charge the transaction is at its credit limit and should therefore not be charged for the current purchase.

As noted above, it is also possible that the customer may have more than one credit card number on file with the merchant and may prefer to charge the current transaction to a specific credit card account. If the customer is to choose between multiple credit card numbers on file with the merchant, it would be advantageous if the merchant could present to the customer, at the time the order is placed, a list of the credit card numbers the merchant has on file for that customer.

The merchant could send the list of credit card numbers on file to the customer over the Internet or other non-secure network, by straightforward means, such as by displaying to the customer a World Wide Web page containing the credit card numbers or by sending an E-mail message containing the credit card numbers to the customer. However, sending the credit card numbers in this manner would jeopardize the security of the numbers, possibly placing the customer at risk.

Alternatively, the credit card numbers could be encrypted at the merchant's location using any of several techniques (including public key encryption) before being transmitted to the customer location, where they would be unencrypted and then viewed by the customer. However, applying encryption techniques when transmitting a list of credit card numbers requires that the customer have access to the proper decryption software. The widespread dissemination of such software will likely not occur for some time.

A new method for a merchant to convey a list of credit card numbers on file for a customer to the customer over a non-secure network is needed that does not jeopardize the security of the customer's credit card information. The present invention provides a solution to this problem that is relatively efficient and foolproof.

### SUMMARY OF THE INVENTION

In accordance with the present invention, a method is defined for enabling a merchant to indicate to a customer, by

5,715,399

<table>
<tr><td>3</td><td>4</td></tr>
</table>

a communication over a non-secure network, the customer's credit card number that will be charged for a transaction; the indication occurs without risk that a third party will discover the customer's credit card number. The credit card number is maintained in a database by the merchant. As used throughout this specification and in the claims that follow, the term "credit card" is intended to encompass debit cards and any other form of credit or debit used to make a purchase by providing a reference number that uniquely identifies a purchaser's account from which funds to pay a seller for goods or services will be transferred. The method includes the step of retrieving the credit card number of the customer from the database. A portion of the credit card number that is substantially smaller than the complete credit card number is then extracted from the credit card number retrieved. Next, a message containing the portion of the credit card number is constructed and the message is transmitted to the customer over the non-secure network.

The message also preferably includes a notation indicating the portion of the credit card number that has been included in the message. Also, in the preferred embodiment, the portion comprises the last N digits of the credit card number, where N is an integer. In the preferred embodiment, the message may comprise either an E-mail message addressed to the customer or a World Wide Web page.

In addition, the method also deals with the condition where the merchant maintains a plurality of credit card numbers of the customer in the database. In this case, each of the plurality of the credit card numbers of the customer that are in the database are retrieved and portions of each of the plurality of credit card numbers of the customer are extracted. The message is constructed so that it contains the portions of each of the plurality of the credit card numbers of the customer.

If the portions of the plurality of the credit card numbers of the customer do not all differ from each other, the size of the portion of each of said plurality of the credit card numbers extracted is successively increased (up to some predefined limit) to form a larger portion, until the larger portions of the credit card numbers all differ from each other. Then, the message is constructed to include the larger portions of the plurality of the credit card numbers. In addition, the method preferably further comprises the step of indicating in the message to the customer a credit card expiration date associated with each of the portions of the credit card numbers listed. The portions of two credit card numbers then differ from each other if the credit card expiration dates associated with the portions of the two credit card numbers are different, even though the portions of the two credit card numbers are numerically equal. Similarly, the message can indicate a credit card expiration date associated with each of the portions of the credit card numbers listed. Then, the portions of two credit card numbers will be found to differ from each other if the credit card expiration dates associated with the portions of the two credit card numbers are different, even though the portions of the two credit card numbers are numerically equal.

When the database includes multiple credit cards for the customer, the customer is requested to indicate a specific one of the plurality of the credit card numbers of the customer that should be used in a transaction with the merchant. This response can be provided to the merchant in a return message from the customer to the merchant.

Another aspect of the present invention is directed to a system for constructing and transmitting a message from a merchant to a customer using a non-secure transmission method. The message indicates a credit card number (or numbers) of the customer that is maintained by the merchant in a database. The system includes a computer for use in constructing and transmitting the messages, and the computer has a central processor that executes instructions. A memory in the computer stores the instructions to be executed, and non-volatile storage stores the database and the messages. The instructions stored in the memory of the computer cause the central processor to perform functions that are generally consistent with the steps of the method described above.

## BRIEF DESCRIPTION OF THE DRAWING FIGURES

The foregoing aspects and many of the attendant advantages of this invention will become more readily appreciated as the same becomes better understood by reference to the following detailed description, when taken in conjunction with the accompanying drawings, wherein:

FIG. 1 is a block diagram illustrating the components involved in the communication between a merchant location and a customer location, over a non-secure network, in accord with the present invention;

FIG. 2 illustrates an exemplary E-mail message transmitted from a merchant to a customer that includes portions of credit card numbers indicating the credit card information that the merchant is maintaining for the customer;

FIG. 3 is a flow chart showing the steps for conveying to a customer an indication of the customer's credit card numbers that are on file by the merchant, in accord with the present invention; and

FIG. 4 is a flow chart illustrating the steps implemented when extracting a portion of each of the credit card numbers for inclusion in a message transmitted to the customer by the merchant.

## DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference to FIG. 1, the principal components used to implement the present invention are illustrated in a block diagram. At the top of the Figure, a dash line defines a customer location 10, which in many cases will be the customer's home or place of business. At customer location 10, a personal computer 12 is employed to receive and transmit E-mail or to receive and transmit data over the World Wide Web or to receive and transmit messages by some other means. Personal computer 12 is generally conventional in design, comprising a processor chassis 14 within which are disposed a central processing unit (CPU) and supporting integrated circuitry. Coupled to processor chassis 14 is a keyboard 16 and a monitor 18. Personal computer 12 is controlled by the customer using keyboard 16 and a mouse 20 (optional) or other pointing device that controls a cursor that is moved about on the screen of the monitor to make selections in programs executing on the personal computer. In the front panel of the processor chassis are mounted a floppy drive 22 and a hard drive 24.

Although a desktop type of personal computer is illustrated in FIG. 1, it will be understood that a laptop or other, type of portable computer, a "dumb" terminal, or a personal digital assistant can also be used in connection with the present invention, for receiving and transmitting messages over a non-secure network. In addition, a workstation on a local area network at the customer location can be used instead of personal computer 12 for receiving and transmit-

5,715,399

| 5 | 6 |

ting messages over the non-secure network. Accordingly, it should be apparent that the details of personal computer 12 are not particularly relevant to the present invention. Personal computer 12 simply serves as a convenient interface for receiving and transmitting messages over the non-secure network.

While the present invention is applicable to private networks such as COMPUSERVE™, PRODIGY™, and AMERICA ONLINE™, in FIG. 1, personal computer 12 is shown connected to an Internet network 30. The connection between personal computer 12 and the Internet can be through a modem and telephone line via a private Internet service provider that is directly connected to the Internet network, through an Internet service provider that is directly connected, or via a direct high-speed data connection. The details of the type of connection to the Internet (or other) network are of no consequence in the present invention.

Internet network 30 is depicted in FIG. 1 as an amorphous shape to indicate that it is a complex system, which can involve many thousands of nodes and components, conveying signals by land lines, satellite, and/or optical fibers. The details of the Internet network are, however, not important in the present invention.

The present invention is likely to find application when a customer is placing or has placed an order with an on-line merchant for a service or merchandise via the Internet (or other non-secure network). The present invention is applicable in those cases where the customer has previously placed one or more orders with the merchant and has provided the merchant with one or more credit card numbers, which the merchant has maintained in a customer file. To complete a current transaction with the customer, the merchant will need for the customer to confirm that a credit card previously provided should be charged for the transaction. If more than one credit card number appears in the file for the customer, it will also be necessary for the customer to indicate the specific credit card number that should be charged. When a merchant needs to transmit information indicating the credit card numbers that a customer has on file with the merchant, a message containing this information can be transmitted over the Internet network from a merchant location 32 to the appropriate customer location 10, using the present invention, without compromising the confidentiality and security of the customer's credit card number(s).

In FIG. 1, merchant location 32 is indicated by a dash line surrounding the components, including a computer 38, that the merchant uses to communicate with customers through messages conveyed over the Internet. Preferably, computer 38 comprises a SUN SPARC5™ minicomputer, which includes a CPU, RAM, ROM, and a non-volatile storage device (a high-speed hard drive—not separately shown) for use in storing a database 40. Computer 38 is coupled to a router 36, such as a Livingston PORTMASTER™, which is connected to a digital service unit/customer service unit (DSU/CSU) 34, such as an ADC KENTROX D-SERV™. The DSU/CSU is connected to high-speed data lines that access Internet network 30. In the memory of computer 38 are stored application programs that execute on the CPU. Among these programs, for use in the present invention, are an ORACLE™ database management system and custom software. The programs or software comprise machine instructions that instruct the CPU within computer 38 to implement the steps of the present invention, generally as explained below.

Credit card numbers for customers are stored in database 40 by the merchant. Each credit card number is associated

with one of the customers who has previously transacted business with the merchant and with other data for the customers, such as names, addresses, and telephone numbers.

As discussed above in the Background of the Invention, public networks such as Internet network 30 are notoriously lacking in security for transmission of sensitive and confidential data, such as credit card numbers. Sending a message containing a complete credit card number from merchant location 32 to customer location 10 over Internet network 30 would jeopardize the security of the credit card number. However, a merchant can safely employ the present invention to convey a message to a customer indicating the credit card number(s) that the customer has on file with the merchant; the message can be conveyed over the Internet network from merchant location 32 to customer location 10, without risk that the customer's credit card number(s) might be discovered by a third party.

An exemplary E-mail message 50 that indicates a customer's credit card numbers on file by a merchant is shown in FIG. 2. A message heading 56 includes an E-mail address, indicates the merchant who is sending the message, provides an order message ID (MID) number that identifies the current transaction to be charged to the customer's credit card account, and notes that the subject of the message is credit card selection.

In the body of the message, an explanation is provided that indicates the response required of the customer. Although not shown in this exemplary message, the merchant may also include language in the message soliciting the customer to make a particular or additional purchases. More importantly, the customer is asked to reply to the E-mail message by confirming or correcting a customer address 58 and indicating a specific one of the credit card numbers in a list 52 that is to be charged for the current transaction. If a customer has only a single credit card number on file with the merchant, the message will ask the customer to confirm that the credit card number on file should be charged for the current transaction.

The message sent by the merchant indicates only a portion of each of the credit card numbers that the customer has on file with the merchant. In this example, a heading 54 notes that ONLY the last five digits of the entire twelve to sixteen digits in the typical credit card number are included in the message, in list 52. Although in this example, the last five digits of the complete credit card number are displayed in the message, it will be appreciated that either fewer or more than five digits of the credit card number can instead be displayed in list 52.

Alternatively, the message might display the first n digits of the credit card numbers; however, this alternative is less likely, because the first few digits are the same for a large number of credit cards. This detail is relatively unimportant, so long as the message displays only a relatively small subset of the entire credit card number.

Further details of the process for indicating to the customer the credit card numbers that the customer has on file with the merchant are illustrated in the flow chart shown in FIG. 3, beginning at a start block 80. In a block 82, computer 38 retrieves from database 40 all of the credit card numbers on file for a specific customer, who is at customer location 10. In a block 84, computer 38 extracts a portion of each of the credit card numbers retrieved in block 82. In a block 86, computer 38 constructs a message (E-mail, World Wide Web page, or other type of message) containing the portion(s) of the credit card number(s) extracted in block 84. In a block

5,715,399

7

88. computer 38 transmits the message prepared in block 86 from merchant location 32 to customer location 10 over Internet network 30. In a block 90, the process is concluded.

In the preferred embodiment, the step of extracting a portion of each credit card number, which is referenced in block 84, is described in detail in FIG. 4, beginning at a start block 100. In a block 102, a variable N is set equal to 5. In a decision block 104, the numbers represented by the last N digits of each credit card number are examined for uniqueness. (The last N digits of a credit card number referred to as a "tail" in the following discussion.) If the tails of the customer's credit card numbers are all different or unique within the set of tails, the extraction process concludes in a block 110, by returning the last N digits or tail of each credit card number. If the tails of all of the customer's credit card numbers are not unique within the set, the value of N is incremented by 1 in a block 106. Although not specifically indicated within the flow chart, uniqueness of a tail also depends upon the type of credit card, and may depend upon other data on the credit card, such as the expiration date. Thus, a customer's VISA™ credit card expiring on 5/97 would be uniquely identified relative the customer's DIS-COVER™ credit card expiring on 8/96, even though both cards were indicated by the same last N digits or tails, because the two credit cards are of different type and/or have different expiration dates.

In a decision block 108, the variable N is examined to determine if it is equal 7. If so, the extraction process again concludes in block 110, by returning the last N digits as the tails of the customer's credit card numbers. Returning to decision block 108, if N does not equal 7, processing loops back to decision block 104, where the N digits comprising the tails of the customer's credit card numbers are again examined for uniqueness within the set. Regardless of the path taken, the logic eventually reaches block 110, from which point processing continues with block 86 in FIG. 3.

Although the present invention has been described in connection with the preferred form of practicing it, those of ordinary skill in the art will understand that many modifications can be made thereto within the scope of the claims that follow. Accordingly, it is not intended that the scope of the invention in any way be limited by the above description, but instead be determined entirely by reference to the claims that follow.

The invention in which an exclusive right is claimed is defined by the following:

1. A method enabling a merchant to indicate to a customer by a communication over a non-secure network, a credit card number of the customer that is maintained in a database by the merchant, said method comprising the steps of:

(a) retrieving the credit card number of the customer from the database;

(b) extracting a portion of the credit card number, said portion being substantially smaller than the complete credit card number;,

(c) constructing a message containing the portion of the credit card number; and

(d) transmitting the message to the customer over the non-secure network.

2. The method of claim 1, wherein the message also includes a notation indicating the portion of the credit card number that has been included in the message.

3. The method of claim 1, wherein the portion comprises the last N digits of the credit card number, where N is an integer.

4. The method of claim 1, wherein the message comprises an E-mail message addressed to the customer.

8

5. The method of claim 1, wherein the message comprises a World Wide Web page.

6. The method of claim 1, wherein the merchant maintains a plurality of credit card numbers of the customer in a database, further comprising the steps of repeating steps (a) and (b) for each of the plurality of the credit card numbers of the customer that are in the database to obtain portions of each of the plurality of credit card numbers of the customer; and constructing the message so that the message contains the portions of each of the plurality of the credit card numbers of the customer.

7. The method of claim 6, further comprising the steps of determining if the portions of the plurality of the credit card numbers of the customer all differ from each other, and if not, successively increasing a size of the portion of each of said plurality of the credit card numbers extracted to form a larger portion, until said larger portions all differ from each other; and then constructing the message to include the larger portions of said plurality of the credit card numbers.

8. The method of claim 7, further comprising the step of indicating in the message a type of credit card for each of the portions of the credit card numbers listed, wherein the portions of two credit card numbers differ from each other f the portions of said two credit card numbers are from different types of credit cards, even though the portions of said two credit card numbers are numerically equal.

9. The method of claim 7, further comprising the step of indicating in the message a credit card expiration date associated with each of the portions of the credit card numbers listed, wherein the portions of two credit card numbers differ from each other if the credit card expiration dates associated with the portions of said two credit card numbers are different, even though the portions of said two credit card numbers are numerically equal.

10. The method of claim 7, further comprising the step of requesting the customer to indicate a specific one of the plurality of the credit card numbers of the customer that should be used in a transaction with the merchant in a return message.

11. A system for constructing and transmitting a message from a merchant to a customer using a non-secure transmission method, said message indicating a credit card number of the customer that is maintained by the merchant in a database, comprising:

(a) a computer for use in constructing and transmitting said messages, said computer having a central processor that executes instructions, a memory for storing the instructions to be executed, and non-volatile storage for storing the database and the messages; and

(b) said instructions stored in the memory of the computer causing the central processor to:

(i) retrieve the credit card number of the customer from the database stored in the non-volatile storage;

(ii) extract a portion of said credit card number, said portion being substantially smaller than the complete credit card number;

(iii) construct a message including the portion of the credit card number; and

(iv) transmit the message to the customer using the nonsecure transmission method.

12. The system of claim 11, wherein the instructions cause the central processor to include in the message a notation indicating the portion of the credit card number that has been included in the message.

13. The system of claim 11, wherein the instructions cause the central processor to extract the last N digits of the credit card number for use as said portion, where N is an integer.

5,715,399

**9**

**14.** The system of claim **11**, wherein the instructions cause the central processor to construct the message as an E-mail message.

**15.** The system of claim **11**, wherein the instructions cause the central processor to construct the message as a World Wide Web page.

**16.** The system of claim **11**, wherein the merchant maintains a plurality of credit card numbers for the customer in the database, and wherein the instructions cause the central processor to:

(a) retrieve all of said plurality of the credit card numbers from the database;

(b) extract portions of the plurality of the credit card numbers; and

(c) construct the message so that the message includes said portions of said plurality of credit card numbers.

**17.** The system of claim **16**, wherein the instructions further cause the central processor to:

determine if the portions of the plurality of the credit card numbers of the customer that are extracted all differ from each other, and if not:

(a) successively increase a size of said portions to form larger portions of said plurality of credit card numbers until said larger portions all differ from each other; and

**10**

(b) construct the message so that the message includes the larger portions.

**18.** The system of claim **17**, wherein the instructions cause the central processor to indicate in the message a type of credit card associated with each portion of the credit card numbers listed; and to determine that the portions of the credit card numbers differ from each other if the portions of said two credit card numbers are for different types of credit cards, although the portions of said two credit card numbers are numerically equal.

**19.** The system of claim **17**, wherein the instructions cause the central processor to indicate in the message a credit expiration date associated with each of the portions of the credit card numbers listed; and to determine that the portions of two credit card numbers differ from each other if the portions of said two credit card numbers are associated with different credit card expiration dates, although the portions of said two credit card numbers are numerically equal.

**20.** The system of claim **11**, wherein the instructions cause the central processor to construct the message to include a request that the customer indicate a specific one of the plurality of the credit card numbers of the customer that should be used in a transaction with the merchant, in a return message.

\*    \*    \*    \*    \*

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.    :   5,715,399

DATED         :   February 3, 1998

INVENTOR(S) :   Jeffrey P. Bezos

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

On the Title page, item [57]:

| | |
|---|---|
| In the Abstract: | "transits" should read --transmits-- |
| Column 4, Line 61 | "other," should read --other-- |
| Column 5, Line 27 | "present," should read --present-- |
| Column 6, Line 33 | "E-mall" should read --E-mail-- |
| Column 7, Line 14 | "tall" should read --tail-- |
| Column 7, Line 18 | "tall" should read --tail-- |
| Column 7, Line 45 | "fight" should read --right-- |
| Column 7, Line 55 (Claim 1) | "number;," should read --number;-- |
| Column 8, Line 24 (Claim 8) | "f" should read --if-- |

Signed and Sealed this

Seventh Day of July, 1998

*Attest:*

BRUCE LEHMAN

*Attesting Officer*                    *Commissioner of Patents and Trademarks*

US006029141A

# United States Patent [19]

## Bezos et al.

[11] **Patent Number:** **6,029,141**

[45] **Date of Patent:** **Feb. 22, 2000**

[54] **INTERNET-BASED CUSTOMER REFERRAL SYSTEM**

[75] Inventors: **Jeffrey P. Bezos**; **Sheldon J. Kaphan**; **Ellen L. Ratajak**; **Thomas K. Schonhoff**, all of Seattle, Wash.

[73] Assignee: **Amazon.com, Inc.**, Seattle, Wash.

[21] Appl. No.: **08/883,770**

[22] Filed: **Jun. 27, 1997**

[51] **Int. Cl.**[7] .................................................. **G06F 17/60**

[52] **U.S. Cl.** .................................. **705/27**; 705/26; 705/10

[58] **Field of Search** .................................. 705/27, 10, 14, 705/26; 707/513; 395/200.3, 200.33, 200.53, 200.54, 200.57

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,319,542 | 6/1994 | King, Jr. et al. | ......................... 705/27 |
| 5,537,314 | 7/1996 | Kanter . | |
| 5,590,197 | 12/1996 | Chen et al. . | |

(List continued on next page.)

### OTHER PUBLICATIONS

Dialog file 16 (database PROMT(R)), No. 6016914, "Book-Site launches version 3.0 of the popular electronic commerce web site.", Business Wire, 2 pages, Feb. 23, 1996.

Dialog file 16 (database PROMT(R)), No. 6296727, "Amazon.com introduces "Amazon.com Associates"—a new model for internet–based commerce." Business Wire, 3 pages, Jul. 18, 1996.

Can Mixing 'Cookies' with Online Marketing be a Receipe for Heartburn? (Infoworld, vol. 18, No. 30), Jul. 22, 1996.

Real Time Travel Info Available Online (Dialog database file 9, document 01107096), Jan. 17, 1995.

Online Growth Virtually Untapped; PC Vendors Taking More Advantage of Booming Sales (Computer Retail Week vol. 4, No. 64, p. 160), Jun. 6, 1994.

Selected document from Books.com Web site describing Book Stacks Unlimited links partner program, downloaded and printed Jun. 20, 1997 and Jun. 23, 1997.

Selected documents from Incognito Cafe Web site describing several on–line bookstore links, undated (5 printed pages).

Resnick, P., Iacovou, N., Suchak, M., Bergstrom, P., and Riedl, J., GroupLens: An Open Architecture for Collaborative Filtering of Netnews. *Proceedings of ACM 1994 Conference on Computer Supported Cooperative Work*, Chapel Hill, NC, pp. 175–186.

Balabanovic, M., and Shoham, Y., Fab: Content–Based, Collaborative Recommendation. *Communications of the ACM*, vol. 40., No. 3, (Mar. 1997) pp. 66–73.

*Primary Examiner*—Emanuel Todd Voeltz
*Assistant Examiner*—Alexander Kalinowski
*Attorney, Agent, or Firm*—Knobbe, Martens Olson & Bear, LLP

[57] **ABSTRACT**

Disclosed is an Internet-based referral system that enables individuals and other business entities ("associates") to market products, in return for a commission, that are sold from a merchant's Web site. The system includes automated registration software that runs on the merchant's Web site to allow entities to register as associates. Following registration, the associate sets up a Web site (or other information dissemination system) to distribute hypertextual catalog documents that includes marketing information (product reviews, recommendations, etc.) about selected products of the merchant. In association with each such product, the catalog document includes a hypertextual "referral link" that allows a user ("customer") to link to the merchant's site and purchase the product. When a customer selects a referral link, the customer's computer transmits unique IDs of the selected product and of the associate to the merchant's site, allowing the merchant to identify the product and the referring associate. If the customer subsequently purchases the product from the merchant's site, a commission is automatically credited to an account of the referring associate. The merchant site also implements an electronic shopping cart that allows the customer to select products from multiple different Web sites, and then perform a single "check out" from the merchant's site.

**42 Claims, 14 Drawing Sheets**



**6,029,141**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,712,979 | 1/1998 | Graber et al. | 395/200.54 |
| 5,715,314 | 2/1998 | Payne et al. | 380/24 |
| 5,717,860 | 2/1998 | Graber et al. | 395/200.57 |
| 5,724,424 | 3/1998 | Gifford | 380/24 |
| 5,745,681 | 4/1998 | Levine et al. | 395/200.3 |
| 5,812,769 | 9/1998 | Graber et al. | 395/200.58 |
| 5,819,285 | 10/1998 | Damico et al. | 707/104 |



FIG. 1



*FIG. 2*

EVENT

A.  HTTP GET DOC FROM SERVER

B.  HTML DOC SENT TO CLIENT

C.  CLIENT INPUTS DATA ON-LINE

D.  HTTP POST MSG W/DATA FROM ENROLLING ASSOCIATE

E.  WEB SERVER RECEIVES DATA; ENROLLMENT SW PROGRAM PROCESSES INFO CREATING AN ASSOCIATE DB RECORD AND GENERATES UNIQUE STORE ID

F.  ENROLLMENT SW PROGRAM AUTOMATICALLY GENERATES E-MAIL MSG TO ASSOC. COMPUTER W/PROPER LINK INSTRUCTIONS AND UNIQUE STORE ID

AMAZON.COM
Text Only

SEARCH BY
Author, Title, Subject
Keyword
ISBN
Advanced Query

BUY BOOKS
Shopping Cart
Checkout

SUPER ROOM
Computer & Internet

MILES OF AISLES
Business
Science Fiction
Nonfiction
Literary Fiction
Romance
Children's Books
And Many More . . .

LISTS
Titles in the News
Bestsellers
Award Winners
Amazon.com 500
Hot 20
Mystery 50
Literary 50
Computer 50
Business 50
Science Fiction 50

**Associates Program Application**

**Contact Information**

Please fill out the name and address of the person in charge of your sponsoring Web site. This is the person to whom we will address all correspondence about your participation in the Associates Program.

Contact person's name:

Address Line 1:

Address Line 2:

City:

State:

ZIP Code:

Phone number:

Contact person's e-mail address:

Please fill out the name and address of the person to whom we should send referral fee payments earned through this program.

Payee's name:

FIG. 3a

**ARTICLES & INTERVIEWS**
Amazon.com Journal
Eclectica
In Their Own Words

**SIGN-UP**
Eyes
Expert Editors

**BIG FUN**
Win Prizes
Wanna Play?
Customer Reviews

**PARTNERS**
Associates
Publishers
Authors

**AMAZON.COM**
About Our Store
Press Clips
Join Our Staff
Customer Comments
Send Us E-mail

**HELP**
Help Desk
Your Account
New User Guide
Home

Address Line 1:

Address Line 2:

City:

State:

ZIP Code:

Phone number:

Payee's e-mail address:

### Describe Your Existing Web Site

Enter the name and URL of the Web site through which you wish to link to our books.

**Name of the sponsoring Web site:**

**Home page URL of sponsoring Web site:**
http://

### Describe Your Intended Book Listings:

Briefly describe the type of books you intend to list on your site. Add any other brief comments or explanation (try to keep this under 10 lines or so):

## FIG. 3b

**Description and comments:**

At some point, we may decide to display your name somewhere on our pages during a customer order, e.g. "Good Zookeeping Magazine in association with Amazon.com". Please enter the name we should use to refer to you if we do so. In the above example, the name you entered would have been "Good Zookeeping Magazine". In many cases, we know that this will be the same as the name of your sponsoring Web site, but please enter the correct name again here:

**Enter the name we should use on these pages:**

**Submit your application**

Before finalizing and submitting your application, please review the Operating Agreement, which describes the terms and conditions of your participation in the Associates Program. Once you have filled out this form and reviewed the agreement, press the "Yes" button to submit your application or the "No" button to exit.

By pressing the "yes" button, you indicate that you want to apply to participate in the Amazon.com Associates Program, that you have reviewed the Operating Agreement and understand its contents, and that, if Amazon.com, Inc. accepts this application, you agree to be bound by the terms and conditions of the operating agreement.

Yes, I want to participate

No, I do not want to participate

# FIG. 3c



http://www.amazon.com/exec/obidos/product_id/store_idA/

F/G. 4

EVENT

A.  HTTP GET DOC FF

B.  HTML CATALOG DC
    LINK SENT TO CLI

C.  CUSTOMER CLICKS
    HYPERLINK

D.  HTTP GET CATALO

E.  1)PARSE URL LINK
    2)CREATE CUSTOM
    LOOK UP FOR PR
    ORDER USING CO
    3)CREATE SHOPPI
    CUSTOMER ID, PR
    STORE ID

F.  PASS PRODUCT D
    PG HTML DOC
    TO CLIENT



*FIG. 5*

EVENT

A.  HTTP GET DOC FROM SERVER

B.  HTML CATALOG DOC W/EMBEDDED
    LINK SENT TO CLIENT

C.  CUSTOMER CLICKS ON
    HYPERLINK

D.  HTTP GET CATALOG DOC FROM SERVER

E.  1)PARSE URL LINK FROM HTTP CALL
    2)CREATE CUSTOMER DB ENTRY OR
      LOOK UP FOR PREVIOUS OPEN
      ORDER USING COOKIE
    3)CREATE SHOPPING CART INCLUDING
      CUSTOMER ID, PRODUCT ID
      STORE ID

F.  PASS PRODUCT DTL
    PG HTML DOC
    TO CLIENT

G.  SELECT PRODUCT FROM
    DETAIL PAGE BY ADDING
    TO SHOPPING CART

*120*

### New Titles



*600*

Terrain Skiing:

**How to master tough skiing, like the experts!** ⎤ *602*

**By Seth Masia** ← *604*

You've been through ski school and are a good skier -- on groomed terrain. Now what? How do you take your skills into difficult terrain and snow conditions? Seth Masia, long-time SKI Magazine writer and a veteran of the Squaw Valley Ski School, provides insight into how experts make tough conditions look easy -- and how you can, too. The book emphasizes terrain absorption and cross-over skills that are especially useful for skiers adopting the new supersidecut skis.

Selected as the official manual of the North American Ski Training Center.

"Covers snow conditions like crust, ice, and powder, and terrain situations like bumps, trees and chutes in ways that are succinct and to the point. Skiers want outcome-specific instruction and this book gives it." -- Dave Merriam, SKI Magazine instruction editor and head coach of the PSIA Demonstration Teams.

"Full of mountain smarts and savvy." --Snow Country

$12.95. Contemporary Books ISBN 0-8092-3202-2                    *606*

Click here to order Terrain Skiing!

↖ *608*

# FIG. 6

```
<HR>
<H2>New Titles</H2>
<IMG  Align=Left border=1   SRC="terraincov.gif">
<H3><A HREF="http://www.amazon.com/exec/obidos/ISBN=0809232022/skinetA/">Terrain Skiing:</A></H3>
<H4>How to master tough skiing, like the experts! </H4>
<H4>By Seth Masia</h4>
You've been through ski school and are a good skier -- on groomed terrain. Now what? How do you take your skills
into difficult terrain and snow conditions? Seth Masia, long-time Ski Magazine writer and a veteran of the Squaw
Valley Ski School, provides insight into how experts make tough conditions look easy-- and how you can too. The
book emphasizes terrain absorption and cross-over skills that are especially useful for skiers adopting the new
supersidecut skis.

Selected as the official manual of the North American Ski Training Center

"Covers snow conditions like crust, ice, and powder, and terrain situations like bumps, trees and chutes in ways that
are succinct and to the point. Skiers want outcome-specific instructions and this book gives it." -- Dave Merriam,
Ski Magazine instruction editor and head coach of the PSIA Demonstration Teams.

"full of mountain smarts and savvy." --Snow Country

$12.95.  Contemporary Books ISBN 0-8092-3202-2<P>
<A HREF="http://www.amazon.com/exec/obidos/ISBN=0809232022/skinetA/">Click here to order Terrain Skiing!</A>
<HR>
```

*FIG. 7*

FIG. 8



FIG. 9



FIG. 10a



FIG. 10b



FIG. 10c

6,029,141

**1**

# INTERNET-BASED CUSTOMER REFERRAL SYSTEM

## FIELD OF THE INVENTION

This invention relates to electronic commerce. Specifically, this invention relates to information processing methods for marketing and selling goods via the Internet or other interactive network.

## APPENDICES

Included as Appendices A and B are documents that illustrate a preferred embodiment of the invention. These materials form part of the disclosure of the specification.

## BACKGROUND OF THE INVENTION

With the increasing popularity of the Internet and the World Wide Web, it has become common for merchants to set up Web sites for marketing and selling goods. One example of such a Web site is the online bookstore site of AMAZON.COM, the assignee of the present invention. Via this site, consumers can access and place orders from an online book catalog that includes millions of titles.

One problem commonly encountered by online merchants is an inability to effectively market goods via their Web sites. Because the customer cannot physically inspect the products via the Web site, and typically cannot talk to a salesperson, it is desirable that the site provide access to product reviews, product ratings, and other information that can be relied on by the customer to make an informed decision. In many cases, however, the merchant lacks the resources needed to generate or otherwise obtain such information, especially if the merchant sells a large and diverse selection of goods. For example, it would not be practical for AMAZON.COM to prepare reviews of all, or even a significant portion of, the millions of titles available on the AMAZON.COM site.

Another problem commonly faced by online merchants is an inability to efficiently attract potential consumers to their Web sites. One way of attracting consumers has been to market the site through television, newspaper and Internet advertisements. However, advertising a site using conventional methods can be expensive, and can consume significant human resources. In addition, it is often difficult or impossible to evaluate the effectiveness of a given advertisement.

The present invention addresses these and other problems.

## SUMMARY OF THE INVENTION

The present invention provides a software system and method for enabling an Internet sales entity, referred to herein as the "merchant," to efficiently market and sell goods in cooperation with Web sites or other network sites of respective business partners, referred to herein as "associates." The system and method are implemented in part by software that runs on the merchant's Web site. Through this site, an entity can enroll (via an automated registration process) as an associate, and can then disseminate catalogs (Web documents, PUSH documents, e-mail newsletters, etc.) that include the associate's reviews and/or recommendations on specific products sold by the merchant.

In accordance with one aspect of the invention, the associate catalog documents include product-specific hyperlinks, referred to herein as "referral links," that allow potential customers to link to the merchant's Web site to initiate purchases of such products from the merchant. Each referral link is provided within the catalog document in

**2**

association with referral information that is transmitted to the merchant's site when a user (customer) clicks on the referral link. This referral information preferably includes the unique ID of the associate (assigned upon enrollment) and the unique ID of the selected product. Referral processing software running on the merchant site uses this information to identify the associate that referred the customer to the merchant site, and to identify the product selected from the associate's catalog. If the customer subsequently purchases the selected product from the merchant site (e.g., by filling out an order form page and submitting the order), the referral processing software automatically credits the referring associate for the referral by, for example, applying a commission to an account of the associate. In one implementation, the referral commission is automatically generated based on a fixed percentage of the merchant's selling price, and is paid to the associate electronically on a periodic basis (such as every calendar quarter).

In accordance with another aspect of the invention, the merchant site implements an automated associate enrollment process for allowing individuals and business entities to register as associates. The enrollment process is implemented in part by Web pages that are transmitted to the computer of the associate applicant, and by enrollment software that runs on the merchant site. During the enrollment process, the applicant is presented with an online business agreement (in the form of a Web page) that sets forth the terms and conditions of doing business with the merchant. In addition, the applicant is presented with an online form that requests various information, such as the name, payment address and e-mail address of the applicant and a description of the proposed associate Web site. In one implementation, the enrollment software includes text scanning code that automatically scans the completed form for pre-specified words and phrases (vulgarities, etc.) that may give rise to a rejection of the application, and flags the application for further (human) review when such a word or phrase is found.

As part of the online registration, the application is processed (either automatically or by a staff member of the merchant), and the enrollment software generates and assigns a unique associate ID to the applicant, and stores this ID (together with other associate information) in an associate database of the merchant site. In addition, the enrollment software generates and sends an e-mail message to the associate with instructions for placing referral links within catalog documents.

In a preferred embodiment, the merchant site includes code that maintains a unified shopping cart data structure ("shopping cart") for each ongoing customer shopping session. For each ongoing shopping session, the shopping cart maintains a record of at least: (i) the products that are currently selected by the customer for prospective purchase, and (ii) the referral source (if any) of each such product. In one implementation, each shopping cart persists on the merchant site for an extended period of time (such as one week) following the most recent access by the customer, thereby allowing the customer to conduct extended shopping sessions. To purchase the products represented within the shopping cart, the customer proceeds to a "check out" area of the merchant site and submits an order. Software running on the merchant site then uses the information collected within the shopping cart to identify, and appropriately credit the account of, each associate that provided a corresponding referral.

An important benefit of the shopping cart feature is that it allows the customer to select products from multiple differ-

6,029,141

3

ent sites, and then perform a single check-out to purchase all of the selected products. Another benefit is that it provides an efficient mechanism for crediting the accounts of the associates at the time of purchase. Although the use of a shopping cart provides certain advantages, the referral tracking and crediting features of the invention can be implemented without the use of a shopping cart.

In one implementation, the various components are provided on the Web site of AMAZON.COM as part of the AMAZON.COM Associates Program. Through this program, an individual or business entity can register as an AMAZON.COM associate, and can then set up a Web site to market customized subsets of the books (typically in a particular area of expertise) available from the AMAZON-.COM site. For example, a computer company can set up a site (or add an area to an existing site) to recommend and sell selected books on computer programming languages, and a Cajun chef can set up a site to recommend and sell selected books on New Orleans style cooking. The associate is in turn paid a commission or other consideration based on the referrals that result in actual purchases. Because AMAZON-.COM handles the various tasks associated with processing orders from customers (including shipping, collections, and customer service), the associate need only be concerned with the administration of the associate Web site.

An important benefit of the invention is that it allows the task of marketing the merchant's products to be efficiently distributed among entities that have established reputations and exposure within their respective fields. Another benefit is that it provides an efficient mechanism for exposing the merchant's Web site to the public, by encouraging others (associates) to set up outgoing links to the merchant's site.

Because the associate enrollment and referral tracking/credit functions are automated in whole or in part, these benefits can be realized with minimal supervision by the merchant. In addition, because the compensation provided to the associates is performance-based (e.g., based on the number of referrals that result in actual sales), the merchant need not be concerned with the existence of large numbers of associates that provide relatively small numbers of referrals.

## BRIEF DESCRIPTION OF THE DRAWINGS

These and other features and advantages of the invention will now be described with reference to the drawings of certain preferred embodiments, which are intended to illustrate and not to limit the invention, and in which:

FIG. 1 is a high-level architectural drawing illustrating the primary components of a system that operates in accordance with the present invention.

FIG. 2 is an architectural drawing and flow diagram illustrating the enrollment function of the system.

FIGS. 3a–3c are respective screen displays further illustrating the enrollment function.

FIG. 4 illustrates a URL format used to embed referral links within Web documents in accordance with the invention.

FIG. 5 is an architectural drawing and flow diagram illustrating a referral transaction sequence in accordance with the present invention.

FIG. 6 is a screen display illustrating an HTML catalog document of the associate's Web site.

FIG. 7 is an HTML listing illustrating a preferred method for embedding a referral link within a catalog document of an associate's Web site.

4

FIG. 8 is a screen display illustrating an HTML catalog document detail page of the merchant Web site.

FIG. 9 is a screen display illustrating a preferred shopping cart processing method in accordance with the present invention.

FIGS. 10a–10c are screen displays illustrating HTML documents of the merchant Web site.

