Westlaw.

Not Reported in F.Supp.2d                                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

C

Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
William F. ASIP and Miklos L. Bartha, Plaintiffs,
v.
NIELSEN MEDIA RESEARCH, INC. and VNU,
Inc., Defendants.
**No. 03 Civ. 5866(SAS).**

Feb. 18, 2004.

**Background:** Patent holder brought infringement action against subsidiary and parent company over patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber.

**Holdings:** On holder's motion to dismiss, the District Court, Scheindlin, J., held that:
(1) patent holder stated claim for infringement;
(2) question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings;
(3) complaint provided subsidiary with fair notice of infringement claims; and
(4) subsidiary's laches argument was premature.
Motion denied.

West Headnotes

[1] Patents ⚿310.1(1)
291k310.1(1) Most Cited Cases
Patent holder stated claim for infringement, on allegations that stated its joint ownership interest in particular patent, named particular defendants, cited patent as basis for action, described means by which defendants allegedly infringed patent, and indicated that its claims were based on defendants' willful acts of direct and indirect infringement. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[2] Patents ⚿310.1(1)
291k310.1(1) Most Cited Cases
Patent holder stated infringement claim against parent company, even though parent owned stock in subsidiary for only 69 days before expiration of patent, where complaint otherwise provided parent with fair notice as to claims asserted against it, and question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings, such as degree of control it exercised over subsidiary.

[3] Patents ⚿310.1(5)
291k310.1(5) Most Cited Cases
Complaint provided competitor with fair notice of infringement claims, relating to patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber; even though complaint did not identify which of competitor's television monitoring devices infringed upon the patent, complaint specifically stated that competitor "infringed, induced and/or contributed" to infringement of patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so." Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

[4] Patents ⚿313
291k313 Most Cited Cases
Competitor's laches argument at motion to dismiss stage was premature, since such relief turned upon whether patent holder unreasonably delayed filing of lawsuit despite having actual or constructive knowledge of competitor's infringing products and whether that delay resulted in material prejudice to competitor, and those inquiries could not be resolved on face of complaint.

Patents ⚿328(2)
291k328(2) Most Cited Cases
4,361,851. Cited.
Robert Rando, Levy & Stopol, LLP, Uniondale, New York, for Plaintiffs.

Lee F. Grossman, Eric P. Martin, Grossman & Flight, LLC, Chicago, Illinois, Steven H. Bazerman, Ramsaran Maharajh Jr., Bazerman & Drangel, PC, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00041-JJF   Document 38-19   Filed 01/23/2006   Page 2 of 12

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: 2004 WL 315269 (S.D.N.Y.))

*1 William Asip and Miklos Bartha bring this action against VNU, Inc. ("VNU") and Nielsen Media Research ("Nielsen") (collectively "defendants") alleging patent infringement. VNU now moves to dismiss the Complaint for failure to state a claim, and Nielsen moves for a more definite statement under Rule 12(e). For the reasons that follow, both motions are denied.

I. BACKGROUND

Plaintiffs are New York residents and holders of Patent No. 4,361,851 (" '851 Patent"). [FN1] Defendants are owners and operators of television audience measurement estimating systems and devices. [FN2] Both defendants conduct business in New York [FN3] and Nielsen is a "division" of VNU. [FN4]

> FN1. Complaint ("Compl.") ¶¶ 1, 2, 9.
>
> FN2. *See* Plaintiffs' Memorandum of Law in Opposition to VNU's Rule 12(b)(6) Motion ("Pl.12(b)(6) Mem.") at 1; Plaintiffs' Memorandum of Law in Opposition to Nielsen's Rule 12(e) Motion ("Pl.12(e) Mem.") at 1.
>
> FN3. Compl. ¶¶ 3-5; *see also* VNU's Memorandum of Law in Support of Its Rule 12(b)(6) Motion ("Def.12(b)(6) Mem.") at 2.
>
> FN4. Compl. ¶.5.

