Not Reported in F.Supp.2d                                                                 Page 9
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
(Cite as: 1998 WL 699024 (N.D.Ill.))

particular ingredients was a chemical that consisted of 50% DMDAAC and 50% acrylamide by weight. (Tr. at 139.) There was, however, no copolymer with those ingredients containing at least 50% by DMDAAC by mole fraction. (*Id.* at 140-44.) If the 50% was based on mole fraction rather than weight, as Pro-Line claims, Example IV would not be an embodiment of the claims of the '572 patent.

After evaluating the relevant evidence, the court finds that the ordinary meaning of "quaternary polymer" applies, as no limitation was made in the specification.

2. '822 Patent

a. "Being Stable When in an Aqueous Medium at a pH of at Least About 6.1"

The parties have identified two disputes concerning the language of the '822 patent. First, a disputed issue exists as to the meaning of the phrase "being stable when in an aqueous medium at a pH of at least about 6.1." Johnson Products argues that the language should be read literally to include any aqueous medium of a pH of 6.1 or more. (Johnson Products' *Markman* Brief, at 14.) Pro-Line claims that this phrase is limited by the prosecution history of the parent to the '822 patent, U.S. Patent 5,060,860 ("'860 patent"). (Pro-Line's *Markman* Brief, at 13.) Specifically, Pro-Line contends that claim 1 of the '822 patent that the aqueous medium would have a "pH of at least about 6.1" is unusable because claim 33 of the parent application was amended to limit the pH of the hair strengthening and texturing composition to the range of 8 to 11, thereby excluding Pro-Line's products from the patent's claims. (*Id.*)

*11 Pro-Line's argument confuses two independent facts. As noted by Johnson Products, whether the composition in the '860 patent has to be limited to a certain pH range is different from and independent of whether the composition in the '822 patent is "stable when in an aqueous medium at a pH of at least about 6.1." (Johnson Products' Pre-*Markman* Hearing Brief, at 16.) Moreover, the two claims that Pro-Line interprets-the rejected claim 33 of the parent application and the allowed claim 1 of the '822 patent-differ to such an extent that comparison is not appropriate. [FN12] In other words, the fact that one claim of the parent application was limited to a certain pH range does not impose such a limitation on a different claim in the later application.

> FN12. In revising the rejected claim 33 to become claim 1 of the '822 patent, Johnson Products specifically indicated that the composition of the latter claim was different:
> Original composition Claim No. 33 has been amended and rewritten to recite compositions which compositionally differ from those appearing in the claims of co-pending parent patent application Serial No. 95,397 now identified as U.S. Pat. No. 5,060,860.
> ('822 File History, at Tr. 238, Ex. 4 to Johnson Products' *Markman* Hearing Exhibits.)

The court concludes that the plain language of the '822 patent is not restricted by the limitations of the '860 patent.

b. "Texturing and Strengthening Composition"

The final dispute concerning interpretation of the '822 patent arises from the reference in claim 1 to an "aqueous hair texturing and strengthening composition." Johnson Products contends that the language should be read literally so that the composition need not simultaneously texturize and strengthen and need not be limited to a particular pH range. (Johnson Products' *Markman* Brief, at 14.) Pro-Line argues that at a minimum, all of the claims in the '822 patent should be limited to exclude any compositions that do not both texturize and strengthen alkaline relaxed hair. (Pro-Line's *Markman* Brief, at 11.) Moreover, Pro-Line argues that the patent should be limited to require simultaneous strengthening and texturizing of hair at a pH of from 8 to 11. (*Id.*) Thus, the phrase would not include compositions at a pH of 6.1, and the patent would be invalid.

The phrase "aqueous hair texturing and strengthening" appears in the claim preamble. Pro-Line relies on the claim preamble as a claim limitation, arguing that the patent only covers compositions that texturize and strengthen at a pH of 8 to 11. (Pro-Line's *Markman* Brief, at 11.) Nothing in the preamble, however, limits the application of the phrase "aqueous hair texturing and strengthening composition" to any particular pH range. Furthermore, nothing in the specification or the claim language indicates that the claim covers only compositions substantially above a pH of 6.1. Pro-

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Page 22

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)  
(Cite as: 1998 WL 699024 (N.D.Ill.))

