Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110    Page 4 of 6

Case 1:06-cv-00041-JJF    Document 38-24    Filed 01/23/2006    Page 1 of 12

parties are incorporated in Delaware and should reasonably expect to litigate in the forum; (3) there is nothing on the record to suggest that any potential third-party fact witnesses are unwilling or unable to testify before the court; (4) discovery will not be unduly hampered by litigating the case in Delaware; (5) no documents will be unavailable **[*5]** for trial in Delaware; and (6) Florida does not have a greater interest in adjudicating this case because this is a patent infringement action where the parties market their products nationally. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 207 (D. Del. 1998).* Thus, in light of these considerations, the court cannot conclude that the 'balance of convenience' tips strongly in favor of transfer.

## B. Motion for a More Definite Statement

Icad also moves for a more definitive statement pursuant to <u>Federal Rule of Civil Procedure 12(e)</u>. In making its argument, Icad points out that the First Amended Complaint is only ten paragraphs long. Paragraph eight alleges that the defendants "have directly and contributorily infringed, and have induced others to infringe one or more claims" of the patents-in-suit "by making, using, selling, and/or offering to sell Computer-Aided Detection systems, which are identified by the trade name 'MammoReader.'" To cure this alleged defect, Icad asks that R2 be required to file another amended complaint that "identifies, for each of the three patents-in-suit, the claims at issue and states, for each defendant, whether the alleged **[*6]** infringement of each such claim is direct, contributory, and/or inducement to infringe." Because the court does not believe that the complaint is "so vague or ambiguous" that Icad could not be "reasonably . . . required to frame a responsive pleading" to it, the court will deny Icad's motion.

*HN4*⊕The decision of whether to grant or deny Icad's motion rests within the sound discretion of the district court. *See Scriptgen Pharmaceuticals, Inc. v. 3-Dimensional Pharmaceuticals, Inc.*, No. 98-583-GMS, slip. op. at 3 (D. Del. Feb. 22, 1999) (citing 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1377, at 600-601 & n.3 (2d ed. 1990)). Courts generally view motions for a more definitive statement with disfavor. *See <u>Frazier v. Southeastern Pennsylvania Transp. Auth., 868 F. Supp. 757, 763 (E.D. Pa. 1994)</u>; <u>Geir v. Educational Serv. Unit No. 16, 144 F.R.D. 680, 685 (D. Neb. 1992).</u>* They do so because the Federal Rules of Civil Procedure require that a pleading contain only a "short and plain statement of the claim showing that the party is entitled to relief." <u>FED. R. CIV. P. 8</u>. As a result, a party may only move for a more definitive **[*7]** statement in an effort to remedy an unintelligible pleading. *See <u>In re Health Mgmt., Inc. Sec. Litig., 970 F. Supp. 192, 207 (E.D.N.Y. 1997).</u>*

Furthermore, *HN5*⊕the Rule 8 standard does not change in an action for patent infringement. *See ,Scriptgen Pharmaceuticals, Inc.* 98-583-GMS, slip. op. at 3; *see also* <u>FED. R. CIV. P. 84</u>, Appendix of Forms, Form 16 (Complaint for Infringement of Patent). Indeed, it is apparent from the form patent infringement complaint that a complaint need only identify the patent, not the specific claims, being asserted. *See* <u>FED. R. CIV. P. 84</u>, Appendix of Forms, Form 16; *see also <u>Gen-Probe, Inc. v. Amoco Corp., Inc., 926 F. Supp. 948, 960 (S.D. Cal. 1996)</u>* (stating that "the Federal Rules do not require that the plaintiff plead with particularity the specific patent claims that have been infringed . . .").

Icad does not dispute that there is no requirement in the Federal Rules of Civil Procedure that R2 plead with the specificity Icad now requests. It nevertheless argues that the facts of this case are such that the court should exercise its discretion in Icad's favor. In essence, Icad argues that because there are three defendants in this **[*8]** case, and three patents with a possible eighty-two claims, the court should require a more stringent pleading standard. For the following reasons, the court disagrees.

