**Preston|Gates|Ellis** LLP

David T. McDonald
davidm@prestongates.com

November 22, 2005

The Honorable Ricardo S. Martinez
United States District Judge
United States District Court
700 Stewart Street
Seattle, WA 98191

    Re: *Amazon.com, Inc., et al. v. Cendant Corporation, et al.*
        **U.S. District Court for the Western District of Washington at Seattle**
        **Case No. 05-01137 RSM**

Dear Judge Martinez:

    Following up on Mr. David Hadden's promise at yesterday's hearing to provide supplemental authority regarding the interpretation of 28 U.S.C. § 1400(b), enclosed please find a copy of *VE Holding Corporation v. Johnson Gas Appliance Company*, 917 F.2d 1574, 1584 (Fed. Cir. 1990) supporting that venue is coextensive with personal jurisdiction in patent cases.

        Very truly yours,

        PRESTON GATES & ELLIS LLP

        By /s/ David T. McDonald
        David T. McDonald

DTM:lra

Enclosure

cc:    Counsel of Record

K:\40741\00129\DTM\DTM_L20E2

A LAW FIRM | A LIMITED LIABILITY PARTNERSHIP INCLUDING OTHER LIMITED LIABILITY ENTITIES

925 FOURTH AVENUE, SUITE 2900   SEATTLE, WA 98104-1158   TEL: (206) 623-7580   FAX: (206) 623-7022   www.prestongates.com
Anchorage   Coeur d'Alene   Hong Kong   Orange County   Portland   San Francisco   Seattle   Spokane   Washington, DC

LEXSEE 917 F2D 1574

**VE HOLDING CORPORATION, Plaintiff-Appellant, v. JOHNSON GAS APPLIANCE COMPANY, Defendant-Appellee**

Nos. 90-1270, 90-1274

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

917 F.2d 1574; 1990 U.S. App. LEXIS 18553; 16 U.S.P.Q.2D (BNA) 1614

October 24, 1990, Decided

**PRIOR HISTORY:** [**1]

Appealed from U.S. District Court for the Northern District of California; Judge Conti.

**DISPOSITION:**

Affirmed in part, reversed in part and remanded.

**LexisNexis(R) Headnotes**

**COUNSEL:**

Alan B. Rich, Johnson & Gibbs, P.C., of Dallas, Texas, argued for Plaintiff-Appellant. With him on the brief was Thomas L. Crisman. Also on the brief were L. Dan Tucker, Hubbard, Thurman, Turner & Tucker, of Dallas, Texas and J. William Wigert, Jr. and Virginia Shaw Medlen, Limbach, Limbach & Sutton, San Francisco, California, of Counsel.

George M. Schwab, Townsend & Townsend, of San Francisco, California, argued for Defendant-Appellee. With him on the brief was Gerald P. Dodson.

**JUDGES:**

Archer, Plager and Clevenger, Circuit Judges.

**OPINIONBY:**

PLAGER

**OPINION:**

[*1575] PLAGER, Circuit Judge

For almost one hundred years, a specific statutory provision, currently section 1400(b) of chapter 87, title 28, U.S. Code, has set forth the bases for establishing venue in patent infringement actions. Where the defendant 'resides' is one of those bases. Supreme Court decisions, with one exception, have maintained that that provision is unaffected by other statutory provisions governing venue.

In 1988 Congress adopted a new definition [**2] of 'reside' as it applies to venue for corporate defendants. This case requires us to decide whether, by that amendment to § 1391(c) of chapter 87, Congress meant to apply that definition to the term as it is used in § 1400(b), and thus change this long-standing interpretation of the patent venue statute. The district courts addressing this question have arrived at conflicting results. n1

> n1 See Regents of the Univ. of Cal. v. Eli Lilly & Co., 734 F. Supp. 911, 14 U.S.P.Q.2D (BNA) 1909 (N.D. Cal. 1990) (amended § 1391(c) supplements § 1400(b)); Joslyn Mfg. Co. v. Amerace Corp., 729 F. Supp. 1219, 14 U.S.P.Q.2D (BNA) 1223 (N.D. Ill. 1990) (§ 1400(b) remains unaffected); Century Wrecker Corp. v. Vulcan Equip. Co., 733 F. Supp. 1170, 13 U.S.P.Q.2D (BNA) 1715 (E.D. Tenn. 1989) (amended § 1391(c) supplements § 1400(b)); Doelcher Prods., Inc. v. Hydrofoil Int'l, Inc., 14 U.S.P.Q.2D (BNA) 1067 (D. Md. 1989) (§ 1400(b) remains unaffected).

