IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CD INTELLECTUAL PROPERTY HOLDINGS, INC., | |
| Plaintiff, | C.A. No. 1:05-00414 (JJF) |
| v. | |
| AMAZON.COM, INC., | |
| Defendant. | |

| | |
|---|---|
| AMAZON.COM, INC., and A9.COM, INC., | |
| Plaintiffs, | |
| v. | C.A. No. 1:06-00041 (JJF) |
| CENDANT CORPORATION, TRILEGIANT CORPORATION, ORBITZ, LLC, ORBITZ, INC., BUDGET RENT A CAR SYSTEM, INC., and AVIS RENT A CAR SYSTEM, INC., | |
| Defendants. | |

**DECLARATION OF LYNN H. PASAHOW IN SUPPORT OF
AMAZON.COM, INC. AND A9.COM, INC.'S MOTION TO CONSOLIDATE**

I, Lynn H. Pasahow, declare as follows:

1.     I am a partner of the law firm of Fenwick & West LLP, counsel to

Amazon.com, Inc. and A9.com, Inc., and have been granted permission to appear *pro hac*

*vice* in this action.  I make the following statements based upon my personal knowledge

or on information and belief where indicated and, if called upon to testify, would testify

competently to the matters contained herein.

2.     Pursuant to Delaware Local Rule 7.1.1, during the week of January 23,

2006, I contacted Doug Olsen of Paul, Hastings, Janofsky & Walker LLP, counsel for

Cendant Corporation, Trilegiant Corporation, Orbitz, LLC, Orbitz, Inc., Budget Rent A

Car System, Inc., and Avis Rent A Car System, Inc., the defendants in Civil Action

No. 1:06-00041 (JJF) (the "Amazon Action"), and asked that his clients stipulate to the

consolidation of the above-referenced actions for all purposes, including trial.  In

addition, during that same week I talked to Steven Lieberman of Rothwell, Figg, Ernst &

Manbeck P.C., counsel for CD Intellectual Property Holdings, Inc. ("CD"), the plaintiff

in Civil Action No. 1:05-00414 (JJF) (the "Cendant Action"), and made the same request.

On February 1, 2006, Mr. Olsen responded on behalf of both the defendants in the

Cendant Action and the plaintiff in the Amazon Action that Cendant and its subsidiaries

would not stipulate to consolidation of these cases.

      3.      Attached hereto as **Exhibit A** is a true and correct copy of "Defendants'

Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) or, in the Alternative, to

Dismiss, Stay or Transfer This Action Pursuant to the First-to-File Rule" filed on

August 12, 2005 in Case No. 05-1137 (RSM) in the Western District of Washington.

      4.      Attached hereto as **Exhibit B** is a true and correct copy of "Reply

Memorandum in Support of Defendants' Motion to Transfer Venue Pursuant to 28

U.S.C. § 1404(a) or, in the Alternative, to Dismiss, Stay or Transfer This Action Pursuant

to the First-to-File Rule" filed on September 16, 2005 in Case No. 05-1137 (RSM) in the

Western District of Washington.

      5.      Attached hereto as **Exhibit C** is a true and correct copy of the transcript of

the hearing on Defendants' Motion to Transfer Venue on November 21, 2005 before the

Honorable Ricardo S. Martinez, District Judge of the Western District of Washington in

Case No. 05-1137 (RSM).

6.      Attached hereto as **Exhibit D** is a true and correct copy of the "Order on Defendants' Motion to Transfer" dated December 13, 2005.

7.      Attached hereto as **Exhibit E** is a true and correct copy of a letter from Elizabeth A. Leff of Rothwell, Figg, Ernst & Manbeck P.C., counsel for CD Intellectual Property Holdings, Inc. ("CD"), which identifies three employees of Cendant Corporation as the persons whom CD proposes to have access to information designated "Confidential" in CD's action against Amazon.com.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on the 2nd day of February, 2006, at Culver City, California.

Lynn H. Pasahow

23984/00403/LIT/1242717.2

3

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on February 2, 2006, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Steven J. Balick, Esq.
> ASHBY & GEDDES
> 222 Delaware Ave.
> P.O. Box 1150
> Wilmington, DE 19899
> sbalick@ashby-geddes.com

I further certify that on February 2, 2006, I caused a copy of the foregoing document to be served by hand delivery and electronic mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

## BY FEDERAL EXPRESS & E-MAIL

Douglas E. Olson
*dougolson@paulhastings.com*
Stephen S. Korniczky
*stevekorniczky@paulhastings.com*
James V. Fazio, III
*jamesfazio@paulhasting.com*
PAUL, HASTINGS, JANOFSKY & WALKER,
LLP
3579 Valley Center Drive
San Diego, CA 92130

Steve Lieberman, Esq. *slieberman@rfem.com*
ROTHWELL, FIGG, ERNST
  & MANBECK, PC
1425 K Street, NW, Suite 800
Washington, D.C. 20005

YOUNG CONAWAY STARGATT &
  TAYLOR, LLP

_/s/ Karen E. Keller_
John W. Shaw (ID# 3362)
Karen E. Keller (ID#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Telephone: (302) 571-6600
kkeller@ycst.com

Attorneys for Defendant

# EXHIBIT A

The Honorable R. Martinez

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10

AMAZON.COM, INC. and A9.COM,
INC.,

            Plaintiffs,

      vs.

CENDANT CORPORATION;
TRILEGIANT CORPORATION;
ORBITZ, LLC; ORBITZ, INC.; BUDGET
RENT A CAR SYSTEM, INC.; AND
AVIS RENT A CAR SYSTEM, INC.,

            Defendants.

11
12
13
14
15
16
17
18

CASE NO. CV-05-1137 (RSM)

**DEFENDANTS' MOTION TO TRANSFER
VENUE PURSUANT TO 28 U.S.C. § 1404(a)
OR, IN THE ALTERNATIVE, TO
DISMISS, STAY OR TRANSFER THIS
ACTION PURSUANT TO THE FIRST-TO-
FILE RULE**

**[ORAL ARGUMENT REQUESTED]**

NOTE ON MOTION CALENDAR:

September 9, 2005

19
20
21
22
23
24
25
26
27
28

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1
2

# TABLE OF CONTENTS

**Page**

3    I.    INTRODUCTION ........................................................................................................... 1

4    II.    BACKGROUND .......................................................................................................... 3

5         A.    The First-Filed Delaware Action ................................................................. 3

         B.    The Retaliatory Washington Action............................................................. 3

6         C.    Statement of Facts ........................................................................................ 4

7    III.    THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
         DELAWARE UNDER 28 U.S.C. § 1404(A) ............................................................ 5

8         A.    This Action Could Have Been Brought Originally In The District of
         Delaware ...................................................................................................... 5

9         B.    The Convenience And Interest of Justice Factors Overwhelmingly Favor
10        Transfer of This Action To the District of Delaware................................... 6

11             1.    The District of Delaware Is Much More Convenient for the Parties
             and Witnesses Than This District (Factor #1)................................. 6

12             2.    The District of Delaware Is Much Closer Than This District to
             Where The Alleged Infringement Took Place (Factor #2) and
13             Sources of Proof Are Located (Factor #3) ...................................... 7

14             3.    Plaintiffs' Choice of Forum (Factor #4) Is Entitled To Little, If
             Any, Weight .................................................................................... 8

15             4.    Related Litigation Involving Substantially the Same Parties Is
             Pending in the District of Delaware (Factor #5) ............................. 8

16             5.    The Remaining "Public Interest" Factors (Factor Nos. 6, 7 & 8)
17             Strongly Favor Transfer of this Action To the District of Delaware ........ 10

             6.    Equitable Considerations Weigh in Favor of Transferring
18             Retaliatory Actions.......................................................................... 10

19    IV.    THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO
         THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE ................... 10

20        A.    Legal Standard ........................................................................................... 10

21        B.    The Court Should Apply the First-to-File Rule In This Case ....................... 11

    V.    CONCLUSION ........................................................................................................... 12

22
23
24
25
26
27
28

1

## TABLE OF AUTHORITIES

2
**Page(s)**

3

### CASES

4    *Advanced Semiconductor Materials America Inc. v. Applied Materials Inc.,*

5         30 U.S.P.Q.2d 1553 (D.Ariz. 1993)............................................................. 10

6    *Alltrade, Inc. v. Uniweld Products, Inc.,*

         946 F.2d 622 (9th Cir. 1991).................................................................. 12

7    *Baird v. California Faculty Ass'n.,*

8         2000 WL 516378 (N.D.Cal. Jun. 26, 2000 ............................................. 10

9    *Botkin v. Safeco Ins. Co. of Am.,*

         2003 U.S.Dist. LEXIS 6293 (N.D.Cal. Apr. 14, 2003) ........................... 6

10   *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.,*

11        185 F.Supp.2d 407 (D.Del. 2002)........................................................... 11

     *Decker Coal Co. v. Commonwealth Edison Co.,*
12
          805 F.2d 834 (9th Cir. 1986)................................................................... 7
13
     *Drucker v. Fernandez,*
14
          1991 U.S.Dist. LEXIS 7463 (E.D.Pa. Jun. 3, 1991)............................... 7
15   *Google, Inc. v. American Blind & Wallpaper Factory, Inc.,*

         2004 U.S.Dist. LEXIS 27601 (N.D.Cal. Apr. 8, 2004) ......................... 13

16   *Hatch v. Reliance Ins. Co.,*

17        758 F.2d 409 (9th Cir. 1985)................................................................... 6

18   *Holloway v. Brush,*

         220 F.3d 767 (6th Cir. 2000)................................................................... 2

19   *Hyundai Space & Aircraft Co., Ltd. v. Boeing Co.,*

20        1999 WL 910131 (N.D.Cal. Oct. 12, 1999)........................................... 9

21   *IBM Credit Corp. v. Definitive Computer Services,*

         1996 U.S.Dist. LEXIS 2385 (N.D.Cal. Feb. 27, 1996)........................... 11

22   *Italian Colors Restaurant, et al. v. American Express Co.,*

23        2003 U.S.Dist. LEXIS 20338 (N.D.Cal. Nov. 10, 2003) ....................... 9

     *K. Toy v. General Electric Co.,*
24
          1995 WL 396848 (N.D.Cal. Jun. 27, 1995)........................................... 7
25
     *Knits 'N' Tweeds, Inc. v. Jones New York,*
26
          205 U.S.P.Q. 966 (E.D.N.Y. Jan. 25, 1979) ......................................... 12
27   *Levinson v. Regal Ware, Inc.,*

         14 U.S.P.Q.2d 1064 (D.N.J. 1989)........................................................... 8
28

1

**TABLE OF AUTHORITIES**
(cont'd)

2

Page(s)

3    *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.,*

4        2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. Jun. 18, 2004) ............................................ 10, 12, 13

     *Pacific Car & Foundry Co. v. Pence,*

5        403 F.2d 949 (9th Cir. 1968)........................................................................................... 9

6    *Quantel Ltd. v. Adobe Systems Inc.,*

7        1996 U.S.Dist. LEXIS 21651 (D.Del. Dec. 12, 1996)...................................................... 11

8    *Steelcase Inc. v. Haworth, Inc.,*

     1996 U.S. Dist. LEXIS 20674 (C.D.Cal. May 15, 1996)................................................... 9

9    *Symbol Technologies, Inc. v. Intermec Technologies Corp.,*

10        2005 U.S.Dist. LEXIS 14415 (W.D.Wis. Jul. 14, 2004) ................................................ 9

11   *Teknekron Software Systems, Inc. v. Cornell Univ, et al.,*

     1993 U.S.Dist. LEXIS 21337 (N.D.Cal. Jun. 14, 1993)........................................... 7, 8, 9

12   *United States v. Wood,*

13        925 F.2d 1580 (7th Cir. 1991)........................................................................................ 2

     *Van Dusen v. Barrack,*

14        376 U.S. 612 (1964) ....................................................................................................... 6

15   *VE Holdings Corp. v. Johnson Gas Appliance Co.,*

16        917 F.2d 1574 (Fed.Cir. 1990)........................................................................................ 7

     *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24,*

17        751 F.2d 721 (5th Cir. 1985).......................................................................................... 12

18

**STATUTES**

19

20   **United States Code**

21   28 U.S.C. § 1338.................................................................................................................... 6

22   28 U.S.C. § 1404(a) ......................................................................................................... 2, 3, 6, 13

23   **Federal Rules of Civil Procedure**

24
     Fed. R. Civ. P. 7(b) ................................................................................................................. 2

25   Fed. R. Civ. P. 12(b)(6)........................................................................................................... 2

26   Fed. R. Civ. P. 12(e)................................................................................................................ 2

27

28

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                          -iii-                     PAUL, HASTINGS, JANOFSKY & WALKER
                                                                                3579 VALLEY CENTER DRIVE
                                                                                SAN DIEGO, CA 92130

1    Pursuant to 28 U.S.C. § 1404(a) and Civil Rule 7(b), defendants Cendant Corporation

2    ("Cendant"); Trilegiant Corporation ("Trilegiant"); Orbitz, LLC ("Orbitz LLC"); Orbitz, Inc.

3    ("Orbitz Inc."); Budget Rent A Car System, Inc. ("Budget"); and Avis Rent A Car System, Inc.

4    ("Avis") (collectively, "Defendants") hereby move to transfer this action to the District of

5    Delaware for convenience and in the interests of justice or, in the alternative, to dismiss, stay or

6    transfer this action pursuant to the first-to-file rule.

7    Defendants have also filed concurrently herewith a (1) motion to dismiss all claims

8    against Cendant (the parent corporation); (2) motion to dismiss the complaint for failure to state a

9    claim pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for a more

10    definite statement of the claims pursuant to Federal Rule of Civil Procedure 12(e); and (3) motion

11    to stay all discovery pending resolution of the motions.  Defendants respectfully submit that to

12    conserve judicial resources, this Court should first decide this motion to transfer venue since if

13    this action is transferred, that may render the motion to dismiss moot.

14    **I.    INTRODUCTION**

15    On June 20, 2005 (two days before plaintiffs filed this complaint), Cendant Publishing,

16    Inc. (one of Cendant's wholly-owned subsidiaries) sued Amazon.com, Inc. ("Amazon") for patent

17    infringement in a related action in the District of Delaware.[1]  In that lawsuit, Cendant Publishing,

18    Inc. contends that Amazon infringes U.S. Patent No. 6,782,370 ("the '370 Patent"), which

19    discloses a method of making recommendations of goods and/or services to potential customers

20    based on the purchasing history of previous customers.

21    Admittedly in response to Cendant's Delaware action, Amazon and its subsidiary A9.com,

22    Inc. ("A9") (collectively, "plaintiffs") immediately filed this related patent infringement action

23    against Cendant and several of its subsidiaries.  Amazon has publicly characterized this action as

24    "purely a defensive measure" that was filed in "direct response" to Cendant's Delaware lawsuit.

25    Fazio Decl., Ex. C.  Amazon has also admitted that this action "involves substantially the same

26    ───────────────────
[1] A true and correct copy of the Delaware complaint is attached as Ex. A to the Declaration of
27    James V. Fazio, III ("Fazio Decl.") filed concurrently herewith.  This Court may take judicial
     notice of complaints filed in other courts and other matters of public record. *Holloway v. Brush*,
28    220 F.3d 767, 786 n.3 (6th Cir. 2000); *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir.
     1991).

