IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CD INTELLECTUAL PROPERTY HOLDINGS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-414-JJF |
| AMAZON.COM, INC., | ) ) | |
| Defendant. | ) ) | |
| | ) | |
| AMAZON.COM, INC. and A9.COM, INC., | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 06-041-JJF |
| CENDANT CORPORATION, TRILEGIANT CORPORATION, ORBITZ, LLC, ORBITZ, INC., BUDGET RENT A CAR SYSTEM, INC., and AVIS RENT A CAR SYSTEM, INC., | ) ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF JAMES V. FAZIO, III**
**IN OPPOSITION TO AMAZON.COM'S MOTION FOR CONSOLIDATION**

I, James V. Fazio, III, declare as follows:

1.      I am an attorney with the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel for defendants in C.A. No. 06-41-JJF. I have personal knowledge of the following facts and, if called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of the complaint filed on June 20, 2005 by Cendant Publishing, Inc. against Amazon.com, Inc. in the United States District Court for the District of Delaware entitled *Cendant Publishing Co., Inc. v. Amazon.com, Inc.* (Civil Action No. 05-414-JJF).

3.      Attached hereto as Exhibit B is a true and correct copy of a July 18, 2005 news article entitled "Amazon countersues Cendant" obtained from the www.news.com website.

4.      Attached hereto as Exhibit C is a true and correct copy of Plaintiffs Amazon.com, Inc. and A9.com, Inc.'s Opposition to Defendants' Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) Or, In The Alternative, to Dismiss, Stay or Transfer the Action Pursuant to the First-to-File Rule.

5.      Attached hereto as Exhibit D is a true and correct copy of the original complaint filed on October 29, 2004 by Cendant Publishing, Inc. against Amazon.com, Inc. in the United States District Court for the District of Delaware entitled *Cendant Publishing Co., Inc. v. Amazon.com, Inc.* (Civil Action No. 04-1405-GMS).

6.      On August 12, 2005, Defendants filed a motion to transfer Plaintiffs' Western District of Washington case to this District.  On that same date, Defendants also filed a motion to dismiss all claims against Cendant (the parent corporation); a motion to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for a more definite statement pursuant to Rule 12(e); and a motion to stay all discovery pending resolution of the motions.

7.      Attached hereto as Exhibit E is a true and correct copy of *Aerotel, Ltd. v. Verizon Communications, Inc.*, 2005 WL 3358670 (S.D.N.Y. Dec. 6, 2005).

8.      Attached hereto as Exhibit F is a true and correct copy of *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.*, 1994 U.S.Dist. LEXIS 17569 (N.D. Cal. Apr. 19, 1994).

9.      Attached hereto as Exhibit G is a true and correct copy of *Liqui-Box Corp. v. Reid Valve Co., Inc.*, 1989 U.S.Dist. LEXIS 17189 (W.D. Pa. Sep. 15, 1989).

10.     Attached hereto as Exhibit H is a true and correct copy of *Syngenta Seeds, Inc. v. Monsanto Co.*, 2004 U.S.Dist. LEXIS 17821 (D. Del. Aug. 27, 2004).

11.     Attached hereto as Exhibit I is a true and correct copy of *Syngenta Seeds, Inc. v. Monsanto Co.*, 2005 U.S.Dist. LEXIS 4651 (D. Del. Mar. 24, 2005).

12.    Attached hereto as Exhibit J is a true and correct copy of *Wang Laboratories, Inc. v. Mitsubishi Elecs. America, Inc.*, 1993 U.S.Dist. LEXIS 21372 (C.D. Cal. Jul. 20, 1993).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 16th day of February, 2006 at San Diego, California.

By:_____
              JAMES V. FAZIO, III

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of February, 2006, the attached **DECLARATION OF JAMES V. FAZIO, III IN OPPOSITION TO AMAZON.COM'S MOTION FOR CONSOLIDATION** was served upon the below-named counsel of record at the address and in the manner indicated:

| | |
|---|---|
| John W. Shaw, Esquire<br>Young Conaway Stargatt & Taylor<br>The Brandywine Building<br>1000 West Street, 17th Floor<br>Wilmington, DE 19801 | HAND DELIVERY |
| Lynn H. Pasahow, Esquire<br>Fenwick & West, LLP<br>Silicon Valley Center<br>801 California Street<br>Mountain View, CA 94041 | VIA FEDERAL EXPRESS |

/s/ John G. Day
_____
John G. Day

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CENDANT PUBLISHING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff, Cendant Publishing, Inc. ("Cendant Publishing"), by and through counsel, respectfully submit this Complaint against Amazon.com, Inc. ("Amazon"). In support thereof, Plaintiff alleges as follows:

### THE PARTIES

1.      Plaintiff Cendant Publishing, Inc. is a Delaware corporation with its principal place of business at 10750 West Charleston Blvd., Suite 130, Las Vegas, Nevada  89135.

**2.**      Upon information and belief, Defendant Amazon.com, Inc. is a Delaware corporation with its principal executive offices at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98114. Amazon operates an Internet-based marketplace selling millions of items including books as shown by its website at <http://www.amazon.com>. A key feature of Amazon's website includes web pages tailored to individual preferences, such as recommendations and notifications.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

§ 1338(a).

4.      This Court has personal jurisdiction over defendant Amazon because of, inter alia, its

incorporation in Delaware and its operation of its Internet website, arnazon.com, which is accessible to

and marketed to residents of Delaware.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## NATURE OF THE ACTION

6.      Cendant Publishing brings this action for infringement of United States Patent No.

6,782,370 ("'370 patent").  A copy of the '370 patent is attached as Exhibit A hereto.

7.      The '370 patent, entitled "System and Method for Providing Recommendation of

Goods or Services Based on Recorded Purchasing History" was duly and properly issued by the

United States Patent and Trademark Office ("PTO") on August 24, 2004.  The '370 patent is valid and

enforceable.

8.      Amazon operates an on-line marketplace through its amazon.com website.  Amazon's

online marketplace uses numerous features which recommend other goods to potential customers

based on prior customer purchasing history.  Amazon's recommendation features, including, inter alia,

"Customers who bought this book also bought," infringe one or more claims of the '370 patent.

9.      Cendant Publishing was the assignee of the '370 patent at the time it was issued.

2

10.    Cendant Publishing is the owner of the '370 patent and has the right to sue for infringement of the '370 patent.

## CLAIM I
## Infringement of the '370 Patent

11.    Cendant Publishing realleges the allegations of Paragraphs 1 to 10 above as if set forth herein.

12.    Amazon has infringed the '370 patent and will continue to do so unless enjoined by this Court.

13.    Amazon's continuing acts of **infringement after** notice of the '370 patent constitute willful infringement of the '370 patent.

14.    Amazon's **infringement** of the '370 patent has damaged Cendant Publishing and will continue to cause Cendant Publishing harm unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

15.    Pursuant to Fed. R. Civ. P. 38 and District of Delaware L.R. 38.1, Cendant Publishing respectfully requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Cendant Publishing prays for **judgment** as follows:

**A.**    That this Court adjudge and decree that the '370 patent is valid and infringed by Amazon;

3

B.    That this Court adjudge and decree that Amazon's infringement of the '370 patent has been willful;

C.    That this Court permanently enjoin Amazon, its agents, servants, employees, attorneys, and all others in active concert or participation with Amazon from infringing the '370 patent;

D.    That this Court award Cendant Publishing damages adequate to compensate for Amazon's infringement of the '370 patent;

E.    That this Court award Cendant Publishing its costs, disbursements, and attorneys' fees for this action, including those pursuant to 35 U.S.C. § 285;

F.    That Cendant Publishing be awarded such further relief as this Court may deem just and appropriate.

ASHBY & GEDDES

Steven J. Balick (I.D. #2403)
John G. Day (I.D. #2114)
222 Delaware Avenue, 17'' Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888

*Attorneys for Plaintiff Cendant Publishing, Inc.*

*Of Counsel:*

Steven Lieberman
Elizabeth A. Leff
Brian Rosenbloom
C. Nichole Gifford
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

Dated: June 20, 2005
158689

5

# EXHIBIT A

US006782370B1

(12) **United States Patent**  (10) **Patent No.:**   **US 6,782,370 B1**

Stack  (45) **Date of Patent:**   **Aug. 24, 2004**

(54) **SYSTEM AND METHOD FOR PROVIDING RECOMMENDATION OF GOODS OR SERVICES BASED ON RECORDED PURCHASING HISTORY**

(75) Inventor: **Charles Stack,** Cleveland, OH (US)

(73) Assignee: **Cendant Publishing, Inc.,** Aurora, CO (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 1030 days.

(21) Appl. No.: 081923,293

(22) Filed: **Sep. 4,** 1997

(51) **Int. Cl.⁷** ................................................ **G06F** 17/60
(52) **U.S. Cl.** .............................. 705110; 705126; 705114
(58) **Field of Search** .............................. 705110, 26, 27, 705128, 29, 14; 2351376; 707110, 104.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,870,579 | A | * | 911989 | Hey | 705127 |
| 4,996,642 | A | * | 211991 | Hey | 705127 |
| 5,583,763 | A | * | 1211996 | Atcheson et al. | 70713 |
| 5,749,081 | A | * | 511998 | Whiteis | 7071102 |
| 5,754,938 | A | * | 511998 | Herz et al. | 7251116 |
| 5,774,868 | A | * | 611998 | Cragun et al. | 705110 |
| 5,790,426 | A | * | 811998 | Robinson | 7021179 |
| 5,790,935 | A | * | 811998 | Payton | 45515.1 |
| 5,832,457 | A | * | 1111998 | O'Brien et al. | 705114 |
| 5,867,799 | A | * | 2/1999 | Lang et al. | 707/1 |
| 6,041,311 | A | * | 312000 | Chislenko et al. | 705127 |
| 6,049,777 | A | * | 412000 | Sheena et al. | 705110 |
| 6,058,367 | A | * | 512000 | Sutcliffe et al. | 70511 |
| 6,092,049 | A | * | 712000 | Chislenko et al. | 705110 |
| 6,112,186 | A | * | 812000 | Bergh et al. | 705110 |
| 6,266,669 | B1 | * | 712001 | Linden et al. | 705126 |
| 6,507,872 | B1 | * | 112003 | Geshwind | 7091236 |
| 200110013009 | A1 | * | 812001 | Greening et al. | 705110 |

FOREIGN PATENT DOCUMENTS

WO    WO-97/02537 A1 *  1/1997

OTHER PUBLICATIONS

"How ICL Is Ensuring That Your Retailer Knows More About You Than You Know Yourself," Computergram International, Jun. 14, 1996.*
Wilder, Clinton, "E–Commerce Emerges," Information Week, Jun. 14, 1996.*
IBM press release, M2 Presswire, "Wide variety of retailers sign up for World Avenue, IBM's online shopping service.", Nov. 12, 1996.*
Tadjer, Rivka, "Giving Content a Push," Communications Week, Jun. 2, 1997.*
Broadvision press release, M2 Presswire, "Virgin Net teams with Broadvision to deliver personalised services on Virgin Online", May 15, 1996.*
Lach, Jennifer, "Reading your mind, reaching your wallet,", Nov. 1998.*
Hof et al., "Amazon.com: The Wide World of E–Commerce," Business Week, Dec. 14, 1998.*
PRNewswire, "Book Stacks Unlimited Announces Poetry Month Exhibit", Apr. 18, 1997.*
Business Wire, CUC International Inc. offers consumers customized book recommendations through its book stacks subsidiary, Apr. 22, 1997.*
Alexandria Digital Literature, www.alexlit.com, no date known.*
Amazon.com, www.amazon.com, no date known.*
"Amazon.com Catapults Electronic Commerce to Next Level With Powerful New Features", Sep. 23, 1997.*

* cited by examiner

Primary *Examiner*—Nicholas D. Rosen
(74) Attorney, Agent, or *Firm*—Rothwell, Figg, Ernst & Manbeck

(57) **ABSTRACT**

A computer-implemented method and system utilizing a distributed network for the recommendation of goods and/or services to potential costumers based on a potential customer's selection of goods and/or services and a database of previous customer purchasing history.

16 **Claims, 7 Drawing Sheets**





FIG. 1

**U.S. Patent**     Aug. 24,2004     Sheet 2 of 7     US 6,782,370 B1



FIG.2



FIG. **3A**



FIG. 3B

U.S. Patent    Aug. 24, 2004    Sheet 4 of 7    US 6,782,370 B1

## CLEAR  AND  PRESENT  DANGER

Search  Type: TITLE                    Number  of  Books: 6

| Title | Author | Date | Bind | Price |
|---|---|---|---|---|
| Clear and Present Danger | *Clancy, Tom* | 08/94 | PAP | $5.94 |
| Clear and Present Danger (Thorndike Large Print Series) | *Clancy, Tom* | 10/90 | TRD | $20.36 |
| Clear and Present Danger | *Clancy, Tom* | 08/89 | TRD | $21.21 |
| Clear and Present Danger | *Clancy, Tom/ Stiers, David Ogden (Unk)* | 07/94 | TRD | $17.00 |
| Clear and Present Danger | *Clancy, Tom* | 07/96 | PAP | $6.38 |
| Clear and Present Danger/Multi-Track Audio Cassettes | *Clancy, Tom* | 04/90 | TRD | $38.95 |

FIG. 3C

100

U.S. Patent

Aug. 24, 2004

Sheet 5 of 7

US 6,782,370 B1

CLEAR  AND  PRESENT  DANGER

By

Clancy,  Tom

How  Many  Copies  ?

PUBLISHER: BRKP
CATEGORY: Movies
PUB  DATE:  08/94
BINDING:  Paperback
PRICE:  US $6.99

ISBN: 0425144372
BOOKMARKS: 5

*YOU  SAVE:$1.05 (15%)*

YOUR  PRICE: $5.94
MEMBER  PRICE: $4.89

*AFFINITY* SM  BY  SAME  PEN

FIG. 3D

100

U.S. Patent

Aug. 24, 2004

Sheet 6 of 7

US 6,782,370 B1

af·fin·i·ty n.  1 similarity  2 close relationship; connection  3 liking or inclination toward something

With Affinity, our own agent-based technology, you can explore the tastes of our other customers who've bought this same book. It's completely anonymous, and requires no effort. Finally, a helpful recommendation service based on *real people's real interests!* Based on 5 years of our customer's buying history, we think you might enjoy the book(s) listed below, purchased by customers who enjoyed *Clear and Present Danger*.

| Title | Author | Confidence In This Match |
|---|---|---|
| 📖 *Eaters of the Dead* | −Crichton, Michael | 100% |
| 📖 *Disclosure* | −Crichton, Michael | 100% |
| 📖 *Red Storm Rising* | −Clancy, Tom | 100% |
| 📖 *Patriot Games* | −Clancy, Tom | 100% |
| 📖 *The Sum of All Fears* | −Clancy, Tom | 100% |
| 📖 *Debt of Honor* | −Clancy, Tom | 100% |

📖 denotes additional information.

FIG. 3E

100



FIG.4

US 6,782,370 B1

1

## SYSTEM AND METHOD FOR PROVIDING RECOMMENDATION OF GOODS OR SERVICES BASED ON RECORDED PURCHASING HISTORY

### BACKGROUND OF THE INVENTION

1. Field Of The Invention

The present invention relates to the use of computer systems to facilitate the recommendation of goods or services utilizing a distributed network such as the Internet, specifically to provide recommendations of goods or services that may be of interest to potential customers based on a potential customers' selection of goods or services and a database of previous customer history with respect to the selected goods or services.

2. Description Of The Background Art

Providing recommendations of goods or services of interest to customers in a computer system environment has been based on demographic profiles and usually requires extensive customer participation and divulgence of personal information (for example, the input of: age, profession, hobbies, gender, . . . ) to create a user profile, which is then compared against other user profiles to determine possible items of interest to the user. The need for extensive customer input limits the appeal of these feedback systems because they require the user to expend substantial time and effort in addition to revealing personal details in order to obtain the requested information.

The present invention allows potential customers to utilize a computer system interfaced with a distributed network to obtain recommendations of goods or services that may be of interest to them while substantially reducing the degree of customer input required in comparison to prior art systems. Instead of relying on the personal information provided by each potential customer as a basis for determining recommendations, the subject invention utilizes a customer activity history database to facilitate the determination of recommendations.

### SUMMARY OF THE INVENTION

A method for recommending goods or services is provided which allows the user of a computer system connected to a distributed network such as the Internet to receive recommendations of goods or services of potential interest based on a particular good or service selected by the user and previous customer buying history. The previous customer buying history is assembled by passively tracking and retaining or storing all purchasing decisions by previous customers.

The user first selects a particular good or service he may be interested in obtaining. This selection is treated as filter data input to a host computers' data processor. The data processor then compares this input data with a customer activity history database to determine if there are any possible goods or services that can be recommended to the user. If there are possible recommendations the user can choose to have those goods or services recommended to him by the system. The data processor then utilizes the filter data input and the customer history database to determine all of the customers who have purchased the particular good or service selected by the user and all the goods or services those customers have purchased. The goods or services purchased in common by this group of customers are returned as filtered output data and displayed to the user as recommended goods or services.

2

According to another aspect of the invention, a confidence factor indicating the level of confidence in the strength of the recommendation may be provided.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram showing one preferred embodiment of the present invention.

FIG. 2 is a flow diagram showing one preferred embodiment of user interaction with a customer history database.

FIG. 3A is a depiction of the home page of the website as displayed to the user which provides the search option to the user.

FIG. 3B is a depiction of the search page as displayed to the user where the user can search by author, title, keyword, or ISBN.

FIG. 3C is a depiction of the search results page as displayed to the user where the user can select a particular book.

FIG. 3D is a depiction of the book selection page as displayed to the user where the user can select to have recommendations of potential interest returned to him.

FIG. 3E is a depiction of the recommendations result page as displayed to the user.

FIG. 4 is a flow diagram showing one preferred embodiment of the computer-implemented systems' structure and data flow.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the preferred embodiment, books are recommended over the Internet using World Wide Web technology although any communication medium could be used including distributed networks such as Local Area Networks (LANs), Wide Area Networks (WANs), or Electronic Bulletin Board Systems (BBSs). For purposes of illustration, the areferred embodiment will be described in the context where the goods or services are books; however, the invention may be practiced with respect to any good or service.

