IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

AMAZON.COM, INC. and A9.COM, INC.,     )
            )
        Plaintiffs,       )
            )      C.A. No. 06-041-JJF
    v.           )
            )
CENDANT CORPORATION,       )
TRILEGIANT CORPORATION,     )
ORBITZ, LLC, ORBITZ, INC.,      )
BUDGET RENT A CAR SYSTEM, INC.  )
and AVIS RENT A CAR SYSTEM, INC.,  )
            )
        Defendants.       )

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR (1) MOTION TO DISMISS
ALL CLAIMS AGAINST CENDANT CORPORATION; (2) MOTION TO DISMISS THE
COMPLAINT IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM OR, IN THE
ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION TO
STAY ALL DISCOVERY PENDING RESOLUTION OF THE MOTIONS**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Douglas E. Olson
Stephen S. Korniczky
James V. Fazio, III
Paul Hastings Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, California 92130
(858) 720-2500

Dated:   March 8, 2006
167376.1

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT ....................................................................................................3

    A.  All Claims Against Cendant Corporation Should Be Dismissed ....................3

        1.  Uncontroverted Evidence Demonstrates
            That Cendant Does Not Operate or Control
            Any Allegedly Infringing Website or Business....................................3

        2.  Plaintiffs Allege No Facts To
            Warrant Piercing The Corporate Veil....................................................4

    B.  This Court Should Dismiss The Complaint For
       Failure To State A Claim.................................................................................6

        1.  Plaintiffs Lack Standing To Allege Direct,
            Contributory and Inducement of Infringement
            With Respect To the Same Conduct......................................................6

        2.  Plaintiffs' Claims For Direct, Contributory and
            Inducement of Infringement Should Be
            Dismissed for Failure to State A Claim................................................8

    C.  Plaintiffs Should Be Ordered to Provide a More
       Definite Statement of Their Claims...............................................................11

    D.  All Discovery Should Be Stayed ...................................................................13

III.  CONCLUSION................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

*A. Stucki Company v. Worthington Inds., Inc.,*
849 F.2d 593 (Fed.Cir. 1988)...................................................................4

*Agilent Technologies, Inc. v. Micromuse Inc.,*
2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004) ...........................11

*Akzona, Inc. v. E.I. duPont de Nemours & Co.,*
607 F. Supp. 227 (D. Del. 1984)...........................................................5

*Allison on behalf of General Motors Corp. v. General Motors Corp.,*
604 F. Supp. 1106 (D. Del. 1985)........................................................14

*Asip v. Nielsen Media Research, Inc.,*
2004 WL 315269 (S.D.N.Y. Feb. 18, 2004).......................................5, 6

*Beery v. Hitachi Home Elecs.,*
157 F.R.D. 477 (C.D. Cal. 1993)..........................................................13

*Bensalem Tp. v. International Surplus Lines Ins. Co.,*
38 F.3d 1303 (3rd Cir. 1994) ...............................................................14

*Braintree Laboratories, Inc. v. Nephro-Tech, Inc.,*
31 F. Supp. 2d 921 (D. Kan. 1998)......................................................10

*Cf. Hewlett-Packard Co. v. Intergraph Corp.,*
2003 WL 23884794, at *1 (N.D. Cal. Sep. 6, 2003) ...........................11

*Colida v. Sony Corp. of America,*
2004 WL 1737835, at *1-2 (S.D.N.Y. Aug. 2, 2004)........................3, 4

*Gammino v. Cellco Partnership,*
2005 U.S.Dist. LEXIS 21557 (E.D. Pa. Sep. 27, 2005) ......................6

*Gauvin v. Trombatore,*
682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................8

*Gen-Probe, Inc. v. Amoco Corp., Inc.,*
926 F. Supp. 948 (S.D. Cal. 1996)........................................................8

*Gopez v. Shin,*
736 F. Supp. 51 (D. Del. 1990)............................................................14

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*Grant v. Pitchford,*
    565 F. Supp. 430 (S.D. Cal. 1983)..........................................................................14

*Grove v. Mead Sch. Dist. No. 354,*
    753 F.2d 1528 (9th Cir. 1985) ...............................................................................3

*Hewlett-Packard Co. v. Intergraph Corp.,*
    2003 U.S.Dist. LEXIS 26092, at *6 (N.D. Cal. Sep. 6, 2003)....................9, 12, 13

*Hilfirty v. Shipman,*
    91 F.3d 573 (3rd Cir. 1996) ...................................................................................6

*Home & Nature, Inc. v. Sherman Specialty Co.,*
    322 F. Supp. 2d 260 (E.D.N.Y. 2004) ...................................................................13

*In re Papst Licensing GmbH Patent Litig.,*
    2001 WL 179926, at *2 (E.D. La. Feb. 22, 2001) ...........................................11, 12

*In re Rivastigmine Patent Litig.,*
    2005 U.S.Dist. LEXIS 7167 (S.D.N.Y. Apr. 25, 2005)..........................................11

*Intel v. Hyundai Elecs. Am., Inc.,*
    987 U.S Dist. LEXIS 14727, at *4 & n.1 (N.D. Cal. Nov. 23, 1987).....................8

*Interdigital Technology Corp. v. Oki America, Inc.,*
    845 F. Supp. 276 (E.D. Pa. 1994) ........................................................................12

*Johnson Products Co. v. Pro-Line Corp.,*
    1998 WL 699024, at *15 (N.D. Ill. Oct. 5, 1998)....................................................6