In the drawings, the first digit of each reference number indicates the Figure number in which the referenced item first appears.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

To facilitate a complete understanding of the invention, the description of the preferred embodiment is arranged within the following sections:

1. GLOSSARY OF TERMS AND ACRONYMS
2. OVERVIEW OF SYSTEM COMPONENTS AND OPERATION
3. ASSOCIATE ENROLLMENT FUNCTION
4. REFERRAL TRANSACTION FUNCTION
5. UNIFIED SHOPPING CART FUNCTION
6. REPORT GENERATION FUNCTION
7. CONCLUSION

1. Glossary of Terms and Acronyms

The following terms and acronyms are used throughout the detailed description:

Client-Server. A model of interaction in a distributed system in which a program at one site sends a request to a program at another site and waits for a response. The requesting program is called the "client," and the program which responds to the request is called the "server." In the context of the World Wide Web (discussed below), the client is a "Web browser" (or simply "browser") which runs on a computer of a user; the program which responds to browser requests by serving Web pages is commonly referred to as a "Web server."

Hyperlink. A navigational link from one document to another, or from one portion (or component) of a document to another. Typically, a hyperlink is displayed as a highlighted word or phrase that can be selected by clicking on it using a mouse to jump to the associated document or documented portion.

Hypertext System. A computer-based informational system in which documents (and possibly other types of data entities) are linked together via hyperlinks to form a user-navigable "web."

Internet. A collection of interconnected (public and/or private) networks that are linked together by a set of standard protocols (such as TCP/IP and HTTP) to form a global, distributed network. (While this term is intended to refer to what is now commonly known as the Internet, it is also intended to encompass variations which may be made in the future, including changes and additions to existing standard protocols.)

World Wide Web ("Web"). Used herein to refer generally to both (i) a distributed collection of interlinked, user-viewable hypertext documents (commonly referred to as Web documents or Web pages) that are accessible via the Internet, and (ii) the client and server software components which provide user access to such documents using standardized Internet protocols. Currently, the primary standard protocol for allowing applications to locate and acquire Web documents is HTTP, and the Web pages are encoded using HTML. However, the terms "Web" and "World Wide Web"

6,029,141

5

are intended to encompass future markup languages and transport protocols which may be used in place of (or in addition to) HTML and HTTP.

Web Site. A computer system that serves informational content over a network using the standard protocols of the World Wide Web. Typically, a Web site corresponds to a particular Internet domain name, such as "amazon.com," and includes the content associated with a particular organization. As used herein, the term is generally intended to encompass both (i) the hardware/software server components that serve the informational content over the network, and (ii) the "back end" hardware/software components, including any non-standard or specialized components, that interact with the server components to perform services for Web site users.

HTML (HyperText Markup Language). A standard coding convention and set of codes for attaching presentation and linking attributes to informational content within documents. (HTML 2.0 is currently the primary standard used for generating Web documents.) During a document authoring stage, the HTML codes (referred to as "tags") are embedded within the informational content of the document. When the Web document (or HTML document) is subsequently transferred from a Web server to a browser, the codes are interpreted by the browser and used to parse and display the document. Additionally in specifying how the Web browser is to display the document, HTML tags can be used to create links to other Web documents (commonly referred to as "hyperlinks"). For more information on HTML, see Ian S. Graham, *The HTML Source Book*, John Wiley and Sons, Inc., 1995 (ISBN 0471-11894-4).

HTTP (HyperText Transport Protocol). The standard World Wide Web client-server protocol used for the exchange of information (such as HTML documents, and client requests for such documents) between a browser and a Web server. HTTP includes a number of different types of messages which can be sent from the client to the server to request different types of server actions. For example, a "GET" message, which has the format GET <URL>, causes the server to return the document or file located at the specified URL.

ISBN (International Standard Book Number). A numerical identifier associated with books, pamphlets, educational kits, microforms, CD-ROM and braille applications in circulation throughout the world. The ISBN is a ten-digit number assigned to each published title that provides an unduplicated, internationally recognized "identity."

URL (Uniform Resource Locator). A unique address which fully specifies the location of a file or other resource on the Internet. The general format of a URL is protocol:// machine address:port/path/filename. The port specification is optional, and if none is entered by the user, the browser defaults to the standard port for whatever service is specified as the protocol. For example, if HTTP is specified as the protocol, the browser will use the HTTP default port of **80**.

Cookies. A technology that enables a Web server to retrieve information from a user's computer that reveals prior browsing activities of the user. The informational item stored on the user's computer (typically on the hard drive) is commonly referred to as a "cookie." Many standard Web browsers support the use of cookies.

PUSH Technology. An information dissemination technology used to send data to users over a network. In contrast to the World Wide Web (a "pull" technology), in which the client browser must request a Web page before it is sent, PUSH protocols send the informational content to the user computer automatically, typically based on information prespecified by the user.

6

2. Overview of System Components and Operation

FIG. 1 illustrates the general architecture of a referral system that operates in accordance with the present invention. The system includes a customer computer **108**, an associate Web site **100**, and a merchant Web site **106**, all of which are linked together by the Internet **104**. The customer computer **108** may be any type of computing device that allows a user ("customer") to interactively browse Web sites via a Web browser **112**. For example, the customer computer **108** may be a personal computer (PC) that runs the Windows NT operating system.

The merchant Web site **106** is a site that provides various functionality for allowing customers to purchase products, including products selected from the Web sites of associates. Typically, this site will be operated by a business entity (referred to herein as the "merchant") that handles the various order processing, shipping, collections, and customer service tasks associated with the sale of goods. In an implementation described herein, the merchant Web site **106** is the site of AMAZON.COM.

As described below, the site **106** includes enrollment software that implements an online registration process for allowing other entities (individuals, companies, etc.) to register as associates. An entity enrolling as an associate provides the merchant Web site **106** with a completed, online registration application that is processed by an enrollment software program ("SW") at the site **106**. The enrollment software creates an entry in the associate database **160** according to the information provided by the enrolling associate.

The associate's Web site **100** is the site of an entity that has registered with the merchant, via the online registration process, to market a subset of the merchant's goods in return for compensation (preferably a performance-based commission). Typically, this site is owned and operated by an individual or business entity ("associate") that is not in the same business as that of the merchant. For example, in the context of the AMAZON.COM Associates Program, the associate may be an individual that is in the business of rating mystery novels.

As described below, because the merchant handles the tasks of processing online orders, shipping products, collecting payment, and providing customer service, the associate need not be concerned with these tasks. Thus, the associate can effectively become an online retailer immediately, by simply enrolling as an associate and setting up a Web site.

In addition, because the merchant Web site **106** includes software for automating the primary functions of doing business with associates (such as associate enrollment, referral transaction processing, and commission tracking and payment), the architecture allows the merchant to do business with large numbers (e.g., thousands) of associates with minimal supervision by the merchant. Further, because the commissions paid to the associates are performance-based, there is little or no downside to the merchant to enrolling marginally-productive associates that provide relatively small numbers of referrals.

In operation, the customer accesses the associate's Web site **100** using a standard Web browser **112**, such as Microsoft's Internet Explorer or Netscape's Navigator, which uses the HTTP protocol to communicate with a Web server **116** of the associate's site **100**. The Web server **116** accesses a local store of catalog documents **120** (in the form of HTML or "Web" documents) which can be requested, retrieved and viewed by the customer via the Web browser **112**. These catalog documents **120** include information

6,029,141

7

generated by the associate about the various products featured on the associate's Web site **100**. Preferably, this information includes editorial descriptions, reviews, and/or recommendations of the products that assist customers in making informed purchasing decisions.

The catalog documents **120** served by the associate's site **100** include special hyperlinks (to Web pages of the merchant Web site **106**) for allowing consumers to select products for prospective purchase. Typically, one such hyperlink is provided for each product displayed on the associate's Web site **100**. Alternatively, a hyperlink may be provided for a group of products. When a customer selects (e.g., clicks on) the hyperlink associated with a particular product, the customer is automatically connected to the merchant Web site **106**, and presented with various options (included within Web pages **136** served from the merchant Web site **106**) for allowing the customer to purchase the selected product from the merchant. The hyperlink thus serves as a referral mechanism for referring the customer to the merchant Web site **106**.

As described in detail below, the special hyperlinks (also referred to herein as "referral links") of the associate's catalog documents are provided in association with additional information (embedded in a pre-defined format within the associated URL) that is transmitted to the merchant Web site **106** in response to selection of the link. In one implementation, this information includes a unique identifier of the associate (assigned upon enrollment) and a unique identifier of the selected product (such as the ISBN of a book). A computer program **144** of the merchant Web site **106** uses this information to identify the associate that was the source of the referral, and to credit the sale (referral) to the associate if the customer subsequently purchases the product (or group of products). (In other implementations, the crediting of the associate may occur without regard to whether the product is purchased.) Commission payments can then be paid to the associates on a periodic basis (such as once a month). In one implementation, the commission payments are made electronically, via the computer program **144**, without the need for involvement by the merchant.

In one implementation, the merchant Web site **106** comprises a product information database (not shown) that stores product pricing information. The computer program **144** of the merchant site **106** uses this pricing information to calculate the proper commission or referral payment.

Although the implementation described herein uses monetary commissions to compensate the associates for referrals, other forms of compensation can be used. For example, an associate (and/or the associate's customers) could be given a discount on products or services sold by the merchant.

In one implementation of the merchant Web site **106**, selection of a referral link causes a product detail page **136** to be displayed on the customer computer **108**. This detail page **136** is served by the merchant Web site **106**, and includes various information provided by the merchant (price, inventory, standard product description, etc.) about the selected product. From this page, a hyperlink can be selected that allows the selected product to be added to a customer "shopping cart."

The shopping cart is a customer-specific data structure that is generated and maintained (within a shopping cart database **152**) by executable code of the merchant site **106**. The database may be any type of data repository including, for example, an SQL table or ASCII text file. The information stored within the shopping cart includes a list of the products that have been selected by the customer for pro-

8

spective purchase, together with an identifier of the referring associate (if any) corresponding to each such product. In one implementation, each shopping cart persists on the site **106** for an extended period of time (such as one week) following the most recent access by the customer, allowing the customer to conduct extended shopping sessions. When the customer proceeds to a check-out area of the merchant site **106** and submits an order for the selected products, the associate identifiers stored within the customer's shopping cart are used to appropriately credit the accounts of the referring associates. Although the shopping cart implementation provides an efficient mechanism for tracking and crediting referral events, referrals can alternatively be credited without the use of a shopping cart, such as by crediting the associate at the time of, or during the same shopping session as, the referral.

Because the identity of the customer is normally unknown to the merchant Web site **106** at the time of the referral event, the site **106** uses cookies technology to identify the customer, so that the customer can be associated with any existing shopping cart created during previous visits to the site **106**. This process involves retrieving the cookie **140** from the customer computer **108** with the Web server **132**, and then executing a computer program **144** that compares the cookie against information stored in a customer data structure **148**. If no shopping cart exists for the customer, or if no cookie exists on the customer computer **108**, a shopping cart structure is created for the user. Any of a variety of alternative techniques can be used to identify the customer, including prompting the customer for a user ID, and/or using URL information returned by the customer's Web browser.

Although the embodiment described herein uses Web technology to disseminate the catalog documents, any of a variety of document types and electronic dissemination technologies can be used. For example, the associate's catalog documents may be in the form of hypertextual e-mail messages that are disseminated by a list server, or PUSH documents disseminated by a PUSH server. As interactive television, video-on-demand, and Web TV technologies continue to evolve, it is contemplated that the "catalog documents" will include video advertisements that are displayed to the customer on a television screen. Further, although hypertextual catalog documents are preferably used, it is possible for an associate to use non-hypertextual catalogs (including paper-based product catalogs) that simply instruct the customer to manually enter the appropriate URL (including the referral information) into a browser program.

In addition, although the system is described in the context of "the" associate's Web site, it should be recognized that a given associate can disseminate its catalog documents (using the single associate ID assigned during online registration) from multiple different sites, including sites that use different document formats and transfer protocols. Further, although the system is described herein in the context of a merchant that sells products, it will be recognized that the architecture can also be used to sell services, including online services that are provided over the Internet.

As will be appreciated by those skilled in the art, the use of the URL-embedded referral information to identify the associate allows the associate to be identified, and properly credited for the referral, with a high degree of reliability. For example, in contrast to conventional user tracking techniques, the present method allows the associate to be reliably identified even if the associate Web site **100** operates behind a firewall. In addition, the method provides a high degree of flexibility to the associate. For example, the

6,029,141

9

associate can change to a different Internet service provider, and can use or switch between multiple catalog dissemination techniques (Web, e-mail, PUSH, etc.), without affecting the ability of the merchant Web site **106** to identify and credit the associate. Moreover, the associate can freely modify its product offerings—without the need for involvement by the merchant—by simply updating product descriptions and corresponding referral links within the catalog.

A significant benefit of the architecture is that it allows the task of marketing the merchant's products to be efficiently distributed among entities that have established reputations and exposure within their respective fields. In the context of the AMAZON.COM Internet bookstore, for example, a well-established computer company can set up an associate site (or an area of an existing site) to recommend its favorite books on programming languages; and an Italian chef can set up a site to recommend his favorite cookbooks on Italian cooking. In implementations that involve sales of other types of products (such as audio/video equipment), the associates may, for example, include testing laboratories that publish test results.

Because the associate enrollment and referral tracking functions are automated (in whole or in part), the referral services provided by the associates take place with little or no human supervision or intervention by the merchant. In addition, because the payments to the associates are performance-based (e.g., based on the number of sales resulting from associate referrals), the merchant need not be concerned with the effectiveness of any given associate site.

The system and method also provide an efficient mechanism for exposing the merchant and the merchant Web site **106** to the public by encouraging others (associates) to set up outgoing links to the merchant's Web site. For example, this may be beneficial where the merchant Web site **106** is configured to support direct sales (i.e., sales that do not involve referrals from associates), as is this case with the site of AMAZON.COM.

The various components and functions of the referral system are described in further detail below.

3. Associate Enrollment Function

As indicated above, the merchant Web site **106** includes automated enrollment software (FIG. **1**) for allowing an entity to apply, via the Internet, to operate as an associate. The registration process may include the following: (i) the presentation of an online business agreement to the applicants, (ii) the use of an automated "agent" to scan the application text for key inputted terms, including vulgarities and other terms that may serve as a basis for denying the application, (iii) the automated generation and assignment of a unique associate ID (also referred to herein as the "store ID") to an applicant, and (iv) the automated electronic transmission of referral link embedding instructions to the applicant.

FIG. **2** illustrates the general flow of information between components when an associate applicant uses a computer **200** to enroll as an associate. The computer **200** includes a conventional Web browser **204** which communicates with the merchant Web server **132** using the HTTP protocol. The Web server **132** accesses a local store **136** of HTML documents (Web pages) which can be requested, retrieved and viewed by the applicant via the Web browser **204**. These documents may, for example, include information about registering online to become an associate. Access to the merchant Web site **106** and the enrollment function is available to any client computer **200**, and the enrolling associate is not required to have an established Web site at the time of enrollment.

10

As further illustrated in FIG. **2**, the enrolling associate begins the enrollment function by selecting the proper hyperlink from the merchant Web page **136** containing online registration instructions. The merchant Web server **132** accesses a local store of HTML documents **136** and returns an online registration application document **208** (also shown in FIGS. **3***a*–**3***c*) to the enrolling associate's Web browser **204**. The enrolling associate can then fill out the detailed online application form **208**.

Referring to FIGS. **3***a*–**3***c*, a preferred embodiment of the online application form **208** is shown. The application requests information about the enrolling associate, including the Web server to be used for the associate's Web site, the associate Web site's descriptive name, and the e-mail address of the enrolling associate. Many alternative formats to the online application form are possible and FIGS. **3***a*–**3***c* are only representative of the types of information that may be requested.

With further reference to FIG. **2**, once the electronic application form **204** is completed by the enrolling associate, it is sent from the associate's computer **200** to the merchant Web server **132** for further processing. As will be appreciated by those skilled in the art, other forms of enrollment processing may be used, including but not limited to regular mail and electronic mail. In addition, although the automated enrollment function is preferably handled by the same computer system that handles the referral processing function, these functions could be performed by dedicated, physically distinct computer systems or sites.

In response to submission of the enrollment form, the merchant Web server **132** initiates a computer program **144** comprising enrollment software that processes the information contained on the electronic application form **208**. In one implementation, an agent is used to scan the application text for pre-specified terms, and to flag the application for further review (such as by a staff member) if such a term exists. If no such term is found, and the application is complete, the enrollment software automatically accepts the application.

As part of this online registration, once the application has been processed (either automatically or with human intervention), the enrollment software generates a unique store ID to be assigned to the associate. In addition, the enrollment software creates a database entry corresponding to the enrolling associate and stores the store ID and the information provided by the enrolling associate as a unique entry in an associate database **160**. The database may be any type of data repository including, for example, an SQL table or ASCII text file. This database entry allows the merchant Web site **106** to properly track and credit associate referrals, as further described below.

Next, the computer program **144** automatically formats and transmits an electronic mail message to the e-mail address of the approved associate. This electronic mail message provides detailed information about setting up an associate's Web site, including instructions on how to create HTML documents with referral links. These instructions specify a predefined format for embedding the store ID and unique product IDs with the HTML link structures. In addition, the e-mail message includes the unique store ID (generated by the enrollment software), and includes instructions on obtaining unique product IDs. The associate can obtain the unique product IDs by browsing the merchant Web site **106**. Alternatively, the unique product IDs may be obtained by the associate through a specific electronic mail request, or may be provided by the merchant Web site when the initial electronic mail response is sent. A preferred set of linking instructions that are sent to new associates is included as Appendix A.

6,029,141

11

FIG. 4 illustrates a preferred format of a URL 400 used by an associate to create a referral link to the merchant Web site. This format is recognized by parsing software (FIG. 1) that runs on the merchant Web site. The URL 400 comprises the merchant Web server information 402, the unique product ID 404, the unique store ID 406, and an associate commission scheme ID 408. The unique store ID 406 represents the information created and stored in the associate's database during the associate enrollment process described above. In the AMAZON.COM implementation, the unique product ID 404 is the ISBN of a book that is available from the AMAZON.COM Web site. The associate commission scheme ID is an optional feature that can be used to specify a commission percentage or method for calculating the referral commission.

Upon receipt of the special linking instructions, the associate can begin to build the content (catalog documents) of the associate's Web site, including the descriptions of the products to be featured on the site. An associate can begin to refer customers to the merchant Web site 106 at anytime; however, no credit may be given to the associate for referred customers until the associate has included properly-formatted referral links within its product catalog. Additionally, referral credit may be withheld if the merchant has not yet authenticated and qualified the associate Web site for business.

4. Referral Transaction Function

A preferred method for processing referral events will now be described with reference to FIGS. 5–7. Referring to FIG. 5, which depicts an example sequence of events, a customer accesses an associate's Web site 100 via the customer computer 108. The customer computer 108 includes a conventional Web browser 112 which communicates with the associate's Web server 116 using the HTTP protocol. As depicted by events A and B, the Web server 116 accesses a local store of catalog documents 120 (Web pages) which can be requested, retrieved and viewed by the customer via the Web browser 112. As described above, these catalog documents 120 include information about the various products featured at the associate's Web site 100. Preferably, this information includes editorial descriptions, reviews, and recommendations generated by the associate.

FIG. 6 illustrates an example HTML catalog document (Web page) 120 in accordance with the present invention. The customer views the product catalog document 120 via the Web browser 112 in order to select a particular product (book) offered through the associate's Web site 100. In this example, the catalog document 120 comprises a graphic icon 600 that is a scaled-down replica of an actual book cover. The graphic icon 600 also functions as a hyperlink, allowing the customer to click on the icon with a mouse in order to link to the merchant Web site 106. The document 120 includes the title 602 and author of the book 604, and includes an editorial description and recommendation of the book 606 from the associate. The catalog document 120 also contains another textual hyperlink 608, allowing the customer to link to the merchant Web site 106 and initiate referral transaction processing. Typically, the associate's product catalog (which may include multiple product IDs) contains several referral links (with different product IDs), each corresponding to a different product sold by the merchant.

FIG. 7 is an HTML source code listing which illustrates a preferred format for including a referral link within an HTML catalog document. The source code of FIG. 7 corresponds to the product catalog document 120 illustrated in FIG. 6. In this example, the referral link (included between

12

the HTML anchor tags "A" and "/A") consists of the URL http://www.amazon.com/exec/obidos/ISBN=0809232022/ skinetA/ and the corresponding textual description "Click here to order Terrain Skiing!." The URL is identified as such by the standard HREF (hypertext reference) tag. The portion of the URL preceding "skinetA" uniquely identifies a product detail page (of the AMAZON.COM site) of a book having an ISBN of 0809232022. As described below, the "skinetA" portion of the URL identifies both the referring associate and a commission scheme. The referral link is included within the document such that selection by the customer of the text "Click here to order Terrain Skiing!" causes the Web browser 112 to transmit the URL on the Internet 104 via a standard HTTP message.

Further referring to FIG. 5, upon clicking or otherwise selecting the referral link 608 of the associate's catalog document 120 (event C), the Web browser 112 communicates with the merchant Web server 132 (events D–F) to access HTML documents 136 of the merchant Web site 106. Initially, the customer is shown a product detail page that provides detailed information about the selected product, and allows the customer to add the selected product to the shopping cart (described below). The Web server 132 also serves Web pages (including dynamically-generated pages) that display and allow the customer to edit the contents of the shopping cart, and that allow the customer to proceed to a check-out area to order the selected products.

Once the customer has linked to the merchant Web site 106, the customer can use the navigational controls of the Web browser 112 to return to the associate's Web site 100. In addition, the detail page and/or the shopping cart page may be provided with a hyperlink to allow the customer to return to the associate's Web site 100. Another alternative is for the associate Web site 100 to be created using an HTML frame format. The bottom frame can be designated as the target area frame for the merchant's Web site 106. The top frame can provide navigational controls for the customer to return to the associate's Web site 100 after selection of a particular product at the merchant's Web site 106. This allows the customer to maintain an associate's Web page frame while viewing and processing product purchases at the merchant's Web site 106.

Following the referral event, the customer can browse the merchant Web site 106 for additional products, and can add these products to the shopping cart. In one configuration option, the referring associate is given commission credit for all additional products thereafter selected (during the current browsing session) from the merchant Web site 106, assuming the customer subsequently purchases these products. In another configuration option, the associate is only credited for the purchase of the product that was the subject of the referral.

The sequence of events that takes place when the customer clicks on the referral link 608 will now be described in greater detail. Before the product detail page 136 is sent to the customer's Web browser 112, the merchant Web server 132 initiates a computer program 144 to conduct several processing steps. As depicted by event E1 in FIG. 5, the computer program 144 executes parsing software (FIG. 1) to parse the URL passed to the merchant Web server 132. The parsing software extracts the unique product ID (ISBN), the unique store ID associated with a particular associate, and an optional associate commission ID from the URL data string. For example, if the URL string is

http://www.amazon.com/exec/obidos/ISBN=
0809232022/mystoreA/,

the parsing software parses the string to extract the unique product ID (ISBN) of 0809232022, the unique store ID of

6,029,141

13

"mystore," and the commission ID of "A." In one implementation, the software **144** uses the commission ID to calculate an appropriate commission (e.g. 10% of merchant's sales price) to apply to the associate's account. As described below, if the customer subsequently adds the selected product to the shopping cart, the extracted information is recorded within a shopping cart data structure that corresponds to the customer.

5. Unified Shopping Cart Function

As discussed above, the present invention provides a system for maintaining a unified shopping cart that stores product information associated with product referrals from multiple Web sites, and keeps track of the sources (associates) of such referrals. One benefit of this feature is that it enables the customer to perform a single "check out" to purchase products from multiple Web sites. Additionally, this feature allows the merchant Web site **106** to accurately track and credit each associate, on a per-product-sale basis, that has referred a customer. For example, if, upon "check-out" from the merchant Web site **106**, the customer has three books listed in the shopping cart, each of which resulted from a referral from a different associate Web site, each associate will be credited for its respective referral. While the shopping cart feature is particularly useful in the context of the disclosed referral system, the feature can also be applied to other types of Internet shopping systems that support shopping from multiple Web sites, including systems that use remote "agents" to monitor Web sites based on pre-specified selections of the customer.

The data structures and processing steps that implement the shopping cart will now be described with further reference to FIG. **5**. As indicated above, the shopping cart maintains a customer-specific record of the products that have been selected by the customer, including the identities of any associate Web sites that acted as referral sources with respect to such products. Preferably, the computer program **144** maintains this information in a data structure that is stored on the Web site **106** for an extended period of time (such as one week) since the last access to the shopping cart by the user. This allows the customer to discontinue and later resume a shopping session without loss of the shopping cart data.

Upon customer selection of a referral link, the computer program **144** utilizes the customer cookie information **140** passed through an HTTP call to determine whether the particular customer (or technically, the customer computer **108**) already has an open shopping cart (event E2). As part of this process, the computer program **144** executes cookie processing software (FIG. 1), which assigns a unique customer ID to the customer based on the cookie information **140**. If the customer's Web browser **112** does not support the use of cookies (or if the cookies feature is disabled) the program **144** uses URL information received from the Web browser to generate the customer ID.

The customer ID is in turn used by the software **144** to identify any shopping cart currently associated with the customer. If no shopping cart exists for the customer, a new shopping cart structure (which includes the customer ID) is generated within the shopping cart database **152**. The customer ID is also stored in a customer database **148**. The algorithm used by the program **144** to generate the customer IDs is such that a cookie retrieved from the same customer computer will consistently produce the same customer ID. Thus, assuming the customer always uses the same computer to access the merchant site **106**, and that the browser **112** supports the use of cookies, the customer will be assigned the same customer ID, and will be associated with any existing shopping cart.

14

In one implementation, once the customer has been referred to the merchant site **106** and the customer ID has been determined, the merchant site dynamically includes this ID within hyperlinks of the detail page and other Web pages that are sent to the customer computer **108**. When the customer subsequently selects such a link (such as to add a selected product to the shopping cart), the customer ID is automatically transmitted to the merchant site **106** as part of the HTTP message. This allows the merchant site **106** to identify the customer (and shopping cart) without the need to re-request the cookie from the customer computer.

During the process of displaying detail pages and allowing the customer to add products to the shopping cart, neither the merchant site **106** nor the associate sites have access to the customer's personal information (name, address, credit card number, etc.). Thus, the system advantageously allows the customer to shop anonymously. Only when an order is actually submitted does the merchant site **106** obtain access to the customer's information, and at no time is the information provided to the associate sites.

With further reference to FIG. **5**, the shopping cart is stored as a table or data structure within the shopping cart database **152**, along with individual product selections made by customers. If the customer has an existing shopping cart, the computer program **144** will create another product selection entry within the shopping cart database **152**, as indicated generally by event E3. If the customer does not have an existing shopping cart, then the computer program will create a new shopping cart data structure within the shopping cart database **152**. The product selection entry within the shopping cart database **152** includes the store ID and product ID. If a product is selected directly from the merchant Web site **106**, the corresponding store ID field may be blank or encoded with merchant-specific information. Other information may be stored in the shopping cart to implement the specific business procedures of the particular merchant.

When the customer subsequently purchases a product or products contained in the shopping cart, the associate's unique store ID maintained in the associate data structure **160** is used to appropriately credit the associate's account. During this process (or at the time of the referral) the computer program **144** determines whether the store ID represents a valid (enrolled) associate in the associates database **160**. The processing at the merchant Web site **106** maintaining the associate's store ID in the shopping cart allows the system to obtain pricing information for a product and associate. In this way, the computer program **144** can be configured to generate special discounts or pricing incentives to the customer or associate depending on a particular business relationship.

The shopping cart stored in the shopping cart database **152** is maintained by the computer program **144** running at the merchant Web site **106** that monitors the open entries (non-closed shopping carts) in the shopping cart database **152**. The shopping cart database **152** includes the customer ID, the date the shopping cart was opened (open date), and the date last accessed (touch date). The shopping cart database is monitored by the computer program **144** to purge all shopping carts that have been inactive (untouched) for a pre-defined period of time, such as one week.

FIG. **8** illustrates an example of an HTML catalog document (Web page) **136** corresponding to the product detail page. After processing a referral URL, the merchant Web server **132** sends the detail page **136** to the customer's Web browser **112** to provide the customer with additional information about the selected product. The product detail page

6,029,141

15

includes the merchant's information (price, standard description, etc.) about the selected product. The product detail page **136** is shown with the URL passed to the customer Web browser **112** from the merchant Web server.

The URL (shown at the top of FIG. **8**) comprises the unique customer ID **800** (obtained from the customer's cookie or URL information), the product ID **802** (shown as the ISBN of the Terrain Skiing book), the store ID **804** (shown as the "skinet" Web site), and the associate commission ID **806** (the letter "A"). Once the customer has reviewed the product detail page **136**, the customer can select the "Add it to your Shopping Cart" hyperlink **808**. When the customer clicks on this hyperlink **808**, the merchant Web server **132** returns a dynamically-generated HTML document that displays the contents of the shopping cart.

FIG. **9** illustrates an example HTML document **136** (Web page) corresponding to the customer shopping cart. The customer shopping cart document **136** displays information about the products currently selected by the customer for prospective purchase. In this example, the selection item **902** is displayed to the customer as the "Terrain Skiing" book previously selected. From this page **136**, the customer may leave the shopping cart page, without proceeding to checkout, by either selecting the "continue shopping" link **904** or by using a Web browser navigational control to proceed to a different Web page.

FIG. **10***a* represents another associate's Web site where the customer can view products featured with editorial comments. For purposes of this example, it may be assumed that the customer proceeded directly to this site (e.g., by selecting a "favorite places" URL) from the shopping cart page of FIG. **9**. If the customer selects the hyperlink **1000**, the merchant Web server returns the product detail page for the "Cooking with Daniel Boulud" book, as illustrated in FIG. **10***b*. The customer may then add this book to the shopping cart by selecting the "Add it to your Shopping Cart" hyperlink **1002**, and the customer will then be brought to the shopping cart Web page illustrated in FIG. **10***c*. The shopping cart now has product selection items corresponding to the two books selected by the customer during the shopping session, and each of these product selection items is stored in the shopping cart database to uniquely identify the respective associate that made the referral. When the customer selects the "Proceed to Checkout" hyperlink **1004** on the shopping cart Web page, the merchant Web site returns a form document (not shown) that allows the customer to specify payment information, shipping information, and other information needed to process the order.

As illustrated by the above example, one customer shopping cart can have line items (corresponding to book selections) from many different associate Web sites. In addition, the shopping cart can include line items of books that have been selected directly from the merchant. As described above, because the shopping cart keeps track of each referral, the referring associates can efficiently be credited for their respective referrals upon order submission, without the need for the customer to perform multiple "check-outs."

The merchant Web site includes credit generation software for calculating associate referral credit. Referral credit may be calculated in any of a number of ways depending on the associate and merchant business relationship, and may be provided to the associate on a periodic basis, such as at the end of each calendar quarter. For example, the associate may be paid a fixed percentage of the list selling price. As

16

indicated above, commission payments may be made automatically using an appropriate electronic payment method.

As will be appreciated from the foregoing, the shopping cart feature of the system enables the customer to view the entire shopping experience as a seamless, automated shopping session. The seamless nature of the session allows the customer to shop for products based on the marketing expertise of the associates, while conveniently utilizing the merchant's order fulfillment resources.

6. Report Generation Function

The merchant Web site also preferably includes report generation software (FIG. **1**) that automatically generates and transmits associate feedback reports to respective associates, based on information stored by the merchant Web site. The software can be configured to generate the reports on a daily, weekly, monthly and/or annual basis. The information contained within these reports enables the associates to evaluate the effectiveness of their Web sites on a per-product basis.

One report produced by the AMAZON.COM site is the "Weekly Activity Report." An example of such a report is included as Appendix B. This report provides information about the number of books ordered through the associate's referral links, the number of selections (hits) of each referral link, and the amount of referral credit earned on orders in the time period.

Various other types of information can be provided within the feedback reports to assist the associates in conducting business. For example, the reports can provide anonymous demographic data about the customers that made purchases from the associate site, including the geographic regions (as determined from shipping addresses) of such customers. Additionally, the reports can provide special notices, including notices about books that pay lower referral credit to associates, and any problems occurring with an associate's referral links. The report generation feature also may provide associates with the ability to access an on-line menu to generate custom feedback reports (such as a report of the number of referrals during a specific period of time), or to set up a report profile that specifies the content, format and frequency of the automated reports.

7. Conclusion

While the invention has been described herein with reference to certain preferred embodiments, these embodiments have been presented by way of example only, and not to limit the scope of the invention. Accordingly, the scope of the invention should be defined only in accordance with the claims that follow.

In the following claims, reference characters used to designate claim steps are provided for convenience of description only, and are not intended to imply any particular order for performing the steps.

APPENDIX A

Date: Tue, 24 Jun 1997 02:11:28 -0700 (PDT)
To: mystore@aol.com
Subject: Amazon.com Books: Thank you for your application
Cc: associates@amazon.com
Thanks for submitting your application to participate in the Amazon.com Associates Program. Your application has been temporarily approved. We'll contact you by e-mail once we have reviewed and approved your application.
*Important*: Be sure to save this email message--you will need some of the information here to properly set up your links to Amazon.com. You can set up your Web site now. You have been assigned a unique Associates ID. You'll use this ID when linking your sponsoring Web site into our catalog; detailed instructions are included at the end of this message.

6,029,141

| 17 | 18 |
|---|---|

APPENDIX A-continued

Your unique Associates ID is: mystore.

USING THE AMAZON.COM BRAND NAME
----------------------------

As you may already know, Amazon.com has received a great deal of very positive press coverage since we opened. From The Wall Street Journal, Newsweek and the Associated Press to PC Magazine and WebWeek, mainstream and industry press alike have helped to make the Amazon.com brand name one of the more well-known among Internet sites.

Our extensive advertising campaign reaches users of many major Web services and search tools, and our printed ads are found in places like the New York Times Review of Books. You should consider using not only our name but one of the logos or banners found on our site at:
    http://www.amazon.com/exec/obidos/subst/assoc-art.html
so that your visitors have the chance to recognize our name as a familiar and trustworthy Internet retailer working in association with you.

SUGGESTIONS FOR SUCCESSFUL PRESENTATION:
-------------------------------------------

We've put a page on our Web site filled with suggestions for building a great online bookstore. These tips are taken from our most successful Associates, and we highly recommend reading them. Follow the link on our home page to "Build Your Own Bookstore", and from there link to "Build a Great Bookstore". You can also connect directly at this URL:
    http://www.amazon.com/exec/obidos/subst/assoc-success-tips.html

HOW TO LINK INTO OUR CATALOG:
----------------------------

You can use any sort of book descriptions, review material and graphics that you like when describing books on your Web site. All we need is a separate link into our catalog for each book you wish to recommend. You may add or remove these links at any time without our prior approval; as long as they follow the prescribed format we'll detect them automatically when they are used.

Each link to our catalog will be the same except for the ISBN of the book.

You'll see the "isbn=" part of the link at the end of each example below. To find the ISBN of the book you wish to list, use our Web site and search

for that book with any of our search tools. The ISBN for each edition (hardcover, paperback, book on tape) is displayed on the detail page for that book.

Remember--you may change which books you list whenever you like. You won't need our permission and it's not even necessary to advise us of the changes--they'll be automatically detected and commissioned properly.

EXAMPLE:
--------

For each book you recommend, link it to us like this:
http://www.amazon.com/exec/obidos/ISBN=1234567890/mystoreA/
Note: You *must* use a capital A at the end of this link, not a
    lower-case a.

Of course, the ISBN will change for each book. Do not include any spaces

or dashes in the ISBN when making these links. Also, make sure to check our catalog first--we can only sell what's listed there.

VERY IMPORTANT: If you copy the URL of a book page from our Web site and modify it to fit the format above, be sure to remove the 19-character shopping cart ID that appears at the end of the bookmarked or

copied URL. Your store code should immediately follow the ISBN as in the example above. If you leave this in your modified links, they will not work properly.

-----------------------------------------------------

The information we have about your Web site is as follows:
Contact e-mail Address:
    mystore@aol.com
Contact address:
    John Doe
    1234 East Road
    Anytown
    WA
    12345
Payee e-mail address:
    mystore@aol.com
Payee address:
    Doe Enterprises, Inc.
    1234 East Road
    Anytown
    WA
    12345
Description of books you intend to list:
Business Books - How to Business Books

APPENDIX A-continued

Sponsoring Web site name:
Sponsoring Web site URL:
Your Web site name, in the format we may use on our website:
    Mystore - Anytown, WA in association with Amazon.com Books

-------------------------

If you have any questions, you can e-mail us at associates@amazon.com
and we'll be happy to help.
Once again, thanks for your application.
Sincerely,
Associates staff
Amazon.com Books
http://www.amazon.com/
2.5 million titles, consistently low prices

APPENDIX B

Amazon.com Associates Program
Weekly Activity Reports
Every week, we e-mail our Associates a detailed activity report so that they can track the effectiveness of their efforts. A sample of the report shows what you can expect to receive weekly:

Sample Weekly Activity Report
Last Week's Sales Results
---------------------------------------------------------
Note: This report includes a column labeled "ORDERED," which is the weekly number of copies for which orders have been placed through your special links. Only after these orders are paid for and shipped will they actually count toward your referral fee. Some of these orders may later be canceled, customers' credit cards may be declined, and occasional returns should be expected; in any of these cases, the referral fee will not be earned.

The column labeled "HITS" represents the number of times one of your visitors clicked on a book (this column can help you gauge your visitors' interest in the books you are selling).

The column labeled "REFERRAL FEE" represent the referral fees your site has earned on orders. Please remember that we pay you based on orders *shipped*, so your actual Referral Fee may be somewhat lower than the fee stated here.

Look for special notices in the titles listed below. They can help you track books that may not pay referral fees and identify certain problems with the
link format you may be using
**1** indicates that this item is currently being featured at a discount of more than 30%.
**2** indicates that this item is "special order" or carries no discount
Other notes may indicate problems with a link format or items no longer carried in our catalog.
Quarter-to-Date Books Ordered:     105
Quarter-to-Date Qualified Book Revenue:   4266.46
Quarter-to-Date Referral Fees:     519.04
Click-throughs and sales by individual book for the week of 12-Jan-97 through 18-Jan-97
Store ID mystore

| ISBN | HITS | ORDERED | YOUR FEE | TITLE |
|---|---|---|---|---|
| 0534517072 | 4 | 2 | 1.70 | **2** Earth Online: An Internet Guide 2 sold at 0% off list price of 16.95 |
| 0672309599 | 3 | 0 | 0.00 | Microsoft SQL Server 6.5 Dba Survival G |
| 0764530038 | 2 | 0 | 0.00 | Danny Goodman's JavaScript Handbook |
| 0789704927 | 355 | 11 | 65.99 | Building Delphi 2 Database Applications 11 sold at 20% off list price of 49.99 |
| 0789704943 | 2 | 0 | 0.00 | Using VRML |
| 0789707500 | 1 | 0 | 0.00 | Delphi 2 Tutor: The Interactive Seminar |

6,029,141

19

20

| 1568302894 | 110 | 6 | 8.10 | **1** Creating Killer Web Sites: The A sold at 40% off the list price of 45.00 |
|---|---|---|---|---|
| | | | | 5 |
| Totals: | 477 | 19 | 75.79 | |

| | | |
|---|---|---|
| Number of Visitors on 19-Jan-97 | 68 | |
| Number of Visitors on 20-Jan-97 | 65 | |
| Number of Visitors on 21-Jan-97 | 54 | 10 |
| Number of Visitors on 22-Jan-97 | 59 | |
| Number of Visitors on 23-Jan-97 | 50 | |
| Number of Visitors on 24-Jan-97 | 47 | |
| Number of Visitors on 25-Jan-97 | 32 | |
| Total Visitors this week | 375 | 15 |

NOTE: A "Visitor" is a person who click on book links from your site, and is counted as 1 visitor (above) regardless of the number of different titles they click on. We keep track of this by watching their shopping cart ID, which remains the same for every book they click on.
A "Hit" is any person clicking on a book link, and each click is counted as 1 hit. If the same visitor click on 5 different titles, we record 1 visitor and 5 hits. Therefore, you should expect the number of visitors to be lower than the total number of hits.