The '851 patent was issued to plaintiffs on November 30, 1982 for their invention of a system that "automatically monitor[s] the selection of a Program Source made by a Subscriber." [FN5] Specifically, this system enables the transmission (over non-dedicated telephone lines) of channel logs chronicling those channels a subscriber has viewed. [FN6] Plaintiffs envisioned use of this invention with "cable television systems or over-the-air pay television scrambled systems." [FN7] But they also noted that the possible applications of this invention "are not restricted to [those relating to] Pay-TV" and could include deployment in activities such as "[o]pinion polling and preference sampling." [FN8]

> FN5. '851 Patent, Ex. 1 to Compl. In considering a motion to dismiss, courts may not consider matters outside the pleadings. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002). The complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.' " *Id.* (quoting *International Audiotext Network, Inc. v. American Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995)); *see also* Fed.R.Civ.P. 10(c). Accordingly, the '851 Patent is treated as part of the Complaint.
>
> FN6. *See* '851 Patent.
>
> FN7. *Id.*
>
> FN8. *Id.*

Plaintiffs allege that defendants have infringed, induced, and/or contributed to the infringement of "at least" Claim One of the '851 Patent. [FN9] Claim One covers:

> FN9. Compl. ¶¶ 11, 14. The '851 Patent covers six claims. *See* '851 Patent.

A television-use monitoring device for direct electrical connection to a telephone line, comprising:
(a) coupling means coupled to said television for detecting when said television is actively receiving a predetermined channel and producing, in response thereto a program selection signal indicating the active reception of a particular program selection;
(b) timer means for providing timing information;
(c) transient memory means responsive to said coupling means to store, in response to a first control signal, said program selection signal associated with a particular program whose active reception has been detected;
(d) second memory means responsive to said transient memory means to receive the output of said transient memory means in response to a second control signal and produce the same at its output in response to a third control signal;
(e) control means responsive to said timer for periodically causing said transient memory means to store any program selection signal present in the system, and reading the contents of said transient memory means, and responsive to said transient memory means to cause said transient memory means to transfer its contents to said second memory means in response to the detection of said program selection at one point in time and a second detection of the same program selection a predetermined period of time thereafter;
(f) interface means, responsive to said control

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

means and said second memory means to encode said program selection signal for transmission; and *2 (g) transmission coupling means, responsive to said interface means, to couple the output of said interface means to conventional telephone lines and transmit said program selection to a central billing facility. [FN10]

FN10. '851 Patent.

Defendants allegedly knew of and intentionally infringed the '851 Patent by "importing, making, using and/or selling products which use and/or encompass [,] store[,] and forward technology with the use of a telephone line for data transmission in the television industries." [FN11] Plaintiffs contend that defendants' unlawful conduct began prior to and continued through the '851 Patent's expiration date in January 2000. [FN12]

FN11. Compl. ¶ 10; see also id. ¶¶ 14-16.

FN12. Id. ¶¶ 10-11, 15.

II. APPLICABLE LAW

A. Legal Standard

1. Rule 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' [FN13] "A court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' [FN14] Accordingly, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. [FN15]

FN13. Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); see also Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 44 (2d Cir.2003).

FN14. Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir.2003) (quoting Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir.1998)).

FN15. See Chambers, 282 F.3d at 152; Levitt, 340 F.2d at 101.

2. Rule 12(e)

Under Rule 12(e), if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." [FN16] Rule 8(a) provides that a plaintiff need only plead "a short and plain statement of the claim" that will provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. [FN17] " '[I]f [a] complaint complies with the liberal pleading requirements of [Rule 8(a) ], then the Rule 12(e) motion should be denied." ' [FN18] Notably, because the purpose of the Rule is to "strike at unintelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." [FN19] Therefore, "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." [FN20]

FN16. Fed.R.Civ.P. 12(e).

FN17. Fed.R.Civ.P. 8(a); see also Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

FN18. Vapac Music Publ'g, Inc. v. Tuff'N'Rumble Mgmt., No. 99 Civ. 10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000) (quoting Tom Kelley Studios Inc. v. International Collectors Soc'y Inc., No. 97 Civ. 0056, 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997)).

FN19. Markovic v. New York City Sch. Constr. Auth., No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept.13, 2000) (quotation marks and citation omitted).

FN20. Id.; see also Vapac Music Publ'g, 2000 WL 1006257, at *6 (noting that Rule 12(e) motions are disfavored).