Page 10

Line's additional support derives from its view that the '822 patent's inventor, Mr. Akhtar, intended the invention to simultaneously strengthen and texturize hair at a pH from 8 to 11. (Pro-Line's *Markman* Brief, at 12.) Pro-Line makes no attempt to explain the significance of that point beyond that single observation, and this court declines to draw any unwarranted references. Lastly, Pro-Line again points to the prosecution history of the '860 patent to argue for a limited pH range. As already determined, however, the relevant prosecution history of the '860 patent does not apply to the '572 patent.

*12 The plain language of the claim does appear to require the composition to texturize and strengthen. Unfortunately, neither party has offered any evidence that a composition at a pH of 6.1 either does or does not texturize and strengthen. For example, assuming arguendo that a composition at a pH of 6.1 could not possibly texturize and strengthen hair, that composition would almost certainly not be covered by the patent.

In light of the presented evidence, however, the court concludes that the plain meaning of the phrase imposes no limitations regarding the pH range.

For the reasons discussed above, this court finds that the claims for the '572 and '822 patents should be interpreted as follows:

1. "Hair conditioning composition" refers to any part of the hair relaxer system that conditions the hair, not only to a separately bottled conditioner.

2. A chemist of ordinary skill in the art in 1977 would have understood "recurring units of the formula" depicted in the patent to be a graphic depiction of the DMDAAC compound; that chemists in the cosmetic industry now know DMDAAC has a five-member ring structure does not alter this conclusion.

3. The ordinary meaning of "quaternary polymer" applies and includes chemicals such as Polyquaternium-22 and Polyquaternium-39, the ingredients in Pro-Line's products.

4. The prosecution history of the '860 patent does not operate to limit the meaning of the phrase "being stable when in an aqueous medium at a pH of at least about 6.1."

5. The '822 patent should be limited to include compositions that texturize and strengthen alkaline relaxed hair, but not necessarily only those at a pH of 8 to 11.

B. Motions for Summary Judgment

Pro-Line has moved for summary judgment on the grounds of invalidity of the '572 patent, non-infringement of the '572 patent, invalidity of the '822 patent, and non-infringement of the '822 patent. The court addresses each motion separately, relying heavily on the claim construction set forth above.

1. Standard of Review

Summary judgment in a patent case, as in any other type of case, is appropriate when there are no genuine issues of facts and the moving party is entitled to judgment as a matter of law. *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH*, 139 F.3d 877, 880 (Fed.Cir.1998). To determine whether genuine issues of material fact exist, the court will look to pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980 (Fed.Cir.1997). All evidence and inferences are viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985); *Monarch Knitting*, 139 F.3d at 880 (citation omitted). To do so, the moving party need not produce evidence demonstrating the absence of a genuine issue of material fact, but must show the absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once the moving party supports the motion as provided by Fed. R. Civ. P. 56(c), the party opposing the motion must come forward with evidence directed to specific facts showing that there is a genuine issue for trial. *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1548 (Fed.Cir.1988), Fed. R. Civ. P. 56(e). Mere denials or conclusory statements are not sufficient. *Id.*

2. Non-Infringement of the '572 Patent

*13 Because patent infringement cases involve a fact-intensive inquiry, the Federal Circuit has cautioned that summary judgment on that issue must be approached with great care by the district court. *See, e.g., SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed.Cir.1985). Nonetheless,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C  
Page 23

Not Reported in F.Supp.2d                                                                                                Page 11
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

"[w]here the determination of infringement turns solely on the legal question of the proper construction of the claims, summary judgment is appropriate." *Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, No. 98-1079, 1998 WL 469887, at *2 (Fed.Cir. Aug. 13, 1998).