First, it is not entirely clear that the defendants are, in fact, three "distinct entities." Although the complaint technically names three defendants, ISSI, ISSI Acquisition, and Icad, these

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110    Page 5 of 6

Case 1:06-cv-00041-JJF    Document 38-24    Filed 01/23/2006    Page 2 of 12

companies appear to be the same entities using different names. Indeed, Icad's CEO, Kip Speyer, explained that ISSI merged into Icad on June 28, 2002, and that ISSI Acquisition is merely a shell company that has "no staff and has had no operations than to facilitate the acquisition of ISSI" Speyer Decl., PP3-6. Moreover, the three defendants are represented by the same counsel. Thus, the court is not persuaded by Icad's argument that each of the three defendants will have to independently analyze the infringement claims. Nor is the court persuaded by the fact that there are a possible eighty-two claims in this action. *See Scriptgen*, 98-583-GMS, slip op. at 3 (citing *Thomson S.A. v. TimeWarner, Inc.*, No. 94-83 slip op. at 4 (D. Del. June 2, 1994) (Longobardi, C.J.) (reaching the same conclusion in a case involving four **[*9]** patents which contained a total of three hundred and twenty-two claims)).

Further, after reviewing R2's First Amended Complaint, the court concludes that it otherwise conforms to federal pleading requirements. In addition to setting forth an allegation of jurisdiction and identifying the patents-in-suit, the complaint plainly and succinctly states that the defendants are being sued for their alleged direct and contributory infringement and for having induced others to infringe one or more of the claims by "making, using, selling, and/or offering to sell Computer-Aided Detection systems." Therefore the court will deny Icad's motion.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

> 1. The Defendants' Motion to Transfer (D.I. 12) is DENIED.

> 2. The Defendants' Motion for a More Definite Statement (D.I. 12) is DENIED.

> 3. The Defendants shall file an Answer to the Plaintiffs' First Amended Complaint within twenty (20) days of the date of this order.

Dated: October 9, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

View: **Full** | Custom          ◀◀◀ **1 of 1** ▶▶▶     **FAST Print**   Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | *Shepardize®* | TOA

◆ R2 Tech. v. Intelligent Sys. Software, 2002 U.S. Dist. LEXIS 19110  (Copy w/ Cite)   Pages:   6

Service: **Get by LEXSEE®**
Citation: **2002 U.S.Dist. LEXIS 19110**
View: Full
Date/Time: Thursday, September 15, 2005 - 7:26 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110      Page 6 of 6

Case 1:06-cv-00041-JJF    Document 38-24    Filed 01/23/2006    Page 3 of 12

- Citation information available
* Click on any *Shepard's* signal to *Shepardize*® that case.

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Exhibit H
Page 66

Westlaw.

Not Reported in F.Supp.                                                      Page 1
Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878
**(Cite as: 1994 WL 382444 (D.Nev.))**

⊳

United States District Court, D. Nevada.
Steven P. SHEARING, Plaintiff,
v.
OPTICAL RADIATION CORPORATION,
Defendant.
Steven P. SHEARING, Plaintiff,
v.
STORZ OPHTHALMICS COMPANY, INC., Storz
Instrument Company, Defendants.
Steven P. SHEARING, Plaintiff,
v.
IOPTEX RESEARCH, INC., Defendant.
Steven P. SHEARING, Plaintiff,
v.
SURGIDEV CORPORATION, Defendant.
Steven P. SHEARING, Plaintiff,
v.
ALCON SURGICAL, INC., Defendant.
Steven P. SHEARING, Plaintiff,
v.
KABI PHARMACIA OPHTHALMICS, INC.,
Defendant.
Steven P. SHEARING, Plaintiff,
v.
DGR, INC., Isotechnics, Inc., Defendants.
Steven P. SHEARING, Plaintiff,
v.
ALLERGAN, INC., Defendant.
Steven P. SHEARING, Plaintiff,
v.
STARR SURGICAL COMPANY, Defendant.
Steven P. SHEARING, Plaintiff,
v.
INTRAOPTICS, INC., Chiron Corporation and
Chiron Intraoptics, Inc., Defendants.
Steven P. SHEARING, Plaintiff,
v.
EYE TECHNOLOGY, INC., Defendant.
Steven P. SHEARING, Plaintiff,
v.
The COOPER COMPANIES, INC., Defendant.
**Nos. CV-S-93-850-DWH(LRL), CV-S-93-859-
DWH(LRL) to CV-S-93-863-DWH(LRL), CV-S-
93-865-DWH(LRL) to CV-5-93-870-DWH(LRL).**

March 25, 1994.

ORDER

HAGEN, District Judge.