[**3]

This is a case of first impression. It comes to us in the form of consolidated appeals from two judgments of the United States District Court for the Northern District of California ("District Court"), No. C89-0209 SC (May 19, 1989) ("VE Holding I" - Appeal 90-1270) and No. C89-3856 SC (Feb. 9, 1990) ("VE Holding II" - Appeal 90-1274), dismissing plaintiff/appellant's action against appellee for improper venue. We hold that Congress by its 1988 amendment of 28 U.S.C. § 1391(c) meant what it said; the meaning of the term 'resides' in § 1400(b) has changed. We therefore reverse the judgment in VE Holding II (Appeal 90-1274) and remand the case for further [*1576] proceedings consistent with this opinion. n2

  

n2 Since the 1988 amendments were not effective when the complaint in *VE Holding I* was filed, the then applicable law required dismissal for want of venue, as the District Court held. We therefore affirm the judgment of the District Court in Appeal 90-1270.

[**4]

I.

Plaintiff/appellant, VE Holding Corporation ("VE"), is the holder of U.S. Patents Nos. 4,667,408, 4,704,804, and 4,731,938 ("the VE patents"). Plaintiff filed suit in the District Court against, in *VE Holding I*, California Pellet Mill Company ("California Pellet") and Johnson Gas Appliance Company ("Johnson"), and in *VE Holding II*, Johnson alone, alleging direct and contributory infringement of and inducement to infringe the VE patents. In both cases Johnson moved to dismiss for improper venue, on the grounds that it is an Iowa corporation with no regular and established place of business in the Northern District of California.

The District Court found that Johnson as an Iowa corporation did not 'reside' in California, as that term has been construed in § 1400(b), and, in addition, that Johnson on the facts did not have a regular and established place of business in the Northern District of California, as the venue statute required. n3 The District Court rejected VE's argument that the 1988 amendment to § 1391(c) of the venue chapter redefined the term 'reside' as it is used in § 1400(b). The District Court therefore held that venue did not lie in the Northern [**5] District of California with respect to Johnson. n4 Plaintiff filed timely notice of appeal to this court. n5

n3 In light of our holding in Appeal 90-1274 that venue lies in the District Court under the residence test of § 1400(b), we need not consider whether the other statutory bases for venue apply.

n4 Because *VE Holding I* was filed on January 24, 1989, prior to the effective date of the 1988 amendment, the issue of the effect of the 1988 amendment was not properly before the District Court. Therefore, on October 26, 1989, VE refiled the suit against Johnson (*VE Holding II*), which was consolidated with *VE Holding I*. Johnson again filed a motion to dismiss for improper venue. The District Court again granted Johnson's motion, on the same grounds. This time the issue was properly before the District Court. For the reasons explained above, *VE Holding I* (Appeal 90-1270) is affirmed. *See supra* note 2.

n5 As noted, in *VE Holding I* there were two defendants, appellee Johnson and California Pellet. The District Court, pursuant to Rule 54(b), directed entry of a final judgment as to Johnson Gas, making that determination immediately appealable. In *VE Holding II*, Johnson Gas was the sole defendant. The dismissal by the District Court for want of venue was therefore a final judgment in the case. Both cases were appealed; a joint motion to consolidate the appeals was granted. California Pellet's motion to withdraw from the appeal, on consent, was granted.

[**6]

II.

Venue, which connotes locality, serves the purpose of protecting a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred. 1A(2) J. Moore, W. Taggart, A. Vestal, J. Wicker & B. Ringle, *Moore's Federal Practice* para. 0.340 (2d ed. 1990). The venue statutes achieve this by limiting a plaintiff's choice of forum to only certain courts from among all those which might otherwise acquire personal jurisdiction over the defendant. n6

n6 This discussion assumes of course that the court has subject matter jurisdiction over the cause, a question not at issue in this case.

The Judiciary Act of 1789 included a general venue provision governing all civil suits cognizable in the federal courts. Judiciary Act of 1789, ch. 20, § 11, 1 Stat. 73, 78. This Act was held applicable to patent infringement suits in *Chaffee v. Hayward*, 61 U.S. (20 How.) 208, 216, 15 L. Ed. 804, 15 L. Ed. 851 (1857). [**7] The general venue statutes are found today in chapter 87, title 28, U.S. Code.

The first statute specifically addressed to venue in patent infringement suits was enacted a century later, in 1897. Act of March 3, 1897, ch. 395, 29 Stat. 695. The current version of this Act is found in [*1577] § 1400(b) of the venue chapter (chapter 87 of title 28). Section 1400(b), which has been in its present form since 1948, reads:

(b) Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defen-

  

dant has committed acts of infringement and has a regular and established place of business.