1  parties" as the Delaware action. Fazio Decl., Ex. B. Like the '370 Patent at issue in the Delaware

2  action, the patents-in-suit here are related to transacting electronic commerce over the Internet

3  and are directed to methods for transmitting credit card authorizations over the Internet and other

4  methods of facilitating e-commerce using the Internet.

5       In their haste to retaliate, however, plaintiffs did not file this lawsuit in Delaware where it

6  belongs. In a blatant attempt to forum shop, plaintiffs instead filed this action in Amazon's home

7  territory. But this action should be transferred to the District of Delaware under 28 U.S.C.

8  § 1404(a) because: (1) that is where the "center of gravity" in this case is located; (2) that is

9  where all parties are incorporated; (3) that is where plaintiffs acknowledge there is a related,

10 pending patent infringement case between the same parties; (4) the District of Delaware is much

11 more convenient than this forum for most of the parties and relevant witnesses; (5) the allegedly

12 infringing websites (and the employees who designed and maintain them) are much closer to the

13 District of Delaware than this District; (6) most of the relevant documents are much closer to the

14 District of Delaware than this District; and (7) the District of Delaware is less congested than this

15 District. While a plaintiff's choice of forum is normally entitled to some deference, that is not the

16 case when, as here, plaintiffs have filed an admittedly retaliatory and related action in a

17 transparent effort to forum shop.

18      If this Court is not inclined to transfer this action for reasons of convenience and justice,

19 this action should be dismissed, stayed or transferred under the first-to-file rule. This action

20 involves substantially the same parties as the first-filed Delaware action, and both actions involve

21 the alleged infringement of patents related to transacting electronic commerce over the Internet.

22 Accordingly, if the Court does not transfer this action to the District of Delaware under 28 U.S.C.

23 § 1404(a), then this action should be dismissed, stayed or transferred to the District of Delaware

24 under the first-to-file rule.

25 **II.    BACKGROUND**

26      **A.     The First-Filed Delaware Action**

27      On October 29, 2004, Cendant Publishing, Inc. ("Cendant Publishing") filed a complaint

28 against Amazon for patent infringement in the District of Delaware. Fazio Decl., Ex. D. The

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                    -2-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   patent at issue in that action is U.S. Patent No. 6,782,370 ("the '370 Patent"), which discloses a

2   method of making recommendations of goods and/or services to potential customers based on the

3   purchasing history of previous customers. *Id.* Because the parties were then attempting to

4   resolve that dispute, Cendant Publishing dismissed the action without prejudice soon after filing.

5   Declaration of Eric J. Bock ("Bock Decl."), ¶ 13. The parties did not reach a settlement, and

6   Cendant Publishing re-filed its infringement action against Amazon in the District of Delaware on

7   June 20, 2005. Fazio Decl., Ex. A.

8       **B.    The Retaliatory Washington Action**

9           Two days later, in obvious retaliation, and despite their knowledge of the Delaware action,

10  plaintiffs filed this related action against Cendant and some of its subsidiaries for patent

11  infringement. Plaintiffs admit that this action is "purely a defensive measure" that was filed in

12  "direct response" to the Delaware action. Fazio Decl., Ex. C. Plaintiffs also admit that this action

13  is related to the Delaware action because they filed a Notice of Related Case in the District of

14  Delaware admitting that the two actions involve "substantially the same parties." Fazio Decl., Ex.

15  B.

16          In their haste to retaliate, plaintiffs apparently did not investigate the allegedly infringing

17  activities of any Cendant subsidiary. Instead, plaintiffs alleged, in one broad stroke, that

18  Defendants' business operations and websites infringe plaintiffs' patents. Like Cendant's '370

19  Patent, the patents-in-suit are also related to methods for operating an online marketplace. U.S.

20  Patent No. 5,715,339 ("the '339 Patent") is directed to secure methods for transmitting credit card

21  authorizations over a non-secure network, which enables a retailer to offer an Internet customer

22  several credit card numbers to choose from by, for example, selecting the last 4 digits of the credit

23  card number he or she wishes to use. Complaint, ¶ 12 & Ex. 1 at col. 1-4. U.S. Patent No.

24  6,029,141 ("the '141 Patent") enables customers or affiliates to post recommendations of

25  products and services to the Internet in return for compensation. Complaint, ¶ 18 & Ex. 2 at col.

26  1-4. U.S. Patent No. 6,629,079 ("the '079 Patent") provides customers with a "commerce

27  context" or a selection of shopping baskets from which the customer can select to specify

28  particular shipping, delivery and payment options. Complaint, ¶ 24 & Ex. 3 at col. 1-4. Finally,

1     U.S. Patent No. 6,625,609 ("the '609 Patent") discloses use of a "browse graph" that helps

2     Internet shoppers navigate within a body of data to reach goods and services in which he or she

3     would most likely be interested. Complaint, ¶ 29 & Ex. 4 at col. 1, lns. 19-32, col. 2, lns. 35-55.

4     **C.    STATEMENT OF FACTS**

5         The "center of gravity" of this action lies in the Northeast, not in this District. Cendant's

6     operational headquarters and the vast majority of its employees are in New Jersey, which borders

7     Delaware. Bock Decl., ¶ 8. Cendant's corporate offices are in New York. *Id.* Cendant

8     Publishing is headquartered in New Jersey. *Id.* Most of Cendant and Cendant Publishing's

9     employees and documents are located in New Jersey. *Id.*

10        Avis and Budget are both headquartered in New Jersey. *Id.*, ¶ 9. The www.avis.com and

11     www.budget.com websites were originally designed and developed in Garden City, New York

12     and outside Chicago, Illinois, respectively, and are currently operated in New Jersey. *Id.* Most of

13     the witnesses with knowledge of the design, development and operation of these websites (such

14     as Paul Kremer and Joseph Kirrane, Vice President, Information Technology) are located in New

15     Jersey. *Id.* Further, most of Avis and Budget's key marketing personnel (such as John Peebles,

16     Vice President, Marketing), who have knowledge of facts regarding the affiliate program and

17     other issues related to the '141 Patent, are also located in New Jersey. *Id.* Moreover, the Chief

18     Financial Officers for Avis and Budget, who have knowledge of facts relevant to royalty rates and

19     related potential damages issues, are in New Jersey. *Id.* Likewise, most of the documents

20     relevant to the design, development and operation of these websites are located in New Jersey.

21     *Id.*

22        Trilegiant's headquarters are in Norwalk, Connecticut, and the

23     www.trilegiantaffiliates.com and www.avgautostore.com websites were both designed and

24     developed, and are currently being operated, in Connecticut. *Id.*, ¶¶ 10-11. Most of the witnesses

25     with knowledge of the design, development and operation of these websites (such as Jim

26     McDowell, Director of Technology Engineering, and Chris Johnson, Vice President, Technology)

27     are located in Connecticut. *Id.*, ¶ 11. In addition, the individuals with knowledge of the financial

28     records and profits of these websites (such as Al Fino, Group Vice President and Controller) also

1  work in Connecticut. *Id.* Likewise, most of the documents relevant to the design, development

2  and operation of these websites are located in Connecticut. *Id.*

3          Of all the defendants, the only one not based in the Northeast is Orbitz, which is

4  headquartered in Chicago, Illinois. *Id.*, ¶ 10. But Chicago is still three times closer to the District

5  of Delaware than this District (Chicago is 2,100 miles from Seattle but only 750 miles from

6  Delaware). Fazio Decl., ¶¶ 11-12 & Exs. I-J.

7  **III.  THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF**

8  **DELAWARE UNDER 28 U.S.C. § 1404(A)**

9          **A.    This Action Could Have Been Brought Originally In The District of Delaware**

10         For the convenience of the parties and witnesses and in the interests of justice, a district

11  court may transfer any civil action to any other district in which the lawsuit "might have been

12  brought." 28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Before a

13  district court can consider transferring an action to another forum, it must first be established that

14  the potential transferee district is one in which the action "might have been brought" in the first

15  instance. 28 U.S.C. § 1404(a); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

16  That requires a showing that the transferee forum has subject matter jurisdiction and personal

17  jurisdiction over the parties and also that venue is proper in that district. *Botkin v. Safeco Ins. Co.*

18  *of Am.*, 2003 U.S.Dist. LEXIS 6293, at *5 (N.D.Cal. Apr. 14, 2003).[2]

19         This action is one that might have been brought in the District of Delaware. Plaintiffs

20  have sued Defendants for patent infringement; thus, all federal courts (including the District of

21  Delaware) have subject matter jurisdiction. 28 U.S.C. § 1338. Companies are subject to personal

22  jurisdiction in any state in which they are incorporated, *Drucker v. Fernandez*, 1991 U.S.Dist.

23  LEXIS 7463, at *6 n.2 (E.D.Pa. Jun. 3, 1991), and venue in patent cases is coextensive with

24  personal jurisdiction. *VE Holdings Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584

25  (Fed.Cir. 1990). Because Defendants are all incorporated in the State of Delaware, all

26

27

---

28  [2] For the Court's convenience, copies of cases published in unofficial reporters are attached in
    alphabetical order to the Fazio Decl.

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                    -5-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1    Defendants are subject to personal jurisdiction in the District of Delaware, and venue is likewise

2    proper there.

3    **B.      The Convenience And Interest of Justice Factors Overwhelmingly Favor**

4    **Transfer of This Action To The District of Delaware**

5    Once it is established that the transferee forum is one in which the action could originally

6    have been brought, courts consider the following factors in deciding a transfer motion: (1) the

7    convenience of the parties and the witnesses; (2) the location where the alleged events in the

8    lawsuit took place (i.e., the "center of gravity" of the case); (3) the relative ease of access to the

9    sources of proof and compulsory process; (4) the plaintiff's choice of forum; (5) the pendency of

10    related litigation in the transferee forum; (6) the relative congestion in the two courts; (7) the

11    public interest in the local adjudication of local controversies; and (8) the relative familiarity of

12    the courts with the applicable law. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834,

13    843 (9th Cir. 1986). *See also K. Toy v. General Electric Co.*, 1995 WL 396848, at *1 (N.D.Cal.

14    Jun. 27, 1995); *Teknekron Software Systems, Inc. v. Cornell Univ, et al.*, 1993 U.S.Dist. LEXIS

15    21337, at *18 (N.D.Cal. Jun. 14, 1993).

16    As explained below, the balance of these factors tips decidedly in favor of transferring this

17    action to the District of Delaware.

18    **1.      The District of Delaware Is Much More Convenient for the Parties and**

19    **Witnesses Than This District (Factor #1)**

20    As a preliminary matter, all parties (including plaintiffs) are incorporated in the State of

21    Delaware. Complaint, ¶¶ 2-8. Further, four of the six defendants are headquartered within 170

22    miles of the federal courthouse in the District of Delaware; only the two plaintiffs are not based in

23    the Northeast. Bock Decl, ¶¶ 8-10.[3] Though Amazon is located in Seattle, A9 is located in

24    California. Complaint, ¶ 3. Thus, by sheer numbers, the District of Delaware is more convenient

25    for most of the parties than this District.

26

27

28    _____

[3] The two Orbitz defendants are headquartered in Chicago, Illinois, which is still much closer to the District of Delaware than this District. Bock Decl., ¶ 10.

1    Further, most of the witnesses with knowledge of the design, development and operation

2    of the allegedly infringing websites (such as Joseph Kirrane, Paul Kremer, and Jim McDowell)

3    work much closer to the District of Delaware than this District. Bock Decl., ¶¶ 9, 11. Most of the

4    witnesses with knowledge regarding Cendant's affiliate program and other issues related to the

5    '141 Patent (such as John Peebles) are also located in the Northeast. *Id.*, ¶ 9. In addition, most of

6    the individuals with knowledge of financial issues are also located in the Northeast. *Id.*, ¶¶ 9, 11.

7    Consequently, it is more convenient for most of the witnesses to travel to the District of Delaware

8    than to fly across the country for proceedings in this District.

9        In short, transfer to the District of Delaware would serve the convenience of the parties

10   and witnesses.

11       2.    **The District of Delaware Is Much Closer Than This District to Where**

12             **The Alleged Infringement Took Place (Factor #2) and Sources of Proof**
             **Are Located (Factor #3)**

13       A fundamental principle guiding section 1404(a) analysis is that litigation should proceed

14   "in that place where the case finds its 'center of gravity.'" *Teknekron*, 1993 U.S.Dist. LEXIS

15   21337, at *19 (quoting *Levinson v. Regal Ware, Inc.*, 14 U.S.P.Q.2d 1064, 1065 n.3 (D.N.J.

16   1989)). This principle is particularly important in patent infringement cases. *Id.* In patent cases,

17   the "center of gravity" involves consideration not just of where the patented methods were

18   designed and developed, but more importantly, where the allegedly infringing service or process

19   was designed, developed and produced. *Teknekron*, 1993 U.S.Dist. LEXIS 21337, at *20.

20       Under this analysis, the "center of gravity" for this action is in the Northeast, not in this

21   District. Most of the allegedly infringing websites and relevant documents are located in New

22   York, New Jersey and Connecticut. Bock Dec., ¶¶ 8-9, 11. Thus, with the exception of Orbitz,

23   most of the activities surrounding the design, development and operation of the allegedly

24   infringing websites took place much closer to the District of Delaware than this District.

25       In sum, this action should be transferred to the District of Delaware because that is much

26   closer to the "center of gravity" in this case than this District. *Teknekron*, 1993 U.S. Dist. LEXIS

27   21337, at *21-22 (transferring patent infringement action to where most of the material events

28

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                    -7-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   took place); *Steelcase Inc. v. Haworth, Inc.*, 1996 U.S. Dist. LEXIS 20674, at *9-10 (C.D.Cal.

2   May 15, 1996) (transferring patent infringement action to Michigan because the individuals

3   involved in the design and development of the infringing products worked in Michigan).

4         3.      **Plaintiffs' Choice of Forum (Factor #4) Is Entitled To Little, If Any,**
              **Weight**
5

6         While a plaintiff's choice of forum is usually entitled to some deference, it should be

7   disregarded when, as here, the place of filing is the result of forum shopping. *Italian Colors*

8   *Restaurant, et al. v. American Express Co.*, 2003 U.S.Dist. LEXIS 20338, at *11 (N.D.Cal. Nov.

9   10, 2003) (disregarding plaintiff's choice of forum because of forum shopping). Here, it is not

10  clear why (aside from wanting to litigate in their home state) Amazon filed suit in this District

11  despite knowing that most of the Defendants and the evidence relevant to this lawsuit are located

12  in the Northeast. Plaintiffs' choice of forum is even more perplexing given their acknowledgment

13  of a related action pending in the District of Delaware. Fazio Decl., Ex. B. Consequently,

14  plaintiffs' decision to file suit in this District should be completely disregarded.

15        At a minimum, plaintiffs' choice of forum should not be accorded any deference because

16  none of the allegedly infringing conduct occurred in this District. *Pacific Car & Foundry Co. v.*

17  *Pence*, 403 F.2d 949, 954 (9th Cir. 1968). *See also Symbol Technologies, Inc. v. Intermec*

18  *Technologies Corp.*, 2005 U.S.Dist. LEXIS 14415, at *8 (W.D.Wis. Jul. 14, 2004); *Hyundai*

19  *Space & Aircraft Co., Ltd. v. Boeing Co.*, 1999 WL 910131, at *4 (N.D.Cal. Oct. 12, 1999).

20  While the inventors of the patents-in-suit largely reside in Washington, the majority of allegedly

21  infringing activities took place in New Jersey, New York and Connecticut because that is where

22  the Subsidiary Defendants' headquarters and the allegedly infringing websites are predominantly

23  located. Accordingly, plaintiffs' choice of forum is entitled to little (if any) weight.