With reference to FIG. 1 a remote user utilizing an operator interface 1 accesses a distributed network communication medium 2, such as, for example, the Internet via the World Wide Web. The operator interface 1 may be any computer with a modem, network card or any other device including wireless devices utilized in computer systems to facilitate the transmission of data and may be found in personal computers used in households, business offices or schools. The computer can be any device capable of processing data such as computers based on technology from Apple Computer (e.g., The Macintosh, The Performa, the PowerMac series, etc.) or technology based on processors by Intel, AMD, Cyrix, etc. and commonly referred to as IBM comaatibles. It should be noted however that a user need not have a computer (i.e., a machine with processing power); a so-called "dummy terminal" being sufficient. Once logged onto the Internet, the user accesses a host computer 3 by specifying a website domain address, as is well known. The host computer 3 contains information regarding goods or services (such as books) for sale and also contains a customer purchasing history database 4 which stores data describing all purchases of previous customers.

One preferred method of retrieving recommendation information will be explained with reference to FIGS. 1, 2 and 3A–3E, and will be described with particular reference to retrieving information regarding the purchase and recommendation of books.

US 6,782,370 B1

3

At step **10**, a user logs onto the Internet network, such as by obtaining access through an Internet service provider, and at step **20**, the user enters the website by retrieving information from host computer 3.

A screen display **100** as shown in FIG. 3A provides various hypertext selections for various actions to be performed. **As** indicated, a user may choose to browse, search, order, retrieve account information, or request help.

The user can select a book by choosing the Search function in FIG. 3A. Once the search function has been selected, the user may search for the book by either author, title, keyword or a International Standard Book Number (ISBN) as shown in FIG. 3B.

The user may utilize any of these methods to select a particular title. In FIG. 3C, a user has selected the title Clear and Present Danger by author Tom Clancy. As shown in FIG. 3C, any particular title may be available in a number of different formats or editions. Once a specific title is selected from among the choices in FIG. 3C, the host computer 3 determines if there are any possible recommendations available for this particular book. If no other books are available as recommendations, the host computer will not give the user the option to request recommendations; the user can still purchase the selected title or request other information concerning this book. If other books are available as recommendations the option to request recommendations is supplied to the user in the form of a hypertext display as shown in FIG. 3D as the Affinity™ service.

The system determines whether other books are available to be recommended by consulting the customer history database **4**. The customer history database includes three relational database tables consisting of Customers, Orders and Items. The tables are related to each by keying unique customer IDs in the Customer table to order numbers in the Orders table and product identification numbers in the Items table. For example, books may be identified by their unique ISBN in the Items table. When a user has selected a particular book, the system searches the database **4** to determine all previous customers who have purchased that book. If there exist in the database at least two other customers who have purchased the user-selected book and those at least two customers have also purchased other books (or other products) in common, then the Affinity™ hypertext link will appear in the display page for the selected book. If the search does not find at least two customers who have purchased the selected book and who have also purchased another book in common, the Affinity™ hypertext link will not appear in the display page. Once the user activates the Affinity™ hypertext link, the books purchased in common will be displayed, as shown in FIG. 3E.

Another aspect of the invention is the indication of a "confidence match" factor as shown in FIG. 3E. The confidence factor is calculated based on the frequency of appearance of the recommended books (or other items) in the histories of the customers who have purchased the selected book (or other item). For example, if ten customers who purchased book A also purchased book B, the confidence factor in the recommendation of book B to a user who selected book A would be 100%. If on the other hand only 7 of the ten customers who purchased book A also purchased book B, the confidence factor for book B would be 70%. **As** previously explained above, if none of the customers who purchased book A also purchased at least one other book in common, the Affinity™ hypertext link would not be displayed.

The user makes a request for recommended books by selecting the Affinity™ hypertext using a tracking device

4

such as a mouse. The request is then transmitted to the host computer 3 via the Internet **2** and is processed at the host computer 3. To facilitate the processing and storage of data each customer is assigned a unique customer ID and each book is identified by its unique ISBN. The host computer utilizes these elements to track and retain the identification of all customers and their purchases. The retained customer purchasing history is stored in the customer history database **4** and is accessed whenever a request for recommendations is submitted to the host computer.

Utilizing the customer history database **4**, the host computer **3** searches all the books purchased by all the customers who have purchased the particular book that was selected by the user. Titles which have been purchased in common among the customers are selected as recommendations for the user. This collaborative filter or intelligent agent is superior to other methods because it uses actual customer purchasing history to assemble recommendations. It does not require any customer effort nor impinge on customer privacy. The recommendations are then transmitted to the user via the Internet **2** and displayed on the user interface **1** as shown in FIG. **3E**.

FIG. **4** illustrates one example of the system structure and data flow. An operator enters input data **21** consisting of a selected book. This input data **21** is transmitted from the operator to the processor **23** via a distributed network **22** similar to the distributed networks described earlier with reference to block **2** in FIG. **1**. The processor utilizes database selection rules 25 as explained above in conjunction with the input data **21** to determine the recommendations that will be accessed from the database **26** which contains data on previous customer purchasing history. The recommendations are then transmitted from the processor **23** to the operator as output data **24** via a distributed network as previously described with reference to FIG. **1** block **2**.

The invention having been described, it will be apparent to those skilled in the art that the same may be varied in many ways without departing from the spirit and scope of the invention. Any and all such modifications are intended to be included within the scope of the following claims.

I claim:

**1.** A computer-implemented method for the recommendation of goods and/or services to potential customers over a distributed network based on customer buying history utilizing an information processing system containing processing means having transmission means for receiving and transmitting data, and database storage means for storing information in database files, the method comprising the steps of:

receiving customer commands specifying a particular good or service to be used as filter data;

storing information pertaining to goods and/or services purchasing history of previous customers;

comparing said filter data with said stored information and determining whether, for said filter data, corresponding entries exist within the stored information; and

if corresponding entries exist, displaying the identity of other goods and/or services purchased by said previous customers who have purchased the good and/or service used as said filter data.

**2.** The method of claim **1** wherein said distributed network is the Internet.

3. The method of claim **1** wherein said distributed network is a Local Area Network.

**4.** The method of claim **1** wherein said distributed network is a Wide Area Network.

US 6,782,370 B1

**5**

**5.** The method of claim **1** wherein said distributed network is a Bulletin Board System.

**6.** The method of claim **1** wherein said goods are books.

7. A computer-implemented interactive system for assisting a potential customer in purchasing decisions from among a plurality of goods or services, the system comprising:

an operator interface for enabling potential customers to input requests to said computer, including requests for:
the purchase of goods or services,
information concerning goods or services,
recommendations of goods or services based on operator input;

a database maintained in said computer, containing information pertaining to goods and/or services purchasing history of previous customers;

means for processing inputed requests and for filtering relevant history information regarding said inputted requests from said database;

a distributed network for transmitting requests from said operator interface to said computer and for transmitting responsive information from said computer to said operator interface;

interface whereby goods and/or services identification information corresponding to goods and/or services purchased by previous customers who have purchased the goods and/or services requested by said potential customers are transmitted to said operator interface for use by said potential customers.

**6**

**8.** The system of claim 7 wherein said distributed network is the Internet.

**9.** The system of claim 7 wherein said distributed network is a Local Area Network.

**10.** The system of claim 7 wherein said distributed network is a Wide Area Network.

**11.** The system of claim 7 wherein said distributed network is a Bulletin Board System.

**12.** The system of claim 7 wherein said goods are books.

**13.** The system of claim 7 wherein said operator interface is a personal computer.

**14.** The system of claim 7 wherein said operator interface is a workstation.

**15.** The system of claim 7 wherein said operator interface is a dummy terminal.

**16. A** computer program product having a computer readable medium having computer readable code recorded thereon for the recommendation of goods or services in response to user input, comprising:

input means for receiving user commands specifying a particular good or service to be used as filter data;

database storage means for the retention of data concerning goods or services purchase decisions of prior users; and

means for filtering said database storage means using said specified particular rood or service to obtain recommendations of other goods or services to a user based on said inputted user commands.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.     : 6,782,370 B1                              Page 1 of 1
DATED          : August 24, 2004
INVENTOR(S)    : Charles Stack

It is certified that error appears in the above-identified patent and that said Letters Patent is
hereby corrected as shown below:

Column 6,
Line 26, "rood should be -- good --.

Signed and Sealed this

Sixteenth Day of November, 2004

*JON W. DUDAS*
*Director of the United States Patent and Trademark Office*

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

0 5   4 1 4

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| CENDANT PUBLISHING, INC.<br>* | AMAZON.COM, INC. |

| (b) County of Residence of First Listed Plaintiff _____ <br>(EXCEPT IN U.S. PLAINTIFF CASE)<br><br>*Plaintiff is a Delaware corporation. | County of Residence of First Listed _____<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number)<br>Steven J. Balick<br>Ashby & Geddes<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE 19801    (302) 654-1888 | Attorneys (If Known)<br><br>Unknown |

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☒ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions |

## V. ORIGIN   (PLACE AN "X" IN ONE BOX ONLY)

| | | | | Transferred from another district (specify) | Appeal to District Judge from Magistrate Judgment |
|---|---|---|---|---|---|
| ☒1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 | ☐ 6 Multidistrict Litigation    ☐ 7 |

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

This is an action arising out of the patent law of the United States, Title 35 U.S. Code.

| VII. REQUESTED IN COMPLAINT: | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ monetary and injunctive relief | CHECK YES only if demanded in complaint.<br>JURY DEMAND: ☒ Yes ☐ No |
|---|---|---|---|

| VIII. RELATED CASE(S) IF ANY | (See instructions.)<br>JUDGE _____ | DOCKET NUMBER _____ |
|---|---|---|

| DATE<br>June 20, 2005 | SIGNATURE OF ATTORNEY OF RECORD<br>_Steven J. Balick_ |
|---|---|

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

AO FORM 85 RECEIPT (REV. 9/04)

United States District Court for the District of Delaware

Civil Action No. _____0 5 - 4 1 4_____

# ACKNOWLEDGMENT
# OF  RECEIPT  FOR AO FORM  85

## *NOTICE OF AVAILABILITY OF A*
## *UNITED STATES MAGISTRATE JUDGE*
## *TO EXERCISE JURISDICTION*

I HEREBY ACKNOWLEDGE RECEIPT OF ___2___ COPIES OF AO FORM 85.

_6-20-05_____          _Joseph J. Sirenni_____
   (Date forms **issued**)          (Signature **of Party** or their Representative)

                    _Joseph  J.  Sirenni_____
                    (**Printed** name of Party *or* their Representative)

Note: **Completed receipt** will **be filed** in **the Civil Action**

# EXHIBIT B



CNET tech sites: Product reviews | Shop | Tech news | Downloads | Site m

Lo

News.com Mobile
for PDA or phone

Forgot password? | Sign
up

Corrections  Blogs  Extra  Readers' Choice  My News

Front Door  Business Tech  Cutting Edge  Access  Threats  Media 2.0  Markets  Digital Life

# Amazon countersues Cendant

By Paul Festa
Staff Writer, CNET News.com
Published: July 18, 2005, 12:18 PM PDT

| TalkBack |
| E-mail |
| Print |

**Amazon.com has accused Cendant of patent infringement in what it described as a purely defensive countersuit.**

Amazon late last month filed the claims in the U.S. District Court for the Western District of Washington, alleging that Cendant and subsidiaries Orbitz, Avis, Budget and Trilegiant infringed four patents held by Amazon.

Cendant had sued Amazon for patent infringement in November. Following unsuccessful settlement negotiations, the company refiled its suit in June. Amazon subsequently filed its countersuit.

Amazon has walked a fine line between decrying the state of software and business process patent litigiousness and building its own healthy patent portfolio. Amazon CEO Jeff Bezos has advocated patent reform for years.

**In other news:**

- ENIAC: A computer is born - Stories, photos and video

- RSA confab: Boom times for security

- Intel's mantra: Let's make a deal

- Newsmaker: You've got (certified) mail!

Amazon said its current patent action came only in self-defense.

"The suit was filed in direct response to Cendant's refiling of their patent infringement suit," said Amazon spokeswoman Patty Smith. "This is the first time that we have asserted any of these four patents, and we would not have asserted them if Cendant had not filed against us. It's purely a defensive measure."

Cendant did not immediately return calls seeking comment.

The four patents in question are U.S. Patent No. 5,715,399: secure method and system for communicating a list of credit card numbers over a nonsecure network; No. 6,029,141: Internet-based customer referral system; No. 6,625,609: method and system for navigating within a body of data using one of a number of alternative browse graphs; and No. 6,629,079: method and system for electronic commerce using multiple roles.

| TalkBack |
| --- |
| E-mail |
| Print |

**Read more on this story's topics and companies**

- Add to My News | Create an alert **Patents**
- Add to My News | Create an alert **E-commerce**
- Add to My News | Create an alert **Legal**
- Add to My News | Create an alert **Amazon.com Inc**

**TrackBack**

See links from elsewhere to this story.

**TalkBack**

No discussion exists, click here to start it.

▼ advertisement



**The big picture**  **Related stories**  **What's hot**  **Latest headlines**

- Symantec taps ex-airline exec as CFO
- Readers on their first computer
- Microsoft flagged Symantec software as spyware
- Banks scramble on debit card theft
- A showcase for all things wireless
- As Valentine's approaches, Craigslist heats up
- Microsoft, BT, Virgin team on mobile TV
- Swimsuit downloads for your iPod or phone
- Nvidia's new graphics chip rings up 'Quake'
- RIM unfazed as rivals take aim at BlackBerry
- MySQL lands $18.5 million in third round
- HP extends Oracle pact to cover middleware
- Open source: The newest competitive tool
- Seagate plans 12GB mini-hard drive
- Software vendors face rising offshore costs
- **See all headlines from the past week >**

**Dice Career Guidance Center**

- Post your resume on Dice where it will be seen by thousands of hiring companies.Find your next great career opportunity>>

- Are you earning what you're worth?Find out how your salary stacks up>>

- Search more than 60,000 tech jobs. Enter keywords skill, job title, location.Read all about it>>



The leading provider of online recruiting services for tech professionals

Dice
Look to the tech leader first

**Top picks from News.com readers**

Readers who read **Amazon countersues Cendant** also read…

- Cendant sues Amazon over book recommendations
- FAQ: The new 'annoy' law explained
- 600,000 Xbox 360 units sold in U.S.
- In Canada: Cache a page, go to jail?
- Yahoo updates antispam tools
- Planning to dump IE? Think again
- Congress to scrutinize patent tax breaks
- Sony looks to high end for hit products
- Google to bid on AOL?

**More Info**

---

**Markets**

Market news, charts, SEC filings, and more

**Related quotes**

- Amazon.com Inc. 37.86 -0.66 (-1.71%)

- DJIA 10,892.24 -26.81 (-0.25%)

- S&P 500 1,262.86 -4.13 (-0.33%)

- NASDAQ 2,239.81 -22.07 (-0.98%)

- CNET TECH 1,384.96 -13.56 (-0.97%)

Symbol Lookup

---

**Daily spotlight**

Previous Next

**Photos: Fans flock to comic convention**



Imaginations wander at WonderCon 2006, a comic-book convention held in San Francisco over the weekend.

**Perspective: E-tracking through your cell phone**



Against a law, prosecutors aim to track suspects' locations through cell phones, CNET News.com's Declan McCullagh says.

**Video: AMD video contest winners**



AMD sponsored a film contest to express the concept of "waitlessness" in 64 seconds. Here are the winners.

**Intel's mantra: Let's make a deal**



**news analysis** Chipmaker's pact with Skype highlights how exclusive content can outweigh technology or performance.
▸ Intel shows off quad core

▾ advertisement



Site map | How to advertise | Contact us | Send us tips | News.com mobile | E-mail newsletters | All RSS feeds |
XML | Linking policy | Content licensing | Corrections

BNET | CNET.com | CNET Channel | CNET Download.com | CNET News.com | CNET

Reviews | CNET Shopper.com | Computer Shopper

GameSpot | International Media | MP3.com | mySimon | Release 1.0 | Search.com |

TechRepublic | TV.com | Webshots | ZDNet

Copyright ©2006 CNET Networks, Inc. All Rights Reserved. Privacy Policy | About CNET

Networks | Jobs | Terms of Use

# EXHIBIT C

1                                                    The Honorable R. Martinez

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  WESTERN DISTRICT OF WASHINGTON

10                              AT SEATTLE

11

12   AMAZON.COM, INC., and            Case No.  05-01137 (RSM)
     A9.COM, INC.,
13                                    **PLAINTIFFS AMAZON.COM, INC.
                Plaintiffs,           AND A9.COM, INC.'S OPPOSITION TO
14                                    DEFENDANTS' MOTION TO TRANSFER
          v.                          VENUE PURSUANT TO 28 U.S.C.
15                                    § 1404(a), OR, IN THE ALTERNATIVE,
                                      TO DISMISS, STAY, OR TRANSFER THE
16   CENDANT CORPORATION,             ACTION PURSUANT TO THE FIRST-
     TRILEGIANT CORPORATION,          TO-FILE RULE**
     ORBITZ, LLC, ORBITZ, INC., BUDGET
17   RENT A CAR SYSTEM, INC., and AVIS Noted for consideration September 16, 2005
     RENT A CAR SYSTEM, INC.,
18
                Defendants.
19

20

21

22

23

24

25

26

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

**TABLE OF CONTENTS**

**Page(s)**

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................ 1

I.     THIS ACTION SHOULD REMAIN IN THIS
      DISTRICT PURSUANT TO 28 U.S.C. § 1404(a) ........................................................ 3

     A.     Plaintiffs' Chosen Forum Should Be Afforded Substantial Deference ................. 3

     B.     Considerations of Convenience and Other
            Interests Do Not Favor Transfer to the District of Delaware .............................. 5

          1.     Transfer Would Not Promote the
               Convenience of the Parties and Witnesses .................................................. 5

          2.     Key Non-Party Witnesses Could Not
               Be Compelled to Testify at Trial in Delaware .......................................... 7

          3.     Transfer Will Not Promote Access to
               Relevant Documents or Other Evidence ..................................................... 7

          4.     This Action and the Delaware
               Action Could Not Be Feasibly Consolidated .............................................. 8

          5.     The Remaining Factors Do Not Support Transfer .................................... 10

II.     THE FIRST-TO-FILE RULE DOES NOT APPLY ....................................................... 11

CONCLUSION ................................................................................................................. 12

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

5 *Alltrade, Inc. v. Uniweld Products, Inc.*,
     946 F.2d 622 (9th Cir. 1991), *as amended*,
6     20 U.S.P.Q.2d 1698 (9th Cir. June 5, 1991) ........................................................... 12

7 *Asymetrix Corp. v. Lex Computer and Management Corp.*,
     1995 U.S. Dist. LEXIS 20388 (W.D. Wash. Jan. 25, 1995)...................................... 8

8 *Brayton Purcell, LLP v. Recordon & Recordon*,
     361 F. Supp. 2d 1135 (N.D. Cal. 2005) .................................................................... 3
9