*Lear Corp. v. Bertrand and Faure Technical Center,*
    2000 U.S.Dist. LEXIS 22525, at *7 (E.D. Mich. Oct. 10, 2000) ..........................11

*Mobil Oil Corp. v. Linear Films, Inc.,*
    718 F. Supp. 260 (D. Del. 1989).....................................................................3, 4, 6

*Oki Elec. Industry Co., Ltd. v. LG Semicon Co., Ltd.,*
    1998 U.S.Dist. LEXIS 22507, at *8 (N.D. Cal. Feb. 25, 1998)...............................9

*Ondeo Nalco Co. v. Eka Chemicals, Inc.,*
    2002 WL 1458853, at *1 (D. Del. Jun. 10, 2002).........................................6, 10, 11

## TABLE OF AUTHORITIES (cont'd)

Page(s)

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3rd Cir. 2001) ................................................................4

*Picker Int'l. Inc. v. Varian Assocs., Inc.*,
  661 F. Supp. 347 (N.D. Ohio 1987)...............................................6, 8

*Pickholtz v. Rainbow Technologies, Inc.*,
  260 F. Supp. 2d 980 (N.D. Cal. 2003) .................................................7

*R2 Technology, Inc. v. Intelligent Sys. Software, Inc.*,
  2002 U.S.Dist. LEXIS 19110, at *5 (D. Del. Oct. 9, 2002) ...............8, 9

*Ristevdt-Johnson, Inc. v. Peltz*,
  1991 WL 255691, at *4 (N.D. Ill. Nov. 18, 1991).............................9, 10

*Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*,
  2002 U.S.Dist. LEXIS 27427, at *71 (D. Or. Apr. 30, 2002)..................5

*Shearing v. Optical Radiation Corp.*,
  30 U.S.P.Q. 1878 (D. Nev. 1994) ................................................10, 13

*Snap-On Inc. v. Hunter Engineering Co.*,
  29 F. Supp. 2d 965 (E.D. Wis. 1998)..................................................10

*Suresafe Inds., Inc. v. C&R Pier Mfg.*,
  850 F. Supp. 869 (S.D. Cal. 1993)....................................................7, 8

*Symbol Technologies, Inc. v. Handheld Products, Inc.*,
  2003 U.S.Dist. LEXIS 21002 (D. Del. Nov. 14, 2003) ........................13

*Takeda Chemical Inds., Ltd. v. Watson Pharmaceuticals, Inc.*,
  329 F. Supp. 2d 394, 399 (S.D.N.Y. 2004)...........................................9

*TI Group Automotive Sys., Inc. v. Vdo North America*,
  2002 WL 484838, at *2-4 (D. Del. Mar. 7, 2002) ..............................3, 4

*United States v. Bestfoods*,
  524 U.S. 51 (1998)...............................................................................4

*Upjohn Co. v. Syntro Corp.*,
  14 U.S.P.Q.2d 1469 (D. Del. 1990) .............................................3, 4, 5

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page(s)</u>

*Van Dyke Ford, Inc. v. Ford Motor Co.*,
    399 F. Supp. 277 (E.D. Wis. 1975)..........................................................................8

*Wood v. McEwen*,
    644 F.2d 797 (9th Cir. 1981) ...............................................................................14

## I.    INTRODUCTION

Exalting form over substance, Plaintiffs argue that their complaint complies with Rule 8 of the Federal Rules of Civil Procedure and its accompanying Form 16. But this argument lacks merit. Nowhere in Plaintiffs' complaint do Plaintiffs identify one *single* allegedly infringing product or service from among the hundreds if not thousands of different products and services offered by Defendants.

Plaintiffs have failed to overcome the three central points established in Defendants' opening brief:

(1) Cendant should be dismissed from this lawsuit because it does not own or operate any allegedly infringing service or website;

(2) the complaint should be dismissed because Plaintiffs indiscriminately lump all three of their theories of infringement together against Defendants, without specifying which defendant allegedly infringes which patent directly, which defendant supposedly contributes to whose infringement (or how), or which defendant allegedly induces whom to infringe (or how); and

(3) if this Court does not dismiss the complaint, at a minimum it should order Plaintiffs to provide a more definite statement because they fail to identify a single allegedly infringing product or service from among the countless products and services offered by Defendants.

Plaintiffs first argue that Cendant should not be dismissed from this lawsuit because it provides direct links to its subsidiaries' websites, performs certain administrative functions for its subsidiaries, and hosts some of its subsidiaries' websites on its servers. But these are precisely the sorts of activities that one would expect a parent company to do for its subsidiaries in a global marketplace. None of these activities establish that Cendant exercises any control over the day-to-day activities or websites of any of its subsidiaries. Nor do any of these so-called "facts" justify this Court keeping Cendant in this case on any alter ego or agency theory of liability, which Plaintiffs have not even pled. Because Plaintiffs cannot adduce any facts

showing that Cendant controls or directs any allegedly infringing activities or websites, all claims against Cendant should be dismissed as a matter of law.