What is claimed is:

1. A method of selling items with the assistance of associates, the method comprising:

providing a Web site system that includes a browsable catalog of items and provides services for allowing customers to electronically purchase the items;

providing an associate enrollment system which allows users to electronically apply to operate as associates that select and recommend items from the catalog and refer customers to the Web site system in exchange for compensation;

in response to a submission to the enrollment system by a user, assigning an associate identifier to the user and recording the associate identifier within a computer memory;

electronically providing to the user instructions for generating hypertextual documents with item-specific links that, when selected by a customer, cause the user's associate identifier and an identifier of a recommended item to be transmitted to the Web site system in a request message;

receiving a request message which contains an associate identifier and an item identifier and extracting the associate and item identifiers from the message, the request message generated by a computer of a customer in response to selection by the customer of an item-specific link provided by an associate in conjunction with a recommendation of the item;

transmitting to the customer's computer a Web page which corresponds to the item identifier extracted from the request message;

transacting a sale of the item and/or other items of the catalog with the customer through the Web site system;

using the associate identifier extracted from the request message to identify the associate; and

determining and recording within a computer memory compensation for the associate for the sale.

2. The method of claim 1, wherein determining and recording within a computer memory compensation for the associate comprises calculating a commission which is based at least in part on a selling price of an item purchased by the customer.

3. The method of claim 1, further comprising paying the commission to the associate electronically.

4. The method of claim 1, further comprising:

generating a feedback report which contains activity data for the item-specific link for a selected period of time; and

transmitting the feedback report to the associate.

5. The method of claim 4, wherein the activity data comprises at least one of the following: (i) a number of click-through events produced by the link, (ii) a quantity of sales resulting from the click-through events, and (iii) commissions for the associate for the sales.

6. The method of claim 1, wherein the item is a book.

7. A method of selling items with the assistance of associates, the method comprising:

providing a Web site system that includes a browsable catalog of items and provides services for allowing customers to electronically purchase the items;

providing a database which contains information about a plurality of associates that select and recommend items from the catalog within respective areas of expertise, at least some of the associates operating associate Web sites that include item-specific links to the Web site system;

receiving from a computer of a customer a request message which contains an associate identifier and an item identifier and extracting the associate and item identifiers from the message, the request message generated in response to selection by the customer of a link of an associate Web site, the link provided in conjunction with a recommendation of the item by an associate;

transmitting to the customer's computer a Web page which corresponds to the item identifier extracted from the request message;

transacting a sale of the item and/or other items of the catalog with the customer through the Web site system;

using the associate identifier extracted from the request message and the database to identify the associate; and

compensating the associate for the sale.

8. The method of claim 7, wherein compensating the associate for the sale comprising paying the associate electronically.

9. The method of claim 7, further comprising automatically generating and transmitting to the associate a report which contains activity data for the link for a selected period of time.

10. A method of selling items with the assistance of associates, the method comprising:

providing a Web site system that includes a browsable catalog of items and provides services for allowing customers to electronically purchase the items;

transmitting to a user a business agreement which specifies legal terms for operating as an associate that refers customers to the Web site system in exchange for compensation;

transmitting to the user an associate enrollment application which is adapted to be completed and electronically submitted to apply to operate as an associate;

electronically receiving a completed enrollment application from the user;

processing the completed enrollment application;

storing user information contained within the completed enrollment application and an associate identifier within a computer memory;

electronically providing to the user instructions for generating hypertextual documents with item-specific links

6,029,141

that, when selected by a customer, cause the user's associate identifier and an identifier of a recommended item to be transmitted to the Web site system in a request message; and

in response to a referral of a customer which results in a purchase of one or more items from the Web site system, determining compensation for the user for the referral.

**11.** The method of claim **10,** wherein electronically providing instructions comprises transmitting to the user an associate identifier and instructions for incorporating the associate identifier into the item-specific links.

**12.** The method of claim **10,** further comprising electronically paying the associate a monetary amount that represents the compensation.

**13.** The method of claim **10,** further comprising generating and transmitting to the user a report which contains activity data for at least one item-specific link provided by the user.

**14.** A method of facilitating electronic purchases of items, comprising:

providing a Web site system that includes a browsable catalog of items and provides services for allowing customers to electronically purchase items from the catalog;

providing a system for allowing associates to operate associate Web sites that display selected items of the catalog and refer customers to the Web site system in exchange for compensation;

tracking a customer's selections of a plurality of items of the catalog from multiple different associate Web sites, wherein different items of the plurality are selected by the customer from different associate Web sites;

maintaining a record of the plurality of items selected by the customer within a shopping cart data structure within a computer memory of the Web site system;

with the Web site system, transacting a sale of the plurality of items recorded within the shopping cart data structure to the customer; and

in response to the sale, determining, for each of the associate Web sites from which the items were selected, compensation for a corresponding associate.

**15.** The method of claim **14,** wherein maintaining a record of the plurality of items comprises storing within the shopping cart data structure identifiers that correspond to the associate Web sites from which the respective items were selected.

**16.** The method of claim **14,** further comprising the computer-implemented steps of:

generating a report that contains information about customer referrals produced by an associate Web; and

transmitting the report to a corresponding associate.

**17.** A method of selling items from a catalog of items with the assistance of associates, the catalog accessible to users of a merchant Web site system which provides services for allowing users to electronically purchase items from the catalog, the method comprising:

enrolling a plurality of associates using an online registration system;

initiating electronic transfers to the associates of instructions for creating Web pages with links that are formatted to enable referrals of customers from Web sites of the associates to the merchant Web site to be tracked;

tracking referrals of customers from the Web sites of the associates to the merchant Web site system; and

determining compensation for the associates for the referrals of customers that result in purchases of items from the catalog.

**18.** The method of claim **17,** wherein enrolling a plurality of associates comprises automatically assigning associate identifiers to the associates, and wherein the instructions specify a format for including the associate identifiers within the links to permit the tracking of the customer referrals.

**19.** The method of claim **17,** wherein enrolling a plurality of associates comprises providing electronic access to a document which contains terms and conditions for operating an associate Web site.

**20.** The method of claim **17,** further comprising electronically paying the associates.

**21.** The method of claim **17,** further comprising generating and electronically sending to an associate of the plurality a report which contains data about customer referrals and resulting sales attributed to the associate.

**22.** The method of claim **17,** further comprising transmitting to at least one associate of the plurality a document which contains suggestions for building a successful online store.

**23.** A method of operating a virtual store to sell items in association with a merchant that operates a merchant Web site, the method comprising:

providing an associate Web site which is separate from the merchant Web site;

selecting from an electronic catalog of the merchant Web site a subset of items of the catalog to display within the associate Web site, the subset including at least one item;

for each item of the subset, incorporating into the associate Web site (a) a description and/or graphical representation of the item, and (b) a link which permits a user of the associate Web site to access the merchant Web site to purchase the item, the link formatted such that selection of the link by the user causes a computer of the user to generate a request message which includes an item identifier and an associate identifier; and

receiving compensation for at least one referral of a user to the merchant Web site that results in a sale, the referral resulting from selection of the link.

**24.** The method of claim **23,** further comprising generating an editorial description of at least one of the items of the subset, and incorporating the editorial description into the associate Web site.

**25.** The method of claim **23,** wherein selecting from the electronic catalog comprises selecting a plurality of books which fall within a subject-based category to which the associate Web site pertains.

**26.** The method of claim **23,** further comprising displaying a business name and/or logo of the merchant within the associate Web site to indicate an affiliation with the merchant.

**27.** The method of claim **23,** further comprising incorporating into the associate Web site a link which corresponds to a group of products of the electronic catalog.

**28.** The method of claim **23,** further comprising receiving an electronic report which contains data about customer referrals and resulting purchases produced by the associate Web site.

**29.** A method of assisting in sales of items from a catalog of items of a merchant Web site system, the method comprising:

completing and electronically submitting an online application to apply to operate as a referral source that refers

6,029,141

23

customers to the merchant Web site system in exchange for compensation for referrals that produce sales;

electronically receiving instructions for creating Web pages with links that are formatted to permit the tracking of customer referrals to the merchant Web site system;

providing a Web site which is separate from the merchant Web site system;

incorporating into the Web site at least one Web page according to the instructions, the Web page including a link that is formatted to permit tracking of customer referrals to the merchant Web site system; and

receiving compensation for at least one customer referral to the merchant Web site system that results in a sale of one or more items from the catalog, the customer referral resulting from selection by a customer of the link.

**30**. The method of claim **29**, further comprising receiving an electronic document which contains terms and conditions for operating as a referral source.

**31**. The method of claim **29**, wherein the link comprises a URL portion which includes a referral source identifier.

**32**. The method of claim **31**, wherein the URL portion further includes an identifier of an item selected from the catalog.

**33**. The method of claim **29**, further comprising displaying within the Web site a business name and/or logo corresponding to the merchant Web site system.

**34**. The method of claim **29**, further comprising selecting at least one item from the catalog, and incorporating a description and/or graphical representation of the item into the Web site.

**35**. The method of claim **29**, further comprising receiving an electronic report which contains data about customer referrals and resulting sales produced by the Web site.

**36**. A computer-implemented system which implements a program in which associates of a merchant electronically refer customers to a Web site of the merchant, the system comprising:

24

an associate registration system which implements an electronic application process to at least partially automate enrollment of associates, the associate registration system providing associates electronic access to instructions for forming Web pages with links that are formatted to permit tracking of customer referrals to the Web site;

a referral processing system which tracks referrals of customers to the Web site from associates using associate identifiers contained within request messages, the request messages generated by customer computers in response to selection of links provided by the associates according to the instructions; and

a compensation system which determines and maintains records of compensation for the respective associates for the customer referrals that result in purchases of items from a catalog of the Web site.

**37**. The system of claim **36**, wherein the associate registration system includes a downloadable application which is adapted to be completed and electronically submitted to apply to operate as an associate.

**38**. The system of claim **37**, wherein the associate registration system includes software which scans entries submitted within the application to search for pre-specified terms.

**39**. The system of claim **36**, wherein the associate registration system includes software which assigns associate identifiers to associate applicants.

**40**. The system of claim **36**, wherein the compensation system calculates associate compensation based on selling prices of the items purchased by referred customers.

**41**. The system of claim **36**, further comprising a report generation system which generates and sends to the associates feedback reports which include information about customer referrals and resulting sales.

**42**. The system of claim **41**, wherein the report generation system includes an online menu for allowing associates to specify parameters for generating custom feedback reports.

\*    \*    \*    \*    \*

US006629079B1

(12) **United States Patent**　　　　(10) **Patent No.:**　　US 6,629,079 B1

Spiegel et al.　　　　　　　　　　　　(45) **Date of Patent:**　　　Sep. 30, 2003

(54) **METHOD AND SYSTEM FOR ELECTRONIC COMMERCE USING MULTIPLE ROLES**

(75) Inventors: **Joel R. Spiegel**, Woodinville, WA (US); **Maryam Mohit**, Seattle, WA (US)

(73) Assignee: **Amazon.com, Inc.**, Seattle, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/104,942**

(22) Filed: **Jun. 25, 1998**

(51) Int. Cl.[7] ............................................. **G06F 17/60**

(52) U.S. Cl. ............................... **705/26**; 705/27; 707/3; 707/10

(58) Field of Search ......................... 705/26, 27; 707/3, 707/10

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,996,642 A | * | 2/1991 | Hey ............................. 705/27 |
| 5,664,110 A | | 9/1997 | Green et al. .................. 705/26 |
| 5,710,887 A | * | 1/1998 | Chelliah et al. .............. 705/26 |
| 5,745,096 A | | 4/1998 | Ludolph et al. ............ 345/120 |
| 5,745,681 A | * | 4/1998 | Levine et al. |
| 5,905,973 A | * | 5/1999 | Yonezawa et al. ............ 705/27 |
| 5,960,411 A | * | 9/1999 | Hartman et al. .............. 705/26 |
| 5,970,474 A | * | 10/1999 | LeRoy et al. ................. 705/27 |
| 6,092,049 A | * | 7/2000 | Chislenko et al. ............ 705/10 |
| 6,125,353 A | * | 9/2000 | Yagasaki ...................... 705/27 |
| 6,289,322 B1 | * | 9/2001 | Kitchen et al. ............... 705/34 |
| 6,292,789 B1 | * | 9/2001 | Schutzer ...................... 705/34 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0 798 655 A | 10/1997 |
| JP | 10105599 | 4/1998 |
| WO | WO9702537 | 1/1997 |
| WO | WO9740446 A | 10/1997 |

OTHER PUBLICATIONS

Baron, Chris, "Electronic Commerce With SoftCart," Web Techniques, Oct. 1996.

Hoque, Reaz, "Shopping Cart Application with JavaScript," Web Technique, vol. 3, May 1998.

Little, Thomas, D.C., "Commerce on the Internet," IEEE Multimedia, vol. 1, No. 4, Jan. 1994.

Gallagher, Katherine and Jeffrey Parsons, "A Framework for Targeting Banner Advertising on the Internet," Proceedings of the Thirtieth Hawaii International Conference on System Sciences, vol. 4, pp. 265–274, Jan. 7–10, 1997.

(List continued on next page.)

*Primary Examiner*—Vincent Millin
*Assistant Examiner*—Jagdish N Patel
(74) *Attorney, Agent, or Firm*—Perkins Coie LLP

(57) **ABSTRACT**

A computer system for conducting electronic commerce. The system provides multiple electronic shopping carts for each user. Each electronic shopping cart has an indication of items currently within the electronic shopping cart and billing and shipment information. The system generates a display that identifies each of the electronic shopping carts and sends the generated display to a user computer system. The system then receives a selection of one of the identified electronic shopping carts from the user computer system and receives a selection of an item from the user computer system. In response to receiving the selection of the item, the system adds the item to the selected electronic shopping cart. The system then receives an indication to checkout the items in the selected electronic shopping cart from the user computer system. In response to receiving the indication to checkout, the system ships the items in the selected electronic shopping cart in accordance with the shipment information of the selected electronic shopping cart and bills for the items in the selected electronic shopping cart in accordance with the billing information for the selected electronic shopping cart. The system thus allows a user to select each of the electronic shopping carts for adding items to each electronic shopping cart.

**59 Claims, 11 Drawing Sheets**



US 6,629,079 B1

Page 2

## OTHER PUBLICATIONS

Tilson, Roger. et al., "A Comparison of Two Current E–Commerce Sites," Sixteenth Annual International Conference of Computer Documentation. Conference Proceedings, Scaling the Heights: Future of Information Technology, Proceedings of ACM SIGDOC 1988 Conference, pp. 87–92, Sep. 23–26, 1998.

http://www.netgrocer.com/[Sheet 1, accessed 3:52 p.m.].

http://www.netgrocer.com/ [Sheet 2, accessed 4:21 p.m.].

http://www.netgrocer.com/ [Sheet 3, accessed 4:20 p.m.].

http://www.netgrocer.com/ [Sheet 4, accessed 4:19 p.m.].

http://www.netgrocer.com/ [Sheet 5, accessed 4:17 p.m.].

http://www4.netgrocer.com/help.cfm?title+Selecting [Accessed Jun. 24, 1998].

http://www.4.netgrocer.com/help.cfm?title=Searching [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.dfv?title=recurring [Accessed Jun. 24, 1998].

http:///4.netgrocer.com/help.cfm?title=Netrewards [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Service [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Shopper [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Cart [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=lists [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Grocer [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Checkout [Accessed Jun. 24,1998].

http://www4.netgrocer.com/help.cfm?title=Payment [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title+Delivery [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/shop_list_details.cfm?basket_id=3240024&detail=1 [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Security [Accessed Jun. 24, 1998].

http://www4.netgrocer.com/help.cfm?title=Schedule [Accessed Jun. 24, 1998].

http://www.4netgrocer.com/help.cfm?title=Reschedule [Accessed Jun. 24, 1998].

* cited by examiner



**FIG. 1**



*FIG. 2*



**FIG. 3**



*FIG. 4*

User Table

| USER ID | NAME | E-MAIL | • • • |
|---------|------|--------|-------|
| J. Smith | Smith, J. | jsmith@... | |
| J. Doe | Doe, J. | jdoe@... | |
| • | | | |
| • | | | |
| • | | | |

501

Context Mapping Table

| USER ID | CONTEXT ID |
|---------|------------|
| J. Smith | 204 |
| J. Smith | 220 |
| J. Doe | 229 |
| J. Doe | 205 |
| J. Doe | 175 |
| • | • |
| • | • |
| • | • |

502

*FIG. 5*

Context Table

| CONTEXT ID | NAME | ADDRESS | • • • |
|------------|------|---------|-------|
| 175 | Work | 4215... | |
| 204 | Johnny's | | |
| 205 | Fiction | | |
| 220 | Mother-in-law | | |
| 229 | Non-fiction | | |
| • | • | | |
| • | • | | |
| • | • | | |

503



**FIG. 6**



**FIG. 7**



FIG. 8



FIG. 9



**FIG. 10**



*FIG. 11*

US 6,629,079 B1

1

# METHOD AND SYSTEM FOR ELECTRONIC COMMERCE USING MULTIPLE ROLES

## TECHNICAL FIELD

The present invention relates to a computer method and system of electronic commerce and, more particularly, to a method and system for selecting items to order using a "shopping cart" model.

## BACKGROUND OF THE INVENTION

The Internet is increasingly being used to conduct "electronic commerce," because it comprises a vast number of computers and computer networks that are interconnected through communication links which facilitates electronic communications between vendors and purchasers. Electronic commerce refers generally to commercial transactions that are at least partially conducted using the computer systems of the parties to the transactions. For example, a purchaser can use a personal computer to connect via the Internet to a vendor's computer. The purchaser can then interact with the vendor's computer to conduct the transaction. Although many of the commercial transactions that are performed today could be performed via electronic commerce, the acceptance and wide-spread use of electronic commerce depends, in large part, upon the ease-of-use of conducting such electronic commerce. If electronic commerce can be easily conducted, then even the novice computer user will choose to use electronic commerce. Therefore, it is important that techniques be developed to facilitate conducting electronic commerce.

The Internet provides a network that facilitates conducting electronic commerce because it uses standardized techniques for exchanging information.

Many standards have been established for exchanging information over the Internet, such as electronic mail, Gopher, and the World Wide Web ("WWW"). The WWW service allows a server computer system (i.e., Web server or Web site) to send graphical Web pages of information to a remote client computer system. The remote client computer system can then display the Web pages. Each resource (e.g., computer or Web page) of the WWW is uniquely identifiable by a Uniform Resource Locator ("URL"). To view a specific Web page, a client computer system specifies the URL for that Web page in a request (e.g., a HyperText Transfer Protocol ("HTTP") request). The request is forwarded to the Web server that supports that Web page. When that Web server receives the request, it sends that Web page to the client computer system. When the client computer system receives that Web page, it typically displays the Web page using a browser. A browser is typically a special-purpose application program that effects the requesting of Web pages and the displaying of Web pages.

Currently, Web pages are generally defined using Hyper-Text Markup Language ("HTML"). HTML provides a standard set of tags that define how a Web page is to be displayed. When a user indicates to the browser to display a Web page, the browser sends a request to the server computer system to transfer to the client computer system an HTML document that defines the Web page. When the requested HTML document is received by the client computer system, the browser displays the Web page as defined by the HTML document. The HTML document contains various tags that control the displaying of text, graphics, controls, and other features. The HTML document may contain URLs of other Web pages available on that server computer system or other server computer systems.

2

The World Wide Web portion of the Internet is especially conducive to conducting electronic commerce. Many Web servers have been developed from which vendors can advertise and sell product. The products can include items (e.g., music) that are delivered electronically to the purchaser over the Internet and items (e.g., books) that are delivered through conventional distribution channels (e.g., a common carrier). A server computer system may provide an electronic version of a catalog that lists the items that are available. A user, who is a potential purchaser, may browse through the catalog using a browser and select various items that are to be purchased. When the user has completed selecting the items to be purchased, the server computer system then prompts the user for information to complete the ordering of the items. This purchaser-specific order information may include the purchaser's name, the purchaser's credit card number, and a shipping address for the order. The server computer system then typically confirms the order by sending a confirming Web page to the client computer system and schedules shipment of the items.

The selection from the electronic catalogs of items to be purchased is generally based on a "shopping cart" or "shopping basket" model. When the purchaser selects an item, the server computer system metaphorically adds that item to a shopping cart. The server computer system provides Web pages that allow the purchaser to view and change the quantities of the items in the shopping cart. When the purchaser is satisfied with the items in the shopping cart, the purchaser "checks out" the items that are in the shopping cart. The purchaser may provide billing and shipment information as part of "check out" process. When check out is complete, the items are then shipped in accordance with the shipment information, and the purchaser is billed in accordance with the billing information.

Although the shopping cart model facilitates the purchasing of items via electronic commerce, purchasing items via electronic commerce can still be cumbersome. First, a single purchaser may use different billing and shipment information at different times. For example, when purchasing items for use in the workplace, the purchaser may use a company credit card and the company's shipping address. In contrast, when purchasing items for personal use, the purchaser may use a personal credit card and a home address for shipping. It may be cumbersome to re-enter such information or re-select such information when the purchaser is purchasing for workplace or home use. Second, server computer systems may customize recommendations for items to purchase based on the purchasing or, more generally, access patterns of a user. For example, if a user generally purchases books relating to current politics, then when the user next connects to the server computer system, it may recommend that the user purchase a recently released book on current politics. However, if the purchaser purchases different types of items at work from the types of items purchased at home, then the server computer system may make inappropriate recommendations at certain times. For example, the server computer system may recommend a book on current politics when the user is at work looking for books on computer software.

## SUMMARY OF THE INVENTION

Embodiments of the present invention provide a method and system for conducting electronic commerce with multiple electronic commerce contexts and more generally for interacting with a computer system with multiple interaction contexts. The electronic commerce system embodiment provides multiple electronic commerce contexts (e.g., "shopping carts") for each user. Each electronic commerce context

US 6,629,079 B1

<table>
<tr><td>3</td><td>4</td></tr>
</table>

has associated information relating to electronic commerce conducted while the user was in that electronic commerce context. The electronic commerce system receives from the user a selection of one of the electronic commerce contexts. After receiving the selection of the one of the electronic commerce contexts, the electronic commerce system conducts electronic commerce with the user. The electronic commerce system associates, with the selected electronic commerce context, information relating to the electronic commerce conducted with the user so that when the user subsequently selects that electronic commerce context, the associated information is available for conducting subsequent electronic commerce. In this way, a user can use various electronic commerce contexts without having to re-specify information (e.g., billing information) relating to the various electronic commerce contexts.

In one embodiment, the electronic commerce system uses a multiple shopping cart model for each user conducting electronic commerce. Each shopping cart is intended to be used when a user is purchasing items in a different "role" or different electronic commerce context. For example, one shopping cart can be used when the user is acting in a workplace role purchasing items for work, and another shopping cart can be used when the user is acting in a personal role purchasing items for personal use. The electronic commerce system allows the user to select the shopping cart that is appropriate for the user's current role. As the user selects items to be purchased, the electronic commerce system adds the items to the currently selected shopping cart. Each shopping cart has associated with it information that is related to the role that the user is in when the shopping cart is used. This information may include billing and shipment information. In this way, when a user conducts electronic commerce in different roles, the user can select the shopping cart that already has the appropriate billing and shipment information. In addition, the electronic commerce system can track the electronic commerce activity of the user in each separate role (i.e., each shopping cart) and customize advertising and recommendations based on activity performed while the user was in that role.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a diagram of the display illustrating the use of a shopping cart for each electronic commerce context.

FIG. 2 is a diagram illustrating the display of shopping cart information.

FIG. 3 is a diagram illustrating the display after a user has modified information relating to some of the shopping carts.

FIG. 4 is a block diagram illustrating an embodiment of the present invention.

FIG. 5 is a block diagram illustrating a sample data structure for storing electronic commerce context ("ECC") profile information.

FIG. 6 is a flow diagram of a routine that processes the selection of the new electronic commerce context.

FIG. 7 is a flow diagram of a routine that generates a display for the current context.

FIG. 8 is a flow diagram of a routine that adds an item to the shopping cart for the currently selected context.

FIG. 9 is a flow diagram of a routine that processes a request to view electronic commerce context ("ECC") profile information for a context.

FIG. 10 is a flow diagram of a routine for updating electronic commerce context ("ECC") profile information.

FIG. 11 is a flow diagram of a routine that stores information on the activities of a user.

DETAILED DESCRIPTION OF THE INVENTION

An embodiment of the present invention provides a method and system that uses a multiple shopping cart model for each user conducting electronic commerce. Each shopping cart is intended to be used when a user is purchasing items in a different "role." For example, one shopping cart can be used when the user is acting in a workplace role purchasing items for work, and another shopping cart can be used when the user is acting in a personal role purchasing items for personal use. The system of the present invention allows the user to select the shopping cart that is appropriate for the user's current role. As the user selects items to be purchased, the system adds the items to the currently selected shopping cart. Each shopping cart has associated with it information that is related to the role that the user is in when the shopping cart is used. This information may include billing and shipment information. When a user conducts electronic commerce in different roles, the user can select the shopping cart that already has the appropriate billing and shipment information. In this way, the user can avoid having to re-specify billing and shipping information that is unique to a certain role. In addition, the system can track the electronic commerce activity of the user in each separate role (i.e., each shopping cart) and customize advertising and recommendations based on activity performed while the user was in that role.

In one embodiment, the system of the present invention provides a shopping cart selection navigation bar that allows the user to switch between shopping carts using a single action (e.g., a mouse click). The use of single-action switching between shopping carts greatly facilitates conducting the electronic commerce. The selection navigation bar has an area associated with each shopping cart. In one embodiment, the system displays the shopping cart selection navigation bar at the top of various displays (e.g., Web pages), such as a display that describes an item that can be purchased. By performing the single action, the user can quickly switch between separate shopping carts. When the user indicates to add an item to a shopping cart, the system adds the item to the currently selected shopping cart. A user may use the shopping cart selection navigation bar to conveniently place an item in multiple shopping carts. For example, if the user is purchasing items for, say, five relatives, then the user can set up one shopping cart for each relative. In such an example, each shopping cart will have shipment information for one of the relatives. When the selection navigation bar is displayed along with a description of an item, the user can select a shopping cart and then add the item to that shopping cart. The user can then select the next shopping cart and add the item to that shopping cart. This process of selecting and adding can be performed for each shopping cart. In this way, items can be added to multiple shopping carts with only two actions (e.g., two mouse clicks), that is, one action to select the shopping cart and one action to add the item to the currently selected shopping cart.

The system of the present invention also provides a shopping cart viewing navigation bar through which a user can select to view information relating to a certain shopping cart. When a shopping cart is selected from the viewing navigation bar, the system displays information describing the current contents of the selected shopping cart, information describing past orders that were checked out of that shopping cart, context naming information (e.g., suggestive of the role for which the shopping cart is used), and billing and shipment information. The user can then modify the

US 6,629,079 B1

5

contents of the shopping cart, check out the contents of the shopping cart, or update the information relating to the shopping cart. Alternatively, rather than having a separate viewing navigation bar that lists each shopping cart, a single button can be provided through which the user can view information relating to the currently selected shopping cart.

The system of the present invention is referred to as the multiple electronic commerce context system ("MECC" system) (or multiple shopping cart system in one embodiment) because each different role represents a different electronic commerce context in which a user conducts electronic commerce. In one embodiment, the MECC system uses a separate shopping cart for each electronic commerce context. However, one skilled in the art will appreciate that the principles of multiple electronic commercial contexts can be used independent of the shopping cart model. In general, each context can be considered to include an aggregation (e.g., items selected to purchase) and information relating to the aggregation (e.g., billing information). Different metaphors can be used to refer to the aggregations depending on the type of electronic commerce being conducted. For example, if the electronic commerce is the purchasing of books, then the aggregations may be referred to as separate "bookshelves" rather than shopping carts. In another example, the metaphor of "CD bins" may be used when the electronic commerce involves purchasing CDs. The MECC system allows a user to name each electronic commerce context so that the user can easily identify the electronic commerce contexts. For example, the user may name one of the electronic commerce contexts "Johnny's books," if the user uses that context to purchase books for Johnny. The MECC system also stores electronic commerce context ("ECC") profile information for each context. The ECC profile information includes information describing the contents of the shopping cart associated with that context, describing past orders submitted while in that context, and describing past activity electronic commerce activity while in that context.

FIG. 1 is a diagram of the display illustrating the use of a shopping cart for each electronic commerce context. The display includes the shopping cart selection navigation bar **101**, item detailed description **102**, selection box **103**, and shopping cart viewing navigation bar **104**. The selection navigation bar contains an area for each of five shopping carts or electronic commerce contexts. Each shopping cart is currently identified by a number between one and five. The shopping cart identified by numbered **2** is currently selected as indicated by shading. The item detailed description contains information describing the item currently selected by the user. This information may include pricing data, availability data, and a general description of the item. The selection box contains an add-to shopping cart button **103a** and single-action ordering button **103b**. The use of single-action ordering is described in U.S. patent application Ser. No. 08/928,951 entitled "Method and System for Placing a Purchase Order Via a Communications Network," which is hereby incorporated by reference. The text **103c** contains shipment information for the currently selected shopping cart as a reminder to the user. The viewing navigation bar contains an area for each shopping cart. Initially, it may be that no shopping carts or only one shopping cart has been defined. In which case, the selection navigation bar may be initially not displayed or displayed with one area. As a user dynamically adds and deletes shopping carts, the selection navigation bar is adjusted accordingly.

When a user selects a shopping cart from the selection navigation bar, the selected shopping cart becomes the

6

current shopping cart, which changes the electronic commerce context. The information in the selection box is updated each time a different shopping cart is selected to reflect the currently selected shopping cart. When a user selects the add-to shopping cart button, the currently selected item is added to the currently selected shopping cart. When a user selects the single-action ordering button, an order is automatically placed for the currently selected item. That item is shipped and billed according to the shipment and billing information of the currently selected shopping cart. A user may view and update information relating to a shopping cart by selecting a shopping cart from the viewing navigation bar. Alternatively, the viewing navigation bar may be replaced by a single button that when selected allows the user to view and update information for the currently selected shopping cart.

FIG. 2 is a diagram illustrating the display of shopping cart information. The display contains a current order box **201**, the past order box **202**, and a general information box **203**. The current order box contains information relating to items currently in the shopping cart that have not yet been checked out. The shopping cart sub-box **201a** contains a listing of the items currently in the shopping cart. The user may modify the current order by changing the quantities of the items. The user places the order by selecting the check-out button within the shopping cart sub-box. When the current order is checked out, it becomes a past order and status information is displayed in the past orders box. The single-action pending order sub-box **201b** contains a list of the items that have been selected using single-action ordering, but have not yet been finalized. Items selected using single-action ordering technique are automatically finalized after a predetermined time (e.g., 60 minutes). Before that predetermined time has expired, the user may change the order or manually finalize the order using the "finalize now" button in the single-action pending order sub-box. Once the single-action order is checked out, it becomes a past order and status information is displayed in the past orders box. The general information box contains information pertaining to the shopping cart. In this example, the information includes a user-changeable identifier field, shipping field, and billing field. The user can change the identifier, which defaults to numeric value, to text that is more meaningful to the user. For example, the user may change the identifier to the text "Johnny's books" if that shopping cart is used by the user to purchase books for Johnny.

FIG. 3 is a diagram illustrating the display after a user has modified information relating to some of the shopping carts. In this example, the shopping cart selection navigation bar **301** indicates that the first three shopping carts have the identifiers "work books," "cookbooks," and "Johnny's books,"respectively. The user has not modified the default identifier for shopping carts **4** and **5**. The shopping cart viewing navigation bar **304** also indicates the updated identifiers. The information in the selection box **303** contains information relating to the currently selected shopping cart—"Johnny's books."

FIG. 4 is a block diagram illustrating an embodiment of the present invention. This embodiment supports electronic commerce with multiple contexts over the Internet using the World Wide Web. The server system **410** includes a server engine **411**, various Web pages **412**, a user database **413**, and the multiple electronic commerce context ("MECC") system (or multiple shopping cart system in one embodiment). The server engine receives HTTP Is requests to access Web pages identified by URLs and provides the Web pages to the

7

various client systems. Such an HTTP request may indicate that the purchaser has performed the single action to select a different shopping cart or electronic context. The user database includes purchaser-specific order information such as the name of the user and electronic commerce context ("ECC") profile information for each electronic commerce context. The MECC system contains various components that perform the functions of multiple electronic commerce context. Various components are described below in detail. The client system **420** contains a browser **421**. The server and client systems interact by exchanging information via communications link **430**, which may include transmission over the Internet.

One skilled in the art would appreciate that the multiple electronic commerce context techniques can be used in various environments other than the Internet. For example, the techniques can be used in a single computer system environment rather than in a client/server environment. Also, various communication channels may be used such as local area network, wide area network, or point-to-point dial up connection. Also, a server system may comprise any combination of hardware or software that can support multiple electronic commerce contexts. A client system may comprise any combination of hardware or software that can interact with the server system. These systems may include television-based systems or various other consumer products through which orders may be placed. In general, the client and server system may include a central processing unit, a memory, and storage devices. The multiple electronic commerce context ("MECC") system may be stored in a computer-readable medium such as memory or a CD-ROM.

FIG. **5** is a block diagram illustrating a sample data structure for storing electronic commerce context ("ECC") profile information. One skilled in the art will appreciate that the many different organizations of data structures could be used. The sample data structure of FIG. **5** contains a user table **501**, a context mapping table **502**, and a context table **503**. In this example, user table **501** contains an entry for each user. Each entry contains a user ID and information describing the user (e.g., user name and email address). For example, one entry represents the user with the user ID of "JSmith." The context mapping table **502** contains an entry for each context for each user. Each entry contains a user ID and a context ID. For example, the user with the user ID of "JSmith" has two contexts identified by context IDs "**204**" and "**220**." The context table **503** contains an entry for each context. Each entry contains the context ID and information describing the context (e.g., context name, and billing information). For example, the context identified by the context ID of "**204**" has the context name of "Johnny's." The tables of this sample data structure may contain many more columns of information. For example, the user table may also contain the address of the user. The multiple electronic commerce context ("MECC") system may access ECC profile information for a user by using the user's user ID to determine the context ID of the user's current context from the context mapping table. The MECC system may then use the retrieved context ID to retrieve the context information for the context table. The sample data structure may also contain activity information describing electronic commerce activity conducted while a user is in each electronic commerce context. This activity information may track items added to a shopping basket, banner advertisements selected, and Web sites visited when in that electronic commerce context. The activity information may be collected by logging and tagging the activity with the current electronic commerce context. The MECC system can then use this

8

collected activity information to, for example, customize advertising or recommendations while the user is in a certain electronic commerce context.

FIGS. **6–11** illustrate one embodiment of various components of the multiple electronic commercial context ("MECC") system in the WWW environment. FIG. **6** is a flow diagram of a routine that processes the selection of the new electronic commerce context. In one embodiment, when a user selects a new context from a shopping cart selection navigation bar, a URL is sent to the server computer system. That URL contains context identifying is the new context. This routine performs the processing to switch the electronic commerce context and generate the appropriate displays. In step **601**, the routine retrieves the context ID (or other identifying information) from the URL received from the client. In step **602**, the routine sets the current context ID for the user. In step **603**, the routine generates a display (e.g., and HTML document) for the current context. The generation of the display is described in detail in FIG. **7**. In step **604**, the routine sends the generated display to the user's client system. The routine then completes.

FIG. **7** is a flow diagram of a routine that generates a display for the current context. This routine retrieves the electronic commerce context ("ECC") profile information for the current context ID and generates the display accordingly. In this embodiment, the generated display is described in a HTML document. In step **701**, the routine retrieves the current context ID for the user. In step **702**, the routine retrieves the ECC profile information for the retrieved context ID. In step **703**, the routine generates a context selection navigation bar (e.g., the shopping cart selection navigation bar) that identifies each of the contexts for the user. In step **704**, the routine highlights the current context on the generated selection navigation bar. In step **705**, the routine generates the selection box in accordance with the ECC profile information for the current context ID. In step **706**, the routine generates the context viewing navigation bar (e.g., shopping cart viewing navigation bar) based on the retrieved ECC profile information. The routine then returns.

FIG. **8** is a flow diagram of a routine that adds an item to the shopping cart for the currently selected context. This routine is invoked when a user selects the add-to shopping cart button. In step **801**, the routine retrieves the current context ID for the user. In step **802**, the routine retrieves the electronic commerce context ("ECC") profile information for the current context ID. In step **803**, the routine adds the item to the shopping cart for the current context ID within the retrieved ECC profile information. In step **804**, the routine updates the ECC profile information for the current context ID in the user database. The routine then completes.

FIG. **9** is a flow diagram of a routine that processes a request to view electronic commerce context ("ECC") profile information for a context. This routine is invoked when a user selects the context viewing navigation bar. In step **901**, the routine retrieves the context ID (or other identifying information such as user ID and session ID) from the URL associated with the selected portion of the viewing navigation bar. In step **902**, the routine retrieves the ECC profile information for the retrieved context ID. In step **903**, the routine generates a display for the retrieved ECC profile information. In step **904**, the routine sends the generated display for the user's client computer system. The routine then completes.

FIG. **10** is a flow diagram of a routine for updating electronic commerce context ("ECC") profile information.

9

10

This routine is invoked when a user indicates to change any of the ECC profile information. For example, this routine is invoked when a user changes shipping information or the identifier on a context. In step **1001**, the routine retrieves the context ID from the URL. Alternatively, the context ID can be retrieved from a mapping of a certain key (e.g., ID or user ID) to context ID. In step **1002**, the routine retrieves the ECC profile information for the retrieved context ID. In step **1003**, the routine changes the ECC profile information. In step **1004**, the routine updates the ECC profile information for the retrieved context ID in the user database. The routine then completes.