B. Patent Infringement

To state a claim for patent infringement, "a patentee

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit A
Page 6

Case 1:06-cv-00041-JJF   Document 38-19   Filed 01/23/2006   Page 4 of 12

Not Reported in F.Supp.2d                                                                                Page 4
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: 2004 WL 315269 (S.D.N.Y.))

need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." [FN21] A complaint for patent infringement need only meet the following requirements: "[ (1) allege] ownership of the asserted patent, [ (2) ] name[ ] each individual defendant, [ (3) ] cite[ ] the patent that is allegedly infringed, [ (4) ] describe[ ] the means by which the defendants allegedly infringe, and [ (5) ] point[ ] to the specific sections of the patent law invoked." [FN22]

> FN21. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*, 203 F.3d 790, 794 (Fed.Cir.2000); accord *DigiGAN, Inc. v. iValidate, Inc.*, No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb.3, 2004).
>
> FN22. *Phonometrics*, 203 F.3d at 794; accord *DigiGAN*, 2004 WL 203010, at *4.

III. DISCUSSION [FN23]

> FN23. As an initial matter, I note plaintiffs' argument that both Rule 12 motions should be rejected because of defendants' failure to abide by my Individual Rules and Procedures. *See* Pl. 12(b)(6) Mem. at 9; Pl. 12(e) Mem. at 7. Because parties are expected to be familiar with these rules, defendants are reminded that the rules are available at this Court's website. *See* Individual Rules and Procedures, http://www.nysd.uscourts.gov/Individual_Practices/Scheindlin.pdf.
> The rules clearly state that, prior to bringing a motion to dismiss, "the parties *must* exchange letters" and "must certify that pre-motion letters were exchanged." *Id.* at 3 (emphasis added). "The parties should attempt to eliminate the need for these motions based on this exchange of letters," while recognizing that leave to amend will be freely granted. *Id.* Defendants' failure to follow these rules has led them to engage in what appears to be unnecessary motion practice. This highlights precisely those consequences that the rule is intended to avoid, *e.g.*, needlessly delayed litigation and wasted judicial resources.

A. VNU's Rule 12(b)(6) Motion

*3 [1][2] The Complaint satisfies the pleading requirements of Rule 8 because it: (1) alleges plaintiffs' joint ownership of the '851 Patent, [FN24] (2) names VNU and Nielsen as defendants, [FN25] (3) cites the '851 Patent as the basis for the action, [FN26] (4) describes the means by which defendants allegedly infringed the '851 Patent, [FN27] and (5) indicates that their claims are based on defendants' willful acts of direct and indirect infringement. [FN28] However, VNU argues that the action against it should be dismissed because it has never "engaged in any of the allegedly infringing activities." [FN29] Rather, VNU contends that those acts were committed by its subsidiary, Nielsen, which was acquired on October 27, 1999, sixty-nine days prior to the expiration of the '851 patent. [FN30] As VNU puts it, "[its] sole relationship with [Nielsen] as relates to this case is this 69 day period during which it owned the stock of [Nielsen] but had no direct involvement in its operations." [FN31]

> FN24. *See* Compl. ¶ 9.
>
> FN25. *See id.* ¶¶ 3, 5, 10, 11.
>
> FN26. *See id.* ¶¶ 9-15.
>
> FN27. *See id.* ¶¶ 9-11.
>
> FN28. *See id.* ¶¶ 10-12. Specifically, patent infringement claims are governed by 35 U.S.C. § 271. Direct infringement occurs when a person, without authority, infringes a patent by making, using, offering to sell, or selling any patented invention. *See* 35 U.S.C. § 271(a). Indirect infringement occurs when a person induces the infringement of a patent by another or contributes to a patent's infringement through its activities. *See* 35 U.S.C. § 271(b)-(c).
>
> FN29. Def. 12(b)(6) Mem. at 2.
>
> FN30. *See id.*
>
> FN31. *Id.* at 2-3 (alternation in original).

VNU has not demonstrated that plaintiffs cannot prove any set of facts in support of their patent infringement claims. *First*, plaintiffs' allegations as pled are sufficient because they provide VNU with fair notice as to the claims asserted against it. As plaintiffs correctly point out, VNU's motion is "merely a statement of its belief that it has not

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00041-JJF   Document 38-19   Filed 01/23/2006   Page 5 of 12

Not Reported in F.Supp.2d                                                                                                   Page 5
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: 2004 WL 315269 (S.D.N.Y.))

engaged in any direct infringement which is more appropriately stated as a denial in answer to the [Complaint]." [FN32] *Second,* even if plaintiffs' infringement claims against VNU are premised solely on its status as "a holding company" for subsidiary Nielsen, whether VNU is liable for Nielsen's actions turns on factual considerations (*e.g.,* the degree of control that VNU exercised over Nielsen) that are beyond the scope of the pleadings. [FN33] Thus, contrary to VNU's argument that "[t]he timing of the dismissal is irrelevant," [FN34] the fact that VNU brings this motion at the pleading stage is critical.