Johnson Products alleges that Pro-Line infringes the '572 patent in four different ways:
(1) direct infringement by manufacturing, selling, and offering for sale creme relaxers for the "Soft & Beautiful" and "Just for Me" relaxer kits that literally infringe the '572 patent;
(2) direct infringement by manufacturing, selling, and offering for sale creme relaxers that infringe the '572 patent under the doctrine of equivalents;
(3) inducement of infringement by consumers through instructions to mix the pretreatment conditioner and the creme relaxer; and
(4) contributing to the infringement of the '572 patent by manufacturing different components of the relaxer kit that, when mixed on the consumers' heads, infringe.
(Johnson Products' Brief in Response to Pro-Line's Motions for Summary Judgment (hereinafter "Johnson Products' Response"), at 8.) The court addresses each argument in turn.

a. Literal Infringement

Analysis of a literal patent infringement claim involves two steps: (1) the proper construction of the asserted claim and (2) a determination as to whether the accused method or product infringes the asserted claim as properly construed. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed.Cir.1996). Claim construction proceeds as a matter of law. *Markman*, 517 U.S. at 372. In contrast, the comparison of properly interpreted claims to the accused structure is a question of fact. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed.Cir.1996). To infringe, the accused device must embody exactly each claim limitation or its equivalent. *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 876 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994).

Pro-Line claims that its "Soft & Beautiful" and "Just for Me" products do not literally infringe claim 1 of the '572 patent because the pre-relaxer treatment products lack the following elements: (1) about 1 to about 20 weight percent of mineral oil, (2) about 1 to about 20 weight percent of a fatty alcohol, and (3) a quaternary polymer having a six-member piperidine recurring unit of the formula [pictured in claim 1]. [FN13] (Pro-Line's Summary Judgment Motion on Non-Infringement of the '572 Patent (hereinafter "Pro-Line's '572 Non-Infringement Motion"), at 9.) Pro-Line further argues that there is no direct infringement of claim 9 of the '572 patent because the two relaxer kits do not contain a 5 weight percent of mineral oil and a 10 weight percent of cetyl alcohol. [FN14] (*Id.* at 10.) Lastly, Pro-Line contends that its products cannot directly infringe claim 10 of the '572 patent because its products do not have a 0.05 to 20 weight percent of a quaternary polymer having recurring six-member piperidine rings of the formula. [FN15] (*Id.*) Instead, Pro-Line insists that both of the products contain polyampholyte terpolymer Polyquaternium-39 having recurring units of acrylamide, a five-member pyrrolidone ring, and acrylic acid-elements not found in the '572 patent. (*Id.* at 11.)

FN13. Pro-Line also contends that the issuance of a patent to Pro-Line on the accused products where the '572 patent was listed as prior art proves that Pro-Line's products do not infringe the '572 patent. (Pro-Line's '572 Non-Infringement Motion, at 18-19.) As the Federal Circuit has recognized, however, "[t]he grant of a separate patent does not automatically avoid infringement, either literal or by equivalency." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191 (Fed.Cir.1996). The fact of separate patentability is one relevant factor in the factual determination of whether the claims cover the accused product, *id.* at 1192, but the issuance of a patent to Pro-Line does not establish non-infringement of the '572 patent as a matter of law.

FN14. Johnson Products failed to address Pro-Line's summary judgment motion with respect to claim 9 of the '572 patent. The court, therefore, concludes there are no disputes of fact on that claim and that Pro-Line is entitled to summary judgment on that issue.

FN15. Johnson Products, however, does not appear to allege direct infringement of the '572 patent with respect to claim 10. Accordingly, the court's discussion of direct infringement is limited to claim 1 of the '572

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Page 24

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

patent.

*14 In its response brief, Johnson Products called Pro-Line's discussion of why its Pre-Relaxer Treatment standing alone does not infringe in the three ways "entirely irrelevant" because the Creme Relaxer kits as a whole infringe the '572 patent. (Johnson Products' Response, at 9.) Pro-Line insists that the Creme Relaxer kits also do not infringe because the two products lack a quaternary polymer having a six-member piperidine recurring unit of the formula. (Pro-Line's Reply Brief to Johnson Products' Brief in Response to Pro-Line's Motion for Summary Judgment on Non-Infringement of the '572 Patent (hereinafter "Pro-Line's '572 Non-Infringement Reply"), at 16.) This last argument, however, rests on Pro-Line's reading of claim 1 of the '572 patent as not including the quaternary polymers in "Soft & Beautiful" and "Just for Me," namely Polyquaternium-39 and Polyquaternium-22-a reading this court has rejected. To the contrary, as discussed above, this court concludes from the evidence presented at the *Markman* hearing that Polyquaternium-39 and Polyquaternium-22 are both quaternary polymers covered by the patent. Accordingly, Pro-Line's use of Polyquaternium-39 and Polyquaternium-22 do not defeat Johnson Products' infringement claim.