*1 The motions to dismiss of defendants Optical Radiation Corp., Storz Ophthalmic Co., Inc, Ioptex Research, Inc., Surgidev Corp., Alcon Surgical, Inc., Kabi Pharmicia Ophthalmics, DGR. Inc, Isotechbics, Inc., Allergan, Inc., Starr Surgical Company, Intraoptics, Inc., Chiron Corp., Chiron Intraoptics, Eye Technology Inc. and The Cooper Companies., Inc. were argued on March 24, 1994.

Because the charging allegations of each complaint attacked by each motion to dismiss are identical (save for number) to those of any other, all defendants joined in and relied upon the oral arguments presented by Storz Ophalmic Co., Inc., Allergan, Inc. and Alcon Surgical, Inc. The common charging allegations read as follows:
"Defendant has infringed and is now infringing Shearing Patent No. 4,159,546 within the United States including Nevada by:
(a) directing or jointly participating in implantation of Defendant's intraocular lenses according to a method covered by one or more claims of the Shearing patent;
(b) actively inducing others to infringe the Shearing patent by implanting Defendant's lenses; and
(c) making and selling Defendant's intraocular lenses for use in practicing a method covered by one or more claims of the Shearing patent, knowing the lenses to be especially made for use in infringing the Shearing patent."
(This, apart from number, is the text of either paragraph 6 or 7, as the case may be, of each complaint.)

Defendants say these allegations neither supply the short and plain statement of a claim showing that the pleader is entitled to relief (*see* Fed.R.Civ.P. 8(a)(2)), nor aver the requisite knowledge and intent of the tortfeasor (*see* Fed.R.Civ.P. 8(b)) nor state a claim upon which relief can be granted (*see* Fed.R.Civ.P. 12(b)(6)) nor provide to defendants notice of any factual basis for the infringement allegations sufficient to enable them to answer.

The tort of infringement, argue defendants, consists of violating all or combined portions of 35 U.S.C. § 271(a)-(c).

A violation of § 271(a), for example, is direct

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
Page 67

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878
**(Cite as: 1994 WL 382444 (D.Nev.))**

Page 2

infringement requiring, in this case, unauthorized use of Dr. Searing's patented method of implanting an intraocular lens in the posterior chamber of a patient's eye in cataract surgery.  Defendants, corporations all, complain that they are not told by the charging allegations what they have done to participate in the tortious implantation nor how they did it or could have done it.   Their business, they argue, is the manufacture and sale of a product (intraocular lenses) which can, but need not be, implanted by use of Dr. Shearing's method.    And, they point to *Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed.Cir.1993) for the unequivocal statement "that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."   Hence, none of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(a).

**\*2** Under § 271(b) one who actively induces infringement of a patent is liable as an infringer.   In order for that liability to arise, however, there must have been direct infringement by someone other than the inducer.   H.F. Schwartz, Patent Law and Practice (Federal Judicial Center 1988);  *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986). Nowhere in the complaint is this alleged.   Moreover, for this liability to arise it must be shown that the inducer knowingly and with specific intent encouraged that other's infringement. *Manville Sales Corp. v. Paramount Sys.* 917 F.2d 544, 553 (Fed.Cir.1990).     While intent and knowledge need only be averred generally, such must be averred.  *See DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.), *cert. denied,* 498 U.S. 941 (1990). ("[T]he complaint still must afford a basis for believing that plaintiffs could prove scienter."). None of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(b).

Just as with active inducement, liability for contributory infringement under § 271(c) cannot arise unless there is direct infringement. *Dana Corp. v. American Precision Co.,* 827 F.2d 755 (Fed.Cir.1987).   None of the complaints allege this. And they also omit the final requirement of § 271(c), that of alleging the item sold is not suitable for substantial noninfringing use.  *Id.*   None of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(c).

Shearing urges that his complaint tracks Form 16, Appendix of Forms (to Fed.R.Civ.P.), and by dint of Rule 84 is sufficient.   But the example given by Form 16 (a § 271(a) infringement) was not followed

by Shearing in at least two important details:  neither the patented invention nor the (infringing) person making selling or using it is identified.  Form 16, ¶ 3. And in any case, Form 16 does not contain the necessary allegations for § 271(b) and (c) liability.