Act of June 25, 1948, ch. 646, 62 Stat. 869, 936.

Patent law is not alone in having a particular venue statute that differs in its terms from the general venue provisions applicable to other federal causes of action. For example, in addition to sections dealing with venue in diversity jurisdiction cases, n7 federal question cases, n8 and venue regarding suits against aliens, n9 the venue chapter contains provisions for suits in [**8] certain cases by a national banking association, n10 for suits for collection of internal revenue taxes, n11 for suits regarding Interstate Commerce Commission orders, n12 and for stockholder's derivative actions. n13 Other particular venue provisions appear elsewhere in the Code, accompanying the substantive law provisions governing specific areas. See, e.g., 46 U.S.C. App. § 688 applying to Jones Act cases; 15 U.S.C. §§ 15, 22 applying to antitrust actions.

n7 28 U.S.C. § 1391(a).

n8 28 U.S.C. § 1391(b).

n9 28 U.S.C. § 1391(d).

n10 28 U.S.C. § 1394.

n11 28 U.S.C. § 1396.

n12 28 U.S.C. § 1398.

n13 28 U.S.C. § 1401.

In all of these areas in which particular venue statutes apply, the question can be raised — to what extent do the general venue [**9] provisions of chapter 87 supplement what is contained in the special provision, whether that special provision is contained in chapter 87 or elsewhere. The issue appears to arise infrequently; the few decisions suggest that the answer depends very much on the precise language of the relevant statutes along with, in appropriate cases, other evidence of Congressional intent. Facially, there is little consistency from area to area.

In the Jones Act and antitrust areas, for example, the courts have read the general venue provisions into the special provisions. See Pure Oil Co. v. Suarez, 384 U.S. 202, 16 L. Ed. 2d 474, 86 S. Ct. 1394 (1966) (Jones Act); Go-Video, Inc. v. Akai Elec. Co., Ltd., 885 F.2d 1406 (9th Cir. 1989) (antitrust); Adams Dairy Co. v. National Dairy Prods. Corp., 293 F. Supp. 1135 (W.D. Mo. 1968) (antitrust). In applying these particular venue provisions, courts have concluded that the Congressional intent was to 'enlarge' the plaintiff's choice of forum by reading the special venue provisions as supplemental to, rather than superseding, the general venue provisions. See Pure Oil, 384 U.S. at 206 [**10] ("there is nothing to show a congressional purpose negativing the more natural reading of the two [Jones Act and general] venue sections together"); Delong Equip. Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 855 (11th Cir. 1988) ("In a federal antitrust case, venue may be established under [15 U.S.C. § 15 or § 22], or the general federal venue statute, 28 U.S.C. § 1391(b).")

In the patent field, that has not been the case. The Supreme Court in 1942 and again in 1957 took a restrictive view of venue in patent infringement cases, holding in effect that the meaning of the terms used in § 1400(b) was not to be altered or supplemented by other provisions found in the venue statutes. Fourco Glass Co. v. Transmirra Prods. Corp., 353 U.S. 222, 1 L. Ed. 2d 786, 77 S. Ct. 787 (1957); Stonite Prods. Co. v. Melvin Lloyd Co., 315 U.S. 561, 86 L. Ed. 1026, 62 S. Ct. 780 (1942); followed in In re Cordis, 769 F.2d 733, 226 U.S.P.Q. (BNA) 784 (Fed. Cir. 1985). But see, Brunette Mach. Works, Ltd. v. Kockum Indus., Inc., 406 U.S. 706, 32 L. Ed. 2d 428, 92 S. Ct. 1936 (1972), [**11] discussed below.

As written, section 1400(b) dictates that venue is proper when either of two tests is satisfied: (1) the defendant resides in the [*1578] judicial district, or (2) the defendant has committed acts of infringement and has a regular and established place of business in the judicial district. The Supreme Court in Fourco confirmed that for defendants that are corporations, 'resides' meant the state of incorporation only. Section 1391(c), the general venue section which addressed the question of where corporations may be sued, and which contained language about the residence of corporations, did not supplement the specific provisions of § 1400(b). Id. 353 U.S. at 229.

At the time the Supreme Court's decision in Fourco was handed down, § 1391(c) consisted of one sentence which read:

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business,





and such judicial district shall be regarded as the residence of such corporation for venue purposes.