24        4.      **Related Litigation Involving Substantially the Same Parties Is Pending**
              **in the District of Delaware (Factor #5)**
25

26        The pendency in another district of a related action is a factor that "weighs heavily" in

27  favor of transfer. *Baird v. California Faculty Ass'n.*, 2000 WL 516378, at *1 (N.D.Cal. Jun. 26,

28  2000). Importantly, the subject matter in the two actions need not be identical to justify transfer;

1    they need only be similar. *Advanced Semiconductor Materials America Inc. v. Applied Materials*
2    *Inc.*, 30 U.S.P.Q.2d 1553, 1554 (D.Ariz. 1993); *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.*,
3    2004 U.S. Dist. LEXIS 10906, at *24 (S.D.N.Y. Jun. 18, 2004) (noting that while one action
4    involved claims for patent infringement, and the other action involved claims for trade secret
5    misappropriation, both actions involved similar technology).

6        In *Advanced Semiconductor*, for example, the court transferred a patent infringement
7    action from Arizona to California because the case was related to two other patent infringement
8    actions between the same parties pending in California. 30 U.S.P.Q.2d at 1554. While the two
9    disputes involved different patents, the Court transferred the action because both actions involved
10    the same parties and technology and thus would entail "much overlap of issues, witnesses, prior
11    art, and documents." *Id.*

12        Likewise here, there is considerable overlap between the issues, witnesses and technology
13    in this case with the Delaware action. Both actions involve claims for the infringement of patents
14    related to transacting e-commerce over the Internet. Further, both actions involve patents
15    designed to recommend customized goods and services to Internet customers. Cendant
16    Publishing's '370 Patent discloses a method of recommending goods and/or services to potential
17    customers on a web page based on previous customers' purchasing history. Similarly, Amazon's
18    '609 Patent uses a "browse graph" that takes data in which an Internet user has a "special
19    interest" and "features that data more prominently, allowing the user to reach the data much more
20    efficiently." Complaint, Ex. 4 at col. 2, lns. 45-49.

21        Both actions will also require testimony from many of the same witnesses, such as Jeffrey
22    Bezos (the founder of Amazon), who would likely testify regarding patent validity and
23    infringement issues in both cases. Key Information Technology personnel (such as Joseph
24    Kirrane and Paul Kremer) would likely testify in both actions regarding the design, development
25    and operation of the Subsidiary Defendants' websites. Bock Decl., ¶ 9. Further, both actions
26    may involve testimony from each subsidiary's Chief Financial Officer, who would provide

27
28

1   evidence relevant to financial issues in both cases. *Id.* Hence, the two actions are related even

2   though they do not involve identical patents, and plaintiffs have admitted as much.[4]

3       In short, the pendency in Delaware of related patent litigation involving substantially the

4   same parties and similar subject matter is yet another reason why this action should be transferred

5   to the District of Delaware. *IBM Credit Corp. v. Definitive Computer Services*, 1996 U.S.Dist.

6   LEXIS 2385, at *7-8 (N.D.Cal. Feb. 27, 1996) (transferring case to Texas because the plaintiff

7   was a defendant in a related case pending there).

8               5.      **The Remaining "Public Interest" Factors (Factor Nos. 6, 7 & 8)**

9                       **Strongly Favor Transfer of this Action To the District of Delaware**

10      The District of Delaware has a compelling interest in adjudicating actions between

11  Delaware corporations. *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.*, 185 F.Supp.2d 407, 412

12  (D.Del. 2002). Further, the District of Delaware has "considerable experience with patent cases."

13  *Quantel Ltd. v. Adobe Systems Inc.*, 1996 U.S.Dist. LEXIS 21651, at *4-5 (D.Del. Dec. 12, 1996).

14  The District of Delaware is also less congested than this District. According to the

15  Administrative Office of the United States Courts, for the 12-month period ended September,

16  2004, the District of Delaware had 1,931 civil cases pending and an unweighted average number

17  of filings per judge of 441. Fazio Decl., ¶ 7. By contrast, for that same period, the Western

18  District of Washington had 4,085 civil cases pending and an unweighted average number of

19  filings per judge of 655. *Id.* Certainly, it would be a more efficient use of judicial resources to

20  have one court "get up to speed" on the technology involved in both actions than two courts.

21      On balance, these "public interest" factors also militate in favor of transferring this action

22  to the District of Delaware.

23              6.      **Equitable Considerations Weigh in Favor of Transferring Retaliatory**

                        **Actions**

24

25      Finally, equitable considerations weigh in favor of transferring retaliatory actions. *Knits*

26  *'N' Tweeds, Inc. v. Jones New York*, 205 U.S.P.Q. 966, 967 (E.D.N.Y. Jan. 25, 1979)

    (transferring the action because it appeared to be a "retaliatory action"). Amazon has admitted

27

---

[4] In addition to being a defendant in the Delaware action, Amazon is also a defendant in another
28  patent infringement lawsuit filed against it by BTG International, Inc. Fazio Decl., Ex. E.

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   that this action was filed in "direct response" to the Delaware Action and is "purely a defensive

2   measure." Fazio Decl., Ex. C. As a "purely defensive" action bearing all the earmarks of a

3   retaliatory lawsuit, this action should be transferred to the District of Delaware where it belongs.

4   **IV.    THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO
        THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE**

5           If this Court does not transfer this action in the interests of justice, it should dismiss, stay

6   or transfer this action under the first-to-file rule.

7       **A.    Legal Standard**

8           Under the first-to-file rule, a district court may dismiss, stay or transfer an action when a

9   similar complaint has already been filed in another federal court. *Alltrade, Inc. v. Uniweld*

10  *Products, Inc.*, 946 F.2d 622, 623 (9th Cir. 1991). The rule was developed to promote comity

11  among the federal courts and to minimize interference with each other's affairs. *West Gulf*

12  *Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985).

13          In determining whether to apply the first-to-file rule, courts consider (1) the chronology of

14  the two actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Alltrade*, 946

15  F.2d at 625-26. Importantly, neither the parties nor the issues in the two actions need to be

16  identical in order to invoke the first-to-file rule; if the two actions share "overlapping factual and

17  legal issues," then the first-to-file rule may be applied. *Mastercard*, 2004 U.S.Dist. LEXIS

18  10906, at *24.

19          In *Mastercard*, for example, Lexcel sued Mastercard in Arizona federal court for breach

20  of contract, misappropriation of trade secrets and related causes of action in connection with the

21  parties' software license agreement. Shortly after, Mastercard sued Lexcel for a declaratory

22  judgment of non-infringement and invalidity of patents related to Lexcel's financial network

23  testing software. 2004 U.S.Dist. LEXIS 10906, at *3. While the two actions involved different

24  legal claims, the Court found that there were "sufficient overlapping factual and legal issues"

25  between the two actions to trigger the first-to-file rule. 2004 U.S.Dist. LEXIS 10906, at *24.

26      **B.    The Court Should Apply the First-to-File Rule In This Case**

27          The facts of this case equally support application of the first-to-file rule. First, the

28

DEFENDANTS' MOTION TO TRANSFER
VENUE - Case No. CV05-1137                -11-                  PAUL, HASTINGS, JANOFSKY & WALKER
                                                               3579 VALLEY CENTER DRIVE
                                                               SAN DIEGO, CA 92130

1   chronology of the two actions weighs in favor of transfer of this action because the Delaware

2   action was filed before this action. Second, this action involves what Amazon admits are

3   "substantially the same parties" as the Delaware action. Fazio Decl., Ex. B. While this action

4   involves four additional defendants who are not parties to the Delaware action, that is not enough

5   to defeat application of the first-to-file rule. *See Google, Inc. v. American Blind & Wallpaper*

6   *Factory, Inc.*, 2004 U.S.Dist. LEXIS 27601, at *12 (N.D.Cal. Apr. 8, 2004) ("strict identity of

7   parties is not an absolute requirement of the first-to-file rule").

8          Third, both actions involve "similar issues" in that both actions involve claims for the

9   infringement of patents related to transacting electronic commerce over the Internet. The '370

10  Patent, at issue in Delaware, relates to methods of making customized recommendations of goods

11  and/or services to potential Internet customers based on previous customers' purchasing history.

12  Fazio Decl., Ex. A. Similarly, Amazon's '609 Patent discloses use of a "browse graph" to

13  identify data in which an Internet user has a "special interest," which the graph then displays

14  "more prominently, allowing the user to reach the data much more efficiently." Complaint, Ex. 4

15  at col. 2, lns. 45-49. Thus, while the patents-in-suit in the two actions are different, both actions

16  involve similar legal issues and similar technology. Accordingly, this action should be dismissed,

17  stayed or transferred to the District of Delaware under the first-to-file rule. *Mastercard,* 2004

18  U.S. Dist. LEXIS 10906, at *24 (applying the first-to-file rule to patent infringement actions

19  because the actions involved similar technology and arose out of the same dispute between the

20  same parties); *Google,* 2004 U.S.Dist. LEXIS, at *12-14 (applying the first-to-file rule because

21  there was a "substantial overlap" of the parties and because the actions involved the same

22  "fundamental issues").

23  V.    **CONCLUSION**

24         For the foregoing reasons, Defendants respectfully request that this Court either (1)

25  transfer this action to the District of Delaware for reasons of convenience and justice pursuant to

26  28 U.S.C. § 1404(a); or (2) dismiss, stay, or transfer this action to the District of Delaware

27  pursuant to the first-to-file rule.

28

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1    DATED: August _12_ 2005                    By: _____

2                                               DOUGLAS E. OLSON

3                                               Attorneys for Defendants

4                                               CENDANT CORPORATION; TRILEGIANT
                                                CORPORATION; ORBITZ, LLC; ORBITZ, INC.;
5                                               BUDGET RENT A CAR SYSTEM, INC.; AND AVIS
                                                RENT A CAR SYSTEM, INC.

6                                               *Admitted Pro Hac Vice*

7                                               And

8                                               K. Michael Fandel

9                                               WSBA# 16281
                                                Graham & Dunn PC
10                                              2801 Alaskan Way, Suite 300
                                                Seattle, WA 98121
11                                              Email: mfandel@grahamdunn.com

12

13                                  CERTIFICATE OF SERVICE

14        I hereby certify that on August 12, 2005, I presented the foregoing to the Clerk of the

15   Court using the CM/ECF system, which will send notification of such filing to the following:

16        David T. McDonald
          davidm@prestongates.com
17
          Attorneys for Plaintiffs
18
                                               /s/ K. Michael Fandel
19                                                 K. Michael Fandel

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION TO TRANSFER                  PAUL, HASTINGS, JANOFSKY & WALKER
VENUE - Case No. CV05-1137              -13-    3579 VALLEY CENTER DRIVE
                                                SAN DIEGO, CA 92130

# EXHIBIT B

1

2

3                                                            The Honorable R. Martinez

4

5

6

7

8                       UNITED STATES DISTRICT COURT
9                    WESTERN DISTRICT OF WASHINGTON
                                AT SEATTLE
10
   AMAZON.COM, INC. and A9.COM,           CASE NO. CV-05-1137 (RSM)
11 INC.,
                                          **REPLY MEMORANDUM IN SUPPORT**
12            Plaintiffs,                  **OF DEFENDANTS' MOTION TO**
                                          **TRANSFER VENUE PURSUANT TO 28**
13       vs.                              **U.S.C. § 1404(a) OR, IN THE**
                                          **ALTERNATIVE, TO DISMISS, STAY OR**
14 CENDANT CORPORATION;                   **TRANSFER THIS ACTION PURSUANT**
   TRILEGIANT CORPORATION;                **TO THE FIRST-TO-FILE RULE**
15 ORBITZ, LLC; ORBITZ, INC.; BUDGET
   RENT A CAR SYSTEM, INC.; AND           **[ORAL ARGUMENT REQUESTED]**
16 AVIS RENT A CAR SYSTEM, INC.,
                                          NOTE ON MOTION CALENDAR:
17            Defendants.
                                              September 16, 2005
18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2
                                                                                                    Page

3   I.    INTRODUCTION ............................................................................................................ 1

4   II.   THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF
          DELAWARE UNDER 28 U.S.C. § 1404(A) ................................................................ 1

5         A.    Transfer of This Related Action To The District of Delaware Would
                Promote Judicial Economy ................................................................................ 1
6
          B.    The Private and Public Interest Factors Strongly Weigh In Favor of
7               Transfer .............................................................................................................. 3

8         C.    The Public Interest Factors And Other Considerations Also Favor Transfer
                to Delaware ........................................................................................................ 5

9   III.  THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO
          THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE ...................... 6

10  IV.   CONCLUSION .............................................................................................................. 6

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1

## TABLE OF AUTHORITIES

2

Page

3

## CASES

4

5     *Alltrade, Inc. v. Uniweld Products, Inc.,*

6         946 F.2d 622, 628 (9th Cir. 1991)............................................................................4

7     *AMP Inc. v. Burndy of Midwest, Inc.,*

    340 F. Supp. 21, 25 (N.D.Ill. 1971) ......................................................................4

8     *AT&T Co. v. MCI Communications Corp.,*

9         736 F. Supp. 1294, 1307 (D.N.J. 1990) ............................................................2, 3

10     *Ballard Medical Prod. v. Concord Labs.,*

    700 F. Supp. 796, 801 (D.Del. 1988) ....................................................................2

11     *Capitol Records, Inc. v. Optical Recording Corp.,*

12         810 F. Supp. 1350, 1354 (S.D.N.Y. 1992)............................................................5

13     *Datex-Ohmeda, Inc. v. Hill-Rom Services, Inc.,*

    185 F. Supp.2d 407, 412 (D.Del. 2002) ................................................................5

14     *E.I. du Pont de Nemours Co. v. Diamond Shamrock Corp.,*

15         522 F. Supp. 588, 591 (D.Del. 1981) ....................................................................4

*Google, Inc. v. Am. Blind & Wallpaper Factory, Inc.,*

16         2004 U.S.Dist. LEXIS 27601, at *12 (N.D.Cal. Apr. 8, 2004) ............................6

17     *Italian Colors Restaurant, et al. v. American Express Co.,*

    2003 U.S.Dist. LEXIS 20338, at *11 (N.D.Cal. Nov. 10, 2003)..........................4

18     *Laitram Corp. v. Morehouse,*

19         31 U.S.P.Q.2d 1697, 1700 (E.D.La. 1994) ...........................................................4

20     *Mastercard Int'l. Inc. v. Lexcel Solutions, Inc.,*

    2004 U.S.Dist. LEXIS 10906, at *24 (S.D.N.Y. Jun. 18, 2004).........................6

21     *Medi USA, L.P. v. Jobst Institute, Inc.,*

22         791 F. Supp. 208, 210 (N.D.Ill. 1992) ................................................................4

23     *NCUBE v. Seachange Int'l, Inc.,*

    313 F. Supp. 2d 361 (D.Del. 2004).......................................................................5

24     *Phillips v. AWH Corp.,*

25         415 F.3d 1303 (Fed.Cir. 2005)..............................................................................5

26     *Pinpoint, Inc. v. Amazon.com,*

    2003 WL 22175514, at *3 (N.D. Ill. Sep. 19, 2003).............................................4

27     *Quantel Ltd. v. Adobe Systems Inc.,*

28         1996 U.S.Dist. LEXIS 21651, at *4-5 (D.Del. Dec. 12, 1996)..............................5

REPLY I/S/O DEFENDANTS' MOTION TO
TRANSFER VENUE - Case No. CV-05-1137
SAN/121532.3

-ii-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF AUTHORITIES**
(continued)

Page

*Regents of the Univ. of Calif. v. Eli Lilly & Co.,*
    119 F.3d 1559, 1565 (Fed.Cir. 1997)..................................................................3

*Ricoh Co., Ltd. v. Honeywell, Inc.,*
    817 F. Supp. 473, 481 (D.N.J. 1993) ...................................................................5

*Syngenta Seeds, Inc. v. Monsanto Co.,*
    2005 WL 678855, at *3 (D.Del. Mar. 24, 2005)......................................................3

**STATUTES**

28 U.S.C. § 1404(a) ...........................................................................I, 4, 6, 7

-iii-

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1    I.    **INTRODUCTION**

2    Throughout their opposition, plaintiffs discount the related litigation involving

3    "substantially the same parties" and related technology pending in the District of Delaware.