*Cedars-Sinai Medical Ctr. v. Shalala*,
10     125 F.3d 765 (9th Cir. 1997)................................................................................... 11

11 *Chrysler Capital Corp. v. Woehling*,
     663 F. Supp. 478 (D. Del. 1987)............................................................................... 8
12

*Church of Scientology v. United States Dep't of the Army*,
13     611 F.2d 738 (9th Cir. 1979)................................................................................... 11

14 *Decker Coal Co. v. Commonwealth Edison Co.*,
     805 F.2d 834 (9th Cir. 1986)............................................................................. 4, 5, 7
15

*Dwyer v. General Motors Corp.*,
16     853 F. Supp. 690 (S.D.N.Y. 1994) ........................................................................... 6

17 *FUL, Inc. v. Unified Sch. Dist. Number 204*,
     839 F. Supp. 1307 (N.D. Ill. 1993) ........................................................................... 7
18

*Google, Inc. v. American Blind & Wallpaper Factory,* Inc.,
19     2004 U.S. Dist. LEXIS 27601 (N.D. Cal. April 8, 2004) ....................................... 12

20 *Gulf Oil Corp. v. Gilbert*,
     330 U.S. 501 (1947)............................................................................................... 3, 7
21

*Hyundai Space & Aircraft Co v. The Boeing Co.*,
22     1999 U.S. Dist. LEXIS 16025 (N.D. Cal. Oct. 12, 1999)......................................... 4

23 *In re Nat'l Presto Indus.*,
     347 F.3d 662 (7th Cir. 2003).................................................................................... 5
24

*Jones v. GNC Franchising, Inc.*,
25     211 F.3d 495 (9th Cir. 2000).................................................................................... 5

26

OPPOSITION TO MOTION TO TRANSFER VENUE                -ii-
CASE NO. 05-01137 (RSM)

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Kleinerman v. Luxtron Corp.*,
107 F. Supp. 2d 122 (D. Mass. 2000) ...................................................................... 4

*Knits 'N' Tweeds, Inc v. Jones New York*,
1979 U.S. Dist. LEXIS 14868 (E.D.N.Y. Jan. 25, 1979) ........................................ 11

*MasterCard Int'l, Inc. v. Lexcel Solutions, Inc.*,
2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. June 18, 2004) ........................................ 12

*Medi USA v. Jobst Inst., Inc.*,
791 F. Supp. 208 (N.D. Ill. 1992) ........................................................................... 7

*Pacesetter Systems, Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) .................................................................................... 11

*Pacific Car & Foundry Co. v. Pence*,
403 F.2d 949 (9th Cir. 1968) .................................................................................. 4

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981) ............................................................................................... 4

*Recoton Corp. v. Allsop, Inc.*,
999 F. Supp. 574 (S.D.N.Y. 1998) ......................................................................... 10

*Robinson Corp. v. Auto-Owners Ins. Co.*,
304 F. Supp. 2d 1232 (D. Haw. 2003) ................................................................. 6, 10

*Royal Queentex, Enters. v. Sara Lee Corp.*,
2000 U.S. Dist. LEXIS 10139 (N.D. Cal., Mar. 1, 2000) ...................................... 6, 8

*Schnabel v. Ramsey Quantitative Systems, Inc.*,
322 F. Supp. 2d 505 (S.D.N.Y. 2004) ..................................................................... 8

*Smith v. S.E.C.*,
129 F.3d 356 (6th Cir. 1997) ................................................................................. 11

*Steelcase, Inc. v. Haworth, Inc.*,
1996 U.S. Dist. LEXIS 20674 (C.D. Cal. May 15, 1996) ........................................ 8

*Symbol Techs., Inc. v. Intermec Techs. Corp.*,
2005 U.S. Dist. LEXIS 14415 (W.D. Wis., July 14, 2005) .................................... 4, 9

*Teknekron Software Systems, Inc. v. Cornell University*,
1993 U.S. Dist. LEXIS 21337 (N.D. Cal. June 14, 1993) ........................................ 8

*Van Dusen v. Barrack*,
376 U.S. 612 (1964) ............................................................................................... 3

OPPOSITION TO MOTION TO TRANSFER VENUE
CASE NO. 05-01137 (RSM)

-iii-

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

*Waste Distillation Tech., Inc. v. Toman,*
775 F. Supp. 759 (D. Del. 1991) ................................................................................. 7

**STATUTES**

28 U.S.C. § 1404(a) ....................................................................................................... 3

OPPOSITION TO MOTION TO TRANSFER VENUE
CASE NO. 05-01137 (RSM)

-iv-

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1    **INTRODUCTION**

2        Defendants ask to transfer this action from this District, in which plaintiff Amazon.com,

3    its employees, key non-party witnesses and relevant evidence are located, to the District of

4    Delaware, a district with *no parties, no witnesses* and *no evidence* relevant to the action.  The

5    great deference that must be afforded plaintiffs' choice of forum cannot be overcome by

6    defendants' purported desire to avoid the inconvenience of defending the action in this District,

7    particularly where the proposed transfer would not alleviate any inconvenience but, at best, would

8    have the effect of merely shifting it from defendants to plaintiffs.

9        In the alternative, defendants contend that the "first-to-file" rule justifies the dismissal or

10   stay of this action, or its transfer to the District of Delaware, where Cendant Publishing, Inc., who

11   is *not* a party to this action, has filed a lawsuit against Amazon.com.  The first-to-file rule simply

12   does not apply here.  This action and Cendant Publishing's Delaware action are entirely different,

13   with different parties, different witnesses, different patents, and different issues.

14       This action should remain in this District.

15   **STATEMENT OF FACTS**

16       On June 22, 2005, Amazon.com, Inc. ("Amazon.com") and its wholly-owned subsidiary

17   A9.com, Inc. ("A9.com") filed this action for patent infringement against six defendants:

18   Cendant Corporation, Trilegiant Corporation, Orbitz, LLC, Orbitz, Inc., Budget Rent A Car

19   System, Inc., and Avis Rent A Car System, Inc.  The action seeks injunctive relief and damages

20   for defendants' infringement of four patents:  U.S. Patent Nos. 5,715,399 ("the '399 patent"),

21   6,029,141 ("the '141 patent"), 6,629,079 ("the '079 patent"), and 6,625,609 ("the '609 patent").

22   Amazon.com owns the '399 patent, the '141 patent, and the '079 patent.  Compl. ¶ 2.  A9.com

23   owns the '609 patent.  *Id.* ¶ 3.  Plaintiffs allege that each of these patents is infringed by certain of

24   defendants' web sites and conduct relating to those web sites.  Compl. ¶¶ 14, 20, 25, and 30.

25       Although Amazon.com is incorporated in Delaware, its headquarters are in Seattle,

26   Washington.  Declaration of Kathryn Sheehan ("Sheehan Decl."), ¶ 2.  All of Amazon.com's

OPPOSITION TO MOTION TO TRANSFER VENUE          -1-
CASE NO. 05-01137 (RSM)

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1  current employees with knowledge relevant to this action work at Amazon.com's offices in

2  Seattle.  These employees include Jeff Bezos, Ellen Ratajak, Robert McDade and Anne Krook,

3  each of whom is an inventor for one or more of the patents in suit, and each of whom has

4  knowledge regarding, among other things, the subject matter, conception and reduction to

5  practice of the claimed inventions.  *Id.* ¶ 5.  In addition, Amazon.com employees with

6  information relating to damages issues, including Amazon.com's financial data and sales and

7  marketing information, all work at Amazon.com's offices in Seattle.  *Id.* ¶ 3.  All of the

8  documents that may be relevant to this action, including documents concerning the development

9  of the patented inventions, financial documents, and documents relating to sales and marketing,

10 are located in Seattle.  *Id.*

11      Several of the inventors for the patents in suit are no longer employed by Amazon.com

12 but are very likely to have information relevant to this action, including knowledge of the

13 conception and reduction to practice of the claimed inventions.  These former employees include

14 Sheldon Kaphan, Thomas Schonhoff, Joel Spiegel, Maryam Mohit, and Bonnie Bouman.  *Id.* ¶ 6.

15 All of these likely non-party witnesses reside in or near Seattle.  In addition, the patent attorneys

16 who prosecuted the patents in suit, Steven Lawrenz, Maurice Pirio, and Ronald Anderson, have

17 knowledge relevant to the prosecution of the patents.  These non-party witnesses also reside in or

18 near Seattle.  *Id.* ¶ 8.

19      Like Amazon.com, plaintiff A9.com is incorporated in Delaware, but its headquarters are

20 in Palo Alto, California.  *Id.* ¶ 4.  Amazon.com assigned the '609 patent to A9.com after the

21 patent was issued.  *Id.*  For this reason, all witnesses with material information, including

22 inventors, and all documents likely to be relevant to the part of the dispute that concerns the '609

23 patent are located in Seattle.

24      Defendants propose to transfer this action to the District of Delaware.  However, none of

25 the defendants has offices in Delaware, no witnesses with relevant knowledge reside in Delaware,

26 and no documents relevant to this action are located in Delaware.  *See* Declaration of Eric J. Bock

OPPOSITION TO MOTION TO TRANSFER VENUE     -2-
CASE NO. 05-01137 (RSM)

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

Decl. ("Bock Decl."), ¶¶ 8-11.  As a justification for transfer, defendants repeatedly reference an action filed by non-party Cendant Publishing, Inc. against Amazon.com in the District of Delaware asserting infringement of U.S. Patent No. 6,782,370 ("the '370 patent").  Defs. Motion at 1, 3, 9, 11-12; Declaration of James V. Fazio ("Fazio Decl."), Ex. A.  This Delaware action names Amazon.com as the sole defendant.  Fazio Decl. ¶ 2, Ex. A.  Cendant Publishing does not assert any claim against A9.com, and none of the defendants named by Amazon.com and A9.com in this action is involved in the Delaware action.  Fazio Decl., Ex. A at ¶ 12; Compl. ¶¶ 4-8.  The four patents at issue in this action are not part of the dispute in the Delaware action, and the single patent asserted in the Delaware action is not at issue in this action.  Fazio Decl., Ex. A at ¶ 7; Compl. ¶¶ 1-3.[1]

## I.     THIS ACTION SHOULD REMAIN IN THIS DISTRICT PURSUANT TO 28 U.S.C. § 1404(a)

### A.     Plaintiffs' Chosen Forum Should Be Afforded Substantial Deference

A plaintiff's choice of forum should rarely be disturbed.  *Brayton Purcell, LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1143 (N.D. Cal. 2005) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  Transfer under 28 U.S.C. § 1404(a) is justified only where the movant makes a clear showing that the inconvenience, burden and expense of litigating in the plaintiff's chosen forum are so great that the interests of justice warrant moving the action to a different forum.  28 U.S.C. § 1404(a); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (purpose of transfer is to "prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense").

Defendants contend that plaintiffs are not entitled to a presumption in favor of their chosen forum because they have engaged in "forum shopping."  Defs. Motion at 8.  Defendants fail to explain how choosing to litigate in Amazon.com's home district – a district in which

---

[1]     Defendants refer to discussions that took place between the parties before the filing of this action.  Defs. Motion at 3.  Defendants' characterizations of these discussions are grossly inaccurate and violate the parties' agreement that the discussions would be kept confidential and not used in litigation.  In view of the parties' agreement, and the fact that these discussions are irrelevant to defendants' motion, Amazon.com and A9.com decline to comment on the content of these discussions.

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1   plaintiffs' employees with relevant knowledge and all material non-party witnesses reside – can

2   possibly constitute forum shopping or be otherwise improper.  To the contrary, the deference

3   afforded a plaintiff's choice of forum is particularly great where the plaintiff chooses its home

4   forum.  *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (citing *Piper*

5   *Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981)).

6           Defendants also contend that because the majority of their infringing activities occurred

7   "in the Northeast" plaintiffs' choice of forum should be given no deference.  Defs. Motion at 8.

8   This is not the law, and none of the cases cited by defendants support this proposition.  For

9   example, in *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949 (9th Cir. 1968), the Ninth Circuit

10  reversed the district court's denial of transfer where neither plaintiff nor defendant had

11  substantive contacts with the forum selected, stating: "If the operative facts have not occurred

12  within the forum of original selection and that forum has no particular interest in the parties or the

13  subject matter, the plaintiff's choice is entitled only to minimal consideration."  *Id.* at 954.  The

14  Court did *not* hold, as defendants claim, that if the infringing activity occurred outside of the

15  district, plaintiffs' choice of forum should be disregarded.[2]  Here, many of the events relevant to

16  this action, including conception, reduction to practice, and development of the patented

17  inventions, occurred in Washington, and this District clearly has an interest in the plaintiffs and

18  the subject matter of the dispute.

19          To overcome the presumption in favor of Amazon.com and A9.com's choice of this

20  District, defendants must show that the balance of conveniences and other considerations strongly

21  favors transfer to the District of Delaware.  *See Piper Aircraft*, 454 U.S. at 255-56; *Decker Coal*

22  *Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  The factors that are

23  _____

24  [2]   Defendants also mischaracterize *Symbol Techs., Inc. v. Intermec Techs. Corp.*, 2005 U.S. Dist. LEXIS 14415 (W.D. Wis., July 14, 2005) and *Hyundai Space & Aircraft Co v. The Boeing Co.*, 1999 U.S. Dist. LEXIS 16025 (N.D. Cal., Oct. 12, 1999).  In both cases, the plaintiff, unlike Amazon.com, had no significant connection with the forum it

25  had selected.  Even so, neither court held that the plaintiff's choice of forum should be entirely disregarded.  Instead, *Symbol Technologies* gave nearly dispositive weight to a contractual forum selection clause which specified the transferee district, and *Hyundai Space & Aircraft* found that other considerations of convenience weighed heavily in

26  favor of transfer.

1   typically weighed against the plaintiff's choice of forum are:  (1) the convenience of the parties

2   and witnesses; (2) the availability of compulsory process for the attendance of non-party

3   witnesses; (3) the ease of access to documentary and other evidence; (4) the feasibility of

4   consolidation with other claims; (5) local interest in the controversy; (6) the familiarity of each

5   forum with the applicable law; and (7) the relative court congestion and time to trial in each

6   forum.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000); *Decker Coal*, 805

7   F.2d at 843.  None of these factors favors transfer to the District of Delaware.

8       **B.    Considerations of Convenience and Other
             Interests Do Not Favor Transfer to the District of Delaware**

9

10          **1.    Transfer Would Not Promote the
                   Convenience of the Parties and Witnesses**

11          When plaintiffs and defendants are in different states, there is no choice of forum that will

12  entirely avoid imposing inconvenience.  *In re Nat'l Presto Indus.*, 347 F.3d 662, 665 (7th Cir.

13  2003).  As defendants acknowledge, all of Amazon.com's employee witnesses and key non-party

14  witnesses are located in the Western District of Washington.  Defs. Motion at 6, 8.  Nevertheless,

15  they urge the Court to find that because all of the defendants are headquartered "in the

16  Northeast"[3] transfer to the District of Delaware would be the most convenient forum for "the

17  parties."  Defs. Motion at 6.

18          Given Amazon.com's location in the District and A9.com's location in California, the

19  transfer defendants propose would only switch the supposed inconvenience from defendants to

20  plaintiffs.  When the inconveniences of alternative venues are comparable, or where transfer

21  would merely shift the inconvenience from one party to another, the plaintiff's choice of forum

22  should not be disrupted.  *Decker Coal*, 805 F.2d at 843 (rejecting transfer that would "shift rather

23  than eliminate the inconvenience"); *In re Nat'l Presto Indus.*, 347 F.3d at 665 ("the tie is awarded

24  to the plaintiff"; affirming denial of transfer even where the balance of convenience somewhat

25

26  ---
    [3]    Defendants insist that the two defendants headquartered in Chicago – Orbitz, LLC and Orbitz, Inc. – are also
    located "in the Northeast."

1   favored the movant).

2       In any event, defendants exaggerate the anticipated inconvenience of travel between their

3   headquarters and Seattle, Washington.  With the exception of attendance at trial, none of

4   defendants' witnesses will be required to travel to Seattle during the course of this proceeding.

5   Unless other arrangements are made, defendants' witnesses will be deposed in the districts in

6   which they reside, and the production of any evidence in these witnesses' possession can be

7   handled without the need for cross-country travel.  As for attendance at trial in Washington, the

8   convenience of the parties does not weigh in favor of transfer when the movant will be required to

9   travel whether the action is transferred or not.  *See Dwyer v. General Motors Corp.*, 853 F. Supp.

10   690, 693 (S.D.N.Y. 1994).  As no parties, witnesses, or evidence are located in Delaware,

11   defendants and their witnesses will need to travel whether the action proceeds in this District or in

12   Delaware.  *Id.*; *see also Royal Queentex*, *Enters. v. Sara Lee Corp.,* 2000 U.S. Dist. LEXIS

13   10139, *20-21 (N.D. Cal., Mar. 1, 2000) (denying transfer where witnesses located in New York,

14   Connecticut, Chicago, and Georgia would be inconvenienced whether they traveled to California

15   or the transferee district, North Carolina).

16       While the convenience of party witnesses is an important consideration, the convenience

17   of non-party witnesses is much more significant.  *Robinson Corp. v. Auto-Owners Ins. Co.*, 304

18   F. Supp. 2d 1232, 1243 (D. Haw. 2003) (convenience of non-party witnesses is of "paramount

19   importance"); *Royal Queentex*, 2000 U.S. Dist. LEXIS at *18-19 ("In balancing the convenience

20   of the witnesses, primary consideration is given to third-party, as opposed to employee

21   witnesses.").  Defendants have not identified a single non-party witness with relevant information

22   for whom this District is inconvenient.  On the other hand, plaintiffs have identified seven non-

23   party witnesses – inventors and the attorneys who prosecuted the patents in suit – who are located

24   in or near Seattle, Washington and for whom this District is substantially more convenient than

25   the District of Delaware.

26       The convenience of party and non-party witnesses clearly favors this District.

OPPOSITION TO MOTION TO TRANSFER VENUE   -6-   PRESTON GATES & ELLIS, LLP
CASE NO. 05-01137 (RSM)   925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1

**2.      Key Non-Party Witnesses Could Not
Be Compelled to Testify at Trial in Delaware**

2

3       Defendants admit that no witnesses, party or non-party, reside in Delaware.  If this action

4  were transferred to the District of Delaware, plaintiffs would lose the ability to compel the

5  attendance of potentially critical non-party witnesses, including former employees who currently

6  reside in Washington.  As live testimony at trial is preferred, the availability of compulsory

7  process in this District weighs heavily in favor of keeping the action here.  *See Gulf Oil*, 330 U.S.