Next, Plaintiffs argue that they have differentiated between Defendants' *use* of Plaintiffs' patented technologies and Defendants' activities that *cause others to use* Plaintiffs' technologies. As a result, Plaintiffs contend they can maintain claims for direct, contributory and inducing infringement against each defendant. But Plaintiffs have done no such thing. Plaintiffs have not identified a *single* activity that constitutes any defendant's alleged *use* of Plaintiffs' technology, much less differentiated that activity from that which supposedly *causes* another to infringe. Further, Plaintiffs still have not specified who allegedly infringes which patent directly, who supposedly contributes to whose infringement (or how), or who allegedly induces someone else to infringe (or how). In the absence of such allegations, the complaint simply fails to give Defendants adequate notice of what they are supposedly doing wrong.

Finally, Plaintiffs argue that they have followed Form 16 and have thus adequately pled infringement claims against all Defendants, but Plaintiffs' blind adherence to form cannot cure the fatal flaws in this complaint. Form 16 provides at most a rudimentary example of a complaint for patent infringement in a simple case involving one patent and one product. But even if Plaintiffs had formalistically adhered to Form 16 (which they did not), the complaint is plainly inadequate when (as here) Defendants own dozens of different businesses spanning multiple industries and offering countless different products and services—not *one* of which Plaintiffs have even identified. Without a more definite statement of which products and/or services allegedly infringe which patents, Defendants cannot possibly frame a responsive pleading.

Accordingly, Defendant's motion to dismiss or, in the alternative, for more definite statement should be granted.

## II.    ARGUMENT

### A.    All Claims Against Cendant Corporation Should Be Dismissed

#### 1.    Uncontroverted Evidence Demonstrates That Cendant Does Not Operate or Control Any Allegedly Infringing Website or Business

Cendant Corporation ("Cendant") does not exercise control over the operations or management of any of the Subsidiary Defendants, nor does Cendant operate any of the allegedly infringing websites.  Declaration of Eric J. Bock filed February 14, 2006 ("Bock Decl."), ¶¶ 7-9.[1] Rather, each of the allegedly infringing websites is operated by one of Cendant's subsidiaries and/or its third-party contractors.  *Id.*  Because Cendant does not operate any allegedly infringing website or service, it should be dismissed from this lawsuit.  *TI Group Automotive Sys., Inc. v. Vdo North America*, 2002 WL 484838, at *2-4 (D. Del. Mar. 7, 2002) (dismissing all claims against the parent corporation because plaintiff failed to allege sufficient facts to create an issue of fact with respect to agency); *Upjohn Co. v. Syntro Corp.*, 14 U.S.P.Q.2d 1469, 1472-3 (D. Del. 1990) (dismissing direct infringement claims against corporate parent because plaintiff adduced no evidence that parent exercised "complete dominion and control" over its subsidiary); *Colida v. Sony Corp. of America*, 2004 WL 1737835, at *1-2 (S.D.N.Y. Aug. 2, 2004) (dismissing all claims against the parent corporation because, based on sworn declarations, it was not involved in the manufacture or sale of any infringing product or service); *Mobil Oil Corp. v. Linear Films, Inc.*, 718 F. Supp. 260, 265 (D. Del. 1989) (dismissing infringement claims against corporate parent based upon affidavits showing that the parent never produced or sold any infringing products).[2]

---

[1]   Plaintiffs' contention that material outside the pleadings should not be considered in ruling on a motion to dismiss is ironic since they, too, have submitted extrinsic evidence as part of their opposition. By submitting their own declarations and evidence and inviting this Court to consider them, Plaintiffs have conceded that this Court may consider material outside the pleadings in ruling on Defendants' motion and are thus on notice that the motion may properly be converted into one for summary judgment. *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985).  Regardless, Defendants made clear in their moving papers that their motion to dismiss could be converted into one for summary judgment upon consideration of matters outside the pleadings.

[2]   For the Court's convenience, copies of cases published in unofficial reporters and not previously submitted are attached to the Reply Declaration of James V. Fazio filed herewith.

Remarkably, Plaintiffs make no effort to distinguish any of these cases. Instead, Plaintiffs have simply collected bits of information from Defendants' websites and SEC filings and argue that Cendant is a proper defendant because: (1) some subsidiaries list "Cendant's DNS Administrator" as their administrative contact; (2) Cendant administers the domains for some of its subsidiaries' websites; and (3) Cendant provides direct links to its subsidiaries' websites. Opp. Mem. at 4-5.[3] But none of these so-called "facts" establishes that Cendant operates any allegedly infringing business or website, nor demonstrate that Cendant significantly controls the day-to-day activities of any subsidiary.

To the contrary, Cendant does not operate *any* of its subsidiaries' websites, nor control the day-to-day operations or management of any of its subsidiaries. Bock Decl., ¶¶ 7-9. Because Plaintiffs have adduced no facts showing that Cendant operates any allegedly infringing service or website, Cendant should be dismissed from this lawsuit. *TI Group*, 2002 WL 484838, at *2-4; *Upjohn*, 14 U.S.P.Q.2d at 1472-3; *Colida*, 2004 WL 1737835, at *1-2; *Mobil Oil Corp.*, 718 F. Supp. at 265.

### 2.    Plaintiffs Allege No Facts To Warrant Piercing The Corporate Veil

Absent any facts showing that Cendant does anything wrong itself, the only way to keep Cendant in this lawsuit is to plead facts justifying this Court in piercing the corporate veil. *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); *A. Stucki Company v. Worthington Inds., Inc.*, 849 F.2d 593, 596 (Fed.Cir. 1988). This, in turn, requires allegations that the Subsidiary Defendants are either Cendant's alter egos or agents. *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484-86 & n.5 (3rd Cir. 2001).