FIG. 11 is a flow diagram of a routine that stores information on the electronic commerce activity of a user. The multiple electronic commerce context ("MECC") system may track various user activity that occurs while in each context. For example, the MECC system may track items that the user viewed, items that the user purchased, or links that the user assessed while in a context. In step **1101**, the routine retrieves the current context ID for the user. In step **1102**, the routine categorizes the electronic commercial activity (e.g., "viewing" or "selecting" an item). In step **1103**, the routine retrieves the electronic commerce context ("ECC") profile information for the current context ID for the categorization. In step **1104**, the routine updates the activity information to the ECC profile information. In step **1105**, the routine updates the ECC profile information for the current context ID. The routine then completes.

Another embodiment of the present invention provides a method and system for limiting the scope of the electronic commerce that may be conducted while in an electronic commerce context ("ECC"). For example, if the electronic commerce is the purchasing of video tapes, then the user, when purchasing video tapes for a child, may want to limit displaying of information to only those video tapes with a family-oriented rating "G"). The multiple electronic commerce context ("MECC") system limits the scope of electronic commerce by allowing the user to define filters that can be applied to an ECC. For example, the items available to be purchased may have various attributes (e.g., cost, rating, or general categorization such as documentary) associated with them. The MECC system may input from the user a series of filter criteria that specify the values of attributes, such as "rating =G," that each item must have in order to be within the scope of the electronic commerce conducted within an ECC. Filters may be particularly useful to limit the scope of electronic commerce conducted by a child. Also, filters may be password protected so that, for example, a child does not change the filter. In one embodiment, the MECC system stores the filter criteria along with the profile information for each electronic commerce context. One skilled in the art will appreciate that the filter criteria can be specified using various well-known techniques, such as listing a series of logic conditions for the attributes using logical-ANDs and logical-ORs. The MECC system may alternatively apply the filter criteria only when an item is selected, rather than when the information for the item is displayed. In this way, the user may view the information for all the available items, but the MECC system would prevent the purchase of items (or at least warn the user) that do not meet the filter criteria. The MECC system may also provide predefined filters that a user may select for an ECC. For example, a filter may be predefined for a "country theme" if the items available to be purchased are video tapes, music CD's, and clothing. The "country theme" may include the filter criterion "book=western or music=country." In one embodiment, if the electronic com-

merce is conducted using a search engine to identify those items that the user may want to purchase, then the filter criteria for the ECC may be automatically applied as part of each search for that ECC.

Another embodiment of the present invention provides a method and system for providing multiple interaction contexts for a user interacting with a computer system. Each interaction context has associated information relating to the interaction conducted while the user was in that interaction context. The interaction may be, for example, the conducting of electronic commerce (as described above), the using of a search engine, or the browsing through Web pages. When engaging in such interactions, the user may specify one of the interaction contexts. The system then associates information relating to interaction with the specified interaction context. When a user subsequently engages in interactions while that interaction context is currently specified, the associated information is available to influence the interaction. For example, if the interaction is the use of a search engine, then a user may use one interaction context for home and another interaction context for work. If the user is normally interested in legal documents when at work, then the work interaction context information would relate to legal documents. In contrast, if the user is normally interested in sports documents when at home, then the home interaction context information would relate to sports documents. Thus, when the user inputs a search for the word "court," the search engine may identify an entirely different set of related documents depending on whether the work or home interaction context is currently selected.

From the foregoing it will be appreciated that, although specific embodiments of the invention have been described herein for purposes of illustration, various modifications may be made without deviating from the spirit and scope of the invention. For example, the multiple electronic commerce context ("MECC") system may provide a facility to "reset" a context to default values or to "copy" a context. That is, if a user needs to change certain context information (e.g., billing and shipment information), the user can indicate to "reset" or "copy" a context. When a context is "reset," its information may be reset to certain initial values. When a context is "copied," the information of the context replaces the information of another context. Also, in various embodiments, the shopping cart selection navigation bar can be used for dragging-and-dropping items into the various shopping carts. For example, a user may select an item by depressing a button on a pointing device, then drag the selected item to the selection navigation bar, and drop the item into a shopping cart by releasing the button. When an item is dragged-and-dropped into a shopping cart, the MECC system may also change the currently selected shopping cart to the shopping cart into which the item has been dropped or maintain the current selection of a shopping cart. Also, a shopping cart (or more generally an aggregation) can function as a gift registry. That is, a user can select one or more items to be placed in a shopping cart, and the shopping cart can be provided to other users. The other users can purchase a registered item from the shopping cart using the shipment information of the shopping cart but the other user's billing information. Once items are purchased, the gift registry is updated accordingly. Also, a user's electronic commerce context can be provided to other users so that recommendations for gifts for the user based on electronic commerce context profile information can be provided to the other users. The term "user" as used herein refers to any entity that may use a computer system, such as a person, another computer system, or computer program. In

US 6,629,079 B1

11

12

addition, the user may operate on behalf of an organization with an account for conducting electronic commerce. Thus, the user ID may be an account ID for the organization or division of the organization. Accordingly, the invention is not limited except as by the appended claims.

What is claimed is:

1. A method in a computer system for conducting electronic commerce, the method comprising:

providing a plurality of electronic shopping carts, each electronic shopping cart having an indication of items currently within the electronic shopping cart and billing and shipment information;

generating a display that identifies each of the provided electronic shopping carts;

sending the generated display to a user computer system;

receiving a selection of one of the identified electronic shopping carts from the user computer system;

receiving a selection of an item from the user computer system;

in response to receiving the selection of the item, adding the item to the selected electronic shopping cart;

receiving an indication to checkout the items in the selected electronic shopping cart from the user computer system; and

in response to receiving the indication to checkout,

shipping the items in the selected electronic shopping cart in accordance with the shipment information of the selected electronic shopping cart; and

billing for the items in the selected electronic shopping cart in accordance with the billing information for the selected electronic shopping cart

whereby a user can select each of the plurality of electronic shopping carts for adding items to the electronic shopping carts.

2. The method of claim 1 wherein the user can provide an identifier for each electronic shopping cart.

3. The method of claim 1 including tracking activity performed by the user while each electronic shopping cart is selected.

4. The method of claim 1 wherein, after receiving a selection of an electronic shopping cart, modifying a display based on information relating to the selected electronic shopping cart.

5. The method of claim 1 wherein the user selects one of the plurality of electronic shopping carts with a single action.

6. The method of claim 1 wherein the selection of an item and the indication to checkout the item is performed by a single action.

7. A method in a computer system for maintaining information relating to conducting electronic commerce with a vendor, the method comprising:

providing a plurality of electronic commerce contexts for a user for use in conducting electronic commerce with the vendor, each electronic commerce context having information relating to electronic commerce conducted between the user and the vendor while in that electronic commerce context;

receiving from the user a selection of one of the plurality of electronic commerce contexts;

after receiving the selection of the one of the plurality of electronic commerce contexts, conducting electronic commerce between the user and the vendor; and

associating, with the selected electronic commerce context, information relating to the electronic commerce conducted between the user and the vendor so that when the user subsequently selects that selected electronic commerce context from the plurality of electronic commerce contexts, the associated information is available for conducting subsequent electronic commerce between the user and the vendor.

8. The method of claim 7 wherein the electronic commerce includes selecting items and the information includes the identity of the items previously selected.

9. The method of claim 8 including presenting to the user a recommendation for items based on items previously selected while in the currently selected electronic commerce context.

10. The method of claim 8 including presenting to another user a recommendation for items based on items previously selected by the user while in a certain electronic commerce context.

11. The method of claim 10 wherein the other user selects an item as a gift for the user.

12. The method of claim 8 including providing to another user a list of items selected in one of the electronic commerce contexts.

13. The method of claim 12 wherein the other user purchases one of the items in the list as a gift for the user.

14. The method of claim 13 wherein the purchased gift is shipped to the user in accordance with the electronic commerce context in which the item was selected.

15. The method of claim 7 wherein the user establishes a connection when conducting electronic commerce and including persistently storing the information so that the information is available when the user next establishes a connection.

16. The method of claim 15 wherein the information includes items selected to be ordered but that have not yet been ordered.

17. The method of claim 7 wherein each electronic commerce context has associated billing information relating to electronic commerce conducted while in that electronic commerce context.

18. The method of claim 7 wherein each electronic commerce context has associated shipment information relating to electronic commerce conducted while in that electronic commerce context.

19. The method of claim 7 wherein the receiving of a selection includes sending to the user an indication of each of the plurality of electronic commerce contexts.

20. The method of claim 19 wherein the sent indications are to be displayed simultaneously to the user for selection of one of the indications.

21. The method of claim 20 wherein the selection is performed with a single action by the user.

22. The method of claim 20 wherein the selection is performed by a click of a pointing device.

23. The method of claim 7 including receiving from the user an identifier for an electronic commerce context.

24. The method of claim 23 wherein each electronic commerce context is identified by the identifier received from the user.

25. The method of claim 24 wherein each electronic commerce is derivable from the identifier received from the user.

26. The method of claim 7 wherein single-action ordering is enabled and all single-action ordering is relative to the selected electronic commerce context.

27. The method of claim 26 wherein when generating a display for single-action ordering, identifying the selected electronic commerce context.

US 6,629,079 B1

13

14

**28**. The method of claim **7** wherein the user indicates that another user can access information associated with an electronic commerce context.

**29**. The method of claim **7** including limiting the electronic commerce conducted while an electronic commerce context is selected to a specified scope for that electronic commerce context.

**30**. The method of claim **29** wherein the scope is specified by a filter that is applied when electronic commerce is conducted while that electronic commerce context is selected.

**31**. The method of claim **29** wherein the limiting includes displaying only those items that satisfy a certain criteria.

**32**. The method of claim **29** wherein the limiting includes allowing purchase of only those items that satisfy a certain criteria.

**33**. A computer system for maintaining information relating to conducting electronic commerce with a vendor, comprising:

a data component for storing information relating to a plurality of electronic commerce contexts for a user, the information relating to electronic commerce conducted between the user and the vendor while in that electronic commerce context;

a component that receives from the user a selection of one of the plurality of electronic commerce contexts; and

a component that, after receiving the selection of the one of the plurality of electronic commerce contexts, conducts electronic commerce between the user and the vendor and stores information relating to the conducted electronic commerce in association with the selected electronic commerce context.

**34**. The computer system of claim **33** wherein the electronic commerce includes selecting items and the information includes the identity of the items previously selected.

**35**. The computer system of claim **34** including a component that generates a recommendation for items to select based on items previously selected while in the currently selected electronic commerce context.

**36**. The computer system of claim **35** wherein the generated recommendation is presented to another user.

**37**. The computer system of claim **36** wherein an item selected by the other user is a gift for the user.

**38**. The computer system of claim **33** including a component that persistently stores the information.

**39**. The computer system of claim **38** wherein the information includes items selected to be ordered but that have not yet been ordered.

**40**. The computer system of claim **33** wherein each electronic commerce context has associated billing information relating to electronic commerce conducted while in that electronic commerce context.

**41**. The computer system of claim **33** wherein each electronic commerce context has associated shipment information relating to electronic commerce conducted while in that electronic commerce context.

**42**. The computer system of claim **33** wherein the component that receives a selection sends to the user an indication of each of the plurality of electronic commerce contexts.

**43**. The computer system of claim **42** wherein the sent indications are to be displayed simultaneously to the user for selection of one of the indications.

**44**. The computer system of claim **33** wherein the component that conducts electronic commerce includes limiting the electronic commerce conducted to a specified scope for the selected electronic commerce context.

**45**. The computer system of claim **44** wherein the scope is specified by a filter that is applied when electronic commerce is conducted.

**46**. The computer system of claim **44** wherein the limiting includes displaying only those items that satisfy a certain criteria.

**47**. The computer system of claim **44** wherein the limiting includes allowing purchase of only those items that satisfy a certain criteria.

**48**. A method for interacting with a computer, the method comprising:

selecting one of a plurality of interaction contexts for a user; and

after selecting an interaction context, interacting with the user

whereby the interacting is associated with the selected interaction context wherein the user provides at least one of the interaction contexts.

**49**. The method of claim **48** including displaying selection navigation information that indicates each of the plurality of interaction contexts.

**50**. The method of claim **49** wherein the selecting is performed by a single action relating to the displayed selection navigation information.

**51**. The method of claim **48** wherein the interacting includes use of a search engine.

**52**. The method of claim **48** wherein the interacting includes conducting of electronic commerce.

**53**. The method of claim **48** wherein each of the plurality of interaction contexts has associated information relating to interactions engaged in while that interaction context was selected.

**54**. The method of claim **48** including displaying viewing navigation information that indicates each of the plurality of interaction contexts.

**55**. The method of claim **54** herein when an interaction context is selected from the viewing navigation information, information relating to that interaction context is displayed.

**56**. The method of claim **48** wherein the user supplies an identifier for each interaction context.

**57**. A method for interacting with a computer, the method comprising:

selecting one of a plurality of interaction contexts for a user; and

after selecting an interaction context, interacting with the user

whereby the interacting is associated with the selected interaction context wherein the user provides all of the interaction contexts.

**58**. A method for interacting with a computer, the method comprising:

selecting one of a plurality of interaction contexts for a user; and

after selecting an interaction context, interacting with the user

whereby the interacting is associated with the selected interaction context wherein only one of the plurality of interaction contexts is initially provided.

**59**. The method of claim **58** wherein the user subsequently provides additional interaction contexts.

* * * * *

(12) **United States Patent**          (10) Patent No.:     **US 6,625,609 B1**
McDade et al.                           (45) Date of Patent:     **Sep. 23, 2003**

(54) **METHOD AND SYSTEM FOR NAVIGATING WITHIN A BODY OF DATA USING ONE OF A NUMBER OF ALTERNATIVE BROWSE GRAPHS**

(75) Inventors: **Robert W. McDade**, Bellevue, WA (US); **Anne K. Krook**, Seattle, WA (US); **Bonnie Bouman**, Seattle, WA (US)

(73) Assignee: **Amazon.com, Inc.**, Seattle, WA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/433,799**

(22) Filed: **Nov. 3, 1999**

(51) Int. Cl.[7] .............................................. **G06F 17/30**

(52) **U.S. Cl.** .............................. **707/102**; 707/10; 707/9

(58) **Field of Search** ................................ 707/102, 100, 707/10, 9, 104.1, 513

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 5,721,908 A | * | 2/1998 | Lagarde et al. | ............... | 707/10 |
| 5,812,134 A | * | 9/1998 | Pooser et al. | ............... | 345/848 |
| 5,907,843 A | * | 5/1999 | Cleron et al. | ................ | 707/10 |
| 6,081,814 A | * | 6/2000 | Mangat et al. | .............. | 707/501 |
| 6,211,877 B1 | * | 4/2001 | Steele et al. | ............... | 345/804 |
| 6,324,552 B1 | * | 11/2001 | Chang et al. | ............... | 707/501 |
| 6,363,383 B1 | * | 3/2002 | Kindo et al. | ................... | 707/9 |

* cited by examiner

*Primary Examiner*—Greta Robinson
(74) *Attorney, Agent, or Firm*—Perkins Coie LLP

(57)          **ABSTRACT**

A facility for navigating within a body of data using one of a number of distinct browse graphs is described. Initially, a navigation request is received. Based upon information contained in the received navigation request, the facility selects one of the plurality of browse graphs. In response to user input the facility browses the body of data using the selected browse graph.

**32 Claims, 19 Drawing Sheets**





*Fig. 1*



Fig. 2A



*Fig. 2B*



*Fig. 2C*



*Fig. 3A*



*Fig. 3B*



*Fig. 4A*



*Fig. 4B*



*Fig. 4C*



*Fig. 4D*



*Fig. 4E*



*Fig. 5A*



*Fig. 5B*



*Fig. 6*



Fig. 7



*Fig. 8*



*Fig. 9*

| graph identifier | relation identifier | relation name | parent node identifier | child node identifier |
|---|---|---|---|---|
| 1 | 5 | Coins & Stamps | 1 | 15 |
| 1 | 6 | Collectibles | 1 | 36 |
| 1 | 7 | Comics, Cards, Sci-Fi | 1 | 99 |
| 1 | 8 | Computers & Software | 1 | 27 |
| 1 | 9 | Electronics & Photography | 1 | 14 |
| 1 | 14 | Collectibles | 15 | 92 |
| 1 | 23 | Coins & Stamps | 36 | 92 |
| 1 | 94 | Paper | 36 | 111 |
| 1 | 95 | Pez | 36 | 76 |
| 1 | 96 | Pinbacks | 36 | 55 |
| 1 | 211 | Consumer Electronics | 14 | 42 |
| 1 | 214 | Mobile Phones | 42 | 43 |
| 1 | 215 | Phones | 43 | 44 |

*Fig. 10*

relation table

| graph identifier | relation identifier | relation name | parent node identifier | child node identifier | |
|---|---|---|---|---|---|
| 1 | 5 | Coins & Stamps | 1 | 15 | 1111 |
| 1 | 6 | Collectibles | 1 | 36 | 1112 |
| 1 | 7 | Comics, Cards, Sci-Fi | 1 | 99 | 1113 |
| 1 | 8 | Computers & Software | 1 | 27 | 1114 |
| 1 | 9 | Electronics & Photography | 1 | 14 | 1115 |
| 1 | 14 | Collectibles | 15 | 92 | 1116 |
| 1 | 23 | Coins & Stamps | 36 | 92 | 1117 |
| 1 | 94 | Paper | 36 | 111 | 1118 |
| 1 | 95 | Pez | 36 | 76 | 1119 |
| 1 | 96 | Pinbacks | 36 | 55 | 1120 |
| 1 | 211 | Consumer Electronics | 14 | 42 | 1121 |
| 1 | 214 | Mobile Phones | 42 | 43 | 1122 |
| 1 | 215 | Phones | 43 | 44 | 1123 |
| 2 | 5 | Coins & Stamps | 1 | 15 | 1124 |
| 2 | 6 | Collectibles | 1 | 36 | 1125 |
| 2 | 7 | Comics, Cards, Sci-Fi | 1 | 99 | 1126 |
| 2 | 8 | Computers & Software | 1 | 27 | 1127 |
| 2 | 9 | Electronics & Photography | 1 | 14 | 1128 |
| 2 | 14 | Collectibles | 15 | 92 | 1129 |
| 2 | 23 | Coins & Stamps | 36 | 92 | 1130 |
| 2 | 94 | Paper | 36 | 111 | 1131 |
| 2 | 96 | Pinbacks | 36 | 55 | 1132 |
| 2 | 211 | Consumer Electronics | 14 | 42 | 1133 |
| 2 | 214 | Mobile Phones | 42 | 43 | 1134 |
| 2 | 215 | Phones | 43 | 44 | 1135 |
| 2 | 693 | Handies | 1 | 44 | 1136 |

1100

*Fig. 11*

US 6,625,609 B1

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# METHOD AND SYSTEM FOR NAVIGATING WITHIN A BODY OF DATA USING ONE OF A NUMBER OF ALTERNATIVE BROWSE GRAPHS

## TECHNICAL FIELD

The present invention is directed to the field of data browsing, and, more particularly, to the field of customizable data browsing.

## BACKGROUND

As computer use, and particularly the use of the World Wide Web, becomes more and more prevalent, the volumes of data that are available for access using a computer system grow larger and larger. In order for a user to be able to find and make use of particular data, the body of data in which the particular data is contained must be effectively organized.

One way in which a body of data can be organized is by providing a browse graph onto the body of data. A browse graph is a structure, or a "map," for navigating the information contained in the body of data. A browse graph is made up of nodes between which the user may move to access different portions of the information in the body of data. The user begins at a first node, called a "root node." At the root node, the user may choose from a number of different categories. By selecting one of these categories, the user moves to a different node, where the user may view a portion of the information in the body of data pertaining to the selected category and/or select from among a new set of categories to move to another node in the graph. In this manner, the user may move from node to node, viewing the information corresponding to each node.

As an example, an online merchant may provide a browse graph onto information on a large number of items that it is offering for sale. In order to find information on Pez candy dispensers for sale using such a browse graph, a user begins at the root node of the browse graph, and there chooses "COLLECTIBLES" from among a list of high-level categories including "ARTS & ANTIQUES," "BOOKS," "CLOTHING & ACCESSORIES," "COINS & STAMPS," and "COLLECTIBLES," among others. By choosing the "COLLECTIBLES" category, the user moves to a lower-level node in the graph. There, the user chooses "PEZ" from among a list of lower-level categories that are all subcategories of "COLLECTIBLES," including "AUTOGRAPHS," "BOTTLES & CANS," "LUNCHBOXES," and "PEZ," among others. By choosing the "PEZ" category, the user moves to a yet-lower-level node in the graph, where the user can view information on Pez candy dispensers offered for sale by the online merchant.

Such browse graphs, while generally useful, can be disadvantageous when they are poorly adapted to a particular user. For example, where a browse graph locates information that a user is particularly interested in at a level "deep" in the browse graph, thereby requiring a large number of selections to reach the information, that browse graph becomes cumbersome for that user to use. On the other hand, where a browse graph provides access to information that a user does not wish to see or is prohibited from seeing, that browse graph is over-inclusive with respect to that user.

Accordingly, a facility for providing browse graphs that are customized to their users would have significant utility.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a high-level block diagram showing the environment in which the facility preferably operates.

FIGS. 2A–2C are display diagrams showing a user browsing to a "PEZ" category using a first browse graph.

FIGS. 3A–3B are display diagrams showing that a user is unable to browse to the "PEZ" category using a second browse graph.

FIGS. 4A–4E are display diagrams showing a user browsing to a "PHONES" category using the first browse graph.

FIGS. 5A–5B are display diagrams showing a user using the second browse graph browse to a "HANDIES" category having the same contents as the "PHONES" graph in the first browse graph.

FIG. 6 is a flow diagram showing the steps preferably performed by the facility in order to select and use a particular browse graph for browsing.

FIG. 7 is a flow diagram showing the steps preferably performed by the facility in order to generate an alternative browse graph.

FIG. 8 is a data structure diagram showing a sample browse graph.

FIG. 9 is a data structure diagram showing a sample alternative browse graph derived from the browse graph shown in FIG. 8.

FIG. 10 is a data structure diagram showing a sample relation table representing a single browse graph.

FIG. 11 is a data structure diagram showing a sample relation table representing two alternative browse graphs, including the browse graph represented by the relation table shown in FIG. 10 and an alternative browse graph derived from the browse graph represented by the relation table shown in FIG. 10.

## DETAILED DESCRIPTION

The present invention is directed to data navigation using one of a number of alternative browsing graphs. In a preferred embodiment, a browsing facility ("the facility") maintains two or more different browsing graphs on the same set of browse data. Based upon information associated with a user seeking to browse the browse data, or based upon the nature of a request issued by the user, the facility selects one of the browsing graphs, which is used by the user to browse the browse data. By providing different browse graphs on the same browse data, the facility enables a user to utilize a browse graph that is tailored to the user. For example, for a user that has a special interest in a particular kind of data, the user may utilize a browse graph that features that data more prominently, allowing the user to reach the data much more efficiently. As another example, for users that are prohibited from seeing or wish not to see particular data, a browse graph may be provided that does not provide access to such information. By providing multiple browse graphs onto the same browse data in this manner, the facility is able to make the browse data more usable to users with different browsing preferences.

FIG. 1 is a high-level block diagram showing the environment in which the facility preferably operates. The block diagram shows client computer systems, such as client computer systems 110 and 120, that are connected via the Internet 130 to a server computer system 140. Those skilled in the art will recognize that client computer systems could be connected to a server computer system by networks other than the Internet, however. The client computer systems preferably have a web client computer program, such as web clients 121 and 131, that are used by users to connect to a web server computer program 141 in the server computer system.

US 6,625,609 B1

3                                                                          4

The web server, together with the facility **142**, enables the user of a web client to browse a body of browse data, such as browse data **151** and browse data **161**. Such browsing uses one of a plurality of browse graphs, also called "browse hierarchies" provided for the browse data. For example, for browse data **161**, three browse graphs **165**, **166** and **167** are provided. A body of browse data together with the browse graphs provided for are together known as a "browse group." For example, browse data **161** and browse graphs **165**, **166**, and **167** together comprise browse group **160**. The facility **142** executing on the server computer system preferably identifies one of the browse graphs provided for a body of browse data as described further below. In an alternate embodiment, each of the browse graphs in a particular browse group is distributed to a different server computer system, such that the browse graph used by the user is determined by the identity of the server computer system to which the user connects. In this embodiment, the browse data may either be maintained in a central server computer system, or replicated to some or all of the multiple server computer systems.

While preferred embodiments are described in terms of the environment described above, those skilled in the art will appreciate that the facility may be implemented in a variety of other environments, including a single, monolithic computer system, as well as various other combinations of computer systems or similar devices.

To more fully illustrate its implementation and operation, the facility is described in conjunction with an example in which the body of data is comprised of information describing a large number of items that are for sale, such as items available for sale via online auction. Those skilled in the art will recognize, however, that the facility may be employed to navigate bodies of data of all sorts. In the example, the user wishes to display information about Pez candy dispenser items and mobile phone items that are for sale.

FIGS. 2A–2C are display diagrams showing a user browsing to a "PEZ" category containing such information using a first browse graph in which such information is accessible. FIG. 2A shows the display of a web page ("page") **201** containing the initial categories occurring at the root node of the first browse graph. In particular, the categories **210** include "COLLECTIBLES" category **111**.

When the user selects "COLLECTIBLES" category **111**, the facility displays page **202** shown in FIG. 2B. Page **202** contains a new set of categories **220**, each relating to a different type of collectible items. The categories **220** include a "PEZ" category **221** for Pez candy dispensers.

When the user selects category **221** for Pez candy dispensers, the facility displays page **203** shown in FIG. 2C. Page **203** contains information **230** about Pez candy dispensers that are for sale. For example, information item **231** shows information about a Pez candy dispenser in the shape of the Marvin the Martian character that is being sold via online auction. Thus, it can be seen that, using the first browse graph, a user is able to access information about Pez candy dispensers.

In this respect, the first browse graph is contrasted with a second browse graph, which prevents access to information about Pez candy dispensers that are for sale. Such prevention may be desirable where the user is uninterested in or offended by such candy dispensers, or where the user resides in a jurisdiction where the sale or purchase of such candy dispensers is illegal.

FIGS. 3A–3B are display diagrams showing that a user is unable to browse to the "PEZ" category using a second browse graph. FIG. 3A shows the display of page **301**, in which is displayed a list **310** of the categories available from the root node of the second browse graph. The displayed categories **310** includes a "COLLECTIBLES" category **311**.

When the user selects the "COLLECTIBLES" category **311**, page **302** shown in FIG. 3B is displayed. Page **302** contains a list **320** available at the collectibles node of the second browse graph. Categories **320** shown in FIG. 3B differ from categories **210** in that they omit the "PEZ" category included in the first browse graph. Because this category is not available at the collectibles node of the second browse graph, users using the second browse graph to browse the body of information about items offered for sale are prevented from accessing information about Pez candy dispensers that are for sale.

A second aspect of the example shows how a browse graph may be adapted to locate information about a topic of interest to its users in close proximity to the root node, thereby shortening the path of interactions that users must perform in order to browse to such information. In the example, a path requiring four interactions in the first browse graph is reduced to a path requiring only one interaction in the second browse graph.

FIGS. 4A–4E are display diagrams showing a user browsing to a "PHONES" category using the first browse graph. FIG. 4A shows the display of page **401**, which contains the categories **410** at the root node of the first browse graph. The categories **410** include an "ELECTRONICS & PHOTOGRAPHY" category **411**.

When the user selects the "ELECTRONICS & PHOTOGRAPHY" in category **411**, the facility displays page **402** shown in FIG. 4B. Page **402** includes categories **420** each corresponding to a subcategory of "ELECTRONICS & PHOTOGRAPHY." The categories **420** include a "CONSUMER ELECTRONICS," category **421**.

When the user selects the "CONSUMER ELECTRONICS" category **421**, the facility displays page **403** shown in FIG. 4C. Page **403** includes categories **430** each corresponding to a subcategory of "CONSUMER ELECTRONICS." Categories **430** include a "MOBILE PHONES" category **431**.

When the user selects the "MOBILE PHONES" category **431**, the facility displays page **404** shown in FIG. 4D. Page **404** contains categories **440** relating to mobile phones a "PHONES" category **441**. When the user selects the "PHONES" category **441**, the facility displays page **405** shown in FIG. 4E. Page **405** contains information **450** about cellular phone items that are for sale. For example, information item **451** contains information about an Audivox cellular phone that is for sale via online auction.

It can be seen that traversing the first browse graph to access information about cellular phones is relatively arduous, requiring four different user interactions to reach the information from the root node. The second browse graph, on the other hand, developed for users having an interest in mobile phones, enables a user to browse to the same information in a single interaction.

FIGS. 5A–5B are display diagrams showing a user using the second browse graph to browse to a "HANDIES" category having the same contents as the "PHONES" category in the first browse graph. FIG. 5 shows the display of page **501** at the root of the second browse graph. Page **501** includes a list of categories **510** which, in addition to the "ELECTRONICS & PHOTOGRAPHY" category **512**, includes a "HANDIES" category **511**.

When the user selects the "HANDIES" category **511**, the facility immediately displays page **502** shown in FIG. 5B.

5

6

Page **502** contains information **520** about mobile phones, or "handies" that are for sale. It can be seen that, when using the second browse graph, this information may be accessed with only a single user interaction by selecting the handies category at the root of the second browse graph.

The facility provides for browse graphs to be created and associated with users in a variety of ways. A browse graph may be associated with a single user, or with a class, or "group" of users. That is, each browse graph may be associated with a particular user's identity, or rather may be associated with groups of users having particular Internet Service Providers, domain name designations, geographic or political regions, or buying patterns. Alternatively, browse graphs, rather than having associations with groups of users, may be dynamically selected by users, either explicitly or implicitly. For explicit selection, the facility preferably displays a list or other indication of the available browse graphs. The user then clicks on or otherwise identifies the browse graph that the user wishes to use to browse the associated body of data. For implicit selection, the selection of a browse graph is performed by the way in which the user selects the body of data to be browsed. For example, if a company operated a first online auction website for the United States and a second online auction website for the United Kingdom, the company could establish a first browse graph on the auction data for the United States online auction website and a second browse graph on the auction data for the United Kingdom on-line auction website. The user would implicitly select between the first and second browse graphs by selecting between the United States and the United Kingdom websites. Still further, a browse graph may be dynamically generated in response to a browse request, based upon such factors as are described above.

FIG. 6 is a flow diagram showing the steps preferably performed by the facility in order to select and use a particular browse graph for browsing. In step **601**, the facility selects one of the plurality of browse graphs available for the body of data. Such a selection is preferably performed in one or more of the manners discussed above, or may be performed using additional bases. In step **602**, the facility sets the current node of the traversal to the root node of the selected browse graph. The facility then loops through steps **603**–**607** while the current node is the parent of at least one relation between nodes. In step **604**, the facility displays a hyperlink for each relation of which the current node is the parent, such as the hyperlinks of the categories **210** shown in FIG. 2A. In step **605**, the facility receives user input selecting one of the hyperlinks displayed in step **604**. In step **606**, the facility changes the current node in the traversal to the node that is the child of the relation whose hyperlink is selected. In step **607**, if the new current node is the parent of at least one relation in the browse graph, then the facility continues in step **604**, else the facility continues in step **608**. In step **608**, the traversal has reached a leaf node of the browse graph that has no children and with which specific browse data is associated, and the facility displays the browse data stored for the current node. After step **608**, these steps conclude.

FIG. 7 is a flow diagram showing the steps preferably performed by the facility in order to generate an alternative browse graph. In step **701**, the facility creates a copy of an existing browse graph. In step **702**, the facility translates the names of the relations occurring in the copy of the browse graph if the new browse graph is to be in a different natural language. In step **703**, the facility modifies the copy of the browse graph to customize the copy of the browse graph for its intended audience. Step **703** variously involves adding

and/or deleting relations in the copy of the browse graph. After step **703**, these steps conclude and the new browse graph can be made available for use by users.

FIG. 8 is a data structure diagram showing a sample browse graph. The browse graph is comprised of nodes, shown as circles, connected by directional relations, shown as arrows. Each relation is said to have a parent node, shown at the tail end of its arrow, and a child node, shown at the head end of its arrow. Five relations are shown in FIG. 8 that have the root node, node 1, as their parent node: "COINS & STAMPS" relation 5, "COLLECTIBLES" relation 6, "COMICS, CARDS, & SCI-FI" relation 7, "COMPUTERS & SOFTWARE" relation 8, and "ELECTRONICS & PHO-TOGRAPHY" relation 9. Each of these relations corresponds to a category shown when positioned at the root node of the first browse graph. When the user is positioned at root node 1 and selects one of the categories corresponding to one of these relations, the facility traverses the browse graph along that relation from the relation's parent node to its child node. For example, if the category for "COLLECTIBLES" relation 6 is selected by the user while at the root node, the facility traverses the collectible relation 6 to its child node, node 36. At that point, the facility displays the page containing categories corresponding to the relations that have the current node, node 36, as their parent node: "COINS & STAMPS" relation 23, "PAPER" relation 94, "PEZ" relation 95 and "PINBACKS" relation 96. When the user selects one of the categories corresponding to these relations, the facility traverses that relation. For example, if the user selects the category corresponding to the "PEZ" relation 95, then the facility traverses the "PEZ" relation 95 to node 76. Node 76 is characterized as a "leaf node," as there are no relations having node 76 as their parent node. For ease of reference, leaf nodes are identified by a double circle. When the facility traverses to node 76, it identifies node 76 as a leaf node, and displays the browse information associated with it—in this case, the Pez candy dispenser items for sale information shown in FIG. 2C.

In general, the number of relations that must be traversed from the root node in order to reach a particular node is referred to as the depth of that node in the graph. It should be noted that, in some browse graphs, it is possible to reach a particular node by two or more different paths of relations. For example, leaf node 92 may be reached either through the path containing "COINS & STAMPS" relation 5 and "COL-LECTIBLES" relation 14, or by the path containing "COL-LECTIBLES" relation 6 and "COINS & STAMPS" relation 23. Such "alternative paths" to the same node from the root node may contain different numbers of relations. It should further be noted that, for clarity, some nodes and relations— identified by ellipses—have been omitted from the browse graph shown in FIG. 8.

FIG. 9 is a data structure diagram showing a sample alternative browse graph derived from the browse graph shown in FIG. 8. The browse graph shown in FIG. 9 has been derived from the browse graph shown in FIG. 8 using the steps shown in FIG. 7. In comparing FIG. 9 to FIG. 8, it can be seen that the two browse graphs shown therein are mostly comprised of the same nodes and relations. It can be seen, however, that "PEZ" relation 95 occurring in the first browse graph shown in FIG. 8 is omitted from the second browse graph shown in FIG. 9, thereby preventing access to the browse data associated with node 76 by those users using the second browse graph. The second browse graph further differs from the first browse graph in that it contains "HANDIES" relation **693** from the root node to leaf node 44. This relation has been added to make the browse

information associated with the node **44** more readily available to users of the second browse graph.

While the first and second browse graphs are shown conceptually in FIGS. **8** and **9**, browse graphs are preferably stored in table form. FIG. **10** is a data structure diagram showing a sample relation table representing only the first browse graph. The relation table **1000** is comprised of rows **1011–1023**, each corresponding to one relation in the first browse graph. Each row contains five fields: a graph identifier field **1001**, a relation identifier field **1002**, relation name field **1003**, parent node identifier **1004**, and a child node identifier **1005**. Because relation table **1000** contains only relations in the first browse graph, the graph identifier field in every row contains the same graph identifier. The relations identifier field contains a unique identifier for each relation in the graph. For example, the relation identifier field of row **1019** contains the relation identifier "**95**" for the "PEZ" relation shown in FIG. **8**. Relation name field contains the name of the relation for each row, which preferably corresponds to the text displayed by the facility to the user for selecting a further category. The parent node identifier field contains the unique identifier of the node that is the parent node for the relation described by the row. For example, row **1019** indicates that the parent node of the "PEZ" relation **95** has a node identifier "**36**." Similarly, the child node identifier field indicates the node identifier for the node that is the child node of the relation that the row describes. For example, row **1019** indicates that the child node of the Pez relation **95** has node identifier "**76**."

In order to identify for a particular current node the categories that are available for selection, the facility preferably searches the relation table for relations having the node identifier of the current node in their parent node identifier fields. If the result set of such rows is nonempty, then the facility preferably displays the relation names of those relations as categories for the user to choose. If, on the other hand, the result set is empty, then the current node is a leaf node, and the facility preferably displays the browse data associated with the leaf node.

FIG. **11** is a data structure diagram showing a sample relation table representing both the first and the second browse graphs. In accordance with the steps shown in FIG. **7**, the facility has copied the contents of rows **1011–1023** and to relation table **1100** as new rows **1124–1136**. The facility then changes the graph identifier field for the new rows to contain the new graph identifier **2** identifying the new browse graph. The facility further deleted the copy of row **1019** for the "PEZ" relation **95** among the new rows, and added row **1136** for the new "HANDIES" relation **693**. It will be understood by those skilled in the art that the above-described facility could be adapted or extended in various ways. For example, browse graphs may be provided on bodies of data of virtually any type. While the foregoing description makes reference to preferred embodiments, the scope of the invention is defined solely by the claims that follow and the elements recited therein.

What is claimed is:

**1**. A method in a computer system for navigating within a body of data, comprising:

receiving a navigation request from a first user;

based on a characteristic of the first user, determining that the first user is in a first group of users, wherein the first group of users is defined according to buying preferences;

based on determining that the first user is in a first group of users, browsing the body of data in response to input from the first user using a first browse graph;

receiving a navigation request from a second user;

based on a characteristic of the second user, determining that the second user is in a second group of users, wherein the second group of users is defined according to buying preferences, and wherein the second group of users is distinct from the first group of users; and

based on determining that the second user is in a second group of users, browsing the body of data in response to input from the second user using a second browse graph distinct from the first browse graph.

**2**. The method of claim **1** wherein the body of data browsed using the first and second browse graphs is a listing of items for sale.

**3**. The method of claim **1** wherein the first browse graph is tailored to the preferences of the first group of users and the second browse graph is tailored to the preferences of the second group of users.

**4**. The method of claim **1** wherein the second browse graph is constructed so as to prevent access to a portion of the body of data that is prohibited with respect to members of the second group of users.

**5**. The method of claim **1** wherein browsing the body of data in response to input from the first user using a first browse graph involves traversing a first path of relations in the first browse graph to access a selected subset of the body of data,

and wherein browsing the body of data in response to input from the second user using a second browse graph involves traversing a second path of relations in the second browse graph to access the selected subset of the body of data, the first and second paths to the selected subset of the body of data being different.

**6**. The method of claim **1** wherein browsing the body of data in response to input from the first user using a first browse graph involves traversing a first path of relations in the first browse graph to access a selected subset of the body of data, and wherein the first path of relations is not available in the second browse graph, so that the selected subset of the body of data cannot be accessed by the second user.

**7**. The method of claim **1** wherein both the first and second browse graphs are composed of browse relations, and wherein the second graph includes a browse relation not included in the first browse graph.