>FN32. Pl. 12(b)(6) Mem. at 8.

>FN33. Not surprisingly VNU submitted a Joint Declaration in an attempt to factually support its arguments. *See* Joint Declaration of Michael E. Elias and David A. Schwartz-Leeper, Ex. A to Def. 12(b)(6) Mem. But for purposes of a motion brought under Rule 12(b)(6), a court cannot consider documents outside of the pleadings. *See Chambers,* 282 F.3d at 152.

>FN34. VNU's Reply Memorandum of Law in Further Support of Its Rule 12(b)(6) Motion at 4.

B. Nielsen's Rule 12(e) Motion

[3] Nielsen argues that because plaintiffs' " 'bear-bones' [sic] Complaint" does not identify which of Nielsen's television monitoring devices infringe the '851 Patent, the Complaint fails to satisfy Rule 8's pleading requirements. [FN35] But the Complaint specifically states that Nielsen "infringed, induced and/or contributed" to the infringement of the '851 Patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so to, and including, January 2000." [FN36] These allegations are not "so vague or ambiguous" that Nielsen cannot be "reasonably ... required to frame a responsive pleading" to the Complaint. [FN37] As the Complaint provides fair notice of plaintiffs' patent infringement claims, it comports with the pleading requirements set forth in Rule 8. [FN38]

>FN35. Nielsen's Memorandum of Law in Support of Its Rule 12(e) Motion ("Def.12(e) Mem.") at 2.

>FN36. Compl. ¶ 11.

>FN37. Fed.R.Civ.P. 12(e).

>FN38. *See supra* Part III.A. Moreover, Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure, which provides a sample patent infringement complaint, states simply that "[d]efendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court." Courts have found that a complaint providing at least as much information as this sample complaint is sufficient to withstand a Rule 12(e) motion. *See Dome Patent L .P. v. Permeable Techs., Inc.,* 190 F.R.D. 88, 90-91 (W.D.N.Y.1999) (citing *OKI Elec. Indus. Co. v. LG Semicon Co.,* No. 97 Civ. 20310, 1998 WL 101737, at *3-4 (N.D.Cal. Feb.25, 1998), and *Soli-Tech, Inc. v. Halliburton Co.,* No. 97 Civ. 10232, 1993 WL 315358, at *3 (E.D.Mich. Jan.26, 1993)). Plaintiffs' allegations of infringement by "products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries" are at least as specific as those involving "electric motors embodying the patented invention." Compl. ¶ 11.

[4] Nielsen also contends that the doctrine of laches requires plaintiffs to "specifically identify [Nielsen's] allegedly infringing products." [FN39] In particular, Nielsen argues that plaintiffs' allegations either (1) cover activities that Nielsen has undertaken for the twenty years since the '851 patent was issued and "[b]y definition" the doctrine of laches applies; or (2) Nielsen "must have some new product, or must have modified an old product in a way [ ] that allegedly infringes the '851 Patent" and must identify that product. [FN40] But, at this stage of the proceedings, Neilsen's laches argument is premature. Relief pursuant to the doctrine of laches turns on (1) whether a plaintiff unreasonably delayed the filing of her lawsuit despite having actual or constructive knowledge of the defendant's infringing products and (2) whether that delay resulted in material prejudice to defendant. [FN41] Where these inquiries cannot be resolved on the face of the complaint, they are questions properly reserved for summary judgment, after discovery has concluded. Here, the laches defense cannot be resolved solely from a review of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Complaint.

> FN39. Def. 12(e) Mem. at 3.
>
> FN40. *Id.* at 4 (citing *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.*, 960 F.2d 1020 (Fed.Cir.1992) and *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358 (Fed.Cir.2001). Notably, both cases upon which Nielsen relies involve the application of the doctrine of laches at the summary judgment stage.
>
> FN41. *See Ecolab,* 264 F.3d at 1371; *A.C. Aukerman Co.,* 960 F.2d at 1032.