Johnson Products points out that Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits both contain about 1 to about 20 percent mineral oil, about 1 to about 20 percent fatty alcohol, about 1 to about 15 percent non-ionic emulsifier, and about 0.05 to 20 percent quaternary polymer. (Johnson Products' Response, at 10-16 .) As support, Johnson Products points to the ingredient labels for "Soft & Beautiful" and "Just for Me," which list mineral oil, fatty alcohol, non-ionic emulsifier, and quaternary polymers. ("Soft & Beautiful" and "Just for Me" Ingredient Labels, Exs. 13 & 14 to Johnson Products' Response.) In addition, Johnson Products alleges that the Ingredient Weighing Records [FN12] for the Creme Relaxers used in the kits indicate that all of the disputed chemical ingredients are, in fact, found in both "Soft & Beautiful" and "Just for Me." [FN13] (Ingredient Weighing Records, Exs. 15 & 16 to Johnson Products' Response.) Dr. Wolfram, Johnson Products' expert witness, also explained that, in his opinion, the Creme Relaxers for the "Soft & Beautiful" and "Just for Me" hair relaxer kits contain each element of claim 1 of the '572 patent. (Wolfram Aff. ¶ 30, Ex. 1 to Johnson Products' Response.) Beyond challenging the status of Polyquaternium-22 and Polyquaternium-39 as quaternary polymers, Pro-Line has not rebutted the evidence.

> FN12. Ingredient Weighing Records show the ingredient as well as the weight (in pounds) for each ingredient in the product, which can be converted into a weight percent. (Johnson Products' Response, at 12.)

> FN13. Specifically, the Ingredient Weighing Records show that mineral oil makes up 11.02% of the "Just for Me" Creme Relaxer and 10.8% of the "Soft & Beautiful" Creme Relaxer, fatty alcohol makes up 4% of the "Just for Me" Creme Relaxer and 5.28% of the "Soft & Beautiful" Creme Relaxer, and non-ionic emulsifier makes up 8% of the "Just for Me" Creme Relaxer and 7.85% of the "Soft & Beautiful" Creme Relaxer. Thus, all of the disputed ingredients in claim 1 of the '572 patent are found in Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits.

In this court's view, the evidence creates a dispute of material fact: whether Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits contain the elements listed in claim 1 of the '572 patent. Accordingly, Pro-Line's motion for summary judgment of non-infringement of the '572 patent is denied.

b. Doctrine of Equivalents

*15 Under the doctrine of equivalents, even if an accused product does not directly infringe a patent claim, the product may nevertheless infringe if there is an "equivalence" between the product and the claimed elements. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The essential inquiry is whether the accused product or process contain elements identical or equivalent to each claimed element of the patented invention. *Id.*

Pro-Line contends that its products do not infringe the '572 patent under the doctrine of equivalents on the basis that "Soft & Beautiful" and "Just for Me" do not contain the elements in claim 1 of the '572 patent-the same argument it made for summary judgment on the literal infringement claim. (Pro-Line's '572 Non-Infringement Motion, at 18.) As analyzed above, this court concludes there is a fact issue as to whether Pro-Line's products literally infringe Johnson Products' patents. The court thus declines to decide

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C
Page 25

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)  
(Cite as: 1998 WL 699024 (N.D.Ill.))