Pointing to *Conley v. Gibson,* 355 U.S. 41, 47, (1957), Shearing also urges that his complaint need not set out in detail the facts upon which he bases his claim.   But a closer reading of *Conley* tells one that Fed.R.Civ.P. 8(a)(2) requires the complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

IT IS HEREBY ORDERED that all of these complaints are DISMISSED, without prejudice, for failure to state a claim upon which relief can be granted.

Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Exhibit I
Page 68

Westlaw.

Slip Copy                                                                                                                                     Page 1
Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735
**(Cite as: 2005 WL 678855 (D.Del.))**

**Motions, Pleadings and Filings**


United States District Court,
D. Delaware.
SYNGENTA SEEDS, INC., Plaintiff,
v.
MONSANTO COMPANY and Monsanto
Technology LLC, Defendants.
**No. Civ. 04-908-SLR.**


March 24, 2005.
John W. Shaw, and Karen E. Keller, of Young
Conaway Stargatt & Taylor, L.L.P., Wilmington,
Delaware; Steven C. Sunshine, and Heather Lamberg
Kafele, of Shearman & Sterling, L.L.P., Washington,
District of Columbia; Richard F. Schwed, and
Thomas A. McGrath III, of Shearman & Sterling,
L.L.P., New York, New York, for Plaintiff.


Richard L. Horwitz, of Potter Anderson & Corroon
L.L.P., Wilmington, Delaware; Peter E. Moll, of
Howrey Simon Arnold & White, Washington,
District of Columbia; Susan Knoll, of Howrey Simon
Arnold & White, Houston, Texas; Kenneth A.
Letzler, of Arnold & Porter, Washington, District of
Columbia, for Defendants.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 On July 28, 2004, plaintiff Syngenta Seeds, Inc.
sued defendants Monsanto Co. and Monsanto
Technology LLC (collectively "defendants") alleging
"improper and illegal monopolization and attempted
monopolization in the supply chain for biotechnology
seed traits used by farmers throughout the United
States." (D.I.1). Presently before the court is
defendants' motion to dismiss plaintiff's complaint or,
in the alternative, to consolidate the present action
with a patent infringement suit. (D.I.10) For the
reasons set forth below, the court denies defendants'
motion to dismiss but grants defendants' motion to
consolidate.

II. BACKGROUND

Through the use of biotechnology, it is possible to
introduce new genetic characteristics, or traits, into
seeds in order to add desirable characteristics to
crops. (D.I. 8 at 2) For example, biotechnology seed
traits permit farmers to grow corn or soybeans
tolerant to a leading non-selective herbicide,
glyphosate. (*Id.*) This glyphosate-tolerant trait allows
growers to spray glyphosate herbicide over the entire
crop and kill all weeds, without risking any damage
to the corn or soybean crop. (*Id.*) Other
biotechnology seed traits permit farmers to plant corn
that is resistant to certain pervasive insects, such as
corn rootworm and the European corn borer. (*Id.*)
Plaintiff and defendants are major suppliers of
biotechnology traits and seeds. (*Id.* at 6)

On May 12, 2004, plaintiff's affiliate announced that
it had acquired intellectual property rights to "GA21,"
a glyphosate-resistant corn trait. (D.I.8 at 4; D.I. 11 at
3) Plaintiff's affiliate also announced its intent to
acquire the corn and soybean seed businesses of
Garst Seeds and the Golden Harvest Group. (*Id.*)
That same day, defendants filed Civil Action Number
04- 305 (the "Shah Litigation"), alleging
infringement of U.S. Patent No. 4,940,835 ("the '835
patent"), entitled "Glyphosate-Resistant Plants."

On July 28, 2004, plaintiff sued defendants, alleging
that defendants' conduct in the corn trait and seed
market violates Section 2 of the Sherman Act (the
"Antitrust Litigation"). (D.I.1) Plaintiff filed an
amended complaint on September 14, 2004. (D.I.8)
The amended complaint alleges that defendants have
willfully maintained monopolies in: (1) the
glyphosate-tolerant corn trait market (*Id.* at 36-37);
(2) the European corn borer trait market (*id.* at 37-
38); and (3) the foundation corn seed market (*id.* at
38-39).