The first clause (up to the comma) established venue for corporations. The second clause either was surplusage [**12] since the term 'residence' was not used in the first clause as one of the bases for venue or, if it applied to plaintiffs as well as defendants (*see* discussion and cases cited in *Robert E. Lee & Co. v. Veatch*, 195 F. Supp. 528, 530 (W.D.S.C.), *rev'd*, 301 F.2d 434 (4th Cir. 1961)), was at best confusing. In addition to this difficulty, problems with this subsection arose regarding venue in multidistrict states. Annotation, *Corporation, Incorporated or Licensed to Do Business in Multidistrict State, as Subject, Under 28 U.S.C.S. § 1391(c), to Suit in Every District in State or Only in Districts in Which It Does Business*, 14 A.L.R. Fed. 938 (1989).

In response to pressure from the bar and the courts, in 1988 Congress amended § 1391(c). n14 The former one sentence subsection now consists of two sentences. The new second sentence of subsection (c) applies when a defendant corporation is amenable to federal jurisdiction in a state having several judicial districts. It prescribes which of them shall be the proper venue, and is not at issue in this case.

> n14 Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, tit. X, § 1013(a), 102 Stat. 4642, 4669 (1988).

[**13]

The new first sentence of amended § 1391(c) reads:

> (c) *For purposes of venue under this chapter*, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(c) (1988) (emphasis added). n15 The phrase "this chapter" refers to chapter 87 of title 28, which encompasses §§ 1391-1412, and thus includes § 1400(b). On its face, § 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of the term 'resides' in that section.

> n15 The 1988 amendment took effect on February 17, 1989, i.e., 90 days after enactment of the amendment. *See* Judicial Improvements and Access to Justice Act.

However, one familiar with the judicial history of § 1400(b) may be tempted to disregard the clear language of § 1391(c) and maintain the independence [**14] of that section from § 1400(b). The lack of express legislative history indicating that the 1988 amendment of § 1391(c) was intended to change the scope of venue in patent infringement cases, and the fact that such a conclusion would seem to fly in the face of thirty years of Supreme Court law, strengthens the temptation.

In *Fourco*, the Supreme Court addressed the same question presently before this court. "The question is . . . whether § 1391(c) supplements § 1400(b), or, in other words, whether the latter is complete, independent and alone in controlling in its sphere as was held in *Stonite*, or is, in some measure, dependent for its force upon the former." *Fourco*, 353 U.S. at 228. In deciding that it was not so intended, the Supreme Court stated:

> We think it is clear that § 1391(c) is a general corporation venue statute, whereas § 1400(b) is a special venue statute applicable, specifically, to *all* defendants [*1579] in a particular type of actions, *i.e.*, patent infringement actions. In these circumstances the law is settled that "However inclusive may be the general language of a statute, it 'will not be held to apply to a matter [**15] specifically dealt with in another part of the same enactment. . . . Specific terms prevail over the general in the same or another statute which otherwise might be controlling.' *Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208, 76 L. Ed. 704, 52 S. Ct. 322." *MacEvoy Co. v. United States*, 322 U.S. 102, 107, 88 L. Ed. 1163, 64 S. Ct. 890.

*Fourco*, 353 U.S. at 228-29 (emphasis in original).

III.

The Supreme Court's decision in *Fourco* is generally viewed as holding that § 1400(b) is the 'exclusive' venue statute in patent infringement actions. Thus it is sometimes said that, since *Fourco*, the only way to change the way that venue in patent infringement actions is determined is to change § 1400(b). This argument fails, however, because the Supreme Court, in *Brunette*, 406 U.S. 706, 32 L. Ed. 2d 428, 92 S. Ct. 1936, refused to impose such a disablement upon the Congress' ability to enact or amend legislation. The issue in *Brunette* was whether § 1400(b) governed venue in a patent suit

  

involving a foreign corporation, or whether the general venue provision applicable to aliens, 28 U.S.C. § 1391 [**16] (d), governed. The Court held § 1391(d) applied, and that § 1400(b) was supplemented by the provision governing suits against aliens. *Fourco* and *Stonite* were distinguished.

The specific question in *Fourco* was whether the statutory language previously enacted by the Congress as § 1391(c) supported a conclusion that Congress intended to have §§ 1391(c) and 1400(b) read together. On the basis of the nonspecific language of § 1391(c) and prior history as the Court read it, the Court concluded the answer was no.

Section 1391(c) as it was in *Fourco* is no longer. We now have exact and classic language of incorporation: "For purposes of venue under this chapter. . . ." Congress could readily have added "except for section 1400(b)," if that exception, which we can presume was well known to the Congress, was intended to be maintained. Certainly it would not be sensible to require Congress to say, "For purposes of this chapter, *and we mean everything in this chapter* . . .," in order to ensure that it has covered everything in a chapter of the statutes.