4    Declaration of James V. Fazio ("Fazio Decl."), Ex. C. Plaintiffs claim that the similarities are

5    "meaningless," but that is wishful thinking on their part. Both actions involve similar claims for

6    the infringement of patents related to transacting electronic commerce over the Internet and

7    bringing Internet shoppers closer to products they might be interested in buying. Because related

8    litigation involving related technology is pending in Delaware, this action should be transferred to

9    Delaware in the interests of judicial economy.

10    Plaintiffs argue that transfer to Delaware would be inconvenient for some non-party

11    witnesses. But most of those witnesses are inventors of Amazon's patents, and plaintiffs have

12    made no showing that they would be unwilling to testify voluntarily. Regardless, the fact remains

13    that the District of Delaware is far more convenient than this District for all six defendants (who

14    outnumber plaintiffs six to two).

15    Plaintiffs claim that filing suit in their home state can hardly be called forum shopping,

16    but when plaintiffs have admitted that this related action was filed in "direct response" to the

17    first-filed Delaware lawsuit, that is forum shopping. At bottom, no amount of legal legerdemain

18    can alter the conclusion that this action should be transferred to the District of Delaware where

19    related litigation involving related technology is already pending.

20    II.    **THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE UNDER 28 U.S.C. § 1404(a)**

21

22    A.    **Transfer of This Related Action To The District of Delaware Would Promote Judicial Economy**

23    Amazon admitted to the public that this action is "purely a defensive measure" that was

24    "filed in direct response to Cendant's refiling of their patent infringement suit" in Delaware.

25    Fazio Decl., Ex. C. Plaintiffs also confess that the Delaware action and this action involve

26    "substantially the same parties." Fazio Decl., Ex. B. To conserve judicial resources and to

27    promote the efficient resolution of this dispute, this retaliatory and related action should be

28    transferred to the District of Delaware where it belongs. *Ballard Medical Prod. v. Concord*

REPLY I/S/O DEFENDANTS' MOTION TO
TRANSFER VENUE - Case No. CV-05-1137        -1-
SAN/121532.3

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   *Labs.*, 700 F. Supp. 796, 801 (D.Del. 1988) (transferring case to district where related action was

2   pending); *AT&T Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1307 (D.N.J. 1990)

3   (same).

4        Plaintiffs contend that the similarity between the two actions is "meaningless," but that is

5   inaccurate. Both actions involve claims for patent infringement arising out of the operation of

6   online marketplaces, and both actions involve requests for damages and injunctive relief. *See*

7   *AT&T*, 736 F. Supp. at 1307 (noting that the action to be transferred involved similar claims and

8   requested remedies as the first-filed action). Further, both actions involve related technologies.

9   The '141 Patent (at issue in this case) discloses methods for merchants to "efficiently market and

10  sell goods "using the websites of others to "disseminate . . . **recommendations** on specific

11  products." Complaint, Ex. 2 at 1:50-61 (emphasis added). The customer can then use a "product-

12  specific hyperlink" to purchase that **recommended** product. *Id.* at 1:62-66 (emphasis added).

13  Likewise, the '370 Patent (at issue in Delaware) discloses a method for on-line merchants to

14  market goods and services on the Internet by supplying "**recommendations** . . . to the user in the

15  form of a hypertext [link]," allowing customers to purchase that **recommended** product. Fazio

16  Decl., Ex. D at 3:24-28 (emphasis added).

17       The '370 Patent is also related to the '609 Patent in that both patents disclose methods for

18  bringing Internet customers closer to products they may be interested in purchasing. The '609

19  Patent enables a customer with a "special interest in a particular kind of data" to use a "browse

20  graph that features that data [e.g., product information] more prominently." Complaint, Ex. 4 at

21  2:46-49. This feature is provided by creating browse graphs "associated . . . with groups of users

22  having particular . . . **buying patterns**." *Id.* at 5:9-13 (emphasis added). Along the same lines,

23  the '370 Patent discloses a method of recommending goods and/or services to potential customers

24  "based on a particular good or service selected by the user and previous customer **buying**

25  **history**." Fazio Decl., Ex. D at 1:47-48 (emphasis added).[1]

26  ---
    [1] The claim language in plaintiffs and defendants' patents is also related: (1) "computer readable
27  medium" ('370 Patent, claim 16 and '609 Patent, claim 18); (2) "customer buying history ('370
    Patent, claim 1) and "buying preferences" and "buying patterns" ('609 Patent, claims 24 & 29);
28  and (3) "recommendation of goods and/or services to potential customers . . . based on customer
    buying history" ('370 Patent, claim 1) and "presenting to the user a recommendation for items

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1        Plaintiffs next claim that the two actions are not sufficiently similar to warrant

2    consolidating them, but plaintiffs are wrong.  To conserve judicial resources, courts have

3    consolidated actions sharing far fewer similarities than are presented here.  *See Syngenta Seeds,*

4    *Inc. v. Monsanto Co.,* 2005 WL 678855, at *3 (D.Del. Mar. 24, 2005) (consolidating plaintiff's

5    antitrust lawsuit with defendant's first-filed patent infringement case despite "minimal factual

6    overlap").[2]  If courts have consolidated cases sharing so few similarities, certainly this Court can

7    take the lesser step of simply transferring this action to Delaware.

8        In short, even if the balance of convenience and other factors are "near equipoise," the fact

9    that the two actions involve related technologies is alone sufficient to warrant transfer of this

10   action to Delaware.  *AT&T,* 736 F. Supp. at 1307 (D.N.J. 1990).  *See also Regents of the Univ. of*

11   *Calif. v. Eli Lilly & Co.,* 119 F.3d 1559, 1565 (Fed.Cir. 1997) ("Consideration of the interests of

12   justice, which includes judicial economy may be determinative to a particular transfer motion,

13   even if the convenience of the parties and witnesses might call for a different result") (internal

14   quotations and citation omitted).

15   **B.**    **The Private and Public Interest Factors Strongly Weigh In Favor of Transfer**

16       Plaintiffs argue that this action should not be transferred to Delaware because it will not

17   eliminate any inconvenience, but only shift the inconvenience from defendants to plaintiffs.

18   Plaintiffs miss the point.  While plaintiffs' employees may primarily be located in this District,

19   the fact remains that Delaware is a more convenient forum than this District for all six defendants

20   (who outnumber plaintiffs six to two).  Thus, transfer to Delaware would be more convenient for

21   most of the parties and their witnesses.

22       Plaintiffs next argue that transfer to Delaware would be inconvenient for some non-party

23   witnesses, but most of those supposedly "unavailable" witnesses are former employees and the

24   inventors of Amazon's patents.  Plaintiffs make no showing that they would not be willing to

25   testify voluntarily.  Further, the facts to which these inventors would testify would be largely

26   cumulative of testimony that could be offered by the inventors who are still employed by

27   based on items previously selected" ('079 Patent, claim 9).

28   [2] For the Court's convenience, copies of cases published in unofficial reporters and not previously
submitted are attached to the Reply Declaration of James V. Fazio filed concurrently herewith.

REPLY I/S/O DEFENDANTS' MOTION TO
TRANSFER VENUE - Case No. CV-05-1137     -3-
SAN/121532.3

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1   Amazon.[3]  Under such circumstances, the alleged "unavailability" of these non-party witnesses is

2   not problematic.  *See Pinpoint, Inc. v. Amazon.com*, 2003 WL 22175514, at *3 (N.D. Ill. Sep. 19,

3   2003) (observing that Amazon failed to provide evidence that former employees' testimony was

4   not cumulative and would not be provided voluntarily), *vacated on other grounds*, 347 F. Supp.

5   2d 579 (N.D.Ill. 2004).

6          Plaintiffs also contend that their choice of forum should not be disturbed, particularly

7   when they have chosen their home state in which to litigate.  But the preference for honoring a

8   plaintiff's choice of forum is just that—a preference; it is not a right.  *E.I. du Pont de Nemours*

9   *Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 591 (D.Del. 1981) (declining to honor

10  plaintiff's choice of forum because to do so would "needlessly engage two courts in the

11  simultaneous management" of similar issues).  *See also Medi USA, L.P. v. Jobst Institute, Inc.*,

12  791 F. Supp. 208, 210 (N.D.Ill. 1992) (recognizing that a plaintiff's choice of forum is not usually

13  a dominant factor and has diminished in significance since the enactment of § 1404(a).  Further,

14  when the plaintiff's choice of forum is the result of forum-shopping, it is entitled to little, if any,

15  weight.  *Italian Colors Restaurant, et al. v. American Express Co.*, 2003 U.S.Dist. LEXIS 20338,

16  at *11 (N.D.Cal. Nov. 10, 2003) (citing *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622,

17  628 (9th Cir. 1991)).  Plaintiffs claim that filing suit in their home state can hardly be called

18  forum shopping, but when plaintiffs have admitted that this related action was filed in "direct

19  response" to the first-filed Delaware lawsuit, that is forum shopping.

20         Plaintiffs also argue that defendants mistakenly focus on where the infringing acts took

21  place, when the conception of the inventions and their reduction to practice all took place in this

22  District.  But plaintiffs make too much of their home cooking.  The "preferred forum" in patent

23  infringement cases is where the "center of gravity of the accused activity" is located.  *Laitram*

24  *Corp. v. Morehouse*, 31 U.S.P.Q.2d 1697, 1700 (E.D.La. 1994).  *See also AMP Inc. v. Burndy of*

25  *Midwest, Inc.*, 340 F. Supp. 21, 25 (N.D.Ill. 1971) ("[t]he trier of fact ought to be as close as

26

27  [3] For example, Jeffrey Bezos and Ellen Ratajak can testify regarding the '141 patent even though
    inventors Sheldon Kaphan and Thomas Schonhoff are no longer employed by Amazon.

28  Likewise, inventors Robert McDade and Anne Krook can testify regarding that the '609 patent
    even though Bonnie Bouman is no longer employed by Amazon.

1   possible to the milieu of the infringing device and the hub of activity centered around its

2   production"). Indeed, a plaintiff's choice of forum may be disregarded when the "central facts"

3   occurred outside that forum. *Ricoh Co., Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 481 (D.N.J.

4   1993). Because most of the accused websites are operated in the Northeast, the "center of

5   gravity" in this case is much closer to Delaware than this District.

6      Accordingly, the convenience and other private interest factors favor transfer to Delaware.

7   **C.    The Public Interest Factors And Other Considerations Also Favor Transfer**

8        **to Delaware**

9      All parties to this action are Delaware corporations, and the District of Delaware has a

10  compelling interest in resolving disputes between Delaware corporations. *Datex-Ohmeda, Inc. v.*

11  *Hill-Rom Services, Inc.*, 185 F. Supp.2d 407, 412 (D.Del. 2002). Plaintiffs claim that all federal

12  courts are presumed to be equally familiar with applicable law. While defendants do not imply

13  that this District is unfamiliar with patent law, the fact remains that Delaware has "considerable

14  experience with patent cases." *Quantel Ltd. v. Adobe Systems Inc.*, 1996 U.S.Dist. LEXIS 21651,

15  at *4-5 (D.Del. Dec. 12, 1996). Indeed, Judge Joseph Farnan, Jr. (who is assigned to the

16  Delaware action) has handled countless patent cases and recently presided over a complex patent

17  infringement trial. *See NCUBE v. Seachange Int'l, Inc.*, 313 F. Supp. 2d 361 (D.Del. 2004).

18      Transferring this action to the District of Delaware would also conserve judicial resources

19  because then only one judge would have to "be educated on the technology in general and the

20  particular patents-in-suit." *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F. Supp. 1350,

21  1354 (S.D.N.Y. 1992). This conservation of judicial resources is particularly significant in light

22  of the Federal Circuit's recent opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir. 2005).

23  There, the Court disapproved of the more straightforward dictionary approach to claim

24  construction in favor of an unrestrained approach in which the court is not barred from

25  considering any particular sources in interpreting patent claims, as long as they are not used to

26  contradict unambiguous claim language. *Id.* at 1324. Now that courts are encouraged to follow a

27  more liberal approach to claim construction, it makes sense for only one judge to construe the

28  parties' patent claims so that there is no risk of any inconsistent interpretations by another court.

1    Finally, because the claims and parties in both actions are substantially similar, this action

2  is more likely to settle as part of a global settlement with the Delaware action.  That prospect

3  would presumably be enhanced by the transfer of this action to the District of Delaware.  Indeed,

4  Delaware has a magistrate judge charged with facilitating the settlement of cases.  If both cases

5  and all patents are considered for settlement purposes at the same time by the same magistrate

6  judge, and if both cases share a coordinated discovery and trial schedule, settlement discussions

7  in both actions can be facilitated.

8    For all of these reasons, this case should be transferred to the District of Delaware.

9  **III.    THIS ACTION SHOULD BE DISMISSED, STAYED OR TRANSFERRED TO**

10  **THE DISTRICT OF DELAWARE UNDER THE FIRST-TO-FILE RULE**

11    Plaintiffs argue that the first-to-file rule only applies where "one action is the mirror

12  image of the other," but that is simply false.  It is well established that neither the parties nor the

13  issues in the two actions need to be identical in order to invoke the first-to-file rule as long as the

14  two actions share "overlapping factual and legal issues." *Mastercard Int'l. Inc. v. Lexcel*

15  *Solutions, Inc.*, 2004 U.S.Dist. LEXIS 10906, at *24 (S.D.N.Y. Jun. 18, 2004); *Google, Inc. v.*

16  *Am. Blind & Wallpaper Factory, Inc.*, 2004 U.S.Dist. LEXIS 27601, at *12 (N.D.Cal. Apr. 8,

17  2004).  Accordingly, if this Court does not transfer this action under § 1404(a), this action should

18  be dismissed, stayed or transferred to Delaware under the first-to-file rule.

19  **IV.    CONCLUSION**

20    For the foregoing reasons, defendants respectfully request that this Court either

21  (1) transfer this action to the District of Delaware pursuant to 28 U.S.C. § 1404(a); or (2) dismiss,

22  stay, or transfer this action to the District of Delaware pursuant to the first-to-file rule.