8  at 511 ("[c]ertainly to fix the place of trial at a point where litigants cannot compel personal

9  attendance and may be forced to try their cases on deposition, is to create a condition not

10 satisfactory to court, jury or most litigants"); *FUL, Inc. v. Unified Sch. Dist. Number 204*, 839 F.

Supp. 1307, 1312 (N.D. Ill. 1993).

11

**3.      Transfer Will Not Promote Access to
Relevant Documents or Other Evidence**

12

13      Defendants argue that this case should be tried at its "center of gravity," which they

14 contend is where infringement occurred – *i.e.*, "in the Northeast."  This argument contributes

15 nothing to the transfer analysis.  It merely repackages defendants' prior argument that their party

16 witnesses are closer to Delaware than to Washington.  Defendants point to no documents or other

17 evidence located outside of Washington that could not be made available for use at trial in this

18 District.

19      To the extent patent infringement cases can be said to have a "center of gravity,"[4]

20 consideration of the sources of evidence must include not only infringing conduct, but also claim

21 construction, validity, enforceability, and damages.  *See Decker Coal*, 805 F.2d at 843

22 (considering location of evidence regarding both liability and damages); *Asymetrix Corp. v. Lex*

23 _____

24 [4]      Courts have questioned whether the "center of gravity" concept is useful in patent infringement cases.  *See Medi USA v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992) (finding that "the material events of a patent infringement case do not revolve around any particular situs.").  Patent infringement is determined by comparing the accused device or process with the claims and "[t]his determination does not particularly involve any significant location."  *Id.*; *see also Waste Distillation Tech., Inc. v. Toman*, 775 F. Supp. 759, 766-67 (D. Del. 1991) (finding no center of gravity where relevant acts did not occur solely in one place, and witnesses and documents are located in different states).

25

26

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1   *Computer and Management Corp.*, 1995 U.S. Dist. LEXIS 20388, *11-12 (W.D. Wash. Jan. 25,

2   1995) (considering the location of the inventors as well as alleged infringing conduct).  Some of

3   the documents and things relevant to this action are physically located in Washington and

4   California; others are located in the various states where defendants are headquartered.[5]

5          The two unpublished cases on which defendants rely for their "center of gravity" thesis,

6   *Teknekron Software Systems, Inc. v. Cornell University*, 1993 U.S. Dist. LEXIS 21337 (N.D. Cal.

7   June 14, 1993), and *Steelcase, Inc. v. Haworth, Inc.,* 1996 U.S. Dist. LEXIS 20674 (C.D. Cal.

8   May 15, 1996), do not support transfer here.  In *Teknekron*, many factors apart from the location

9   of the infringing conduct led the court to conclude transfer was appropriate, including the location

10  of non-party witnesses in the transferee district.  In *Steelcase*, the court found transfer warranted

11  because *all* operative events, including development of the claimed invention, occurred in the

12  transferee district and both parties were headquartered there.

13         In any event, the fact that defendants' infringing activity took place outside this District

14  hardly supports a transfer to *Delaware*, where none of the infringing websites were designed,

15  developed, operated, or managed, and where no relevant documents or other evidence can be

16  found.  Bock Decl., ¶¶ 5-11.  This factor does not support transfer.

17                **4.    This Action and the Delaware Action Could Not Be Feasibly Consolidated**

18         If judicial economy will be promoted by consolidation of an action with a related action

19  pending in the proposed transferee district, a court may consider the feasibility of consolidation as

20  part of its transfer analysis.  *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del.

21  1987).  Although defendants do not argue for consolidation, they contend that Cendant

22  Publishing's action against Amazon.com in the District of Delaware is so similar to this action that

23  transfer is justified.  Defs. Motion at 8-10.  In fact, the only relationship between this action and

24  _____

[5]  Given modern communication and duplication technology, the location of relevant documents and things should
25  be given little weight.  *Schnabel v. Ramsey Quantitative Systems, Inc.*, 322 F. Supp. 2d 505, 518 (S.D.N.Y. 2004).
"Absent other grounds for transfer, the fact that records are located in a particular district is not itself sufficient to
support a motion to transfer."  *Royal Queentex*, 200 U.S. Dist LEXIS 10139 at *21-22 (citations omitted) (noting that
26  transfer would simply shift the inconvenience of shipping documents).

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1   the Delaware action is that Amazon.com is a party in both cases.  The two cases involve different

2   patents, different witnesses, different documents, different technologies, and different issues.

3         Amazon.com's '339 patent discloses a means of communicating credit card numbers over

4   a non-secure network.  Its '141 patent claims a customer referral system that includes a means for

5   paying commissions on referred transactions.  Its '079 patent discloses a system for conducting

6   electronic commerce using multiple electronic shopping carts.  A9.com's '609 patent discloses a

7   system for navigating within a body of data that allows users to browse different subsets of the

8   data.  On the other hand, Cendant Publishing's '370 patent discloses a method of recommending

9   goods or services to potential customers based on the purchasing histories of other customers.

10  Plaintiffs' patents have nothing to do with purchasing recommendations, and Cendant

11  Publishing's patent has nothing to do with credit card information, customer referrals and

12  commissions, electronic shopping carts, or navigation among sets of data.

13        Defendants have identified no overlap between the two actions in the areas of claim

14  construction, validity, enforceability, infringement, remedies, or any other substantive issues.

15  Defendants point to no documents that will be relevant in both actions.  Cendant Publishing is not

16  a party to this action, and none of the defendants in this case is involved in the Delaware action.

17  Any overlap in witnesses will be limited, at most, to Amazon.com witnesses with sales or

18  financial information relevant to both actions.  Defendants' conclusory assertions

19  notwithstanding,[6] there is no reason to believe that any of defendants' fact witnesses in this action

20  will have information relevant to Cendant Publishing's action in Delaware.

21        Defendants argue that the patent at issue in the Delaware action is "similar" to the patents

22  at issue here because they all involve "transacting electronic commerce over the Internet."  Defs.

23  Motion at 12; *see also id.* at 9.  This degree of similarity is meaningless.  *Cf. Symbol Technologies,*

24  *Inc. v. Intermec Technologies Corp.*, 2005 U.S. Dist. LEXIS 14415 at *3-4 (S.D. Wis. July 14,

25    [6]  Defendants claim, without any support or explanation, that "the same witnesses" will testify in this action and in
    the Delaware action regarding issues of validity and infringement.  Defs. Motion at 9:21-25.  This is highly unlikely,
    as the two actions involve different parties, different patents, different inventors and different activities that are
26  alleged to infringe.

OPPOSITION TO MOTION TO TRANSFER VENUE     -9-         PRESTON GATES & ELLIS, LLP
CASE NO. 05-01137 (RSM)                  925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1    2005) (observing that "a car radio's technology is wholly different from a car engine's technology,

2    notwithstanding the fact that they are both used in a car").[7]

3         Given the dissimilarity between the cases, no judicial efficiencies would be achieved by

4    consolidating this action and Cendant Publishing's Delaware action or by transferring this action

5    to Delaware.

6                    **5.    The Remaining Factors Do Not Support Transfer**

7         Defendants give only abbreviated consideration to the remaining factors in the transfer

8    analysis.  They claim that Delaware's interest in this action is "compelling" because all parties are

9    incorporated there; they claim that the District of Delaware has "considerable experience" in

10   patent cases, implying that this District does not; and they claim that the District of Delaware is

11   "less congested" than this District.  Defs. Motion at 10.

12        There is no support for defendants' position.  Delaware does not have a greater interest in

13   this case simply because the parties are Delaware corporations.  *See Robinson Corp.*, 304 F.

14   Supp. 2d at 1244 (transfer not favored where communities had comparable interests and claims

15   were not local in nature).  In addition, all federal district courts are assumed to be equally familiar

16   with patent law, *Recoton Corp. v. Allsop, Inc.*, 999 F. Supp. 574, 578 (S.D.N.Y. 1998), and

17   defendants cite nothing to support what they imply is Delaware's superior expertise.  Finally, the

18   data available from the Administrative Office of the United States Courts shows that the median

19   time to trial in this District is actually *less* than in the District of Delaware, a statistic that supports

20   keeping the action here.  Declaration of Wendy Bjerknes ¶ 2, Ex. A.

21        Defendants argue that "equitable considerations" support transfer because Amazon.com

22   filed this action "in direct response to" Cendant Publishing's Delaware action "as a purely

23   defensive measure."  Defs. Motion at 10.  Defendants do not explain what "equitable

24   considerations" are relevant to the transfer analysis, nor do they explain how Amazon.com's

25   [7]   The cases defendants cite are distinguishable.  *Advanced Semiconductor* involved two cases that arose out of the
     same development program; *Baird* involved two cases with "verbatim" claims; *MasterCard* involved a patent
26   infringement case and a declaratory judgment action based on "nearly identical" facts; and *IBM Credit Corp.* involved
     two cases that arose from the same agreements between the same parties.

PRESTON GATES & ELLIS, LLP
925 FOURTH AVE., SUITE 2900
SEATTLE, WASHINGTON 98104-1158
Ph: 206.623.7580; Fax: 206.623.7022

1   timing or the "defensive" nature of its strategy has produced any inequities.  The only support

2   defendants cite for their "equitable considerations" position is *Knits 'N' Tweeds, Inc v. Jones New*

3   *York*, 1979 U.S. Dist. LEXIS 14868 (E.D.N.Y. Jan. 25, 1979), a decision that has nothing to do

4   with the circumstances of this case.  In *Knits 'N' Tweeds*, the district court considered two cases

5   that were based on the same set of facts and involved the same parties.  The court found that the

6   plaintiff in the first filed action had improperly "anticipated" the second filed action – *i.e.*, the

7   plaintiff had filed first in effort to preempt a suit it knew the defendant was prepared to file on the

8   same facts in a different forum.  In these circumstances, the district court found transfer of the first

9   filed action appropriate to avoid unfairly prejudicing the defendant.  *Id.* at *2-3.

10      Here, Amazon.com and A9.com have "anticipated" nothing.  This action was filed *after*

11  Cendant Publishing's Delaware action and asserts entirely different claims against entirely

12  different parties.  There are no "equitable considerations" to support transfer to Delaware.

13  **II.      THE FIRST-TO-FILE RULE DOES NOT APPLY**

14      When duplicative lawsuits are pending in separate courts, the "first-to-file" rule provides

15  that the entire dispute may be decided by the court in which an action was first filed.  *See*

16  *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95-96 (9th Cir. 1982); *Smith v. S.E.C.*,

17  129 F.3d 356, 361 (6th Cir. 1997).  Duplicative lawsuits are those in which the parties and issues

18  are so similar that a determination in one action would leave little or nothing to be determined in

19  the other.  *Smith*, 129 F.3d at 361; *Cedars-Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 769 (9th

20  Cir. 1997); *Church of Scientology v. United States Dep't of the Army,* 611 F.2d 738, 750 (9th Cir.

21  1979).  Typically, the first-to-file rule applies where one action is the mirror image of the other –

22  for example, where one party sues for infringement of a patent and the other party sues for a

23  declaration of invalidity and non-infringement of the same patent.  *See, e.g., Pacesetter Systems,*

24  678 F.2d at 95-96; *see also Church of Scientology*, 611 F.2d at 750 (rule promotes efficiency).

25      Defendants argue that this action should be dismissed, stayed or transferred because

26  Cendant Publishing filed a "similar" action in Delaware two days before Amazon.com and

1  A9.com filed this action here.  Defs. Motion at 11-12.  However, as demonstrated above, there is

2  nothing "similar" about these two actions.  A determination of the merits in one action would

3  have absolutely no bearing on a determination of the merits in the other action.  The first-to-file

4  rule simply does not apply here.  *See Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625

5  n.13 (9th Cir. 1991) ("[I]f the issues or parties involved in the two suits were not the same,

6  adherence to the first-to-file rule *would* be reversible error for it would constitute a misapplication

7  of the law."), *as amended,* 20 U.S.P.Q.2d 1698 (9th Cir. June 5, 1991).[8]

8  **CONCLUSION**

9      For the foregoing reasons, the Court should deny defendants' motion to transfer based on

10  convenience and motion to dismiss, stay, or transfer this action pursuant to the first-to-file rule.

11

12  Dated:  September 12, 2005

13                                        s/David T. McDonald
                                          _____
14                                        David T. McDonald, WSBA # 5260
                                          PRESTON GATES & ELLIS, LLP
15                                        925 Fourth Avenue, Suite 2900
                                          Seattle, WA  98104
16                                        Ph: (206) 623-7580; Fax: (206) 623-7022

17                                        Lynn H. Pasahow (appearing *pro hac vice*)
                                          J. David Hadden (appearing *pro hac vice*)
18                                        FENWICK & WEST LLP
                                          801 California Street,
19                                        Mountain View, CA  94041
                                          Ph: (650) 988-8500; Fax: (650) 938-5200
20
                                          Attorneys for Plaintiffs
21                                        AMAZON.COM, INC. and A9.COM, INC.

22  _____
    [8]    The two unpublished decisions defendants cite do not support a contrary result.  In *Google, Inc. v. American
23  Blind & Wallpaper Factory,* Inc., 2004 U.S. Dist. LEXIS 27601 (N.D. Cal. April 8, 2004), Google filed first seeking a
    declaratory judgment that its advertising program did not constitute trademark infringement.  A few months later, the
24  defendant in the first action sued Google and five Internet Service Providers that used Google's search engine and
    advertising program at issue.  The district court found that the liability of the additional parties *depended entirely* on
    whether Google's advertising program infringed the original defendant's trademarks and held that the first-to-file rule
25  could apply to bar the second action from proceeding.  *Id.* at *12-13.  In *MasterCard Int'l, Inc. v. Lexcel Solutions,
    Inc.*, 2004 U.S. Dist. LEXIS 10906 (S.D.N.Y. June 18, 2004), the district court found that, although the causes of
26  action asserted in the first and second actions were different, because both cases involved *identical* parties, *identical*
    technology, and *identical* facts, the first-to-file rule could apply.  *Id.* at *24-25.

OPPOSITION TO MOTION TO TRANSFER VENUE                    -12-                    PRESTON GATES & ELLIS, LLP
CASE NO. 05-01137 (RSM)                                                          925 FOURTH AVE., SUITE 2900
                                                                                SEATTLE, WASHINGTON 98104-1158
                                                                                Ph: 206.623.7580; Fax: 206.623.7022

# EXHIBIT D



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| CENDANT PUBLISHING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. ___ 0 4 - 1 4 0 5 |
| | ) | |
| v. | ) | |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT AND DEMAND FOR JURY TRIAL

Plaintiff, Cendant Publishing, Inc. ("Cendant Publishing"), for its cause of action against Amazon.com, Inc. ("Amazon"), states and alleges as follows:

### THE PARTIES

1.    Plaintiff Cendant Publishing is a Delaware corporation with its principal place of business at 10750 West Charleston, Suite 130, Las Vegas, Nevada 89135.

2.    Upon information and belief, Defendant Amazon is a Delaware corporation with its principal executive offices at 1200 12th Avenue South, Suite 1200, Seattle, Washington 98114. Amazon operates an internet-based marketplace selling millions of items including books as shown by its website at <http://www.amazon.com>. A key feature of Amazon's website includes web pages tailored to individual preferences, such as recommendations and notifications.

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a).

4.     This Court has personal jurisdiction over defendant Amzazon because of, *inter alia*, its incorporation in Delaware and its operation of its Internet website, amazon.com, which is accessible to and marketed to residents of Delaware.

5.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b).

## NATURE OF THE ACTION

6.     Cendant Publishing brings this action for infringement of United States Patent No. 6,782,370 ("'370 patent"). A copy of the '370 patent is attached as Exhibit A hereto.

7.     The '370 patent, entitled "System and Method for Providing Recommendation of Goods or Services Based on Recorded Purchasing History" was duly and properly issued by the United States Patent and Trademark Office ("PTO") on August 24, 2004. The '370 patent is valid and enforceable.

8.     Amazon operates an on-line marketplace through its amazon.com website. Amazon's online marketplace uses numerous features which recommend other goods to potential customers based on prior customer purchasing history. Amazon's recommendation features, *inter alia*, "Customers who bought this book also bought" infringe one or more claims of the '370 patent.

9.     Cendant Publishing was the assignee of the '370 patent at the time it was issued.

2

10.     Cendant Publishing is the owner of the '370 patent and has the right to sue for infringement of the '370 patent.

## CLAIM I
### Infringement of the '370 Patent

11.     Cendant Publishing realleges the allegations of Paragraphs 1 to 10 above as if set forth herein.

12.     Amazon has infringed the '370 patent and will continue to do so unless enjoined by this Court.

13.     Amazon's infringement of the '370 patent has damaged Cendant Publishing and will continue to cause Cendant Publishing harm unless enjoined by this Court.

## DEMAND FOR JURY TRIAL

14.     Pursuant To Fed. R. Civ. P. 38 and District of Delaware L.R. 38.1, Cendant Publishing respectfully requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Cendant Publishing prays for judgment as follows:

A.     That this Court adjudge and decree that the '370 patent is valid and infringed by Amazon;

B.     That this Court permanently enjoin Amazon, its agents, servants, employees, attorneys, and all others in active concert or participation with Amazon from infringing the '370 patent;

3

C.    That this Court award Cendant Publishing damages adequate to compensate for

Amazon's infringement of the '370 patent;

D.    That this Court award Cendant Publishing its costs, disbursements, and attorneys'

fees for this action, including those pursuant to 35 U.S.C. § 285;

E.    That Cendant Publishing be awarded such further relief as this Court may deem

just and appropriate.

ASHBY & GEDDES

_Steven J. Balick_

Steven J. Balick (I.D. #2403)
John G. Day (I.D. #2114)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19989
(302) 654-1888

*Attorneys for Plaintiff Cendant Publishing, Inc.*

*Of Counsel:*

Steven Lieberman
Elizabeth A. Leff
Rothwell, Figg, Ernst & Manbeck, P.C.
1425 K Street, N.W.
Suite 800
Washington, D.C.  20005
(202) 783-6040

Dated: October 29, 2004
149417 v1

4

US006782370B1

(12) **United States Patent**
Stack

(10) Patent No.: **US 6,782,370 B1**
(45) Date of Patent: **Aug. 24, 2004**

(54) SYSTEM AND METHOD FOR PROVIDING
RECOMMENDATION OF GOODS OR
SERVICES BASED ON RECORDED
PURCHASING HISTORY

(75) Inventor: **Charles Stack**, Cleveland, OH (US)

(73) Assignee: **Cendant Publishing, Inc.**, Aurora, CO
(US)

( * ) Notice: Subject to any disclaimer, the term of this
patent is extended or adjusted under 35
U.S.C. 154(b) by 1030 days.