Plaintiffs have not alleged any facts in the complaint to support any agency or alter ego theory of liability against Cendant. Indeed, the terms "agent" and "alter ego" do not appear anywhere in the complaint. Instead, Plaintiffs argue that Cendant handles technical support calls

---

[3]    Plaintiffs' claim that "Cendant essentially took over Trilegiant's operations," Opp. Mem. at 6, is absurd and unfounded. At no time did Cendant exercise control over the day-to-day operation or management of Trilegiant. Bock Decl., ¶ 9. Likewise, Cendant did not exercise control over the day-to-day operation, management or content of the www.avgautostore.com or www.trilegiantaffiliates.com websites. *Id.*, ¶ 8.

for Avis and Budget, hosts some of its subsidiaries' websites on its servers, and performs certain, limited administrative functions for its subsidiaries. These activities, however, do not establish that Cendant exercises "complete dominion and control" over its subsidiaries and thus do not establish that Cendant and its subsidiaries share an alter ego relationship.[4] *See Seiko Epson Corp. v. Print-Rite Holdings, Ltd.*, 2002 U.S.Dist. LEXIS 27427, at *71 (D. Or. Apr. 30, 2002) (facts that the parent and subsidiary shared a common email system and domain name do not establish alter ego jurisdiction absent proof of actual control by the parent over the subsidiary's daily operations). *See also Upjohn*, 14 U.S.P.Q.2d at 1472 (absent a showing of complete dominion and control, even the exercise of a "significant" degree of control is insufficient to warrant holding a parent liable for its subsidiary's conduct); *Akzona, Inc. v. E.I. duPont de Nemours & Co.*, 607 F. Supp. 227, 237 (D. Del. 1984) (in order to find that a subsidiary is the alter ego or instrumentality of the parent, the plaintiff must prove control by the parent to such a degree that the subsidiary has become its "mere instrumentality"). In short, because Plaintiffs identify no facts to suggest that any Subsidiary Defendant is Cendant's "mere instrumentality," Plaintiffs' claims against Cendant should be dismissed.

Citing *Asip v. Nielsen Media Research, Inc.*, 2004 WL 315269 (S.D.N.Y. Feb. 18, 2004) and related cases, Plaintiffs argue that Cendant's status as a "holding company" is an insufficient reason to dismiss Cendant from this lawsuit. But *Asip's* holding was based on a legal premise that does not apply here. In *Asip*, the Court held that even if the plaintiff's infringement claims against the parent corporation were premised solely on its status as a "holding company," the degree of control that parent VNU exercised over its subsidiary was a factual issue beyond the scope of the pleadings. *Id.* at *3. As a result, the Court refused to consider the defendant's declaration that had been submitted to establish the lack of VNU's parental control over its subsidiary. *Id.* & n. 33. In refusing to consider extrinsic evidence, however, the *Asip* Court was

---

[4]   Plaintiffs also criticize Cendant for helping relocate Budget's headquarters and employees when it acquired Budget and attempt to use that as evidence of alter ego liability. One of Cendant's entities (Cendant Mobility) specializes in helping companies relocate, so the fact that Cendant did this for Budget does not establish that Budget is one of Cendant's "mere instrumentalities." *See* Bock Decl., ¶ 16.

following Second Circuit law.  It is entirely appropriate for courts in the Third Circuit, however, to consider matters outside the pleadings in ruling on a motion to dismiss.  *Hilfirty v. Shipman*, 91 F.3d 573, 578 (3rd Cir. 1996) (accepting and considering four affidavits presented by defendants and one affidavit of plaintiff in ruling on a motion to dismiss).  Accordingly, *Asip* is inapposite.[5]

Because Cendant does not operate any allegedly infringing service or website, and because Plaintiffs have neither pled nor adduced any facts that would justify piercing the corporate veil, Cendant should be dismissed from this lawsuit as a matter of law.  *Mobil Oil*, 718 F. Supp. at 271-72 (rejecting theories of agency and alter ego liability against the corporate parent because the plaintiff did not allege or identify any "fraud or injustice" that would result from disregarding separate corporate identities).

**B.      This Court Should Dismiss The Complaint For Failure To State A Claim**

**1.      Plaintiffs Lack Standing To Allege Direct, Contributory and Inducement of Infringement With Respect To the Same Conduct**

It is well established that direct and indirect infringement are mutually exclusive and cannot both be alleged against the same defendant when both claims are based on the same conduct.  *Ondeo Nalco Co. v. Eka Chemicals, Inc.*, 2002 WL 1458853, at *1 (D. Del. Jun. 10, 2002) (complaint must allege direct infringement by someone other than the inducer) (citing *Shearing v. Optical Radiation Corp.*, 30 U.S.P.Q. 1878, 1880 (D. Nev. 1994)).  *See also Johnson Products Co. v. Pro-Line Corp.*, 1998 WL 699024, at *15 (N.D. Ill. Oct. 5, 1998); *Picker Int'l. Inc. v. Varian Assocs., Inc.*, 661 F. Supp. 347, 350 (N.D. Ohio 1987).