**8**. The method of claim **1** wherein the first browse graph is comprised of a plurality of text segments in a first natural language, and wherein the second browse graph is comprised of the plurality of text segments in a second natural language distinct from the first natural language.

**9**. A computer-readable medium whose contents cause a computer system to navigate within a body of data by:

receiving a navigation request of a first type, wherein the navigation request includes an indication of buying preferences for a first user;

in response to receiving the navigation request of the first type, browsing the body of data using a first browse graph, wherein the first browse graph is tailored to users issuing navigation requests of the first type;

receiving a navigation request of a second type, wherein the navigation request includes an indication of buying preferences for a second user, wherein the buying preferences for the second user are distinct from the buying preferences for the first user; and

in response to receiving the navigation request of the second type, browsing the body of data using a second browse graph distinct from the first browse graph, wherein the second browse graph is tailored to users issuing navigation requests of the second type.

US 6,625,609 B1

9                                                              10

10. The computer-readable medium of claim 9 wherein the second browse graph is constructed so as to prevent access to a subset of the body of data that is prohibited with respect to users issuing navigation requests of the second type.

11. The computer-readable medium of claim 9 wherein browsing the body of data using a first browse graph involves traversing a first path of relations in the first browse graph to access a selected subset of the body of data,

and wherein browsing the body of data using a second browse graph involves traversing a second path of relations in the second browse graph to access the selected subset of the body of data, the first and second paths to the selected subset of the body of data being different.

12. The computer-readable medium of claim 9 wherein browsing the body of data using a first browse graph involves traversing a first path of relations in the first browse graph to access a selected subset of the body of data, and wherein the first path of relations is not available in the second browse graph, so that the selected subset of the body of data cannot be accessed by users issuing navigation requests of the second type.

13. The computer-readable medium of claim 9 wherein both the first browse graph and second browse graph are composed of browse relations, and wherein the second browse graph includes a browse relation not included in the first browse relation.

14. The computer-readable medium of claim 9 wherein the first browse graph is comprised of a plurality of text segments in a first natural language, and wherein the second graph is comprised of the plurality of text segments in a second natural language distinct from the first natural language.

15. A method in a computer system for navigating within a body of data using one of a plurality of distinct browse graphs, comprising:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of a characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of browse graphs include a first browse graph and a second browse graph; and

in response to user input received subsequent to the receipt of the navigation request, browsing the body of data using the selected browse graph, wherein the body of data contains a selected portion, and wherein the user input sequence required to browse to the selected portion using the first browse graph is different than the user input sequence required to browse to the selected portion using the second browse graph.

16. A method in a computer system for navigating within a body of data using one of a plurality of distinct browse graphs, comprising:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of a characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of browse graphs include a first browse graph and a second browse graph; and

in response to user input received subsequent to the receipt of the navigation request, browsing the body of data using the selected browse graph, wherein the body of data contains a selected portion, and wherein the first

browse graph can be used to browse to the selected portion and the second browse graph cannot be used to browse to the selected portion.

17. A method in a computer system for navigating within a body of data using one of a plurality of distinct browse graphs, comprising:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of a characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of browse graphs include a first browse graph and a second browse graph, and wherein the first browse graph is comprised of a plurality of text segments in a first natural language, and wherein the second browse graph is comprised of the plurality of text segments in a second natural language distinct from the first natural language; and

in response to user input received subsequent to the receipt of the navigation request, browsing the body of data using the selected browse graph.

18. A computer-readable medium whose contents cause a computer system to navigate within a body of data using one of a plurality of distinct browse graphs by:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of the characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of browse graphs include a first browse graph and a second browse graph, and

in response to user input, browsing the body of data using the selected browse graph, wherein the body of data contains a selected portion, and wherein the user input sequence required to browse to the selected portion using the first browse graph is different than the user input sequence required to browse to the selected portion using the second browse graph.

19. A computer-readable medium whose contents cause a computer system to navigate within a body of data using one of a plurality of distinct browse graphs by:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of the characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of distinct browse graphs include a first browse graph and a second browse graph; and

in response to user input, browsing the body of data using the selected browse graph, wherein the body of data contains a selected portion, and wherein the first browse graph can be used to browse to the selected portion and the second browse graph cannot be used to browse to the selected portion.

20. A computer-readable medium whose contents cause a computer system to navigate within a body of data using one of a plurality of distinct browse graphs by:

receiving a navigation request containing information, wherein the information includes an indication of a characteristic for a user;

based upon the received indication of the characteristic for a user, selecting one of the plurality of browse graphs, wherein the plurality of distinct browse graphs include a first browse graph and a second browse graph,

US 6,625,609 B1

11

and wherein the first browse graph is comprised of a plurality of text segments in a first natural language, and wherein the second browse graph is comprised of the plurality of text segments in a second natural language distinct from the first natural language; and

in response to user input, browsing the body of data using the selected browse graph.

21. A method in a computer system for browsing data, the method comprising:

while browsing the data in a first browse mode tailored to users with a first set of buying preferences, receiving a first set of navigation commands;

in response to receiving the first set of navigation commands in the first browse mode, browsing to an identified portion of the data;

receiving a command to store an item in the browsed-to identified portion of data;

in response to receiving a command to store an identified item in the browsed-to identified portion of data, storing the identified item in the browsed-to identified portion of data;

while browsing the data in a second browse mode tailored to users with a second set of buying preferences distinct from the first set of buying preferences, receiving a second set of navigation commands distinct from the first set of navigation commands;

in response to receiving the second set of navigation commands in the second browse mode, browsing to the identified portion of the data; and

displaying the identified portion of the data, including the stored identified item.

22. The method of claim 21 wherein the storing stores a selected indication of an item for sale, and wherein the displaying displays indications of items for sale, including the selected indication.

23. A computer memory containing a compound browsing data structure comprising:

a plurality of browse graphs, each browse graph comprising a plurality of relations used to access a body of subject data,

such that the subject data may be accessed using any one of the plurality of browse graphs,

wherein each browse graph is tailored to users with a distinct set of buying preferences and wherein each browse graph specifies a location in the browse graph for each of the plurality of data portions; and

a plurality of data portions collectively constituting the subject data.

24. A computer memory containing a compound browsing data structure comprising:

a plurality of browse graphs, each browse graph comprising a plurality of relations used to access a body of subject data,

such that the subject data may be accessed using any one of the plurality of browse graphs,

wherein each browse graph is tailored to users with a distinct set of buying preferences; and wherein at least two of the browse graphs specify different locations for a selected one of the data portions.

25. The method of claim 1 wherein the characteristic of the first user and the characteristic of the second user is the Internet Service Provider used by the first user and the second user.

26. The method of claim 1 wherein the characteristic of the first user and the characteristic of the second user is the domain name designation associated with the first user and the second user.

12

27. The computer-readable medium of claim 18 wherein the indication of a characteristic for a user is an implicit indication.

28. The computer-readable medium of claim 18 wherein the indication of a characteristic for a user is an explicit indication.

29. A computer system for browsing a body of data, comprising:

a receiver that receives a navigation request, wherein the navigation request includes an indication of a characteristic for a user;

a browse graph store that contains a plurality of distinct browse graphs; and

a data browser that uses one of the plurality of distinct browse graphs selected based upon the received indication of a characteristic for a user to browse the body of data, wherein the characteristic for the user is the buying patterns of the user.

30. A computer system for browsing a body of data, comprising:

a receiver that receives a navigation request, wherein the navigation request includes an indication of a characteristic for a user;

a browse graph store that contains a plurality of distinct browse graphs; and

a data browser that uses one of the plurality of distinct browse graphs selected based upon the received indication of a characteristic for a user to browse the body of data, wherein the characteristic for the user is the geographic region of the user.

31. A computer system for browsing a body of data, comprising:

a receiver that receives a navigation request, wherein the navigation request includes an indication of a characteristic for a user;

a browse graph store that contains a plurality of distinct browse graphs; and

a data browser that uses one of the plurality of distinct browse graphs selected based upon the received indication of a characteristic for a user to browse the body of data, wherein the characteristic for the user is the political region of the user.

32. A method in a computer system for navigating within a body of data, comprising:

receiving a navigation request from a first user;

based on a characteristic of the first user, determining that the first user is in a first group of users, wherein the first group of users is defined according to geographic region;

based on determining that the first user is in a first group of users, browsing the body of data in response to input from the first user using a first browse graph;

receiving a navigation request from a second user,

based on a characteristic of the second user, determining that the second user is in a second group of users, wherein the second group of users is defined according to geographic region, and wherein the second group of users is distinct from the first group of users; and

based on determining that the second user is in a second group of users, browsing the body of data in response to input from the second user using a second browse graph distinct from the first browse graph, wherein the second browse graph is constructed so as to prevent access to a portion of the body of data that is prohibited with respect to members of the second group of users.

* * * * *

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

**DEFENDANTS**

**(b)**  County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1   U.S. Government
Plaintiff

☐ 3   Federal Question
(U.S. Government Not a Party)

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893  Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1   Original
Proceeding

☐ 2   Removed from
State Court

☐ 3   Remanded from
Appellate Court

☐ 4   Reinstated or
Reopened

☐ 5   Transferred from
another district
(specify)

☐ 6   Multidistrict
Litigation

☐ 7   Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:**   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #        AMOUNT        APPLYING IFP        JUDGE        MAG. JUDGE

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
——— FILED    ——— ENTERED
——— LODGED ——— RECEIVED

        JUN 28 2005      ES

              AT SEATTLE
        CLERK U.S. DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
BY                              DEPUTY
```

IN THE
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASH. AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC. AND A9.COM, INC. | Hearing Date: |
| Plaintiff/Petitioner | CAUSE NO. **CV05-1137** _RSM_ |
| vs. | DECLARATION OF SERVICE OF: |
| **CENDANT CORPORATION; ET AL.,** | **SUMMONS IN A CIVIL CASE; COMPLAINT FOR PATENT INFRINGEMENT - DEMAND FOR JURY TRIAL;** |
| Defendant/Respondent | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **23rd day of June, 2005, at 3:05 PM**, at the address of **50 WESTON Street , HARTFORD, Hartford County, CT** ; this declarant served the above described documents upon **TRILEGIANT CORPORATION,** by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Luz Marquez, Managing Agent, Brown female, Black hr., Glasses, 21-35 yrs. of age, 5'4"-5'8"ft, 131-160lbs.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this 23rd day of June, 2005.

Christine Farah

ABC's Client Name
**Preston, Gates & F...**
(Seattle)

ORIGINAL PRO
SERVICE

**05-CV-01137-LTR**

_____ FILED    _____ ENTERED
_____ LODGED    _____ RECEIVED

JUN 2 8 2005    ES

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

IN THE
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASH. AT SEATTLE

AMAZON.COM, INC. AND A9.COM, INC.

                    Plaintiff/Petitioner

vs.
CENDANT CORPORATION; ET AL.,

                    Defendant/Respondent

Hearing Date:

CAUSE NO. **CV05-1137**  _RSM_

DECLARATION OF SERVICE OF:
**SUMMONS IN A CIVIL CASE; COMPLAINT FOR PATENT INFRINGEMENT - DEMAND FOR JURY TRIAL;**

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **23rd day of June, 2005, at 3:15 PM**, at the address of **208 S LASALLE Street , CHICAGO, Cook** County, IL ; this declarant served the above described documents upon **ORBITZ, LLC**, by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Rashaundra Haynes, Process Specialist, F, B, 35, 5'6", 140 lbs., Black Hair.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this **23rd day of June, 2005**.

_(signature)_

**Steven A Stosur, Reg. # 117-001119, Illinois**

| | | |
|---|---|---|
| ABC's Client Name<br>**Preston, Gates & Ellis**<br>**(Seattle)** | ORIGINAL PROOF OF<br>SERVICE | ABC Tracking #: **3705977** |

. .. .

```
_____ FILED      _____ ENTERED
_____ LODGED     _____ RECEIVED

          JUN 2 8 2005    ES

              AT SEATTLE
        CLERK U.S. DISTRICT COURT
BY     WESTERN DISTRICT OF WASHINGTON
                                  DEPUTY
```

IN THE
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASH. AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC. AND A9.COM, INC. | Hearing Date: |
| Plaintiff/Petitioner | CAUSE NO. **CV05-1137** _RSM_ |
| vs. | DECLARATION OF SERVICE OF: **SUMMONS IN A CIVIL CASE; COMPLAINT FOR PATENT INFRINGEMENT - DEMAND FOR JURY TRIAL;** |
| CENDANT CORPORATION; ET AL., | |
| Defendant/Respondent | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **23rd day of June, 2005, at 3:15 PM,** at the address of **208 S LASALLE Street SUITE 814, CHICAGO,** Cook County, **IL** ; this declarant served the above described documents upon **ORBITZ, INC.,** by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Rashaundra Haynes, Process Specialist, F, B, 35, 5'6", 140 lbs., Black Hair.**

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this **23rd day of June, 2005.**

_[signature]_
_____
**Steven A Stosur, Reg. # 117-001119, Illinois**

| | | |
|---|---|---|
| ABC's Client Name<br>**Preston, Gates & Ellis**<br>(Seattle) | ORIGINAL PROOF OF<br>SERVICE | ABC Tracking #: **3705978**<br>[barcode] |

```
——— FILED      ——— ENTERED
——— LODGED     ——— RECEIVED
```

JUN 2 9 2005    ES

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY WESTERN DISTRICT OF WASHINGTON
                              DEPUTY

## UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASH. AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC., AND A9.COM, INC.<br>Plaintiff/Petitioner | Cause #:   CV05-1137RSM |
| vs.<br>CENDANT CORPORATION; ET AL.<br>Defendant/Respondent | Declaration of Service of:<br>SUMMONS IN A CIVIL CASE; COMPLAINT FOR PATENT INFRINGEMENT<br><br>Hearing Date: |

Declaration:

The undersigned hereby declares: That s(he) is now and at all times herein mentioned, a citizen of the United States and a resident of the State of Washington, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the date and time of Jun 23 2005 12:50PM at the address of 202 N PHOENIX ST  OLYMPIA, within the County of THURSTON, State of WASHINGTON, the declarant duly served the above described documents upon BUDGET RENT A CAR SYSTEM, INC.  by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with CYNTHIA JONES AGENT FOR CORPORATION SERVICE COMPANY, R.A. FOR ABOVE CORP..

No information was provided that indicates that the subjects served are members of the U.S. military.

I hereby declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated: June 27, 2005 at Olympia, WA

by _____
         H. Carino    PSR2003-0326-04

Service Fee Total: $      17.00

05-CV-01137-LTR

JGINAL
OF SERVICE

'age 1 of 1

Preston, Gates & Ellis (Seattle)
925 4th Ave, #1900
Seattle, WA   98104
206 623-7580

# Original

≈AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____ WESTERN _____ District of _____ WASHINGTON _____

AMAZON.COM, INC. and A9.COM, INC.,

        Plaintiffs,

            V.

CENDANT CORPORATION; TRILEGIANT
CORPORATION; ORBITZ, LLC; ORBITZ, INC.;
BUDGET RENT A CAR SYSTEM, INC.; and
AVIS RENT A CAR SYSTEM, INC.,

        Defendants.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

# CV05·1137

TO: (Name and address of Defendant)

    Avis Rent A Car System, Inc.
    c/o Registered Agent
    Corporation Service Company
    202 North Phoenix Street
    Olympia, WA 98506

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

    David T. McDonald
    Preston Gates & Ellis, LLP
    925 Fourth Avenue, Suite 2900
    Seattle, WA 98104

an answer to the complaint which is served on you with this summons, within __20 (twenty)__ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

_____

CLERK

_____

(By) DEPUTY CLERK

DATE  6·22·05