IV. CONCLUSION

*4 For the foregoing reasons, both VNU's motion to dismiss and Nielsen's motion for a more definite statement are denied. The Clerk of the Court is directed to close these motions (numbers 13 and 17 on the docket sheet). A conference is scheduled for February 26, 2004, at 2:45 p.m.
SO ORDERED:

Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv05866         (Docket) (Aug. 06, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 14727　　Page 1 of 4

Case 1:06-cv-00041-JJF　　Document 38-19　　Filed 01/23/2006　　Page 7 of 12



**FOCUS™** Terms　　　　　　　　　　　　Search Within  All Documents　　Go

View: **Full** | Custom　　　　　　　　　　1 of 1　　　　　　　　　FAST Print　　Print |
More Like This | More Like Selected Text | *Shepardize®* | TOA
**Intel Corp. v. Hyundai Elecs. America, Inc., 1987 U.S. Dist. LEXIS 14727**　(Copy w/ Cite

Service: **Get by LEXSEE®**
Citation: **1987 U.S. Dist. LEXIS 14727**

*1987 U.S. Dist. LEXIS 14727, \**

Intel Corporation, Plaintiff, v. Hyundai Electronics America, Inc.; Hyundai Electronics Industries Co., Ltd.; Amtel Corp.; International CMOS Technology, Inc.; Cypress Electronics, Inc.; All-American Semiconductor, Inc.; Pacesetter Electronics, Inc.; and George Perlegos; Defendants

No. C 87-20534 RPA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1987 U.S. Dist. LEXIS 14727

November 23, 1987, Decided and Filed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** One of the defendant corporations sued by plaintiff patent holder for patent infringement moved for a more definite statement.

**OVERVIEW:** After the patent holder sued the corporations for patent infringement, one of the corporations moved for a more definite statement. The court denied the motion. The motion sought to compel the patent holder to specify which of the holder's nine patents the corporation had infringed, which of the corporation's products had infringed on the holder's patent, which infringing products the corporation allegedly encouraged and aided third parties in using or selling, and under which patents the corporation had allegedly induced infringement and contributed to infringement. The court, in rejecting the motion, noted that motions for more definite statements were disfavored, and were to be permitted only if the responding party could not frame an answer to a pleading due to the pleading's vagueness. In the parties' case, the detail the corporation desired could be garnered during discovery. It was not a matter for the pleadings.

**OUTCOME:** The corporation's motion for a more definite statement in the patent holder's infringment action was denied. If the corporation needed more specificity, it could rely on discovery. A more definite statement was not needed, however, because the complaint was not unduly vague.

**CORE TERMS:** patent, infringement, infringed, infringing, definite, above-identified, discovery, vague, answered, selling, induced, responsive pleading, third parties, patent case, contributorily, infringe, actively, frame

**LexisNexis(R) Headnotes** ♦ Hide Headnotes

Exhibit B
Page 10

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form
Patent Law > Infringement Actions > Corporate & Government Infringers
*HN1* Fed. R. Civ. P. 12(e) explains that if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form
*HN2* Motions for a more definite statement are not viewed with favor and should be granted only if the allegations contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it. More Like This Headnote

**OPINIONBY:** [*1]

AGUILAR

**OPINION:** ORDER DENYING DEFENDANT INTERNATIONAL CMOS TECHNOLOGY, INC.'S MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff Intel has filed suit against eight different defendants, alleging infringement of nine different patents. All the defendants except International CMOS Technology, Inc. ("ICT") have answered the complaint. Instead of answering, ICT has moved for a more definite statement under Federal Rule of Civil Procedure 12(e). Specifically, ICT requests that Intel state (1) which of the nine patents ICT allegedly has infringed, (2) which of ICT's products allegedly infringe Intel's patents, (3) which "infringing products" ICT allegedly encouraged and aided third parties in using or selling, and (4) under which patents ICT has allegedly induced infringement and contributed to infringement.