Page 13

whether infringement exists under the doctrine of equivalents.

c. Inducement of Infringement

In addition to its claims of literal infringement and infringement under the doctrine of equivalents, Johnson Products claims that Pro-Line is liable for having induced its customers to infringe, in violation of 35 U.S.C. § 271(b). Proof of such a claim requires a showing of (1) actual infringement by a third party and (2) that the inducer knew that direct infringement would occur. *Black & Decker, Inc. v. Catalina Lighting, Inc.*, 953 F.Supp. 134, 139 (E.D.Va.1997). In addition to the knowledge element, an inducement of infringement claim "requires that the defendant specifically intended that its sale or other challenged acts induce its customers to engage in the conduct that allegedly directly infringes." [FN14] *R2 Medical Syst., Inc. v. Katecho, Inc.*, 931 F.Supp. 1397, 1440 (N.D.Ill.1996) (citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed.Cir.1990)). Absent direct infringement by a third party, a defendant cannot be liable for induced infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); *Universal Elec., Inc. v. Zenith Elec. Corp.*, 846 F.Supp. 641, 644 (N.D.Ill.1994).

> FN14. Neither party addressed the intent issue in their briefs. Because the court concludes for other reasons that Johnson Products' inducement of infringement claim fails, the court need not address the intent issue further.

According to Johnson Products, Pro-Line induces infringement of claims 1 and 10 of the '572 patent through its written instructions to the consumers of "Soft & Beautiful" and "Just for Me" to mix the Creme Relaxer with the Liquid Activator and then place the mixture on hair with the Pre-Relaxer Treatment. (Johnson Products' Response, at 25-26.) In other words, Johnson Products' inducement claim rests on its contention that when used as designed, the accused products literally infringe the '572 patent.

Generally speaking, the doctrines of actively inducing infringement and direct infringement are mutually exclusive when the actions are based on the same act. *See United States Fidelity & Guaranty Co. v. Star Tech., Inc.*, 935 F.Supp. 1110, 1115 (D.Or.1996); *Picker Int'l Inc. v. Varian Assoc., Inc.*, 661 F.Supp. 347, 350 (N.D.Ohio 1987). In explaining the rule, courts note that the act of encouraging someone to purchase a product is necessarily subsumed by the actual sale of that product. *United States Fidelity*, 935 F.Supp. at 1115. The only case allowing for simultaneous actions for direct infringement and inducement of infringement involved a situation where the direct infringement and inducement of infringement claims were based on two time periods, namely sales before and after issuance of the patent. *See Procter & Gamble Co. v. Nabisco Brands, Inc.*, 604 F.Supp. 1485, 1490 (D.Del.1985).

*16 Relying on these principles, Pro-Line argues that Johnson Products may not assert simultaneously claims of direct and induced infringement. [FN15] In support, Pro-Line cites *Picker International*, where plaintiff alleged that defendant directly infringed its patent for a frosted glass x-ray tube by manufacturing, using, and selling the accused x-ray tubes and indirectly infringed the patent by inducing others to infringe by similar use and sales. 661 F.Supp. at 348. Noting that "[i]t is well settled that the doctrine of 'actively inducing infringement' ... is not available as a separate source of liability against one who is alleged to be direct infringer[,]" the court concluded that the theories were mutually exclusive. *Id.* at 351. Under the rationale of *Picker International*, Pro-Line urges that Johnson Products lacks standing to claim induced infringement because it also asserts a direct infringement claim. (Pro-Line's Motion of '572 Non-Infringement, at 19.) Johnson Products responds that *Picker International* is inapposite because Johnson Products bases its claim of direct infringement and its claim of inducement of infringement on two different acts: (1) direct infringement via making and selling the Creme Relaxer component of the relaxer kits and (2) inducement via instructing customers to mix the Pro-Relaxer Treatment, the Creme Relaxer, and the Liquid Activator. (Johnson Products' Response, at 26.) Johnson Products further adds that it is entitled to set forth alternative or hypothetical statements of a claim under Fed. R. Civ. P. 8(e)(2).

> FN15. This defense is available to Pro-Line only with respect to Johnson Products claims of inducement concerning claim 1 of the '572 patent; Johnson Products does not allege that Pro-Line infringed claim 10 of the '572 patent.

After careful consideration, this court finds Johnson Products' argument that its two claims are based on two different acts unpersuasive. Pro-Line's alleged inducement of its customers can only fairly be

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)  
(Cite as: 1998 WL 699024 (N.D.Ill.))