III. STANDARD OF REVIEW

A counterclaim is compulsory "if it arises out of the
transaction or occurrence that is the subject matter of
the opposing party's claim and does not require for its
adjudication the presence of third parties of whom
the court cannot acquire jurisdiction." Fed.R.Civ.P.
13(a). "A compulsory counterclaim not raised in the
first action is barred in subsequent litigation." *Bristol
Farmers Mkt. and Auction Co. v. Arlen Realty &
Dev. Corp.,* 589 F.2d 1214, 1220 (3d Cir.1978). As
this court noted in *Metallgesellschaft AG v. Foster*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735
**(Cite as: 2005 WL 678855 (D.Del.))**

*Wheeler Energy Corp.,* 143 F.R.D. 553, 558 (D.Del.1992), the United States Court of Appeals for the Third Circuit has embraced a fairly liberal interpretation of the "transaction or occurrence" standard, establishing as "the operative question in determining if a claim is a compulsory counterclaim ... [is] whether [the counterclaim] bears a logical relationship to an opposing party's claim." A counterclaim is logically related to the opposing party's claim "[w]here multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties ." *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961). In determining whether a "logical relationship" exists between an opposing party's claim and a counterclaim, the court will analyze several factors: (1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; (2) Would *res judicata* bar plaintiff's subsequent suit absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? *Metallgesellschaft,* 143 F.R.D. at 558.

*2 Pursuant to Fed.R.Civ.P. 42(a), district courts have the authority to consolidate "actions involving a common question of law or fact ... pending before the court." Decisions to consolidate cases are at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. *See United States v. Dentsply Int'l, Inc.,* 190 F.R .D. 140, 142-43 (D.Del.1999). Under Fed.R.Civ.P. 42(a), "a district court [has] broad power ... to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc.,* 339 F.2d 673 (3d Cir.1964).

## IV. DISCUSSION

Plaintiff's Antitrust Litigation does not arise from the same transaction or occurrence that is the subject matter of defendants' Shah Litigation. The Antitrust Litigation arises from defendants' allegedly anticompetitive conduct. The Shah Litigation arises from plaintiff's alleged infringement of the '835 patent. Because the Antitrust Litigation arises from defendants' conduct, and the Shah Litigation arises from plaintiff's conduct, the two actions could not arise from the same transaction or occurrence.

Furthermore, the Antitrust Litigation presents distinct factual issues from the Shah Litigation. In the Antitrust Litigation, defendants are alleged to have monopolies in the glyphosate-tolerant trait market, the European corn borer trait market, and the foundation corn seed market. (D.I. 8 at 36-39) More specifically defendants are alleged to have: (1) bundled commercial incentives across several products sold to corn growers to create a barrier to plaintiff and other competitors *(id. at 24, 28)*; (2) enforced exclusive dealing contracts to prevent plaintiff or other competitors from entering markets *(id. at 21-23)*; (3) filed the "baseless" Shah Litigation against plaintiff *(id. at 16-17)*; (4) filed separate "baseless" patent case in Illinois concerning two other glyphosate-tolerant trait patents *(id. at 17-18)*; (5) misrepresented plaintiff's ability to commercialize glyphosate-tolerant traits to discourage seed companies from dealing with plaintiff *(id. at 18)*; (6) demanded destruction of all GA21 production to impair plaintiff's entry into the glyphosate-tolerant traits market *(id. at 19-21)*; (7) intimidated seed companies not to do business with plaintiff *(id. at 22-23)*; and (8) denied plaintiff access to foundation seeds and pressured foundation seed companies not to deal with plaintiff *(id. at 25).* While several of these allegations are specific to the glyphosate-resistant seed trait market, most of the allegations are broader. In contrast, the Shah Litigation only involves infringement of a patent relating to glyphosate-resistant plants. As a result, the Antitrust Litigation presents different factual issues than the Shah Litigation.

The Antitrust Litigation also presents legal issues which are different from those of the Shah Litigation. The Shah Litigation will focus on patent issues such as construction of patent claims, whether defendants are estopped from asserting the '835 patent based on representations made in prior litigations, whether the '835 patent is valid, and whether plaintiff infringes the '835 patent. The Antitrust Litigation will focus on typical antitrust issues such as whether defendants are monopolists and whether defendants engaged in anticompetitive conduct. Thus, the legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct. [FN1]

> FN1. The different legal issues presented by the Antitrust Litigation and the Shah Litigation will require presentation of different evidence. The Antitrust Litigation will require examination of, among other things: defendants' contracts with seed companies, defendants' incentive program, alleged threats to companies, and relevant product and geographic markets. The Shah Litigation will not consider any of this

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3
Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735
**(Cite as: 2005 WL 678855 (D.Del.))**

evidence and will instead focus on the '835 patent.