The issue, then, is not whether the prior cases, including Supreme Court cases, determined that under different statutory [**17] language Congress' intent was that § 1400(b) stood alone. The issue is, what, as a matter of first impression, should we conclude the Congress *now* intends by this new language in the venue act.

It is axiomatic that statutory interpretation begins with the language of the statute. *Mallard v. U.S. Dist. Court For S. Dist. of Iowa*, 490 U.S. 296, 109 S. Ct. 1814, 1818, 104 L. Ed. 2d 318 (1989); *UNR Indus., Inc. v. United States*, 911 F.2d 654, 659 (Fed. Cir. 1990). If, in a given case, the words of the statute do not provide an answer, then a court has no choice but to fill in the interstices. *See UNR*. If, on the other hand, the language is clear and fits the case, the plain meaning of the statute will be regarded as conclusive. *See Sullivan v. Stroop*, 496 U.S. 478, 110 S. Ct. 2499, 2502, 110 L. Ed. 2d 438 (1990); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 100 L. Ed. 2d 313, 108 S. Ct. 1811 (1988); *Bethesda Hospital Assoc. v. Bowen*, 485 U.S. 399, 403, 99 L. Ed. 2d 460, 108 S. Ct. 1255 (1988). [**18]

There of course may be those rare occasions under highly unusual circumstances when a court must conclude that the words used by the Congress did not capture the Congressional intent, at least as applied to the case before it. Such a case might be found when there is clearly expressed legislative intent that, on the given facts, a contrary result was intended, *United States v. Turkette*, 452 U.S. 576, 590, 69 L. Ed. 2d 246, 101 S. Ct. 2524 (1981), or when a literal application of the statute [*1580] produces a result so unlikely that Congress could not have intended it. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 109 S. Ct. 1026, 1031, 103 L. Ed. 2d 290 (1989).

In the case before us, the language of the statute is clear and its meaning is unambiguous. Absent extraordinary circumstances, our inquiry must end here. *Ron Pair Enters.*, 489 U.S. 235, 109 S. Ct. at 1030 (where statute's language is plain, the court's sole function is to enforce it according to its terms — the words express Congress' intent and so reference to legislative history is unnecessary). Section 1391(c) applies to all of chapter 87 of title [**19] 28, and thus to § 1400(b), as expressed by the words "For purposes of venue under this chapter." There can be no mistake about that.

It is true that § 1391(c) is a general venue statute and that § 1400(b) is a specific one. But the general rule that a specific statute is not controlled or nullified by a general statute regardless of priority of enactment, absent a clear intention otherwise, n16 does not govern the present situation. This is for two reasons. First, in this case the general statute, § 1391(c), expressly reads itself into the specific statute, § 1400(b). Second, § 1391(c) only operates to define a term in § 1400(b) — it neither alone governs patent venue nor establishes a patent venue rule separate and apart from that provided under § 1400(b). Nor does it conflict with § 1400(b). n17 Furthermore, even were the rule applicable to the issue at hand, the language of the statute would reveal "a clear intention" that § 1391(c) is to supplement § 1400(b).

---

n16 See, *e.g.*, *Morton v. Mancari* 417 U.S. 535, 550-51, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974) (a general provision in Title 42 does not impliedly repeal specific provisions in Title 25); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153-54, 48 L. Ed. 2d 540, 96 S. Ct. 1989 (1976) (venue is controlled by a narrow provision in Title 12, not by a broad provision in Title 15).

[**20]

n17 It can be argued that by reading § 1391(c) into § 1400(b), the second test under § 1400(b) becomes superfluous and thus meaningless. For, wherever a corporate defendant commits acts of infringement and has a regular and established place of business, it will necessarily be subject to personal jurisdiction there. However, this argument overlooks that § 1400(b) applies to *all* defendants, not just corporate defendants, and thus the second

  

test for venue remains operative with respect to defendants that are not corporations.

IV.

Congress has not clearly expressed that its intent is contrary to the words of the statute. The legislative history of the 1988 amendment reveals *no* legislative intent, let alone clearly expressed intent, contrary to the plain meaning of this first sentence of the amended statute. It is the second sentence to which the legislative history is addressed. That sentence concerns the question of where venue lies in a multidistrict state. As the commentary on the 1988 revision notes:

> It was that [problem] which Congress, citing a Judicial Conference [**21] recommendation, sought to eliminate with the second sentence of the new subdivision (c)....
>
> In making the change, however, Congress recast the provision in its entirety, expanding venue choices with the generous standard embodied in the first sentence of the new subdivision (c) and perhaps producing some open questions in the course of doing so....