23

24

25

26

27

28

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

1

2  DATED: September 16, 2005    By: _____

3                                 DOUGLAS E. OLSON
                                  STEPHEN S. KORNICZKY
4                                 JAMES V. FAZIO, III
                                  PAUL HASTINGS JANOFSKY & WALKER LLP

5                                 Attorneys for Defendants
                                  CENDANT CORPORATION; TRILEGIANT
6                                 CORPORATION; ORBITZ, LLC; ORBITZ, INC.;
                                  BUDGET RENT A CAR SYSTEM, INC.; AND AVIS
7                                 RENT A CAR SYSTEM, INC.
                                  *Admitted Pro Hac Vice*

8                                 And

9                                 K. Michael Fandel
                                  WSBA# 16281
10                                Graham & Dunn PC
                                  2801 Alaskan Way, Suite 300
11                                Seattle, WA 98121
                                  Email: mfandel@grahamdunn.com
12

13

14                        **CERTIFICATE OF SERVICE**

15      I hereby certify that on September 16, 2005, I presented the foregoing to the Clerk of the

16  Court using the CM/ECF system, which will send notification of such filing to the following:

17      David T. McDonald
        davidm@prestongates.com
18
        Attorneys for Plaintiffs
19
                                        /s/ K. Michael Fandel
20                                      K. Michael Fandel

21

22

23

24

25

26

27

28

REPLY I/S/O DEFENDANTS' MOTION TO
TRANSFER VENUE - Case No. CV-05-1137        -7-
SAN/121532.3

PAUL, HASTINGS, JANOFSKY & WALKER
3579 VALLEY CENTER DRIVE
SAN DIEGO, CA 92130

# EXHIBIT C

1

1          UNITED STATES DISTRICT COURT
2          WESTERN DISTRICT OF WASHINGTON

3  AMAZON.COM, et al.,                    )
                                          )
4                          Plaintiffs, )  No. C 05-1137 RSM
                                          )
5              v.                         )  Seattle, Washington
                                          )
6  CENDANT CORP., et al.,                 )
                                          ).
7                          Defendants. )
   _____)

8

9     BEFORE THE HONORABLE RICARDO S. MARTINEZ, DISTRICT JUDGE

10           REPORTER'S TRANSCRIPT OF PROCEEDINGS

11                   NOVEMBER 21, 2005

12

13

14  APPEARANCES:

15  For Amazon and A 9:            DAVID McDONALD

16  Also present:                  LYNN PASSAHOW
                                   DAVID HADDEN
17                                 MICHAEL FANDEL
                                   DOUG OLSON
18                                 JAMES FAZIO
                                   STEVE KORNICZKY
19

20

21

22  Court Reporter:               Laurene Kelly, RDR, CRR
                                  Room 600
23                                1010 Fifth Avenue
                                  Seattle, WA  98104
24                                (206) 553-1899

25  Proceedings recorded by mechanical stenography, transcript
    produced by computer-aided transcription.

                              ORIGINAL

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

2

1    SEATTLE, WASHINGTON                    MONDAY, NOVEMBER 21, 2005
2    HON. RICARDO S. MARTINEZ, DISTRICT JUDGE              1:40 P.M.
3                          PROCEEDINGS:
4           THE CLERK:  This is the case of Amazon dot com, et
5    al. versus Cendant Corporation, et al., case number C 05 dash
6    1137, assigned to this court.
7           Will counsel please make their appearances for the
8    record.
9           MR. McDONALD:  My name is David McDonald for Preston
10   Gates on behalf of Amazon and A 9.
11          To my left is Lynn Passahow from Fenwick and West and
12   Mr. David Hadden from Fenwick and West in Mountain View.
13   Mr. Hadden will be arguing the motion for our side.
14          THE COURT:  Gentlemen, good afternoon.
15          MR. FANDEL:  Good afternoon, Your Honor.  My name is
16   Michael Fandel from Graham and Dunn.
17          To my right is Doug Olson from Paul Hastings firm, to
18   his right James Fazio, and to his right Steve Korniczky, all
19   from the Paul Hastings firm.
20          THE COURT:  And welcome to you gentlemen.
21          Counsel, we basically have two motions today.  Let me
22   tell you first of all the Court has received and had a chance
23   to review your motions submitted, the declarations that were
24   attached, the exhibits that came as part of the Court's working
25   copy of materials, and had even a chance to look at some of the

1    case law in this particular case.

2            Obviously the Court will consider and make a ruling

3    on the motion to transfer, first of all, because that will

4    affect what happens with the motion to dismiss.  In order to

5    maximize your time and give you an opportunity to argue, both

6    because the Court has not decided what ruling to make on the

7    motion to transfer at this point in time, let me suggest

8    that -- first of all the motion to dismiss is not very complex.

9    I would suggest you spend most of your time on the motion to

10   transfer.  All right?  But you can certainly spend some time if

11   you wish on the other motion as well.  All right?

12           Everybody ready?

13           MR. OLSON:  Yes, Your Honor.  I'm Doug Olson, and I

14   will argue the motion to transfer.

15           THE COURT:  Thank you, Mr. Olson.

16           MR. OLSON:  The first of the two cases in question,

17   the Delaware case, was filed first, alleging infringement of

18   Cendant's '370 patent by Amazon.  That patent basically

19   describes and claims a recommendation procedure, in other

20   words, other people who have selected the books you select also

21   enjoyed the following books, and in essence that sort of

22   generally describes the nature of the patent.  It's broader

23   than that in some other aspects, but I think in view of

24   Amazon's technology and their business that sort of describes

25   what it's about.

1          THE COURT:  I don't buy any books from Amazon, never

2   have, but they always send me the recommended cookware because

3   of the cookware that I bought previously, so I understand.

4          MR. OLSON:  That's the same thing, Your Honor.

5          THE COURT:  All right.

6          MR. OLSON:  The -- there was some settlement

7   discussions, and then the Delaware case was temporarily

8   dismissed, and then -- I'm sorry -- the -- some settlement

9   discussions, and then it was reinstated, and then there was

10   a -- this case was filed, and along with this case there was a

11   press release by Amazon, and that press release indicated that

12   this suit was a direct response to the Delaware suit.  The

13   press release says, this suit was filed in direct response to

14   Cendant's refiling of their patent infringement suit.

15          Also it was indicated that this was the first time

16   any of the four patents in this suit had ever been sued on.

17   The spokesperson for Amazon said, this is the first time we

18   have asserted any of these four patents.

19          And furthermore it was made clear that they would not

20   have been asserted had Amazon not been sued in Delaware.  It

21   goes on to say, we would not have asserted them if Cendant had

22   not filed them against us.

23          And it was made clear that it was a defensive

24   maneuver.  It's purely a defensive measure.  So you can hardly

25   think of a better example of a defensive suit and a better

5

1    application of the first-to-file rule.

2        Now, Amazon does not explain or justify the press

3    release in its papers, and they basically ignored it, and I

4    think that it's fair to assume that the very clear language of

5    the press release speaks for itself.  This is a defensive

6    action.  Now, it seems in this case that the law is clear that

7    the first-filed case should be the one that goes forward and

8    this case should be dismissed or transferred to Delaware.

9        THE COURT:  Well, Mr. Olson, isn't part of the

10   problem there, though, with the first-to-file rule, the way I

11   understand it is it would permit a district court to decline

12   jurisdiction over an action when a complaint involving the same

13   parties, same issues has already been filed elsewhere.  Is that

14   really what we have here?

15       MR. OLSON:  I think it is, Your Honor.  And I think

16   Amazon would argue that there has to be an exact identity of

17   issues and parties, and that certainly is not the law as we

18   understand it.

19       In the Google case we cited, for example, that case

20   involved a declaratory judgment action for infringement of a

21   trademark.  It was filed in the Northern District of

22   California.  The defendant A B W F filed a trademark

23   infringement action in New York and added five additional

24   parties.  Now, that's very similar to this case because there

25   are four additional parties in Delaware action to those

6

1    involved in this action.

2         And in the Google action the court said the fact that
3    there were five additional parties did not prevent the
4    application of the first-to-file rule, and it pointed out that
5    Google had a similar theory of infringement for all of the
6    parties and thus the fact that there were a few more parties
7    was not going to work a situation where the first-to-file rule
8    could not be applied.

9         Amazon alleges a similar theory of infringement for
10   all of the parties in this case, and so we have almost exactly
11   the same situation as was present in the Google case; therefore
12   the fact that there are a few additional parties, some
13   additional Cendant parties, really shouldn't make any
14   difference and the first-to-file rule should be applied.  The
15   difference in the parties is not material to the application of
16   the rule.

17        Secondly with regard to the issues Amazon also says,
18   well, the issues are different in this case than they are in
19   the Delaware case, and they cite the fact that there are five
20   patents, four in Seattle, one in Wilmington.  Your Honor, as we
21   pointed out in our briefs, these patents are very similar and
22   this is much like the Mastercard case we've cited.

23        In Mastercard a suit was filed for misappropriation
24   of trade secrets and software licenses relating to a particular
25   type of software.  The second case was for noninfringement and

7

1    invalidity of patents relating to that same software and,

2    although facially one might think that those were two different

3    cases or had two different issues, one involving the licenses

4    and trade secrets, the other involving patents, which are sort

5    of the opposite of trade secrets, the court held basically it's

6    the same thing.  It's the same dispute, the same general

7    operative facts which are driving both cases, and so they held

8    that, although they weren't exactly mirror images of each

9    other, it was appropriate to apply the first-to-file rule on

10   the basis that the issues were the same.  And we think that's

11   the situation here.

12           Another case is the Syngenta case that we've cited.

13   Now, there the court noted that there was an overlap that was

14   sufficient.  One case was basically a patent infringement case,

15   the other case was an antitrust case, but the court held that

16   the root issues were close enough so that the two cases could

17   be tried together.

18           Now, what do we have in this case?  First of all, in

19   Delaware the '370 patent, as I indicated, was a patent based

20   upon this recommendation procedure, and it's a patent that

21   relates to doing business on the Internet.

22           The '141 patent in this suit is another patent that

23   relates to doing business on the Internet, and that patent also

24   has a recommendation procedure.  In that patent the

25   recommendation is made by an affiliate who will recommend

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    products or services of the company that they are an affiliate

2    for, so again there's a recommendation that will steer the

3    Internet customer to goods and services of the patentee.

4        Then there's the -- in addition there's the '399

5    patent, which is on a way of protecting your credit card

6    number; the '079 patent, which is on a -- just a shopping cart,

7    another method of facilitating business on the Internet so that

8    when you make your purchases it facilitates making more than

9    one purchase or more than one selection during a particular

10    session.

11        The '609 patent directs a customer to the areas which

12    will be of particular interest to that customer based upon

13    buying patterns, and buying patterns is connected with the

14    basic recommendation procedure of the '370 patent, because

15    that's what it's based upon.  It's based upon buying patterns

16    of other people who bought the same book that you did, and then

17    it directs you to those other things.

18        So basically what these patents are all related to is

19    doing business over the Internet where a customer logs in, has

20    a chance to select from various items which are offered by the

21    seller, and is directed in one way or another to items which

22    might have most interest to him, so there's a lot of similarity

23    between these various patents, particularly with regard to the

24    recommendation method and particularly with regard to the

25    buying patterns, which is part of the '370 patents, and also

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

9

1    it's a specific part of the '609 patent, which is a browse

2    graph, and basically the browse graph simply directs you to

3    areas that you would be interested in based upon the initial

4    selections you make when you enter the website of the company

5    that's doing the selling.

6          So there is a whole lot of similarity between these

7    various cases and the patents at issue, Your Honor.

8          Now, as indicated before, in view of the fact that

9    this was simply a defensive action filed in response to the

10   Delaware case, the law clearly indicates that under the

11   first-to-file doctrine this case should be dismissed or

12   transferred to Delaware, and we would request that relief from

13   the Court.

14         In addition it would be proper to transfer this case

15   under the forum non conveniens theory.  The key factors in that

16   determination are judicial economy.  Judicial economy may be a

17   determinative factor, even if the convenience of the parties

18   and the -- and convenience of the witnesses were to lead to a

19   different result, and that's the holding of the Regents of the

20   University of California versus Lilly case, which is a federal

21   circuit case, and we've cited that in our brief.

22         Also the AT and T case which we've cited indicates

23   that, even if all of the other factors are near equipoise,

24   still it would be proper to transfer the case if there was a

25   strong relationship between the cases.  And the AT and T case

1    we've cited also indicates that judicial economy is one of the

2    important issues that should be considered.

3            Now, with regard to the issues of judicial economy,

4    we have five patents in this case, Your Honor, and there will

5    be five Markman hearings, and there will be possibility of,

6    particularly between the '370 patent, which is in Delaware, and

7    the four other patents, which are now the subject of the action

8    in this case -- there's definitely a possibility that there

9    will be overlapping of the issues.

10           Certainly the term recommend is used, as we've

11   indicated in our brief; so -- in other places the words might

12   not be exactly the same, but the claim construction issues are

13   going to be very similar because they're similar processes for

14   similar purposes for Internet commerce.

15           So I would submit that it's incredibly important from

16   a judicial economy standpoint to have one court dealing with

17   all of the issues of claim construction in a Markman hearing.

18           Secondly discovery issues.  It's important, I think,

19   Your Honor, to have consistency in the approach to various

20   issues by the parties.  The parties should not be taking a very

21   constrictive approach in one case and seeking broad discovery

22   in another.  I think that can best be handled by having all of

23   the cases in one court before one judge, rather than the

24   possibility of having a different approach taken to similar

25   issues in the two cases.

11

1           And I think that certainly when we come to the issue

2   of trial it would be much more efficient to have these issues,

3   with the same parties and essentially the same patents, all

4   directed at the same subject matter, just tried once instead of

5   twice, as would be the case if these cases continue to go in

6   separate courts.

7           The center of gravity analysis was carried out by

8   both parties.  There's a little bit of a difference there.  I

9   think one of the big differences is that the -- none of the

10  center of gravity factors considered by Amazon included

11  judicial economy, and we think that's an important thing.

12          Now, in terms of convenience of the parties, there

13  are some parties -- and if I may approach the board here, Your

14  Honor.

15          THE COURT:  You may.

16          MR. OLSON:  Starting with Seattle, where this case is

17  pending, we then have the Delaware case, and we made this

18  insert, and I hope I'm not offending the Court by showing this

19  on a map.  I've been in the eastern area many times.  I kind of

20  keep forgetting just how close those states are and how they're

21  arranged.  I had always forgotten that Delaware is kind of

22  cozied up both to New Jersey and also to Pennsylvania.

23          But in any event this is Wilmington.  We have

24  calculated these distances by several means.  They come out to

25  just a little over or just a little under a hundred miles.  We

12

1    would not object to the service of process to any of these

2    cities, Norwalk, Parsippany, and New York, on the basis that

3    there's a little bit more than a hundred miles, and I think

4    that particularly most of the people are located in Parsippany

5    and they would easily be subject to the court's jurisdiction in

6    Delaware, based upon my calculations.  Again the area covered

7    back there and probably about half or a third the area that the

8    State of Washington covers.

9        Now -- and then we have Chicago, Your Honor, and

10   Chicago is more than a hundred miles from the courthouse in

11   Delaware but it's still a lot closer than the -- a lot closer

12   than going all the way to Seattle.

13        So certainly for all of the Cendant parties the

14   Delaware courthouse is much more convenient.

15        Now, there -- the location of the infringement, Your

16   Honor, is another important factor.  As we've indicated in our

17   papers, the infringement primarily -- the alleged infringement

18   by Cendant primarily takes place in the Northeast area around

19   Parsippany, and so that's an important factor in all the

20   analyses that people look at.