(21) Appl. No.: **08/923,293**

(22) Filed: **Sep. 4, 1997**

(51) Int. Cl.[7] .................................. G06F 17/60
(52) U.S. Cl. .................... 705/10; 705/26; 705/14
(58) Field of Search ....................... 705/10, 26, 27,
705/28, 29, 14; 235/376; 707/10, 104.1

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,870,579 A | * | 9/1989 | Hey | 705/27 |
| 4,996,642 A | * | 2/1991 | Hey | 705/27 |
| 5,583,763 A | * | 12/1996 | Atcheson et al. | 707/3 |
| 5,749,081 A | * | 5/1998 | Whiteis | 707/102 |
| 5,754,938 A | * | 5/1998 | Herz et al. | 725/116 |
| 5,774,868 A | * | 6/1998 | Cragun et al. | 705/10 |
| 5,790,426 A | * | 8/1998 | Robinson | 702/179 |
| 5,790,935 A | * | 8/1998 | Payton | 455/5.1 |
| 5,832,457 A | * | 11/1998 | O'Brien et al. | 705/14 |
| 5,867,799 A | * | 2/1999 | Lang et al. | 707/1 |
| 6,041,311 A | * | 3/2000 | Chislenko et al. | 705/27 |
| 6,049,777 A | * | 4/2000 | Sheena et al. | 705/10 |
| 6,058,367 A | * | 5/2000 | Sutcliffe et al. | 705/1 |
| 6,092,049 A | * | 7/2000 | Chislenko et al. | 705/10 |
| 6,112,186 A | * | 8/2000 | Bergh et al. | 705/10 |
| 6,266,649 B1 | * | 7/2001 | Linden et al. | 705/26 |
| 6,507,872 B1 | * | 1/2003 | Geshwind | 709/236 |
| 2001/0013009 A1 | * | 8/2001 | Greening et al. | 705/10 |

FOREIGN PATENT DOCUMENTS

WO   WO-97/02537 A1 *  1/1997

OTHER PUBLICATIONS

"How ICL Is Ensuring That Your Retailer Knows More
About You Than You Know Yourself," Computergram Inter-
national, Jun. 14, 1996.*
Wilder, Clinton, "E-Commerce Emerges," Information
Week, Jun. 14, 1996.*
IBM press release, M2 Presswire, "Wide variety of retailers
sign up for World Avenue, IBM's online shopping service.",
Nov. 12, 1996.*
Tedjer, Rivka, "Giving Content a Push," Communications
Week, Jun. 2, 1997.*
Broadvision press release, M2 Presswire, "Virgin Net teams
with Broadvision to deliver personalized services on Virgin
Online", May 15, 1996.*
Lieb, Jennifer, "Reading your mind, reaching your wallet,",
Nov. 1998.*
Hof et al., "Amazon.com: The Wide World of E-Com-
merce," Business Week, Dec. 14, 1998.*
PRNewswire, "Book Stacks Unlimited Announces Poetry
Month Exhibit", Apr. 18, 1997.*
Business Wire, CUC International Inc. offers consumers
customized book recommendations through its book stacks
subsidiary, Apr. 22, 1997.*
Alexandria Digital Literature, www.alexlit.com, no date
known.*
Amazon.com, www.amazon.com, no date known.*
"Amazon.com Catapults Electronic Commerce to Next
Level With Powerful New Features", Sep. 23, 1997.*

* cited by examiner

Primary Examiner—Nicholas D. Rosen
(74) Attorney, Agent, or Firm—Rothwell, Figg, Ernst &
Manbeck

(57) **ABSTRACT**

A computer-implemented method and system utilizing a
distributed network for the recommendation of goods and/or
services to potential costumers based on a potential custom-
er's selection of goods and/or services and a database of
previous customer purchasing history.

**16 Claims, 7 Drawing Sheets**





FIG.1



FIG.2

U.S. Patent       Aug. 24, 2004       Sheet 3 of 7       US 6,782,370 B1



BROWSE    SEARCH    ORDER    ACCOUNT    HELP

~100

FIG. 3A

SEARCH

AUTHOR    TITLE    KEYWORD    ISBN

~100

FIG. 3B

CLEAR AND PRESENT DANGER

Search Type: TITLE                              Number of Books: 6

| Title | Author | Date | Bind | Price |
|---|---|---|---|---|
| Clear and Present Danger | Clancy, Tom | 08/94 | PAP | $5.94 |
| Clear and Present Danger (Thorndike Large Print Series) | Clancy, Tom | 10/90 | TRD | $20.36 |
| Clear and Present Danger | Clancy, Tom | 08/89 | TRD | $21.21 |
| Clear and Present Danger | Clancy, Tom/ Stiers, David Ogden (Unk) | 07/94 | TRD | $17.00 |
| Clear and Present Danger | Clancy, Tom | 07/96 | PAP | $6.38 |
| Clear and Present Danger/Multi-Track Audio Cassettes | Clancy, Tom | 04/90 | TRD | $38.95 |

FIG. 3C                              100

U.S. Patent    Aug. 24, 2004    Sheet 4 of 7    US 6,782,370 B1

CLEAR AND PRESENT DANGER

By

Clancy, Tom

How Many Copies ?

PUBLISHER: BRKP
CATEGORY: Movies
PUB DATE: 08/94
BINDING: Paperback
PRICE: US$6.99

ISBN: 0425144372
BOOKMARKS: 5
*YOU SAVE:$1.05 (15%)*

YOUR PRICE:$5.94
MEMBER PRICE:$4.89

*AFFINITY* SM BY SAME PEN

100

FIG. 3D

U.S. Patent    Aug. 24, 2004    Sheet 6 of 7    US 6,782,370 B1

af·fin·i|ty n.  1 similarity 2 close relationship; connection 3 liking or inclination toward something

With Affinity, our own agent-based technology, you can explore the tastes of our other customers who've bought this same book. It's completely anonymous, and requires no effort. Finally, a helpful recommendation service based on *real people's real interests!* Based on 5 years of our customer's buying history, we think you might enjoy the book(s) listed below, purchased by customers who enjoyed *Clear and Present Danger.*

| Title | Author | Confidence In This Match |
|-------|--------|--------------------------|
| *Eaters of the Dead* | —Crichton, Michael | 100% |
| *Disclosure* | —Crichton, Michael | 100% |
| *Red Storm Rising* | —Clancy, Tom | 100% |
| *Patriot Games* | —Clancy, Tom | 100% |
| *The Sum of All Fears* | —Clancy, Tom | 100% |
| *Debt of Honor* | —Clancy, Tom | 100% |

denotes additional information.

FIG. 3E

100



FIG.4

US 6,782,370 B1

1

# SYSTEM AND METHOD FOR PROVIDING RECOMMENDATION OF GOODS OR SERVICES BASED ON RECORDED PURCHASING HISTORY

## BACKGROUND OF THE INVENTION

### 1. Field Of The Invention

The present invention relates to the use of computer systems to facilitate the recommendation of goods or services utilizing a distributed network such as the Internet, specifically to provide recommendations of goods or services that may be of interest to potential customers based on a potential customers' selection of goods or services and a database of previous customer history with respect to the selected goods or services.

### 2. Description Of The Background Art

Providing recommendations of goods or services of interest to customers in a computer system environment has been based on demographic profiles and usually requires extensive customer participation and divulgence of personal information (for example, the input of: age, profession, hobbies, gender, . . . ) to create a user profile, which is then compared against other user profiles to determine possible items of interest to the user. The need for extensive customer input limits the appeal of these feedback systems because they require the user to expend substantial time and effort in addition to revealing personal details in order to obtain the requested information.

The present invention allows potential customers to utilize a computer system interfaced with a distributed network to obtain recommendations of goods or services that may be of interest to them while substantially reducing the degree of customer input required in comparison to prior art systems. Instead of relying on the personal information provided by each potential customer as a basis for determining recommendations, the subject invention utilizes a customer activity history database to facilitate the determination of recommendations.

## SUMMARY OF THE INVENTION

A method for recommending goods or services is provided which allows the user of a computer system connected to a distributed network such as the Internet to receive recommendations of goods or services of potential interest based on a particular good or service selected by the user and previous customer buying history. The previous customer buying history is assembled by passively tracking and retaining or storing all purchasing decisions by previous customers.

The user first selects a particular good or service he may be interested in obtaining. This selection is treated as filter data input to a host computers' data processor. The data processor then compares this input data with a customer activity history database to determine if there are any possible goods or services that can be recommended to the user. If there are possible recommendations the user can choose to have those goods or services recommended to him by the system. The data processor then utilizes the filter data input and the customer history database to determine all of the customers who have purchased the particular good or service selected by the user and all the goods or services those customers have purchased. The goods or services purchased in common by this group of customers are returned as filtered output data and displayed to the user as recommended goods or services.

2

According to another aspect of the invention, a confidence factor indicating the level of confidence in the strength of the recommendation may be provided.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram showing one preferred embodiment of the present invention.

FIG. 2 is a flow diagram showing one preferred embodiment of user interaction with a customer history database.

FIG. 3A is a depiction of the home page of the website as displayed to the user which provides the search option to the user.

FIG. 3B is a depiction of the search page as displayed to the user where the user can search by author, title, keyword, or ISBN.

FIG. 3C is a depiction of the search results page as displayed to the user where the user can select a particular book.

FIG. 3D is a depiction of the book selection page as displayed to the user where the user can select to have recommendations of potential interest returned to him.

FIG. 3E is a depiction of the recommendations result page as displayed to the user.

FIG. 4 is a flow diagram showing one preferred embodiment of the computer-implemented systems' structure and data flow.

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

In the preferred embodiment, books are recommended over the Internet using World Wide Web technology although any communication medium could be used including distributed networks such as Local Area Networks (LANs), Wide Area Networks (WANs), or Electronic Bulletin Board Systems (BBSs). For purposes of illustration, the preferred embodiment will be described in the context where the goods or services are books; however, the invention may be practiced with respect to any good or service.

With reference to FIG. 1, a remote user utilizing an operator interface 1 accesses a distributed network communication medium 2, such as, for example, the Internet via the World Wide Web. The operator interface 1 may be any computer with a modem, network card or any other device including wireless devices utilized in computer systems to facilitate the transmission of data and may be found in personal computers used in households, business offices or schools. The computer can be any device capable of processing data such as computers based on technology from Apple Computer (e.g., The Macintosh, The Performa, the PowerMac series, etc.) or technology based on processors by Intel, AMD, Cyrix, etc. and commonly referred to as IBM compatibles. It should be noted however that a user need not have a computer (i.e., a machine with processing power); a so-called "dummy terminal" being sufficient. Once logged onto the Internet, the user accesses a host computer 3 by specifying a website domain address, as is well known. The host computer 3 contains information regarding goods or services (such as books) for sale and also contains a customer purchasing history database 4 which stores data describing all purchases of previous customers.

One preferred method of retrieving recommendation information will be explained with reference to FIGS. 1, 2 and 3A–3E, and will be described with particular reference to retrieving information regarding the purchase and recommendation of books.

US 6,782,370 B1

3

At step 10, a user logs onto the Internet network, such as by obtaining access through an Internet service provider, and at step 20, the user enters the website by retrieving information from host computer 3.

A screen display 100 is shown in FIG. 3A provides various hypertext selections for various actions to be performed. As indicated, a user may choose to browse, search, order, retrieve account information, or request help.

The user can select a book by choosing the Search function in FIG. 3A. Once the search function has been selected, the user may search for the book by either author, title, keyword or a International Standard Book Number (ISBN) as shown in FIG. 3B.

The user may utilize any of these methods to select a particular title. In FIG. 3C, a user has selected the title Clear and Present Danger by author Tom Clancy. As shown in FIG. 3C, any particular title may be available in a number of different formats or editions. Once a specific title is selected from among the choices in FIG. 3C, the host computer 3 determines if there are any possible recommendations available for this particular book. If so other books are available as recommendations, the host computer will not give the user the option to request recommendations; the user can still purchase the selected title or request other information concerning this book, If other books are available as recommendations the option to request recommendations is supplied to the user in the form of a hypertext display as shown in FIG. 3D is the Affinity™ service.

The system determines whether other books are available to be recommended by consulting the customer history database 4. The customer history database includes three relational database tables consisting of Customers, Orders and Items. The tables are related to each by keying unique customer IDs in the Customer table to order numbers in the Orders table and product identification numbers in the Items table. For example, books may be identified by their unique ISBN in the Items table. When a user has selected a particular book, the system searches the database 4 to determine all previous customers who have purchased that book. If there exist in the database at least two other customers who have purchased the user-selected book and those at least two customers have also purchased other books (or other products) in common, then the Affinity™ hypertext link will appear in the display page for the selected book. If the search does not find at least two customers who have purchased the selected book and who have also purchased another book in common, the Affinity™ hypertext link will not appear in the display page. Once the user activates the Affinity™ hypertext link, the books purchased in common will be displayed, as shown in FIG. 3E.

Another aspect of the invention is the indication of a "confidence match" factor as shown in FIG. 3E. The confidence factor is calculated based on the frequency of appearance of the recommended books (or other items) in the histories of the customers who have purchased the selected book (or other item). For example, if ten customers who purchased book A also purchased book B, the confidence factor in the recommendation of book B to a user who selected book A would be 100%. If on the other hand only 7 of the ten customers who purchased book A also purchased book B, the confidence factor for book B would be 70%. As previously explained above, if none of the customers who purchased book A also purchased at least one other book in common, the Affinity™ hypertext link would not be displayed.

The user makes a request for recommended books by selecting the Affinity™ hypertext using a tracking device

4

such as a mouse. The request is then transmitted to the host computer 3 via the Internet 2 and is processed at the host computer 3. To facilitate the processing and storage of data each customer is assigned a unique ISBN. The host computer utilizes these elements to track and retain the identification of all customers and their purchases. The retained customer purchasing history is stored in the customer history database 4 and is accessed whenever a request for recommendations is submitted to the host computer.

Utilizing the customer history database 4, the host computer 3 searches all the books purchased by all the customers who have purchased the particular book that was selected by the user. Titles which have been purchased in common among the customers are selected as recommendations for the user. This collaborative filter or intelligent agent is superior to other methods because it uses actual customer purchasing history to assemble recommendations. It does not require any customer effort nor impinge on customer privacy. The recommendations are then transmitted to the user via the Internet 2 and displayed on the user interface 1 as shown in FIG. 3E.

FIG. 4 illustrates one example of the system structure and data flow. An operator enters input data 21 consisting of a selected book. This input data 21 is transmitted from the operator to the processor 23 via a distributed network 22 similar to the distributed networks described earlier with reference to block 2 in FIG. 1. The processor utilizes database selection rules 25 as explained above in conjunction with the input data 21 to determine the recommendations that will be accessed from the database 26 which contains data on previous customer purchasing history. The recommendations are then transmitted from the processor 23 to the operator as output data 24 via a distributed network as previously described with reference to FIG. 1 block 2.

The invention having been described, it will be apparent to those skilled in the art that the same may be varied in many ways without departing from the spirit and scope of the invention. Any and all such modifications are intended to be included within the scope of the following claims.

I claim:

1. A computer-implemented method for the recommendation of goods and/or services to potential customers over a distributed network based on customer buying history utilizing an information processing system containing processing means having transmission means for receiving and transmitting data, and database storage means for storing information in database files, the method comprising the steps of:

receiving customer commands specifying a particular good or service to be used as filter data;

storing information pertaining to goods and/or services purchasing history of previous customers;

comparing said filter data with said stored information and determining whether, for said filter data, corresponding entries exist within the stored information; and

if corresponding entries exist, displaying the identity of other goods and/or services purchased by said previous customers who have purchased the good and/or service used as said filter data.

2. The method of claim 1 wherein said distributed network is the Internet.

3. The method of claim 1 wherein said distributed network is a Local Area Network.

4. The method of claim 1 wherein said distributed network is a Wide Area Network.

US 6,782,370 B1

5

5. The method of claim 1 wherein said distributed network is a Bulletin Board System.

6. The method of claim 1 wherein said goods are books.

7. A computer-implemented interactive system for assisting a potential customer in purchasing decisions from among a plurality of goods or services, the system comprising:

an operator interface for enabling potential customers to input requests to said computer, including requests for:
  the purchase of goods or services,
  information concerning goods or services,
  recommendations of goods or services based on operator input;

a database maintained in said computer, containing information pertaining to goods and/or services purchasing history of previous customers;

means for processing inputted requests and for filtering relevant history information regarding said inputted requests from said database;

a distributed network for transmitting requests from said operator interface to said computer and for transmitting responsive information from said computer to said operator interface;

interface whereby goods and/or services identification information corresponding to goods and/or services purchased by previous customers who have purchased the goods and/or services requested by said potential customers are transmitted to said operator interface for use by said potential customers.

6

8. The system of claim 7 wherein said distributed network is the Internet.

9. The system of claim 7 wherein said distributed network is a Local Area Network.

10. The system of claim 7 wherein said distributed network is a Wide Area Network.

11. The system of claim 7 wherein said distributed network is a Bulletin Board System.

12. The system of claim 7 wherein said goods are books.

13. The system of claim 7 wherein said operator interface is a personal computer.

14. The system of claim 7 wherein said operator interface is a workstation.

15. The system of claim 7 wherein said operator interface is a dummy terminal.

16. A computer program product having a computer readable medium having computer readable code recorded thereon for the recommendation of goods or services in response to user input, comprising:

input means for receiving user commands specifying a particular good or service to be used as filter data;

database storage means for the retention of data concerning goods or services purchase decisions of prior users; and

means for filtering said database storage means using said specified particular good or service to obtain recommendations of other goods or services to a user based on said inputted user commands.

*    *    *    *    *

# EXHIBIT E

Westlaw.

Slip Copy                                                                                                      Page 1
Slip Copy, 2005 WL 3358670 (S.D.N.Y.)
**(Cite as: 2005 WL 3358670 (S.D.N.Y.))**

H

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
AEROTEL, LTD., Plaintiff,
v.
VERIZON COMMUNICATIONS INC., Cellco
Partnership a/k/a and d/b/a Verizon
Wireless, Verizon Select Services Inc., and Codetel
International
Communications Incorporated, Defendants.
**No. 05 CV 0120(TPG).**

Dec. 6, 2005.

OPINION

GRIESA, J.

**\*1** In this action, plaintiff Aerotel, Ltd., the holder of a patent related to pre-paid telephone calling cards, seeks damages from defendants for breach of a licensing agreement, and a declaratory judgment that certain of defendants' products and services "are covered by and, unless licensed would infringe" plaintiff's patent.