---

[5]      Another point of distinction is that the plaintiff in *Asip* described the means by which defendants allegedly infringed its patent in at least three paragraphs, whereas Plaintiffs here do not specify anything Defendants allegedly do to infringe.  2004 WL 315269, at *3 & n.27.  Plaintiffs cite *Gammino v. Cellco Partnership*, 2005 U.S.Dist. LEXIS 21557 (E.D. Pa. Sep. 27, 2005) for the proposition that a defendant's status as a mere "holding company" is an insufficient reason to dismiss that defendant until after the completion of discovery.  But unlike in *Gammino*, Cendant has submitted uncontroverted evidence that it does not control the day-to-day operations or management of any of its subsidiaries.  Bock Decl., ¶¶ 7-9.  Accordingly, Cendant should be dismissed from this lawsuit.  *Mobil Oil*, 718 F. Supp. at 265 (dismissing patent infringement claims against corporate parent upon affidavits showing that parent did not make or sell any infringing products).

Citing *Pickholtz v. Rainbow Technologies, Inc.*, 260 F. Supp. 2d 980 (N.D. Cal. 2003) and related cases, Plaintiffs contend they have standing to sue each defendant for direct, contributory and inducement of infringement because, according to Plaintiffs, the activities that serve as the basis for its direct infringement claims are different from those serving as the basis for their contributory and inducement claims. In *Pickholtz*, the court explained that the same defendant could be liable for direct infringement based on the making and using of its products in development and testing and could also be liable for indirect infringement based on the sales of its products to customers. 260 F. Supp. 2d at 990. Because different activities served as the basis for plaintiff's direct and indirect infringement claims, multiple theories of infringement liability could be asserted against the same defendant. *Id.*

Seeking to analogize this case to *Pickholtz*, Plaintiffs argue that Defendants' *use* of the patented technologies is one activity, and that Defendants' *causing others to use* the patented technologies is a different activity, and thus that the same defendant can be liable for both direct and indirect infringement. Opp. Mem. at 15. Plaintiffs' analogy fails. In *Pickholtz*, the plaintiff differentiated the activities that formed the basis for its direct infringement claims (development and testing) from those that formed the basis for its indirect infringement claims (selling products to customers). 260 F. Supp. 2d at 990. Here, by contrast, Plaintiffs do not specify what activities constitute Defendants' alleged use of Plaintiffs' technology, nor do Plaintiffs specify what Defendants' do to cause others to use Plaintiffs' technology. In fact, aside from vague references to Defendants' "business operations," Plaintiffs have not identified *any* activities at all. Without knowing what specific activities are accused, it is impossible to tell whether Defendants' supposed *use* of Plaintiffs' patented technology is in fact an activity different from that which allegedly *causes* another to use the patented technology.

Because Plaintiffs have alleged direct infringement against all Defendants but fail to identify any activity that forms the basis for their indirect infringement claims, Plaintiffs' indirect claims for contributory and inducement of infringement should be dismissed for lack of standing. *Suresafe Inds., Inc. v. C&R Pier Mfg.*, 850 F. Supp. 869, 873 (S.D. Cal. 1993) ("[s]ince plaintiffs

have alleged direct infringement, they have no standing to assert inducing or contributory infringement"); *Picker*, 661 F. Supp. at 350 (the doctrine of active inducement "is not available as a separate source of liability against one who is also alleged to be a direct infringer").[6]

### 2.     Plaintiffs' Claims For Direct, Contributory and Inducement of Infringement Should Be Dismissed for Failure to State A Claim

The complaint should also be dismissed because it fails to specify which defendant is alleged to be a direct infringer, which defendant supposedly contributed to whose infringement (or how), or which defendant allegedly induced whom to infringe (and how). *Gen-Probe, Inc. v. Amoco Corp., Inc.*, 926 F. Supp. 948, 960 (S.D. Cal. 1996) (dismissing complaint for failure to state a claim because it accused "each of five defendants of three very different causes of action on two different patents, all in one conclusory sentence, without adequately specifying the grounds for plaintiff's belief that any of these entities have infringed").[7]

Plaintiffs contend that *Gen-Probe* represents only the minority view and that the majority of cases have found it appropriate for a plaintiff to accuse multiple defendants of patent infringement under multiple theories of liability. But the complaints in virtually all of these cases provided a far more detailed description of what products or services allegedly infringed than Plaintiffs have provided here. *See, e.g., Intel v. Hyundai Elecs. Am., Inc.*, 1987 U.S Dist. LEXIS 14727, at *4 & n.1 (N.D. Cal. Nov. 23, 1987) (complaint alleged that defendants infringed by making, using or selling semiconductor memory products, specifically Erasable Programmable Read-Only Memories); *R2 Technology, Inc. v. Intelligent Sys. Software, Inc.*, 2002 U.S.Dist. LEXIS 19110, at *5 (D. Del. Oct. 9, 2002) (complaint alleged that defendants

---

[6]   Plaintiffs seek to distinguish *Picker* on the ground that it dealt with a motion to dismiss for lack of venue (as opposed to a Rule 12(b)(6) motion), but that is a distinction without a difference. Regardless of the procedural posture of Defendants' motion, it is impossible to discern from the complaint whether Plaintiffs' direct infringement claims are based on activities that are separate and distinct from those supporting Plaintiffs' indirect infringement claims.