```
_____FILED    _____ENTERED
_____LODGED   _____RECEIVED

        JUN 3 0 2005    ES

            AT SEATTLE
        CLERK U.S. DISTRICT COURT
BY  WESTERN DISTRICT OF WASHINGTON
                        DEPUTY
```

IN THE
UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASH. AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC. AND A9.COM, INC. | Hearing Date: |
| Plaintiff/Petitioner | CAUSE NO. **CV05-1137** 𝒫SM |
| VS.<br>CENDANT CORPORATION; ET AL., | DECLARATION OF SERVICE OF;<br>**SUMMONS IN A CIVIL CASE; COMPLAINT FOR PATENT INFRINGEMENT - DEMAND FOR JURY TRIAL;** |
| Defendant/Respondent | |

The undersigned hereby declares: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, and is competent to be a witness therein.

On the **23rd day of June, 2005, at 12:25 PM**, at the address of **80 STATE Street , ALBANY, Albany County, NY** ; this declarant served the above described documents upon **CENDANT CORPORATION**, by then and there personally delivering 1 true and correct copy(ies) thereof, by then presenting to and leaving the same with **Steve Pastore, manging agent**.

No information was provided or discovered that indicates that the subjects served are members of the U.S. military.

Declarant hereby states under penalty of perjury under the laws of the State of **Washington** that the statement above is true and correct.

DATED this **28th day of June, 2005**.

*Sara Grice*
**Sara Grice, Saratoga New York**

ABC's Client Name
**Preston, Gates & Ellis
(Seattle)**

ORIGINAL PROC
SERVICE

**04-CV-01137-BCST**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| AMAZON.COM, INC. and A9.COM, INC., | ) | No. 05-01137RSM |
| | ) | |
| Plaintiffs, | ) | NOTICE OF APPEARANCE |
| | ) | |
| vs. | ) | |
| | ) | |
| CENDANT CORPORATION; TRILEGIANT | ) | |
| CORPORATION; ORBITZ, LLC; ORBITZ, | ) | |
| INC.; BUDGET RENT A CAR SYSTEM, INC.; | ) | |
| and AVIS RENT A CAR SYSTEM, INC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

TO:              AMAZON.COM, Inc. and A9.COM, Inc.

AND TO:      David T. McDonald, Attorneys for Plaintiffs

PLEASE TAKE NOTICE that Cendant Corporation; Trilegiant Corporation; Orbitz, LLC; Orbitz, Inc.; Budget Rent a Car System, Inc.; and Avis Rent a Car System, Inc. without waiving insufficient service of process, lack of jurisdiction, or any other defense, hereby appear in the above-entitled action by the undersigned attorneys and request that service of all papers and pleadings herein, except original process, be made upon the undersigned, attorneys for said parties, at their offices stated below.

NOTICE OF APPEARANCE -- 1

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

No. 05-01137RSM
M32273-622132

DATED this 6th day of July, 2005.

GRAHAM & DUNN PC

By /s/ K. Michael Fandel
    K. Michael Fandel
    WSBA# 16281
    Email: mfandel@grahamdunn.com
    David M. Byers
    WSBA# 29228
    Email: dbyers@grahamdunn.com
    Cristofer I. Leffler
    WSBA# 35020
    Email: cleffler@grahamdunn.com
    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2005, I presented the foregoing to the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David T. McDonald
davidm@prestongates.com

Attorneys for Plaintiffs

    /s/ K. Michael Fandel
    K. Michael Fandel

NOTICE OF APPEARANCE -- 2

**GRAHAM & DUNN PC**
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

No. 05-01137RSM
M32273-622132

| To: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313–1450 | *REPORT ON THE*<br>*FILING OR DETERMINATION OF AN*<br>*ACTION REGARDING A PATENT OR*<br>*TRADEMARK* |
| --- | --- | --- |

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been filed in the U.S. District Court WESTERN DISTRICT OF WASHINGTON on the following: _X_ **Patents** or ___ Trademarks:

| *DOCKET NO.*<br><br>2:05–cv–01137–RSM | *DATE FILED*<br><br>6/22/05 | *US District Court* WESTERN DISTRICT OF WASHINGTON |
| --- | --- | --- |
| PLAINTIFF<br><br>Amazon.com Inc<br><br>, et al. | | DEFENDANT<br><br>Cendant Corporation<br><br>, et al. |

| *PATENT OR TRADEMARK NO.* | *PATENT OR TRADEMARK NO.* | *PATENT OR TRADEMARK NO.* |
| --- | --- | --- |
| 1. See attached page for patent numbers | 6. | 11. |
| 2. | 7. | 12. |
| 3. | 8. | 13. |
| 4. | 9. | 14. |
| 5. | 10. | 15. |

In the above–entitled case, the following patents(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY<br><br>___ Amendment ___ Answer ___ Cross Bill ___ Other Pleading | |
| --- | --- | --- |

| *PATENT OR TRADEMARK NO.* | *PATENT OR TRADEMARK NO.* | *PATENT OR TRADEMARK NO.* |
| --- | --- | --- |
| 1. | 6. | 11. |
| 2. | 7. | 12. |
| 3. | 8. | 13. |
| 4. | 9. | 14. |
| 5. | 10. | 15. |

In the above–entitled case, the following decision has been rendered or judgment issued:

| DECISION/JUDGMENT |
| --- |

| CLERK<br><br>Bruce Rifkin | (BY) DEPUTY CLERK<br><br>MKB | DATE<br><br>7/11/05 |
| --- | --- | --- |

✎ AO 120 (Rev. 3/04)

| TO: **Mail Stop 8**<br>**Director of the U.S. Patent and Trademark Office**<br>**P.O. Box 1450**<br>**Alexandria, VA 22313-1450** | **REPORT ON THE**<br>**FILING OR DETERMINATION OF AN**<br>**ACTION REGARDING A PATENT OR**<br>**TRADEMARK** |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court ___Western District of Washington___ on the following    X  Patents or    ☐ Trademarks:

| DOCKET NO.<br>C05-1137 | DATE FILED<br>6/22/05 | U.S. DISTRICT COURT<br>Western District of Washington |
|---|---|---|
| PLAINTIFF<br>Amazon.com | | DEFENDANT<br>Cendant Corp., et al |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 5, 715, 399 | 2-3-1998 | Amazon.com |
| 2 | 6, 029, 141 | 2-22-2000 | " |
| 3 | 6, 629, 079 B1 | 9-30-2003 | " |
| 4 | 6, 625, 609 B1 | 9-23-2003 | " |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | | |
|---|---|---|---|
| | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | | |
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>Bruce Rifkin by Deputy Clerk Melody Byrd | (BY) DEPUTY CLERK | DATE<br>7/11/2005 |
|---|---|---|

**Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director**
**Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy**

05-CV-01137-MISC

_____ FILED    _____ ENT____

_____ LODGED ____ REC.

JUL 1 5 2005    DJ

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.Com, Inc. | Case No. 05-CV-01137 RMS |
| Plaintiff(s), | |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation, et al. | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Stephen S. Korniczky hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the Defendants

This application is based upon the following:

The particular need for my appearance and participation is: Paul Hastings has been retained as lead counsel for Defendants

I, Stephen S. Korniczky ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date 7-13-05    Signature of applicant _____

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court): _____

# ORIGINAL

APPLICANT'S NAME: Stephen S. Korniczky

APPLICANT'S FIRM: Paul, Hastings, Janofsky & Walker, LLP

APPLICANT'S ADDRESS 3579 Valley Centre Drive

| | |
|---|---|
| San Diego, California 92130 | Street Address        Room/Suite<br>858-720-2500 |
| City / State /ZIP | Phone number (include area code) |

## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event the applicant ___ Stephen S. Korniczky ___ is unable to be present upon any date assigned by the court.

DATED this __16th__ day of __July__, 20 __05__.

_signature_

Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

| Michael Fandel | 16281 |
|---|---|

LAW FIRM: Graham & Dunn

LOCAL COUNSEL'S ADDRESS: Pier 70, 2801 Alaskan Way    Suite 300

Street Address                                Room/Suite

| Seattle, Washington  98121-1128 | (206) 340-9693 |
|---|---|
| City / State / ZIP | Phone number (include area code) |

**ORDER**

**IT IS ORDERED** that the application of Stephen S. Korniczky _____ to appear

and participate in this action is hereby approved.

**DATED this** 20 day of July _____ , 2005 .

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY: _____

05-CV-01137-LTR

_____ FILED _____ENTERED
_____ LODGED_____ _RECEIVED   DJ
JUL 18 2005
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                                    DEPUTY

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.Com, Inc. | Case No. 05-CV-01137 RMS |
| Plaintiff(s), | |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation, et al. | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, James V. Fazio, III hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the _____
Defendants

*This application is based upon the following:*

The particular need for my appearance and participation is:   Paul Hastings has been retained as lead counsel for Defendants

I, James V. Fazio, III ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date   7/13/05        Signature of applicant _____

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court): _____

# ORIGINAL

APPLICANT'S NAME: __James V. Fazio, III__

APPLICANT'S FIRM: Paul, Hastings, Janofsky & Walker, LLP

APPLICANT'S ADDRESS 3579 Valley Centre Drive

Street Address        Room/Suite

San Diego, California 92130        858-720-2500

City / State /ZIP        Phone number (include area code)


## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event

the applicant ____James V. Fazio, III_____ is unable to be present

upon any date assigned by the court.

DATED this __8th__ day of __July__, 20 __05__

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

Michael Fandel        16281

LAW FIRM: Graham & Dunn

LOCAL COUNSEL'S ADDRESS: Pier 70, 2801 Alaskan Way    Suite 300

Street Address        Room/Suite

Seattle, Washington 98121-1128        (206) 340-9693

City / State / ZIP        Phone number (include area code)

## ORDER

IT IS ORDERED that the application of _James V. Fazio, III_____ to appear
and participate in this action is hereby approved.

DATED this __20__ day of ____July_____, 2005.

**BRUCE RIFKIN, CLERK**
**UNITED STATES DISTRICT COURT**

BY:    _Rhonda Shirk_____

_____FILED ____ ___ENTERED
_____LODGED ____ RECEIVED

J$$ 1 8 2005   DJ

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.Com, Inc. | |
| Plaintiff(s), | Case No. 05-CV-01137 RMS |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation, et al. | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Douglas E. Olson hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the

Defendants .

This application is based upon the following:

The particular need for my appearance and participation is: Paul Hastings has been retained as lead counsel for Defendants

I, Douglas E. Olson ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date 1/15/05     Signature of applicant

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court):_____

05-CV-01137-MAN                     ORIGINAL

APPLICANT'S NAME:   Douglas E. Olson

APPLICANT'S FIRM: Paul, Hastings, Janofsky & Walker, LLP

APPLICANT'S ADDRESS 3579 Valley Centre Drive

| | Street Address          Room/Suite |
|---|---|
| San Diego, California 92130 | 958-720-2500 |
| City / State /ZIP | Phone number (include area code) |

## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event

the applicant ____Douglas E. Olson_____ is unable to be present

upon any date assigned by the court.

DATED this ____19th____ day of ____July_____, 20 05.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

| Michael Fandel | 16281 |
|---|---|

LAW FIRM: Graham & Dunn

LOCAL COUNSEL'S ADDRESS: Pier 70, 2801 Alaskan Way      Suite 300

| Street Address | Room/Suite |
|---|---|
| Seattle, Washington  98121-1128 | (206) 340-9693 |
| City / State / ZIP | Phone number (include area code) |

**ORDER**

IT IS ORDERED that the application of Douglas E. Olson _____ to appear
and participate in this action is hereby approved.

DATED this ___ day of ___July___ , 20___.

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY: _____

# Original

FILED ———— ENTERED
———— LODGED ———— RECEIVED

JUL 1 9 2005    ES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc., <br><br> Plaintiff(s), <br><br> v. <br><br> Cendant Corporation; Trilegiant <br><br> Defendant(s). | Case No. CV05-01137-RSM <br><br> APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, J. David Hadden hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the _____ Plaintiffs Amazon.com, Inc. and A9.com, Inc.

This application is based upon the following:    See ATTACHMENT

The particular need for my appearance and participation is:    See ATTACHMENT

I, J. David Hadden ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date July 14, 2005    Signature of applicant _____

### I have enclosed the required filing fee of $75.00

Receipt number (to be completed by the court): _____



**05-CV-01137-JGM**

APPLICANT'S NAME: J. David Hadden

APPLICANT'S FIRM: Fenwick & West, LLP

APPLICANT'S ADDRESS 801 California Street

| Street Address | Room/Suite |

| Mountain View, CA 94041 | (650) 988-8500 |
| City / State /ZIP | Phone number (include area code) |

## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event the applicant ___J. David Hadden___ is unable to be present upon any date assigned by the court.

DATED this ___19___ day of ___July___, 20__05__.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

| David T. McDonald | 5280 |

LAW FIRM: Preston Gates & Ellis, LLP

LOCAL COUNSEL'S ADDRESS: 925 Fourth Avenue, Suite 2900

Street Address                               Room/Suite

| Seattle, WA 98104 | (206) 623-7580 |
| City / State / ZIP | Phone number (include area code) |

ATTACHMENT

This application is based upon the declaration of J. David Hadden. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

## ORDER

IT IS ORDERED that the application of J. David Hadden _____ to appear

and participate in this action is hereby approved.

DATED this ___20___ day of _____July_____ , 2005 .

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY: _____

# Original

_____ FILED    _____ ENTERED
_____ LODGED    _____ RECEIVED

JUL 1 9 2005    ES

AT SEATTLE
CLERK U.S. DISTRICT COURT
BY                          WESTERN DISTRICT OF WASHINGTON
                                                           DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc.,<br><br>Plaintiff(s),<br><br>v.<br><br>Cendant Corporation; Trilegiant<br><br>Defendant(s). | Case No. CV05-01137-RSM<br><br>APPLICATION FOR LEAVE TO APPEAR<br>PRO HAC VICE |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Darren E. Donnelly hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the _____ Plaintiffs Amazon.com, Inc. and A9.com, Inc.

This application is based upon the following:   See ATTACHMENT

The particular need for my appearance and participation is:   See ATTACHMENT

I, Darren E. Donnelly ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date July 12, 2005    Signature of applicant _____

### I have enclosed the required filing fee of $75.00

Receipt number (to be completed by the court): _____

05-CV-01137-JSR

APPLICANT'S NAME: Darren E. Donnelly

APPLICANT'S FIRM: Fenwick & West, LLP

APPLICANT'S ADDRESS 801 California Street

Street Address          Room/Suite

Mountain View, CA 94041          (650) 988-8500

City / State /ZIP          Phone number (include area code)

### STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, **in the event**
the applicant _____Darren E. Donnelly_____ is unable to be present
upon any date assigned by the court.

DATED this __19__ day of __July__, 20__05__.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

David T. McDonald                    5260

LAW FIRM: Preston Gates & Ellis, LLP

LOCAL COUNSEL'S ADDRESS: 925 Fourth Avenue, Suite 2900

Street Address          Room/Suite

Seattle, WA 98104          (206) 623-7580

City / State / ZIP          Phone number (include area code)

## ATTACHMENT

This application is based upon the declaration of Darren E. Donnelly. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

## ORDER

**IT IS ORDERED** that the application of <u>Darren E. Donnelly</u> to appear and participate in this action is hereby approved.

DATED this ___ day of _____ , 20___.

**BRUCE RIFKIN, CLERK**
**UNITED STATES DISTRICT COURT**

BY: _____

# Original

FILED _____ ENTERED
LODGED _____ RECEIVED

JUL 1 9 2005    ES

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc., | Case No. CV05-01137-RSM |
| Plaintiff(s). | |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation; Trilegiant | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Lynn H. Pasahow hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the Plaintiffs Amazon.com, Inc. and A9.com, Inc.

This application is based upon the following:    See ATTACHMENT

The particular need for my appearance and participation is:    See ATTACHMENT

I, Lynn H. Pasahow ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date July 12, 2005 Signature of applicant _____

### I have enclosed the required filing fee of $75.00

Receipt number (to be completed by the court): _____

05-CV-01137-BOND

APPLICANT'S NAME: __Lynn H. Pasahow__

APPLICANT'S FIRM: | Fenwick & West, LLP |

APPLICANT'S ADDRESS | 801 California Street |

| Mountain View, CA 94041 | Street Address    Room/Suite |
|                         | (650) 988-8500 |
| City / State /ZIP | Phone number (include area code) |

## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event

the applicant ___Lynn H. Pasahow___ is unable to be present

upon any date assigned by the court.

DATED this ___19___ day of __July__, 20 __05__.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:
| David T. McDonald | | 5260 |

LAW FIRM: | Preston Gates & Ellis, LLP |

LOCAL COUNSEL'S ADDRESS: | 925 Fourth Avenue, Suite 2900 |
|                        | Street Address    Room/Suite |

| Seattle, WA 98104 | (206) 623-7580 |
| City / State / ZIP | Phone number (include area code) |

## ATTACHMENT

This application is based upon the declaration of Lynn H. Pasahow. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

## ORDER

IT IS ORDERED that the application of _Lynn H. Pasahow_____ to appear
and participate in this action is hereby approved.

DATED this _20__ day of ___July_____ , 20_05_.

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY: _____

# Original

_____ FILED    _____ ENTERED
_____ LODGED    _____ RECEIVED

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

JUL 1 9 2005    ES

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc., <br><br> Plaintiff(s), <br><br> v. <br><br> Cendant Corporation; Trilegiant <br><br> Defendant(s). | Case No. CV05-01137-RSM <br><br> APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Wendy L. Bjerknes hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the

Plaintiffs Amazon.com, Inc. and A9.com, Inc.

This application is based upon the following:    See ATTACHMENT

The particular need for my appearance and participation is:    See ATTACHMENT

I, Wendy L. Bjerknes ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date 7/14/05    Signature of applicant

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court):_____

05-CV-01137-CERT

APPLICANT'S NAME:   Wendy L. Bjerknes

APPLICANT'S FIRM:  Fenwick & West, LLP

APPLICANT'S ADDRESS  801 California Street

Mountain View, CA 94041
Street Address       Room/Suite
(650) 988-8500

City / State /ZIP       Phone number (include area code)


## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event
the applicant ___ Wendy L. Bjerknes _____ is unable to be present
upon any date assigned by the court.

DATED this ___19___ day of July _____, 200 5.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:
David T. McDonald                    5260
LAW FIRM:  Preston Gates & Ellis, LLP
LOCAL COUNSEL'S ADDRESS: 925 Fourth Avenue, Suite 2900
Street Address                    Room/Suite

Seattle, WA 98104                (206) 623-7580
City / State / ZIP                Phone number (include area code)

## ATTACHMENT

This application is based upon the declaration of Wendy L. Bjerknes. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

## ORDER

IT IS ORDERED that the application of Wendy L. Bjerknes _____ to appear and participate in this action is hereby approved.

DATED this 26 day of July , 2005 .

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY: _____

# Original

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JUL 1 9 2005    ES

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc., | Case No. **CV05-01137-RSM** |
| Plaintiff(s), | |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation; Trilegiant | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, **C. J. Alice Chen** hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the _____ **Plaintiffs Amazon.com,Inc. and A9.com, Inc.**

This application is based upon the following:  See  ATTACHMENT

The particular need for my appearance and participation is:  See  ATTACHMENT

I, **C. J. Alice Chen** ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date **7/14/05**    Signature of applicant _____

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court):_____

05-CV-01137-FINAFF

APPLICANT'S NAME: C. J. Alice Chen

APPLICANT'S FIRM: Fenwick & West, LLP

APPLICANT'S ADDRESS: 801 California Street

| | |
|---|---|
| Mountain View, CA 94041 | (650) 988-8500 |
| City / State /ZIP | Phone number (include area code) |

Street Address    Room/Suite

## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event the applicant ___ C. J. Alice Chen ___ is unable to be present upon any date assigned by the court.

DATED this ___ 19 ___ day of ___ July ___, 2005.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:

| David T. McDonald | 5280 |
|---|---|

LAW FIRM: Preston Gates & Ellis, LLP

LOCAL COUNSEL'S ADDRESS: 925 Fourth Avenue, Suite 2900

Street Address    Room/Suite

| | |
|---|---|
| Seattle, WA 98104 | (206) 623-7580 |
| **City / State / ZIP** | **Phone number (include area code)** |

ATTACHMENT

This application is based upon the declaration of C. J. Alice Chen. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

**ORDER**

IT IS ORDERED that the application of  C. J. Alice Chen                                    to appear

and participate in this action is hereby approved.

DATED this   20   day of        July           , 20 05 .

BRUCE RIFKIN, CLERK
UNITED STATES DISTRICT COURT

BY:    _____

# Original

—— FILED      —— ENTERED
—— LODGED    —— RECEIVED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

JUL 1 9 2005      ES

## APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
                        DEPUTY

| | |
|---|---|
| Amazon.com, Inc. and A9.com, Inc., | Case No. CV 05-01137-RSM |
| Plaintiff(s), | |
| v. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
| Cendant Corporation; Trilegiant | |
| Defendant(s). | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, Hector Ribera hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the Plaintiffs Amazon.com, Inc. and A9.com, Inc.

This application is based upon the following: See ATTACHMENT

The particular need for my appearance and participation is: See ATTACHMENT

I, Hector Ribera ,understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are no pending disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date July 14, 2005    Signature of applicant _____

**I have enclosed the required filing fee of $75.00**

Receipt number (to be completed by the court): _____



05-CV-01137-CNST

APPLICANT'S NAME:    Hector Ribera

APPLICANT'S FIRM: Fenwick & West, LLP

APPLICANT'S ADDRESS 801 California Street

Street Address            Room/Suite

Mountain View, CA 94041       (650) 988-8500

City / State /ZIP        Phone number (include area code)


## STATEMENT OF LOCAL COUNSEL

I am authorized, and will be prepared, to handle this matter, including trial, in the event
the applicant ____Hector Ribera_____ is unable to be present
upon any date assigned by the court.

DATED this __19__ day of __July_____, 20_05_.

_____
Signature of local counsel

LOCAL COUNSEL NAME AND BAR NUMBER:
David T. McDonald                    5280

LAW FIRM: Preston Gates & Ellis, LLP

LOCAL COUNSEL'S ADDRESS: 925 Fourth Avenue, Suite 2900

Street Address                Room/Suite

Seattle, WA 98104            (206) 623-7580

City / State / ZIP          Phone number (include area code)

## ATTACHMENT

This application is based upon the declaration of Hector Ribera. The applicant has associated David T. McDonald, who has an office in this district and is admitted to practice before this Court, and Preston Gates & Ellis, LLP, as required by Local General Rule 2(d).

The particular need for my appearance and participation is that I and my firm, Fenwick & West, LLP have significant experience in this technical area of the law, have an ongoing relationship with the plaintiffs and have developed a significant understanding of plaintiffs' business that plaintiffs feel will be of particular assistance to their prosecution of this case.

**ORDER**

IT IS ORDERED that the application of <u>Hector Ribera</u> to appear
and participate in this action is hereby approved.

DATED this <u>20</u> day of <u>July</u>, 20<u>05</u>.

**BRUCE RIFKIN, CLERK**
**UNITED STATES DISTRICT COURT**

BY: _____

The Honorable R. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC. and A9.COM, INC., | CASE NO. CV-05-1137 (RSM) |
| Plaintiffs, | **DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a) OR, IN THE ALTERNATIVE, TO DISMISS, STAY OR TRANSFER THIS ACTION PURSUANT TO THE FIRST-TO-FILE RULE** |
| vs. | |
| CENDANT CORPORATION; TRILEGIANT CORPORATION; ORBITZ, LLC; ORBITZ, INC.; BUDGET RENT A CAR SYSTEM, INC.; AND AVIS RENT A CAR SYSTEM, INC., | **[ORAL ARGUMENT REQUESTED]** |
| | NOTE ON MOTION CALENDAR: |
| Defendants. | September 9, 2005 |

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   BACKGROUND ............................................................................. 3

      A.    The First-Filed Delaware Action ........................................... 3

      B.    The Retaliatory Washington Action........................................ 3

      C.    Statement of Facts .............................................................. 4

III.  THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
      DELAWARE UNDER 28 U.S.C. § 1404(A) ......................................... 5

      A.    This Action Could Have Been Brought Originally In The District of
            Delaware ......................................................................... 5

      B.    The Convenience And Interest of Justice Factors Overwhelmingly Favor
            Transfer of This Action To The District of Delaware............................ 6

            1.    The District of Delaware Is Much More Convenient for the Parties
                  and Witnesses Than This District (Factor #1)............................ 6

            2.    The District of Delaware Is Much Closer Than This District to
                  Where The Alleged Infringement Took Place (Factor #2) and
                  Sources of Proof Are Located (Factor #3) ................................ 7

            3.    Plaintiffs' Choice of Forum (Factor #4) Is Entitled To Little, If
                  Any, Weight .................................................................... 8

            4.    Related Litigation Involving Substantially the Same Parties Is
                  Pending in the District of Delaware (Factor #5) ......................... 8

            5.    The Remaining "Public Interest" Factors (Factor Nos. 6, 7 & 8)
                  Strongly Favor Transfer of this Action To the district of Delaware ........ 10

            6.    Equitable Considerations Weigh in Favor of Transferring
                  Retaliatory Actions........................................................... 10

IV.   THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO
      THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE .................. 10

      A.    Legal Standard .................................................................... 10

      B.    The Court Should Apply the First-to-File Rule In This Case ............... 11

V.    CONCLUSION .............................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Advanced Semiconductor Materials America Inc. v. Applied Materials Inc.,*
  30 U.S.P.Q.2d 1553 (D.Ariz. 1993) ............................................................. 10

*Alltrade, Inc. v. Uniweld Products, Inc.,*
  946 F.2d 622 (9th Cir. 1991) ...................................................................... 12

*Baird v. California Faculty Ass'n.,*
  2000 WL 516378 (N.D.Cal. Jun. 26, 2000 ...................................................... 10

*Botkin v. Safeco Ins. Co. of Am.,*
  2003 U.S.Dist. LEXIS 6293 (N.D.Cal. Apr. 14, 2003) ........................................ 6

*Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.,*
  185 F.Supp.2d 407 (D.Del. 2002) ................................................................. 11

*Decker Coal Co. v. Commonwealth Edison Co.,*
  805 F.2d 834 (9th Cir. 1986) ........................................................................ 7

*Drucker v. Fernandez,*
  1991 U.S.Dist. LEXIS 7463 (E.D.Pa. Jun. 3, 1991) ........................................... 7

*Google, Inc. v. American Blind & Wallpaper Factory, Inc.,*
  2004 U.S.Dist. LEXIS 27601 (N.D.Cal. Apr. 8, 2004) ...................................... 13

*Hatch v. Reliance Ins. Co.,*
  758 F.2d 409 (9th Cir. 1985) ........................................................................ 6

*Holloway v. Brush,*
  220 F.3d 767 (6th Cir. 2000) ........................................................................ 2

*Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.,*
  1999 WL 910131 (N.D.Cal. Oct. 12, 1999) ...................................................... 9

*IBM Credit Corp. v. Definitive Computer Services,*
  1996 U.S.Dist. LEXIS 2385 (N.D.Cal. Feb. 27, 1996) ....................................... 11

*Italian Colors Restaurant, et al. v. American Express Co.,*
  2003 U.S.Dist. LEXIS 20338 (N.D.Cal. Nov. 10, 2003) ...................................... 9

*K. Toy v. General Electric Co.,*
  1995 WL 396848 (N.D.Cal. Jun. 27, 1995) ...................................................... 7

*Knits 'N' Tweeds, Inc. v. Jones New York,*
  205 U.S.P.Q. 966 (E.D.N.Y. Jan. 25, 1979) ................................................... 12

*Levinson v. Regal Ware, Inc.,*
  14 U.S.P.Q.2d 1064 (D.N.J. 1989) ................................................................. 8

# TABLE OF AUTHORITIES
## (cont'd)

Page(s)

*Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.,*
    2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. Jun. 18, 2004) ........................................... 10, 12, 13

*Pacific Car & Foundry Co. v. Pence,*
    403 F.2d 949 (9th Cir. 1968) ................................................................................................ 9

*Quantel Ltd. v. Adobe Systems Inc.,*
    1996 U.S.Dist. LEXIS 21651 (D.Del. Dec. 12, 1996) ..................................................... 11

*Steelcase Inc. v. Haworth, Inc.,*
    1996 U.S. Dist. LEXIS 20674 (C.D.Cal. May 15, 1996) ................................................... 9

*Symbol Technologies, Inc. v. Intermec Technologies Corp.,*
    2005 U.S.Dist. LEXIS 14415 (W.D.Wis. Jul. 14, 2004) ................................................... 9

*Teknekron Software Systems, Inc. v. Cornell Univ, et al.,*
    1993 U.S.Dist. LEXIS 21337 (N.D.Cal. Jun. 14, 1993) .......................................... 7, 8, 9

*United States v. Wood,*
    925 F.2d 1580 (7th Cir. 1991) ............................................................................................ 2

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ............................................................................................................ 6

*VE Holdings Corp. v. Johnson Gas Appliance Co.,*
    917 F.2d 1574 (Fed.Cir. 1990) ........................................................................................... 7

*West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*
    751 F.2d 721 (5th Cir. 1985) ............................................................................................ 12

## STATUTES

**United States Code**

28 U.S.C. § 1338 ..................................................................................................................... 6

28 U.S.C. § 1404(a) ...................................................................................................... 2, 3, 6, 13

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 7(b) ................................................................................................................ 2

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 2

Fed. R. Civ. P. 12(e) ............................................................................................................... 2

1    Pursuant to 28 U.S.C. § 1404(a) and Civil Rule 7(b), defendants Cendant Corporation

2    ("Cendant"); Trilegiant Corporation ("Trilegiant"); Orbitz, LLC ("Orbitz LLC"); Orbitz, Inc.

3    ("Orbitz Inc."); Budget Rent A Car System, Inc. ("Budget"); and Avis Rent A Car System, Inc.

4    ("Avis") (collectively, "Defendants") hereby move to transfer this action to the District of

5    Delaware for convenience and in the interests of justice or, in the alternative, to dismiss, stay or

6    transfer this action pursuant to the first-to-file rule.

7    Defendants have also filed concurrently herewith a (1) motion to dismiss all claims

8    against Cendant (the parent corporation); (2) motion to dismiss the complaint for failure to state a

9    claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more

10   definite statement of the claims pursuant to Federal Rule of Civil Procedure 12(e); and (3) motion

11   to stay all discovery pending resolution of the motions.  Defendants respectfully submit that to

12   conserve judicial resources, this Court should first decide this motion to transfer venue since if

13   this action is transferred, that may render the motion to dismiss moot.

14   **I.    INTRODUCTION**

15   On June 20, 2005 (two days before plaintiffs filed this complaint), Cendant Publishing,

16   Inc. (one of Cendant's wholly-owned subsidiaries) sued Amazon.com, Inc. ("Amazon") for patent

17   infringement in a related action in the District of Delaware.[1]  In that lawsuit, Cendant Publishing,

18   Inc. contends that Amazon infringes U.S. Patent No. 6,782,370 ("the '370 Patent"), which

19   discloses a method of making recommendations of goods and/or services to potential customers

20   based on the purchasing history of previous customers.

21   Admittedly in response to Cendant's Delaware action, Amazon and its subsidiary A9.com,

22   Inc. ("A9") (collectively, "plaintiffs") immediately filed this related patent infringement action

23   against Cendant and several of its subsidiaries.  Amazon has publicly characterized this action as

24   "purely a defensive measure" that was filed in "direct response" to Cendant's Delaware lawsuit.

25   Fazio Decl., Ex. C.  Amazon has also admitted that this action "involves substantially the same

26   [1] A true and correct copy of the Delaware complaint is attached as Ex. A to the Declaration of
     James V. Fazio, III ("Fazio Decl.") filed concurrently herewith.  This Court may take judicial
27   notice of complaints filed in other courts and other matters of public record.  *Holloway v. Brush*,
     220 F.3d 767, 786 n.3 (6th Cir. 2000); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.
28   1991).

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                    -1-                PAUL, HASTINGS, JANOFSKY & WALKER
                                                                      3579 VALLEY CENTER DRIVE
                                                                         SAN DIEGO, CA 92130

1   parties" as the Delaware action.  Fazio Decl., Ex. B.  Like the '370 Patent at issue in the Delaware

2   action, the patents-in-suit here are related to transacting electronic commerce over the Internet

3   and are directed to methods for transmitting credit card authorizations over the Internet and other

4   methods of facilitating e-commerce using the Internet.

5            In their haste to retaliate, however, plaintiffs did not file this lawsuit in Delaware where it

6   belongs.  In a blatant attempt to forum shop, plaintiffs instead filed this action in Amazon's home

7   territory.  But this action should be transferred to the District of Delaware under 28 U.S.C.

8   § 1404(a) because:  (1) that is where the "center of gravity" in this case is located; (2) that is

9   where all parties are incorporated; (3) that is where plaintiffs acknowledge there is a related,

10  pending patent infringement case between the same parties; (4) the District of Delaware is much

11  more convenient than this forum for most of the parties and relevant witnesses; (5) the allegedly

12  infringing websites (and the employees who designed and maintain them) are much closer to the

13  District of Delaware than this District; (6) most of the relevant documents are much closer to the

14  District of Delaware than this District; and (7) the District of Delaware is less congested than this

15  District.  While a plaintiff's choice of forum is normally entitled to some deference, that is not the

16  case when, as here, plaintiffs have filed an admittedly retaliatory and related action in a

17  transparent effort to forum shop.

18           If this Court is not inclined to transfer this action for reasons of convenience and justice,

19  this action should be dismissed, stayed or transferred under the first-to-file rule.  This action

20  involves substantially the same parties as the first-filed Delaware action, and both actions involve

21  the alleged infringement of patents related to transacting electronic commerce over the Internet.

22  Accordingly, if the Court does not transfer this action to the District of Delaware under 28 U.S.C.

23  § 1404(a), then this action should be dismissed, stayed or transferred to the District of Delaware

24  under the first-to-file rule.

25  **II.    BACKGROUND**

26           **A.    The First-Filed Delaware Action**

27           On October 29, 2004, Cendant Publishing, Inc. ("Cendant Publishing") filed a complaint

28  against Amazon for patent infringement in the District of Delaware.  Fazio Decl., Ex. D.  The

1   patent at issue in that action is U.S. Patent No. 6,782,370 ("the '370 Patent"), which discloses a

2   method of making recommendations of goods and/or services to potential customers based on the

3   purchasing history of previous customers. *Id.* Because the parties were then attempting to

4   resolve that dispute, Cendant Publishing dismissed the action without prejudice soon after filing.

5   Declaration of Eric J. Bock ("Bock Decl."), ¶ 13. The parties did not reach a settlement, and

6   Cendant Publishing re-filed its infringement action against Amazon in the District of Delaware on

7   June 20, 2005. Fazio Decl., Ex. A.

8        **B.    The Retaliatory Washington Action**

9        Two days later, in obvious retaliation, and despite their knowledge of the Delaware action,

10  plaintiffs filed this related action against Cendant and some of its subsidiaries for patent

11  infringement. Plaintiffs admit that this action is "purely a defensive measure" that was filed in

12  "direct response" to the Delaware action. Fazio Decl., Ex. C. Plaintiffs also admit that this action

13  is related to the Delaware action because they filed a Notice of Related Case in the District of

14  Delaware admitting that the two actions involve "substantially the same parties." Fazio Decl, Ex.

15  B.

16       In their haste to retaliate, plaintiffs apparently did not investigate the allegedly infringing

17  activities of any Cendant subsidiary. Instead, plaintiffs alleged, in one broad stroke, that

18  Defendants' business operations and websites infringe plaintiffs' patents. Like Cendant's '370

19  Patent, the patents-in-suit are also related to methods for operating an online marketplace. U.S.

20  Patent No. 5,715,339 ("the '339 Patent") is directed to secure methods for transmitting credit card

21  authorizations over a non-secure network, which enables a retailer to offer an Internet customer

22  several credit card numbers to choose from by, for example, selecting the last 4 digits of the credit

23  card number he or she wishes to use. Complaint, ¶ 12 & Ex. 1 at col. 1-4. U.S. Patent No.

24  6,029,141 ("the '141 Patent") enables customers or affiliates to post recommendations of

25  products and services to the Internet in return for compensation. Complaint, ¶ 18 & Ex. 2 at col.

26  1-4. U.S. Patent No. 6,629,079 ("the '079 Patent") provides customers with a "commerce

27  context" or a selection of shopping baskets from which the customer can select to specify

28  particular shipping, delivery and payment options. Complaint, ¶ 24 & Ex. 3 at col. 1-4. Finally,

1  U.S. Patent No. 6,625,609 ("the '609 Patent") discloses use of a "browse graph" that helps

2  Internet shoppers navigate within a body of data to reach goods and services in which he or she

3  would most likely be interested.  Complaint, ¶ 29 & Ex. 4 at col. 1, lns. 19-32, col. 2, lns. 35-55.

4        **C.    STATEMENT OF FACTS**

5      The "center of gravity" of this action lies in the Northeast, not in this District.  Cendant's

6  operational headquarters and the vast majority of its employees are in New Jersey, which borders

7  Delaware.  Bock Decl., ¶ 8.  Cendant's corporate offices are in New York.  *Id.*  Cendant

8  Publishing is headquartered in New Jersey.  *Id.*  Most of Cendant and Cendant Publishing's

9  employees and documents are located in New Jersey.  *Id.*

10      Avis and Budget are both headquartered in New Jersey.  *Id.*, ¶ 9.  The www.avis.com and

11  www.budget.com websites were originally designed and developed in Garden City, New York

12  and outside Chicago, Illinois, respectively, and are currently operated in New Jersey.  *Id.*  Most of

13  the witnesses with knowledge of the design, development and operation of these websites (such

14  as Paul Kremer and Joseph Kirrane, Vice President, Information Technology) are located in New

15  Jersey.  *Id.*  Further, most of Avis and Budget's key marketing personnel (such as John Peebles,

16  Vice President, Marketing), who have knowledge of facts regarding the affiliate program and

17  other issues related to the '141 Patent, are also located in New Jersey.  *Id.*  Moreover, the Chief

18  Financial Officers for Avis and Budget, who have knowledge of facts relevant to royalty rates and

19  related potential damages issues, are in New Jersey.  *Id.*  Likewise, most of the documents

20  relevant to the design, development and operation of these websites are located in New Jersey.

21  *Id.*

22      Trilegiant's headquarters are in Norwalk, Connecticut, and the

23  www.trilegiantaffiliates.com and www.avgautostore.com websites were both designed and

24  developed, and are currently being operated, in Connecticut.  *Id.*, ¶¶ 10-11.  Most of the witnesses

25  with knowledge of the design, development and operation of these websites (such as Jim

26  McDowell, Director of Technology Engineering, and Chris Johnson, Vice President, Technology)

27  are located in Connecticut.  *Id.*, ¶ 11.  In addition, the individuals with knowledge of the financial

28  records and profits of these websites (such as Al Fino, Group Vice President and Controller) also

1    work in Connecticut. *Id.* Likewise, most of the documents relevant to the design, development

2    and operation of these websites are located in Connecticut. *Id.*

3        Of all the defendants, the only one not based in the Northeast is Orbitz, which is

4    headquartered in Chicago, Illinois. *Id.*, ¶ 10. But Chicago is still three times closer to the District

5    of Delaware than this District (Chicago is 2,100 miles from Seattle but only 750 miles from

6    Delaware). Fazio Decl., ¶¶ 11-12 & Exs. I-J.

7    **III.    THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF**

8    **         DELAWARE UNDER 28 U.S.C. § 1404(A)**

9        **A.    This Action Could Have Been Brought Originally In The District of Delaware**

10       For the convenience of the parties and witnesses and in the interests of justice, a district

11    court may transfer any civil action to any other district in which the lawsuit "might have been

12    brought." 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Before a

13    district court can consider transferring an action to another forum, it must first be established that

14    the potential transferee district is one in which the action "might have been brought" in the first

15    instance. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

16    That requires a showing that the transferee forum has subject matter jurisdiction and personal

17    jurisdiction over the parties and also that venue is proper in that district. *Botkin v. Safeco Ins. Co.*

18    *of Am.*, 2003 U.S.Dist. LEXIS 6293, at *5 (N.D.Cal. Apr. 14, 2003).[2]

19       This action is one that might have been brought in the District of Delaware. Plaintiffs

20    have sued Defendants for patent infringement; thus, all federal courts (including the District of

21    Delaware) have subject matter jurisdiction. 28 U.S.C. § 1338. Companies are subject to personal

22    jurisdiction in any state in which they are incorporated, *Drucker v. Fernandez*, 1991 U.S.Dist.

23    LEXIS 7463, at *6 n.2 (E.D.Pa. Jun. 3, 1991), and venue in patent cases is coextensive with

24    personal jurisdiction. *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584

25    (Fed.Cir. 1990). Because Defendants are all incorporated in the State of Delaware, all

26

27

_____

28    [2] For the Court's convenience, copies of cases published in unofficial reporters are attached in
      alphabetical order to the Fazio Decl.

1  Defendants are subject to personal jurisdiction in the District of Delaware, and venue is likewise

2  proper there.

### B.  The Convenience And Interest of Justice Factors Overwhelmingly Favor Transfer of This Action To The District of Delaware

5  Once it is established that the transferee forum is one in which the action could originally

6  have been brought, courts consider the following factors in deciding a transfer motion:  (1) the

7  convenience of the parties and the witnesses; (2) the location where the alleged events in the

8  lawsuit took place (i.e., the "center of gravity" of the case); (3) the relative ease of access to the

9  sources of proof and compulsory process; (4) the plaintiff's choice of forum; (5) the pendency of

10  related litigation in the transferee forum; (6) the relative congestion in the two courts; (7) the

11  public interest in the local adjudication of local controversies; and (8) the relative familiarity of

12  the courts with the applicable law.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

13  843 (9th Cir. 1986).  *See also K. Toy v. General Electric Co.*, 1995 WL 396848, at *1 (N.D.Cal.

14  Jun. 27, 1995); *Teknekron Software Systems, Inc. v. Cornell Univ, et al.*, 1993 U.S.Dist. LEXIS

15  21337, at *18 (N.D.Cal. Jun. 14, 1993).

16  As explained below, the balance of these factors tips decidedly in favor of transferring this

17  action to the District of Delaware.

### 1.  The District of Delaware Is Much More Convenient for the Parties and Witnesses Than This District (Factor #1)

20  As a preliminary matter, all parties (including plaintiffs) are incorporated in the State of

21  Delaware.  Complaint, ¶¶ 2-8.  Further, four of the six defendants are headquartered within 170

22  miles of the federal courthouse in the District of Delaware; only the two plaintiffs are not based in

23  the Northeast.  Bock Decl, ¶¶ 8-10.[3]  Though Amazon is located in Seattle, A9 is located in

24  California.  Complaint, ¶ 3.  Thus, by sheer numbers, the District of Delaware is more convenient

25  for most of the parties than this District.

---

[3] The two Orbitz defendants are headquartered in Chicago, Illinois, which is still much closer to the District of Delaware than this District.  Bock Decl., ¶ 10.

1    Further, most of the witnesses with knowledge of the design, development and operation

2    of the allegedly infringing websites (such as Joseph Kirrane, Paul Kremer, and Jim McDowell)

3    work much closer to the District of Delaware than this District.  Bock Decl., ¶¶ 9, 11.  Most of the

4    witnesses with knowledge regarding Cendant's affiliate program and other issues related to the

5    '141 Patent (such as John Peebles) are also located in the Northeast.  *Id.*, ¶ 9.  In addition, most of

6    the individuals with knowledge of financial issues are also located in the Northeast.  *Id.*, ¶¶ 9, 11.

7    Consequently, it is more convenient for most of the witnesses to travel to the District of Delaware

8    than to fly across the country for proceedings in this District.

9        In short, transfer to the District of Delaware would serve the convenience of the parties

10    and witnesses.

11        **2.    The District of Delaware Is Much Closer Than This District to Where**
          **The Alleged Infringement Took Place (Factor #2) and Sources of Proof**
12        **Are Located (Factor #3)**

13        A fundamental principle guiding section 1404(a) analysis is that litigation should proceed

14    "in that place where the case finds its 'center of gravity.'"  *Teknekron*, 1993 U.S.Dist. LEXIS

15    21337, at *19 (quoting *Levinson v. Regal Ware, Inc.*, 14 U.S.P.Q.2d 1064, 1065 n.3 (D.N.J.

16    1989)).  This principle is particularly important in patent infringement cases.  *Id.*  In patent cases,

17    the "center of gravity" involves consideration not just of where the patented methods were

18    designed and developed, but more importantly, where the allegedly infringing service or process

19    was designed, developed and produced.  *Teknekron*, 1993 U.S.Dist. LEXIS 21337, at *20.

20        Under this analysis, the "center of gravity" for this action is in the Northeast, not in this

21    District.  Most of the allegedly infringing websites and relevant documents are located in New

22    York, New Jersey and Connecticut.  Bock Dec., ¶¶ 8-9, 11.  Thus, with the exception of Orbitz,

23    most of the activities surrounding the design, development and operation of the allegedly

24    infringing websites took place much closer to the District of Delaware than this District.

25        In sum, this action should be transferred to the District of Delaware because that is much

26    closer to the "center of gravity" in this case than this District.  *Teknekron*, 1993 U.S. Dist. LEXIS

27    21337, at *21-22 (transferring patent infringement action to where most of the material events

28

1    took place); *Steelcase Inc. v. Haworth, Inc.,* 1996 U.S. Dist. LEXIS 20674, at *9-10 (C.D.Cal.

2    May 15, 1996) (transferring patent infringement action to Michigan because the individuals

3    involved in the design and development of the infringing products worked in Michigan).

### 3.    Plaintiffs' Choice of Forum (Factor #4) Is Entitled To Little, If Any, Weight

6    While a plaintiff's choice of forum is usually entitled to some deference, it should be

7    disregarded when, as here, the place of filing is the result of forum shopping. *Italian Colors*

8    *Restaurant, et al. v. American Express Co.,* 2003 U.S.Dist. LEXIS 20338, at *11 (N.D.Cal. Nov.

9    10, 2003) (disregarding plaintiff's choice of forum because of forum shopping). Here, it is not

10    clear why (aside from wanting to litigate in their home state) Amazon filed suit in this District

11    despite knowing that most of the Defendants and the evidence relevant to this lawsuit are located

12    in the Northeast. Plaintiffs' choice of forum is even more perplexing given their acknowledgment

13    of a related action pending in the District of Delaware. Fazio Decl., Ex. B. Consequently,

14    plaintiffs' decision to file suit in this District should be completely disregarded.

15    At a minimum, plaintiffs' choice of forum should not be accorded any deference because

16    none of the allegedly infringing conduct occurred in this District. *Pacific Car & Foundry Co. v.*

17    *Pence,* 403 F.2d 949, 954 (9th Cir. 1968). *See also Symbol Technologies, Inc. v. Intermec*

18    *Technologies Corp.,* 2005 U.S.Dist. LEXIS 14415, at *8 (W.D.Wis. Jul. 14, 2004); *Hyundai*

19    *Space & Aircraft Co., Ltd. v. Boeing Co.,* 1999 WL 910131, at *4 (N.D.Cal. Oct. 12, 1999).