*HN1* Rule 12(e) explains that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement . . . ." ICT argues that since there are numerous defendants and numerous patents, Intel should state which defendants are alleged to have infringed which patents. [*2] In support of its position, ICT cites three cases: Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (E.D. Wis. 1975) (antitrust case requiring the plaintiff to specify which parties are connected with the acts complained of, rather than simply stating "plaintiffs" or "defendants"); J. D. Ferry Co., Inc. v. McBeth Engineering Corp., 11 F.R.D. 75, 76 (M.D. Pa. 1951) (granted a Rule 12(e) motion because "[t]he general practice in patent infringement suits has been to require the plaintiff to state what claims of a patent he alleges to have been infringed"); Coyne & Delany Co. v. G. W. Onthank Co., 10 F.R.D. 435, 436 (S.D. Iowa 1950) (case involving eight patents in which the court granted a Rule 12(e) motion because the complaint "fail fed] to clarify which of the claims plaintiffs contend have been infringed" such that defendants could not respond). ICT has not cited a recent case in support of its position and the Court has not found one.

On the other hand, Intel argues that its complaint is adequate, that its complaint meets the notice requirements of Federal Rule of Civil Procedure 8, that the other defendants have answered, and that no more specificity [*3] is required. In support of its position, Intel cites the following cases: Mixing Equipment Co. v. Innova-Tech, Inc., 228 U.S.P.Q. 221, 222 (E.D. Pa. 1985) (a claim that is unclear to the extent that it may involve either a patent controversy or unfair competition is not so vague that it cannot be answered); Famolare, Inc. v. Edison Brothers Stores, Inc., 525 F. Supp. 940, 949, 211 U.S.P.Q. 562, 570 (E.D. Cal.

Exhibit B
Page 11

1981) (design patent case holding that "where the information sought by the moving party is available and/or properly sought through discovery the [Rule 12(e)] motion should be denied"); Etablissements Neyrpic v. Elmer C. Gardner, Inc., 175 F. Supp. 355, 358 (S.D. Tex. 1959) (patent case in which a Rule 12(e) motion was denied because the requested information was not necessary to respond to the pleading and discovery was available to disclose the information).

The Court recognizes that HN2 "[m]otions for a more definite statement are not viewed with favor and should be granted only if the allegations contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it." Wilson v. United States, 585 F. Supp. 202, 205 (M.D. [*4] Pa. 1984) (citations omitted); see also United States v. Allied Chemical Corp., ., 587 F. Supp. 1205, 1209 (N.D. Cal. 1984). Intel's complaint is not so vague that ICT cannot respond. n1 Intel has the right to allege that all the defendants, including ICT, are infringing all nine patents. As a result, ICT will have to address the allegations of infringement as to each patent. If ICT is not infringing the patents, it can simply deny the allegations. If ICT wishes to narrow the claims against it, ICT may file a motion to dismiss or a motion for summary judgment.

n1 The relevant paragraphs of the complaint read:

21. Defendants have been and still are infringing the above-identified patents under 35 U.S.C. § 271(a) by making, using, or selling semiconductor memory products, specifically Erasable Programmable Read Only Memories (EPROMs), and products that incorporate EPROMs, that use or embody the patented inventions.

22. Defendants have actively induced infringement of and contributorily infringed the above-identified patents under 35 U.S.C. § 271(b) and (c) by encouraging and aiding third parties in using or selling infringing products. Defendants Atmel and ICT have also actively induced infringement of and contributorily infringed the above-identified patents by licensing and/or providing designs and technical assistance to enable Hyundai Electronics to infringe the above-identified patents. [*5]

The cases cited by ICT support a different conclusion. However, those cases are old and not consistent with the recent trend set forth in the cases cited by Intel, namely, that specific facts and allegations are to be disclosed in discovery, not in the pleadings. As explained in Mixing Equipment, 228 U.S.P.Q. at 222, "if the defendant wishes to gain more specific information, the tools of discovery are available to it." Therefore, the Court DENIES defendant ICT's motion for a more definite statement.

IT IS SO ORDERED

DATED: November 23, 1987

View: Full | Custom        1 of 1     FAST Print   Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | Shepardize® | TOA
Intel Corp. v. Hyundai Elecs. America, Inc., 1987 U.S. Dist. LEXIS 14727  (Copy w/ Cite)  Pages:  4
Service: Get by LEXSEE®
Citation: 1987 U.S. Dist. LEXIS 14727
View: Full
Date/Time: Thursday, September 15, 2005 - 7:18 PM EDT

Exhibit B
Page 12

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 14727    Page 4 of 4

Case 1:06-cv-00041-JJF    Document 38-19    Filed 01/23/2006    Page 10 of 12

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Not Reported in F.Supp.2d                                                                                                Page 1
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
JOHNSON PRODUCTS CO., INC. Plaintiff,
v.
PRO-LINE CORPORATION, Defendant.
**No. 94 C 3555.**

Oct. 5, 1998.