Page 14

understood as part of Johnson Products' direct infringement claim against Pro-Line for manufacture and sale of the hair relaxer kits. As the courts recognize, manufacturers inevitably encourage their customers to use their products as instructed whenever they sell the product. See United States Fidelity, 935 F.Supp. at 1115. Nor would a manufacturer produce an item that was not intended ultimately for sale to customers. In short, the act of manufacturing and selling a product, on the one hand, and encouraging its use by customers, on the other, are really one and the same act. Accordingly, the rationale of Picker International precludes Johnson Products' claim of inducement of infringement with respect to claim 1.

Pro-Line's remaining argument for summary judgment on the induced infringement claim need not detain the court. Specifically, as before, Pro-Line claims that its hair relaxer kits do not infringe claim 1 of the '572 patent because they do not combine mineral oil, a fatty alcohol, and a quaternary polymer having a six-member piperidine recurring unit. (Pro-Line's Motion of '572 Non-Infringement, at 19.) Pro-Line also asserts that there is no infringement of claim 10 of the '572 patent because its products do not have a quaternary polymer containing a six-member piperidine recurring unit. (Id.)

*17 As discussed above, Johnson Products has identified a genuine issue of material fact as to whether the "Soft & Beautiful" and "Just for Me" hair relaxer kits contain every limitation in claim 1. As for claim 10 of the '572 patent, Pro-Line's sole basis for seeking summary judgment on the induced infringement claim consists of the declaration of Pro-Line's CEO and founder, Comer Cottrell, that no customer of Pro-Line's makes, uses, or sells a composition for straightening hair having a quaternary polymer containing a six-member piperidine recurring unit of the formula claimed. (See Pro-Line's Motion for '572 Non-Infringement, at 19.) Conversely, Johnson Products presented evidence that all eight limitations of claim 10 are found in the Creme Relaxers. (Johnson Products' Response, at 27-29.) This was based on the ingredients listed on the "Soft & Beautiful" and "Just for Me" labels, the Ingredient Weighing Records, and the expert testimony of Dr. Wolfram. (Id.) Johnson Products has raised a factual dispute over whether Pro-Line's product, when mixed together by the customer, infringe claim 10 in which the written instructions may induce infringement.

Because a genuine issue of material fact remains as to whether Pro-Line's instructions to its customers induce infringement of claim 10 of the '572 patent, summary judgment is inappropriate as to claim 10. Further, Picker International does not estop Johnson Products' claim that Pro-Line induces infringement of claim 10 of the '572 patent because Johnson Products has not asserted a direct infringement claim regarding claim 1. As for claim 1 of the '572 patent, though a genuine issue of material fact exists as to Pro-Line's direct infringement of claim 1, the rationale of Picker International precludes a claim of inducement of infringement. Therefore, summary judgment is granted on inducement of infringement of claim 1 of the '572 element.

d. Contributory Infringement

Lastly, Johnson Products argues that Pro-Line is liable under the doctrine of contributory infringement.

35 U.S.C. § 271(c) provides in pertinent part:
> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in a patented process, constituting a material part of the invention, knowing the same to be made or especially adapted for use in an infringement of such patent, and not a staple article or commodity suitable for substantial noninfringing use, shall be liable as a contributory infringer.
>
> To establish liability under this section, a plaintiff must show that defendant has sold a component of a patented device knowing that the component will be made or adapted for use in the infringement of a patent. Mid-America Bldg. Prods. Corp. v. Richwood Bldg. Prods., Inc., 978 F.Supp. 708, 712 (E.D.Mich.1996). As with inducement of infringement, there must be a showing of direct infringement by a third party before a claim of contributory infringement can be made. Aro, 365 U.S. at 341; Universal Electronics, 846 F.Supp. at 644. The unauthorized use of a patented item, even by a consumer, constitutes a violation of the patent. Universal Electronics, 846 F.Supp. at 645. Nevertheless, if the accused product is a "staple article or commodity of commerce suitable for substantial noninfringing use," contributory infringement does not exist. 35 U.S.C. § 271(c). To determine whether a product is a staple of commerce, the court must look at the entire device and not just the part capable of practicing the claims of the patent at issue. Universal Electronics, 846 F.Supp. at 651.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit C  
Page 27