Defendant does not cite, and the court is unable to find, any precedent suggesting that resolution of defendants' Shah Litigation would create a *res judicata* bar on plaintiff's Antitrust Litigation. Consequently, this is yet another factor suggesting that the claims underlying plaintiff's Antitrust Litigation are not compulsory counterclaims of defendants' Shah Litigation.

**\*3** The reasoning of *Rohm & Haas Co. v. Brotech Corp., 770 F.Supp. 928 (D.Del.1991)*, does not suggest that the claims of plaintiff's Antitrust Litigation should have been a compulsory counterclaim of the Shah litigation. In *Rohm*, Rohm sued the Brotech, alleging infringement of four patents ("the Delaware Litigation"). Brotech then filed suit in Pennsylvania, alleging Rohm engaged in anticompetitive behavior in the prosecution and enforcement of ten patents ("the Pennsylvania Litigation"), including the four patents in the Delaware Litigation. *Id.* The *Rohm* court found that "the later filed antitrust and fraud claims alleging fraud on the [Patent and Trademark Office], are logically related to the patent claims at issue in the earlier filed suit." *Id.* at 933. Brotech's antitrust allegations were based solely on Rohm's actions in obtaining and enforcing the patents in suit in the Delaware Litigation. Unlike the facts as examined in *Rohm*, plaintiff's antitrust allegations arise from a broader range of defendants' actions and are not limited to defendants' enforcement of the '835 patent. Consequently, *Rohm* is not instructive in the present matter.

Nevertheless, the court does find that the Shah Litigation and the Antitrust Litigation do present minimal factual and legal overlap. Furthermore, the court finds that consolidating the Shah Litigation and the Antitrust Litigation will be more efficient than managing the cases separately. The court does not perceive any expense or fairness issues which would marshal against consolidating the two litigations. Consequently, the court exercises its broad power to consolidate causes of action to consolidate the Shah Litigation and the Antitrust Litigation.

## V. CONCLUSION

For the reasons set forth above, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate. An appropriate order shall issue.

### ORDER

At Wilmington this 24th day of March, 2005, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss (D.I.10) plaintiff's complaint is denied.

2. Defendants' motion to consolidate (D.I.10) the present action (Civ. No. 04- 908-SLR) with Civ. No. 04-305-SLR is granted.

3. No further filings shall be made under the above captioned matter. Instead, all future filings shall be made in Civ. No. 04-305-SLR.

Slip Copy, 2005 WL 678855 (D.Del.), 2005-1 Trade Cases P 74,735

**Motions, Pleadings and Filings (Back to top)**

•                1:04cv00908              (Docket) (Jul. 28, 2004)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

 **LexisNexis**®

**FOCUS™** Terms                                     Search Within  All Documents        **Go** →

View: Cite | **Full** | Custom                ◄◄◄ **1** of 2 ►**NEXT**►        **FAST Print**   Print | [
More Like This | More Like Selected Text | *Shepardize*® | TOA
🛈 Upjohn Co. v. Syntro Corp., 14 U.S.P.Q.2D (BNA) 1469  (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **14 U.S.P.Q.2d 1469**

↳Select for FOCUS™ or Delivery
☐

*1990 U.S. Dist. LEXIS 11512, *; 14 U.S.P.Q.2D (BNA) 1469*

THE UPJOHN COMPANY, Plaintiff, v. SYNTRO CORPORATION, Defendant

Civil Action No. 89-107 - JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1990 U.S. Dist. LEXIS 11512; 14 U.S.P.Q.2D (BNA) 1469

March 9, 1990

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff, a manufacturer of a patented vaccine for animals, sued defendant, a Delaware corporation, in the United States District Court for the District of Delaware, alleging patent infringement by defendant and its subsidiary.

**OVERVIEW:** Defendant's subsidiary manufactured a vaccine for animals that was similar to plaintiff's patented product. Plaintiff sued defendant, alleging patent infringement by defendant and its subsidiary. The court granted partial summary judgment to defendant, ruling that defendant did not use or sell the product and that it had not disregarded the corporate entity. The court denied summary judgment on the issue of inducement to infringe the patent, holding that a direct infringer need not be joined as a party to a suit against a contributory infringer.