Siegel, *Commentary on 1988 Revision*, 28 U.S.C.A., Ch. 87, at 3 (1990 Supp.).

The official legislative history on this amendment, in its relevant entirety, is reprinted in the margin. n18 While the legislative [*1581] history reveals that a purpose of the amendment is to define venue of corporate defendants and to prescribe the venue determination in multidistrict states, it does not speak to how or whether this amendment is intended to affect § 1400(b), or for that matter other sections of chapter 87. Congress' silence on this issue does not support a negative inference that the 1988 amendment was not intended to affect § 1400(b). *See Turkette*, 452 U.S. at 591 (that the legislative history forcefully supports a major purpose of the statute, but does not address the statute's scope regarding [**22] the issue at hand, does not require the negative inference that the statute does not also have the purpose, and thus scope, in question). Congress' intention is simply not known. "Ordinarily, 'Congress' silence is just that — silence.'" *Community For Creative Non-Violence v. Reid*, 490 U.S. 730, 109 S. Ct. 2166, 2177, 104 L. Ed. 2d 811 (1989) (quoting *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 94 L. Ed. 2d 661, 107 S. Ct. 1476 (1987)).

n18

> Venue generally turns on one of two considerations: the place where the claim arose or the residence of the parties. When one or more of the parties is a corporation, venue problems arise in determining a corporation's "residence." The [old] general venue statute defines the residence of a corporation as "any judicial district in which it is incorporated or licensed to do business or is doing business." 28 U.S.C. § 1391(c). Read literally, the statute appears to make venue proper in *any* district in a multidistrict state in which a corporation is incorporated, licensed to do business, or doing business.
>
> The Committee concluded that a corporation for venue purposes should be deemed to reside in any judicial district in which it was subject to personal jurisdiction at the time the action was commenced. In multidistrict states in which a corporation is not incorporated or licensed to do business, the venue determination should be made with reference to the particular district in which a corporation is sued. Thus, for example, a corporation that confines its activities to Los Angeles (Central California) should not be required to defend in San Francisco (Northern California) unless, of course, venue lies there for other reasons. This amendment would accomplish this purpose.

H.R. Rep. No. 100-889, 100th Cong., 2d Sess. 70 (1988), *reprinted in* 1988 U.S. Code Cong. & Admin. News 5982, 6031 (emphasis in original).

[**23]

That there may be no specific legislative history regarding the amendment's effect on § 1400(b) does not modify this court's duty to employ the plain meaning of the language that the Congress adopted. *United States v. Bornstein*, 423 U.S. 303, 310, 46 L. Ed. 2d 514, 96 S. Ct. 523 (1976). The Supreme Court has stated that "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill, generally requires [courts] to assume





that 'the legislative purpose is expressed by the ordinary meaning of the words used.'" *United States v. Locke*, 471 U.S. 84, 95, 85 L. Ed. 2d 64, 105 S. Ct. 1785 (1985) (quoting *Richards v. United States*, 369 U.S. 1, 9, 7 L. Ed. 2d 492, 82 S. Ct. 585 (1962)); *see also Escondido Mut. Water Co. v. La Jolla Band of Mission Indians*, 466 U.S. 765, 772, 80 L. Ed. 2d 753, 104 S. Ct. 2105 (1984).

It can be presumed that Congress is knowledgeable about existing law pertinent to legislation it enacts, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184-85, 100 L. Ed. 2d 158, 108 S. Ct. 1704 (1988). This rule of statutory [**24] construction does not cut in favor of maintaining the independence of the two sections. Other than by the clear language of the statute, Congress has not given any indication of whether it intended to change the scope of venue under § 1400(b). If we can infer anything from Congress' knowledge of the prior judicial interpretation of § 1400(b), given the clear language of the statute, it would be that Congress *did* intend to change the scope of venue under § 1400(b). *Cf. Lorillard v. Pons*, 434 U.S. 575, 580-81, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978) (where Congress enacts a new law incorporating sections of prior law, it is presumed that Congress had knowledge of the interpretation given to the incorporated law as it relates to the new statute).