21        THE COURT:  Counsel, before we leave the factor

22   involving convenience of the parties and of the witnesses, you

23   have not identified any nonparty witnesses at this point in

24   time.  Understandably so at this stage in the game.  Let me ask

25   you this:  In reading I think it was <u>Decker Coal Company versus</u>

13

1   <u>the Commonwealth</u>, sets out the eight factors that you're
2   talking about and that you point to in your moving documents,
3   when the Court looks at all these eight factors, when you're
4   looking at the convenience of the parties and the witnesses, in
5   this particular case, understanding that there may have to be
6   Markman hearings, that there will have to be Markman hearings
7   and trial testimony as well, can the Court under the statute
8   you're looking at consider the fact that nonparty witnesses
9   will necessarily have to appear for both the Markman hearing
10  and for trial, even if the defendant has not yet named those
11  witnesses?
12          MR. OLSON:  Your Honor, that's one of the factors.
13  Now, a number of courts have addressed that in various
14  different ways, and in fact the case with Amazon, that Amazon
15  is involved in noted -- case that Amazon is involved in -- and
16  I'll try to get the cite for you in a second, Your Honor --
17  noted that Amazon had identified a lot of nonparty witnesses
18  and it was pretty hard to evaluate whether that was accurate at
19  the time and whether they would actually be involved in the
20  trial and, if so, how that would occur.
21          A lot of times I think nonparty witnesses testify by
22  deposition, either reading of the deposition or videotape,
23  because it may be possible to subpoena them for their
24  deposition but to get them to attend a trial is not so simple,
25  and in my experience, if the nonparty witness is willing to

14

1    voluntarily go to a trial, even though there's no subpoena
2    power, that really isn't a major inconvenience in today's world
3    where people are able to schedule trips to trials all over the
4    country.

5            So I think in the limited case where there's a
6    nonparty witness who's willing to cooperate with you, who's
7    willing to come to trial, it's almost in the category of party
8    witnesses or expert witnesses who have some interest in the
9    outcome of the case and are willing to come to trial.  So I
10   don't think that probably makes too much difference.  There
11   may -- I'm sorry, Your Honor.  It was the <u>Pinpoint versus
12   Amazon</u> case, and that's cited on page 4 of our reply brief.

13           And particularly the Court observed that Amazon
14   failed to provide evidence that former employees' testimony was
15   not cumulative and would not be provided voluntarily.

16           THE COURT:  I guess, Mr. Olson, my question was more
17   directed towards the defendants' nonparty witnesses.  I don't
18   know if there will be any.  Having handled the lengthy Markman
19   hearing not too long ago, I assume that there's always experts,
20   there will be nonparty witnesses from the defense perspective.
21   Is it more convenient for them to be closer to the East Coast
22   than it is closer to the West Coast?

23           MR. OLSON:  Your Honor, we haven't -- we have not
24   selected our experts yet, and I would expect that it would be
25   more convenient for them to be closer to the East Coast, but I

1    can't really make that representation, Your Honor, because we

2    simply don't know who they are; and no discovery has occurred

3    in this case, so we can't really identify specifically

4    witnesses who would be attending the trial on our behalf or

5    third parties.

6            And that's apparently the situation with Amazon also.

7    With the exception of a couple of inventors, I don't think they

8    have been able to -- and a couple of patent attorneys I don't

9    think they have been able to identify anybody, and I think the

10   inventors and the patent attorneys certainly would be in the

11   category of the cooperative third parties.

12           THE COURT:  I don't want to take up too much of your

13   time, counsel.  You're running out of time.  I don't know if

14   there's --

15           MR. OLSON:  Yeah.  I just want to make a couple quick

16   points, Your Honor.

17           In terms of the pendency of related litigation, which

18   is a factor, this is a factor we think is important.  It falls

19   under, I think, the issues I discussed before regarding

20   judicial economy, and I think this is a factor that really

21   hasn't been touched by the brief of Amazon.  We think it's an

22   important.

23           The public interest, all of the parties are

24   corporations of Delaware, so there's an interest certainly in

25   the State of Delaware in having corporations which are

1    incorporated there in front of it for these issues.  And then,

2    finally, the familiarity of the court I would guess is pretty

3    much of a neutral issue.

4         So I think the key issues here are the pendency of

5    the litigation, the judicial economy, and the fact that there

6    is a strong -- we have five parties, don't know how many people

7    would be involved, but they are all pretty much located right

8    in the Northeast, and it would be much more convenient for them

9    to be in attendance at trial there than to have to come or to

10   have the opportunity to come to Seattle.

11        Thank you, Your Honor.

12        THE COURT:  One last question, Mr. Olson.  I just

13   want to double-check.  You do agree that the burden -- you can

14   try to sway the Court in this case -- is on the defense.

15   Correct?

16        MR. OLSON:  Well, we're bringing the motion but I

17   think the -- I don't think that there's any presumption that

18   just because the case is filed that it is the more convenient

19   forum, and I think, in view of the press release, whatever

20   presumption might be there is more than overcome by, you know,

21   the press release that it was filed as a defensive measure as

22   opposed to something for convenience.

23        And, Your Honor, I would point out that in the notice

24   of related actions the Delaware case -- this case was

25   identified, and in the second-to-the-last sentence it indicated

1    that the -- that this case, civil action number 205 CV 01137

2    RSM, involves substantially the same parties as in the Cendant

3    case, so we have an admission that it's substantially the same

4    parties, Your Honor, so I think that admission plus the

5    admission in the press release over -- outweigh and overcome

6    any presumption that there might be that this is an appropriate

7    venue.

8            THE COURT:  Thank you very much, counsel.

9            What I'll do is we'll have your opponent's response

10    simply to the motion to transfer.  Then if anyone over there

11    wants to argue about the motion to dismiss, we have a certain

12    period of time we'll get into that.

13            MR. HADDEN:  Good afternoon, Your Honor.  Dave Hadden

14    for Amazon dot com and A 9.

15            Let me start, Your Honor, with your last question.

16    And, as the Supreme Court said in Gulf Oil, when a plaintiff

17    sues in their home court on their home turf, that choice is

18    entitled to a very strong presumption.  It should not be set

19    aside lightly.

20            Now, Cendant has pointed to this press release as

21    some reason to set aside that presumption.  There is nothing

22    nefarious about Amazon's press release.  Amazon had a public

23    policy of not hindering web commerce by asserting patents.  It

24    files for patents, prosecutes them; it obtains them as a

25    defensive deterrent measure.

18

1        I think, as Your Honor knows from a recent case
2   involving some insurance litigation, Amazon gets sued a lot on
3   patents and it needs some defensive protection.  That's why it
4   acquires patents.  So when it got sued by Cendant on patents it
5   used its defensive arsenal to sue back.  There's nothing
6   nefarious about that.

7        And to put out a press release to alert the rest of
8   the web community that this was not signalling a change in
9   Amazon's patent strategy was not now going to go out and attack
10  people unilaterally.  That was the purpose of the press
11  release.

12       There is nothing about that press release or those
13  actions that brings this case into the first-to-file rule.  As
14  the Ninth Circuit said in the Pacesetter case, the
15  first-to-file rule applies when there are duplicative lawsuits
16  pending in two jurisdiction, and it defines what a duplicative
17  lawsuit is.  That is one where, if one of the suits is
18  determined, it will leave little or nothing to be determined in
19  the second suit.

20       We're not even in that ballpark.  Whatever happens in
21  Delaware is not going to determine one issue in this case and
22  vice versa.  The Delaware case involves a single patent that's
23  held by Cendant Publishing.  They're accusing Amazon of
24  infringing that patent.  The only issues in that case are the
25  validity of Cendant Publishing's patents and the operation of

1    certain features in Amazon dot com's website. None of those

2    issues are in this case, and Cendant Publishing is not even a

3    party to this case.

4         Now, in this case involving four patents, three of

5    which are owned by Amazon -- one is owned by a subsidiary A 9,

6    and the issues involve the operation of the defendant's

7    websites, Avis, Budget, Orbitz, Trilegiant, and Cendant. None

8    of those companies are parties in Delaware. Their technology

9    is not at issue in Delaware. Amazon's patents are not at issue

10   in Delaware. And A 9 is not a party in Delaware.

11        So of the eight parties to these collective suits the

12   only common party is Amazon dot com.

13        THE COURT: Mr. Hadden, you did file a notice of

14   related case back there.

15        MR. HADDEN: We did, Your Honor. That was because

16   actually Cendant didn't file one as was required by the local

17   rules back there relating to its original case that it filed

18   and then dismissed, so to fill that gap we filed one

19   identifying both the previously-filed Cendant suit and, out of

20   an abundance of caution, we notified the court that there was

21   another suit pending out here. That's not an admission. The

22   parties are who the parties are.

23        THE COURT: Isn't it true, though, that, even though

24   these patents -- there are five patents, as you indicate, one

25   back there in the Delaware matter -- that they are all really

20

1    interrelated?

2           MR. HADDEN:  They're not related at all, Your Honor.

3    Four of them out here are related to inventions that were done

4    by Amazon and its employees in developing Amazon's business.

5    The patent back East is owned by Cendant Publishing.  It has

6    nothing to do with technology developed by Amazon.  There's no

7    relation between the two.

8           The only relation that Cendant points to is that they

9    all have to do with doing business on the Internet.  But

10   there's probably a hundred cases pending in this country about

11   doing business on the Internet, and the theory that they should

12   all be consolidated because of that level of commonality is

13   just sort of nonsense, Your Honor.

14          Amazon must be involved in five different patent

15   cases right now involving business on the Internet and no one

16   has suggested that those should all be consolidated.  That is

17   the only overlap they have pointed to, and they have not cited

18   a single case where that level of overlap has supported either

19   transfer or consolidation.

20          So in fact there's no connection between these

21   patents and Cendant's patents.  There's no connection between

22   the allegedly infringing activities in both cases.  One case,

23   they're performed by Cendant and its affiliates back East.

24   Another case, they're performed by Amazon here.  Unrelated

25   people, unrelated actions.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

21

1          So the first-to-file rule has nothing to do with this
2    case and, as the Ninth Circuit held in All Trade, if the issues
3    or the parties are dissimilar in the two courts, applying the
4    first-to-file rule is reversible error because it's a
5    misapplication of the law.

6          So, given that there's no first-to-file rule and
7    given that these cases have no relation that would allow them
8    to be consolidated in any court, we're left with the private
9    1404 A analysis, and all of those factors weigh heavily in
10   keeping the case here in Seattle.

11         The first one, as I mentioned, is what the Supreme
12   Court and Ninth Circuit said repeatedly, which is when a
13   plaintiff sues in his home court he is entitled to great
14   deference, and that should not be put aside lightly.

15         Secondly, this is furthest thing from forum shopping.
16   Forum shopping is defined as choosing a forum that has little
17   or no connection with the facts of the case.  In this case the
18   forum is Amazon's home base.  This is where their inventions
19   were developed.  It's where their inventors are, including,
20   importantly, five third-party inventors who are no longer
21   Amazon employees.  Those people cannot be compelled to testify
22   in Delaware.

23         In addition there are three prosecuting attorneys who
24   prosecuted the patents at issue in this case.  All of them were
25   in the Seattle area.  All of them are third parties.  All of

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    them cannot be compelled to testify in Delaware.  As the

2    Supreme Court noted, this is a key factor in this type of

3    analysis.  You choose the forum where live witnesses can

4    testify.

5         So again there's a total of eight identified, very

6    important, third party witnesses, including inventors, who have

7    to testify likely at a Markman hearing.  The convenience of

8    those nonparty witnesses, as the Ninth Circuit has repeatedly

9    said, is key.  Parties, particularly big corporations, can fly

10   across the country.  That is not an undue burden.  But where

11   you have unrelated third parties their convenience is

12   important.

13         THE COURT:  Won't that be the same for their expert

14   witnesses?

15         MR. HADDEN:  I'm sorry.  I didn't mean to interrupt

16   Your Honor.

17         THE COURT:  Go ahead.

18         MR. HADDEN:  I'm not talking about expert witnesses.

19   I'm talking about fact witnesses who are no longer affiliated

20   with any company.  Expert witnesses get paid for their travel

21   time.  That's not a burden.

22         THE COURT:  May that not be the same, though, for

23   their nonparty witnesses?

24         MR. HADDEN:  They haven't identified any nonparty

25   witnesses.  These are fundamental people to this case.  These

1    are inventors.  They have not identified anyone at all, much

2    less anyone who will be that crucial to the case, in their

3    papers.

4              THE COURT:  Let me ask you a more basic question.

5              MR. HADDEN:  Surely.

6              THE COURT:  I guess I'm kind of struggling with a

7    little bit.  My understanding is that under 28 USC Section

8    1400 B, the special venue provision for patent suits, that

9    requires that an action for patent infringement be filed -- and

10   let me get the quote right -- in the judicial district where

11   the defendant resides or where the defendant has committed acts

12   of infringement and has a regular place -- regular and

13   established place of business.

14             Do Avis, budget, Orvitz [sic], et cetera have a

15   regularly-established place in business in Seattle, or are they

16   merely doing business in Seattle?

17             MR. HADDEN:  I believe, Your Honor, that that statute

18   has been construed so that venue and personal jurisdiction are

19   co-extensive in patent cases.  I don't have a cite for that,

20   but that, I am confident, is the law for the federal circuit,

21   Your Honor.  So if you are doing business sufficiently to

22   subject yourself to personal jurisdiction you fit within the

23   venue statute.

24             THE COURT:  Okay.

25             MR. HADDEN:  It's no doubt that Avis has a place of

24

1    business, too. I think I saw it this morning on my way in from
2    the airport. So I don't think that is any hurdle, Your Honor.
3            So at the end of the day, putting aside the fact that
4    there is no first-to-file rule, there is no judicial economy
5    for transferring this case because it cannot be consolidated,
6    we're left with Amazon's legitimate choice of its home forum,
7    which should be given great deference, and we're left with the
8    Ninth Circuit's decision in Decker Coal, which we cited Your
9    Honor, that said that under 1404 A a court shouldn't just shift
10   in convenience from a plaintiff to the defendant.
11           And that's essentially what they're asking for here,
12   Your Honor. You strip away all the smoke and mirrors, the only
13   argument they have is that they have more people in the
14   Northeast and somehow now Chicago's part of the Northeast, but
15   that's not sufficient as a matter of law, Your Honor.
16           And I can address the individual cases, if you'd
17   like, that Cendant cited. In all of those cases the technology
18   involved in the two cases were the same parties' technology.
19   There's never a case like this where it's one side's patents in
20   one case and somebody else's patents in another case. That's
21   just not true.
22           The Google case, for instance, the Court held that
23   the liability of these extra defendants were all flowing
24   directly from Google's liability so there would be no
25   additional issues with them.

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1          Mr. Olson's suggestion that there's the similar

2    theory between this case and the Delaware case, that's just not

3    true, Your Honor.  The theory in the Delaware case is that

4    Amazon is infringing Cendant's patents.  The theory here is

5    that this group of five companies is infringing four of

6    Amazon's patents.  There's no similarity in those theories.

7    There's no overlap.  That's not what happened in Google.

8          Similarly, Your Honor, the Mastercard case, it

9    involved the same parties' technology.

10         The Syngenta case that was mentioned, that was not

11   even a transfer.  It was just a consolidation of a patent in an

12   antitrust case.

13         So there's no case that they have cited that's

14   anywhere close to the facts of this case in which a court has

15   transferred under 1404 A or the first-to-file rule.

16         I can get you those cases on personal jurisdiction

17   and 1400 B, Your Honor.