Defendants have moved pursuant to Rule 42 of the Federal Rules of Civil Procedure to consolidate this case with *Aerotel, Ltd., et al. v. IDT Corp. et al.,* 03-CV-6496 (RJH) currently pending before Judge Holwell. The motion is denied.

*BACKGROUND*

The present case arises from a license agreement (the "Agreement"), dated October 3, 1994, under which defendants were allegedly granted a non-exclusive license under plaintiff's patent, U.S. Patent No. 4,706,275 (the "Patent") to use plaintiff's prepaid telephone card technologies in exchange for the payment of certain royalties. In their amended complaint, plaintiffs allege that "defendants have marketed the prepaid telephone calling cards and related telephone services which are subject to the License Agreement, but ... have failed to pay royalties and otherwise report as required by the License Agreement." Plaintiffs seek damages for breach of contract, and a declaration that certain products and services used and marketed by defendants are covered by plaintiff's patent. In their answer, filed on June 9, 2005, defendants responded that they have not breached the Agreement and that the plaintiff's "Patent is invalid." At a conference on May 6, 2005 the court ordered discovery to be completed within nine months.

In *Aerotel, Ltd., et al. v. IDT Corp. et al.,* 03-CV-6496 (RJH), Aerotel has asserted that the defendants IDT Corp. and Union Telecard Alliance, LLC (collectively "IDT") have infringed the Patent by using, offering to sell, and selling products and services related to prepaid telephone calling cards which are covered by one or more claims of the Patent. No contractual relationship existed between Aerotel and IDT, and that action is solely for patent infringement. IDT's answer to the complaint, filed on October 31, 2003, asserted that the Patent is invalid, unenforceable and/or not infringed by its prepaid telephone calling cards and services. As a result of a stay imposed by the court pending the outcome of a reexamination of the Patent by the U.S. Patent Office, no substantive discovery has yet begun in the IDT litigation. The reexamination has since concluded and the stay was lifted effective October 12, 2005.

Defendants assert that the two cases are closely related because they both involve Aerotel's claims that their Patent has been infringed, and that "in each case the Court will have to determine whether the Patent is valid and whether the system through which defendants' prepaid telephone cards operate infringes that patent". Defendants further argue that the cases are related because Codetel, one of the four defendants in this case, distributes prepaid telephone cards that allow customers to make calls using a system provided by IDT. Defendants assert that the patent infringement claims in this case against Codetel, Verizon, and Verizon Select are based, in part, on prepaid, land-line telephone cards distributed by Codetel that use the IDT technology that is alleged to infringe the Patent.

**\*2** Aerotel, on the other hand, argues that these cases are "fundamentally different from each other" and do not have the sort of common question of law or fact that would warrant an order of consolidation. Aerotel points out that its claim here arises from a licensing

Slip Copy                                                                                                    Page 2
Slip Copy, 2005 WL 3358670 (S.D.N.Y.)
**(Cite as: 2005 WL 3358670 (S.D.N.Y.))**

contract, whereas the IDT litigation involves no contract claims. Aerotel also correctly asserts that none of the defendants are common to both actions. As to Codetel's use of the allegedly infringing IDT technology, Aerotel asserts that "Codetel and the other defendants in the present action also utilize many different prepaid telephone cards systems and services that have no relation to IDT," and that there are at least five different allegedly infringing technologies that are being used by the defendants in the present action. Finally, Aerotel argues that consolidation of the present case with the IDT litigation would cause substantial delay and inconvenience to the parties because discovery in the present case is well under way whereas no discovery has yet taken place in the IDT litigation.

*DISCUSSION*

Rule 42(a) provides that a court may order actions consolidated if they involve "common issues of law or fact." Fed.R.Civ.P. 42(a). "The trial court has broad discretion to determine whether consolidation is appropriate." *Johnson v. Celotex Corp.,* 899 F.2d 1281, 1284-85 (2d Cir.1990). In *Kinberg v. Colorforms,* 89-CV-1156, 1989 U.S. Dist. LEXIS 8360 (S.D.N.Y. July 21, 1989) the plaintiff, owner of a patent for producing "luminescent slate," alleged that Colorforms had breached its licensing agreement by failing to pay royalties, and that it had infringed the plaintiff's patent by continuing to market luminescent slates after the licensing agreement was terminated. The plaintiff had also sued a different defendant, Unimax, for infringing its patent through a different product. While the court found that the question of the validity of Kinberg's patent was common to both actions, it nevertheless denied Colorform's motion to consolidate, holding that the common factors were outweighed by the differences between the cases. In particular, the court noted that (1) the plaintiff was asserting infringement by two different parties on the basis of different products, (2) Unimax had no interest in the contract claim against Colorform since no such claim had been asserted against Unimax, and (3) judicial economy would be impeded rather than enhanced by consolidation as each defendant would have to attend to significant discovery relevant primarily to the other.

 Each of these factors exists here as well, and dictates that defendants' motion be denied. While it is true that the same patent is at issue in the two cases, these actions involve entirely different defendants and, for the most part, different products. Although defendants argue that one of the same infringing products is at issue, as Codetel uses the allegedly

infringing IDT technology, they do not dispute that some defendants also used a number of prepaid telephone card systems and services other than those provided by IDT. The fact that one technology, used by one of the four defendants in this action, relates to one of the issues in the IDT litigation is far outweighed by the differences in the two cases, including the fact that many of the other technologies at issue here are not the subject of the IDT litigation.

 **\*3** Furthermore, the present action is rooted in defendants' alleged breach of its license agreement, a claim in which IDT, a non-licensee, has no interest. Finally, as in *Kinberg,* consolidation would sacrifice judicial economy here because the contract claim, and the numerous technologies at issue in this case that are not part of the IDT litigation, are substantial non-overlapping issues that would lead to increased discovery costs and be confusing to the jury. *See Kinberg,* 1989 U.S. Dist. LEXIS 8360, at \*5 ("Combining two cases that include significant non-overlapping issues is a greater burden on the court than trying two relatively simple cases.")

 Consolidating these actions would also significantly delay the present case in which discovery is due to be completed by early February 2006. The parties in the IDT litigation have conducted only minimal discovery, while the parties in the present case have already engaged in significant discovery currently scheduled to be completed within approximately two months. *See Garfinkle v. Arcata Nat'l Corp.,* 72-CV-5344, 1974 U.S. Dist. LEXIS 8946 (S.D.N.Y. April 17, 1974); *A. Ahlstrom Corp. v. Goulds Pumps, Inc.,* 92-CV-584, 1992 U.S. Dist. LEXIS 14344 (N.D.N.Y. September 3, 1992).

*CONCLUSION*

 Defendants' motion to consolidate the present action with *Aerotel, Ltd., et al. v. IDT Corp. et al.,* 03-CV-6496 (RJH) is denied.
   SO ORDERED.

 Slip Copy, 2005 WL 3358670 (S.D.N.Y.)

   **Motions, Pleadings and Filings (Back to top)**

• 2005 WL 3281866 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of Their Motion to Consolidate (Oct. 03, 2005)

• 1:05cv00120 (Docket) (Jan. 07, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                      Page 3
Slip Copy, 2005 WL 3358670 (S.D.N.Y.)
**(Cite as: 2005 WL 3358670 (S.D.N.Y.))**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT F

LEXSEE 1994 U.S.DIST.LEXIS 17569

**APPLIED MATERIALS, INC., Plaintiff v. ADVANCED SEMICONDUCTOR MATERIALS AMERICA, INC., EPSILON TECHNOLOGY INC., doing business as ASM EPITAXY, and ADVANCED SEMICONDUCTOR MATERIALS INTERNATIONAL N.V., Defendants**

**No. C-92-20643 RMW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*1994 U.S. Dist. LEXIS 17569; 30 U.S.P.Q.2D (BNA) 1967*

**April 18, 1994, Decided
April 19, 1994, FILED**

**JUDGES:** **[*1]** RONALD M. WHYTE, UNITED STATES DISTRICT JUDGE

**OPINIONBY:** RONALD M. WHYTE

**OPINION:**

ORDER GRANTING APPLIED MATERIALS, INC.'S MOTION TO DISMISS INEQUITABLE CONDUCT CLAIM AND MOTION TO STRIKE INEQUITABLE CONDUCT DEFENSE

Applied Material Inc.'s ("Applied") motion to dismiss Advanced Semiconductor Materials America, Inc. et al.'s ("ASM") inequitable conduct claim and motion to strike ASM's inequitable conduct defense was heard on April 15, 1994. The court has read the moving and responding papers and heard the oral argument of counsel. Good cause appearing therefor, the court grants Applied's motions.

**I. BACKGROUND**

On April 18, 1989 Applied filed the parent application of U.S. Patent No. *5,194,401* for a pressure-resistant thermal reactor system for semiconductor processing. On November 15, 1989, Applied filed a divisional application. Applied filed a corresponding European patent application. On April 9, 1991 Applied received a European Search Report that made reference to U.S. Patent No. *3,744,964* ("the Hart patent"). On April 22, 1992 Applied filed a continuation application that disclosed the European Search Report and the Hart Patent in an Information Disclosure Statement. On March 16, 1993, the Examiner **[*2]** issued the continuation application as a patent without change.

On October 1, 1992, Applied filed suit against Advanced Semiconductor Materials et al. ("ASM") al-leging that ASM infringed U.S. Patent No. *4,920,918* ("the *'918* patent"). On July 15, 1993, this court, pursuant to the parties' stipulation, granted leave for Applied to amend its complaint to add U.S. Patent No. *5,194,401* ("the *'401* patent") issued on March 16, 1993. On January 17, 1994, Applied stipulated to allow ASM to amend its answer and counterclaim to allege that Applied was guilty of inequitable conduct in connection with its alleged withholding of U.S. Patent No. *3,744,964* ("the Hart patent") from the United States Patent Office ("PTO") until after the original patent application was examined and allowed.

On January 21, 1993, Applied moved to dismiss the ASM defendants' inequitable conduct allegations on the grounds that the allegations are insufficient as a matter of law to support an "inequitable conduct" claim.

**II. LEGAL STANDARDS**

**A. Motion to Dismiss**

In ruling on a motion to dismiss, district courts must accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in **[*3]** favor of the plaintiff. *Blake v. Dierdorff, 856 F.2d 1365, 1368 (9th Cir. 1988).* However, fraud claims must be pleaded with particularity. *Fed. R. Civ. Pro. 9(b).* A complaint may be dismissed as a matter of law for two reasons: (i) lack of a cognizable legal theory, or (ii) the pleading of insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)* (citations omitted.)

**B. Motion to Strike**

A motion to strike is governed by *Rule 12(f) of the Federal Rules of Civil Procedure*, which states:

Upon motion made by a party before re-

sponding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

As with a motion to dismiss, when ruling on a motion to strike a court must view the pleadings in the light most favorable to the non-moving party. *California v. United States, 512 F. Supp. 36, 39 (N.D. Cal. 1981).* **[\*4]** This court will review the allegations in the pleadings with these standards in mind.

### C. Inequitable Conduct

A patent applicant has a duty of candor to the Patent Office. *LaBounty Mfg., Inc. v. United States Int'l Trade Com., 958 F.2d 1066, 1070 (Fed. Cir. 1992).* The duty of candor extends through the patent's entire prosecution history. If an applicant withholds material information from the Patent Office with the intent to affect the issuance of a patent, the applicant has engaged in inequitable conduct and the patent may be rendered unenforceable. *FMC Corp. v. Manitowoc Co., 835 F.2d 1411, 1415 (Fed. Cir. 1987).* The elements of materiality and intent must be established by clear and convincing evidence. *LaBounty Mfg., supra, 958 F.2d at 1070.* "Information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." 37 C.F.R. [at] 1.56(a) (1991). To establish inequitable conduct, intent to deceive must be proven. Tol-O-Matic Inc. v. Proma Produkt-Und Marketing Gesellschaft **[\*5]** m.b. *H., 945 F.2d 1546, 1553-54 (Fed. Cir. 1991).*

### III. ANALYSIS

### A. Judicial Notice n1

> n1 ASM did not oppose Applied's Request for Judicial Notice.

On a motion to dismiss, a court may take judicial notice of facts outside the pleadings without converting a Rule 12(b)(6) motion to one for summary judgment. *Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (1986).* In Mack, the court stated that a court may take judicial notice of "records and reports of administrative bodies." Id. (citation omitted). Therefore, this court will take judicial notice of the United States Patent Office's public records of the proceedings in Patent Application

Serial Nos. 436,838 (Request for Judicial Notice, Ex. A) and 873,483 (Request for Judicial Notice, Exh. B) which issued into U.S. Patent No. *5,194,401.*

### C. Inequitable Conduct

Applied argues that, as a matter of law, the failure to disclose a prior art reference in an abandoned application cannot **[\*6]** be inequitable conduct when the reference is disclosed in a continuing application from which a patent issued because 1) the delayed submission is not material and 2) the alleged misrepresentations relate to nondisclosure of the prior art and were "cured" with its disclosure. ASM argues that even a cursory examination of the Hart patent reveals its materiality to the *'401* patent because the Hart patent discloses what Applied claims as its invention: a semiconductor reactor having a quartz reaction chamber with external strengthening ribs and the European Search Report expressly stated that the Hart patent was "relevant." Applied counters that materiality of the delay, not materiality of the prior art, must be assessed on these facts. Applied argues that, even if the Hart patent were a material reference, the fact that it was not cited in the abandoned application was not material because the Examiner was provided with the Hart reference in the context of a fresh patent application. Therefore, Applied contends, a reasonable examiner simply could not consider the earlier absence of Hart before him or her "important in deciding whether to allow the application to issue as a patent." **[\*7]** The court agrees. Because this is not a case of nondisclosure, but a case of delayed disclosure, the materiality of the delay, not the materiality of the reference, must be assessed. Because the Examiner considered the prior art in the context of the continuation application, there could not be "a substantial likelihood that a reasonable examiner would consider [the delayed submission of the Hart patent] important in deciding whether to allow the application to issue as a patent." 37 C.F.R. [at] 1.56(a) (1991).

The court also rejects ASM's argument that, because of the late submission, the Examiner did not actually read the Hart patent. In *Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 939 (Fed. Cir. 1990)* cert. denied *498 U.S. 920, 112 L. Ed. 2d 250, 111 S. Ct. 296 (1990),* the court states that "it is presumed that public officials do their assigned jobs." *Id. at 939* (citations omitted)). Once the Hart patent was before the patent examiner, he was presumed to have considered it.

ASM also argues that while Applied withheld the Hart patent it made material **[\*8]** misrepresentations to the PTO which were flatly inconsistent with Applied's own concealed knowledge of the Hart patent. ASM contends that because Applied did not comply with the three-part test set forth by the Federal Circuit in *Rohm & Haas Co. v. Crystal Chemical Co., 722 F.2d 1556, 1572 (Fed. Cir.*

1994 U.S. Dist. LEXIS 17569, *8; 30 U.S.P.Q.2D (BNA) 1967

*1983)* cert. denied *469 U.S. 851, 83 L. Ed. 2d 107, 105 S. Ct. 172 (1984),* it did not cure the alleged misrepresentations.

In opposition, Applied claims that ASM's cure argument fails because Rohm & Haas involved false test results while, in the case at bar, the alleged misrepresentations relate to the prior art. Applied reasons that the Rohm & Haas cure requirements are relevant in the former but not in the latter case because in the case of alleged misrepresentations of prior art the Patent Examiner could independently examine the prior art after it was disclosed. Applied points to the Federal Circuit's refusal to find inequitable conduct in *Northern Telecom, Inc. v. Datapoint Corp., 908 F.2d 931, 938-40 (Fed. Cir. 1990)* where the applicant allegedly mischaracterized [*9] the prior art. The court reasoned that "the pertinent information was squarely before the examiner. . . ." *Id. at 938.* Applied attempts to distinguish Northern Telecom because the patentee's mischaracterization of an amendment to the patent application was made at a time when the document was before the Examiner rather than at an earlier time. The court disagrees. The distinction is inconsequential because in both cases the Patent Examiner could make an independent examination of the prior art. Once the prior art Hart patent was disclosed, the Patent Examiner was free to reach his own conclusion regarding the disclosure in the reference before him. The court also finds that the Rohm & Haas procedures are not applicable in the instant case. In Rohm & Haas a cure could only be effectuated by supplying the Patent examiner "with accurate facts" concerning the test results and "calling his attention to the untrue or misleading assertions sought to be overcome. . . ." *Rohm & Haas, supra 722 F.2d at 1572.* In the case at bar, disclosure of the prior art "cured" the alleged misrepresentations because the Patent [*10] Examiner could independently assess the veracity of the alleged misstatements by examining the prior art.

Therefore, the court finds that ASM's failure to disclose a prior art Hart reference in an abandoned application cannot be inequitable conduct when the reference was disclosed in a continuing application from which the *'401* patent issued.

### IV. ORDER

Accordingly, the court grants Applied's motion to dismiss the inequitable conduct claim and motion to strike the inequitable conduct defense.

DATED: 4/18/94

RONALD M. WHYTE

UNITED STATES DISTRICT JUDGE

### ORDER DENYING APPLIED'S MOTION FOR CONSOLIDATION WITHOUT PREJUDICE

The motion to consolidate of Applied Material, Inc. "Applied") was heard on April 8, 1994. In this motion, Applied seeks to consolidate for trial the two above-captioned cases pending before this court. The court has read the moving and responding papers and heard the oral argument of counsel. Good Cause Appearing therefor, the court denies plaintiff's motion to consolidate pursuant to *Federal Rules of Civil Procedure, Rule 42(a).*

### I. BACKGROUND

On October 1, 1992, Applied filed suit against Advanced Semiconductor Materials et al. ("ASM"). In February 1993, this [*11] court held a case management conference and set an August 15, 1994 jury trial date and a May 1, 1994 discovery cut-off. Applied alleges that ASM's Epsilon One reactor infringes two related Applied patents, U.S. Patent Nos. *4,920,918* ("the *'918* Patent") and *5,194,401* ("the *'401* Patent"). Both of these patents relate to the design of the quartz tube in a semiconductor reactor.

ASM filed Advanced Semiconductor Materials, America Inc. et al. v. Applied Materials on January 11, 1993. On September 15, 1993 Judge McNamee of the Arizona District Court granted Applied Materials' motion to transfer the case to this court. The case involves two separate patents, U.S. Patent No. *4,874,464* ("the *'464* patent") relating to a process for operating an epitaxial reactor and U.S. Patent No. *4,798,* 165 ("the '165 patent") relating to an apparatus for chemical vapor deposition. The parties have agreed to consolidate the cases for purposes of discovery.