[7] Plaintiffs criticize *Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) and *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F. Supp. 277 (E.D. Wis. 1975) because these cases do not involve claims for patent infringement, but their reasoning is no less persuasive. Regardless of what cause of action is alleged, lumping all Defendants together in a single, broad allegation fails to specify what each defendant supposedly did wrong. *Gauvin*, 682 F. Supp. at 1071.

infringed by making, using and selling Computer-Aided Detection systems, identified by the trade name "MammoReader"); *Takeda Chemical Inds., Ltd. v. Watson Pharmaceuticals, Inc.*, 329 F. Supp. 2d 394, 399-400 (S.D.N.Y. 2004) (complaint alleged that Watson's sale of pioglitazone induced others to infringe). Moreover, the complaint in each of these cases "organized its claims by patent, by type of infringement, and by defendant," thus making it easy to tell which theory of infringement was asserted against which defendant. *Oki Elec. Industry Co., Ltd. v. LG Semicon Co., Ltd.*, 1998 U.S.Dist. LEXIS 22507, at *8 (N.D. Cal. Feb. 25, 1998).

By contrast here, Plaintiffs have indiscriminately lumped all three theories of liability together against all Defendants in one convoluted sentence, making it impossible to tell which theory of infringement of which patent is asserted against whom. For example, Plaintiffs allege that Defendants "have been, currently are, and will continue to directly and/or indirectly infringe, solely or jointly with others, or induce others to infringe . . . by directly or indirectly, individually or jointly, using or causing to be used plaintiffs' patented . . . methods in the operation of their businesses, including but not limited to the operation of the www.orbitz.com, www.avis.com, and www.avautostore.com websites." Complaint, ¶ 14. This hodgepodge of allegations is hardly the clear "organization by type of infringement and by defendant" that was endorsed by *Oki*, and is inadequate.

Plaintiffs' inducement claims should be dismissed for a second, independent reason. To state a valid claim for inducing infringement, Plaintiffs must not only allege that the defendant had the specific intent to induce another's direct infringement, Plaintiffs must also allege facts supporting the alleged inducement. The "bald assertion" of inducement, without the allegation of any supporting facts, does not meet the requirements of the Federal Rules of Civil Procedure. *Ristevdt-Johnson, Inc. v. Peltz*, 1991 WL 255691, at *4 (N.D. Ill. Nov. 18, 1991). *See also Hewlett-Packard*, 909 F.2d at 1470 (affirming dismissal of inducement claims because plaintiff failed to plead sufficient facts "probative of intent to induce infringement").[8]

---

[8]    Plaintiffs seek to distinguish *Hewlett-Packard*, 909 F.2d 1464, because that case involved an appeal of a final judgment on the merits while this case is only at the pleading stage. In *Hewlett-Packard*, however, the activity that constituted the alleged inducement was specifically identified (the sales of plotters having

Plaintiffs stubbornly maintain that, unlike in these cited cases, they have adequately shown how each defendant allegedly induced infringement. Specifically, Plaintiffs allege that Defendants have induced infringement by "using or causing to be used plaintiffs' patented . . . methods in the operation of their businesses, including but not limited to the operation of the www.orbitz.com, www.avis.com, and www.avautostore.com websites." Complaint, ¶ 14. But this hardly specifies which defendant supposedly induced whom to infringe. Moreover, aside from vague references to Defendants' business operations, Plaintiffs do not identify *any* specific activity that constitutes the alleged inducement. Without the allegation of any supporting facts, Plaintiffs' inducement claims should be dismissed. *Ondeo Nalco*, 2002 WL 1458853, at *1; *Ristevdt-Johnson*, 1991 WL 255691, at *4; *Shearing*, 1994 WL 382444, at *2.[9]

Plaintiffs' reliance on *Braintree Laboratories, Inc. v. Nephro-Tech, Inc.*, 31 F. Supp. 2d 921 (D. Kan. 1998) in support of their inducement claim is curious. There, plaintiff Braintree identified five specific activities as evidence of defendant Nephro-Tech's intent to induce infringement: (1) Nephro-Tech's advertisement and promotion of Calphron (the allegedly infringing product) directly to the portion of the medical community specializing in the treatment of end-stage renal failure; (2) Nephro-Tech's attendance at trade shows specially designed for practitioners treating end-stage renal failure; (3) the concentration of Nephro-Tech's sales force on dialysis centers; (4) Nephro-Tech's application for Medicaid recognition of Calphron as a phosphate binder; and (5) the use of the names "Nephro-Tech" and "Calphron," both of which use the Greek root "nephros" meaning "kidney," which plaintiffs contended suggest that Calphron is appropriate for use by kidney patients. *Id.* at 925-26. Here, by contrast, Plaintiffs

---

grit-covered pinch wheels). *Id.* at 1467. By contrast here, Plaintiffs do not specify any activity that supposedly induces another party to infringe.

[9] According to Plaintiffs, allegations that Defendants' actions were "willful and deliberate" are sufficient to satisfy the intent element for inducing infringement. *Snap-On Inc. v. Hunter Engineering Co.*, 29 F. Supp. 2d 965, 970 (E.D. Wis. 1998). In *Snap-On*, however, the plaintiff specified that the defendant infringed when it made, used or sold identified automotive equipment. *Id.* at 966. Here, by contrast, Plaintiffs do not specify anything that Defendants do, make, use or sell that allegedly induces someone to infringe.

have identified no specific acts of inducement whatsoever.  Thus, Plaintiffs' reliance on *Braintree* is unavailing.