20    While the inventors of the patents-in-suit largely reside in Washington, the majority of allegedly

21    infringing activities took place in New Jersey, New York and Connecticut because that is where

22    the Subsidiary Defendants' headquarters and the allegedly infringing websites are predominantly

23    located. Accordingly, plaintiffs' choice of forum is entitled to little (if any) weight.

### 4.    Related Litigation Involving Substantially the Same Parties Is Pending in the District of Delaware (Factor #5)

25    The pendency in another district of a related action is a factor that "weighs heavily" in

26    favor of transfer. *Baird v. California Faculty Ass'n.,* 2000 WL 516378, at *1 (N.D.Cal. Jun. 26,

27    2000). Importantly, the subject matter in the two actions need not be identical to justify transfer;

28

1  they need only be similar. *Advanced Semiconductor Materials America Inc. v. Applied Materials*

2  *Inc.*, 30 U.S.P.Q.2d 1553, 1554 (D.Ariz. 1993); *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.*,

3  2004 U.S. Dist. LEXIS 10906, at *24 (S.D.N.Y. Jun. 18, 2004) (noting that while one action

4  involved claims for patent infringement, and the other action involved claims for trade secret

5  misappropriation, both actions involved similar technology).

6      In *Advanced Semiconductor*, for example, the court transferred a patent infringement

7  action from Arizona to California because the case was related to two other patent infringement

8  actions between the same parties pending in California. 30 U.S.P.Q.2d at 1554. While the two

9  disputes involved different patents, the Court transferred the action because both actions involved

10  the same parties and technology and thus would entail "much overlap of issues, witnesses, prior

11  art, and documents." *Id.*

12      Likewise here, there is considerable overlap between the issues, witnesses and technology

13  in this case with the Delaware action. Both actions involve claims for the infringement of patents

14  related to transacting e-commerce over the Internet. Further, both actions involve patents

15  designed to recommend customized goods and services to Internet customers. Cendant

16  Publishing's '370 Patent discloses a method of recommending goods and/or services to potential

17  customers on a web page based on previous customers' purchasing history. Similarly, Amazon's

18  '609 Patent uses a "browse graph" that takes data in which an Internet user has a "special

19  interest" and "features that data more prominently, allowing the user to reach the data much more

20  efficiently." Complaint, Ex. 4 at col. 2, lns. 45-49.

21      Both actions will also require testimony from many of the same witnesses, such as Jeffrey

22  Bezos (the founder of Amazon), who would likely testify regarding patent validity and

23  infringement issues in both cases. Key Information Technology personnel (such as Joseph

24  Kirrane and Paul Kremer) would likely testify in both actions regarding the design, development

25  and operation of the Subsidiary Defendants' websites. Bock Decl., ¶ 9. Further, both actions

26  may involve testimony from each subsidiary's Chief Financial Officer, who would provide

27

28

1    evidence relevant to financial issues in both cases. *Id.* Hence, the two actions are related even

2    though they do not involve identical patents, and plaintiffs have admitted as much.[4]

3          In short, the pendency in Delaware of related patent litigation involving substantially the

4    same parties and similar subject matter is yet another reason why this action should be transferred

5    to the District of Delaware. *IBM Credit Corp. v. Definitive Computer Services*, 1996 U.S.Dist.

6    LEXIS 2385, at *7-8 (N.D.Cal. Feb. 27, 1996) (transferring case to Texas because the plaintiff

7    was a defendant in a related case pending there).

8          **5.    The Remaining "Public Interest" Factors (Factor Nos. 6, 7 & 8)**
              **Strongly Favor Transfer of this Action To the District of Delaware**
9

10         The District of Delaware has a compelling interest in adjudicating actions between

11   Delaware corporations. *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.*, 185 F.Supp.2d 407, 412

12   (D.Del. 2002). Further, the District of Delaware has "considerable experience with patent cases."

13   *Quantel Ltd. v. Adobe Systems Inc.*, 1996 U.S.Dist. LEXIS 21651, at *4-5 (D.Del. Dec. 12, 1996).

14   The District of Delaware is also less congested than this District. According to the

15   Administrative Office of the United States Courts, for the 12-month period ended September,

16   2004, the District of Delaware had 1,931 civil cases pending and an unweighted average number

17   of filings per judge of 441. Fazio Decl., ¶ 7. By contrast, for that same period, the Western

18   District of Washington had 4,085 civil cases pending and an unweighted average number of

19   filings per judge of 655. *Id.* Certainly, it would be a more efficient use of judicial resources to

20   have one court "get up to speed" on the technology involved in both actions than two courts.

21         On balance, these "public interest" factors also militate in favor of transferring this action

22   to the District of Delaware.

23         **6.    Equitable Considerations Weigh in Favor of Transferring Retaliatory**
              **Actions**
24

25         Finally, equitable considerations weigh in favor of transferring retaliatory actions. *Knits*

26   *'N' Tweeds, Inc. v. Jones New York*, 205 U.S.P.Q. 966, 967 (E.D.N.Y. Jan. 25, 1979)

27   (transferring the action because it appeared to be a "retaliatory action"). Amazon has admitted

---

[4] In addition to being a defendant in the Delaware action, Amazon is also a defendant in another
patent infringement lawsuit filed against it by BTG International, Inc. Fazio Decl., Ex. E.

28

1   that this action was filed in "direct response" to the Delaware Action and is "purely a defensive

2   measure." Fazio Decl., Ex. C. As a "purely defensive" action bearing all the earmarks of a

3   retaliatory lawsuit, this action should be transferred to the District of Delaware where it belongs.

## IV.   THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE

If this Court does not transfer this action in the interests of justice, it should dismiss, stay

or transfer this action under the first-to-file rule.

### A.   Legal Standard

Under the first-to-file rule, a district court may dismiss, stay or transfer an action when a

similar complaint has already been filed in another federal court. *Alltrade, Inc. v. Uniweld

Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule was developed to promote comity

among the federal courts and to minimize interference with each other's affairs. *West Gulf

Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

In determining whether to apply the first-to-file rule, courts consider (1) the chronology of

the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946

F.2d at 625-26. Importantly, neither the parties nor the issues in the two actions need to be

identical in order to invoke the first-to-file rule; if the two actions share "overlapping factual and

legal issues," then the first-to-file rule may be applied. *Mastercard*, 2004 U.S.Dist. LEXIS

10906, at *24.

In *Mastercard*, for example, Lexcel sued Mastercard in Arizona federal court for breach

of contract, misappropriation of trade secrets and related causes of action in connection with the

parties' software license agreement. Shortly after, Mastercard sued Lexcel for a declaratory

judgment of non-infringement and invalidity of patents related to Lexcel's financial network

testing software. 2004 U.S.Dist. LEXIS 10906, at *3. While the two actions involved different

legal claims, the Court found that there were "sufficient overlapping factual and legal issues"

between the two actions to trigger the first-to-file rule. 2004 U.S.Dist. LEXIS 10906, at *24.

### B.   The Court Should Apply the First-to-File Rule In This Case

The facts of this case equally support application of the first-to-file rule. First, the

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                    -11-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   chronology of the two actions weighs in favor of transfer of this action because the Delaware

2   action was filed before this action.  Second, this action involves what Amazon admits are

3   "substantially the same parties" as the Delaware action.  Fazio Decl., Ex. B.  While this action

4   involves four additional defendants who are not parties to the Delaware action, that is not enough

5   to defeat application of the first-to-file rule.  *See Google, Inc. v. American Blind & Wallpaper*

6   *Factory, Inc.*, 2004 U.S.Dist. LEXIS 27601, at *12 (N.D.Cal. Apr. 8, 2004) ("strict identity of

7   parties is not an absolute requirement of the first-to-file rule").

8          Third, both actions involve "similar issues" in that both actions involve claims for the

9   infringement of patents related to transacting electronic commerce over the Internet.  The '370

10  Patent, at issue in Delaware, relates to methods of making customized recommendations of goods

11  and/or services to potential Internet customers based on previous customers' purchasing history.

12  Fazio Decl., Ex. A.  Similarly, Amazon's '609 Patent discloses use of a "browse graph" to

13  identify data in which an Internet user has a "special interest," which the graph then displays

14  "more prominently, allowing the user to reach the data much more efficiently."  Complaint, Ex. 4

15  at col. 2, lns. 45-49.  Thus, while the patents-in-suit in the two actions are different, both actions

16  involve similar legal issues and similar technology.  Accordingly, this action should be dismissed,

17  stayed or transferred to the District of Delaware under the first-to-file rule.  *Mastercard*, 2004

18  U.S. Dist. LEXIS 10906, at *24 (applying the first-to-file rule to patent infringement actions

19  because the actions involved similar technology and arose out of the same dispute between the

20  same parties); *Google*, 2004 U.S.Dist. LEXIS, at *12-14 (applying the first-to-file rule because

21  there was a "substantial overlap" of the parties and because the actions involved the same

22  "fundamental issues").

23  **V.    CONCLUSION**

24         For the foregoing reasons, Defendants respectfully request that this Court either (1)

25  transfer this action to the District of Delaware for reasons of convenience and justice pursuant to

26  28 U.S.C. § 1404(a); or (2) dismiss, stay, or transfer this action to the District of Delaware

27  pursuant to the first-to-file rule.

28

1   DATED: August __12_2005          By: _____

2                                        DOUGLAS E. OLSON

3                                    Attorneys for Defendants
                                     CENDANT CORPORATION; TRILEGIANT
4                                    CORPORATION; ORBITZ, LLC; ORBITZ, INC.;
                                     BUDGET RENT A CAR SYSTEM, INC.; AND AVIS
5                                    RENT A CAR SYSTEM, INC.
                                     *Admitted Pro Hac Vice*
6
                                     And
7
                                     K. Michael Fandel
8                                    WSBA# 16281
                                     Graham & Dunn PC
9                                    2801 Alaskan Way, Suite 300
                                     Seattle, WA 98121
10                                   Email: mfandel@grahamdunn.com

11

12                             **CERTIFICATE OF SERVICE**

13        I hereby certify that on August 12, 2005, I presented the foregoing to the Clerk of the

14   Court using the CM/ECF system, which will send notification of such filing to the following:

15        David T. McDonald
          davidm@prestongates.com
16
          Attorneys for Plaintiffs
17
                                     /s/ K. Michael Fandel
18                                   _____
                                     K. Michael Fandel
19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO TRANSFER                               PAUL, HASTINGS, JANOFSKY & WALKER
VENUE - Case No. CV05-1137              -13-                      3579 VALLEY CENTER DRIVE
                                                                    SAN DIEGO, CA 92130

1

The Honorable R. Martinez

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
9                                AT SEATTLE

10   AMAZON.COM, INC. and A9.COM, INC.,        )     CASE NO. CV-05-1137 (RSM)
                                               )
11                  Plaintiffs,                )     **[PROPOSED] ORDER**
                                               )     **TRANSFERRING VENUE**
12           vs.                               )     **PURSUANT TO 28 U.S.C. § 1404(a)**
                                               )     **OR, IN THE ALTERNATIVE,**
13   CENDANT CORPORATION; TRILEGIANT           )     **DISMISSING, STAYING OR**
     CORPORATION; ORBITZ, LLC; ORBITZ,         )     **TRANSFERRING THIS ACTION**
14   INC.; BUDGET RENT A CAR SYSTEM, INC.;     )     **PURSUANT TO THE FIRST-TO-FILE**
     and AVIS RENT A CAR SYSTEM, INC.,         )     **RULE**
15                                             )
16                  Defendants.                )
                                               )
17                                             )
     _____)

18       Having considered the briefs, declarations and other papers filed by the parties, and the

19   argument of counsel on the subject of Defendants' motion to transfer venue to the District of

20   Delaware pursuant to 28 U.S.C. § 1404(a) or, in the alternative, to dismiss, stay or transfer this

21   action pursuant to the first-to-file rule, and good cause appearing therefore:

22       IT IS HEREBY ORDERED THAT:

23       **1.**     Defendants' motion to transfer venue to the District of Delaware pursuant to 28

24              U.S.C. § 1404(a) is GRANTED.  For the convenience of the parties and

25              witnesses, and in the interests of justice, this action is hereby transferred to the

26              District of Delaware.

(PROPOSED) ORDER TRANSFERRING
VENUE -- 1
SAN/119585.1
No. 05-01137RSM
m32273-632616.doc

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

In the alternative:

IT IS HEREBY ORDERED THAT:

1.    Defendants' motion to dismiss, stay or transfer this action to the District of
Delaware pursuant to the first-to-file rule is GRANTED.  This action is
hereby transferred to the District of Delaware.


Dated: _____    By: _____
                                    Honorable R. Martinez


Presented By:
Paul Hastings, Janofsky & Walker LLP


By: _____
Douglas E. Olson
James Fazio, III
Attorneys for Defendants,
CENDANT CORPORATION;
TRILEGIANT CORPORATION;
ORBITZ LLC; ORBITZ, INC.;
BUDGET RENT A CAR SYSTEM, INC.;
AND AVIS RENT A CAR SYSTEM, INC.


(PROPOSED) ORDER TRANSFERRING
VENUE -- 2
SAN/119585.1
No. 05-01137RSM
m32273-632616.doc

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1

2

3                                                                    The Honorable R. Martinez

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10   AMAZON.COM, INC. and A9.COM,          CASE NO. CV-05-1137 (RSM)
     INC.,
11                                         **DEFENDANTS' (1) MOTION TO DISMISS
                 Plaintiffs,               ALL CLAIMS AGAINST CENDANT
12                                         CORPORATION; (2) MOTION TO
          vs.                              DISMISS THE COMPLAINT FOR
13                                         FAILURE TO STATE A CLAIM
     CENDANT CORPORATION;                  PURSUANT TO FED. R. CIV. P. 12(B)(6)
14   TRILEGIANT CORPORATION;               OR, IN THE ALTERNATIVE, FOR MORE
     ORBITZ, LLC; ORBITZ, INC.; BUDGET     DEFINITE STATEMENT PURSUANT TO
15   RENT A CAR SYSTEM, INC.; AND          FED. R. CIV. P. 12(E); AND (3) MOTION
     AVIS RENT A CAR SYSTEM, INC.,         TO STAY DISCOVERY PENDING
16                                         RESOLUTION OF THE MOTIONS**
                 Defendants.
17                                         **[ORAL ARGUMENT REQUESTED]**

18                                         NOTE ON MOTION CALENDAR:

19                                              September 9, 2005

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ............................................................................................ - 1 -

II.   BACKGROUND ............................................................................................. - 4 -

      A.    The District of Delaware Lawsuit ...................................................... - 4 -

      B.    The Western District of Washington Lawsuit..................................... - 4 -

      C.    Statement of Facts .............................................................................. - 5 -

III.  THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST CENDANT
      CORPORATION ........................................................................................... - 8 -

      A.    Standard of Review ............................................................................ - 8 -

      B.    This Court Should Dismiss All Claims Against Cendant As A Matter Of
            Law..................................................................................................... - 10 -

            1.    Cendant Does Not Operate Any Allegedly Infringing Business or
                  Website ..................................................................................... - 10 -

            2.    Cendant Is Not Liable For The Allegedly Infringing Acts Of Its
                  Subsidiaries As A Matter Of Law ............................................. - 11 -

IV.   THIS COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO
      STATE A CLAIM OR, IN THE ALTERNATIVE, ORDER PLAINTIFFS TO
      PROVIDE A MORE DEFINITE STATEMENT OF THEIR CLAIMS .................... - 13 -

      A.    Having Alleged Direct Infringement, Plaintiffs Lack Standing To Sue For
            Contributory Or Inducing Infringement............................................. - 13 -

      B.    Plaintiffs' Claims For Direct, Contributory, And Inducement Of
            Infringement Should Be Dismissed For Failure To State A Claim ................ - 14 -

      C.    Defendants Are Entitled To A More Definite Statement of Plaintiffs'
            Claims ................................................................................................ - 16 -

V.    ALL DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF
      DEFENDANTS' MOTIONS................................................................................ - 18 -

VI.   CONCLUSION ............................................................................................... - 19 -

1

# TABLE OF AUTHORITIES

2

Page

3

## CASES

4    *A. Stucki Company v. Worthington Industries, Inc.,*

5      849 F.2d 593 (Fed.Cir. 1988)............................................................- 12 -, - 13 -

      *Accord Fletcher v. Atex, Inc.,*

6      68 F.3d 1451 (2nd Cir. 1995)........................................................................- 13 -

7    *Agilent Technologies, Inc. v. Micromuse, Inc.,*

8      2004 WL 2346152 (S.D.N.Y. Oct. 19, 2004) ...............................- 18 -, - 19 -

      *Allen Engineering Corp. v. Bartell Indus.,*

9      299 F.3d 1336 (Fed.Cir. 2002)....................................................................- 15 -

10   *American Telephone & Telegraph Co. v. Compagnie Bruxelles Lambert,*

11     94 F.3d 586 (9th Cir. 1996).........................................................................- 13 -

      *Anderson v. Clow,*

12     89 F.3d 1399 (9th Cir. 1996)........................................................................- 10 -

13   *Anderson v. Liberty Lobby, Inc.,*

14     477 U.S. 242 (1986) ....................................................................................- 11 -

      *Barthelemy v. Air Lines Pilots Ass'n.,*

15     897 F.2d 999 (9th Cir. 1990)........................................................................- 11 -

16   *Calvert v. Huckins,*

17     875 F. Supp. 674 (E.D.Cal. 1995)...............................................................- 13 -

      *Celotex Corp. v. Catrett,*

18     477 U.S. 317 (1986) ....................................................................................- 11 -

19   *Chan v. Society Expeditions, Inc.,*

20     123 F.3d 1287 (9th Cir. 1997)..........................................................- 13 -, - 14 -

      *Colida v. Sony Corp. of America,*

21     2004 U.S.Dist. LEXIS 14907 (S.D.N.Y. Aug. 2, 2004) .............................- 12 -

22   *Commercial Equip. Co., Inc. v. Barclay Furniture Co.,*

23     738 F. Supp. 974 (W.D.N.C. 1990) ............................................................- 20 -

      *Conley v. Gibson,*

24     355 U.S. 41 (1957).......................................................................................- 10 -

25   *Cunningham v. Rothery,*

26     143 F.3d 546 (9th Cir. 1998).......................................................................- 10 -

      *Doe v. Unocal Corp.,*

27     248 F.3d 915 (9th Cir. 2001)........................................................................- 13 -

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT                    -ii-
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1

<div align="center">

**TABLE OF AUTHORITIES**
**(CONT.)**

</div>

2

<div align="right">

**Page**

</div>

3
*Gauvin v. Trombatore,*

4
 682 F.Supp. 1067 (N.D.Cal. 1988) .................................................................. - 16 -

*Gen-Probe, Inc. v. Amoco Corp., Inc.,*

5
 926 F. Supp. 948 (S.D.Cal. 1996) .................................................................... - 16 -

6
*Grant v. Pitchford,*

7
 565 F. Supp. 430 (S.D.Cal. 1983) ..................................................................... - 20 -

*Harris v. Harris & Hart, Inc.,*

8
 206 F.3d 838 (9th Cir. 2000) ............................................................................. - 11 -

9
*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,*

10
 328 F.3d 1122 (9th Cir. 2003) ........................................................................... - 12 -

11
*Hewlett-Packard Co. v. Bausch & Lomb Inc.,*

 909 F.2d 1464 (Fed.Cir. 1990) .......................................................................... - 17 -

12
*Hewlett-Packard Co. v. Intergraph Corp.,*

13
 2003 WL 23884794 (N.D.Cal. Sep. 6, 2003) ................................................... - 18 -

14
*Holloway v. Brush,*

 220 F.3d 767 (6th Cir. 2000) ............................................................................... - 3 -

15
*Jervis B. Webb Co. v. Southern Sys., Inc.,*

16
 495 F. Supp. 145 (E.D.Mich. 1980) .................................................................. - 15 -

17
*Lear Corp. v. Bertrand and Faure Technical Center,*

 2000 U.S.Dist. LEXIS 22525 (E.D.Mich. Oct. 10, 2000) ................................ - 18 -

18
*Little v. City of Seattle,*

19
 863 F.2d 681 (9th Cir. 1988) ............................................................................. - 19 -

20
*Mahnke v. Munchkin Products, Inc.,*

 2001 WL 637378 (S.D.N.Y. Jun. 7, 2001) ....................................................... - 18 -

21
*Manville Sales Corp. v. Paramount Systems, Inc.,*

22
 917 F.2d 544 (Fed.Cir. 1990) ............................................................................ - 16 -

23
*Moba, B.V. v. Diamond Automation, Inc.,*

 325 F.3d 1306 (Fed.Cir. 2003) .......................................................................... - 16 -

24
*Mobil Oil Corp. v. Linear Films, Inc.,*

25
 718 F. Supp. 260 (D.Del. 1989) ........................................................................ - 14 -

26
*Ondeo Nalco Co. v. Eka Chemicals, Inc.,*

 2002 WL 1458853 (D.Del. Jun. 10, 2002) ....................................................... - 18 -

27

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT
CV-05-1137 (RSM)

iii

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1

**TABLE OF AUTHORITIES**
**(CONT.)**

2                                                                                    Page

3

4   *Papst Licensing GmbH Patent Litig.*,
        2001 WL 179926 (E.D.La. Feb. 22, 2001) ........................................ - 18 -, - 19 -
5   *Pearson v. Component Tech. Corp.*,
6       247 F.3d 471 (3rd Cir. 2001) .................................................................... - 12 -
7   *Phonometrics, Inc. v. Hospitality Franchise Systems, Inc.*,
        203 F.3d 790 (Fed.Cir. 2000).................................................................... - 10 -
8   *Picker Int'l. Inc. v. Varian Assocs., Inc.*,
9       661 F. Supp. 347 (N.D.Ohio 1987).......................................................... - 15 -
10  *Ristvedt-Johnson, Inc. v. Peltz*,
        1991 WL 255691 (N.D.Ill. Nov. 18, 1991)............................................... - 17 -
11  *RRX Inds. Inc. v. Lab-Con Inc.*,
12      772 F.2d 543 (9th Cir. 1985)..................................................................... - 13 -
13  *Seiko Epson Corp. et al. v. Print-Rite Mgmt. Servs. Co., et al.*,
        2002 U.S. Dist. Lexis 27427 (D.Or. Apr. 30, 2002)................................ - 13 -, - 14 -
14  *Self v. Fisher Controls Co., Inc.*,
15      566 F.2d 62 (9th Cir. 1977)...................................................... - 15 -, - 16 -
16  *SRI International, Inc. v. Internet Security Systems, Inc.*,
        2005 U.S.Dist. LEXIS 6797 (D.Del. Apr. 13, 2005) ............................... - 10 -
17  *Stearns v. Tinker & Rasor*,
18      252 F.2d 589 (9th Cir. 1957).................................................................... - 16 -
19  *Suresafe Inds., Inc. v. C&R Pier Mfg.*,
        850 F. Supp. 869 (S.D.Cal. 1993) ............................................................ - 15 -
20  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.*,
21      809 F.2d 626 (9th Cir. 1987).................................................................... - 11 -
22  *TI Group Automotive Sys., Inc. v. Vdo North America LLC*,
        2002 U.S.Dist. LEXIS 4671 (D.Del. Mar. 7, 2002).................................. - 12 -
23  *United States v. Bestfoods*,
24      524 U.S. 51 (1998) .................................................................... - 12 -, - 13 -
25  *United States v. LSL Biotechnologies*,
        379 F.3d 672 (9th Cir. 2004)..................................................................... - 10 -
26  *United States v. Wood*,
27      925 F.2d 1580 (7th Cir. 1991)................................................................... - 3 -

28

DEFENDANTS' MOTION TO DISMISS OR                    iv                    PAUL, HASTINGS, JANOFSKY & WALKER
FOR MORE DEFINITE STATEMENT                                               3579 VALLEY CENTRE DRIVE
CV-05-1137 (RSM)                                                         SAN DIEGO, CA 92130

# TABLE OF AUTHORITIES
## (CONT.)

Page

*Van Dyke Ford, Inc. v. Ford Motor Co.*,
    399 F.Supp. 277 (E.D.Wis. 1975) ................................................................. - 17 -

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
    556 F.2d 406 (9th Cir. 1977) ..................................................................... - 14 -

## STATUTES

### United States Code

35 U.S.C. § 271(a) ..................................................................................... - 15 -

35 U.S.C. § 271(c) ..................................................................................... - 16 -

28 U.S.C. § 1404(a) ..................................................................................... - 3 -

### Federal Rules of Civil Procedure

Fed. R. Civ. P. 7(b) ..................................................................................... - 3 -

Fed. R. Civ. P. 8 ......................................................................................... - 5 -

Fed. R. Civ. P. 8(a) ........................................................................... - 10 -, - 17 -

Fed. R. Civ. P. 8(a)(2) ................................................................................. - 17 -

Fed. R. Civ. P. 12(b)(6) ................................................................... - 3 -, - 5 -, - 10 -

Fed. R. Civ. P. 12(e) ........................................................... - 3 -, - 17 -, - 18 -

Fed. R. Civ. P. 56(c) ................................................................................. - 11 -

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT        v
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1         Pursuant to Fed. R. Civ. P. 12(b)(6), Fed. R. Civ. P. 12(e) and Civil Rule 7(b), defendants

2    Cendant Corporation ("Cendant"); Trilegiant Corporation ("Trilegiant"); Orbitz, LLC ("Orbitz

3    LLC"); Orbitz, Inc. ("Orbitz Inc."); Budget Rent A Car System, Inc. ("Budget"); and Avis Rent A

4    Car System, Inc. ("Avis") (collectively, "Defendants") hereby move (1) to dismiss all claims

5    against Cendant (the parent corporation); (2) to dismiss the complaint against all defendants for

6    failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative,

7    for a more definite statement of the claims pursuant to Federal Rule of Civil Procedure 12(e); and

8    (3) to stay all discovery pending resolution of the motions.

9         Defendants have also filed concurrently herewith a motion to transfer this action to the

10   District of Delaware pursuant to 28 U.S.C. § 1404(a).  Defendants respectfully submit that to

11   conserve judicial resources, this Court should first decide the motion to transfer venue because, if

12   this action is transferred to the District of Delaware, that may render this motion moot.

13   **I.    INTRODUCTION**

14        On June 20, 2005, Cendant Publishing, Inc. (one of Cendant's wholly-owned subsidiaries)

15   sued Amazon.com, Inc. ("Amazon") for patent infringement in the District of Delaware.[1]  In that

16   lawsuit, Cendant Publishing alleged that Amazon infringes U.S. Patent No. 6,782,370 ("the '370

17   Patent"), which discloses a method of making recommendations of goods and/or services to

18   potential customers based on the purchasing history of previous customers.  Two days later,

19   Amazon filed this retaliatory action against Cendant and some of its subsidiaries, despite

20   conceding in the Delaware action that the two cases are related.

21        Plaintiffs' blatant forum shopping is exemplified by Amazon's public confession that this

22   action is "purely a defensive measure" that was filed in "direct response" to the Delaware lawsuit.

23   Fazio Decl., Ex. C.  Amazon has also conceded that this case is "substantially related"[2] to the

24   Delaware action, but rather than file this action in Delaware where it belongs, plaintiffs filed this

---

25   [1] A true and correct copy of the Delaware complaint is attached as Ex. A to the Declaration of
26   James V. Fazio, III ("Fazio Decl.") filed concurrently herewith.  This Court may take judicial
     notice of complaints filed in other courts and other matters of public record.  *Holloway v. Brush*,
     220 F.3d 767, 786 n.3 (6th Cir. 2000); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.
27   1991).
     [2] In Amazon's Notice of Related Case filed in the Delaware action, Amazon admitted that this
28   action "involves substantially the same parties" as the Delaware action.  Fazio Decl., Ex. B.

1   complaint in their home territory.  Like the patent at issue in Delaware, the patents-in-suit in this

2   case are related to electronic commerce and are directed to methods of transmitting credit card

3   authorizations over the Internet and other methods of facilitating e-commerce using the Internet.

4       In plaintiffs' haste to retaliate, they apparently had no time to conduct their due diligence,

5   choosing instead to make a broad-brush allegation that Defendants' worldwide "business

6   operations" and websites infringe the patents-in-suit.  In so doing, plaintiffs failed to investigate

7   what each defendant does and have made the fatal mistake of naming Cendant as a defendant, a

8   party against whom all claims must be dismissed for two reasons.  First, Cendant does not operate

9   or manage any of the allegedly infringing businesses or websites.  Rather, each of the businesses

10   and websites accused by plaintiffs is independently operated and controlled by one of Cendant's

11   wholly-owned subsidiaries.  As the parent holding company, Cendant does not control the day-to-

12   day operations of any of its subsidiaries, nor does Cendant control the management or content of

13   any of the allegedly infringing websites.  Accordingly, all claims against Cendant must be

14   dismissed.

15       Second, there is no evidence or even allegation of any facts that would justify piercing the

16   corporate veil to hold Cendant liable for the alleged acts of any of its subsidiaries.  Cendant and

17   each of the Subsidiary Defendants strictly observe all corporate formalities, each entity maintains

18   separate books and records, separate bank accounts and headquarters, and (to a large extent)

19   separate officers and directors.  In addition, far from being a "mere instrumentality" of Cendant,

20   each Subsidiary Defendant runs its own operations independently.  Consequently, there are no

21   grounds to keep Cendant in this lawsuit on any alter ego or agency theory of liability.

22       In their rush to the courthouse, plaintiffs also gave little (if any) thought to their theories

23   of liability and failed to discriminate between direct infringement, contributory infringement, and

24   inducement of infringement (which are three very different causes of action).  Plaintiffs instead

25   lumped all three causes of action together in one convoluted sentence, leaving it to Defendants to

26   sort out which theory is asserted against whom.  In so doing, plaintiffs essentially ask Defendants

27   to do plaintiffs' job.  Plaintiffs do not specify which defendant allegedly infringes which patent

28   directly, which defendant supposedly contributes to whose infringement, or what any defendant

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 2 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    allegedly does to induce someone else to infringe.  In the absence of such allegations, plaintiffs

2    fail to provide Defendants with adequate notice of who is accused of doing what, as required by

3    Rule 8.  Therefore, the complaint must be dismissed.

4         Even if plaintiffs' defective allegations could be amended to state a claim, this Court

5    should order plaintiffs to provide a more definite statement of what specific products, services

6    and/or processes allegedly infringe which patents and how.  As shown below, Defendants own

7    dozens of different businesses worldwide, each with numerous different websites, and each

8    offering a large number of different products and services spanning dozens of different industries.

9    Plaintiffs' blanket allegation that Defendants' "business operations" and websites infringe

10   provides Defendants absolutely no clue as to what they are supposedly doing wrong.

11        Accordingly, Defendants respectfully request this Court to (1) dismiss all claims against

12   Cendant; (2) dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative,

13   order plaintiffs to provide a more definite statement of their claims; and (3) stay all discovery

14   pending the resolution of the motions.

15   **II.    BACKGROUND**

16        **A.    The District of Delaware Lawsuit**

17        On October 29, 2004, Cendant Publishing, Inc. ("Cendant Publishing") filed a complaint

18   against Amazon.com, Inc. ("Amazon") for patent infringement in the District of Delaware.  Fazio

19   Decl., Ex. D.  The patent at issue in that action was U.S. Patent No. 6,782,370 ("the '370

20   Patent"), which discloses a method for providing potential customers with recommendations for

21   additional goods and/or services based on previous customers' purchasing history.  *Id.*  Because

22   the parties were then attempting to resolve that dispute, Cendant Publishing dismissed the action

23   without prejudice soon after filing.  Declaration of Eric J. Bock ("Bock Decl.") filed concurrently

24   herewith, ¶ 13.  The parties did not reach a settlement, and Cendant Publishing re-filed its

25   infringement action against Amazon in the District of Delaware on June 20, 2005 (two days

26   before plaintiffs filed this complaint).  Fazio Decl., Ex. B.

27

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 3 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1

2

## B.    The Western District of Washington Lawsuit

On June 22, 2005, plaintiffs Amazon and A9.com, Inc. ("A9") filed this lawsuit against Cendant and some of its subsidiaries for patent infringement.  Amazon is an online retailer that provides customers with various products for purchase through the Internet.  Complaint, ¶ 2. Amazon allegedly owns by assignment all right, title and interest to three of the patents-in-suit: U.S. Patent No. 5,715,339 ("the '339 Patent"), U.S. Patent No. 6,029,141 ("the '141 Patent"), and U.S. Patent No. 6,629,079 ("the '079 Patent").  The '339 Patent is directed to secure methods for transmitting credit card authorizations over a non-secure network, which enables a retailer to offer an Internet customer several credit card numbers to choose from by, for example, selecting the last 4 digits of the credit card number he or she wishes to use.  Complaint, ¶ 12 & Ex. 1 at col. 1-4.  The '141 Patent is directed to an Internet-based system of enabling customers or affiliates to post recommendations of products and services to the Internet in return for compensation. Complaint, ¶ 18 & Ex. 2 at col. 1-4.  The '079 Patent is directed to a method for electronic commerce using multiple roles, which provides customers with a "commerce context" or a selection of shopping baskets from which the customer can select to specify particular shipping, delivery and payment options.  Complaint, ¶ 24 & Ex. 3 at col. 1-4.

Plaintiff A9 is a wholly-owned subsidiary of Amazon that allegedly owns by assignment all right, title and interest to U.S. Patent No. 6,625,609 ("the '609 Patent").  Complaint, ¶ 2.  The '609 Patent is directed to a method for navigating within a body of data using one of a number of alternative browse graphs, with the aim of simplifying and expediting a customer's browsing through a website to identify the goods and services in which he or she would most likely be interested.  Complaint, ¶ 29 & Ex. 4 at col. 1, lns. 19-32, col. 2, lns. 35-55.

Defendant Cendant owns some of the largest real estate, travel and marketing services companies in the world.  Complaint, ¶ 4.  Cendant is the parent corporation owner of defendants Orbitz, Inc., Orbitz, LLC (collectively, "Orbitz"), Trilegiant Corporation ("Trilegiant"), Budget Rent A Car System, Inc. ("Budget"), and Avis Rent A Car System, Inc. ("Avis").  *Id.*

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT            - 4 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    The sole allegation of infringement in plaintiffs' skeletal complaint is that Defendants

2    infringe the patents-in-suit by using or causing to be used plaintiffs' patents "in the operation of

3    their businesses, including <u>but not limited to</u> the operation of the <u>www.orbitz.com</u>,

4    <u>www.avis.com</u>, and <u>www.avgautostore.com</u> websites," Complaint, ¶ 14, or "in the operation of

5    their online e-commerce businesses, including <u>but not limited to</u>" the

6    <u>www.trilegiantaffiliates.com</u>, <u>www.orbitz.com</u> and <u>www.budget.com</u> websites.  Complaint,

7    ¶¶ 20, 25 & 30 (emphasis added).  These are the only allegations of infringement in the entire

8    complaint.  Plaintiffs do not identify any allegedly infringing product or service, nor do plaintiffs

9    even identify a specific business that allegedly infringes.

10    **C.    Statement of Facts**

11    Cendant is a legal entity separate and distinct from each of its wholly-owned subsidiaries,

12    including the Subsidiary Defendants.  Bock Decl., ¶ 4.  No employee of any Subsidiary

13    Defendant is an employee of Cendant, and no employee of Cendant is also an employee of any

14    Subsidiary Defendant.  *Id.*  In fact, most of Cendant's shared services personnel are employed by

15    an entity known as Cendant Operations, Inc., which performs certain administrative and other

16    functions common to the Subsidiary Defendants, such as payroll functions.  *Id.*  Only two of

17    Cendant's directors are also directors of one or more of the Subsidiary Defendants.  *Id.*  Likewise,

18    only about one-fifth of Cendant's officers are also officers of one or more of the Subsidiary

19    Defendants.  *Id.*

20    Plaintiffs accuse the following five websites of patent infringement:

21    <u>www.trilegiantaffiliates.com</u>, <u>www.orbitz.com</u>, <u>www.avis.com</u>, <u>www.budget.com</u>, and

22    <u>www.avgautostore.com</u>.  Cendant has not designed or developed any of these websites, Cendant

23    does not operate any of these websites, and Cendant does not direct or control the content of any

24    of these websites.  *Id.,* ¶ 5.  Rather, each of the allegedly infringing websites has been designed

25    and developed independently by one of the Subsidiary Defendants, and each of the allegedly

26    infringing websites is operated exclusively by one of the Subsidiary Defendants and/or its third

27    party contractors.  *Id.*

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 5 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    Cendant does not exercise day-to-day control over the operation or content of the

2    www.avis.com or www.budget.com websites. *Id.*, ¶ 6. Instead, each of these websites was

3    designed and developed, and is currently operated and managed, by Avis and Budget,

4    respectively, and/or their third party contractors. *Id.* Likewise, Cendant does not direct or control

5    the daily operations, management or content of the www.orbitz.com website. *Id.* This website is

6    instead operated and managed exclusively by Orbitz and/or its third party contractors. *Id.*

7    Further, the websites www.avgautostore.com and www.trilegiantaffiliates.com are websites that

8    were designed and developed, and are operated exclusively, by Trilegiant. *Id.* Cendant does not

9    exercise control over the day-to-day operation, management or content of these websites. *Id.*

10    Likewise, Cendant does not control the day-to-day operations or management of any of the

11    Subsidiary Defendants. *Id.*, ¶ 7.

12    Cendant and each of the Subsidiary Defendants strictly observe, and have always strictly

13    observed, all corporate formalities. *Id.*, ¶ 8. Cendant maintains its own books and records

14    separately from each of the Subsidiary Defendants, Cendant maintains its own bank accounts

15    separately from each of the Subsidiary Defendants, and Cendant and the Subsidiary Defendants

16    each have their own headquarters. *Id.* Cendant's corporate offices are in New York and its

17    operational headquarters are in Parsippany, New Jersey. *Id.* Avis and Budget also have their

18    headquarters in Parsippany, New Jersey in a separate building from Cendant. *Id.*, ¶ 9. Orbitz's

19    headquarters are in Chicago, Illinois, and Trilegiant's headquarters are in Norwalk, Connecticut.

20    *Id.*, ¶ 10.

21    Each Subsidiary Defendant makes its own personnel, marketing and management

22    decisions, and each Subsidiary Defendant owns its patents separately from Cendant. *Id.*, ¶ 12.

23    In fact, Cendant does not actually own any patents. *Id.* Instead, Cendant Publishing owns the

24    company's patents. *Id.* Like its parent, Cendant Publishing does not control the day-to-day

25    operations of any Subsidiary Defendant, nor does Cendant Publishing control the management

26    or content of any of the alleging infringing websites. *Id.*

27    Within its global business network, Cendant owns dozens of broad-based brands and

28    business units, including (1) vehicle companies such as Avis and Budget, (2) real estate services

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT                    - 6 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    and brokerage companies such as Century 21, Sotheby's International Realty, and Coldwell

2    Banker, (3) travel distribution companies such as Orbitz and CheapTickets, and (4) hospitality

3    service companies such as Howard Johnson, Days Inn, Super 8 Motel, Ramada and Travelodge.

4    *Id.*, ¶ 14.

5         Across these dozens of different business units, the Subsidiary Defendants offer a great

6    many different and wide-ranging products and services. *Id.*, ¶ 15. Few programs are alike and

7    most offer wide-ranging services and products spanning multiple industries. *Id.* Trilegiant, for

8    example, is a premier membership-based provider of travel, shopping, health, dental,

9    entertainment, and consumer protection services. *Id.* Trilegiant alone sponsors well over a dozen

10   different and unrelated products and services, including AutoVantage (which supplies or operates,

11   among other things, a service center network, emergency roadside assistance and new car

12   summaries), Great Fun (a diverse program that delivers discount opportunities to customers on

13   local dining, shopping, hotel savings, various leisure activities and numerous other items), Just for

14   Me (which offers discounts and rebates to women on such things as gym memberships, spa

15   treatments and cellular telephones), Pet Privileges (which offers discounts and other privileges in

16   connection with veterinary procedures and pharmacy products), and Small Business Central

17   (which helps small business owners save on expenses for health insurance, office products,

18   telephone costs, equipment leasing and other items). *Id.*

19        Aside from these diverse products and services, Trilegiant also offers educational

20   programs like Clever Clubhouse, which assists parents in designing and implementing

21   educational ideas for young children. *Id.*, ¶ 16. Trilegiant also operates The Auto Store located

22   at www.avgautostore.com (one of the websites plaintiffs attack). *Id.* The Auto Store offers a

23   veritable cornucopia of consumer goods and services, including home leisure products (such as

24   air conditioners, art, gourmet foods, small appliances, furniture, tools, and vacuum cleaners),

25   computers and office equipment (including telephones, printers, hardware, software, handheld

26   devices, and monitors), sporting goods (including pools, trampolines, camping equipment and

27   gym equipment), toys and video games, and health and beauty products. *Id.*

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 7 -
CV-05-1137 (RSM)

1    Orbitz offers a wide variety of travel and hospitality products and services through its

2    website www.orbitz.com. *Id.*, ¶ 19. This website allows customers to browse and purchase

3    airline flights, hotel reservations, rental car reservations, cruises and vacations online. *Id.*

4    Orbitz also offers travel services such as select airport and city guides, travel tips, news and

5    advisories, weather forecasts and other information. *Id.* Avis and Budget are rental car

6    companies that permit customers to inquire about rental rates, make reservations, and obtain

7    other helpful information through the Internet. *Id.*, ¶ 20.

8    **III.    THIS COURT SHOULD DISMISS ALL CLAIMS AGAINST CENDANT**

9    **CORPORATION**

10    **A.    Standard of Review**

11    A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether the

12    allegations of the complaint satisfy the requirement of Rule 8(a), which calls for a "short and

13    plain statement" of the claim showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a).

14    Rule 8(a) is satisfied so long as the plaintiff gives "fair notice" of what its claims are and the

15    grounds upon which they rest. *Conley v. Gibson*, 355 U.S. 41, 47 (1957). In the context of patent

16    litigation, Rule 8(a) ensures that "an accused infringer has sufficient knowledge of the facts

17    alleged to enable it to answer the complaint and defend itself." *Phonometrics, Inc. v. Hospitality*

18    *Franchise Systems, Inc.*, 203 F.3d 790, 794 (Fed.Cir. 2000); *United States v. LSL*

19    *Biotechnologies*, 379 F.3d 672, 698 (9th Cir. 2004). While a court may accept all factual

20    allegations in the complaint as true in ruling on a motion to dismiss, conclusory allegations of law

21    and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a

22    claim. *Anderson v. Clow*, 89 F.3d 1399, 1403 (9th Cir. 1996).

23    A district court may consider matters outside the pleadings in ruling on a motion to

24    dismiss. *Cunningham v. Rothery*, 143 F.3d 546, 549-50 (9th Cir. 1998). When matters outside

25    the pleadings are considered in ruling on a Rule 12(b)(6) motion, the motion to dismiss is

26    converted into one for summary judgment. Fed. R. Civ. P. 12(b)(6); *SRI International, Inc. v.*

27    *Internet Security Systems, Inc.*, 2005 U.S.Dist. LEXIS 6797, at *6 (D.Del. Apr. 13, 2005).[3] A

28    ---
[3] For the Court's convenience, copies of cases published in unofficial reporters are attached in

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT                    - 8 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    court shall grant summary judgment when the pleadings, declarations, and other documents on

2    file with the Court show that there is no genuine issue of material fact in dispute and that the

3    moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once the moving

4    party demonstrates an absence of material fact, the nonmoving party must present specific facts

5    showing that there is a genuine issue for trial. *Barthelemy v. Air Lines Pilots Ass'n.,* 897 F.2d

6    999, 1013 (9th Cir. 1990). The mere existence of some evidence in support of the nonmoving

7    party, however, is not sufficient to deny a motion for summary judgment; rather, there must be

8    enough evidence to enable a jury reasonably to find for the nonmoving party on that issue.

9    *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986); *T.W. Electrical Service, Inc. v. Pacific*

10   *Electrical Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir. 1987). If the nonmoving party fails to

11   make a sufficient showing on an essential element of its case, the moving party is entitled to

12   judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Harris v. Harris*

13   *& Hart, Inc.,* 206 F.3d 838, 841 (9th Cir. 2000).

14         **B.    This Court Should Dismiss All Claims Against Cendant As A Matter Of Law**

15                   1.    <u>Cendant Does Not Operate Any Allegedly Infringing Business or Website</u>

16         All claims against Cendant must be dismissed because Cendant does not operate any

17   allegedly infringing business or service, nor does Cendant operate any of the allegedly infringing

18   websites. Bock Decl., ¶ 5. Plaintiffs summarily claim that Cendant infringes the patents-in-suit

19   in the operation of its businesses and websites, including the <u>www.trilegiantaffiliates.com</u>,

20   <u>www.orbitz.com</u>, <u>www.budget.com</u>, <u>www.avis.com</u> and <u>www.avgautostore.com</u> websites.

21   Complaint, ¶¶ 14, 20, 25, 30. Contrary to plaintiffs' mistaken belief, however, Cendant does not

22   operate any of these e-commerce businesses or websites. Bock Decl., ¶ 5. Cendant has not

23   designed or developed any of the allegedly infringing websites, and Cendant does not direct the

24   content of any of these websites. *Id.* Rather, each of these allegedly infringing websites is

25   operated exclusively by one of Cendant's subsidiaries and/or its third party contractors. *Id.* In