*MEMORANDUM OPINION AND ORDER*

PALLMEYER, Magistrate J.

**\*1** Plaintiff Johnson Products Company ("Johnson Products") filed this patent infringement action against Defendant Pro-Line Corporation ("Pro-Line") on June 8, 1994. Johnson Products owns the two patents at issue in this lawsuit: U.S. Patent No. 4,175,572 (" '572 patent") and U.S. Patent No. 5,138,822 (" '822 patent"). Both patents relate to hair relaxers intended primarily for African-American hair care. Johnson Products claims that the chemical formulations of two hair relaxer kits developed and sold by Pro-Line, namely "Soft & Beautiful" and "Just for Me," both infringe the '572 and '822 patents. On July 29, 1994, Pro-Line filed an answer and counterclaim, seeking declaratory judgment of invalidity, unenforceability, and non-infringement of the patents. This case is before the court on consent of the parties.

Pro-Line now seeks summary judgment in its favor, arguing, in four separate motions, that Johnson Products' patents are invalid or alternatively, that Pro-Line has not infringed them. Resolution of these motions depends, in large part, on construction of the language of the claims in these patents based on the evidence heard by this court in a *Markman* hearing on March 17 and 18, 1998. See *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). For the reasons discussed below, the court concludes that Pro-Line has not demonstrated the absence of disputed factual issues. Accordingly, all four motions are denied.

*FACTUAL BACKGROUND*
A. Ethnic Consumer Market

Johnson Products [FN1] and Pro-Line [FN2] are competitors in the business of providing hair care and skin care products designed for the specialized needs of African-Americans, a business known as the ethnic consumer market. (Complaint ¶ ¶ 6-7.) Johnson Products formulates, manufactures, advertises, markets, and sells hair care and skin care products, cosmetics, and related goods intended for African-Americans. (Pro-Line's 12(M) Statement of Non-Infringement of the '572 Patent (hereinafter "Pro-Line's 12(M) of '572 Non-Infringement") ¶ 6.) Pro-Line is similarly involved in manufacturing and marketing hair care products for African-Americans. (*Id.* ¶ 7.)

> FN1. Johnson Products is a Florida corporation having its principal place of business at 8522 South Lafayette Avenue, Chicago, Illinois 60620. (Complaint ¶ 1.)

> FN2. Pro-Line is a Texas corporation having its principal place of business in Dallas, Texas 75212. (Answer ¶ 3.)

One of the most popular items on the ethnic consumer market is the hair relaxer or hair straightener, which relaxes and straightens curly or kinky hair. (Johnson Products' Statement of Additional Facts of Non-Infringement of the '572 patent (hereinafter "Johnson Products' 12(N)(3)(b) of '572 Non-Infringement") ¶ 3.) Like many other industries, the ethnic hair care market has made marked developments and advancements over the past century. An early version of hair relaxing involved use of a hot metal comb that was heated over a stove and combed through the hair to straighten it. (*Id.* ¶ 4.) The heat was so intense that users applied a petroleum jelly, like Vaseline, to their scalps to prevent burning. (*Id.*)

In 1958, Johnson Products offered the first chemical hair relaxer. (*Id.* ¶ 4.) The product, called "Ultra Sheen," contained lye or sodium hydroxide. It was used by hair care professionals who would first apply petroleum jelly to the customer's scalp to prevent burning and then apply the lye-based relaxer.

**\*2** The next step was development of a relaxer with

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Page 14

Case 1:06-cv-00041-JJF    Document 38-19    Filed 01/23/2006    Page 12 of 12

Not Reported in F.Supp.2d                                                                                                    Page 2
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
(Cite as: 1998 WL 699024 (N.D.Ill.))