**OUTCOME:** The court granted partial summary judgment to defendant, ruling that defendant did not use or sell the product and that it had not disregarded the corporate entity. The court denied summary judgment on the issue of inducement to infringe the patent.

**CORE TERMS:** infringement, subsidiary, patent, inducement, vaccine, infringer, summary judgment, infringing, pseudorabies, virus, contributory, oral argument, manufacturing, pre-issuance, consolidated, patent infringement, corporate entities, alter ego, inducing, infringe, animal, patent issued, wholly-owned, discovery, licensed, concede, willful, entitled to summary judgment, essential element, reasons stated

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Exhibit K
Page 72

Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN1* Summary judgment is appropriate under Fed. R. Civ. P. 56(c) if there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. A court must view the evidence in the light most favorable to the non-moving party. The moving party is entitled to summary judgment as a matter of law against a non-moving party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there is no genuine issue as to any material fact because a failure of proof on an essential element renders other facts immaterial. More Like This Headnote | *Shepardize:* Restrict By Headnote

Patent Law > Infringement Actions > Infringing Acts > Sale
Patent Law > Infringement Actions > Infringing Acts > Use

*HN2* See 35 U.S.C.S. § 271(a).

Patent Law > Infringement Actions > Infringing Acts > General Overview

*HN3* 35 U.S.C.S. § 271(a) imposes temporal limits on a direct infringement claim with the explicit provision that the infringement must occur "during the term of the patent." Therefore, acts of making, using or selling prior to issuance give rise to no liability under the federal patent laws. More Like This Headnote | *Shepardize:* Restrict By Headnote

Business & Corporate Entities > Corporations > Shareholders & Other Constituents > Disregard of Corporate Entity

*HN4* Where one corporation is so organized and controlled and its affairs are conducted so that it is, in fact, a mere adjunct of the other, a court may disregard a corporation's identity. Some courts pursue a process called "piercing the corporate veil," while others apply general agency theory. The factors to be considered by a court in determining whether two corporations are truly separate include: adequacy of capitalization, overlapping directors and officers, separate record keeping, payment of taxes and filing of consolidated returns, maintenance of separate bank accounts, level of parental financing and control over the subsidiary, and the subsidiary's control over day-to-day operations. Whether the parent exercises complete domination over the subsidiary is decisive. The parent must have actual, participatory and total control of the subsidiary. More Like This Headnote | *Shepardize:* Restrict By Headnote

Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge
Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement

*HN5* 35 U.S.C.S. § 271(b) (1982) provides that whoever actively induces infringement of a patent shall be liable as an infringer. Inducement occurs by actively and knowingly aiding and abetting another's direct infringement. There can be no liability for inducement unless an actual infringement in violation of 35 U.S.C.S. § 271(a) (1982) is induced. Despite the rule that there can be no contributory infringement absent direct infringement, as is the case with inducement, courts have held that it is not necessary that the direct infringer be joined as a party to a suit against a contributory infringer. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** [*1]

Josy W. Ingersoll, Esquire of Young, Conaway, Stargatt & Taylor, Wilmington, Delaware. OF COUNSEL: Thomas L. Creel, Esquire, Stuart D. Sender, Esquire and Steven J. Armstrong, Esquire of Kenyon & Kenyon, New York, New York, Attorneys for Plaintiff.

Exhibit K
Page 73

Jack B. Blumenfeld, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. OF COUNSEL: John P. White, Esquire, Norman H. Zivin, Esquire and Donna A. Tobin, Esquire of Cooper & Dunham, New York, New York, Attorneys for Defendant.

**JUDGES:** Joseph J. Farnan, United States District Judge.

**OPINIONBY:** FARNAN

**OPINION:** *OPINION*

The Upjohn Company ("Upjohn") filed this lawsuit on March 7, 1989 against Syntro Corporation ("Syntro"), alleging direct infringement and inducement of United States Patent No. 4,810,634. Subsequently, defendant filed a Motion to Dismiss the action under Fed.R.Civ.P. 12(b). Oral argument was held on January 12, 1990. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1338(a). For the reasons stated below, the Court concludes that summary judgment will be granted in part and denied in part.