In urging the Senate to pass the Judicial Improvements and Access to Justice Act, Senator Heflin, Chairman, Subcommittee on Courts and Administrative Practice, with regard to a group of proposed provisions, including the § 1391(c) amendment, stated:

> Title X consists of 23 miscellaneous provisions to improve the administration of justice. Most come from specific recommendations of the Judicial Conference as developed [**25] over the past several years as problems surface. The source and merits of the various provisions are discussed in the section-by-section analysis.
>
> *This bill represents numerous hours of negotiation and compromise.*

134 Cong. Rec. S16294, 16297-298 (daily ed. Oct. 14, 1988) (emphasis added). In reaching the same conclusion we reach today, the District Court in *Century Wrecker* [*1582] *Corp. v. Vulcan Equip. Co.*, 733 F. Supp. 1170, at 1173, 13 U.S.P.Q.2D (BNA) 1715, at 1717-18 (E.D. Tenn. 1989), stated:

> As early as December 1985 the proposed redraft of § 1391(c) included the language "for purposes of venue under this chapter. . . ." Report of the Subcommittee on Federal Jurisdiction to the Committee on Court Administration, p. 11 (December 1985). Significantly, that language had not been changed after almost two years of further consideration of changes regarding § 1391(c). Report of the Judicial Conference Committee on Court Administration (September 1987). Finally, in 1988 Congress adopted the changes recommended by the Judicial Conference in 1985. Therefore, the Court must conclude Congress intended that § 1391(c) be applied to each [**26] and every venue provision found in Chapter 87.

The Supreme Court has stated that "strict adherence to the language and structure of [an] Act is particularly appropriate where, as here, a statute is the result of a series of carefully crafted compromises." *Community for Creative Non-Violence*, 490 U.S. 730, 109 S. Ct. at 2177 n.14, 104 L. Ed. 2d 811.

This conclusion is reinforced by the fact that the drafters of the language incorporated in the 1988 amendment recognized the problem. Professor Edward H. Cooper, the reporter for the Judicial Conference subcommittee which prepared the Conference's recommendation adopted by the Congress, wrote in a December 4, 1986 memorandum to the subcommittee explaining the proposed revision:

> "The [new] definition of corporate residence in § 1391(c) now provides a basis for applying the substantial number of venue statutes enacted as part of various substantive federal laws. *As a matter of caution, the proposal limits its definition of residence to the venue provisions gathered in Chapter 87 of the Judicial Code,* [**27] *28 U.S.C. §§ 1391 through 1412.*" (Emphasis added.)

Reprinted in 39 Patent, Trademark & Copyright Journal 435, 438 (March 29, 1990).

V.

A further test of our reading of the 1988 amendment to § 1391(c) is to examine whether the impact of our reading is so unlikely that Congress simply could not have intended it. The answer to that query requires a sense of the history of Congress' treatment of venue

  

in patent infringement cases. There is some dispute about whether the Congress intended to liberalize or restrict venue in patent cases by its enactment of that first particular venue provision in 1897. *Compare* Wydick, *Venue in Actions for Patent Infringement*, 25 Stanford L. Rev. 551, 557-58 (1973) (Congress intended to broaden venue from the restrictive 1887 Act), *with* Waldrop, *The Patent Venue Statute, 28 U.S.C. § 1400(b) Should Not Be Repealed*, 4 A.P.L.A. Q.J. 32, 36 (1976) (Congress intended to restrict venue in light of the existing court constructions). One's view of that issue depends on how one reads the state of general venue law following the amendments of 1887, Act of March 3, 1887, c. [**28] 373, 24 Stat. 552, which substantially narrowed the general law governing plaintiffs' venue options compared to the pre-existing law.

The lower federal courts were in considerable disagreement as to whether the Act of 1887 applied to patent infringement litigation. If it did, the 1897 Act ten years later liberalized patent venue; if the earlier act did not apply, the 1897 Act restricted it. As the Supreme Court in *Brunette*, 406 U.S. at 712, put it: "[The Act of 1897] was of course more restrictive than the law as it was left by *Hohorst* [*In re Hohorst*, 150 U.S. 653, 14 S. Ct. 221, 37 L. Ed. 1211 (1893)], but it was rather less restrictive than the general venue provision then applicable to claims arising under federal law." The Supreme Court, in *Stonite*, 315 U.S. 561, 86 L. Ed. 1026, 62 S. Ct. 780, adopted the restrictive intent theory, and that dictated *Fourco*, 353 U.S. 222, 1 L. Ed. 2d 786, 77 S. Ct. 787.