18         THE COURT:  Thank you.

19         MR. HADDEN:  If there's nothing else, I'll sit down,

20   Your Honor.

21         THE COURT:  Let me ask you one other question.

22         MR. HADDEN:  Surely.

23         THE COURT:  In looking at 1404 A there really are two

24   major factors, and I understand the eight factors the Court

25   looks at under Decker Coal.  But the Court has to look at -- to

1    determine whether or not the district in which defendants seek

2    to have the action transferred is one in which the action could

3    have been brought.

4              That's really not at issue here?

5              MR. HADDEN:  It's not an issue.

6              THE COURT:  We're looking at the second factor, and

7    that is that the transfer be for the convenience of the parties

8    and the witnesses and in the interest of justice.  And that's

9    maybe where some of the equities they're pointing to come in.

10             Let me ask you this question:  Having handled

11   hundreds of settlement conferences in civil cases myself, would

12   it make sense to have in this case maybe one magistrate judge

13   looking at all of these issues trying to reach a global

14   settlement?

15             MR. HADDEN:  I think if there was going to be a

16   global settlement that could be done.

17             Typically these cases settle through private

18   mediators.  Private mediator can look at the facts of the case

19   here in Delaware.  I don't believe that there's any basis for

20   transferring the case to try to facilitate a global settlement,

21   Your Honor.

22             THE COURT:  Thank you, Mr. Hadden.

23             Does someone wish to address the motion to dismiss?

24             MR. FANDEL:  Your Honor, Mike Fandel.

25             Just a point of clarification, if I could.  We had

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1    called earlier this morning to ask about time, and maybe we

2    miscommunicated, but we were under the impression that there

3    were 20 minutes for the transfer motion and 20 minutes for the

4    motion to dismiss.  It doesn't sound like that's what the Court

5    expects.  We kind of prepared based on another assumption.

6            How much -- I guess we want to know how much time we

7    have to argue the motion to dismiss.

8            THE COURT:  You're the only thing we've got this

9    afternoon, so I don't know.  You can take up to 20 minutes.

10   Not that you need 20 minutes.  You can take up to 20 minutes.

11           MR. FANDEL:  Thank you, Your Honor.

12           THE COURT:  Mr. Korniczky's going to argue.

13           MR. KORNICZKY:  Good afternoon, Your Honor.

14           Your Honor, our motion to dismiss is based on a

15   number of different theories.  Let me first address the Cendant

16   parent company.

17           Simply put, Cendant, the parent company, should be

18   dismissed because it is not a proper party here.  Cendant does

19   not operate the websites that have been alleged to infringe.

20   They didn't develop the websites.  They don't exert control.

21   All of this is established in the Bach declaration,

22   particularly in paragraphs 5 through 7.

23           In addition, you know, as also is -- is also set

24   forth in the Bach declaration, paragraphs 8 through 10, Cendant

25   strictly observes all corporate formalities.  There have been

28

1    no facts pled here that suggest otherwise. There's no facts

2    here that justify piercing the corporate veil or any alter ego

3    agency theory of liability. So with respect to Cendant the

4    parent, I think there's no dispute that that entity should be

5    dismissed from this case.

6              With respect to all of the defendants, what's

7    happened here is Amazon has applied this sort of shotgun theory

8    of liability where they have asserted infringement of three

9    different theories of liability based on, I think, four

10   different patents against five different defendants. There's a

11   case that's right on point here, which is the Gen-Probe case.

12   Although there there were only two patents that were asserted,

13   and the court -- I'd like to read it. If I could read at

14   page -- it's the Gen-Probe case, 926 Federal Supplement 948 at

15   page 960.

16             And there, addressing the liability allegation, the

17   court states that they assert that liability in a confusingly

18   conclusory manner, accuses each of five defendants of three

19   very different causes of action on two different patents. Here

20   we have four different patents, all in one conclusive sentence

21   without adequately specifying the grounds for plaintiff's

22   belief that any of these entities had infringed.

23             And then it goes on and it says that the federal

24   rules do not require that the plaintiff plead with

25   particularity the specific patent claims that have been

29

1    infringed but the rules do require that defendant be given fair

2    notice of what the plaintiff's claims is and the grounds upon

3    which it rests.  The plaintiff's shotgun approach is clearly

4    deficient to serve either of these purposes.

5            That's exactly what's happening here.  In one

6    instance if they're relying on -- well, let me take a step

7    back.  Amazon's argument is we followed Form 16.  They

8    absolutely did not follow Form 16.  Form 16 sets forth an

9    approach where there's one patent asserted based on direct

10   infringement.

11           Here they're alleging direct infringement,

12   contributory infringement, and inducing infringement, and you

13   can't allege all three or any two of those allegations based

14   upon the same facts.  Here they don't tell you what facts

15   they're alleging.

16           So they didn't follow Form 16, which is directed

17   towards direct infringement.  They did follow the approach that

18   was criticized and in which the case was dismissed in the

19   Gen-Probe case.

20           THE COURT:  Well, let's cut through this.  Let's say

21   I agree with you.  Is the motion to dismiss really the proper

22   remedy?  Is a dismissal the proper remedy here?

23           MR. KORNICZKY:  The proper remedy would be to

24   transfer the case, but if that's not an option --

25           THE COURT:  Aside from that.  All right?

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

1        MR. KORNICZKY:  Really what has to happen here is

2   they have to give us fair notice of what they're alleging.

3        THE COURT:  Why can't they do that?

4        MR. KORNICZKY:  I don't think there's any reason they

5   shouldn't, unless they haven't established a case.  We think

6   what happened here is we filed our complaint, two days later

7   they filed theirs and didn't do their homework, so they're

8   expecting us to come back and do it.

9        Their position in the complaint was we can do this in

10  discovery.  But then what do we need the federal rules for,

11  because what you're going to do is you're going to have five

12  defenders and you're going to have one plaintiff and, running

13  around trying to figure out what's at issue, you're going to

14  drag the case out, you're going to run up the expenses for

15  everybody, when all you have to do is break out our allegations

16  and tell us what the basis is.  That hasn't been done here.  So

17  at a minimum what has to happen is that they have to provide us

18  with the basis for each one of those allegations.

19        Now, here what you have are five different websites.

20  Well, the website is our business, and if you turn to any one

21  of those what you'll see are there's a whole slew of different

22  services, different products.  I think if you look at the Bach

23  declaration, paragraph 15, with respect to one of the websites

24  it covers service center networks, emergency roadside

25  assistance, new car summaries.  They have a driver's discount,

1    opportunities to customers on dining or shopping.  They have

2    discounts and rebates for women.  They have pet privileges.

3    And it just goes on and on.  They have educational services.

4           We as a defendant should not have to go forward and

5    try to figure out which one of these are they alleging

6    infringed.  This would be akin to taking General Motors and

7    saying which car -- General Motors infringes our patents but

8    they don't tell us which car, and then they add in Chrysler and

9    Ford and we got to figure out four different patents with

10   different businesses and a hundred different cars.  That's the

11   situation we have here.

12           THE COURT:  Thank you, counsel.

13           MR. KORNICZKY:  You're welcome, Your Honor.

14           THE COURT:  Mr. Hadden, they're making you work

15   today.

16           MR. HADDEN:  They are.  Hello again, Your Honor.

17           Let me start on the last point.  First, Amazon's

18   complaint meets the requirements of Rule 8 and the forum that

19   it has been approved.  For each defendant Amazon identified

20   what patent they infringed and how they did it by identifying

21   their website.

22           Now, there's no allegation that Cendant sells plane

23   tickets and rents cars and sells soap or whatever else they do.

24   We didn't identify any of those products.  That's a red

25   herring.  We're not accusing their cars.  We're not accusing

32

1    their tickets.

2          We're accusing their website. We specifically

3    identified the website by providing its URL. It's the

4    operation of the website, not what they sell over it, that's

5    infringing the patent. And we identified for every defendant

6    explicitly a website that was infringing and identified the

7    patents that were infringed. That's all the federal rules

8    require, and that's what we provided, in fact to be more

9    specific than the electric motor category that's specified in

10   the form.

11         Let me go to -- unless Your Honor has questions with

12   regard to the Cendant issue.

13         THE COURT: Go ahead.

14         MR. HADDEN: Okay. Amazon does not need to pierce

15   the corporate veil to sue Cendant for induced infringement.

16   Federal circuit said that in Manville. So what do we know? We

17   know from public information that Cendant both encourages and

18   aids its -- the infringement of its subsidiaries. It does that

19   by supporting and facilitating their websites. It's listed as

20   the administrator of all the websites except the Orbitz. And

21   it acknowledges doing joint marketing of these websites which

22   are infringing.

23         Now, as the federal circuit said in TiVo, inducement

24   is as broad as a range of actions by which one in fact causes

25   or urges to, encourages or aids another to infringe a patent.

33

1    Now, at this stage it can't be said that Amazon can prove no

2    set of facts under which Cendant's actions fit under that

3    general description.

4          In fact, from what we've seen from public

5    information, Cendant is directly infringing by hosting the web

6    servers that run the Avis and Budget sites.  They are operating

7    the computers that are performing the steps that are claims in

8    these patents.  Now, in that case Avis or Budget or

9    Trilegiant is likely inducing that infringement by providing

10   the infringing content and program, but Cendant itself is

11   likely to direct infringing.  And this motion from Gen-Probe

12   that you can't assert both indirect and direct infringement is

13   just wrong.

14         That has been rejected by scores of courts since

15   then.  And the reason is simply, Your Honor, as even Gen-Probe

16   says, you need not identify the specific claims within a patent

17   that you are asserting at the pleading stage.  And whether a

18   particular party is infringing directly or by inducement

19   depends on the particular claims.

20         For example, frequently you'll have patents, Your

21   Honor, that will have a product claim and then they will have a

22   method claim that covers the use of the product.  And if the

23   defendant is selling the product they are likely directly

24   infringing the product claim and inducing the infringement of

25   the method claim by selling a product that performs the method

1    to their customers.

2            So, because you're not required to identify the

3    specific claims you're asserting when you file a complaint,

4    you're not also not required to identify whether or not the

5    claim is based on direct infringement or indirect infringement,

6    and Snap-on and scores of other cases since Gen-Probe have

7    agreed with that.

8            And there's actually a claim in this case where that

9    applies, so one of these patents is this associates patent.

10   It's '141. And in that patent, as is frequently the case in

11   Internet patents, different entities' actions are claimed by

12   different claims.

13           So that involves a situation where you have a sort of

14   primary merchant who allows other people to link to their site

15   and they pay them commissions, and some of those claims cover

16   the people linked to the site and some of those claims cover

17   the person running the primary site.

18           Now, the defendants likely directly infringe the

19   claims that cover the primary site and they induce infringement

20   by their affiliates of these other claims. So there's nothing

21   improper about that. The cases that they cite that say that

22   you can't both infringe directly and indirectly are cases

23   involving venue disputes where someone tries to say that a sale

24   that is infringing that occurs in one district was induced by

25   some presale activity in another infringement -- in another

1    district -- I'm sorry, Your Honor -- and the courts say no,
2    that's one infringing act.  You can't slide it two different
3    ways to get around the venue statute.
4        But that's not what's going on in this complaint,
5    Your Honor.
6        THE COURT:  Thank you very much.
7        MR. HADDEN:  Thank you.
8        THE COURT:  Anything you want to say in response?
9        MR. KORNICZKY:  Well, maybe just one point just with
10   respect to what other cases are saying, Your Honor.
11       The complaints in virtually all the cases that are
12   identified in their brief provided a far more detailed
13   description of what the products or services were that
14   allegedly infringed.
15       In one of the cases that Amazon cites, the Oki case
16   they relied on, the court distinguished Gen-Probe.  In this
17   particular case they pointed out that the plaintiff had in fact
18   separated out each of those -- direct infringement, inducing
19   infringement, contributory infringement -- and what the court
20   recognized is that in each case the court is addressing
21   particular organizational deficiencies of the respective
22   pleadings.
23       So if you're dealing with one case which is only one
24   patent and the product at issue is pretty straightforward,
25   that's one thing.  Here you've got five different -- five

36

1    different defendants, you've got four different patents, and

2    then you've got easily in the hundreds of services; so that's

3    the distinction, Your Honor.

4         Thank you.

5         THE COURT:  Thank you.

6         Gentlemen, thank you very much.  Let me tell you what

7    my usual standard practice is, which I will follow in this

8    case.  It's to take your arguments back, review once again the

9    written motions as well as the specific case law that you

10   focused on here.

11        Obviously the Court will focus on the motion to

12   transfer first.  If the Court decides not to grant that motion,

13   then we'll focus on the motion to dismiss or ask them to

14   produce a more definite statement.  Hopefully -- we just got

15   done with about a two-and-a-half-week-long civil trial, just

16   got done on Friday.  I'm a little bit behind where I want to

17   be, especially with the holidays coming up, but the hope is to

18   be able to have a written order for you certainly by the end of

19   the month.  All right?

20        MR. KORNICZKY:  Thank you, Your Honor.

21        MR. HADDEN:  Thank you, Your Honor.

22        THE COURT:  We'll be at recess.

23        (At 2:40 p.m. proceedings were adjourned.)

24

25

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

37

1          --oOo--

2          I certify that the foregoing is a correct transcript

3     from the record of proceedings in the above-entitled matter.

4          _Laurene Kelly_
                Laurene Kelly

5          This 19th day of JANUARY, 2006.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

WITHOUT REPORTER'S ORIGINAL SIGNATURE
THIS TRANSCRIPT IS NOT CERTIFIED

# EXHIBIT D

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10 | AMAZON.COM and A.9.COM, INC.,

11 |               Plaintiffs,                          CASE NO. C05-1137RSM

12 |       v.                                           ORDER ON DEFENDANTS' MOTION
                                                        TO TRANSFER
13 | CENDANT CORPORATION; TRILEGIANT
    | CORPORATION; ORBITZ, LLC; BUDGET
14 | RENT A CAR SYSTEM, INC., and AVIS RENT
    | A CAR SYSTEM, INC.,
15
              Defendants.
16

17        This matter is before the Court for consideration of a motion by all defendants to transfer this

18 | case, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the District of Delaware.

19 | Defendants have also concurrently filed a motion to dismiss pursuant to F.R.Civ. Proc. 12(b)(6), but have

20 | asked that the motion to transfer be considered first.  Oral argument was heard on November 21, 2005,

21 | and the parties' memoranda and exhibits have been fully considered.  For the reasons which follow, the

22 | Court shall GRANT the motion to transfer, and DENY the motion to dismiss, without prejudice to

23 | renewal in the Delaware court.

24                                          BACKGROUND

25        This is a patent infringement case, involving four software patents held by plaintiffs Amazon.com

26 | ("Amazon") and A9.com (the assignee of one of the four patents at issue here).   They name as

27 | defendants Cendant Corporation ("Cendant") and its subsidiaries Trilegiant, Orbitz, Budget Rent-a-Car

28

ORDER ON MOTION TO TRANSFER - 1

1   ("Budget"), and Avis Rent-a-Car Systems ("Avis"). All patent infringement allegedly occurred on

2   defendants' websites. All parties (plaintiffs and defendants) are incorporated in Delaware.          This

3   is not the first time these parties, or their subsidiaries, have met in court. In October 2004, Cendant

4   Publishing, Inc., another subsidiary of Cendant, filed suit against Amazon for infringement of a different

5   patent, the "370' patent, in district court in Delaware. The parties agreed to try to settle their dispute,

6   and Cendant Publishing dismissed the case. Upon failure of the settlement negotiations, Cendant

7   Publishing re-filed the case in Delaware on June 18, 2005. Two days later, Amazon filed this suit here.

8   At the time, Amazon made public statements describing this lawsuit as "purely a defensive measure."

9   *See*, Declaration of James Fazio, Exhibit C. According to Amazon spokesperson Patty Smith, "This suit

10  was filed in direct response to Cendant's refiling of their patent infringement suit. This is the first time

11  that we have asserted any of these four patents, and we would not have asserted them if Cendant had not

12  filed against us. It's purely a defensive measure." *Id.*

13          The patents at issue in this case are: (1) the '339' patent, which is directed to secure methods for

14  transmitting credit card authorizations over a non-secure network; (2) the '141' patent, which enables

15  customers to post recommendations of products or services on the Internet; (3) the '079' patent, which

16  provides customers with a selection of shopping baskets from which they can choose a particular shipping

17  method, delivery, or payment option; and (4) the '609' patent, which discloses use of a "browse graph"

18  that helps on-line shoppers to navigate the internet to reach goods and services in which they might be

19  interested. The patent at issue in the Delaware case is the '370' patent, which discloses a method of

20  making recommendations of goods and services to potential customers based on buying history of other

21  customers.