### II. LEGAL STANDARDS

*Federal Rule of Civil Procedure 42(a)* provides:

**Consolidation.** When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in [*12] issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

"The district court has broad discretion under this rule to consolidate cases pending in the same district." *Investors Research Co. v. U.S. District Court, 877 F.2d 777 (9th Cir. 1989).* In determining whether or not to consoli-

1994 U.S. Dist. LEXIS 17569, *12; 30 U.S.P.Q.2D (BNA) 1967

date, a court weighs the interest of judicial convenience against the potential for confusion, prejudice, or delay. See *Southwest Marine, Inc. v. Triple A Machine Shop, Inc., 720 F. Supp. 805, 807 (N.D.Cal. 1989).* This weighing process involves a review of a number of different factors including, but not limited to, whether the causes of action and facts in each action are similar, whether the complexity of the consolidated case will confuse the jury, whether trying the actions separately will involve an unneeded duplication of effort, whether consolidation will delay the trial of one or both of the actions, and whether consolidation would adversely affect the rights of any of the parties. Id.

### III. ANALYSIS

Applied argues **[*13]** that the two cases involve common questions of law and facts such as 1) extensive testimony about the structure and development of ASM's Epsilon One reactor; 2) specific aspects of epitaxial chemical vapor deposition; 3) testimony of many of the same witnesses and expert witnesses on the technology and operation of each party's products; 4) common legal issues e.g. infringement, patent validity, and defenses of anticipation, obviousness, violation of Section 112 and inequitable conduct; 5) common prior art; 6) the commercial success of the Epsilon One; and 7) the level of "one of ordinary skill in the art". On the basis of these allegedly common questions, Applied argues that consolidation would be efficient and economical in that the parties will not have to educate two judges and two juries on the concededly highly complex and technical subject matter. In opposition, ASM argues that the factual and le-

gal overlap between the two cases is de minimis. Although the court finds that there are some common issues, "the mere existence of common issues. . . does not mandate consolidation." *Cedar-Sinai Medical Center v. Revlon, Inc., 111 F.R.D. 24, 33 (D.Del. 1986).* **[*14]**

ASM contends that granting Applied's motion to consolidate would require the jury to understand three separate technologies, increase the likelihood of juror confusion, lengthen the trial, and invite juror boredom. The court agrees. A patent case involving a single patent is difficult enough for a jury because patent cases are notoriously complex. In the instant case, consolidation would require the same jury to deal with four patents. Consolidating these two cases would require the jury to hear, digest, and keep separate testimony on twice as many patents. The court finds that the likelihood of jury confusion outweighs any efficiency that might be achieved through consolidation.

### IV. ORDER

Good Cause Appearing, the court denies without prejudice Applied's motion to consolidate the above–captioned cases for trial. Upon appropriate request, the court will revisit the issue of consolidation or partial consolidation as proposed by Applied during oral argument at the pretrial conference or by motion made closer to trial.

DATED: 4/18/94

RONALD M. WHYTE

UNITED STATES DISTRICT JUDGE

# EXHIBIT G

LEXSEE 1989 U.S.DIST. LEXIS 17189

**LIQUI–BOX CORPORATION, Plaintiff v. REID VALVE COMPANY, INC., Defendant**

**Civil Action Nos. 85–2355, 87–2098**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

*1989 U.S. Dist. LEXIS 17189; 16 U.S.P.Q.2D (BNA) 1075*

**September 15, 1989**

**SUBSEQUENT HISTORY:**

*Adopting Order of October 11, 1989, Reported at 1989 U.S. Dist. LEXIS 17188.*

**JUDGES: [*1]**

Robert C. Mitchell, United States Magistrate.

**OPINIONBY:**

MITCHELL

**OPINION:**

MAGISTRATE'S REPORT AND RECOMMENDATION

I. Recommendation

It is respectfully recommended that the plaintiff's motion for consolidation be denied.

II. Report

Presently before the Court is the plaintiff's motion to consolidate Civil Action Nos. 85–2355 and 87–2098 for a single trial. The plaintiff, Liqui-Box Corporation ("Liqui-Box"), an Ohio corporation, filed the first action ("C.A. No. 85-2355) on October 3, 1985 against the defendant, Reid Valve Company, Inc. ("Reid"), a California corporation. In that complaint, Liqui-Box alleges infringement by Reid of its design patent (U.S. Patent No. Des. *264,942*) on a square, stackable bottle. The more recent action ("C.A. No. 87-2098) is just beginning discovery. It concerns a design patent (U.S. Patent No. Des. *270,136*) which relates to a particular round bottle configuration.

Liqui-Box moves to vacate the trial date in the first action and consolidate the above two actions. Reid objects to consolidation claiming there are virtually no common issues of fact and no duplication of evidence with respect to the two cases. Reid also notes that the two cases are at greatly disparate [*2] points of preparation, the first case having been ready for trial for three years, while the later case is still in discovery.

The court has discretion under *Fed.R.Civ.P. 42(a)* whether to consolidate actions. *Cedars-Sinai Medical Center v. Revlon, Inc., 111 F.R.D. 24 (D. Del. 1986)*.

*F.R.Civ.P. Rule 42(a)* provides, in pertinent part:

"When actions involving a common question of law or fact are pending before the court * * * * it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Under the present circumstances, consolidation should not be granted. The two cases do not involve such common questions of law and fact as to justify consolidation. Aside from the similarity that both pending actions are design patent cases, there are no apparent common issues of fact and little, if any, duplication of evidence with respect to the two cases. The 1985 case is based on a square, stackable bottle which is described in functional terms. The product accused of infringement in that action is also a functional, stackable bottle. The later–filed case, however, relates to a round bottle. Not **[*3]** only is the prior art to be examined totally different with respect to each patent, but the infringement issues in the two cases relate to totally distinct products. The mere fact that two cases assert similar theories of recovery does not constitute a common question of law so as to warrant consolidation. *Flintkote v. Allis-Chalmers Corp., 73 F.R.D. 463, 465 (S.D.N.Y. 1977)*. Where the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues. Id.

In *Rohn & Haas Co. v. Mobile Oil Corp., 525 F. Supp. 1298 (D. Del. 1981)*, the court granted a motion for con-

1989 U.S. Dist. LEXIS 17189, *3; 16 U.S.P.Q.2D (BNA) 1075

solidation. There all six patents underlying the cases to be consolidated were alleged to be infringed by the same compounds. Moreover, all of the patents could be traced to a common disclosure. In addition, neither of the cases had been set for trial, no discovery cut-off dates had been made, and a substantial amount of documentary evidence was common to both actions. Consolidation was deemed appropriate because " . . . the questions to be decided in both suits are highly technical and closely intertwined . . . both cases will undoubtedly **[*4]** involve a large number of the same witnesses, and the same documenting evidence and exhibits, thus raising the specter of inefficient and wasteful duplication." *525 F.Supp. at 1310.* Here, the questions to be decided in both suits are not closely intertwined. The rectangular, stackable bottle in the 1985 case and the round bottle patent at issue in the second action possess different infringement and validity claims. Neither case concerns highly technical questions, and the documentary evidence and exhibits involved will not be the same.

More importantly, these cases are at widely different stages of preparation. The first action (C.A. No. 85–2355) was filed October 3, 1985. The case was pretried in November, 1986, and is currently set for trial in November of this year. The other case (C.A. No. 87–2098) is just beginning discovery. "Proper judicial administration does not recommend consolidation where two actions are at such widely separate stages of preparation." *Schacht v.*

*Javits, 53 F.R.D. 321, 325 (S.D.N.Y. 1971).*

In *La Chemise Lacoste v. Alligator Co., 60 F.R.D. 164 (D. Del. 1973),* the court denied consolidation in two trademark cases. Besides finding that the **[*5]** two cases raised substantially different issues, the court observed:

Secondly and more importantly, the cases should not be consolidated as a matter of sound judicial administration. The first case has been pending since April 3, 1970 and is close to trial. The new action has only been recently instituted; undoubtedly much discovery will be needed to ready it for trial. The disposition of the earlier case should not be delayed by the later filed litigation.

The motion to consolidate will be denied.

*60 F.R.D. at 176.*

In this instance, consolidation is inappropriate. Not only do the two actions lack common issues of fact and little duplication of evidence, but they are at widely separate stages of preparation. Disposition of the 1985 case should not be delayed by the more recent action which is still in discovery.

It is therefore respectfully recommended that the plaintiff's motion for consolidation be denied.

Respectfully submitted,

# EXHIBIT H

LEXSEE 2004 U.S.DIST.LEXIS 17821

**SYNGENTA SEEDS, INC., Plaintiff, v. MONSANTO COMPANY, DEKALB GENETICS CORP., PIONEER HI-BRED INTERNATIONAL, INC., DOW AGROSCIENCES, LLC, and MYCOGEN PLANT SCIENCE, INC. and AGRIGENETICS, INC., collectively d.b.a. MYCOGEN SEEDS, Defendants.**

**C.A. No. 02–1331–SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2004 U.S. Dist. LEXIS 17821*

**August 27, 2004, Decided**

**SUBSEQUENT HISTORY:** Motion granted by *Syngenta Seeds, Inc. v. Monsanto Co., 2004 U.S. Dist. LEXIS 18712 (D. Del., Sept. 8, 2004)*

**DISPOSITION:** **[*1]** Plaintiff's motion to consolidate denied.

**COUNSEL:** For SYNGENTA SEEDS INC., plaintiff: Paul M. Lukoff, Prickett, Jones & Elliott, Wilmington, DE.

For MONSANTO COMPANY, DEKALB GENETICS CORP, PIONEER HI-BRED INTERNATIONAL INC., DOW AGROSCIENCES LLC, MYCOGEN PLANT SCIENCES, INC., AGRIGENETICS INC., d.b.a. Mycogen Seeds, defendants: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:**

    **MEMORANDUM ORDER**

**I. INTRODUCTION**

On July 25, 2002, plaintiff Syngenta Seeds, Inc., filed a complaint alleging defendants infringed three of its patents ("BTC I"). (D.I. 1) Discovery in the BTC I action concluded on July 14, 2004, and the case is scheduled for a jury trial on November 29, 2004. (D.I. 228)

As a result of past motions, this court has excluded allegations regarding plaintiff's product MON863 and refused to allow discovery of pending patent applications. (D.I. 213, 81)

On April 13, 2004, plaintiff filed another complaint against defendants ("BTC II") for infringement of *United States Patent No. 6,720,488* ("'488 patent"), which is not at issue in the BTC I litigation. Before the court **[*2]** is plaintiff's motion to consolidate BTC II with the BTC I litigation. (D.I. 205)

**II. BACKGROUND**

On December 9, 2003, the United States Patent and Trademark Office ("PTO") issued a Notice of Allowance, which allowed the '488 patent to issue as soon as the issue fee was paid. On April 13, 2004, the PTO issued the '488 patent. The next day plaintiff filed its BTC II complaint against defendants alleging infringement of the *'488 patent.* The action was filed with this court, Civ. No. 04–228, and marked as related to the BTC I litigation.

Prior to filing this motion to consolidate, plaintiff complied with Local Rul 7.1.1 and requested that defendants consent to the consolidation. Defendants refused and this pending motion resulted.

Plaintiff alleges that, after the issuance of the Notice of Allowance, it notified defendants Monsanto and DeKalb that an additional patent application was pending and provided them with a copy of the allowed patent claims and notice. Defendants contest this assertion and note that the claims of the *'488 patent* were not included in discovery or depositions, including those taken after the PTO issued the allowance notice. (D.I. 215 at 5)

The *'488* **[*3]** *patent* has the following in common with the patents at issue in BTC I:

    (1) *'488* was the result of a continuation patent application of '100 patent;

    (2) It relates to the expression of Bt genes in corn;

(3) The specifications for the '100 and *'488 patent*s are "virtually identical" (D.I. 206);

(4) Both the '100 and *'488* inventions were created by the same inventors; and

(5) The *'488 patent* is terminally disclaimed over the '100 and '185 patents.

## III. DISCUSSION

*Federal Rule of Civil Procedure 42(a)* provides this court with authority to consolidate "actions involving a common question of law or fact ... pending before the court." Whether or not to consolidate cases is at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. See *United States v. Dentsply Int'l, Inc., 190 F.R.D. 140, 142–43 (D. Del. 1999)*. Because the *'488 patent* involves the expression of Bt genes in corn, an interpretation of the patent and any infringement necessarily involves some of the same questions at issue in the BTC I action. n1 At issue in this **[*4]** motion is whether, at this stage in the BTC I litigation, it is too late to consolidate the cases without adding undue delay to an already ripe BTC I case.

> n1 Plaintiff cites the following commonalities: (1) parties; (2) products at issue; (3) underlying technology; (4) documents/exhibits; (5) legal claim (patent infringement); (6) defendants will likely assert the same defenses; (7) the patent at issue in BTC II shares similarities with the patents at issue in BTC I; and (8) the same people will be witnesses in both actions. (D.I. 206 at 4–5)

Plaintiff argues that consolidating the cases will not prejudice the defendants because the November 29, 2004, trial date can be adjusted, and that consolidation is more efficient because the parties will not have to litigate the same issues twice. Defendants contest consolidation on four grounds: (1) consolidation will complicate the proceedings; (2) will lead to delay and increased costs because the new patent will require discovery on the same level as the discovery **[*5]** that took place in BTC I (notably the discovery went on for more than a year and a half); (3) the consolidation prejudices them because, if plaintiff had disclosed the *'488 patent* when the notice of allowance was issued, the defendants could have included it in their subsequent discovery; and (4) the efficiency realized through consolidation can be achieved through other means, namely staying the BTC II action and application of claim preclusion.

The BTC I case is scheduled to go to trial this November. At this point in time, and in light of the courts already tight schedule, the trial date could not be rescheduled without undue delay. In addition, the BTC I case alone is highly complex. Adding another patent to the plaintiff's claims will only increase the case's complexity and make it that much harder for a jury to come to a resolution. For all of these reasons, the court concludes that consolidation of the two cases would be more burdensome than beneficial.

## IV. CONCLUSION

Therefore, at Wilmington this 27th day of August, 2004;

IT IS ORDERED that plaintiff's motion to consolidate (D.I. 205) is denied.

8/27/04

Sue L. Robinson

United States District Judge **[*6]**

# EXHIBIT I

LEXSEE 2005 U.S.DIST. LEXIS 4651

**SYNGENTA SEEDS, INC., Plaintiff v. MONSANTO COMPANY and MONSANTO TECHNOLOGY LLC, Defendants**

**Civ. No. 04-908-SLR**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

*2005 U.S. Dist. LEXIS 4651; 2005-1 Trade Cas. (CCH) P74,735*

**March 24, 2005, Decided**

**DISPOSITION:** Defendants' motion to dismiss was denied and defendants' motion to consolidate was granted.

**COUNSEL:** **[*1]** For Plaintiff: John W. Shaw, Esquire and Karen E. Keller, Esquire of Young Conaway Stargatt & Taylor, L.L.P., Wilmington, Delaware; Steven C. Sunshine, Esquire and Heather Lamberg Kafele, Esquire of Shearman & Sterling, L.L.P., Washington, District of Columbia; Richard F. Schwed, Esquire and Thomas A. McGrath III, Esquire of Shearman & Sterling, L.L.P., New York, New York.

For Defendants: Richard L. Horwitz, Esquire of Potter Anderson & Corroon L.L.P., Wilmington, Delaware; Peter E. Moll, Esquire of Howrey Simon Arnold & White, Washington, District of Columbia; Susan Knoll, Esquire of Howrey Simon Arnold & White, Houston, Texas; Kenneth A. Letzler, Esquire of Arnold & Porter, Washington, District of Columbia

**JUDGES:** ROBINSON, Chief Judge

**OPINIONBY:** ROBINSON

**OPINION:**

### MEMORANDUM OPINION

Dated: March 24, 2005
Wilmington, Delaware

ROBINSON, Chief Judge

### I. INTRODUCTION

On July 28, 2004, plaintiff Syngenta Seeds, Inc. sued defendants Monsanto Co. and Monsanto Technology LLC (collectively "defendants") alleging "improper and illegal monopolization and attempted monopolization in the supply chain for biotechnology seed traits used by farmers throughout the United States. **[*2]** " (D.I. 1). Presently before the court is defendants' motion to dismiss plaintiff's complaint or, in the alternative, to consolidate the present action with a patent infringement suit. (D.I. 10) For the reasons set forth below, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate.

### II. BACKGROUND

Through the use of biotechnology, it is possible to introduce new genetic characteristics, or traits, into seeds in order to add desirable characteristics to crops. (D.I. 8 at 2) For example, biotechnology seed traits permit farmers to grow corn or soybeans tolerant to a leading non-selective herbicide, glyphosate. (Id.) This glyphosate-tolerant trait allows growers to spray glyphosate herbicide over the entire crop and kill all weeds, without risking any damage to the corn or soybean crop. (Id.) Other biotechnology seed traits permit farmers to plant corn that is resistant to certain pervasive insects, such as corn rootworm and the European corn borer. (Id.) Plaintiff and defendants are major suppliers of biotechnology traits and seeds. (Id. at 6)

On May 12, 2004, plaintiff's affiliate announced that it had acquired intellectual **[*3]** property rights to "GA21," a glyphosate-resistant corn trait. (D.I.8 at 4; D.I. 11 at 3) Plaintiff's affiliate also announced its intent to acquire the corn and soybean seed businesses of Garst Seeds and the Golden Harvest Group. (Id.) That same day, defendants filed Civil Action Number 04-305 (the "Shah Litigation"), alleging infringement of *U.S. Patent No. 4,940,835* ("the *'835 patent*"), entitled "Glyphosate-Resistant Plants."

On July 28, 2004, plaintiff sued defendants, alleging that defendants' conduct in the corn trait and seed market violates *Section 2 of the Sherman Act* (the "Antitrust Litigation"). (D.I. 1) Plaintiff filed an amended complaint on September 14, 2004. (D.I. 8) The amended complaint alleges that defendants have willfully maintained monopolies in: (1) the glyphosate-tolerant corn trait market (Id.

2005 U.S. Dist. LEXIS 4651, *3; 2005-1 Trade Cas. (CCH) P74,735

at 36–37); (2) the European corn borer trait market (id. at 37–38); and (3) the foundation corn seed market (id. at 38–39).