In short, the complaint should be dismissed in its entirety because it fails to differentiate which defendant allegedly infringed which patent directly, which defendant supposedly induced whom to infringe (or how), and which defendant allegedly induced whom to infringe (or how). At a minimum, Plaintiffs' inducement claims should be dismissed for failure to identify what constitutes the alleged inducement.[10]

### C.    Plaintiffs Should Be Ordered to Provide a More Definite Statement of Their Claims

Even if this Court were inclined not to dismiss the complaint, at a minimum it should order Plaintiffs to provide a more definite statement of their claims.  Although Rule 12(e) motions are generally disfavored, a more definite statement of the claim is appropriate in patent cases when the plaintiff fails to identify any allegedly infringing product or service, or when the plaintiff's claims are too vague to give adequate notice of what products or services allegedly infringe.  *Ondeo Nalco*, 2002 WL 1458853, at *1 (D. Del. Jun. 10, 2002); *Agilent Technologies, Inc. v. Micromuse Inc.*, 2004 WL 2346152, at *6 (S.D.N.Y. Oct. 19, 2004); *In re Papst Licensing GmbH Patent Litig.*, 2001 WL 179926, at *2 (E.D. La. Feb. 22, 2001); *Lear Corp. v. Bertrand and Faure Technical Center*, 2000 U.S.Dist. LEXIS 22525, at *7 (E.D. Mich. Oct. 10, 2000).[11] *Cf. Hewlett-Packard Co. v. Intergraph Corp.*, 2003 WL 23884794, at *1 (N.D. Cal. Sep. 6, 2003).

---

[10]  Citing *In re Rivastigmine Patent Litig.*, 2005 U.S.Dist. LEXIS 7167 (S.D.N.Y. Apr. 25, 2005), Plaintiffs argue that they are not required to plead with particularity the specific acts of inducement. Again, however, Plaintiffs have not identified which defendant supposedly induced whom to infringe, nor have Plaintiffs identified what acts supposedly constitute direct infringement, so it is impossible for any defendant to respond to Plaintiffs' inducement allegations.

[11]  Plaintiffs make no effort to distinguish *Lear*, which is telling because the court there granted the defendant's motion for more definite statement because the plaintiff failed to specify which of defendant's products or services were accused of infringement.  *Lear*, 2000 U.S.Dist. LEXIS 22525, at *7.  That is precisely the fatal defect in Plaintiffs' complaint in this case.  Plaintiffs purport to distinguish *Ondeo* by arguing that they (unlike the plaintiffs in *Ondeo*) have identified the websites that allegedly infringe their patents.  But Defendants offer countless different products and service spanning different industries through these websites, so an identification of these websites alone provides no notice of what Defendants are supposedly doing wrong.

Plaintiffs maintain that these cases are markedly different from the instant case because the defendants in those cases sold hundreds of products that infringed dozens of patents, whereas this case involves what Plaintiffs contend are only a few websites and patents. That is completely misleading. While there may be only four patents-in-suit in this case, Defendants own dozens of businesses offering a great number of different products and services. Bock Decl., ¶¶ 12-17. Plaintiffs, however, have alleged only that Defendants' "business operations" infringe. Complaint, ¶¶ 14, 20, 25, 30. Without a more definite statement of which products and/or services allegedly infringe which patents, Defendants are left in the untenable situation of having to compare each of its countless product and service offerings with each of the four patents-in-suit to determine what they are supposedly doing wrong. The Federal Rules do not require such a laborious effort, especially when this Court could easily dispense with all uncertainty simply by ordering Plaintiffs to provide a more definite statement of their claims. *Papst*, 2001 WL 179926, at *2.[12]

Plaintiffs next claim that their complaint tracks Form 16 in the Appendix of Forms to the Federal Rules of Civil Procedure and is therefore sufficient. Form 16 (drafted in 1963 and spanning only four short paragraphs) provides only a rudimentary example of a complaint for patent infringement in a case involving only one patent and one allegedly infringing product (electric motors). *See* Form 16. Plaintiffs cannot escape the fatal flaws in their complaint by hiding behind Form 16. While following Form 16 may be sufficient to state a claim for patent infringement in simple cases, even blind adherence to Form 16 would be plainly inadequate when, as here, Defendants own many different businesses offering hundreds if not thousands of different products and services—not a ***single*** one of which Plaintiffs have even identified. *See Hewlett-Packard Co. v. Intergraph Corp.*, 2003 U.S.Dist. LEXIS 26092, at *6 (N.D. Cal. Sep. 6, 2003); *Papst*, 2001 WL 179926, at *1-2.

---

[12]  The other case upon which Plaintiffs rely--*Interdigital Technology Corp. v. Oki America, Inc.*, 845 F. Supp. 276 (E.D. Pa. 1994)--actually supports Defendants' argument. There, plaintiff Interdigital specifically identified the "CD-3000 phone" and "CDMA products which are compatible with IS-95" as potentially infringing products. *Id.* at 283. Here, by contrast, Plaintiffs have generically accused Defendants' business operations and websites of infringement, without specifying any product or service.

In *Hewlett-Packard*, for example, plaintiff Hewlett-Packard argued that its complaint followed Form 16 and was sufficient. But defendant Intergraph produced "some 130 core technology platforms" that were implemented in over 4,000 end-user applications. *Id.* Without a more definite statement of what products were accused, the Court found that the complaint did not provide defendants with adequate notice of Plaintiffs' claims. *Id. See also Shearing*, 1994 WL 382444, at *2 (rejecting Shearing's argument that its complaint was sufficient because it tracked Form 16). Likewise here, Defendants own dozens of businesses offering a great number of different products and services. Bock Decl., ¶¶ 12-17. Given the vast number of Defendants' different product and service offerings, Plaintiffs' vague allegation that Defendants' "business operations" infringe simply does not provide Defendants with adequate notice of what they are supposedly doing wrong.