26   fact, the website <u>www.trilegiantaffiliates.com</u> is operated by Trilegiant. *Id.,* ¶ 6. On July 26,

27   2005, Cendant announced a definitive agreement to sell Trilegiant to Affinity Acquisition

28   alphabetical order to the Fazio Decl.

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1                                                    The Honorable R. Martinez

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
9                             AT SEATTLE

10  AMAZON.COM, INC. and A9.COM, INC.,        )   No. 05-01137RSM
                                              )
11              Plaintiffs,                    )   **[PROPOSED] ORDER (1) DISMISSING**
                                              )   **ALL CLAIMS AGAINST CENDANT**
12          vs.                                )   **CORPORATION; (2) DISMISSING THE**
                                              )   **COMPLAINT FOR FAILURE TO STATE**
13  CENDANT CORPORATION; TRILEGIANT           )   **A CLAIM PURSUANT TO FED. R. CIV.**
    CORPORATION; ORBITZ, LLC; ORBITZ,          )   **P. 12(B)(6) OR, IN THE ALTERNATIVE,**
14  INC.; BUDGET RENT A CAR SYSTEM, INC.;     )   **FOR MORE DEFINITE STATEMENT**
    and AVIS RENT A CAR SYSTEM, INC.,          )   **PURSUANT TO FED. R. CIV. P. 12(E);**
15                                            )   **AND (3) STAYING ALL DISCOVERY**
                Defendants.                    )   **PENDING RESOLUTION OF THE**
16                                            )   **MOTIONS**
                                              )
17  _____  )

18          Having considered the briefs, declarations and other papers filed by the parties, and the

19  argument of counsel on the subject of Defendants' (1) motion to dismiss all claims against

20  Cendant Corporation; (2) motion to dismiss the complaint for failure to state a claim pursuant to

21  Fed. R. Civ. P. 12(b)(6) or, in the alternative, for more definite statement pursuant to Fed. R. Civ.

22  P. 12(e); and (3) motion to stay discovery pending resolution of the motions, and good cause

23  appearing therefore:

24

25

26

(PROPOSED) ORDER RE DEFENDANTS'                    PAUL, HASTINGS, JANOFSKY & WALKER
MOTION TO DISMISS -- 1                                    3579 VALLEY CENTER DRIVE
SAN/119584.1                                              SAN DIEGO, CA 92130
No. 05-01137RSM
m32273-632629.doc

IT IS HEREBY ORDERED THAT:

1.   Defendants' motion to dismiss all claims against Cendant Corporation is GRANTED. All claims against Cendant Corporation are hereby dismissed with prejudice;

2.   Defendants' motion to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is GRANTED. Plaintiffs' claims for contributory and inducing infringement are hereby dismissed with prejudice for lack of standing. As for plaintiffs' direct infringement claims, plaintiffs are ordered to specify which defendant allegedly infringes which patent(s) directly. In the alternative, plaintiffs are ordered to amend their complaint to specify which theory of infringement is asserted against whom and on what grounds; and

3.   Defendants' motion to stay all discovery pending resolution of the motions is GRANTED. All discovery is hereby stayed.

In the alternative:

IT IS HEREBY ORDERED THAT:

1.   Defendants' motion to dismiss all claims against Cendant Corporation is GRANTED. All claims against Cendant Corporation are hereby dismissed with prejudice;

2.   Defendants' motion for more definite statement pursuant to Fed. R. Civ. P. 12(e) is GRANTED. Plaintiffs are hereby ordered to amend their complaint to provide a more definite statement of which of Defendants' products, services and/or processes allegedly infringe which of plaintiffs' patents; and

3.   Defendants' motion to stay all discovery pending resolution of the motions is GRANTED. All discovery is hereby stayed.

SO ORDERED.

(PROPOSED) ORDER RE DEFENDANTS'
MOTION TO DISMISS -- 2
SAN/119584.1
No. 05-01137RSM
m32273-632629.doc

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1  Dated: _____  By: _____
2                                Honorable R. Martinez
3
4
5
6
7  Presented By:
8  Paul Hastings, Janofsky & Walker LLP
9
10 By: _____
11 Douglas E. Olson
   James Fazio, III
12 Attorneys for Defendants,
   CENDANT CORPORATION;
13 TRILEGIANT CORPORATION;
   ORBITZ LLC; ORBITZ, INC.;
14 BUDGET RENT A CAR SYSTEM, INC.;
   AND AVIS RENT A CAR SYSTEM, INC.
15
16
17
18
19
20
21
22
23
24
25
26
   (PROPOSED) ORDER RE DEFENDANTS'              PAUL, HASTINGS, JANOFSKY & WALKER
   MOTION TO DISMISS -- 3                           3579 VALLEY CENTER DRIVE
   SAN/119584.1                                       SAN DIEGO, CA 92130
   No. 05-01137RSM
   m32273-632629.doc

1    Holdings LLC (an affiliate of Apollo Management, L.P.).  *Id.*, ¶ 3.  The sale is expected to close

2    in the Fall of 2005.  *Id.*  Accordingly, Cendant will soon no longer even own Trilegiant.

3          Because Cendant does not operate any of the allegedly infringing services or websites,

4    Cendant cannot be liable for patent infringement as a matter of law.  *Colida v. Sony Corp. of*

5    *America*, 2004 U.S.Dist. LEXIS 14907, at *5-6 (S.D.N.Y. Aug. 2, 2004) (dismissing all claims

6    against the parent corporation because, on the basis of sworn declarations, the parent was not

7    involved in the manufacture or sale of any allegedly infringing products or services); *TI Group*

8    *Automotive Sys., Inc. v. Vdo North America LLC*, 2002 U.S.Dist. LEXIS 4671, at *6-10 (D.Del.

9    Mar. 7, 2002) (dismissing all claims against the parent corporation because plaintiff failed to

10   allege facts giving rise to a genuine issue of material fact with respect to direct infringement,

11   active inducement, or any agency theory of liability).

12                    2.    Cendant Is Not Liable For The Allegedly Infringing Acts Of Its
                            Subsidiaries As A Matter Of Law
13

14         Cendant must also be dismissed from this lawsuit because there is no evidence or even

15   allegation of any facts that would justify holding Cendant liable for the alleged acts of any of its

16   subsidiaries.  A parent company is not liable for the actions of a subsidiary solely because it is a

17   subsidiary.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *A. Stucki Company v.*

18   *Worthington Industries, Inc.*, 849 F.2d 593, 596 (Fed.Cir. 1988).  Rather, a finding of liability

19   requires the plaintiff to pierce the corporate veil.  *Bestfoods*, 524 U.S. at 61.  *See also SRI Int'l.*,

20   2005 U.S.Dist. LEXIS, at *9.  There are two distinct tests for determining when piercing the

21   corporate veil is appropriate:  (1) the alter ego test; and (2) the agency test.  *Pearson v.*

22   *Component Tech. Corp.*, 247 F.3d 471, 484-86 & n.5 (3rd Cir. 2001).  *Cf. Harris Rutsky & Co.*

23   *Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003).

24         As explained below, plaintiffs cannot pierce the corporate veil under either test.

25   Accordingly, all claims against Cendant must be dismissed as a matter of law.

26                    a.    None of the Subsidiary-Defendants Is The Alter Ego of Cendant

27         To establish that a subsidiary is the alter ego of its parent corporation, the plaintiff must

28   make a prima facie showing that (1) there is such a unity of interest and ownership that the

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT            - 10 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    separate personalities of the two entities no longer exist; and (2) failure to disregard their separate

2    identities would result in fraud or injustice. *American Telephone & Telegraph Co. v. Compagnie*

3    *Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996); *Doe v. Unocal Corp.*, 248 F.3d 915, 926

4    (9th Cir. 2001). This test has alternately been stated as requiring a showing that the parent

5    controls the subsidiary to such an extent as to render the subsidiary a "mere instrumentality" of

6    the parent. *Doe*, 248 F.3d at 926 (citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D.Cal.

7    1995)). The fundamental touchstone is whether the parent dictates every facet of the subsidiary's

8    business down to the routine matters of day-to-day operation. *Seiko Epson Corp. et al. v. Print-*

9    *Rite Mgmt. Servs. Co., et al.*, 2002 U.S. Dist. Lexis 27427, at *38-39 (D.Or. Apr. 30, 2002); *Doe*,

10   248 F.3d at 926-27.

11       A subsidiary can be considered the alter ego of its parent corporation when, for example,

12   there is a lack of attention to corporate formalities, or the parent exercises complete dominion and

13   control over the subsidiary. *RRX Inds. Inc. v. Lab-Con Inc.*, 772 F.2d 543, 546 (9th Cir. 1985).

14   Mere ownership by the parent of stock in the subsidiary, however, is insufficient to pierce the

15   corporate veil. *Stucki*, 849 F.2d at 596; *Chan v. Society Expeditions, Inc.*, 123 F.3d 1287, 1294

16   (9th Cir. 1997). Further, ordinary activities that are consistent with the parent's investor status,

17   such as monitoring the subsidiary's performance, supervising and approving the subsidiary's

18   expenditures and budgets, and formulating the subsidiary's general policies and procedures, are

19   simply evidence of a normal parent-subsidiary relationship and do not justify piercing the

20   corporate veil. *Doe*, 248 F.3d at 926. *Accord Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459-60 (2nd

21   Cir. 1995).

22       Plaintiffs here allege no facts that would justify piercing the corporate veil, and for good

23   reason: there aren't any. As the declaration submitted herewith demonstrates, Cendant and each

24   of its subsidiaries strictly observe all corporate formalities. Bock Decl, ¶ 8. Cendant maintains

25   its books and records separately from each of its subsidiaries, and Cendant maintains its own

26   bank accounts separately from those of its subsidiaries. *Id.* Cendant and the Subsidiary

27   Defendants each have their own employees, and each has its own separate headquarters. *Id.*

28   While Cendant and the Subsidiary Defendants share a few common officers and directors, that is

1    not enough to establish an alter ego relationship. *Bestfoods*, 524 U.S. at 69. *See also Seiko Epson*

2    *Corp.*, 2002 U.S.Dist. LEXIS 27427, at *42.

3      Far from exercising complete dominion and control over its subsidiaries, Cendant allows

4    each of the Subsidiary Defendants or their third party contractors to run its own day-to-day

5    operations. Bock Decl., ¶¶ 5-7. Cendant has not designed or developed any of the allegedly

6    infringing websites, Cendant does not operate any of its subsidiaries' websites, and Cendant does

7    not direct the content of any of its subsidiaries' websites. *Id.*

8      In short, there is no evidence or allegation of any facts that would justify a finding that

9    any subsidiary is the alter ego of Cendant. Accordingly, all claims against Cendant should be

10   dismissed.

11        b.  None of the Subsidiary Defendants Is An Agent of Cendant

12     To satisfy the agency test, plaintiffs must allege facts showing that Cendant directed the

13   allegedly infringing activities of the Subsidiary Defendants. *See Wells Fargo & Co. v. Wells*

14   *Fargo Express Co.*, 556 F.2d 406, 419-20 (9th Cir. 1977). *See also Mobil Oil Corp. v. Linear*

15   *Films, Inc.*, 718 F. Supp. 260, 271-72 (D.Del. 1989). Alternatively, plaintiffs must identify

16   services that are allegedly so important to Cendant that if it did not have a representative to

17   perform them, Cendant's own officials would do so. *Chan*, 39 F.3d at 1405.

18     Plaintiffs cannot meet burden. As explained above, Cendant does not direct or control the

19   day-to-day operation or management of any of the Subsidiary Defendants' businesses, nor does

20   Cendant direct or control the content of any of the allegedly infringing websites. Bock Decl.,

21   ¶¶ 5-7. In short, there are no facts to support any agency or alter ego theory of liability against

22   Cendant. Accordingly, all claims against Cendant must be dismissed as a matter of law.

23   **IV. THIS COURT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE**
     **A CLAIM OR, IN THE ALTERNATIVE, ORDER PLAINTIFFS TO PROVIDE A**
24   **MORE DEFINITE STATEMENT OF THEIR CLAIMS**

25     **A. Having Alleged Direct Infringement, Plaintiffs Lack Standing To Sue For**
         **Contributory Or Inducing Infringement**
26

27     In their haste to retaliate against Cendant Publishing, plaintiffs have sued all six

28   Defendants for direct infringement, contributory infringement, and inducing infringement without

1    specifying which theory of infringement applies to which defendant.  Complaint, ¶¶ 14, 20, 25,

2    30.  That is plainly inadequate.  Contributory infringement actions are limited to situations when

3    the defendant itself has not directly infringed the patent but has aided or abetted another to

4    infringe.  *Self v. Fisher Controls Co., Inc.*, 566 F.2d 62, 64 (9th Cir. 1977).  Similarly, active

5    inducement concerns activity performed by someone who causes a third party to directly infringe

6    a patent.  *Jervis B. Webb Co. v. Southern Sys., Inc.*, 495 F. Supp. 145, 147 (E.D.Mich. 1980).  In

7    other words, "one who induces an infringement and a direct infringer cannot be the same person

8    or entity."  *Id.* (citing *Self*).  *See also Picker Int'l. Inc. v. Varian Assocs., Inc.*, 661 F. Supp. 347,

9    350 (N.D.Ohio 1987) (the doctrine of active inducement "is not available as a separate source of

10   liability against one who is also alleged to be a direct infringer").

11           Because plaintiffs have alleged direct infringement against all six Defendants, plaintiffs

12   lack standing to sue any defendant for either contributory or inducing infringement.  *Suresafe*

13   *Inds., Inc. v. C&R Pier Mfg.*, 850 F. Supp. 869, 873 (S.D.Cal. 1993) ("[s]ince plaintiffs have

14   alleged direct infringement, they have no standing to assert inducing or contributory

15   infringement"); *Picker*, 661 F. Supp. at 350; *Self*, 566 F.2d at 64.  Accordingly, plaintiffs'

16   contributory and inducement of infringement claims should be dismissed for lack of standing.

17           **B.       Plaintiffs' Claims For Direct, Contributory, And Inducement Of**
                         **Infringement Should Be Dismissed For Failure To State A Claim**
18

19           Even if plaintiffs had standing to sue for contributory or inducing infringement (which

20   they do not), the complaint must be dismissed because plaintiffs do not state any viable claim for

21   infringement.

22           To state a claim for direct patent infringement under 35 U.S.C. § 271(a), the plaintiff must

23   allege that the defendant made, used, or sold a product or process encompassed by at least one

24   valid claim of a patent (literal infringement); or that the accused product or process performs

25   substantially the same function in substantially the same manner to achieve substantially the same

26   result as at least one claim of the patent, provided that the accused product or process incorporates

27   every element or a substantial equivalent of every element of the claim (infringement under the

28   doctrine of equivalents).  *See* 35 U.S.C. § 271(a); *Allen Engineering Corp. v. Bartell Indus.*, 299

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT                    - 13 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1    F.3d 1336, 1345 (Fed.Cir. 2002).

2          To state a claim for contributory infringement under 35 U.S.C. § 271(c), the plaintiff must

3    allege that the defendant aided or abetted another party to infringe. *See* 35 U.S.C. § 271(c); *Self*,

4    566 F.2d at 64; *Stearns v. Tinker & Rasor*, 252 F.2d 589, 601 (9th Cir. 1957).

5          To state a claim for inducing infringement under 35 U.S.C. § 271(b), the plaintiff must

6    allege that (1) the alleged inducer's actions encouraged another to infringe; and (2) the alleged

7    inducer knew or should have known its actions would induce actual infringement. *Manville Sales*

8    *Corp. v. Paramount Systems, Inc.*, 917 F.2d 544, 553 (Fed.Cir. 1990). To properly allege that the

9    inducer knowingly encouraged infringement, the plaintiff must allege that the defendant

10   specifically intended to encourage another's infringement and not merely that the defendant had

11   knowledge of the acts alleged to constitute inducement. *Moba, B.V. v. Diamond Automation,*

12   *Inc.*, 325 F.3d 1306, 1318 (Fed.Cir. 2003).

13         In their rush to the courthouse, however, plaintiffs have indiscriminately lumped all three

14   theories of infringement together in one confusing sentence. Plaintiffs allege that Cendant,

15   Trilegiant, Orbitz and Avis are and will continue to "directly and/or indirectly, solely or jointly

16   with others, or induce others to infringe" by using plaintiffs' patented methods in the "operation

17   of their businesses," including the operation of the www.orbitz.com, www.avis.com,

18   www.avgautostore.com, www.trilegiantaffiliates.com, www.orbitz.com and www.budget.com

19   websites. Complaint, ¶¶ 14, 20, 25, 30.

20         These allegations are so convoluted that it is impossible to determine which defendant is

21   alleged to be a direct infringer, which defendant supposedly contributed to whose infringement

22   (or how), or which defendant allegedly induced whom to infringe. Plaintiffs do not even identify

23   any third party who was supposedly induced to infringe. Consequently, the complaint fails to

24   state any claim for infringement and must be dismissed. *Gen-Probe, Inc. v. Amoco Corp., Inc.*,

25   926 F. Supp. 948, 960 (S.D.Cal. 1996) (dismissing complaint for failure to state a claim because

26   complaint accused "each of five defendants of three very different causes of action on two

27   different patents, all in one conclusory sentence, without adequately specifying the grounds for

28   plaintiff's belief that any of these entities have infringed"). *See also Gauvin v. Trombatore*, 682

1   F.Supp. 1067, 1071 (N.D.Cal. 1988) (lumping together of multiple defendants in one broad

2   allegation fails to satisfy notice requirement of Rule 8(a)(2)); *Van Dyke Ford, Inc. v. Ford Motor*

3   *Co.*, 399 F.Supp. 277, 284 (E.D.Wis. 1975) ("[s]pecific identification of the parties to the

4   activities alleged by the plaintiffs is required in this action to enable the defendant to plead

5   intelligently").

6       Plaintiffs' inducement claims fail for a second, independent reason. To state a valid claim

7   for inducement, the plaintiff must not only allege that the defendant had the specific intent to

8   induce another's direct infringement, the plaintiff must also allege facts supporting the alleged

9   inducement; the "bald assertion" of inducement, without the allegation of any supporting facts,

10  does not meet the requirements of the Federal Rules of Civil Procedure. *Ristvedt-Johnson, Inc. v.*

11  *Peltz*, 1991 WL 255691, at *4 (N.D.Ill. Nov. 18, 1991). *See also Hewlett-Packard Co. v. Bausch*

12  *& Lomb Inc.*, 909 F.2d 1464, 1470 (Fed.Cir. 1990) (affirming dismissal of inducement claims

13  because plaintiff failed to plead sufficient facts "probative of intent to induce infringement").

14  Here, plaintiffs allege simply that Defendants "induce others to infringe," with no supporting

15  facts whatsoever. Complaint, ¶¶ 14, 20, 25, 30. That is plainly insufficient.

16      For the foregoing reasons, plaintiffs' complaint should be dismissed for failure to state a

17  legally cognizable claim.

18      **C.    Defendants Are Entitled To A More Definite Statement of Plaintiffs' Claims**

19      In the event this Court does not dismiss plaintiffs' infringement claims, at a minimum this

20  Court should require plaintiffs to provide a more definite statement of their claims. As noted

21  above, a complaint need only contain a "short and plain" statement showing that the plaintiff is

22  entitled to relief. Fed. R. Civ. P. 8(a). But "[i]f a pleading to which a responsive pleading is

23  permitted is so vague or ambiguous that a party cannot reasonably be required to frame a

24  responsive pleading, the party may move for a more definite statement before interposing a

25  responsive pleading." Fed. R. Civ. P. 12(e).

26      Although Rule 12(e) motions are generally disfavored, a more definite statement of the

27  claim is appropriate in patent infringement cases when the plaintiff fails to identify any allegedly

28  infringing product or service, or when the plaintiff's claims are too vague to give adequate notice

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 15 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1   of what products or services are alleged to be infringing. *See, e.g., Agilent Technologies, Inc. v.*

2   *Micromuse, Inc.*, 2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004) (granting Rule 12(e) motion

3   because plaintiff failed to identify which of defendant's products or services allegedly infringed);

4   *In re Papst Licensing GmbH Patent Litig.*, 2001 WL 179926, at *2 (E.D.La. Feb. 22, 2001)

5   (granting Rule 12(e) motion and ordering plaintiff "to specifically identify the IBM products

6   which it alleges infringe" upon plaintiff's patents); *Lear Corp. v. Bertrand and Faure Technical*

7   *Center*, 2000 U.S.Dist. LEXIS 22525, at *7 (E.D.Mich. Oct. 10, 2000) (granting Rule 12(e)

8   motion because plaintiff's allegations were "vague, giving no hint how [defendant] has allegedly

9   infringed the '019 Patent . . . . Without adequate notice, [defendant] is left to speculate what it is

10  accused of doing that infringes the '019 Patent"). *Cf. Ondeo Nalco Co. v. Eka Chemicals, Inc.*,

11  2002 WL 1458853, at *1 (D.Del. Jun. 10, 2002) (dismissing defendant's counterclaims for patent

12  infringement because defendant did not identify which products are accused of infringement);

13  *Hewlett-Packard Co. v. Intergraph Corp.*, 2003 WL 23884794, at *1 (N.D.Cal. Sep. 6, 2003)

14  (dismissing complaint because defendant offered over 150 different types of products, and

15  plaintiff's allegations did not provide defendant with adequate notice of which products were

16  accused).[4]

17       In *Agilent*, for example, plaintiff Agilent sued Micromuse for patent infringement, but the

18  complaint did not specify which products allegedly infringed plaintiff's patents; it merely stated

19  that Micromuse "makes, sells, or offers products for sale . . . that infringe Agilent's patents."

20  *Agilent*, 2004 WL 2346152, at *6. Because Micromuse manufactured at least four infringing

21  products, none of which were formally accused, the Court concluded that Micromuse was entitled

22  to a more definite statement setting forth what products or services were alleged to have infringed

23  Agilent's patents. *Id.*

24       Similarly, in *Papst*, plaintiff Papst sued IBM for patent infringement, but the complaint

25  did not identify the IBM products that allegedly infringed. Instead, Papst simply alleged that

---

[4] The copyright infringement jurisprudence is in accord. *See Mahnke v. Munchkin Products, Inc.*,
2001 WL 637378, at *5 (S.D.N.Y. Jun. 7, 2001) (dismissing copyright infringement claims
because plaintiff's generic references to a "baby soda bottle" fail to identify any specific product
that allegedly infringes).

1    IBM "made, used, sold, or offered to sell to customers in the United States or imported into the

2    United States products" that embodied the elements of at least one claim of the numerous patents-

3    in-suit. *Papst*, 2001 WL 179926, at *1. When IBM filed its Rule 12(e) motion, counsel for Papst

4    wrote to IBM counsel and forwarded a document that listed on a patent-by-patent basis the IBM

5    products that allegedly infringed. *Id.* As many as one hundred allegedly infringing products were

6    listed for some patents, while only one product was listed for other patents, and Papst specifically

7    indicated that it did not consider the list to be exclusive. *Id.* Given the number of products and

8    patents at issue, the Court ordered Papst to amend the complaint "to specifically identify the IBM

9    products which it alleges infringe upon one or more claims" of each of the patents-in-suit. *Id.* at

10   *2.

11          Similar to the hundreds of products at issue in *Papst*, the allegedly infringing websites

12   accused here offer a large number of different products and services, none of which plaintiffs

13   have identified. Plaintiffs' failure to identify a single allegedly infringing product or service

14   stands in stark contrast to Cendant Publishing's complaint in the Delaware action, where Cendant

15   Publishing at least identified one specific service or process that infringed. Fazio Decl., Ex. A, at

16   2 ("Amazon's recommendation features, including, inter alia, "Customers who bought this book

17   also bought," infringe one or more claims of the '370 Patent"). Plaintiffs' failure to identify any

18   product or service offered through the dozens of businesses owned by Defendants leaves them in

19   the untenable situation of having to speculate exactly what they are accused of doing that

20   infringes and how. Without more specific allegations, plaintiffs' complaint fails to comply with

21   Rule 8. *Agilent*, 2004 WL 2346152, at *1; *In re Papst*, 2001 WL 179926, at *2.

22          Accordingly, in the event this Court does not dismiss the complaint for failure to state a

23   claim, this Court should order plaintiffs to provide a more definite statement of what products

24   and/or services within which businesses allegedly infringe plaintiffs' patents.

25   **V.    ALL DISCOVERY SHOULD BE STAYED PENDING RESOLUTION OF**
          **DEFENDANTS' MOTIONS**
26

27          As part of its inherent power to administer its own docket, this Court has broad discretion

28   to stay discovery when the interests of justice so require. *See Little v. City of Seattle*, 863 F.2d

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT          - 17 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

1   681, 685 (9th Cir. 1988).  In order to conserve resources and to promote the efficient resolution of

2   this dispute, this Court should exercise its discretion to stay all discovery pending resolution of

3   Defendants' various motions.  *See Grant v. Pitchford*, 565 F. Supp. 430, 432 (S.D.Cal. 1983)

4   (magistrate judge stayed discovery pending resolution of defendants' motion to dismiss which, if

5   granted, would be dispositive of the case).  *See also Commercial Equip. Co., Inc. v. Barclay*

6   *Furniture Co.*, 738 F. Supp. 974, 980 (W.D.N.C. 1990) (staying discovery pending resolution of

7   motion to transfer venue).

8   **VI.    CONCLUSION**

9         For the foregoing reasons, Defendants respectfully request that this Court (1) dismiss all

10   claims against Cendant; (2) dismiss the complaint for failure to state a claim or, in the alternative,

11   order plaintiffs to amend their complaint to provide a more definite statement of their claims; and

12   (3) stay all discovery pending resolution of the motions.

13   DATED:  August 1_, 2005

14

15                       By: _____

16                               DOUGLAS E. OLSON

17                     Attorneys for Defendants
                         CENDANT CORPORATION; TRILEGIANT

18                     CORPORATION; ORBITZ, LLC; ORBITZ, INC.;
                         BUDGET RENT A CAR SYSTEM, INC.; AND AVIS

19                     RENT A CAR SYSTEM, INC.
                         *Admitted Pro Hac Vice*

20                     And

21                     K. Michael Fandel

22                     WSBA# 16281
                     Graham & Dunn PC

23                     2801 Alaskan Way, Suite 300
                     Seattle, WA 98121

24                     Email: mfandel@grahamdunn.com

25

26

27

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT     - 18 -
CV-05-1137 (RSM)

                            **PAUL, HASTINGS, JANOFSKY & WALKER**
                                  3579 VALLEY CENTRE DRIVE
                                  SAN DIEGO, CA 92130

1

2

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2005, I presented the foregoing to the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following:

David T. McDonald
davidm@prestongates.com

Attorneys for Plaintiffs

/s/ K. Michael Fandel
K. Michael Fandel

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO DISMISS OR
FOR MORE DEFINITE STATEMENT                    - 19 -
CV-05-1137 (RSM)

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTRE DRIVE
SAN DIEGO, CA 92130

The Honorable R. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AMAZON.COM, INC. and A9.COM, INC.,     )     No. 05-01137RSM
                                       )
                    Plaintiffs,        )     **DEFENDANTS' REQUEST FOR**
                                       )     **JUDICIAL NOTICE IN SUPPORT OF**
        vs.                            )     **THEIR MOTION TO DISMISS OR, IN**
                                       )     **THE ALTERNATIVE, FOR MORE**
CENDANT CORPORATION; TRILEGIANT        )     **DEFINITE STATEMENT, MOTION**
CORPORATION; ORBITZ, LLC; ORBITZ,      )     **TO STAY ALL DISCOVERY**
INC.; BUDGET RENT A CAR SYSTEM, INC.;  )     **PENDING RESOLUTION OF THE**
and AVIS RENT A CAR SYSTEM, INC.,      )     **MOTIONS, AND MOTION TO**
                                       )     **TRANSFER VENUE**
                    Defendants.        )
                                       )     **[ORAL ARGUMENT REQUESTED]**
                                       )
                                       )     NOTE ON MOTION CALENDAR:
                                       )
                                       )
                                       )     September 9, 2005
                                       )
                                       )

REQUEST FOR JUDICIAL NOTICE I/S/O DEFENDANTS'
MOTIONS-- 1
SAN/119561.1
No. 05-01137RSM
M32273-632455

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

Pursuant to Federal Rule of Evidence 201, defendants Cendant Corporation ("Cendant"); Trilegiant Corporation ("Trilegiant"); Orbitz, LLC ("Orbitz, LLC"); Orbitz, Inc. ("Orbitz, Inc."); Budget Rent A Car System, Inc. ("Budget"); and Avis Rent A Car System, Inc. ("Avis") (collectively, "Defendants") hereby request the Court to take judicial notice of the following:

1.    Cendant Publishing, Inc.'s complaint that was filed in the District of Delaware on June 20, 2005 in the action entitled *Cendant Publishing, Inc. v. Amazon.com, Inc.*, Civil Action No. 05-414 (JJF), a copy of which is attached as Exhibit A to the Declaration of James V. Fazio, III ("Fazio Decl.") filed concurrently herewith. This Court may take judicial notice of complaints filed in other courts and other matters of public record. *United States v. Howard*, 381 F.3d 873, 876 n.1 (9th Cir. 2004) (citing *United States v. Wilson*, 631 F.2d 118, 199 (9th Cir. 1980)). *Accord Holloway v. Brush*, 220 F.3d 767, 786 n.3 (6th Cir. 2000); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

2.    Amazon.com, Inc.'s Notice of Related Action Per Local Rule 3.1(b) dated July 8, 2005 filed in the action entitled *Cendant Publishing, Inc. v. Amazon.com, Inc.*, Civil Action No. 05-414 (JJF), a copy of which is attached as Exhibit B to the Fazio Decl.

3.    A news article entitled *Amazon Countersues Cendant* dated July 18, 2005 and available at www.news.com, a copy of which is attached as Exhibit C to the Fazio Decl. This Court may take judicial notice of events recorded in the news. *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458-59 (9th Cir. 1995); *Peters v. Delaware River Port Authority of Pennsylvania and New Jersey*, 16 F.3d 1346, 1356 n.12 (3rd Cir. 1994). *See also The Washington*

REQUEST FOR JUDICIAL NOTICE I/S/O DEFENDANTS'
MOTIONS-- 2
SAN/119561.1
No. 05-01137RSM
M32273-632455

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

*Post v. Robinson*, 935 F.2d 282, 291 (D.C.Cir. 1991) (taking judicial notice of newspaper articles).

4.  Cendant Publishing, Inc.'s complaint that was filed in the District of Delaware on October 29, 2004 in the action entitled *Cendant Publishing, Inc. v. Amazon.com, Inc.*, Civil Action No. 04-1405 (GMS), a copy of which is attached as Exhibit D to the Fazio Decl.

5.  BTG International, Inc.'s complaint that was filed in the District of Delaware on September 14, 2004 in the action entitled *BTG Int'l. Inc. v. Amazon.com Inc., et al.*, Civil Action No. 04-CV-1264 (SLR), a copy of which is attached as Exhibit E to the Fazio Decl.

6.  Defendants request that this Court take judicial notice of the records of the Administrative Office of United States Courts comparing the unweighted number of filings per judge and number of civil cases pending between the District of Delaware and the Western District of Washington for the period ended September 30, 2004, available at www.uscourts.gov/judbus2004/appendices/c.pdf and www.uscourts.gov/judbus2004/appendices/x1a.pdf websites.  A copy of these records are attached collectively as Exhibit F to the Fazio Decl.  This Court may take judicial notice of records of the Administrative Office of United States Courts.  *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166-67 (S.D.Tx. 1994) (considering statistics maintained by the Administrative Office of the United States Courts in granting motion to transfer case to the District of New Jersey).

7.    Defendants request that this Court take judicial notice of the distance from Cendant's headquarters in New York, New York to the federal courthouse in Wilmington, Delaware as approximately 126 miles.  A copy of a printout from www.mapquest.com corroborating this distance is attached as Exhibit G to the Fazio Decl.  A district court may take judicial notice of distances between two points.  *Lowrence v. Pflueger*, 878 F.2d 1014, 1018 (7th Cir. 1989).  *See also United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) (magistrate judge can take judicial notice of distances); *Savage Universal Corp. v. Grazier Constr., Inc.*, 2004 U.S.Dist. LEXIS 16088, at *35 n.5 (S.D.N.Y. Aug. 12, 2004) (taking judicial notice of distances as determined by a "readily available internet mapping service").

8.    Defendants request that this Court take judicial notice of the distance from Parsippany, New Jersey (where both Avis and Budget are headquartered) to the federal courthouse in Wilmington, Delaware as approximately 130 miles.  A copy of a printout from www.mapquest.com corroborating this distance is attached as Exhibit H to the Fazio Decl.

9.    Defendants request that this Court take judicial notice of the distance from Trilegiant's headquarters in Norwalk, Connecticut to the federal courthouse in Wilmington, Delaware as approximately 168 miles.  A copy of a printout from www.mapquest.com corroborating this distance is attached as Exhibit I to the Fazio Decl.

10.   Defendants request that this Court take judicial notice of the distance from the headquarters of Orbitz, LLC and Orbitz, Inc. in Chicago, Illinois to the federal courthouse in Wilmington, Delaware as approximately 752 miles.

A copy of a printout from www.mapquest.com corroborating this distance is attached as Exhibit J to the Fazio Decl.  Defendants also request that this Court take judicial notice of the distance from Chicago, Illinois to Seattle, Washington as approximately 2,100 miles.  A copy of a printout from www.mapquest.com corroborating this distance is attached as Exhibit K to the Fazio Decl.

Dated this 12 day of August, 2005.

By: _____
Douglas E. Olson
Paul Hastings, Janofsky & Walker LLP
Attorneys for Defendants,
CENDANT CORPORATION; TRILEGIANT
CORPORATION; ORBITZ LLC; ORBITZ, INC.;
BUDGET RENT A CAR SYSTEM, INC.; AND
AVIS RENT A CAR SYSTEM, INC.

REQUEST FOR JUDICIAL NOTICE I/S/O DEFENDANTS'
MOTIONS-- 5
SAN/119561.1
No. 05-01137RSM
M32273-632455

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

**CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2005, I presented the foregoing to the Clerk of the

Court using the CM/ECF system, which will send notification of such filing to the following:


David T. McDonald
davidm@prestongates.com

Attorneys for Plaintiffs

/s/ K. Michael Fandel
K. Michael Fandel

REQUEST FOR JUDICIAL NOTICE I/S/O DEFENDANTS'
MOTIONS-- 6
SAN/119561.1
No. 05-01137RSM
M32273-632455

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

The Honorable R. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| AMAZON.COM, INC. and A9.COM, INC., | ) | No. 05-01137 RSM |
| | ) | |
| Plaintiffs, | ) | **DECLARATION OF ERIC J. BOCK** |
| | ) | **IN SUPPORT OF DEFENDANTS' (1)** |
| vs. | ) | **MOTION TO DISMISS ALL CLAIMS** |
| | ) | **AGAINST CENDANT** |
| CENDANT CORPORATION; TRILEGIANT | ) | **CORPORATION; (2) MOTION TO** |
| CORPORATION; ORBITZ, LLC; ORBITZ, | ) | **DISMISS THE COMPLAINT FOR** |
| INC.; BUDGET RENT A CAR SYSTEM, INC.; | ) | **FAILURE TO STATE A CLAIM** |
| and AVIS RENT A CAR SYSTEM, INC., | ) | **PURSUANT TO FED. R. CIV. P.** |
| | ) | **12(B)(6) OR, IN THE ALTERNATIVE,** |
| Defendants. | ) | **FOR MORE DEFINITE STATEMENT** |
| | ) | **PURSUANT TO FED. R. CIV. P. 12(E);** |
| | ) | **(3) MOTION TO STAY ALL** |
| | ) | **DISCOVERY PENDING** |
| | ) | **RESOLUTION OF THE MOTIONS;** |
| | ) | **AND (4) MOTION TO TRANSFER** |
| | ) | **THIS ACTION TO A MORE** |
| | ) | **CONVENIENT FORUM** |
| | ) | |
| | ) | |

I, Eric J. Bock, declare as follows:

     1.     I am an Executive Vice President in the Legal Department of Cendant

Corporation ("Cendant"). I have been continuously employed by Cendant and its predecessor

HFS, Inc. since July, 1997. I have personal knowledge of the following facts and, if called

upon to do so, I could and would testify competently thereto.

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 1
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

### Background

2.      Cendant Corporation ("Cendant") owns some of the largest travel and real estate franchise systems in the world.  Cendant owns some of the world's largest hotel chains, the world's largest vacation companies, some of the world's largest car rental companies, and the world's largest real estate brokerage companies.  Cendant is also one of the largest owners of travel information processing businesses worldwide.  Cendant is incorporated in the State of Delaware.

3.      Cendant currently owns a number of subsidiaries, including defendants Orbitz, LLC ("Orbitz LLC"); Orbitz, Inc. ("Orbitz Inc.") (collectively, "Orbitz"); Trilegiant Corporation ("Trilegiant"); Budget Rent A Car System, Inc. ("Budget"); and Avis Rent A Car System, Inc. ("Avis") (collectively, the "Subsidiary Defendants").  Cendant acquired Avis in 2001, long after the website www.avis.com was launched.  Cendant acquired Budget in 2002, well after the website www.budget.com was launched.  Neither Budget nor Avis is owned directly by Cendant. Instead, both Avis and Budget are owned by an intermediate subsidiary known as Cendant Car Rental, Inc., which is a direct subsidiary of Cendant.  Cendant acquired Orbitz in 2004, years after the website www.orbitz.com was launched.  On July 26, 2005, Cendant announced a definitive agreement to sell its entire Marketing Services Division, including Trilegiant and several other marketing businesses, to Affinity Acquisitions Holdings LLC (an affiliate of Apollo Management L.P.).  The sale is expected to close in the Fall of 2005.  Accordingly, Cendant will soon no longer own Trilegiant.  Each of the Subsidiary Defendants is also incorporated in the State of Delaware.

### Cendant Is Separate And Distinct From Each of Its Subsidiaries

4.      Cendant is a legal entity separate and distinct from each of its wholly-owned subsidiaries, including the Subsidiary Defendants.  In fact, most of Cendant's shared services personnel are employed by an entity known as Cendant Operations, Inc., which performs certain

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 2
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

administrative, payroll and other functions common to the Subsidiary Defendants.  Only two of Cendant's directors are also directors of one or more of the Subsidiary Defendants.  Likewise, only about one-fifth of Cendant's officers are also officers of one or more of the Subsidiary Defendants.

5.    Plaintiffs accuse the following five websites of patent infringement: www.trilegiantaffiliates.com, www.orbitz.com, www.avis.com, www.budget.com, and www.avgautostore.com.  Cendant has not designed or developed any of these websites, Cendant does not operate any of these websites, and Cendant does not direct or control the content of any of these websites.  Rather, each of the allegedly infringing websites has been designed and developed independently by one of the Subsidiary Defendants, and each of the allegedly infringing websites is operated exclusively by one of the Subsidiary Defendants and/or its third party contractors.

6.    Cendant, for example, does not exercise day-to-day control over the operation or content of the www.avis.com or www.budget.com websites.  Instead, each of these websites was designed and developed, and is currently operated and managed, by Avis and Budget, respectively, and/or their third party contractors.  Likewise, Cendant does not direct or control the daily operations, management or content of the www.orbitz.com website.  This website is instead operated and managed exclusively by Orbitz and/or its third party contractors.  Further, the websites www.avgautostore.com and www.trilegiantaffiliates.com are websites that were designed and developed, and are currently operated, exclusively by Trilegiant.  Cendant does not exercise control over the day-to-day operation, management or content of the www.avgautostore.com or www.trilegiantaffiliates.com websites.

7.    Likewise, Cendant does not control the day-to-day operations or management of any of the Subsidiary Defendants.

8.    Cendant and each of the Subsidiary Defendants strictly observe, and have always

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 3
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

strictly observed, all corporate formalities. Cendant maintains its own books and records separately from each of the Subsidiary Defendants, Cendant maintains its own bank accounts separately from each of the Subsidiary Defendants, and Cendant and the Subsidiary Defendants each have their own separate headquarters. Cendant's corporate offices are in New York, New York and its operational headquarters are in Parsippany, New Jersey. Cendant Publishing, Inc. ("Cendant Publishing") (one of Cendant's wholly-owned subsidiaries) is also headquartered in New Jersey. Virtually all of Cendant and Cendant Publishing's employees and documents are located in New Jersey.

9.    Avis, Budget and Cendant Car Rental, Inc. also have their headquarters in Parsippany, New Jersey in a separate building from Cendant. The www.avis.com and www.budget.com websites were originally designed and developed in Garden City, New York and outside Chicago, Illinois, respectively, and are currently operated in New Jersey. Most of the witnesses with knowledge of the design, development and operation of these websites (such as Paul Kremer and Joseph Kirrane, Vice President, Information Technology) are located in New Jersey. Further, most of Avis and Budget's key marketing personnel (such as John Peebles, Vice President, Marketing), who have knowledge of facts relevant to this dispute, are also located in New Jersey. Moreover, the Chief Financial Officers for Avis and Budget, who may have knowledge of facts relevant to royalty rates and related potential damages issues, are in New Jersey. Likewise, most of the documents relevant to the design, development and operation of these websites are located in New Jersey.

10.    Orbitz's headquarters are in Chicago, Illinois, and Trilegiant's headquarters are in Norwalk, Connecticut. The www.orbitz.com website was designed and developed, and is currently operated, in Chicago. Most of the witnesses with knowledge of the design, development and operation of this website are located in Chicago. Similarly, most of the documents relevant to the design, development and operation of this website are located in

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 4
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

Chicago.

11.    The www.trilegiantaffiliates.com and www.avgautostore.com websites were designed and developed, and are currently operated, in Connecticut.  Most of the witnesses with knowledge of the design, development and operation of these websites (such as Jim McDowell, Director of Technology Engineering, and Chris Johnson, Vice President, Technology) are located in Connecticut.  In addition, the individuals with knowledge of the financial records and profits of these websites (such as Al Fino, Group Vice President and Controller) are located in Connecticut.  Likewise, most of the documents relevant to the design, development and operation of these websites are located in Connecticut.

12.    Each Subsidiary Defendant makes its own personnel, marketing and management decisions, and each Subsidiary Defendant holds its own patents separately from Cendant.  In fact, Cendant does not actually own any patents.  Instead, Cendant Publishing owns the company's patents.  Like its parent, Cendant Publishing does not exercise control over the day-to-day operations of any Subsidiary Defendant, nor control over the management or content of any of the allegedly infringing websites.

13.    On October 29, 2004, Cendant Publishing filed a complaint against Amazon for patent infringement.  The patent at issue in that action was U.S. Patent No. 6,782,370 (the "'370 Patent"), which discloses a method for providing potential customers with recommendations for additional goods and services based on previous customers' purchasing history.  Because the parties had tried to resolve that dispute, Cendant Publishing dismissed the action without prejudice.  The parties did not reach a settlement, and Amazon served notice of its desire to discontinue efforts to resolve the dispute through further settlement discussions in anticipation of litigation.  Cendant Publishing therefore re-filed its complaint against Amazon on June 20, 2005.

**Defendants Offer Countless Different Products And Services**

14.    Within its global business network, Cendant owns dozens of broad-based brands

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 5
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

and business units, including (1) vehicle companies such as Avis and Budget, (2) real estate
services and brokerage companies such as Century 21 and Coldwell Banker, (3) travel
distribution companies such as Orbitz and CheapTickets, and (4) hospitality service companies
such as Howard Johnson, Days Inn, Super 8 Motel, Ramada and Travelodge.

15.    Within these dozens of different business units, the Subsidiary Defendants offer a
great number of different and wide-ranging products and services. Few programs are alike and
most offer wide-ranging services and products spanning multiple industries. Trilegiant, for
example, is a premier membership-based provider of travel, shopping, health, dental,
entertainment, and consumer protection services. Trilegiant alone sponsors well over a dozen
different and unrelated products and services, including AutoVantage (which supplies or
operates, among other things, a service center network, emergency roadside assistance and new
car summaries), Great Fun (a diverse program that delivers discount opportunities to customers
on local dining, shopping, hotel savings, various leisure activities and numerous other items),
Just for Me (which offers discounts and rebates to women on such things as gym memberships,
spa treatments, and cellular telephones), Pet Privileges (which offers discounts and other
privileges in connection with veterinary procedures, pharmacy products and related items), and
Small Business Central (which helps small business owners save on expenses for health
insurance, office products, telephone costs, equipment leasing and other items).

16.    Aside from these diverse products and services, Trilegiant also offers educational
programs like Clever Clubhouse, which assists parents in designing and implementing
educational ideas for young children. Trilegiant also operates The Auto Store located at
www.avgautostore.com (one of the websites plaintiffs attack). The Auto Store offers a veritable
cornucopia of consumer goods and services, ranging from home leisure products (such as air
conditioners, art, gourmet foods, small appliances, furniture, tools, and vacuum cleaners), to
computers and office equipment (including telephones, printers, hardware, software, handheld

devices, and monitors), to sporting goods (including pools, trampolines, camping equipment and gym equipment), to toys and video games, to health and beauty products.

17.     Cendant also owns a wide variety of different hospitality services and businesses, including Resort Condominiums International, LLC ("RCI"), Fairfield Resorts, Inc. ("Fairfield"), Trendwest Resorts, Inc. ("Trendwest"), and Hotel Dynamics Limited ("Hotel Dynamics"). RCI has offices in more than 50 countries and provides its global community of more than three million timeshare owners with quality vacation experiences at more than 3,700 resorts in 101 countries worldwide. Fairfield specializes in the development, marketing and sales of vacation products at over 60 premier resorts across the United States. Trendwest operates 54 resorts in several different countries. Hotel Dynamics specializes in the design and development of tailored marketing programs for the hospitality industry around the world.

18.     Cendant also owns some of the world's largest real estate services and brokerage companies, including Century 21, Coldwell Banker, and Sotheby's International Realty. Taking these together, Cendant has more than 14,000 real estate offices worldwide. As part of its real estate holdings, Cendant also owns Cendant Settlement Services Group, which offers title, settlement and vendor management services to real estate companies, corporations, and financial institutions. Cendant also owns Cendant Mobility, which is the world's largest corporate relocation service. Cendant Mobility provides home sale and purchase assistance, home marketing support and management of personal moving affairs to more than 100,000 relocating employees annually.

19.     Orbitz offers a wide variety of travel and hospitality products and services through its website www.orbitz.com. This website allows customers to browse and purchase airline flights, hotel reservations, rental car reservations, cruises and vacations online. The website also offers various travel services such as select airport and city guides, travel tips, news and advisories, weather forecasts and other information.

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 7
SAN/119569.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1      20.     Avis and Budget are rental car companies that permit customers to inquire about

2 rental rates, make reservations, and obtain other helpful information through the Internet.

3      I declare under penalty of perjury under the laws of the United States that the foregoing

4 is true and correct.  Executed this 11 th day of August, 2005 at New York, New York.

6 By:_____

7              ERIC J. BOCK

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 8
SAN/119439.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1
2
## CERTIFICATE OF SERVICE

3       I hereby certify that on August 12, 2005, I presented the foregoing to the Clerk of the

4   Court using the CM/ECF system, which will send notification of such filing to the following:

5
6   David T. McDonald
    davidm@prestongates.com

7   Attorneys for Plaintiffs

8                                              /s/ K. Michael Fandel
                                                   K. Michael Fandel
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DECLARATION OF ERIC J. BOCK IN SUPPORT OF
DEFENDANTS' MOTIONS -- 9
SAN/119439.1
No. 05-01137RSM
M32273-631796

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130