"no base," meaning that the petroleum jelly was built into the relaxer formula. In 1971, that type of "no-base" lye or sodium hydroxide hair relaxer became available on the retail market, allowing the general public to purchase relaxer kits directly from stores rather than relying solely on hairdressers for this service. ('572 patent, col. 1, lns. 35-38.) Unfortunately, the lye or sodium hydroxide contained in the relaxers left the hair brittle and dry. ('572 patent, col. 1, lns. 48-50.) Demand arose for a hair product that would protect and condition the hair during the straightening process ('572 patent, col. 1, lns. 63-68)-a difficult task because sodium hydroxide inactivated the chemical properties of all known conditioners. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 7.) The challenge for the industry was to find a conditioner that could be mixed with sodium hydroxide while still maintaining its conditioning and protective features.

B. Johnson Products' '572 Patent and '822 Patent

Such a product was developed in 1977 by two researchers at Johnson Products, who filed an application for what became the '572 patent. In this patent, Johnson Products claimed a conditioner that conditioned the hair and protected the scalp even when used with a sodium hydroxide relaxing agent. (Id.) Johnson Products refers to the active ingredient in this conditioner as a "quaternary polymer," polydiallyldimethyl-ammonium chloride, known as DMDAAC. (Id.) In its motions for summary judgment of invalidity and non-infringement of the '572 patent, Pro-Line recognizes that the '572 patent requires a "quaternary polymer," but insists that the polymer called out by the patent is not one presently recognized as DMDAAC. (See Pro-Line's Reply Brief to Johnson Products' Brief in Response to Pro-Line's Motion for Summary Judgment on Non-Infringement of the '572 patent (hereinafter "Pro-Line's '572 Non-Infringement Reply"), at 3; Pro-Line's Summary Judgment Motion for Invalidity of the '572 Patent (hereinafter "Pro-Line's '572 Invalidity Motion"), at 4). As will be discussed below, the issue of whether the patent did, in fact, cover the composition called DMDAAC is probably the most disputed factual contention in this case.

The '572 patent explains that the "hair conditioning composition" under the patent could be applied "prior to the application of the relaxer, ... premixed with the relaxer and applied at the same time, or ... applied after application of the relaxer to the hair." ('572 patent, col. 3, line 65--col. 4, line 1.) The '572 patent contains three independent claims: claims 1, 9, and 10. Claims 1 and 9 address different versions of the hair conditioner combination while claim 10 goes to a combination of a hair conditioner and a straightening composition. Claim 1 of the '572 patent reads:

  A hair conditioning composition for use under highly alkaline conditions comprising an aqueous dispersion containing from about 1 to about 20 weight percent mineral oil, from about 1 to about 20 weight percent a fatty alcohol having 12 to 18 carbon atoms, from about 1 to about 15 weight percent of a non-ionic emulsifier, and from about 0.05 to about 20 weight percent of a quaternary polymer having recurring units of the formula:
  *3 [graphic depiction not included.]
Claim 9 reads:
  A hair conditioner composition for use under highly alkaline conditions comprising an aqueous dispersion containing about 5 weight percent of mineral oil, about 10 weight percent of cetyl alcohol, about 7 weight percent of Emulsifying Wax N.F., and about 4 weight percent of polydiallyldimethylammonium chloride.
Finally, claim 10 reads:
  A composition for waving or straightening hair comprising an aqueous dispersion containing from about 1 to about 20 weight percent of mineral oil, from about 1 to about 20 weight percent of a fatty alcohol having 12 to 18 carbon atoms, from about 1 to about 15 weight percent of a non-ionic emulsifier, and from about 0.05 to about 20 weight percent of a quaternary polymer having recurring units of the formula:
  [graphic depiction not included.]
  From about 10 to about 30 weight percent of petrolatum, from about 1 to about 10 weight percent of a normal liquid polyhydroxycompound, and from about 1 to about 3 weight percent of a watersoluble alkaline caustic material, the composition having a pH between 12 and 13.
On November 27, 1979, the U.S. Patent & Trademark Office granted the '572 patent. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 10.) Shortly after the grant of the '572 patent, Johnson Products introduced two new products containing the conditioning composition with the relaxer creme, "Ultra Sheen Precise" and "General Treatment." (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 25.)

The next area of development in the ethnic hair care industry was creating a product that would texturize and strengthen hair after the straightening process. Johnson Products filed its application for what became the '822 patent on October 22, 1991 as a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Page 15