*I. FACTS*

On March 7, 1989, United States Patent No. 4,810,634 **[*2]** issued to Upjohn for Pseudorabies Virus Mutants Incapable of Producing Glycoprotein X (the "634 patent"). The patent relates to a genetically engineered virus useful as a vaccine against the pseudorabies virus for animals, including swine. It enables one to distinguish between animals that have been infected with the pseudorabies virus and those that have been vaccinated. Upjohn has obtained U.S.D.A. approval to market the vaccine under the trademark TOLVID.

Syntro is a Delaware corporation with its principal place of business in San Diego, California. It was established in 1981 to apply biotechnology to develop animal vaccine and human health care products. Sometime thereafter, Syntro employees developed a pseudorabies vaccine which is currently sold under the registered trademark PRV/MARKER. In 1985, Syntro created a wholly-owned subsidiary, SyntroVet, Inc. ("SyntroVet") for the purpose of manufacturing and marketing this product. SyntroVet is a Kansas corporation and has its only place of business, a manufacturing facility, in Lenexa, Kansas.

PRV/MARKER is the only product sold by Syntro or SyntroVet. SyntroVet is identified on the label of the product as its maker and seller. **[*3]** In addition, SyntroVet is licensed by the U.S.D.A. to sell the product. In July, 1988, Syntro filed an international patent application covering the PRV/MARKER vaccine, then in May, 1989, Syntro moved its office to SyntroVet's Kansas facility for consolidation of administrative activities and reduction of expenses. The San Diego research facility has been retained, but on a much smaller scale.

Upjohn's complaint alleges that Syntro makes, uses or sells PRV/MARKER which infringes Upjohn's '634 patent, and that Syntro is willfully directly infringing and inducing the infringement of the patent. The complaint does not name SyntroVet, the Kansas subsidiary, as a party. n1

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 The parties agree that SyntroVet is not subject to suit in Delaware given the patent infringement venue statute, 28 U.S.C. § 1400(b). That section provides that SyntroVet could have been sued only in districts where it resides or has a principal place of business.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Exhibit K
Page 74

On September 8, 1989, Upjohn brought an action alleging **[*4]** infringement of the same patent against SyntroVet, the subsidiary corporation, in the United States District Court for the District of Kansas. That action is styled The Upjohn Company v. SyntroVet Inc., Civil Action No. 89-2397-0 and arises from essentially the same facts underlying the pending action in this Court. The Kansas complaint alleges that SyntroVet makes, uses, or sells PRV/MARKER, that Syntro initiated the development of the product and is closely involved with SyntroVet's business and that SyntroVet is directly infringing and inducing the infringement of the Upjohn patent. In addition, there appears to be yet another proceeding involving the same parties. According to Syntro, an interference proceeding is about to be declared in the Patent and Trademark Office involving the same technology as the patent issued to Upjohn. With briefing now complete and the oral argument having been held, the motion is ripe for decision.

II. DISCUSSION

A. Standard of Review

Defendant's moving papers are styled as a motion to dismiss. However, since the parties have referred to matters outside the pleadings, the motion presently before the Court shall be treated as **[*5]** a motion for summary judgment and disposed of in accordance with Fed.R.Civ.P. 56(c). n2 See Fed.R.Civ.P. 12(b).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n2 At a discovery conference on March 2, 1990, both parties indicated that this matter was appropriately treated as an application for summary judgment.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN1* Summary judgment is appropriate if there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A court must view the evidence in the light most favorable to the non-moving party. Chipollini v. Spencer Gifts, Inc., 814 F.2d 893, 900 (3d Cir), cert. dismissed, 483 U.S. 1052 (1987). However, the moving party is entitled to summary judgment as a matter of law against a non-moving party who fails to make a showing sufficient to establish the existence of an essential element to that party's case and on which that party will bear the burden of proof at **[*6]** trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In such a situation, there is "no genuine issue as to any material fact" since a failure of proof on an essential element renders other facts immaterial. Id. at 323.

Defendant's motion presents two questions: 1) can Syntro be found to be liable for willful direct infringement either through its own acts or through the acts of its wholly-owned subsidiary; and 2) can Syntro be found to be liable for willful inducement of infringement. n3 These issues will be discussed seriatim.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n3 At the January 12, 1990 oral argument on this motion, counsel for Upjohn indicated that in plaintiff's view, it had two claims against Syntro, one for direct infringement and one for inducement both of which, according to Upjohn, have been willful. Transcript of Oral Argument at 21.

Exhibit K
Page 75