What is not in dispute is that the narrowing of general venue which Congress incorporated into the 1887 Act has long since been superseded by more liberalized venue law, so that the 'freezing' of [**29] patent venue [*1583] as a result of *Fourco* has made patent venue an anomaly. Justice White, writing for the Court in *Brunette*, 406 U.S. at 713 n.13, noted: "Ironically, changes in the general venue law have left the patent venue statute far behind. Since 1948, the general venue law has authorized suit against a corporate defendant not only where he maintains a 'regular and established place of business,' as in § 1400(b), but also where he is 'doing business.' 62 Stat. 935, now § 1391(c). And since 1966, the general venue law has authorized suit where 'the claim arose'. . . ." Of course, the irony is particularly poignant since it is the consequence of the Court's own rulings. n19

n19 The Court's rulings have also made venue in patent cases a subject of considerable litigation, as plaintiffs and defendants have fought over where to sue. *See* Wydick, *supra*, at 566-85.

Now, under amended [**30] § 1391(c) as we here apply it, venue in a patent infringement case includes any district where there would be personal jurisdiction over the corporate defendant at the time the action is commenced. While this test is narrower than allowing venue wherever a corporate defendant could be served, it is somewhat broader than that encompassed by the previous standard of "place of incorporation." n20

n20 "Because the personal jurisdiction question is no different for a patent case than any other type of case, suffice it to say that *International Shoe* and its progeny apply." Irani, *Jurisdiction and Venue in Patent Cases: Effect of the Federal Circuit on Construction of the Patent Venue Statute*, 69 J. Pat. Trademark Off. Soc'y 445, 446 (1987). At least until now, questions of personal jurisdiction rarely arose in simple patent infringement cases because the venue statute was, comparatively, severely more restrictive concerning the districts in which suit could be brought. *See* 5 D. Chisum, *Patents* § 21.02[3] at 96.3-97 (Feb. 1990).

[**31]

This new venue rule we discern from the express words of the Congress is neither illogical nor unfair. Authorities have long argued that venue in patent infringement actions should be no different than in other civil cases:

> With the enactment of liberalized general venue laws, the patent venue statute has long since outlived its original purpose.
>
> The continued existence of the patent venue statute serves only to prolong patent litigation and make it more expensive. . . .
>
> * * *
>
> The best course would be for Congress simply to repeal the patent venue statute, leaving the general venue laws to govern actions for patent infringement. A similar conclusion was reached by the American Law Institute's Study of the Division of Jurisdiction between State and Federal Courts. [ALI, Study of the Division of Jurisdiction Between State and Federal Courts 220-21 (1969).]

Wydick, *supra*, at 584-85. *Accord* 15 C. Wright, A.

  

Miller & E. Cooper, *Federal Practice and Procedure* § 3823 at 215 (1990) ("The statute [§ 1400(b)] ought to be repealed, and patent cases treated in the same fashion as federal question cases generally.").

As far back as 1974, the A.B. [**32] A. Section of Patent, Trademark and Copyright Law supported a resolution that the term "resides" in § 1400(b) be defined by § 1391(c). Gess, *Desirability of Initiating Patent Litigation Wherever the Defendant is Found*, 1974 A.B.A. Sec. Pat. Trademark and Copyright L. 114, 115 ("The patent venue provision, 28 U.S.C. § 1400(b) and the interpretation given it by the Supreme Court in *Fourco* . . . is the result of historical accident. The consequence of this accident has been to create confusion in the courts and to unduly shield a corporate infringer.").

It has long been held that a declaratory judgment action alleging that a patent is invalid and not infringed — the mirror image of a suit for patent infringement — is governed by the general venue statutes, not by § 1400(b). *See, e.g., United States Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195, 216 U.S.P.Q. (BNA) 745, 746 (9th Cir. 1982). The result of applying § 1391(c) to patent infringement cases is to bring the law of venue in patent cases more in line with venue law generally, as well as with [*1584] other types of patent litigation. This is not a result so absurd [**33] that Congress could not possibly have intended it.

VI.

Thus, the first test for venue under § 1400(b) with respect to a defendant that is a corporation, in light of the 1988 amendment to § 1391(c), is whether the defendant was subject to personal jurisdiction in the district of suit at the time the action was commenced. 28 U.S.C. §§ 1391(c) & 1400(b) (1988). Since Johnson has conceded that VE obtained personal jurisdiction over it in the Northern District of California, Brief for Appellee at 2 (filed June 6, 1990), Johnson "resides" in that district, within the meaning of the first test of § 1400(b), and venue properly lies in the Northern District of California. The District Court's determination that venue with regard to Johnson did not lie in the Northern District of California was error. Accordingly, the judgment of the district court in Appeal 90-1270 (*VE Holding I*) is affirmed; n21 in Appeal 90-1274 (*VE Holding II*) the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

n21 *See supra* note 2.

[**34]

VII.

Each party will bear their own costs for this appeal.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