22          Defendants have moved to transfer this action to the Delaware court pursuant to 28 U.S.C. §

23  1404(a), which states that "[f]or the convenience of parties and witnesses, in the interest of justice a

24  district court may transfer any civil action to any other district or division where it might have been

25  brought." The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to

26  protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen

27  v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S.

28

ORDER ON MOTION TO TRANSFER - 2

1  19, 26-27 (1960). The statute "displaces the common law doctrine of *forum non conveniens*" with

2  respect to transfers between federal courts. See *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.

3  2d 834, 843 (9th Cir. 1986).   Section 1404(a) is not, however, simply a codification of the common law

4  doctrine.  In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser

5  showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*.

6  *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955).

7         The statute has two requirements on its face: (1) that the district to which defendants seek to have

8  the action transferred is one in which the action "might have been brought," and (2) that the transfer be

9  for the convenience of parties and witnesses, and in the interest of justice.  § 1404(a).  There is no

10  question here that the action could have been brought in Delaware district court.   Venue for a patent

11  infringement case is restricted:  the case must be brought where the defendant resides or "where the

12  defendant has committed acts of infringement and has a regular and established place of business."  28

13  U.S.C. § 1400(b).   All parties, both plaintiffs and defendants, are incorporated in Delaware and subject

14  to personal jurisdiction there.  The Delaware court also indisputably has subject matter jurisdiction over a

15  patent infringement complaint.   The decision to transfer, then, turns on whether the Court finds such

16  transfer to be proper under the "convenience of parties and witnesses" and "interest of justice" standards.

17  The burden is on defendants to demonstrate that the transfer is warranted.  *Saleh, et al., v. Titan*

18  *Corporation, et al.*, 361 F. Supp. 2d 1152, 1155 (C.D.Cal. 2005).

19         The parties have both argued their positions using the eight-factor test from *Decker Coal Co. v.*

20  *Commonwealth Edison Co., 805 F. 2d 834 (9th Cir. 1986).* Defendants list these as (1) the convenience

21  of the parties and the witnesses; (2) the location where the alleged events in the lawsuit took place; (3)

22  the relative ease of access to sources of proof; (4) the plaintiff's choice of forum; (5) the pendency of

23  related litigation in the transferee forum; (6) the relative congestion of the two courts; (7) the public

24  interest in the local adjudication of local controversies; and (8) the relative familiarity of the two courts

25  with the applicable law.  *Id.* at 843.   These factors were adapted from the traditional *forum non*

26  *conveniens* analysis of public and private interest factors.  *Id.*;   *Saleh*, 361 F. Supp. 2d at 1155.  Because

27  these factors cannot be mechanically applied to all types of cases, they shall be considered here under the

28

ORDER ON MOTION TO TRANSFER - 3

1    statutory requirements of convenience of witnesses, convenience of parties, and the interests of justice.

2        **1. Convenience of the parties.**

3        Amazon asserts that the plaintiff's choice of forum should be given great weight, and has cited a

4    great many cases to that effect.  However, as noted by one California court, "[t]he courts have developed

5    a bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum."

6    *Saleh*, 361 F. Supp. 2d at 1156 (quoting 15 Wright, Miller and Cooper, *Federal Practice and Procedure*

7    § 3848 at 375.)   Because § 1404 application results in transfer, not dismissal as in *forum non conveniens*,

8    a lesser showing of inconvenience is required to upset plaintiff's choice.  *Id.*; citing *Norwood*, 349 U.S. at

9    42.

10        Where the action has little connection with the chosen forum, less deference is accorded plaintiff's

11    choice, even if plaintiff is a resident of the forum.  *Id.*, citing *Cain v. New York State Board of Elections*,

12    630 F. Supp. 221, 227 (E.D.N.Y. 1986).  *See also Chrysler Capital Corp. v. Woehling*, 663 F. Supp.

13    478 (D.Del. 1987); *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991).  In patent

14    infringement actions, the preferred forum is "that which is the center of gravity of the accused activity."

15    *Ricoh Co., Ltd., v. Honeywell, Inc.*, 817 F. Supp. 473, 482 n. 17 (D.N.J. 1993); *quoting S.C. Johnson &*

16    *Sons, Inc., v. Gillette Co.*, 571 F. Supp. 1185, 1188 (N.D. Ill. 1983).  The district court "ought to be as

17    close as possible to the milieu of the infringing device and the hub of activity centered around its

18    production."  *Id.*  Here, the alleged infringement occurred on defendants' websites, which were designed

19    and are maintained at defendants' business headquarters in New York (Cendant), New Jersey (Avis and

20    Budget), Connecticut (Trilegiant), and Chicago, Illinois (Orbitz).  Although none of the defendants

21    actually has its headquarters in Delaware, their chosen forum state, they provided at oral argument a

22    convincing demonstration of the proximity of the New York and New Jersey offices to the Delaware

23    court.  Thus the center of gravity in this case, based on the "hub of activity" around the infringing

24    websites, lies far to the east of Seattle, and weighs in favor of the Delaware forum.

25        As to the relative convenience to the parties,  the Court may not transfer a case simply to shift the

26    burden from one party to another.  *Decker Coal*, 805 F. 2d at 843.  However, the Court may look at the

27    sheer weight of the numbers—two plaintiffs versus five defendants, in considering convenience.  *Selah*,

28

ORDER ON MOTION TO TRANSFER - 4

1  361 F. Supp. 2d at 1162 (quoting *Cochran v. NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D.Cal.
2  1998). This factor thus favors transfer.

3       **2. Convenience of the witnesses.**

4       When considering the convenience to witnesses, "the convenience of non-party witnesses is the
5  more important factor." *Saleh*, 361 F. Supp. 2d at 1160 (quoting *Aquatic Amusement Associates, Ltd. v.*
6  *Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)).  The Court should consider not only
7  how many witnesses each side may have, but also the relative importance of their testimony.  *Id.*, citing
8  *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1335-36 (9th Cir. 1984) (a *forum non conveniens* case).
9  Plaintiff has named four party witnesses and four non-party witnesses, patent inventors who are no longer
10  employed at Amazon.  All are located in Seattle.  Defendants have named eight party witnesses, who are
11  located in New Jersey (Avis and Budget), Chicago (Orbitz), and Connecticut (Trilegiant).  While
12  defendants have not named any non-party witnesses, this is understandable due to the early stage of these
13  proceedings.  As to the non-party witnesses, defendants have not demonstrated any benefit from transfer
14  of the case.  However, this case will necessarily involve expert witnesses, who will have to appear for a
15  <u>Markman</u> hearing as well as for trial.  Plaintiffs may well have the same expert witnesses for this case as
16  for the case already in Delaware.  If so, that factor would strongly favor litigation of this matter in
17  Delaware.

18       **3. Interest of Justice.**

19       The interest of justice factor is the most important of all.  *Nelson v. Master Lease Corporation*,
20  759 F. Supp. 1397, 1402 (D.Minn. 1991); *citing  Medtronic, Inc., v. Americal Optical Corporation*, 337
21  F. Supp. 490, 495-97 (D.Minn. 1971).  "Consideration of the interest of justice, which includes judicial
22  economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and
23  witnesses might call for a different result.'" *Regents of the University of California v. Eli Lilly and*
24  *Company*, 119 F. 3d 1559, 1565 (D.C.Cir. 1997).  In considering the interests of justice, the Court
25  weighs such factors as "ensuring speedy trials, trying related litigation together, and having a judge who
26  is familiar with the applicable law try the case." *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.
27  2d 1286, 1293 (9th Cir. 1989).  Overall, these factors favor the Delaware forum.

28

ORDER ON MOTION TO TRANSFER - 5

1      First of all, there is a related case in Delaware.  "The pendency of related actions in the transferee

2  forum is a significant factor in considering the interest of justice factor." *Jolly v. Purdue Pharma L.P.,*

3  2005 WL 2439197 at \*2 (S.D. Cal.) (*citing  A.J. Industries, Inc.,  v. United States District Court for the*

4  *Central District of California,* 503 F. 2d 384, 389 (9th Cir. 1974); *Continental Grain v. The Barge FBL-*

5  *585,* 364 U.S. at 26.  "Litigation of related claims in the same tribunal is strongly favored because it

6  facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s]

7  duplicitous [sic] litigation and inconsistent results."  *Durham Products, Inc., v. Sterling Film Portfolio,*

8  *Ltd., Series A,* 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).  Plaintiffs assert that this case is not similar to

9  the Delaware case because the two cases involve "different patents, different witnesses, different

10  document, different technologies, and different issues."  Plaintiff's Opposition, p. 14.  However, the cases

11  both concern software patents which relate to internet commerce, and are similar enough that they should

12  be considered by the same court in order to conserve judicial resources and prevent inconsistent rulings.

13  Moreover, it is inconsistent for plaintiffs to argue that the cases are not similar when it was Amazon who

14  filed a "notice of related action" in the Delaware case.  Amazon stated in that notice that the two cases

15  involve "substantially the same parties."

16      The congestion of the court's docket is another factor to be considered under this heading.

17  Defendants have offered evidence from the federal court's website indicating that the District of

18  Delaware has a lower per-judge civil caseload (441 cases) than this district (655 cases).  Plaintiff, on the

19  other hand, has countered with statistics on the median time to trial in the two districts:  16.4 months in

20  this district versus 26 months in Delaware.  Generally, the courts find this to be the more important

21  statistic.  "The real issue is not whether a dismissal will reduce a court's congestion but whether a trial

22  may be speedier in another court because of its less crowded docket."  *Gates Learjet Corp.*, 743 F. 2d at

23  1337.  Here, however, the statistic as to the "speedier trial" offered in Washington is illusory.  This

24  Court's docket is not "less crowded"; it is more.  The statistics on median time to trial do not separate

25  types of trials and thus do not account for the great complexity of patent cases, which take considerably

26  longer to come to trial.  In this Court, a patent case would not be scheduled for trial 16.4 months after

27  filing; in the Court's experience it takes that long simply to arrive at the <u>Markman</u> hearing.  Thus it

28

ORDER ON MOTION TO TRANSFER - 6

1 cannot be said that a speedier trial could be had here than in Delaware.

2          It is the judicial economy factor which weighs most heavily in favor of the Delaware forum.  "In a

3 case such as this in which several highly technical factual issues are presented and the other relevant

4 factors are in equipoise, the interest of judicial economy may favor transfer to a court that has become

5 familiar with the issues." *Regents of the University of California*, 119 F. 3d at 1565.  Having handled

6 the related case, the Delaware court will be already familiar with the complex technological issues  and

7 the applicable law.

8          Transfer will also promote judicial economy in that it will facilitate consolidation and settlement.

9 While consolidation of the two cases is a matter for the Delaware court to decide, the feasibility of such

10 consolidation is a factor that this Court may consider in deciding whether to allow a transfer.  *University*

11 *of California v. Eli Lilly & Co.*, 21 U.S.P.Q. 1201, 1207 (N.D.Cal. 1991).   Even if they are not

12 consolidated, transfer of this case will allow a global settlement of the related cases.

13          Finally, litigation in Delaware would satisfy the "local interest" factor.  Delaware has a strong

14 interest in litigation between the companies in this suit, all of which are incorporated there.  *Hi-Pac, Ltd.*

15 *v. Avoset Corporation*, 980 F. Supp. 1134, 1141 (D.Haw. 1997).

16          As the Court has determined to grant the motion to transfer pursuant to § 1404, there is no need

17 to address the alternative arguments under the "first to file" rule.

18                                            CONCLUSION

19          Accordingly, defendants' § 1404(a) motion to transfer is GRANTED, and this case is

20 TRANSFERRED to the United States District Court for the District of Delaware.  The Clerk shall close

21 the file and notify the Clerk of Court in that district.  Defendants' pending motion to dismiss is DENIED

22 without prejudice to renewal in the Delaware court.

23

24 Dated this 13 day of December 2005.

25

26

27                                            RICARDO S. MARTINEZ
                                             UNITED STATES DISTRICT JUDGE
28

ORDER ON MOTION TO TRANSFER - 7

# EXHIBIT E

 ROTHWELL, FIGG, ERNST & MANBECK, P.C.

1425 K Street, N.W.
Suite 800
Washington, D.C. 20005

Telephone 202-783-6040
Facsimile 202-783-6031
www.rfem.com

| | |
|---|---|
| G. Franklin Rothwell | Anne M. Sterba |
| E. Anthony Figg | Lisa N. Phillips |
| Barbara G. Ernst | Leigh Z. Callander |
| Harry F. Manbeck, Jr. | C. Nichole Gifford |
| George R. Repper | Patrick T. Skacel |
| Steven Lieberman | Monica C. Kitts |
| Joseph A. Hynds | Brian A. Tollefson |
| Elizabeth A. Leff | Joo Mee Kim* |
| Richard Wydeven | Steven M. Giovannetti |
| Martin M. Zoltick | Hyunkweon Ryu |
| Minaksi Bhatt | R. Elizabeth Brenner |
| Sharon L. Davis | Adam M. Treiber |
| Robert B. Murray | Daniel L. Shores |
| Carla C. Calcagno | Joseph E. Green |
| Jeffrey L. Ihnen | |
| Glenn E. Karta | Of Counsel |
| Martha Cassidy, Ph.D. | John A. McCahill |
| Brian S. Rosenbloom | Barbara Webb Walker, Ph.D. |

*Not Admitted in D.C.

January 24, 2006

*Via E-Mail*

Wendy L. Bjerknes, Esq.
Fenwick & West LLP
Silicon Valley Center
801 California St.
Mountain View, California 94041

      Re:    *CD Intellectual Property Holdings LLC v. Amazon.com, Inc.*
             Our File No.: 3339-101

Dear Wendy:

      Attached is a redlined version of the draft Stipulated Protective Order.  As you can see, this draft incorporates many of the changes/additions you proposed, including additional source code protections.  Please let me know if Amazon will agree to the terms of this draft.

      In response to your request for the positions of the three attorneys listed in paragraph 12.c of the draft Stipulated Protective Order, Andrew Hollander is Senior Counsel, Cendant Corporation, Scott McLester is Senior Vice President - Legal Cendant Corporation and Curt Stevens is Senior Vice President Legal Department, IT and IP Group Cendant Corporation. Please provide me with the positions of the individuals listed in paragraph 12.d of the draft Stipulated Protective Order.

      I look forward to your prompt response.

                                          Very truly yours,

                                          Elizabeth A. Leff

EAL:whc
enc.
cc:    Steven Balick, Esq.

Bjerknes.L17.wpd