## III. STANDARD OF REVIEW

A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of **[*4]** third parties of whom the court cannot acquire jurisdiction." *Fed. R. Civ. P. 13(a)*. "A compulsory counterclaim not raised in the first action is barred in subsequent litigation." *Bristol Farmers Mkt. & Auction Co. v. Arlen Realty & Dev. Corp., 589 F.2d 1214, 1220 (3d Cir. 1978)*. As this court noted in *Metallgesellschaft AG v. Foster Wheeler Energy Corp., 143 F.R.D. 553, 558 (D. Del. 1992)*, the United States Court of Appeals for the Third Circuit has embraced a fairly liberal interpretation of the "transaction or occurrence" standard, establishing as "the operative question in determining if a claim is a compulsory counterclaim . . . [is] whether [the counterclaim] bears a logical relationship to an opposing party's claim." A counterclaim is logically related to the opposing party's claim "where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties." *Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961)*. In determining whether a "logical relationship" **[*5]** exists between an opposing party's claim and a counterclaim, the court will analyze several factors: (1) Are the issues in fact and law raised by the claim and counterclaim largely the same?; (2) Would res judicata bar plaintiff's subsequent suit absent the compulsory counterclaim rule?; and (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? *Metallgesellschaft, 143 F.R.D. at 558*.

Pursuant to *Fed. R. Civ. P. 42(a)*, district courts have the authority to consolidate "actions involving a common question of law or fact . . . pending before the court." Decisions to consolidate cases are at the discretion of the district court, but often courts balance considerations of efficiency, expense and fairness. See *United States v. Dentsply Int'l. Inc., 190 F.R.D. 140, 142–43 (D. Del. 1999)*. Under *Fed. R. Civ. P. 42(a)*, "a district court [has] broad power . . . to consolidate causes for trial as may facilitate the administration of justice." *Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc., 339 F.2d 673 (3d Cir. 1964)*. **[*6]**

## IV. DISCUSSION

Plaintiff's Antitrust Litigation does not arise from the same transaction or occurrence that is the subject matter of defendants' Shah Litigation. The Antitrust Litigation arises from defendants' allegedly anticompetitive conduct. The Shah Litigation arises from plaintiff's alleged infringement of the *'835 patent*. Because the Antitrust Litigation arises from defendants' conduct, and the Shah Litigation arises from plaintiff's conduct, the two actions could not arise from the same transaction or occurrence.

Furthermore, the Antitrust Litigation presents distinct factual issues from the Shah Litigation. In the Antitrust Litigation, defendants are alleged to have monopolies in the glyphosate–tolerant trait market, the European corn borer trait market, and the foundation corn seed market. (D.I. 8 at 36–39) More specifically defendants are alleged to have: (1) bundled commercial incentives across several products sold to corn growers to create a barrier to plaintiff and other competitors (id. at 24, 28); (2) enforced exclusive dealing contracts to prevent plaintiff or other competitors from entering markets (id. at 21–23); (3) filed the "baseless" Shah **[*7]** Litigation against plaintiff (id. at 16–17); (4) filed separate "baseless" patent case in Illinois concerning two other glyphosate–tolerant trait patents (id. at 17–18); (5) misrepresented plaintiff's ability to commercialize glyphosate–tolerant traits to discourage seed companies from dealing with plaintiff (id. at 18); (6) demanded destruction of all GA21 production to impair plaintiff's entry into the glyphosate–tolerant traits market (id. at 19–21); (7) intimidated seed companies not to do business with plaintiff (id. at 22–23); and (8) denied plaintiff access to foundation seeds and pressured foundation seed companies not to deal with plaintiff (id. at 25). While several of these allegations are specific to the glyphosate–resistant seed trait market, most of the allegations are broader. In contrast, the Shah Litigation only involves infringement of a patent relating to glyphosate–resistant plants. As a result, the Antitrust Litigation presents different factual issues than the Shah Litigation.

The Antitrust Litigation also presents legal issues which are different from those of the Shah Litigation. The Shah Litigation will focus on patent issues such as **[*8]** construction of patent claims, whether defendants are estopped from asserting the *'835 patent* based on representations made in prior litigations, whether the *'835 patent* is valid, and whether plaintiff infringes the *'835 patent*. The Antitrust Litigation will focus on typical antitrust issues such as whether defendants are monopolists and whether defendants engaged in anticompetitive conduct. Thus, the legal issues presented in the Antitrust Litigation and the Shah Litigation are distinct. n1

> n1 The different legal issues presented by the Antitrust Litigation and the Shah Litigation will require presentation of different evidence. The Antitrust Litigation will require examination of,

2005 U.S. Dist. LEXIS 4651, *8; 2005-1 Trade Cas. (CCH) P74,735

among other things: defendants' contracts with seed companies, defendants' incentive program, alleged threats to companies, and relevant product and geographic markets. The Shah Litigation will not consider any of this evidence and will instead focus on the '835 patent.

Defendant does not cite, and the court is unable to find, any precedent suggesting that resolution of defendants' Shah Litigation would create a res judicata bar on plaintiff's Antitrust Litigation. Consequently, this is. yet another factor suggesting that the' claims underlying plaintiff's Antitrust Litigation are not compulsory counterclaims of defendants' Shah Litigation.

**[*9]**

The reasoning of *Rohm & Haas Co. v. Brotech Corp., 770 F. Supp. 928 (D. Del. 1991),* does not suggest that the claims of plaintiff's Antitrust Litigation should have been a compulsory counterclaim of the Shah litigation. In Rohm, Rohm sued the Brotech, alleging infringement of four patents ("the Delaware Litigation"). Brotech then filed suit in Pennsylvania, alleging Rohm engaged in anticompetitive behavior in the prosecution and enforcement of ten patents ("the Pennsylvania Litigation"), including the four patents in the Delaware Litigation. Id. The Rohm court found that "the later filed antitrust and fraud claims alleging fraud on the [Patent and Trademark Office], are logically related to the patent claims at issue in the earlier filed suit." *Id. at 933.* Brotech's antitrust allegations were based solely on Rohm's actions in obtaining and enforcing the patents in suit in the Delaware Litigation. Unlike the facts as examined in Rohm, plaintiff's antitrust allegations arise from a broader range of defendants' actions and are not limited to defendants' enforcement of the *'835 patent.*

Consequently, Rohm is not instructive in the present **[*10]** matter.

Nevertheless, the court does find that the Shah Litigation and the Antitrust Litigation do present minimal factual and legal overlap. Furthermore, the court finds that consolidating the Shah Litigation and the Antitrust Litigation will be more efficient than managing the cases separately. The court does not perceive any expense or fairness issues which would marshal against consolidating the two litigations. Consequently, the court exercises its broad power to consolidate causes of action to consolidate the Shah Litigation and the Antitrust Litigation.

**V. CONCLUSION**

For the reasons set forth above, the court denies defendants' motion to dismiss but grants defendants' motion to consolidate. An appropriate order shall issue.

**ORDER**

At Wilmington this 24th day of March, 2005, consistent with the memorandum opinion issued this same day;

IT IS ORDERED that:

1. Defendants' motion to dismiss (D.I. 10) plaintiff's complaint is denied.

2. Defendants' motion to consolidate (D.I. 10) the present action (Civ. No. 04-908-SLR) with Civ. No. 04-305-SLR is granted.

3. No further filings shall be made under the above captioned matter. Instead, all future filings shall **[*11]** be made in Civ. No. 04-305-SLR.

United States District Judge

# EXHIBIT J

LEXSEE 1993 U.S.DIST. LEXIS 21372

**WANG LABORATORIES, INC., Plaintiff, v. MITSUBISHI ELECTRONICS AMERICA, INC. AND NMB TECHNOLOGIES, INC., Defendants.**

**CASE NO. CV 92 4698 JGD**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

*1993 U.S. Dist. LEXIS 21372*

**July 19, 1993, Decided**
**July 20, 1993, Filed**

**DISPOSITION:** **[\*1]** Wang's motion for partial consolidation GRANTED.

**COUNSEL:** For WANG LABORATORIES, INC., plaintiff: Thomas J Newell, Watt Tieder Killian & Hoffar, McLean, VA.

For WANG LABORATORIES, INC., plaintiff: Dale J Giali, Howrey & Simon, Los Angeles, CA.

For WANG LABORATORIES, INC., plaintiff: Robert L Green, Jr, Kenneth M Reiss, Sheila R Schreiber, Howrey & Simon, Washington, DC.

For MITSUBISHI ELECTRIC AMERICA INC, defendant: Jennifer L Woodward, Hugh Latimer, Daniel I Prywes, Pepper Hamilton & Scheetz, Washington, DC.

For MITSUBISHI ELECTRIC AMERICA INC, defendant: Mark E Phelps, John W Kozak, Brett A Hesterberg, Steven P Peterson, Leydig Voit & Mayer, Chicago, IL.

For NMB TECHNOLOGIES INC, defendant: Ronald L Johnston, Blanc Williams Johnston & Kronstadt, Los Angeles, CA.

For NMB TECHNOLOGIES INC, defendant: David H Kagan, Cindy M Zelson, Joel E Lutzker, Amster Rothstein & Ebenstein, New York, NY.

For NMB TECHNOLOGIES INC, defendant: Charles Daniel Ossola, Lowe Price LeBlanc & Becker, Alexandria, VA.

For NMB TECHNOLOGIES INC, counter-claimant: Ronald L Johnston, Blanc Williams Johnston & Kronstadt, Los Angeles, CA.

For NMB TECHNOLOGIES INC, counter-claimant: **[\*2]** David H Kagan, Cindy M Zelson, Joel E Lutzker, Amster Rothstein & Ebenstein, New York, NY.

For NMB TECHNOLOGIES INC, counter-claimant: Charles Daniel Ossola, Lowe Price LeBlanc & Becker, Alexandria, VA.

**JUDGES:** JOHN G. DAVIES, United States District Judge.

**OPINIONBY:** JOHN G. DAVIES

**OPINION:**

ORDER GRANTING WANG'S MOTION FOR PARTIAL CONSOLIDATION

On February 22, 1993, plaintiff Wang's Motion for Partial Consolidation came before the Court for argument. The Court tentatively granted Wang's motion, but subsequently took the matter under submission and deferred its final ruling. The Court has since ruled on various related motions, and has reviewed and considered the parties' papers and the oral arguments of counsel with regard to partial consolidation. Based upon this review, the court HEREBY GRANTS Wang's motion for partial consolidation.

FACTS

On June 4, 1992, plaintiff Wang Laboratories, Inc. ("Wang") initiated the underlying action by filing a complaint for patent infringement in the Eastern District of Virginia. The complaint alleges that Mitsubishi Electronics America, Inc. ("MELA") has infringed and continues to infringe two Single In-Line Memory Module patents, U.S. Patent Nos. *4,656,605* **[\*3]** (" *'605* SIMM patent") and *4,727,513* (" *'513* SIMM patent") n1. Wang

is the assignee of the SIMM patents, which disclose and claim a highly successful memory module used in many personal computers. Wang claims that MELA manufactures, sells and uses infringing SIMMs in the United States and, and also imports infringing SIMMs manufactured by its Japanese parent company for sale and use in the United States. Based on these allegations, Wang seeks damages, preliminary and permanent injunctive relief, attorneys' fees and costs.

> n1 Wang's complaint also names NMB Technologies, Inc. ("NMB") as a defendant. However, all claims between Wang and NMB have since been settled and dismissed.

On or about July 17, 1992, upon the defendants' motion, Wang's patent action was transferred to the Central District of California pursuant to *28 U.S.C. § 1404.* On August 6, 1992, the action was docketed by this Court (the "Wang v. MELA action").

Prior to the transfer of Wang's action, MELA and its parent company, [*4] Mitsubishi Electric Corporation ("MELCO"), jointly filed an action against Wang in the Central District of California. *Mitsubishi Electric Corporation and Mitsubishi Electronics America, Inc. v. Wang Laboratories, Inc., et al., 1994 U.S. Dist. LEXIS 17749,* CV 92 3891 JGD (the "MELCO v. Wang action"). MELA and MELCO seek a declaration of non-infringement of the SIMM patents, and allege federal and state antitrust and unfair competition claims against Wang. MELA separately asserts a claim for tortious interference with prospective economic advantage. MELCO alleges independent patent infringement claims against Wang. MELA and MELCO's joint action is styled.

On August 18, 1992, Wang filed for bankruptcy under Chapter 11. On August 28, 1992, this Court entered an Order Staying Action in the MELCO v. Wang case, in accordance with the automatic stay. Wang voluntarily agreed not to press forward with the Wang v. MELA action until it was determined which claims could be pursued by MELCO, MELA, and NMB in the face of the bankruptcy stay.

MELCO and MELA moved the bankruptcy court to lift the automatic stay so they could prosecute to judgment their various claims against Wang. The bankruptcy court lifted [*5] the stay on MELA and MELCO's claims to the extent they relate to Wang's SIMM patents, but refused to lift the stay on MELCO's independent patent claims, observing that MELCO could file a separate action if it wished to pursue post-petition patent infringement claims against Wang. See Wang's Reply Ex. A., Transcript of 11/5/92 Hearing, at pp. 62–62 & 65; Wang's Reply Ex.

D, Transcript of 12/16/92 Hearing, pp. 14–16.

DISCUSSION

Wang seeks to partially consolidate the instant action with the first through sixth causes of action in the related MELCO v. Wang action, leaving MELCO's independent patent infringement claims against Wang to be prosecuted separately. MELA takes the position that full consolidation is a preferable alternative, and thus argues that MELCO's patent infringement claims should be included in the consolidated action.

The Standard

Under *Fed. R. Civ. Pro. Rule 42(a),* the Court may consolidate actions which involve "a common question of law or fact." Rule 42 exists to give the Court broad discretion to decide how cases on its docket may be tried expeditiously while providing justice to the parties. See 9 Charles A. Wright & Arthur R. Miller, [*6] Federal Practice and Procedure: Civil, § 2381 at 253 (1971). Where the Court exercises its discretion pursuant to Rule 42(a), the consolidated actions do not lose their separate identities. Id., § 2382 at 255 (citing *Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496–97, 53 S. Ct. 721, 727, 77 L. Ed. 1331 (1933)).*

B. Analysis

Wang seeks partial consolidation of this action with the first through sixth cause of action in MELCO v. Wang n2. Wang contends that both actions relate to the same SIMM patents, with the exception of MELCO's patent infringement claims which are unrelated and should be pursued separately.

> n2 Defendant NMB was under the impression that the requested partial consolidation would not include the counterclaims asserted by Wang in the MELCO v. Wang action, and it opposed the present motion on that ground. However, Wang's Reply makes clear that all counterclaims will be consolidated.

While MELA agrees that the actions should be consolidated, it maintains that [*7] MELCO's patent infringement claims should be part of the consolidated action. MELA contends that full consolidation is appropriate because the MELCO patents asserted against Wang are closely related to the subject matter of Wang's SIMM patents.

However, MELA has previously admitted that the patents asserted against Wang in MELCO v. Wang are unrelated to the SIMM patents at issue here. In MELCO v. Wang, MELA and MELCO notified the Court that the

1993 U.S. Dist. LEXIS 21372, *7

instant action was pending, describing MELCO's patents as "additional patents unrelated to the former Virginia action" and "unrelated to the subject matter of the case." See *Mitsubishi Electric Corporation and Mitsubishi Electronics America, Inc. v. Wang Laboratories, Inc., et al., 1994 U.S. Dist. LEXIS 17749,* CV 92 3891 JGD, Plaintiffs' Notice Re: Related Case and Other Proceedings, 8/5/92, at 2-3. The bankruptcy court likewise reached the conclusion that the SIMM patents asserted against MELA in the instant action are not the same as the MELCO patents asserted in MELCO v. Wang. See Wang's Reply Exhibit A, Transcript of 11/5/92 Hearing, at pp. 62-63. Thus, MELA's argument that the Wang patents and the MELCO patents are related is unpersuasive.

Under [*8] Rule 42(a), the Court has discretion to consolidate actions involving a common question of fact or law. Because Wang's SIMM patents appear to be unrelated to MELCO's patents, MELCO's independent patent infringement claims against Wang should not be consolidated with the instant action. See *Metallgesellschaft AG v. Foster Wheeler Energy Corp., 143 F.R.D. 553, 1992 U.S. Dist. LEXIS 11558 (D. Del. 1992)* (denying motion to consolidate patent infringement claims, even where they were somewhat overlapping, because patents were not related per se).

Furthermore, because the bankruptcy court refused to lift the automatic stay on MELCO's patent infringement claims against Wang, they cannot be prosecuted in the consolidated action. MELA argues that MELCO's patent infringement claims are not subject to the automatic stay insofar as they relate to post-petition infringement. However, the same argument was presented to and rejected by the bankruptcy court. See Wang's Reply Ex. C, MELCO's Memorandum in Support of Motion Under *11 U.S.C. Section 362* to Modify the Automatic Stay, at pp. 7-8. While it is axiomatic that the automatic stay does not apply to post-petition [*9] claims, the MELCO patent claims were asserted pre-petition. The bankruptcy court has ruled that MELCO's patent infringement claims are stayed, noting that Wang may file a separate action to address post-petition infringement claims. See Wang's Reply Exhibit D, Transcript of 12/16/92 Hearing, at p. 14.

Finally, MELA opposes partial consolidation on the

ground that it will strip MELCO of its rights of offset against Wang's claims. If Wang prevails on its patent claims, MELA and MELCO may be forced to pay money damages to an insolvent debtor-in-reorganization without the benefit of any offset. If MELCO successfully prosecutes its patent claims in a separate action, MELCO may recover only a fraction of its judgment from the insolvent Wang.

Wang buys parts from Micronics, Inc. to manufacture the products which allegedly infringe MELCO's patents. Micronics has agreed to indemnify Wang for patent infringement liability arising from Wang's purchase of Micronics' product. See Wang's Reply. Ex. E, para. 13.2. Thus, if MELCO were to obtain a judgment against Wang, and Wang were unable to pay, MELCO might recover against Micronics. However, Wang incorporates the Micronics parts into [*10] larger systems which, as combinations, are alleged to infringe MELCO's patents. Under these circumstances, Micronics may not be liable for a judgment secured against Wang. See Wang's Reply Ex. E, para. 13.4. It is possible, therefore, that MELCO and MELA will suffer some monetary prejudice as a result of the proposed partial consolidation.

Notwithstanding, consolidation of MELCO's patent infringement claims with the instant action is inappropriate. MELCO's patents are factually unrelated to the SIMM patents at issue here. The particular patent infringement claims asserted in MELCO v. Wang were filed before Wang filed its Chapter 11 petition, and are subject to the automatic stay. Partial consolidation is the preferable course.

CONCLUSION

For these reasons, the Court HEREBY GRANTS Wang's motion for partial consolidation. MELCO's patent infringement claims against Wang are to be pursued separately.

IT IS SO ORDERED.

Dated: JUL 19 1993

JOHN G. DAVIES

United States District Judge