Citing *Beery v. Hitachi Home Elecs.*, 157 F.R.D. 477 (C.D. Cal. 1993) and similar cases, Plaintiffs argue that the further specificity Defendants seek is best sought through the discovery process. But the principal reason why the court denied defendant's Rule 12(e) motion in *Beery* was because the defendant had already filed a responsive pleading. *Id.* at *7. Because the defendant had already filed an answer, the Court believed it was disingenuous for the defendant to subsequently claim the complaint was too vague and ambiguous to frame a responsive pleading. *Id.* No similar responsive pleading has or can be framed here. Thus, Plaintiffs' reliance on *Beery* is unavailing.[13]

### D.    All Discovery Should Be Stayed

Plaintiffs argue that the filing of a motion to dismiss is ordinarily insufficient cause to stay discovery, especially when (as here) the motion is converted into one for summary

---

[13]    Plaintiffs' other cases are equally distinguishable. In *Home & Nature, Inc. v. Sherman Specialty Co.*, 322 F. Supp. 2d 260 (E.D.N.Y. 2004), the plaintiff alleged that the defendant infringed by making and selling "tattoo-like jewelry items." *Id.* at 266. Similarly, in *Symbol Technologies, Inc. v. Handheld Products, Inc.*, 2003 U.S.Dist. LEXIS 21002 (D. Del. Nov. 14, 2003), the court denied defendant's Rule 12(e) because there were a "finite number" of identified products at issue. *Id.* at *9. Here, by contrast, Plaintiffs have not identified a single allegedly infringing product or service from among the multitude of businesses and services Defendants own. That is plainly inadequate under Rule 8.

judgment. Under these circumstances, Plaintiffs claim they should be afforded a reasonable opportunity to conduct discovery to address the motion.

While Plaintiffs may be entitled to discovery under some circumstances, a district court may stay discovery when it is convinced the plaintiff will be unable to state a claim for relief. *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981). *See also Grant v. Pitchford*, 565 F. Supp. 430, 432 (S.D. Cal. 1983) (staying discovery pending resolution of defendants' motion to dismiss which, if granted, would be dispositive of the case). Here, Defendants have adduced dispositive evidence that Cendant should be dismissed from this lawsuit as a matter of law and that the complaint is defective on its face because Plaintiffs have improperly lumped all theories of liability together against all defendants, without specifying who supposedly contributed to whose infringement, and who allegedly induced whom to infringe. No amount of discovery can possibly remedy these fatal pleading defects.

Accordingly, this Court should exercise its discretion to stay all discovery pending its ruling on Defendants' motions. *Bensalem Tp. v. International Surplus Lines Ins. Co.*, 38 F.3d 1303, 1307 (3rd Cir. 1994) (noting that discovery had been stayed pending ruling on motion to dismiss); *Gopez v. Shin*, 736 F. Supp. 51, 53 (D. Del. 1990) (temporarily staying discovery until after issuance of an opinion resolving the motion to dismiss); *Allison on behalf of General Motors Corp. v. General Motors Corp.*, 604 F. Supp. 1106, 1110 (D. Del. 1985) (same).[14]

## III. CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court (1) dismiss all claims against Cendant Corporation as a matter of law; (2) dismiss the complaint for failure to state viable claims for direct, contributory or inducement of infringement or, in the

---

[14] Plaintiffs attempt to distinguish *Gopez* on the ground that the court there stayed discovery while it considered whether to dismiss the case for statute of limitations reasons, which do not exist here. Plaintiffs also argue that *Allison* is inapposite because the court there stayed discovery pending a ruling on motion to dismiss for failure to comply with Fed. R. Civ. P. 23.1, which imposes various requirements upon a plaintiff before bringing a shareholder derivative action. Plaintiffs miss the point. If this Court grants the motion to dismiss, discovery will be moot—regardless of the reason for the Court's ruling and regardless of the basis for the motion.

alternative, order Plaintiffs to provide a more definite statement of their claims; and (3) stay all discovery pending this Court's ruling on Defendants' motions.

ASHBY & GEDDES

/s/ *John G. Day*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, Delaware 19899
(302) 654-1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Defendants*

*Of Counsel:*

Douglas E. Olson
Stephen S. Korniczky
James V. Fazio, III
Paul Hastings Janofsky & Walker LLP
3579 Valley Centre Drive
San Diego, California 92130
(858) 720-2500

Dated:   March 8, 2006
167376.1

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2006, the attached **DEFENDANTS'**

**REPLY BRIEF IN SUPPORT OF THEIR (1) MOTION TO DISMISS ALL CLAIMS**

**AGAINST CENDANT CORPORATION; (2) MOTION TO DISMISS THE COMPLAINT**

**IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM OR, IN THE**

**ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION TO**

**STAY ALL DISCOVERY PENDING RESOLUTION OF THE MOTIONS** was served

upon the below-named counsel of record at the address and in the manner indicated:


John W. Shaw, Esquire                                      HAND DELIVERY
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                            VIA FEDERAL EXPRESS
Fenwick & West, LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041


/s/ *John G. Day*
_____
John G. Day