IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| AMAZON.COM, INC. and A9.COM, INC.,<br><br>               Plaintiffs,<br><br>       v.<br><br>CENDANT CORPORATION; TRILEGIANT CORPORATION; ORBITZ, LLC; ORBITZ, INC.; BUDGET RENT A CAR SYSTEM, INC.; AND AVIS RENT A CAR SYSTEM, INC.,<br><br>               Defendants. | C.A. No. 06-041-JJF |

**REPLY DECLARATION OF JAMES V. FAZIO, III IN SUPPORT OF DEFENDANTS' (1) MOTION TO DISMISS ALL CLAIMS AGAINST CENDANT CORPORATION; (2) MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION TO STAY ALL DISCOVERY PENDING RESOLUTION OF THE MOTIONS**

I, James V. Fazio, III, declare as follows:

1.      I am an attorney with the law firm of Paul, Hastings, Janofsky & Walker LLP, counsel for defendants in the above-referenced action. I have been admitted to practice in this District *pro hac vice*. I have personal knowledge of the following facts and, if called upon to do so, I could and would testify competently thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of *Asip v. Nielsen Media Research, Inc.*, 2004 WL 315269 (S.D.N.Y. 2004).

3.      Attached hereto as Exhibit B is a true and correct copy of *Gammino v. Cellco Partnership*, 2005 U.S.Dist. LEXIS 21557 (E.D. Pa. Sep. 27, 2005).

4.      Attached hereto as Exhibit C is a true and correct copy of *In re Rivastigmine Patent Litig.*, 2005 U.S.Dist. LEXIS 7167 (S.D.N.Y. Apr. 25, 2005).

5.      Attached hereto as Exhibit D is a true and correct copy of *Intel Corp. v. Hyundai*

REPLY FAZIO DECL.
C.A. 06-041-JJF

        -1-

*Elecs. America, Inc.,* 1987 U.S.Dist. LEXIS 14727 (N.D. Cal. Nov. 23, 1987).

6.     Attached hereto as Exhibit E is a true and correct copy of *Johnson Products Co., Inc. v. Pro-Line Corp.*, 1998 WL 699024 (N.D. Ill. Oct. 5, 1998).

7.     Attached hereto as Exhibit F is a true and correct copy of *Oki Electric Industry Col, Ltd. v. LG Semicon Co., Ltd.*, 1998 U.S.Dist. LEXIS 22507 (N.D. Cal. Feb. 25, 1998).

8.     Attached hereto as Exhibit G is a true and correct copy of *R2 Technology, Inc. v. Intelligent Systems Software, Inc.*, 2002 U.S.Dist. LEXIS 19110 (D. Del. Oct. 9, 2002).

9.     Attached hereto as Exhibit H is a true and correct copy of *Ristvedt-Johnson, Inc. v. Peltz*, 1991 WL 255691 (N.D. Ill. Nov. 18, 1991).

10.     Attached hereto as Exhibit I is a true and correct copy of *Symbol Technologies, Inc. v. Handheld Products, Inc.*, 2003 U.S.Dist. LEXIS 21002 (D. Del. Nov. 14, 2003).

11.     Attached hereto as Exhibit J is a true and correct copy of *Shearing v. Optical Radiation Corp.*, 1994 WL 382444 (D. Nev. Mar. 25, 1994).

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this ___th day of March, 2006 at San Diego, California.

By: _____
JAMES V. FAZIO, III

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of March, 2006, the attached **REPLY DECLARATION OF JAMES V. FAZIO, III IN SUPPORT OF DEFENDANTS' (1) MOTION TO DISMISS ALL CLAIMS AGAINST CENDANT CORPORATION; (2) MOTION TO DISMISS THE COMPLAINT IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT; AND (3) MOTION TO STAY ALL DISCOVERY PENDING RESOLUTION OF THE MOTIONS** was served upon the below-named counsel of record at the address and in the manner indicated:

John W. Shaw, Esquire                                    HAND DELIVERY
Young Conaway Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Lynn H. Pasahow, Esquire                                 VIA FEDERAL EXPRESS
Fenwick & West, LLP
Silicon Valley Center
801 California Street
Mountain View, CA  94041


                                    */s/ John G. Day*
                                    _____
                                    John G. Day

167388.1

Not Reported in F.Supp.2d                                                                                 Page 1
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**



**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
William F. ASIP and Miklos L. Bartha, Plaintiffs,
v.
NIELSEN MEDIA RESEARCH, INC. and VNU,
Inc., Defendants.
**No. 03 Civ. 5866(SAS).**

Feb. 18, 2004.

**Background:** Patent holder brought infringement action against subsidiary and parent company over patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber.

**Holdings:** On holder's motion to dismiss, the District Court, Scheindlin, J., held that:

(1) patent holder stated claim for infringement;

(2) question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings;

(3) complaint provided subsidiary with fair notice of infringement claims; and

(4) subsidiary's laches argument was premature.
Motion denied.

West Headnotes

**[1] Patents** 310.1(1)
291k310.1(1) Most Cited Cases
Patent holder stated claim for infringement, on allegations that stated its joint ownership interest in particular patent, named particular defendants, cited patent as basis for action, described means by which defendants allegedly infringed patent, and indicated that its claims were based on defendants' willful acts of direct and indirect infringement. Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[2] Patents** 310.1(1)
291k310.1(1) Most Cited Cases
Patent holder stated infringement claim against parent company, even though parent owned stock in subsidiary for only 69 days before expiration of patent, where complaint otherwise provided parent with fair notice as to claims asserted against it, and

question of whether parent was liable for subsidiary's actions turned on factual considerations beyond scope of pleadings, such as degree of control it exercised over subsidiary.

**[3] Patents** 310.1(5)
291k310.1(5) Most Cited Cases
Complaint provided competitor with fair notice of infringement claims, relating to patent on system that enabled transmission of channel logs, over non-dedicated telephone lines, chronicling television channels viewed by subscriber; even though complaint did not identify which of competitor's television monitoring devices infringed upon the patent, complaint specifically stated that competitor "infringed, induced and/or contributed" to infringement of patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so." Fed.Rules Civ.Proc.Rule 8(a), 28 U.S.C.A.

**[4] Patents** 313
291k313 Most Cited Cases
Competitor's laches argument at motion to dismiss stage was premature, since such relief turned upon whether patent holder unreasonably delayed filing of lawsuit despite having actual or constructive knowledge of competitor's infringing products and whether that delay resulted in material prejudice to competitor, and those inquiries could not be resolved on face of complaint.

**Patents** 328(2)
291k328(2) Most Cited Cases
4,361,851. Cited.
Robert Rando, Levy & Stopol, LLP, Uniondale, New York, for Plaintiffs.

Lee F. Grossman, Eric P. Martin, Grossman & Flight, LLC, Chicago, Illinois, Steven H. Bazerman, Ramsaran Maharajh Jr., Bazerman & Drangel, PC, New York, New York, for Defendants.

*OPINION AND ORDER*

SCHEINDLIN, J.

**\*1** William Asip and Miklos Bartha bring this action against VNU, Inc. ("VNU") and Nielsen Media Research ("Nielsen") (collectively "defendants") alleging patent infringement. VNU now moves to dismiss the Complaint for failure to state a claim, and

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
(Cite as: 2004 WL 315269 (S.D.N.Y.))

Page 2

Nielsen moves for a more definite statement under Rule 12(e). For the reasons that follow, both motions are denied.

I. BACKGROUND

Plaintiffs are New York residents and holders of Patent No. 4,361,851 (" '851 Patent"). [FN1] Defendants are owners and operators of television audience measurement estimating systems and devices. [FN2] Both defendants conduct business in New York [FN3] and Nielsen is a "division" of VNU. [FN4]

FN1. Complaint ("Compl.") ¶ ¶ 1, 2, 9.

FN2. See Plaintiffs' Memorandum of Law in Opposition to VNU's Rule 12(b)(6) Motion ("Pl.12(b)(6) Mem.") at 1; Plaintiffs' Memorandum of Law in Opposition to Nielsen's Rule 12(e) Motion ("Pl.12(e) Mem.") at 1.

FN3. Compl. ¶ ¶ 3-5; see also VNU's Memorandum of Law in Support of Its Rule 12(b)(6) Motion ("Def.12(b)(6) Mem.") at 2.

FN4. Compl. ¶ 5.

The '851 patent was issued to plaintiffs on November 30, 1982 for their invention of a system that "automatically monitor[s] the selection of a Program Source made by a Subscriber." [FN5] Specifically, this system enables the transmission (over non-dedicated telephone lines) of channel logs chronicling those channels a subscriber has viewed. [FN6] Plaintiffs envisioned use of this invention with "cable television systems or over-the-air pay television scrambled systems." [FN7] But they also noted that the possible applications of this invention "are not restricted to [those relating to] Pay-TV" and could include deployment in activities such as "[o]pinion polling and preference sampling." [FN8]

FN5. '851 Patent, Ex. 1 to Compl. In considering a motion to dismiss, courts may not consider matters outside the pleadings. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir.2002). The complaint includes " 'any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." ' Id. (quoting International Audiotext Network, Inc. v. American Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995)); see also

Fed.R.Civ.P. 10(c). Accordingly, the '851 Patent is treated as part of the Complaint.

FN6. See '851 Patent.

FN7. Id.

FN8. Id.

Plaintiffs allege that defendants have infringed, induced, and/or contributed to the infringement of "at least" Claim One of the '851 Patent. [FN9] Claim One covers:

FN9. Compl. ¶ ¶ 11, 14. The '851 Patent covers six claims. See '851 Patent.

A television-use monitoring device for direct electrical connection to a telephone line, comprising:
(a) coupling means coupled to said television for detecting when said television is actively receiving a predetermined channel and producing, in response thereto a program selection signal indicating the active reception of a particular program selection;
(b) timer means for providing timing information;
(c) transient memory means responsive to said coupling means to store, in response to a first control signal, said program selection signal associated with a particular program whose active reception has been detected;
(d) second memory means responsive to said transient memory means to receive the output of said transient memory means in response to a second control signal and produce the same at its output in response to a third control signal;
(e) control means responsive to said timer for periodically causing said transient memory means to store any program selection signal present in the system, and reading the contents of said transient memory means, and responsive to said transient memory means to cause said transient memory means to transfer its contents to said second memory means in response to the detection of said program selection at one point in time and a second detection of the same program selection a predetermined period of time thereafter;
(f) interface means, responsive to said control means and said program selection signal for transmission; and
*2 (g) transmission coupling means, responsive to said interface means, to couple the output of said interface means to conventional telephone lines and transmit said program selection to a central

billing facility. [FN10]

FN10. '851 Patent.

 Defendants allegedly knew of and intentionally infringed the '851 Patent by "importing, making, using and/or selling products which use and/or encompass [,] store[,] and forward technology with the use of a telephone line for data transmission in the television industries." [FN11] Plaintiffs contend that defendants' unlawful conduct began prior to and continued through the '851 Patent's expiration date in January 2000. [FN12]

FN11. Compl. ¶ 10; *see also id.* ¶¶ 14-16.

FN12. *Id.* ¶¶ 10-11, 15.

II. APPLICABLE LAW

 A. Legal Standard

 1. Rule 12(b)(6)

 A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if " 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." ' [FN13] "A court's task 'in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." ' [FN14] Accordingly, courts must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. [FN15]

FN13. *Swierkiewicz v. Sorema, N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)); *see also Cargo Partner AG v. Albatrans, Inc.,* 352 F.3d 41, 44 (2d Cir.2003).

FN14. *Levitt v. Bear Stearns & Co., Inc.,* 340 F.3d 94, 101 (2d Cir.2003) (quoting *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998)).

FN15. *See Chambers,* 282 F.3d at 152; *Levitt,* 340 F.2d at 101.

 2. Rule 12(e)

 Under Rule 12(e), if a complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." [FN16] Rule 8(a) provides that a plaintiff need only plead "a short and plain statement of the claim" that will provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests. [FN17] " '[I]f [a] complaint complies with the liberal pleading requirements of [Rule 8(a) ], then the Rule 12(e) motion should be denied.' " [FN18] Notably, because the purpose of the Rule is to "strike at unintelligibility rather than want of detail and ... allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement." [FN19] Therefore, "the tendency under the Federal Rules is to discourage motions to compel more definite complaints and to encourage the use of discovery procedures to apprise the parties of the basis for the claims made in the pleadings." [FN20]

FN16. Fed.R.Civ.P. 12(e).

FN17. Fed.R.Civ.P. 8(a); *see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

FN18. *Vapac Music Publ'g, Inc. v. Tuff'N'Rumble Mgmt.,* No. 99 Civ. 10656, 2000 WL 1006257, at *6 (S.D.N.Y. July 19, 2000) (quoting *Tom Kelley Studios Inc. v. International Collectors Soc'y Inc.,* No. 97 Civ. 0056, 1997 WL 598461, at *1 (S.D.N.Y. Sept. 25, 1997)).

FN19. *Markovic v. New York City Sch. Constr. Auth.,* No. 99 Civ. 10339, 2000 WL 1290604, at *3 (S.D.N.Y. Sept.13, 2000) (quotation marks and citation omitted).

FN20. *Id.; see also Vapac Music Publ'g,* 2000 WL 1006257, at *6 (noting that Rule 12(e) motions are disfavored).

 B. Patent Infringement

 To state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." [FN21] A complaint for patent infringement need only meet the following

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

requirements: "[ (1) allege] ownership of the asserted patent, [ (2) ] name[ ] each individual defendant, [ (3) ] cite[ ] the patent that is allegedly infringed, [ (4) ] describe[ ] the means by which the defendants allegedly infringe, and [ (5) ] point[ ] to the specific sections of the patent law invoked." [FN22]

> FN21. *Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.,* 203 F.3d 790, 794 (Fed.Cir.2000); *accord DigiGAN, Inc. v. iValidate, Inc.,* No. 02 Civ. 0420, 2004 WL 203010, at *4 (S.D.N.Y. Feb.3, 2004).

> FN22. *Phonometrics,* 203 F.3d at 794; *accord DigiGAN,* 2004 WL 203010, at *4.

III. DISCUSSION [FN23]

> FN23. As an initial matter, I note plaintiffs' argument that both Rule 12 motions should be rejected because of defendants' failure to abide by my Individual Rules and Procedures. *See* Pl. 12(b)(6) Mem. at 9; Pl. 12(e) Mem. at 7. Because parties are expected to be familiar with these rules, defendants are reminded that the rules are available at this Court's website. *See* Individual Rules and Procedures, http://www.nysd. uscourts.gov/Individual_Practices/Scheindlin.pdf.
> The rules clearly state that, prior to bringing a motion to dismiss, "the parties *must* exchange letters" and "must certify that pre-motion letters were exchanged." *Id.* at 3 (emphasis added). "The parties should attempt to eliminate the need for these motions based on this exchange of letters," while recognizing that leave to amend will be freely granted. *Id.* Defendants' failure to follow these rules has led them to engage in what appears to be unnecessary motion practice. This highlights precisely those consequences that the rule is intended to avoid, *e .g.,* needlessly delayed litigation and wasted judicial resources.

A. VNU's Rule 12(b)(6) Motion

**\*3** [1][2] The Complaint satisfies the pleading requirements of Rule 8 because it: (1) alleges plaintiffs' joint ownership of the '851 Patent, [FN24] (2) names VNU and Nielsen as defendants, [FN25] (3) cites the '851 Patent as the basis for the action, [FN26] (4) describes the means by which defendants

allegedly infringed the '851 Patent, [FN27] and (5) indicates that their claims are based on defendants' willful acts of direct and indirect infringement. [FN28] However, VNU argues that the action against it should be dismissed because it has never "engaged in any of the allegedly infringing activities." [FN29] Rather, VNU contends that those acts were committed by its subsidiary, Nielsen, which was acquired on October 27, 1999, sixty-nine days prior to the expiration of the '851 patent. [FN30] As VNU puts it, "[its] sole relationship with [Nielsen] as relates to this case is this 69 day period during which it owned the stock of [Nielsen] but had no direct involvement in its operations." [FN31]

> FN24. *See* Compl. ¶ 9.

> FN25. *See id.* ¶¶ 3, 5, 10, 11.

> FN26. *See id.* ¶¶ 9-15.

> FN27. *See id.* ¶¶ 9-11.

> FN28. *See id.* ¶¶ 10-12. Specifically, patent infringement claims are governed by 35 U.S.C. § 271. Direct infringement occurs when a person, without authority, infringes a patent by making, using, offering to sell, or selling any patented invention. *See* 35 U.S.C. § 271(a). Indirect infringement occurs when a person induces the infringement of a patent by another or contributes to a patent's infringement through its activities. *See* 35 U.S.C. § 271(b)-(c).

> FN29. Def. 12(b)(6) Mem. at 2.

> FN30. *See id.*

> FN31. *Id.* at 2-3 (alternation in original).

VNU has not demonstrated that plaintiffs cannot prove any set of facts in support of their patent infringement claims. *First,* plaintiffs' allegations as pled are sufficient because they provide VNU with fair notice as to the claims asserted against it. As plaintiffs correctly point out, VNU's motion is "merely a statement of its belief that it has not engaged in any direct infringement which is more appropriately stated as a denial in answer to the [Complaint]." [FN32] *Second,* even if plaintiffs' infringement claims against VNU are premised solely on its status as "a holding company" for subsidiary Nielsen, whether VNU is liable for Nielsen's actions

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

turns on factual considerations (*e.g.,* the degree of control that VNU exercised over Nielsen) that are beyond the scope of the pleadings. [FN33] Thus, contrary to VNU's argument that "[t]he timing of the dismissal is irrelevant," [FN34] the fact that VNU brings this motion at the pleading stage is critical.

> FN32. Pl. 12(b)(6) Mem. at 8.

> FN33. Not surprisingly VNU submitted a Joint Declaration in an attempt to factually support its arguments. *See* Joint Declaration of Michael E. Elias and David A. Schwartz-Leeper, Ex. A to Def. 12(b)(6) Mem. But for purposes of a motion brought under Rule 12(b)(6), a court cannot consider documents outside of the pleadings. *See Chambers,* 282 F.3d at 152.

> FN34. VNU's Reply Memorandum of Law in Further Support of Its Rule 12(b)(6) Motion at 4.

B. Nielsen's Rule 12(e) Motion

[3] Nielsen argues that because plaintiffs' " 'bear-bones' [sic] Complaint" does not identify which of Nielsen's television monitoring devices infringe the '851 Patent, the Complaint fails to satisfy Rule 8's pleading requirements. [FN35] But the Complaint specifically states that Nielsen "infringed, induced and/or contributed" to the infringement of the '851 Patent by "importing, making, using and/or selling products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries and continued to do so to, and including, January 2000." [FN36] These allegations are not "so vague or ambiguous" that Nielsen cannot be "reasonably ... required to frame a responsive pleading" to the Complaint. [FN37] As the Complaint provides fair notice of plaintiffs' patent infringement claims, it comports with the pleading requirements set forth in Rule 8. [FN38]

> FN35. Nielsen's Memorandum of Law in Support of Its Rule 12(e) Motion ("Def.12(e) Mem.") at 2.

> FN36. Compl. ¶ 11.

> FN37. Fed.R.Civ.P. 12(e).

> FN38. *See supra* Part III.A. Moreover, Form 16 of the Appendix of Forms to the Federal

Rules of Civil Procedure, which provides a sample patent infringement complaint, states simply that "[d]efendant has for a long time past been and still is infringing [plaintiff's] Letters Patent by making, selling, and using electric motors embodying the patented invention, and will continue to do so unless enjoined by this court." Courts have found that a complaint providing at least as much information as this sample complaint is sufficient to withstand a Rule 12(e) motion. *See Dome Patent L .P. v. Permeable Techs., Inc.,* 190 F.R.D. 88, 90-91 (W.D.N.Y.1999) (citing *OKI Elec. Indus. Co. v. LG Semicon Co.,* No. 97 Civ. 20310, 1998 WL 101737, at *3-4 (N.D.Cal. Feb.25, 1998), and *Soli-Tech, Inc. v. Halliburton Co.,* No. 97 Civ. 10232, 1993 WL 315358, at *3 (E.D.Mich. Jan.26, 1993)). Plaintiffs' allegations of infringement by "products which use and/or encompass store and forward technology with the use of a telephone line for data transmission in the television industries" are at least as specific as those involving "electric motors embodying the patented invention." Compl. ¶ 11.

[4] Nielsen also contends that the doctrine of laches requires plaintiffs to "specifically identify [Nielsen's] allegedly infringing products." [FN39] In particular, Nielsen argues that plaintiffs' allegations either (1) cover activities that Nielsen has undertaken for the twenty years since the '851 patent was issued and "[b]y definition" the doctrine of laches applies; or (2) Nielsen "must have some new product, or must have modified an old product in a way [ ] that allegedly infringes the '851 Patent" and must identify that product. [FN40] But, at this stage of the proceedings, Nielsen's laches argument is premature. Relief pursuant to the doctrine of laches turns on (1) whether a plaintiff unreasonably delayed the filing of her lawsuit despite having actual or constructive knowledge of the defendant's infringing products and (2) whether that delay resulted in material prejudice to defendant. [FN41] Where these inquiries cannot be resolved on the face of the complaint, they are questions properly reserved for summary judgment, after discovery has concluded. Here, the laches defense cannot be resolved solely from a review of the Complaint.

> FN39. Def. 12(e) Mem. at 3.

> FN40. *Id.* at 4 (citing *A.C. Aukerman Co. v. R.L. Chaides Contr. Co.,* 960 F.2d 1020

Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)
**(Cite as: 2004 WL 315269 (S.D.N.Y.))**

(Fed.Cir.1992) and *Ecolab, Inc. v. Envirochem, Inc.,* 264 F.3d 1358 (Fed.Cir.2001). Notably, both cases upon which Nielsen relies involve the application of the doctrine of laches at the summary judgment stage.

FN41. *See Ecolab,* 264 F.3d at 1371; *A.C. Aukerman Co.,* 960 F.2d at 1032.

IV. CONCLUSION

**\*4** For the foregoing reasons, both VNU's motion to dismiss and Nielsen's motion for a more definite statement are denied. The Clerk of the Court is directed to close these motions (numbers 13 and 17 on the docket sheet). A conference is scheduled for February 26, 2004, at 2:45 p.m.

SO ORDERED:

Not Reported in F.Supp.2d, 2004 WL 315269 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:03cv05866 (Docket) (Aug. 06, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557        Page 1 of 6

Case 1:06-cv-00041-JJF     Document 57-3     Filed 03/08/2006     Page 1 of 6

**FOCUS™** Terms _____     Search Within  All Documents       [Go] →

View: **Full** | Custom                    ⟨═══ **1** of 1 ═══⟩       **FAST Print**  Print | [
                              More Like This | More Like Selected Text | *Shepardize®* | TOA
                    **Gammino v. Cellco P'ship, 2005 U.S. Dist. LEXIS 21557**  (Copy w/ Cite)

Service:  **Get by LEXSEE®**
Citation:  **2005 u.s. dist. LEXIS 21557**

*2005 U.S. Dist. LEXIS 21557, \**

JOHN GAMMINO, Plaintiff, v. CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS VERIZON
COMMUNICATIONS, INC. VODAPHONE GROUP PLC, and AT&T CORPORATION, Defendants.

NO. 04-4303

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2005 U.S. Dist. LEXIS 21557

September 27, 2005, Filed

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Two defendants, cellular telephone companies, filed motions to
dismiss plaintiff patentee's action for the infringement of two patents.

**OVERVIEW:** The patentee filed an action against defendants, alleging that they had, and
continued to, directly infringe upon and/or actively induce the infringement of two patents
that he registered and owned. The patents covered techniques for blocking fraudulent
international telephone calls. Two defendants filed motions to dismiss. As to defendant
one, the court found that by alleging that defendants actively infringed upon, and induced
others to infringe upon, his patents by using them, the patentee satisfied the pleading
requirements of Fed. R. Civ. P. 8(a)(2). Defendant one's other arguments could
appropriately be advanced after discovery and upon summary judgment. The patentee's
action did not duplicate prior litigation between the parties. None of the claims against
defendants in the earlier matter involved allegations of patent infringement relating to
wireless telephone services. Finally, the court was unable to determine whether it could
lawfully exercise personal jurisdiction over defendant two, a foreign company. An
opportunity for jurisdictional discovery had to be granted in order to permit the patentee
to demonstrate that jurisdiction over defendant two was warranted.

**OUTCOME:** The court denied defendant one's motion to dismiss. The court deferred a
decision on defendant two's motion to dismiss pending the completion of discovery limited
to the issues raised.

**CORE TERMS:** patent, discovery, partner, notice, infringed, infringe, infringement,
completion, motion to dismiss, summary judgment, patent infringement, wireless, actively,
induced, required to provide, infringer, patentee, failed to state, general partner,
jurisdictional, duplicative, correctly, reinstate, duplicate, reply

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557          Page 2 of 6

Case 1:06-cv-00041-JJF     Document 57-3     Filed 03/08/2006     Page 2 of 6

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN1* A court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. The court must take all the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN2* Fed. R. Civ. P. 8(a)(2) only requires a short and plain statement of a claim showing that the pleader is entitled to relief. The statement of facts must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN3* Notice pleading is all that is required even when it may appear on the face of the pleadings that a recovery is very remote and unlikely. The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN4* The notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. The pleading standard is a liberal one and is adopted to focus litigation on the merits of a claim. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN5* Fed. R. Civ. P. 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
Patent Law > Infringement Actions > General Overview

*HN6* A patentee need only plead facts sufficient to place an alleged infringer on notice. This requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation
Patent Law > Infringement Actions > General Overview

*HN7* Pleading requirements do not require a patentee to amend its claims to include specific allegations about each limitation once a court has construed the claims of the patent. To impose such requirements would contravene the notice pleading standard, and would add needless steps to the already complex process of patent litigation. More Like This Headnote

Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction

*HN8* A plaintiff bears the burden of establishing that a defendant has sufficient contacts with the forum state to warrant a court's exercise of either general or specific personal jurisdiction over the defendant. More Like This Headnote

**COUNSEL: [*1]** For JOHN R. GAMMINO, Plaintiff: WILLIAM M. MULLINEAUX, FLAMM BOROFF & BACINE, BLUE BELL, PA; FRANK SCHWARTZ, FLAMM BOROFF & BACINE PC, BLUE BELL, PA; RICHARD J. JOYCE, FLAMM, BOROFF & BACINE, PC, BLUE BELL, PA.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557     Page 3 of 6

Case 1:06-cv-00041-JJF    Document 57-3     Filed 03/08/2006     Page 3 of 6

For CELLCO PARTNERSHIP, doing business as VERIZON WIRELESS, VODAFONE GROUP PLC, Defendants: KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA; SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

For VERIZON COMMUNICATIONS, INC., Defendant: SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

For AT&T CORP., Defendant: KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For SPRINT CORPORATION, Defendant: WILLIAM A. JONES, SWARTZ CAMPBELL, LLC, THE FLINTKOTE COMPANY, PHILADELPHIA, PA; KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For DAVEL COMMUNICATIONS, INC., Defendant: GREGORY B. LARE, DUANE MORRIS LLP, PHILADELPHIA, PA; MARK A. WATKINS, AKRON, OH; R. ERIC GAUM, HAHN, LOESER, AKRON, OH; RICHARD H. LOWE, DUANE MORRIS LLP, PHILADELPHIA, PA; KATHERINE MENAPACE, AKIN GUMP STRAUSS HAUER & FELD, LLP, PHILADELPHIA, PA.

For JOHN R. GAMMINO, **[*2]** JOHN R. GAMMINO, Counter Defendants: WILLIAM M. MULLINEAUX, FLAMM BOROFF & BACINE, BLUE BELL, PA.

For CELLCO PARTNERSHIP, Counter Claimant: SAMUEL W. SILVER, SCHNADER HARRISON SEGAL & LEWIS LLP, PHILADELPHIA, PA.

**JUDGES:** Clifford Scott Green, S.J.

**OPINIONBY:** Clifford Scott Green

**OPINION: MEMORANDUM**

**GREEN, S.J.**

Presently pending are Defendant Verizon Communications, Inc. ("VCI") Motion to Dismiss, and Defendant Vodaphone Group PLC's ("Vodaphone") Motion to Dismiss. Defendants Cellco Partnership ("Cellco" will be referred to as "Verizon Wireless"), Davel Communications, Inc., Sprint Communications, and AT&T have each filed an Answer to Plaintiff's Complaint. For the reasons set forth below, Defendant VCI's motion will be denied. Defendant Vodaphone's motion will be dismissed without prejudice pending the completion of jurisdictional discovery.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed a Complaint against Defendants alleging that Defendants have in the past, and continue to, directly infringe upon and/or actively induce the infringement of two patents Plaintiff registered and owns. The patents purportedly cover techniques for blocking fraudulent international **[*3]** telephone calls thereby resulting in substantial savings for Defendants.

VCI argues that Plaintiff's Complaint should be dismissed against it because VCI is not a partner of Verizon Wireless. VCI also maintains that Plaintiff failed to state a claim that VCI directly infringed upon the patent or induced Verizon Wireless to infringe the patent. VCI claims that it is a holding company which only holds the stock of other companies, and that it does not conduct any other business. Secondly, VCI argues that it should be dismissed from this action because Plaintiff has already sued VCI for infringement of the same patents in a

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557          Page 4 of 6

Case 1:06-cv-00041-JJF      Document 57-3      Filed 03/08/2006      Page 4 of 6

related matter in this court, Gammino, v. Verizon Communications, et al., Civ. Ac. No. 03-5579. In reply, Plaintiff responds that VCI is a general partner of Verizon Wireless as is demonstrated by many public filings. Plaintiff further responds that the instant suit against VCI is not duplicative litigation because the claims alleged against VCI herein derive from VCI's alleged infringement of the patents for wireless services only. Plaintiff states that the related case does not contain any claims for violation of the patents relating to wireless services. Therefore, **[*4]** Plaintiff concludes that the claims made in this action do not duplicate claims made in Gammino, v. Verizon Communications, et al., Civ. Ac. No. 03-5579.

## DISCUSSION

**HN1** A court may dismiss a complaint for failure to state a cause of action only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)). The court "must take all the well pleaded allegations as true and construe the complaint in the light most favorable to the plaintiff." Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988). In Swierkiewicz, the United States Supreme Court addressed the liberal pleading standards set forth in Fed.R.Civ.P. 8(a)(2), noting that **HN2** Fed.R.Civ.P. 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Swierkiewicz 534 U.S. 506, 122 S. Ct. 992 at 998-999, 152 L. Ed. 2d 1. **[*5]** The Supreme Court further noted that the statement of facts must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Id. at 998. (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80(1957). **HN3** Notice pleading is all that is required even when it may appear on the face of the pleadings that a recovery is very remote and unlikely. See Swierkiewicz at 997-998. "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. at 997 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90)). The Supreme Court further expounded upon the simplified notice pleading standard stating that **HN4** the standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims. Id. at 998. The pleading standard is a liberal one and was adopted to focus litigation on the merits of a claim. Id. at 999. Therefore, **HN5** Fed.R.Civ.Pro. 8(a) establishes a pleading standard without **[*6]** regard to whether a claim will succeed on the merits. .

## A. VCI's Motion to Dismiss

VCI argues that dismissal is warranted because it is only a holding company, and not a partner of Verizon Wireless. VCI also argues that the instant litigation is duplicative, a waste of judicial resources, and unduly burdensome. Upon review of the Complaint the court notes that Plaintiff has alleged that VCI is a general partner of Verizon Wireless. (See Compl. at PP 35, 38,73, and 85). Plaintiff's has sufficiently alleged that VCI is Verizon Wireless' partner. Swierkiewicz, discussed *supra* makes it clear that pleading with particularity is not required and also that Plaintiff is not required to provide proof that his allegations are correct at the time of pleading. The pleading standard is a liberal one and was adopted to focus litigation on the merits of a claim. Id. at 999. Whether VCI actually is a partner of Verizon Wireless is a matter to be determined after the completion of discovery and upon summary judgment, if appropriate. Furthermore, Plaintiff has also alleged, albeit quite generally, that VCI has actively infringed upon, and induced Verizon Wireless to **[*7]** infringe upon, Plaintiff's patents. VCI asserts that Plaintiff must specify the manner in which the alleged infringement occurred and cites to Phonemetrics, Inc. v. Hospitality Franchise Sys. Inc., 203 F.3d 790 (Fed. Cir 2000) in support of this position. (VCI Mot. Dismiss at 6). However, VCI has misconstrued the court's holding in that case. In Phonemetrics ,the court merely stated that **HN6** "a patentee need only plead facts sufficient to place the alleged infringer on notice. This

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557      Page 5 of 6

Case 1:06-cv-00041-JJF    Document 57-3    Filed 03/08/2006    Page 5 of 6

requirement ensures that an accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." Phonometrics, 203 F.3d at 794. Notably the court specifically held that:

> HN7 [Pleading] requirements do not require a patentee to amend its claims to include specific allegations about each limitation once a court has construed the claims of the patent. To impose such requirements would contravene the notice pleading standard, and would add needless steps to the already complex process of patent litigation. Instead. . . [the] complaint alleges ownership of the asserted patent, names each individual defendant, cites **[*8]** the patent that is allegedly infringed, describes the means by which the defendants allegedly infringe, and points to the specific sections of the patent law invoked.

Id. Therefore, Plaintiff is only required to provide Defendants with notice of his claims. By alleging that Defendants have actively infringed upon, and induced others to infringe upon, his patents by using them, Plaintiff has satisfied the pleading requirements of Fed.R.Civ.P. 8 (a)(2). VCI's motion to dismiss largely relies on its assertions that Plaintiff cannot prove that VCI is Verizon Wireless' partner. VCI's motion for dismissal also asserts that VCI cannot and has not infringed upon any patents because it is only a holding company. Again, these arguments are appropriately advanced after discovery has been completed and upon summary judgment. Defendant VCI's motion to dismiss for failure to state a claim will be dismissed

VCI's final argument favoring dismissal is that the instant matter duplicates litigation. Plaintiff has filed a complaint against VCI in a related matter. See, Gammino v Verizon Communications, Inc., et al., Civ. Ac. No. 03-5579. However, **[*9]** as Plaintiff correctly notes, none of Plaintiff's claims against any of the Defendants in that matter involve allegations of patent infringement relating to wireless telephone services. The claims against all Defendants herein involve wireless service. The court recognizes that VCI will be required to simultaneously litigate two cases involving the same patent. However, the court will attempt to minimize this burden by coordinating scheduling and other deadlines in the related case. Accordingly, Defendant VCI's motion to dismiss Plaintiff's Complaint will be denied.

## B. Vodaphone's Motion to Dismiss

Vodaphone moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(2) asserting that this court does not have jurisdiction over Vodaphone, a UK-based company. Vodaphone asserts that it has no Pennsylvania contacts and that it in PennsyIvania it: does not do any business; has never sold any goods or services; does not own any property; does not pay any tax, or employ any personnel. As Vodaphone correctly points out, HN8 Plaintiff bears the burden of establishing that Vodaphone has sufficient contacts with Pennsylvania to warrant this court's exercise **[*10]** of either general or specific personal jurisdiction over Vodaphone. See, Inamed Corp. V. Kuzmak, 249 F.3d 1356, 1360 (Fed. Cir. 2001); Akro Corp. v. Luker, 45 F.3d, 1541, 1545 (Fed. Cir. 1995). However, on the present record, the court is unable to determine whether it may lawfully exercise personal jurisdiction over Vodaphone. An opportunity for jurisdictional discovery must be granted in order to permit Plaintiff to demonstrate to this court that jurisdiction over Vodaphone is warranted. n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -



Get a Document - by Citation - 2005 U.S. Dist. LEXIS 21557          Page 6 of 6

Case 1:06-cv-00041-JJF     Document 57-3     Filed 03/08/2006     Page 6 of 6

n1 Vodaphone also moves for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) maintaining that it is not a partner of Verizon Wireless and cannot be liable for any alleged infringing conduct committed by Verizon Wireless. Vodaphone further argues that Plaintiff has failed to state a claim for patent infringement because the complaint failed to allege sufficient facts to support a claim of either direct or indirect patent infringement. (See Vodaphone Mot. Dismiss at 14-15, 17-19). The court will not determine whether dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate until after the court decides whether it may properly exercise jurisdiction over Vodaphone.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*11]**

An appropriate order follows.

**ORDER**

**AND NOW** this     day of September 2005, **IT IS HEREBY ORDERED** that:

    1. Defendant VCI's Motion to Dismiss is **DENIED**. Defendant VCI shall file an Answer to Plaintiff's Complaint within 10 days of the date of this Order;

    2. Decision on Defendant Vodaphone's Motion to Dismiss is **DEFERRED** pending the completion of discovery limited to the issues raised pursuant to Fed. R. Civ. P 12(b)(2);

    3. Discovery on the jurisdictional issue shall be completed on or before November 30, 2005;

    4. Defendant Vodaphone may move within ten (10) days of the completion of discovery to reinstate the motion including legal memorandum;

    5. Plaintiff shall have ten (10) days from the date of Defendant's letter request to reinstate his reply.

BY THE COURT:

S/ Clifford Scott Green, S.J.



View: **Full** | Custom      ◄ **1 of 1** ►   **FAST Print**   Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | *Shepardize®* | TOA

**Gammino v. Cellco P'ship, 2005 U.S. Dist. LEXIS 21557** (Copy w/ Cite)      Pages:   **7**

Service: **Get by LEXSEE®**
Citation: **2005 u.s. dist. LEXIS 21557**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:27 PM EST

About LexisNexis  |  Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167          Page 1 of 7

Case 1:06-cv-00041-JJF      Document 57-4      Filed 03/08/2006      Page 1 of 7



**FOCUS™** Terms _____  Search Within | All Documents

View: **Full** | Custom                        1 of 1                 *FAST* Print | Print | [

More Like This | More Like Selected Text | *Shepardize®* | TOA

✦ **In re Rivastigmine Patent Litig., 2005 U.S. Dist. LEXIS 7167** (Copy w/ Cite)

Service:  **Get by LEXSEE®**
Citation:  **2005 u.s. dist. LEXIS 7167**

*2005 U.S. Dist. LEXIS 7167, \**

In Re RIVASTIGMINE PATENT LITIGATION (MDL No. 1661),

(05 MD 1661) (HB) (JCF)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

2005 U.S. Dist. LEXIS 7167

April 25, 2005, Decided
April 25, 2005, Filed

**SUBSEQUENT HISTORY:** Motion granted by, Motion denied by In re Rivastigmine Patent Litig., 2005 U.S. Dist. LEXIS 20851 (S.D.N.Y., Sept. 22, 2005)

**DISPOSITION:** [\*1] Novartis' motion to amend granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs, a group of pharmaceutical companies, sought to amend their complaints in consolidated patent cases to include claims for induced infringement under 35 U.S.C.S. § 271(e)(2). Defendant pharmaceutical companies argued that the motion to amend should be denied because the proposed amendments were futile.

**OVERVIEW:** Defendant pharmaceutical companies (DPCs) filed abbreviated new drug applications (ANDAs) to piggyback on the safety and effectiveness information that the plaintiff pharmaceutical companies (PPCs) submitted in their new drug application (NDA) for a drug that treated dementia associated with Alzheimer's disease. The PPCs sued the DPCs, and sought to amend the complaints to allege induced patent infringement under 35 U.S.C.S. § 271(e)(2). The PPCs initially based their infringement actions only on the filing of the ANDAs, which was not sufficient, given that they were still required to prove infringement under a traditional patent infringement analysis. Therefore, the PPCs moved to amend their complaints to add language that included patent infringement elements. The DPCs argued that the amendments were futile because they were speculative and did not set out specific intent. However, the court found that the fact that the amendments referred to what the DPCs might do in the future was not fatal given that the drugs had not been marketed yet. Also, under the notice pleading standard, the PPCs were not required to plead particular specific acts of inducement.

**OUTCOME:** The court granted the motion to amend.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167          Page 2 of 7

Case 1:06-cv-00041-JJF          Document 57-4          Filed 03/08/2006          Page 2 of 7

**CORE TERMS:** patent, infringement, induced, patent infringement, manufacturer, amend, certification, induce, specific intent, motion to amend, new drug, pharmaceutical, collectively, manufacture, speculative, submitting, piggyback, futility, futile, affirmative conduct, required to state, deny permission, third parties, patent law, rivastigmine, expiration, inducement, infringed, infringer, dementia

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
*HN1* See 35 U.S.C.S. § 271(e)(2).

Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
*HN2* 35 U.S.C.S. § 271(e)(2) merely creates an act of infringement for the purpose of forestalling the argument that no case or controversy yet exists. A plaintiff claiming induced infringement under § 271(e)(2) must still prove infringement under a traditional patent infringement analysis. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
*HN3* A motion to amend is governed by Fed. R. Civ. P. 15(a), which states that leave to amend shall be freely given when justice so requires. Notwithstanding the liberality of the general rule, it is within the sound discretion of the court whether to grant leave to amend, and for the proper reasons, a court may deny permission to amend in whole or in part. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
*HN4* Among the reasons for which a court may deny permission to amend a complaint is the futility of amendment. A motion to amend may be denied as futile if the amendment could not withstand a motion to dismiss. More Like This Headnote |
*Shepardize:* Restrict By Headnote

Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings
Patent Law > Jurisdiction & Review > General Overview
*HN5* Although the law of the U.S. Court of Appeals for the Federal Circuit governs questions of patent law, the law of the regional circuit applies to procedural questions that are not specific to patent law, such as motions to amend. More Like This Headnote

Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
*HN6* A claim under 35 U.S.C.S. § 271(e)(2) is, by its very nature, speculative to a certain degree. Indeed, in comparing actions brought under § 271(e)(2) and traditional infringement claims brought under § 271(a), the only difference is that the allegedly infringing drug has not yet been marketed and therefore the question of infringement must focus on what the abbreviated new drug application applicant will likely market if its application is approved, an act that has not yet occurred. Thus, while a § 271(e)(2) induced infringement claim may be speculative, it is not sufficiently so to contravene the case or controversy requirement. More Like This Headnote

Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement
Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge
*HN7* In order to succeed on an induced infringement claim under 35 U.S.C.S. § 271(e)(2),

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167          Page 3 of 7

Case 1:06-cv-00041-JJF    Document 57-4    Filed 03/08/2006    Page 3 of 7

a plaintiff must prove infringement under a traditional patent infringement analysis. Such an analysis requires proof that if the abbreviated new drug application is approved, the accused infringer will induce a third party to directly infringe the asserted patent and that the accused infringer knows or should know that his actions will induce infringement. More Like This Headnote

Patent Law > Infringement Actions > Infringing Acts > Contributory, Indirect & Induced Infringement

Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge

HN8 Specific intent in the induced infringement context requires that a defendant intend specifically to encourage another's infringement, as opposed to merely knowing of the acts alleged to constitute inducement. And, under the notice pleading standard provided in Fed. R. Civ. P. 8, plaintiffs are not required to plead with particularity specific acts of inducement or encouragement of third parties. More Like This Headnote

**COUNSEL:** For Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma AG, Novartis International Pharmaceutical Ltd., Plaintiffs: Christopher Michael Welling, David C. Van Dyke, Cassiday, Schade & Gloor, Chicago, IL; David M Conca, Gregory B. Sephton, Nicholas Nicholas Kallas, Robert Louis Baechtold, Diego Scambia, Fitzpatrick, Cella, Harper & Scinto, New York, NY; Edward Anthony Kmett, Jr., Michael K. O'Neill, Fitzpatrick, Cella, Harper & Scinto, Costa Mesa, CA.

For Proterra AG, Plaintiff: David M Conca, Gregory B. Sephton, Nicholas Nicholas Kallas, Robert Louis Baechtold, Fitzpatrick, Cella, Harper & Scinto, New York, NY.

For Dr. Reddy's Laboratories, Ltd., Dr. Reddy's Laboratories, Inc., Defendants: Maurice Newmark Ross, Budd Larner P.C., NY, NY.

For Sun Pharmaceutical Industries Ltd., Defendant: David J. Doyle, Derek John Sarafa, James Francis Hurst, Winston & Strawn, LLP, Chicago, IL; Kristen G. Cowan, Winston & Strawn, Chicago, IL.

For Watson Pharmaceuticals Inc., Watson Laboratories Inc., Defendants: Leonard J. Santisi, Frommer Lawrence & Haug, San Diego, CA.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JAMES C. FRANCIS IV

**OPINION:** MEMORANDUM AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Plaintiffs Novartis Pharmaceuticals Corporation, Novartis AG, Novartis Pharma AG, Novartis International Pharmaceutical Ltd. and Proterra AG (collectively "Novartis"), seek to amend their complaints in these consolidated patent cases to include claims for induced infringement under 35 U.S.C. § 271(e)(2). Defendants, Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratory, Inc. (collectively "Reddy"), Watson Pharmaceuticals Inc. and Watson Laboratories, Inc. (collectively "Watson"), and Sun Pharmaceutical Ltd. ("Sun"), argue that plaintiffs' motion should be denied because the proposed amendments are futile. For the reasons set forth below, Novartis' motion is granted.

Background

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167          Page 4 of 7

Case 1:06-cv-00041-JJF     Document 57-4     Filed 03/08/2006     Page 4 of 7

## A. The Regulatory Framework

Pursuant to the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301-99 (the "FDCA"), a pharmaceutical manufacturer seeking to market a new drug must first obtain approval from the Food and Drug Administration (the "FDA") by submitting a new drug application ("NDA"). Purepac Pharm. Co. v. TorPharm, Inc., 354 F.3d 877, 879, 359 U.S. App. D.C. 319 (Fed. Cir. 2004); [*3] Allergan, Inc. v. Alcon Laboratories, Inc., 324 F.3d 1322, 1325 (Fed. Cir. 2003). If an NDA is approved, the FDA grants the manufacturer a five-year period of exclusive marketing for the drug. Allergan, 324 F.3d at 1325. The application must contain, among other things, the results of extensive testing, information regarding the drug's safety and effectiveness, and information about patents that cover the drug. 21 U.S.C. § 355(b)(1); Purepac, 354 F.3d at 879. The FDA publishes the patent information, which must be updated by the NDA owner, in a publication known generally as the "Orange Book." Allergan, 324 F.3d at 1325-26. "Method-of-use patents," that is, patents that cover a drug's specific uses, may be included in the Orange Book only if the covered uses have been approved by the FDA. Purepac, 354 F.3d at 880 (citing 21 C.F.R. § 314.53(b)).

With the goal of expediting access by generic drug manufacturers to the pharmaceutical market, Congress passed the "Hatch Waxman" amendments to the FDCA in 1984. See The Drug Price Competition and Patent [*4] Restoration Act of 1984, Pub. L. No. 98-417, 98 Stat. 1585 (1984) (codified in scattered sections of titles 21, 35, and 42 of the United States Code); Purepac, 354 F.3d at 879. The amendments allow manufacturers seeking approval to market a generic version of an FDA-approved drug to file Abbreviated New Drug Applications ("ANDAs") which "piggyback on the safety-and-effectiveness information that the brand-name manufacturers submitted in their NDAs." Id. Like NDA applicants, ANDA applicants must address patents that cover, or ostensibly cover, the drug for which they are seeking approval. Id. One way in which they may do this is by submitting a statement that the patents which purport to cover the drug are "invalid or will not be infringed by the manufacture, use, or sale of the new drug" (a "paragraph IV certification"). 21 U.S.C. § 355 (j)(2)(A)(vii)(IV). Upon submitting a paragraph IV certification, an ANDA applicant must notify the patent holder, as well as the company that filed the NDA on which the ANDA "piggybacks." Purepac, 354 F.3d at 879. The patent holder then has 45 days in which to file a patent-infringement [*5] suit. Id.

## B. The Infringed Patents

This case arises out of efforts by the defendants, Reddy, Watson, and Sun to market rivastigmine tartrate, which is sold by Novartis under the brand name Exelon. On April 21, 2000, the FDA approved Exelon for "the treatment of mild to moderate dementia of the Alzheimer's type". (Amended Complaint for Patent Infringement against Reddy ("Am. Compl."), attached as Exh. A to Declaration of Simon A. Fitzpatrick dated Jan. 12, 2004 ("Fitzpatrick Decl."), P26; Exelon Product Label, attached as Exh. 5 to Declaration of Lars P. R. Taavola dated Jan. 26, 2005 ("Taavola Decl."), at 9). Novartis subsequently submitted two patents purporting to cover Exelon for publication in the Orange Book, U.S. Patent Nos. 4,948,807 ("the '807 patent") and 5,602,176 ("the '176 patent"). (Taavola Decl., Exhs. 6 & 7). Each patent contains several claims, only two of which are at issue here: claim 4 of the '807 patent and claim 5 of the '176 patent. (Plaintiffs' Memorandum in Support of their Motion to Amend the Complaints ("Pl. Memo.") at 3). Both claims address methods of using certain compounds to treat various medical conditions including Alzheimer's disease. (Pl. [*6] Memo. at 3; Taavola Decl., Exh. 6 at 14 & Exh. 7 at 4-5).

As stated in the complaints, the defendants here have filed ANDAs, which attempt to "piggyback" on the plaintiffs' NDA for Exelon. (Defendants' Joint Memorandum in Opposition to Plaintiffs' Motion to Amend the Complaints ("Def. Memo.") at 6). Reddy and Watson have submitted a paragraph IV certification stating that "the '807 and '176 patents are invalid, unenforceable or will not be infringed." (Am. Compl., P27; Answer and Counterclaim of Dr.

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167    Page 5 of 7

Case 1:06-cv-00041-JJF    Document 57-4    Filed 03/08/2006    Page 5 of 7

Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc., attached as Exh. 3 to Taavola Decl., P27; Amended Complaint for Patent Infringement against Watson, attached as Exh. B to Fitzpatrick Decl., P27). Sun has submitted the same certification pertaining only to the '176 patent. (Amended Complaint for Patent Infringement against Sun, attached as Exh. C to Fitzpatrick Decl., P19).

Novartis subsequently filed a declaratory judgment action against Reddy, Watson, and Sun. The initial complaints against each defendant alleged infringement based only on the filing of the ANDAs "for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale" of rivastigmine **[\*7]** tartrate capsules before the expiration of the '807 and/or '176 patents. (Am. Compl., PP23-24). 35 U.S.C. § 271(e)(2) provides that:

> *HN1* It shall be an act of infringement to submit-(A) an [ANDA] . . . for a drug claimed in a patent or the use of which is claimed in a patent, . . . if the purpose of such submission is to obtain approval under [Title 21 of the United States Code] to engage in the commercial manufacture, use, or sale of a drug . . . claimed in a patent or the use of which is claimed in a patent before the expiration of such patent.

The plaintiffs are not the first parties to argue that this language creates a cause of action for infringement based solely on the filing of an ANDA. See Warner-Lambert Co. v. Apotex Corp., 316 F.3d 1348, 1355 (Fed. Cir. 2003); Allergan, Inc. v. Alcon Laboratories, Inc., 200 F. Supp. 2d 1219, 1227 (C.D. Cal. 2002). Nevertheless, the Federal Circuit has soundly rejected this argument, holding that *HN2* section 271(e)(2) merely creates "an act of infringement" for the purpose of forestalling the argument that no case or controversy yet exists. A plaintiff claiming induced infringement **[\*8]** under section 271(e)(2) must still prove infringement under a traditional patent infringement analysis. Allergan, 324 F.3d at 1330-32; Warner-Lambert, 316 F.3d at 1365-66. Accordingly, Novartis now proposes to supplement its claims for induced infringement under section 271(e)(2) by adding the following paragraph:

> On information and belief, [defendant's] Rivastigmine Tartrate Products if approved, will be administered to human patients in a therapeutically effective amount for treatment of mild to moderate dementia of the Alzheimer's type, which administration constitutes direct infringement of the [relevant] patents. On information and belief, this will occur at [defendant's] active behest and with its intent, knowledge and encouragement. On information and belief, [defendant] will actively induce, encourage, aid and abet this administration with knowledge that it is in contravention of Plaintiff's right under the [relevant] patents.

(Am. Compl., P26).

Discussion

*HN3* A motion to amend is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that leave to **[\*9]** amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); see Oneida Indian Nation of New York v. City of Sherrill, New York, 337 F.3d 139, 168 (2d Cir. 2003), rev'd on other grounds, ___ U.S. ___, 161 L. Ed. 2d 386, 125 S. Ct. 1478 (2005). Notwithstanding the liberality of the general rule, "it is within the sound

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167     Page 6 of 7

Case 1:06-cv-00041-JJF    Document 57-4    Filed 03/08/2006    Page 6 of 7

discretion of the court whether to grant leave to amend," John Hancock Mutual Life Insurance Co. v. Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994) (citation omitted), and for the proper reasons, a court may deny permission to amend in whole or in part. See Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998).

HN4 Among the reasons for which a court may deny permission to amend is the "futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). A motion to amend may be denied as futile if the amendment could not withstand a motion to dismiss. See Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001); Smith v. CPC International, Inc., 104 F. Supp. 2d 272, 274 (S.D.N.Y. 2000). [*10] n1 HN5 Although the law of the Federal Circuit governs questions of patent law, the law of the regional circuit applies to procedural questions that are not specific to patent law. See Madey v. Duke University, 307 F.3d 1351, 1358 (Fed. Cir. 2002). Thus, Second Circuit law governs the legal standards for pleading under Rule 8(a) of the Federal Rules of Civil Procedure and for dismissal under Rules 12(b)(1) and 12(b)(6).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Because only the futility of the amendment is at issue, I will not address the defendants' arguments to the extent they encompass assertions in the initial complaint. For example, the defendants contend that the plaintiffs' amendments should be denied because the plaintiffs have not pleaded that the use indicated in patents '807 and '176 is an FDA approved use. (Def. Memo. at 17-19). Since the plaintiffs' assertions regarding the uses indicated in the relevant patents and approved by the FDA are contained in the initial complaint, their sufficiency is not at issue here. (Complaint for Patent Infringement against Reddy, PP16, 19, 22).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*11]

The defendants argue that Novartis' proposed amendments are futile because they are speculative and because they fail to set out the "specific intent" and affirmative conduct required to state a claim for induced infringement under 35 U.S.C. § 271(e)(2). (Def. Memo. at 20-21). I will address each of these contentions in turn.

First, it is not fatal to the plaintiffs' motion that the proposed amendments pertain to "what [the] defendants may do in the future." (Def. Memo. at 20). HN6 "A claim under 35 U.S.C. § 271(e)(2) is, by its very nature, speculative to a certain degree[.]" Allergan, 324 F.3d at 1331. Indeed, in comparing actions brought under section 271(e)(2) and traditional infringement claims brought under section 271(a), the Federal Circuit has stated that "the only difference . . . is that the allegedly infringing drug has not yet been marketed and therefore the question of infringement must focus on what the ANDA applicant will likely market if its application is approved, an act that has not yet occurred." Glaxo, Inc. v. Novopharm, Ltd., 110 F.3d 1562, 1569 (Fed. Cir. 1997). Thus, "while a [*12] section 271 (e)(2) induced infringement claim may be speculative, it is not sufficiently so to contravene the case or controversy requirement." Allergan, 324 F.3d at 1331-32.

Second, contrary to the defendants' assertions, the proposed amendments adequately set out the intent and conduct required to state a claim for induced infringement under 35 U.S.C. § 271(e)(2). As noted above, HN7 in order to succeed on an induced infringement claim under section 271(e)(2), a plaintiff must prove infringement under a traditional patent infringement analysis. Such an analysis requires proof that "if the ANDA is approved, the accused infringer will induce a third party to directly infringe the asserted patent and that the accused infringer knows or should know that his actions will induce infringement." Allergan,

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 7167    Page 7 of 7

Case 1:06-cv-00041-JJF    Document 57-4    Filed 03/08/2006    Page 7 of 7

324 F.3d at 1336 (citing Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 553 (Fed. Cir. 1990)). The amendments proposed here address each of these elements; the plaintiffs allege that third parties will directly infringe the '807 and '176 patents at the "active behest" and with the intent of defendants. **[*13]** The defendants assert that the plaintiffs must establish "specific intent" and allege "affirmative conduct" such as funding clinical studies or employing a sales force. (Def. Memo. at 12). However, $HN8$ "specific intent" in the induced infringement context requires that a defendant intend specifically to encourage another's infringement, as opposed to merely knowing "of the acts alleged to constitute inducement." Manville Sales, 917 F.2d at 553. And, under the notice pleading standard provided in Rule 8 of the Federal Rules of Civil Procedures, the plaintiffs are not, at this stage in the litigation, required to plead with particularity specific acts of inducement and encouragement of third parties. See Takeda Chemical Industries, Ltd. v. Watson Pharmaceuticals, Inc., 329 F. Supp. 2d 394, 401 (S.D.N.Y. 2004) (holding that plaintiff stated traditional claim for induced infringement where it alleged existence of patent and claimed that defendant "[had] taken and [would] take acts to induce infringement of those patents"). Thus, the proposed amendments are not barred on the grounds of futility.

Conclusion **[*14]**

For the reasons set forth above, Novartis' motion to amend is granted.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York

April 25, 2005

---

View: **Full** | Custom        ◁ **1** of 1 ▷    [FAST Print]    Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | *Shepardize®* | TOA

✚ **In re Rivastigmine Patent Litig., 2005 U.S. Dist. LEXIS 7167** (Copy w/ Cite)        Pages:    **8**

Service: **Get by LEXSEE®**
Citation: **2005 u.s. dist. LEXIS 7167**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:35 PM EST

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟧Q - Questioned: Validity questioned by citing refs
🔺 - Caution: Possible negative treatment
✚ - Positive treatment is indicated
🔵A - Citing Refs. With Analysis Available
🔵I - Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.


About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 14727    Page 1 of 4

Case 1:06-cv-00041-JJF    Document 57-5    Filed 03/08/2006    Page 1 of 4

**FOCUS™** Terms _____    Search Within  All Documents    ▭ **Go** →

View: **Full** | Custom    ◁◻◻◻ **1** of 1 ◻◻◻▷    **FAST Print**  Print | [

More Like This | More Like Selected Text | *Shepardize*® | TOA

**Intel Corp. v. Hyundai Elecs. America, Inc., 1987 U.S. Dist. LEXIS 14727** (Copy w/ Cite

Service:  **Get by LEXSEE®**
Citation:  **1987 u.s. dist. LEXIS 14727**

*1987 U.S. Dist. LEXIS 14727, \**

Intel Corporation, Plaintiff, v. Hyundai Electronics America, Inc.; Hyundai Electronics
Industries Co., Ltd.; Amtel Corp.; International CMOS Technology, Inc.; Cypress Electronics,
Inc.; All-American Semiconductor, Inc.; Pacesetter Electronics, Inc.; and George Perlegos;
Defendants

No. C 87-20534 RPA

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1987 U.S. Dist. LEXIS 14727

November 23, 1987, Decided and Filed

### CASE SUMMARY

**PROCEDURAL POSTURE:** One of the defendant corporations sued by plaintiff patent
holder for patent infringement moved for a more definite statement.

**OVERVIEW:** After the patent holder sued the corporations for patent infringement, one of
the corporations moved for a more definite statement. The court denied the motion. The
motion sought to compel the patent holder to specify which of the holder's nine patents
the corporation had infringed, which of the corporation's products had infringed on the
holder's patent, which infringing products the corporation allegedly encouraged and aided
third parties in using or selling, and under which patents the corporation had allegedly
induced infringement and contributed to infringement. The court, in rejecting the motion,
noted that motions for more definite statements were disfavored, and were to be
permitted only if the responding party could not frame an answer to a pleading due to the
pleading's vagueness. In the parties' case, the detail the corporation desired could be
garnered during discovery. It was not a matter for the pleadings.

**OUTCOME:** The corporation's motion for a more definite statement in the patent holder's
infringment action was denied. If the corporation needed more specificity, it could rely on
discovery. A more definite statement was not needed, however, because the complaint
was not unduly vague.

**CORE TERMS:** patent, infringement, infringed, infringing, definite, above-identified,
discovery, vague, answered, selling, induced, responsive pleading, third parties, patent case,
contributorily, infringe, actively, frame

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 14727    Page 2 of 4

Case 1:06-cv-00041-JJF    Document 57-5    Filed 03/08/2006    Page 2 of 4

Patent Law > Infringement Actions > Corporate & Government Infringers

**HN1** Fed. R. Civ. P. 12(e) explains that if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form

**HN2** Motions for a more definite statement are not viewed with favor and should be granted only if the allegations contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it. More Like This Headnote

**OPINIONBY: [*1]**

AGUILAR

**OPINION:** ORDER DENYING DEFENDANT INTERNATIONAL CMOS TECHNOLOGY, INC.'S MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff Intel has filed suit against eight different defendants, alleging infringement of nine different patents. All the defendants except International CMOS Technology, Inc. ("ICT") have answered the complaint. Instead of answering, ICT has moved for a more definite statement under Federal Rule of Civil Procedure 12(e). Specifically, ICT requests that Intel state (1) which of the nine patents ICT allegedly has infringed, (2) which of ICT's products allegedly infringe Intel's patents, (3) which "infringing products" ICT allegedly encouraged and aided third parties in using or selling, and (4) under which patents ICT has allegedly induced infringement and contributed to infringement.

**HN1** Rule 12(e) explains that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement . . . ." ICT argues that since there are numerous defendants and numerous patents, Intel should state which defendants are alleged to have infringed which patents. **[*2]** In support of its position, ICT cites three cases: Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (E.D. Wis. 1975) (antitrust case requiring the plaintiff to specify which parties are connected with the acts complained of, rather than simply stating "plaintiffs" or "defendants"); J. D. Ferry Co., Inc. v. McBeth Engineering Corp., 11 F.R.D. 75, 76 (M.D. Pa. 1951) (granted a Rule 12(e) motion because "[t]he general practice in patent infringement suits has been to require the plaintiff to state what claims of a patent he alleges to have been infringed"); Coyne & Delany Co. v. G. W. Onthank Co., 10 F.R.D. 435, 436 (S.D. Iowa 1950) (case involving eight patents in which the court granted a Rule 12(e) motion because the complaint "fail fed] to clarify which of the claims plaintiffs contend have been infringed" such that defendants could not respond). ICT has not cited a recent case in support of its position and the Court has not found one.

On the other hand, Intel argues that its complaint is adequate, that its complaint meets the notice requirements of Federal Rule of Civil Procedure 8, that the other defendants have answered, and that no more specificity **[*3]** is required. In support of its position, Intel cites the following cases: Mixing Equipment Co. v. Innova-Tech, Inc., 228 U.S.P.Q. 221, 222 (E.D. Pa. 1985) (a claim that is unclear to the extent that it may involve either a patent controversy or unfair competition is not so vague that it cannot be answered); Famolare, Inc. v. Edison Brothers Stores, Inc., 525 F. Supp. 940, 949, 211 U.S.P.Q. 562, 570 (E.D. Cal. 1981) (design patent case holding that "where the information sought by the moving party is available and/or properly sought through discovery the [Rule 12(e)] motion should be

Get a Document - by Citation - 1987 U.S. Dist. LEXIS 14727          Page 3 of 4

Case 1:06-cv-00041-JJF     Document 57-5     Filed 03/08/2006     Page 3 of 4

denied"); Etablissements Neyrpic v. Elmer C. Gardner, Inc., 175 F. Supp. 355, 358 (S.D. Tex. 1959) (patent case in which a Rule 12(e) motion was denied because the requested information was not necessary to respond to the pleading and discovery was available to disclose the information).

The Court recognizes that *HN2*"[m]otions for a more definite statement are not viewed with favor and should be granted only if the allegations contained in the complaint are so vague that the defendant cannot reasonably be expected to frame a response to it." Wilson v. United States, 585 F. Supp. 202, 205 (M.D. **[\*4]** Pa. 1984) (citations omitted); see also United States v. Allied Chemical Corp., ., 587 F. Supp. 1205, 1209 (N.D. Cal. 1984). Intel's complaint is not so vague that ICT cannot respond. n1 Intel has the right to allege that all the defendants, including ICT, are infringing all nine patents. As a result, ICT will have to address the allegations of infringement as to each patent. If ICT is not infringing the patents, it can simply deny the allegations. If ICT wishes to narrow the claims against it, ICT may file a motion to dismiss or a motion for summary judgment.

n1 The relevant paragraphs of the complaint read:

21. Defendants have been and still are infringing the above-identified patents under 35 U.S.C. § 271(a) by making, using, or selling semiconductor memory products, specifically Erasable Programmable Read Only Memories (EPROMs), and products that incorporate EPROMs, that use or embody the patented inventions.

22. Defendants have actively induced infringement of and contributorily infringed the above-identified patents under 35 U.S.C. § 271(b) and (c) by encouraging and aiding third parties in using or selling infringing products. Defendants Atmel and ICT have also actively induced infringement of and contributorily infringed the above-identified patents by licensing and/or providing designs and technical assistance to enable Hyundai Electronics to infringe the above-identified patents. **[\*5]**

The cases cited by ICT support a different conclusion. However, those cases are old and not consistent with the recent trend set forth in the cases cited by Intel, namely, that specific facts and allegations are to be disclosed in discovery, not in the pleadings. As explained in Mixing Equipment, 228 U.S.P.Q. at 222, "if the defendant wishes to gain more specific information, the tools of discovery are available to it." Therefore, the Court DENIES defendant ICT's motion for a more definite statement.

IT IS SO ORDERED

DATED: November 23, 1987

View: **Full** | Custom          ◁◁ **1** of 1 ▷▷     **FAST Print**   Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | *Sheperdize®* | TOA
**Intel Corp. v. Hyundai Elecs. America, Inc., 1987 U.S. Dist. LEXIS 14727** (Copy w/ Cite)   Pages:   **4**

Service: **Get by LEXSEE®**
Citation: **1987 u.s. dist. LEXIS 14727**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:42 PM EST

About LexisNexis  |  Terms & Conditions

Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

*Westlaw.*

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois.
JOHNSON PRODUCTS CO., INC. Plaintiff,
v.
PRO-LINE CORPORATION, Defendant.
**No. 94 C 3555.**

Oct. 5, 1998.

*MEMORANDUM OPINION AND ORDER*

PALLMEYER, Magistrate J.

**\*1** Plaintiff Johnson Products Company ("Johnson Products") filed this patent infringement action against Defendant Pro-Line Corporation ("Pro-Line") on June 8, 1994. Johnson Products owns the two patents at issue in this lawsuit: U.S. Patent No. 4,175,572 (" '572 patent") and U.S. Patent No. 5,138,822 (" '822 patent"). Both patents relate to hair relaxers intended primarily for African-American hair care. Johnson Products claims that the chemical formulations of two hair relaxer kits developed and sold by Pro-Line, namely "Soft & Beautiful" and "Just for Me," both infringe the '572 and '822 patents. On July 29, 1994, Pro-Line filed an answer and counterclaim, seeking declaratory judgment of invalidity, unenforceability, and non-infringement of the patents. This case is before the court on consent of the parties.

Pro-Line now seeks summary judgment in its favor, arguing, in four separate motions, that Johnson Products' patents are invalid or alternatively, that Pro-Line has not infringed them. Resolution of these motions depends, in large part, on construction of the language of the claims in these patents based on the evidence heard by this court in a *Markman* hearing on March 17 and 18, 1998. *See Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). For the reasons discussed below, the court concludes that Pro-Line has not demonstrated the absence of disputed factual issues. Accordingly, all four motions are denied.

*FACTUAL BACKGROUND*
A. Ethnic Consumer Market

Johnson Products [FN1] and Pro-Line [FN2] are competitors in the business of providing hair care and skin care products designed for the specialized needs of African-Americans, a business known as the ethnic consumer market. (Complaint ¶ ¶ 6-7.) Johnson Products formulates, manufactures, advertises, markets, and sells hair care and skin care products, cosmetics, and related goods intended for African-Americans. (Pro-Line's 12(M) Statement of Non-Infringement of the '572 Patent (hereinafter "Pro-Line's 12(M) of '572 Non-Infringement") ¶ 6.) Pro-Line is similarly involved in manufacturing and marketing hair care products for African-Americans. (*Id.* ¶ 7.)

> FN1. Johnson Products is a Florida corporation having its principal place of business at 8522 South Lafayette Avenue, Chicago, Illinois 60620. (Complaint ¶ 1.)

> FN2. Pro-Line is a Texas corporation having its principal place of business in Dallas, Texas 75212. (Answer ¶ 3.)

One of the most popular items on the ethnic consumer market is the hair relaxer or hair straightener, which relaxes and straightens curly or kinky hair. (Johnson Products' Statement of Additional Facts of Non-Infringement of the '572 patent (hereinafter "Johnson Products' 12(N)(3)(b) of '572 Non-Infringement") ¶ 3.) Like many other industries, the ethnic hair care market has made marked developments and advancements over the past century. An early version of hair relaxing involved use of a hot metal comb that was heated over a stove and combed through the hair to straighten it. (*Id.* ¶ 4.) The heat was so intense that users applied a petroleum jelly, like Vaseline, to their scalps to prevent burning. (*Id.*)

In 1958, Johnson Products offered the first chemical hair relaxer. (*Id.* ¶ 4.) The product, called "Ultra Sheen," contained lye or sodium hydroxide. It was used by hair care professionals who would first apply petroleum jelly to the customer's scalp to prevent burning and then apply the lye-based relaxer.

**\*2** The next step was development of a relaxer with

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

"no base," meaning that the petroleum jelly was built into the relaxer formula. In 1971, that type of "no-base" lye or sodium hydroxide hair relaxer became available on the retail market, allowing the general public to purchase relaxer kits directly from stores rather than relying solely on hairdressers for this service. ('572 patent, col. 1, lns. 35-38.) Unfortunately, the lye or sodium hydroxide contained in the relaxers left the hair brittle and dry. ('572 patent, col. 1, lns. 48-50.) Demand arose for a hair product that would protect and condition the hair during the straightening process ('572 patent, col. 1, lns. 63-68)-a difficult task because sodium hydroxide inactivated the chemical properties of all known conditioners. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 7.) The challenge for the industry was to find a conditioner that could be mixed with sodium hydroxide while still maintaining its conditioning and protective features.

 B. Johnson Products' '572 Patent and '822 Patent

 Such a product was developed in 1977 by two researchers at Johnson Products, who filed an application for what became the '572 patent. In this patent, Johnson Products claimed a conditioner that conditioned the hair and protected the scalp even when used with a sodium hydroxide relaxing agent. (Id.) Johnson Products refers to the active ingredient in this conditioner as a "quaternary polymer," polydiallyldimethyl-ammonium chloride, known as DMDAAC. (Id.) In its motions for summary judgment of invalidity and non-infringement of the '572 patent, Pro-Line recognizes that the '572 patent requires a "quaternary polymer," but insists that the polymer called out by the patent is not one presently recognized as DMDAAC. (See Pro-Line's Reply Brief to Johnson Products' Brief in Response to Pro-Line's Motion for Summary Judgment on Non-Infringement of the '572 patent (hereinafter "Pro-Line's '572 Non-Infringement Reply"), at 3; Pro-Line's Summary Judgment Motion for Invalidity of the '572 Patent (hereinafter "Pro-Line's '572 Invalidity Motion"), at 4). As will be discussed below, the issue of whether the patent did, in fact, cover the composition called DMDAAC is probably the most disputed factual contention in this case.

 The '572 patent explains that the "hair conditioning composition" under the patent could be applied "prior to the application of the relaxer, ... premixed with the relaxer and applied at the same time, or ... applied after application of the relaxer to the hair." ('572 patent, col. 3, line 65-col. 4, line 1.) The '572 patent contains three independent claims: claims 1, 9, and

10. Claims 1 and 9 address different versions of the hair conditioner combination while claim 10 goes to a combination of a hair conditioner and a straightening composition. Claim 1 of the '572 patent reads:

> A hair conditioning composition for use under highly alkaline conditions comprising an aqueous dispersion containing from about 1 to about 20 weight percent mineral oil, from about 1 to about 20 weight percent a fatty alcohol having 12 to 18 carbon atoms, from about 1 to about 15 weight percent of a non-ionic emulsifier, and from about 0.05 to about 20 weight percent of a quaternary polymer having recurring units of the formula:

**\*3** [graphic depiction not included.]

 Claim 9 reads:

> A hair conditioner composition for use under highly alkaline conditions comprising an aqueous dispersion containing about 5 weight percent of mineral oil, about 10 weight percent of cetyl alcohol, about 7 weight percent of Emulsifying Wax N.F., and about 4 weight percent of polydiallyldimethylammonium chloride.

Finally, claim 10 reads:

> A composition for waving or straightening hair comprising an aqueous dispersion containing from about 1 to about 20 weight percent of mineral oil, from about 1 to about 20 weight percent of a fatty alcohol having 12 to 18 carbon atoms, from about 1 to about 15 weight percent of a non-ionic emulsifier, and from about 0.05 to about 20 weight percent of a quaternary polymer having recurring units of the formula:
>
> [graphic depiction not included.]
> From about 10 to about 30 weight percent of petrolatum, from about 1 to about 10 weight percent of a normal liquid polyhydroxycompound, and from about 1 to about 3 weight percent of a watersoluble alkaline caustic material, the composition having a pH between 12 and 13.

 On November 27, 1979, the U.S. Patent & Trademark Office granted the '572 patent. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 10.) Shortly after the grant of the '572 patent, Johnson Products introduced two new products containing the conditioning composition with the relaxer creme, "Ultra Sheen Precise" and "General Treatment." (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 25.)

 The next area of development in the ethnic hair care industry was creating a product that would texturize and strengthen hair after the straightening process. Johnson Products filed its application for what became the '822 patent on October 22, 1991 as a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                            Page 3
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

continuation of a prior Johnson Products patent, U.S. Patent No. 5,060, 860 (" '860 patent"), which also related to hair relaxers. The '822 patent was directed to texturing and strengthening compositions for use in hair before or after using a relaxer like sodium hydroxide or calcium hydroxide. ('822 patent, col. 6, Ins. 4-15.) The patent contains two independent claims: claims 1 and 12. Claim 1 reads:

An aqueous hair texturing and strengthening composition for application to hair about to undergo a highly alkaline hair straightening procedure comprising an aqueous nonacidic cosmetic vehicle having dispersed therein about 0.1 to about 8 weight percent on a total composition weight basis of at least one water-dispersible quaternary nitrogen-containing compound having at least one alkyl group directly or indirectly bonded to a quaternary nitrogen group, each said alkyl group containing about 3 to about 22 carbon atoms, each said compound being selected from the group consisting of (a) non-proteinaceous, non-polymeric quaternary nitrogen containing compounds which are in the salt form and which contain said alkyl group and (b) hydrolyzed proteins which are in the salt form wherein at least one amino group therein is quaternized to include said alkyl group, each said compound being characterized by having a positive charge and being stable when in an aqueous medium at a pH of at least about 6.1.

**\*4** Claim 12 reads:

A method for straightening hair comprising the steps of:

(a) first applying to the hair a composition of claim 1;

(b) then applying to the resulting hair a highly alkaline hair straightener for a time sufficient to at least partially straighten said hair;

(c) rinsing substantially all of said straightener from said so straightened hair; and

(d) washing said so rinsed hair with a neutralizing shampoo having a neutral to acidic pH.

The '822 patent was granted on September 22, 1992. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 11.)

C. Pro-Line's Hair Relaxer Kits

In 1984 or 1985, Defendant Pro-Line developed its original "Soft & Beautiful" hair relaxer kit, which is aimed at African-American women consumers. (Pro-Line 12(M) of '572 Non-Infringement ¶ 8.) Pro-Line also sells a hair relaxer kit called "Just for Me," which is targeted at children. (Johnson Products'

12(N)(3)(b) of '572 Non-Infringement ¶ 11.)

As part of an effort to respond to competition in the marketplace, Pro-Line, acting through its CEO and founder, Comer Cottrell, hired Tehsel Dhaliwal to head its research and development department in November 1992. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 12.) Dhaliwal had been working in the African-American hair care industry for approximately twenty-six years, fifteen of those years as an employee of Johnson Products. (Pro-Line's 12(M) of '572 Non-Infringement ¶ 10; Dhaliwal resume, Ex. 7 to Appendix to Johnson Products' Brief in Response to Pro-Line's Motions for Summary Judgment (hereinafter "Johnson Products' Response").) While at Johnson Products, he became familiar with the chemical formulations in the '572 patent. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 13; Dhaliwal Dep., at 124, Ex. 6 to Johnson Products' Response.)

At Pro-Line, Dhaliwal's work was directed at changing the process, improving the performance, and reformulating the "Just for Me" products. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 12.) Dhaliwal succeeded in developing new formulas; by April 1993, five months after beginning work at Pro-Line, Dhaliwal signed off on final formulas for the new relaxer cremes and the pre-relaxer treatment for "Soft & Beautiful" and "Just for Me." (Id. ¶ 17; Dhaliwal Dep. at 62-63.) Significantly, Pro-Line has little documentation concerning its development of the new formulas. (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 16.) In fact, Karen O'Neal, current head of Research & Development at Pro-Line, testified that she did not know how Dhaliwal came up with the formulas. (O'Neal Dep., at 152-53, Ex. 12 to Johnson Products' Response.)

After the reformulations, Pro-Line renamed the "Soft & Beautiful" product "New Advanced System Soft & Beautiful." (Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 18.) The name of "Just for Me" remained the same. (Id.) Each kit included:

**\*5** (1) Pre-Relaxer Treatment, designed to "prevent overprocessing, repair split ends and strengthen damaged hair";

(2) No-Lye Conditioning Relaxer Creme, designed to strengthen hair;

(3) Liquid Activator, designed to generate or produce the straightening agent in the Relaxer Creme;

(4) Neutralizing & Decalcifying Shampoo, designed to "clean and condition" the hair;

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                  Page 4
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

(5) Leave-In Conditioner, designed to "improve the overall health of the hair with conditioners that contain vitamins A & E";

(6) Hair Moisturizing Complex, designed to "remove excess residue resulting in cleaner, healthier softer hair."

(*Id.;* "Soft & Beautiful" Label, Ex. 13 to Johnson Products' Response; "Just for Me" Label, Ex. 14 to Johnson Products' Response.) The two products in the hair relaxer kits most relevant to Johnson Products' charges of patent infringement are the Pre-Relaxer Treatment and the Relaxer Creme.

Dhaliwal's reformulations of "Soft & Beautiful" and "Just for Me" entailed adding Polyquaternium-39, a quaternary polymer, to the non-alkaline pretreatment components of the hair relaxer kits. (Pro-Line's 12(M) of '572 Non-Infringement ¶ 18.) Dhaliwal also added Polyquaternium-39 with nonoxynol-10-carboxylic acid to the calcium hydroxide relaxer composition of the "Soft & Beautiful" product and Polyquaternium-39 or Polyquaternium-22 with nonoxynol-10- carboxylic acid to the calcium hydroxide relaxer component of the "Just for Me" product. (*Id.*) He found the resulting product prevented the dull appearance normally left on relaxed hair when using the mild relaxer used in Pro-Line's relaxer, calcium hydroxide. (*Id.*)

The instructions provided in the "Soft & Beautiful" hair relaxer kit [FN3] outline the use of the different products in the following way:

> FN3. The instructions for the "Just for Me" kit are on cassette tape and have not been submitted by the parties as part of the record. The court assumes that the same instructions apply for the two kits.

first, the consumer should apply the Pre-Relaxer Treatment over the hair; second, apply the mixture of No-Lye Relaxer Creme and the Liquid Activator to the hair and comb; third, smooth the hair with the back of the comb; fourth, rinse the hair with water; fifth, apply the Neutralizing and Decalcifying Shampoo to the hair and rinse; sixth, apply the Hair Moisturizing Complex to the hair and scalp, leave on 4-5 minutes, then rinse; and seventh, spray on the leave-in conditioner.

(Johnson Products' 12(N)(3)(b) of '572 Non-Infringement ¶ 21.)

Pro-Line started manufacturing and selling its "New Advanced System Soft & Beautiful" and "Just for Me" kits in November 1993. (*Id.* ¶ 23.) In February

1994, Thomas Polke, Chief Financial Officer of Johnson Products, called Comer Cottrell and warned him that, in Johnson Products' view, Pro-Line's products infringed the '572 and '822 patents. (*Id.*) Unable to resolve the dispute informally, Johnson Products filed this suit on June 8, 1994.

*DISCUSSION*

A. Claim Construction

Before addressing the summary judgment motions, the court turns to the scope of the claims in the two patents. Claim construction is a pivotal element in analysis of patent cases because "to decide what the claims mean is nearly always to decide the case." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 989 (Fed.Cir.1995) (en banc) (Mayer, J., concurring), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

**\*6** A patent is a grant of rights that permits the patentee to exclude others from making, using, or selling the invention as claimed. 35 U.S.C. § 154. Accordingly, a patent must describe the exact scope of an invention to define the limits of the patentee's rights and "apprise the public of what is still open to them." *Markman v. Westview Instruments, Inc.,* 517 U.S. 370, 373, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996) (quoting *McClain v. Ortmayer,* 141 U.S. 419, 424, 12 S.Ct. 76, 35 L.Ed. 800 (1891)). A patent is composed of two distinct elements. The first contains a specification, describing the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art ... to make and use the same." 35 U.S.C. § 112. The second consists of "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." Id.

In *Markman,* the Supreme Court held that the proper construction or interpretation of an asserted claim is strictly a question of law for the court. 517 U.S. at 372. A patent covers the invention that the court decides that it describes and claims. *Id.* In determining the proper construction of a claim, the court may consult both intrinsic and extrinsic evidence. *Vitronic Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed.Cir.1996). The proper starting point is always the "words or claims themselves, both asserted and unasserted, to define the scope of the patented invention." *Id.* at 1582. The court may consider extrinsic evidence when the intrinsic evidence fails to "unambiguously describe the scope of the patented invention." *Id.* at 1584. In any case, the court must construe the words in a claim "as one

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 5
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

of skill in the art at the time of invention would understand them." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1555 (Fed.Cir.1997).

Accordingly, before considering the parties' arguments concerning non-infringement and invalidity of the two patents, the court must first decide disputes concerning the legal construction of the language of the claims in these patents. To do so, the court heard evidence in a *Markman* hearing on March 17 and 18, 1998, discussed below. The parties have identified three disputed issues with respect to the '572 patent and two disputes with respect to the '822 patent.

'572 Patent

1. Does "hair conditioning composition" refer to any part of the hair relaxer system that conditions the hair, or does it refer only to a separately bottled conditioner?

2. Would a chemist of ordinary skill in the art in 1977 have understood "recurring units of the formula" to be a graphic depiction of polymerized dimethyldiallyl ammonium chloride (DMDAAC)?

3. Does the ordinary meaning of "quaternary polymer" apply, or should the specification be read into the claim?

'822 Patent

1. Is the meaning of "being stable when in an aqueous medium at a pH of at least about 6.1" limited by the prosecution history of the '860 patent?

**\*7** 2. Is the patent limited to compositions that simultaneously texturize and strengthen alkaline relaxed hair at a pH of 8 to 11, or does it also cover compositions outside that pH range?

1. '572 Patent

a. "Hair Conditioning Composition"

Claim 1 of the '572 patent covers a "hair conditioning composition for use under highly alkaline conditions comprising an aqueous dispersion." The parties first dispute whether "hair conditioning composition" refers only to a separately bottled conditioner, as argued by Pro-Line, or any part of the hair relaxer system, as asserted by Johnson Products.

According to the specification of the '572 patent, it is designed to cover hair conditioning compositions "premixed with the relaxer and applied at the same time" and also those applied "prior to the application of the relaxer" and "after application of the relaxer to the hair." In other words, the plain language of the patent itself provides for the formula to be used during any conditioning process of the hair relaxer system. Plaintiff's expert, Dr. Wolfram, testified that one of ordinary skill in the art would "definitely not be inclined to accept" that the hair conditioning composition is "limited to those situations only where there's a precondition rather than when [it is] mixed in with a relaxer." (Transcript of March 17-18, 1998 hearing (hereinafter "Tr."), at 22-23). He continued that the examples in the '572 patent would indicate to one of ordinary skill in the art that "the hair conditioning composition can be used in any step of the relaxation process." (*Id.* at 24.) Dr. Lochhead, Pro-Line's expert, did not present any contrary testimony.

Based on this intrinsic and extrinsic evidence, the court concludes that the expression "hair conditioning composition" in claim 1 of the '572 patent refers to any part of the relaxer kit that conditions hair and is not limited to a separate conditioner.

b. "Recurring Units of the Formula"

Claim 1 of the '572 patent also covers "from about 0.05 to about 20 weight percent of a quaternary polymer having recurring units of the formula." The parties dispute what this formula meant to a chemist of ordinary skill in the art at the time of the invention in 1977. The claims in the 1977 patent clearly depict polymerized dimethyldiallyl ammonium chloride (DMDAAC) as a chemical compound featuring a six-member carbon ring. Current understanding of the structure of the DMDAAC molecule is that it is actually a five-member ring. [FN4]

FN4. Comparison of the graphic depositions readily demonstrates that the basic chemical composition of DMDAAC is the same regardless of whether it is viewed as a six-member or five-member ring. As recognized by the court, the number of molecules in both depictions is exactly the same; only the graphic portrayal of the molecular structure changes. In essence, the difference is one of form rather than substance. *See* figure below:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
(Cite as: 1998 WL 699024 (N.D.Ill.))

This revised understanding of the structure of the DMDAAC molecule makes no difference to the patent claim, however, according to Johnson Products. Johnson Products argues that a chemist in 1977 would have understood the formula to be a graphic depiction of DMDAAC. (Johnson Products' Post-*Markman* Hearing Brief (hereinafter "Johnson Products' *Markman* Brief"), at 3). Conversely, Pro-Line maintains that the court should read these claims with the requirement of a six-member ring, as found in the '572 patent. (Pro-Line's Post-*Markman* Hearing Brief (hereinafter "Pro-Line's *Markman* Brief"), at 3.) If the patent requires a six-member ring, Pro-Line argues that: (1) the '572 patent would be invalid because DMDAAC with a six-member ring does not exist and (2) Pro-Line's products could not infringe the '572 patent because no such chemical composition exists. (Pro-Line's '572 Invalidity Motion, at 4; Pro-Line's '572 Non-Infringement Motion, at 3.)

**\*8** Johnson Products points out that the specification itself explicitly identifies polymerized DMDAAC as the preferred quaternary polymer to be used in the conditioning relaxer composition. [FN5] Further, the other claims of the patent demonstrate that the formula in claim 1 was meant to cover a polymerized DMDAAC. For instance, claim 5 refers to "the hair conditioner composition of claim 2 [which is dependent on claim 1] wherein said quaternary polymer is polydiallyldimethylammonium chloride." Claim 5 thus contemplates that the quaternary polymer was a homopolymer made up solely of polymerized DMDAAC units.

> FN5. The claim repeatedly lists DMDAAC in the specification. For example, it states that the "preferred quaternary polymers have recurring units of diallyldimethylammonium salts" (DMDAAC) and that the "preferred polymer is a polydimethyldiallylammonium salt, such as chloride" (DMDAAC). ('572 patent 1, col. 3, lns. 30-34.) Additionally, examples of a conditioning composition in the specification of the patent list either the DMDAAC homopolymer or the DMDAAC acrylamide copolymer as the quaternary polymers that are part of the hair conditioning composition. ('572 patent, example I, col. 4, line 20; example III, col. 4, line 52; example IV, col. 4, lns. 68-69.)

Johnson Products presented substantial extrinsic evidence that a chemist of ordinary skill in the art in 1977 would have understood the formula in claim 1 of the patent as depicting polymerized DMDAAC. First, its expert witness, Dr. Wolfram, testified that "[t]here was no doubt in anybody's mind that it was DMDAAC." (Tr. at 60.) Dr. Lochhead offered no contrary evidence. [FN6]

> FN6. The court sustained Johnson Product's objection to Dr. Lochhead's testimony on this issue at the hearing because of his earlier deposition testimony that he had no opinion on the views of one of ordinary skill in the art in 1977 with respect to the meaning of the formula in claim 1.

In addition, the vast majority of sources available to a chemist of ordinary skill in the art in 1977 portray polymerized DMDAAC as containing a six-member ring similar to the one in claim 1. The most important source was the CTFA Cosmetic Ingredient Dictionary. [FN7] The second edition of the CTFA Dictionary was published in 1977 and also represented the chemical containing polymerized DMDAAC as having a six-member ring. (*Id.* at 52-53.) It was not until 1991 that the CTFA Dictionary showed DMDAAC as having a five-member ring. (*Id.* at 309-10.) Besides the CTFA Dictionary, numerous other articles and patents referred to polymerized DMDAAC as having a six-member ring. [FN8]

> FN7. The significance of the CTFA Dictionary was noted by James Akerson, chairman of the Nomenclature Committee of the CTFA for 20 years, who called the dictionary the "primary document used by the entire cosmetic industry not only in this country, but now around the world as a source of information for cosmetic ingredients." (Tr. at 292.) According to Akerson, the CTFA Dictionary is the first and most important source for chemists in the cosmetic and hair industry when looking for information about the structure of chemicals such as DMDAAC. (*Id.* at 304-05.) Similarly, Dr. Wolfram called the CTFA Dictionary the "bible of the formulating chemist in the cosmetic field." (*Id.* at 14.)

> FN8. For example, two chemists with Calgon, the manufacturer of DMDAAC, both portrayed DMDAAC with a six-member ring. (Johnson Products' *Markman* Brief, at 6.) One of the chemists was the first to synthesize the DMDAAC polymer. (*Id.*)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
(Cite as: 1998 WL 699024 (N.D.Ill.))

Also, the first person to use DMDAAC in hair conditioning referred to DMDAAC as having a six-member ring in all three of his patents in 1975, 1976, and 1977. (*Id.*)

Pro-Line urges the court to construe the claims as a matter of law to require a six-member ring, thereby finding that the '572 patent does not refer to DMDAAC, which actually has a five-member ring. The only evidence in support of such a construction was a 1976 publication by J.E. Lancaster that stated that ' 'poly(diallyldimethylammonium) chloride consists predominantly, if not exclusively, of five-membered rings." (J.E. LANCASTER, ET AL., POLYMER LETTERS 549 (1976).) Because the Lancaster article was available in 1977 when the application for the patent was filed, Pro-Line argues that the claim should not be read to refer to DMDAAC because Johnson Products chose to depict DMDAAC with a six-member ring.

Pro-Line's argument is unpersuasive for three reasons. First, Lancaster's view, though now commonly accepted, was apparently neither well-known nor well-accepted in 1977. (Tr. at 110.) His article was published in a technical journal not typically read by chemists in the cosmetics industry. (*Id.* at 109.) Indeed, a number of post-1977 patents for cosmetic products continued to represent polymerized DMDAAC as containing a six-member ring. (*See, e.g.,* U.S. Patent No. 4,213,960 to Grollier from the L'Oreal cosmetics company, issued in 1980; U.S. Patent No. 4,369,037 to Matsunaga from Kao Soap, a Japanese cosmetic company, issued in 1983.)

**\*9** In addition, accepting Pro-Line's position would mean that the formula in claim 1 of the '572 patent has no meaning at all merely because scientists later discovered that polymerized DMDAAC has a five-member rather than six-member ring. As Johnson Products notes, Pro-Line's interpretation would require that an entire patent be rendered meaningless whenever the graphic depiction of the structure of one of the chemical ingredients in a patent changed even though the patented composition did not change at all. (Johnson Products' *Markman* Brief, at 6.) Requiring inventors to predict future discoveries in order to ensure a valid patent would be both unreasonable and illogical. Such an interpretation also conflicts with proper claim construction, which prohibits imposing a "post-filing date development" of a different understanding of the meaning of terms. *See W.L. Gore & Assoc., Inc. v. Garlock, Inc.,* 721 F.2d 1540, 1556-57 (Fed.Cir.1983).

Finally, the evidence supports the conclusion that a chemist of ordinary skill in the hair care industry in 1977 would have recognized that the formula in claim 1 of the '572 patent was polymerized DMDAAC, whether it was depicted with a six-member or five-member ring. Even if a chemist understood DMDAAC to have a five-member ring at that time, that chemist would look at the formula and almost certainly know what was being referred to in the formula. (Johnson Products' *Markman* Brief, at 6.)

In sum, the weight of the intrinsic and extrinsic evidence supports the finding that a chemist in 1977 would have understood the formula in claim 1 to be a graphic depiction of polymerized dimethyldiallyl ammonium chloride or DMDAAC.

c. "Quaternary Polymer"

A third dispute between the parties concerns the meaning of "quaternary polymer" as used in the '572 patent. Johnson Products argues for the ordinary meaning of the phrase and urges that the specification not be read into the claim. (Johnson Products *Markman* Brief, at 8.) In the alternative, Johnson Products claims that even if the specification could be read into the claim, "quaternary polymer" would still refer to chemicals such as Polyquaternium-22 and Polyquaternium-39. (*Id.*) On the other hand, Pro-Line asserts that the specification limits the definition of "quaternary polymer" such that the claims refer only to Polyquaternium-6 and Polyquaternium-7. (Pro-Line's *Markman* Brief, at 7.) Then, according to Pro-Line, its products, which contain Polyquaternium-22 and Polyquaternium-39, would not infringe the '572 patent. (Pro-Line's '572 Non-Infringement Motion, at 18.)

In construing claims, words are given their ordinary meaning unless a specific limitation is given in the specification. *See Transmatic, Inc. v. Fulton Indus., Inc.,* 53 F.3d 1270, 1277 (Fed.Cir.1995). This court simply finds no evidence of a limitation in the specification of the '572 patent. [FN9]

FN9. The specification of the '572 patent states:
The quaternary polymer can be either a homopolymer wherein all of the groups are substantially as shown above, or a copolymer wherein at least about 50% of the recurring groups are of the structure shown above. The remaining groups are moieties of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 8
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

vinyl monomers such as acrylamide. The preferred quaternary polymers have recurring units of diallyldimethylammonium salts.

('572 patent, col. 3, lns. 25-31.) The language that a quaternary polymer "can be either a homopolymer ... or a copolymer" does not appear to be a limitation. This seems especially likely in light of other instances in the patent where the inventors provided a definition for the term when it differed from its ordinary meaning.

Pro-Line offered the testimony of Dr. Du Hsuing, the patent's co-inventor, in which Dr. Hsuing stated that Polyquaternium-6 and Polyquaternium-7 would work in the invention. (Confidential Letter of Dr. Hsuing, Tab 9 to Pro-Line's *Markman* Exhibit 32.) Based on that testimony, Pro-Line claims that the inventor did not consider conditioners other than Polyquaternium-6 and Polyquaternium-7 as part of the invention. (Pro-Line's *Markman* Brief, at 7.) Dr. Hsuing's testimony, however, need not be interpreted as urged by Pro-Line. Dr. Hsuing did not testify that other conditioners were not covered by the patent; he only stated that Polyquaternium-6 and Polyquaternium-7 were both covered by the patent.

**\*10** Additionally, the claims of a patent are not "limited by preferred embodiments." *CVI/Beta Ventures v. Tura LP,* 112 F.3d 1146, 1158 (Fed.Cir.1997), *cert. denied,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). Moreover, "[t]hat claims are interpreted in light of the specification does not mean that everything expressed in the specification must be read into all the claims." *Raytheon Co. v. Roper Corp.,* 724 F.2d 951, 957 (Fed.Cir.1983). As such, the '572 patent is not necessarily limited to the particular quaternary polymers listed in the examples section of the patent.

In the alternative, Johnson Products argues that even if the specification is read into the claim, "quaternary polymer" would include chemicals such as Polyquaternium-22 and Polyquaternium-39 on the grounds that: (1) "copolymer" means a polymer with two or more monomers and (2) the measurement of "50% of the recurring groups" is based on weight.

Johnson Products presented substantial evidence that "copolymer" is commonly understood by chemists to mean two or more monomers. [FN10] Conversely, Pro-Line has not supported its position that "copolymer" is limited to just two monomers. Indeed, Pro-Line's own expert, Dr. Lochhead, testified

consistently with Johnson Products' claim that "copolymer" means two or more monomers. (Tr. at 280.) The court concludes that the word "copolymer" refers to a polymer containing two or more monomers and that "quaternary polymer" does include chemicals like Polyquaternium-22 and Polyquaternium-39.

FN10. Both Dr. Wolfram and Dr. Lochhead testified that this was the case. (Tr. at 131-33, 280.) Additionally, various reference materials affirmed Johnson Products' view, including the COMPENDIUM OF MACROMOLECULAR NOMENCLATURE ("copolymer" defined as a "polymer derived from more than one species of monomer" which includes "terpolymers," which are polymers derived from "three species of monomer"), the ENCYCLOPEDIA OF CHEMICAL TECHNOLOGY ("there are myriad ways in which two or more monomers can be bonded to form copolymers"), and STILLE, INTRODUCTION TO POLYMER CHEMISTRY (1962) ("polymers containing two or more structural units ... are copolymers").

Also at issue in the determination of whether the '572 patent covers Polyquaternium-22 and Polyquaternium-39 is the meaning of the phrase "a copolymer [with] ... at least about 50% of the recurring groups [ ] of the structure shown above." Johnson Products claims that the measurement of "50% of the recurring groups" is based on weight, while Pro-Line contends that it is based on mole fraction. (Johnson Products' *Markman* Brief, at 12.) Pro-Line argues that the specification must refer to "50% of the recurring groups" as based on weight and not mole fraction because otherwise, the example in the patent that describes a copolymer would not be included in the claim language. [FN11] This would be inconsistent with proper interpretation of claim language, which rarely finds correct an interpretation in which the preferred embodiment would not fall within the scope of the claim. *See Vitronics,* 90 F.3d at 1583. Pro-Line has failed to produce any counter evidence.

FN11. Example IV of the specification includes '‘diallyldimethylammonium chlorideacrylamide copolymer" as an ingredient in the "conditioning hair relaxer." ('572 patent, col. 4, lns. 55-69.) The only copolymer available at that time with those

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 9
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
(Cite as: 1998 WL 699024 (N.D.Ill.))

particular ingredients was a chemical that consisted of 50% DMDAAC and 50% acrylamide by weight. (Tr. at 139.) There was, however, no copolymer with those ingredients containing at least 50% by DMDAAC by mole fraction. (*Id.* at 140-44.) If the 50% was based on mole fraction rather than weight, as Pro-Line claims, Example IV would not be an embodiment of the claims of the '572 patent.

After evaluating the relevant evidence, the court finds that the ordinary meaning of "quaternary polymer" applies, as no limitation was made in the specification.

2. '822 Patent

a. "Being Stable When in an Aqueous Medium at a pH of at Least About 6.1"

The parties have identified two disputes concerning the language of the '822 patent. First, a disputed issue exists as to the meaning of the phrase "being stable when in an aqueous medium at a pH of at least about 6.1." Johnson Products argues that the language should be read literally to include any aqueous medium of a pH of 6.1 or more. (Johnson Products' *Markman* Brief, at 14.) Pro-Line claims that this phrase is limited by the prosecution history of the parent to the '822 patent, U.S. Patent 5,060,860 (" '860 patent"). (Pro-Line's *Markman* Brief, at 13.) Specifically, Pro-Line contends that claim 1 of the '822 patent that the aqueous medium would have a "pH of at least about 6.1" is unusable because claim 33 of the parent application was amended to limit the pH of the hair strengthening and texturing composition to the range of 8 to 11, thereby excluding Pro-Line's products from the patent's claims. (*Id.*)

**11** Pro-Line's argument confuses two independent facts. As noted by Johnson Products, whether the composition in the '860 patent has to be limited to a certain pH range is different from and independent of whether the composition in the '822 patent is "stable when in an aqueous medium at a pH of at least about 6.1." (Johnson Products' Pre-*Markman* Hearing Brief, at 16.) Moreover, the two claims that Pro-Line interprets-the rejected claim 33 of the parent application and the allowed claim 1 of the '822 patent-differ to such an extent that comparison is not appropriate. [FN12] In other words, the fact that one claim of the parent application was limited to a certain pH range does not impose such a limitation on

a different claim in the later application.

FN12. In revising the rejected claim 33 to become claim 1 of the '822 patent, Johnson Products specifically indicated that the composition of the latter claim was different:
Original composition Claim No. 33 has been amended and rewritten to recite compositions which compositionally differ from those appearing in the claims of co-pending parent patent application Serial No. 95,397 now identified as U.S. Pat. No. 5,060,860.
('822 File History, at Tr. 238, Ex. 4 to Johnson Products' *Markman* Hearing Exhibits.)

The court concludes that the plain language of the '822 patent is not restricted by the limitations of the '860 patent.

b. "Texturing and Strengthening Composition"

The final dispute concerning interpretation of the '822 patent arises from the reference in claim 1 to an "aqueous hair texturing and strengthening composition." Johnson Products contends that the language should be read literally so that the composition need not simultaneously texturize and strengthen and need not be limited to a particular pH range. (Johnson Products' *Markman* Brief, at 14.) Pro-Line argues that at a minimum, all of the claims in the '822 patent should be limited to exclude any compositions that do not both texturize and strengthen alkaline relaxed hair. (Pro-Line's *Markman* Brief, at 11.) Moreover, Pro-Line argues that the patent should be limited to require simultaneous strengthening and texturizing of hair at a pH of from 8 to 11. (*Id.*) Thus, the phrase would not include compositions at a pH of 6.1, and the patent would be invalid.

The phrase "aqueous hair texturing and strengthening" appears in the claim preamble. Pro-Line relies on the claim preamble as a claim limitation, arguing that the patent only covers compositions that texturize and strengthen at a pH of 8 to 11. (Pro-Line's *Markman* Brief, at 11.) Nothing in the preamble, however, limits the application of the phrase "aqueous hair texturing and strengthening composition" to any particular pH range. Furthermore, nothing in the specification or the claim language indicates that the claim covers only compositions substantially above a pH of 6.1. Pro-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 10
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

Line's additional support derives from its view that the '822 patent's inventor, Mr. Akhtar, intended the invention to simultaneously strengthen and texturize hair at a pH from 8 to 11. (Pro-Line's *Markman* Brief, at 12.) Pro-Line makes no attempt to explain the significance of that point beyond that single observation, and this court declines to draw any unwarranted references. Lastly, Pro-Line again points to the prosecution history of the '860 patent to argue for a limited pH range. As already determined, however, the relevant prosecution history of the '860 patent does not apply to the '572 patent.

**\*12** The plain language of the claim does appear to require the composition to texturize and strengthen. Unfortunately, neither party has offered any evidence that a composition at a pH of 6.1 either does or does not texturize and strengthen. For example, assuming arguendo that a composition at a pH of 6.1 could not possibly texturize and strengthen hair, that composition would almost certainly not be covered by the patent.

In light of the presented evidence, however, the court concludes that the plain meaning of the phrase imposes no limitations regarding the pH range.

For the reasons discussed above, this court finds that the claims for the '572 and '822 patents should be interpreted as follows:

1. "Hair conditioning composition" refers to any part of the hair relaxer system that conditions the hair, not only to a separately bottled conditioner.

2. A chemist of ordinary skill in the art in 1977 would have understood "recurring units of the formula" depicted in the patent to be a graphic depiction of the DMDAAC compound; that chemists in the cosmetic industry now know DMDAAC has a five-member ring structure does not alter this conclusion.

3. The ordinary meaning of "quaternary polymer" applies and includes chemicals such as Polyquaternium-22 and Polyquaternium-39, the ingredients in Pro-Line's products.

4. The prosecution history of the '860 patent does not operate to limit the meaning of the phrase "being stable when in an aqueous medium at a pH of at least about 6.1."

5. The '822 patent should be limited to include compositions that texturize and strengthen alkaline

relaxed hair, but not necessarily only those at a pH of 8 to 11.

B. Motions for Summary Judgment

Pro-Line has moved for summary judgment on the grounds of invalidity of the '572 patent, non-infringement of the '572 patent, invalidity of the '822 patent, and non-infringement of the '822 patent. The court addresses each motion separately, relying heavily on the claim construction set forth above.

1. Standard of Review

Summary judgment in a patent case, as in any other type of case, is appropriate when there are no genuine issues of facts and the moving party is entitled to judgment as a matter of law. *Monarch Knitting Mach. Corp. v. Sulzer Morat GMBH,* 139 F.3d 877, 880 (Fed.Cir.1998). To determine whether genuine issues of material fact exist, the court will look to pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *See General Mills, Inc. v. Hunt-Wesson, Inc.,* 103 F.3d 978, 980 (Fed.Cir.1997). All evidence and inferences are viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of demonstrating the absence of all genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985); *Monarch Knitting,* 139 F.3d at 880 (citation omitted). To do so, the moving party need not produce evidence demonstrating the absence of a genuine issue of material fact, but must show the absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325. Once the moving party supports the motion as provided by Fed. R. Civ. P. 56(c), the party opposing the motion must come forward with evidence directed to specific facts showing that there is a genuine issue for trial. *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1548 (Fed.Cir.1988), Fed. R. Civ. P. 56(e). Mere denials or conclusory statements are not sufficient. *Id.*

2. Non-Infringement of the '572 Patent

**\*13** Because patent infringement cases involve a fact-intensive inquiry, the Federal Circuit has cautioned that summary judgment on that issue must be approached with great care by the district court. *See, e.g., SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1116 (Fed.Cir.1985). Nonetheless,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 11
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

"[w]here the determination of infringement turns solely on the legal question of the proper construction of the claims, summary judgment is appropriate." *Mantech Envtl. Corp. v. Hudson Envtl. Servs.*, No. 98-1079, 1998 WL 469887, at *2 (Fed.Cir. Aug. 13, 1998).

Johnson Products alleges that Pro-Line infringes the '572 patent in four different ways:
    (1) direct infringement by manufacturing, selling, and offering for sale creme relaxers for the "Soft & Beautiful" and "Just for Me" relaxer kits that literally infringe the '572 patent;
    (2) direct infringement by manufacturing, selling, and offering for sale creme relaxers that infringe the '572 patent under the doctrine of equivalents;
    (3) inducement of infringement by consumers through instructions to mix the pretreatment conditioner and the creme relaxer; and
    (4) contributing to the infringement of the '572 patent by manufacturing different components of the relaxer kit that, when mixed on the consumers' heads, infringe.
(Johnson Products' Brief in Response to Pro-Line's Motions for Summary Judgment (hereinafter "Johnson Products' Response"), at 8.) The court addresses each argument in turn.

a. Literal Infringement

Analysis of a literal patent infringement claim involves two steps: (1) the proper construction of the asserted claim and (2) a determination as to whether the accused method or product infringes the asserted claim as properly construed. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed.Cir.1995) (en banc), *aff'd* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-82 (Fed.Cir.1996). Claim construction proceeds as a matter of law. *Markman*, 517 U.S. at 372. In contrast, the comparison of properly interpreted claims to the accused structure is a question of fact. *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1583 (Fed.Cir.1996). To infringe, the accused device must embody exactly each claim limitation or its equivalent. *Miles Labs., Inc. v. Shandon Inc.*, 997 F.2d 870, 876 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994).

Pro-Line claims that its "Soft & Beautiful" and "Just for Me" products do not literally infringe claim 1 of the '572 patent because the pre-relaxer treatment products lack the following elements: (1) about 1 to about 20 weight percent of mineral oil, (2) about 1 to

about 20 weight percent of a fatty alcohol, and (3) a quaternary polymer having a six-member piperidine recurring unit of the formula [pictured in claim 1]. [FN13] (Pro-Line's Summary Judgment Motion on Non-Infringement of the '572 Patent (hereinafter "Pro-Line's '572 Non-Infringement Motion"), at 9.) Pro-Line further argues that there is no direct infringement of claim 9 of the '572 patent because the two relaxer kits do not contain a 5 weight percent of mineral oil and a 10 weight percent of cetyl alcohol. [FN14] (*Id.* at 10.) Lastly, Pro-Line contends that its products cannot directly infringe claim 10 of the '572 patent because its products do not have a 0.05 to 20 weight percent of a quaternary polymer having recurring six-member piperidine rings of the formula. [FN15] (*Id.*) Instead, Pro-Line insists that both of the products contain polyampholyte terpolymer Polyquaternium-39 having recurring units of acrylamide, a five-member pyrrolidone ring, and acrylic acid-elements not found in the '572 patent. (*Id.* at 11.)

FN13. Pro-Line also contends that the issuance of a patent to Pro-Line on the accused products where the '572 patent was listed as prior art proves that Pro-Line's products do not infringe the '572 patent. (Pro-Line's '572 Non-Infringement Motion, at 18-19.) As the Federal Circuit has recognized, however, "[t]he grant of a separate patent does not automatically avoid infringement, either literal or by equivalency." *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1191 (Fed.Cir.1996). The fact of separate patentability is one relevant factor in the factual determination of whether the claims cover the accused product, *id. at 1192*, but the issuance of a patent to Pro-Line does not establish non-infringement of the '572 patent as a matter of law.

FN14. Johnson Products failed to address Pro-Line's summary judgment motion with respect to claim 9 of the '572 patent. The court, therefore, concludes there are no disputes of fact on that claim and that Pro-Line is entitled to summary judgment on that issue.

FN15. Johnson Products, however, does not appear to allege direct infringement of the '572 patent with respect to claim 10. Accordingly, the court's discussion of direct infringement is limited to claim 1 of the '572

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                Page 12
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

patent.

\*14 In its response brief, Johnson Products called Pro-Line's discussion of why its Pre-Relaxer Treatment standing alone does not infringe in the three ways "entirely irrelevant" because the Creme Relaxer kits as a whole infringe the '572 patent. (Johnson Products' Response, at 9.) Pro-Line insists that the Creme Relaxer kits also do not infringe because the two products lack a quaternary polymer having a six-member piperidine recurring unit of the formula. (Pro-Line's Reply Brief to Johnson Products' Brief in Response to Pro-Line's Motion for Summary Judgment on Non-Infringement of the '572 Patent (hereinafter "Pro-Line's '572 Non-Infringement Reply"), at 16.) This last argument, however, rests on Pro-Line's reading of claim 1 of the '572 patent as not including the quaternary polymers in "Soft & Beautiful" and "Just for Me," namely Polyquaternium-39 and Polyquaternium-22-a reading this court has rejected. To the contrary, as discussed above, this court concludes from the evidence presented at the *Markman* hearing that Polyquaternium-39 and Polyquaternium-22 are both quaternary polymers covered by the patent. Accordingly, Pro-Line's use of Polyquaternium-39 and Polyquaternium-22 do not defeat Johnson Products' infringement claim.

Johnson Products points out that Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits both contain about 1 to about 20 percent mineral oil, about 1 to about 20 percent fatty alcohol, about 1 to about 15 percent non-ionic emulsifier, and about 0.05 to 20 percent quaternary polymer. (Johnson Products' Response, at 10-16 .) As support, Johnson Products points to the ingredient labels for "Soft & Beautiful" and "Just for Me," which list mineral oil, fatty alcohol, non-ionic emulsifier, and quaternary polymers. ("Soft & Beautiful" and "Just for Me" Ingredient Labels, Exs. 13 & 14 to Johnson Products' Response.) In addition, Johnson Products alleges that the Ingredient Weighing Records  [FN12] for the Creme Relaxers used in the kits indicate that all of the disputed chemical ingredients are, in fact, found in both "Soft & Beautiful" and "Just for Me."  [FN13] (Ingredient Weighing Records, Exs. 15 & 16 to Johnson Products' Response.) Dr. Wolfram, Johnson Products' expert witness, also explained that, in his opinion, the Creme Relaxers for the "Soft & Beautiful" and "Just for Me" hair relaxer kits contain each element of claim 1 of the '572 patent. (Wolfram Aff. ¶  30, Ex. 1 to Johnson Products' Response.) Beyond challenging the status of Polyquaternium-22 and Polyquaternium-39 as quaternary polymers, Pro-

Line has not rebutted the evidence.

> FN12. Ingredient Weighing Records show the ingredient as well as the weight (in pounds) for each ingredient in the product, which can be converted into a weight percent. (Johnson Products' Response, at 12.)

> FN13. Specifically, the Ingredient Weighing Records show that mineral oil makes up 11.02% of the "Just for Me" Creme Relaxer and 10.8% of the "Soft & Beautiful" Creme Relaxer, fatty alcohol makes up 4% of the "Just for Me" Creme Relaxer and 5.28% of the "Soft & Beautiful" Creme Relaxer, and non-ionic emulsifier makes up 8% of the "Just for Me" Creme Relaxer and 7.85% of the "Soft & Beautiful" Creme Relaxer. Thus, all of the disputed ingredients in claim 1 of the '572 patent are found in Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits.

In this court's view, the evidence creates a dispute of material fact: whether Pro-Line's "Soft & Beautiful" and "Just for Me" hair relaxer kits contain the elements listed in claim 1 of the '572 patent. Accordingly, Pro-Line's motion for summary judgment of non-infringement of the '572 patent is denied.

  b. Doctrine of Equivalents

\*15 Under the doctrine of equivalents, even if an accused product does not directly infringe a patent claim, the product may nevertheless infringe if there is an "equivalence" between the product and the claimed elements. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17,21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). The essential inquiry is whether the accused product or process contain elements identical or equivalent to each claimed element of the patented invention. *Id.*

Pro-Line contends that its products do not infringe the '572 patent under the doctrine of equivalents on the basis that "Soft & Beautiful" and "Just for Me" do not contain the elements in claim 1 of the '572 patent-the same argument it made for summary judgment on the literal infringement claim. (Pro-Line's '572 Non-Infringement Motion, at 18.) As analyzed above, this court concludes there is a fact issue as to whether Pro-Line's products literally infringe Johnson Products' patents. The court thus declines to decide

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 13
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

whether infringement exists under the doctrine of equivalents.

c. Inducement of Infringement

In addition to its claims of literal infringement and infringement under the doctrine of equivalents, Johnson Products claims that Pro-Line is liable for having induced its customers to infringe, in violation of 35 U.S.C. § 271(b). Proof of such a claim requires a showing of (1) actual infringement by a third party and (2) that the inducer knew that direct infringement would occur. *Black & Decker, Inc. v. Catalina Lighting, Inc.,* 953 F.Supp. 134, 139 (E.D.Va.1997). In addition to the knowledge element, an inducement of infringement claim "requires that the defendant specifically intended that its sale or other challenged acts induce its customers to engage in the conduct that allegedly directly infringes." [FN14] *R2 Medical Syst., Inc. v. Katecho, Inc.,* 931 F.Supp. 1397, 1440 (N.D.Ill.1996) (citing *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1469 (Fed.Cir.1990)). Absent direct infringement by a third party, a defendant cannot be liable for induced infringement. *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 365 U.S. 336, 341, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961); *Universal Elec., Inc. v. Zenith Elec. Corp.,* 846 F.Supp. 641, 644 (N.D.Ill.1994).

> FN14. Neither party addressed the intent issue in their briefs. Because the court concludes for other reasons that Johnson Products' inducement of infringement claim fails, the court need not address the intent issue further.

According to Johnson Products, Pro-Line induces infringement of claims 1 and 10 of the '572 patent through its written instructions to the consumers of "Soft & Beautiful" and "Just for Me" to mix the Creme Relaxer with the Liquid Activator and then place the mixture on hair with the Pre-Relaxer Treatment. (Johnson Products' Response, at 25-26.) In other words, Johnson Products' inducement claim rests on its contention that when used as designed, the accused products literally infringe the '572 patent.

Generally speaking, the doctrines of actively inducing infringement and direct infringement are mutually exclusive when the actions are based on the same act. *See United States Fidelity & Guaranty Co. v. Star Tech., Inc.,* 935 F.Supp. 1110, 1115 (D.Or.1996); *Picker Int'l v. Varian Assoc., Inc.,* 661 F.Supp. 347, 350 (N.D.Ohio 1987). In explaining the rule, courts note that the act of encouraging

someone to purchase a product is necessarily subsumed by the actual sale of that product. *United States Fidelity,* 935 F.Supp. at 1115. The only case allowing for simultaneous actions for direct infringement and inducement of infringement involved a situation where the direct infringement and inducement of infringement claims were based on two time periods, namely sales before and after issuance of the patent. *See Procter & Gamble Co. v. Nabisco Brands, Inc.,* 604 F.Supp. 1485, 1490 (D.Del.1985).

**\*16** Relying on these principles, Pro-Line argues that Johnson Products may not assert simultaneously claims of direct and induced infringement. [FN15] In support, Pro-Line cites *Picker International,* where plaintiff alleged that defendant directly infringed its patent for a frosted glass x-ray tube by manufacturing, using, and selling the accused x-ray tubes and indirectly infringed the patent by inducing others to infringe by similar use and sales. 661 F.Supp. at 348. Noting that "[i]t is well settled that the doctrine of 'actively inducing infringement' ... is not available as a separate source of liability against one who is alleged to be direct infringer[,]" the court concluded that the theories were mutually exclusive. *Id.* at 351. Under the rationale of *Picker International,* Pro-Line urges that Johnson Products lacks standing to claim induced infringement because it also asserts a direct infringement claim. (Pro-Line's Motion of '572 Non-Infringement, at 19.) Johnson Products responds that *Picker International* is inapposite because Johnson Products bases its claim of direct infringement and its claim of inducement of infringement on two different acts: (1) direct infringement via making and selling the Creme Relaxer component of the relaxer kits and (2) inducement via instructing customers to mix the Pro-Relaxer Treatment, the Creme Relaxer, and the Liquid Activator. (Johnson Products' Response, at 26.) Johnson Products further adds that it is entitled to set forth alternative or hypothetical statements of a claim under Fed. R. Civ. P. 8(e)(2).

> FN15. This defense is available to Pro-Line only with respect to Johnson Products claims of inducement concerning claim 1 of the '572 patent; Johnson Products does not allege that Pro-Line infringed claim 10 of the '572 patent.

After careful consideration, this court finds Johnson Products' argument that its two claims are based on two different acts unpersuasive. Pro-Line's alleged inducement of its customers can only fairly be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 14
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

understood as part of Johnson Products' direct infringement claim against Pro-Line for manufacture and sale of the hair relaxer kits. As the courts recognize, manufacturers inevitably encourage their customers to use their products as instructed whenever they sell the product. *See United States Fidelity,* 935 F.Supp. at 1115. Nor would a manufacturer produce an item that was not intended ultimately for sale to customers. In short, the act of manufacturing and selling a product, on the one hand, and encouraging its use by customers, on the other, are really one and the same act. Accordingly, the rationale of *Picker International* precludes Johnson Products' claim of inducement of infringement with respect to claim 1.

Pro-Line's remaining argument for summary judgment on the induced infringement claim need not detain the court. Specifically, as before, Pro-Line claims that its hair relaxer kits do not infringe claim 1 of the '572 patent because they do not combine mineral oil, a fatty alcohol, and a quaternary polymer having a six-member piperidine recurring unit. (Pro-Line's Motion of '572 Non-Infringement, at 19.) Pro-Line also asserts that there is no infringement of claim 10 of the '572 patent because its products do not have a quaternary polymer containing a six-member piperidine recurring unit. (*Id.*)

**\*17** As discussed above, Johnson Products has identified a genuine issue of material fact as to whether the "Soft & Beautiful" and "Just for Me" hair relaxer kits contain every limitation in claim 1. As for claim 10 of the '572 patent, Pro-Line's sole basis for seeking summary judgment on the induced infringement claim consists of the declaration of Pro-Line's CEO and founder, Comer Cottrell, that no customer of Pro-Line's makes, uses, or sells a composition for straightening hair having a quaternary polymer containing a six-member piperidine recurring unit of the formula claimed. (*See* Pro-Line's Motion for '572 Non-Infringement, at 19.) Conversely, Johnson Products presented evidence that all eight limitations of claim 10 are found in the Creme Relaxers. (Johnson Products' Response, at 27-29.) This was based on the ingredients listed on the "Soft & Beautiful" and "Just for Me" labels, the Ingredient Weighing Records, and the expert testimony of Dr. Wolfram. (*Id.*) Johnson Products has raised a factual dispute over whether Pro-Line's product, when mixed together by the customer, infringe claim 10 in which the written instructions may induce infringement.

Because a genuine issue of material fact remains as

to whether Pro-Line's instructions to its customers induce infringement of claim 10 of the '572 patent, summary judgment is inappropriate as to claim 10. Further, *Picker International* does not estop Johnson Products' claim that Pro-Line induces infringement of claim 10 of the '572 patent because Johnson Products has not asserted a direct infringement claim regarding claim 1. As for claim 1 of the '572 patent, though a genuine issue of material fact exists as to Pro-Line's direct infringement of claim 1, the rationale of *Picker International* precludes a claim of inducement of infringement. Therefore, summary judgment is granted on inducement of infringement of claim 1 of the '572 element.

d. Contributory Infringement

Lastly, Johnson Products argues that Pro-Line is liable under the doctrine of contributory infringement.

35 U.S.C. § 271(c) provides in pertinent part:
Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in a patented process, constituting a material part of the invention, knowing the same to be made or especially adapted for use in an infringement of such patent, and not a staple article or commodity suitable for substantial noninfringing use, shall be liable as a contributory infringer.

To establish liability under this section, a plaintiff must show that defendant has sold a component of a patented device knowing that the component will be made or used for use in the infringement of a patent. *Mid-America Bldg. Prods. Corp. v. Richwood Bldg. Prods., Inc.,* 978 F.Supp. 708, 712 (E.D.Mich.1996). As with inducement of infringement, there must be a showing of direct infringement by a third party before a claim of contributory infringement can be made. *Aro,* 365 U.S. at 341; *Universal Electronics,* 846 F.Supp. at 644. The unauthorized use of a patented item, even by a consumer, constitutes a violation of the patent. *Universal Electronics,* 846 F.Supp. at 645. Nevertheless, if the accused product is a "staple article or commodity of commerce suitable for substantial noninfringing use," contributory infringement does not exist. 35 U.S.C. § 271(c). To determine whether a product is a staple of commerce, the court must look at the entire device and not just the part capable of practicing the claims of the patent at issue. *Universal Electronics,* 846 F.Supp. at 651.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 15
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

**\*18** Contributory infringement is a broad equitable doctrine that developed to deal with circumstances in which an alleged infringer sold a component that was not itself technically covered by the claims of a product or process patent, but had no other use except with the claimed product or process. *Hewlett-Packard, 909 F.2d at 1469*. The doctrine was intended to prevent sellers from escaping liability for direct infringement by selling all but one element of the infringing product. *Proctor & Gamble, 604 F.Supp. at 1489*. Contributory infringement thus covers activities that do not constitute direct infringement, but intentionally contribute to direct infringement. *Id.* (citation omitted).

*Procter & Gamble*, for example, involved a patent for a method of manufacturing ready-to-serve cookies that remain crispy on the outside and chewy on the inside for an extended shelf life. *Id.* at 1486. The plaintiff alleged that the defendant-manufacturer, knowing that issuance of a patent to plaintiff was imminent, flooded the market with infringing products before the patent issued. *Id.* Thousands of retailers thus directly infringed the patent, but the court found that action against the retailers was an impractical remedy. *Id.* Because defendant's conduct posed the "same risk of harm to the patentee as the cases applying the common law doctrine of contributory infringement," *id.,* the court recognized an equitable claim for contributory infringement.

Pro-Line contends that there can be no contributory infringement because there is no direct infringement; Pro-Line then repeats the same arguments it made with respect to the direct infringement claim, urging that Pro-Line's hair conditioners in its hair relaxer kits do not contain the necessary elements recited in Johnson Products' claims. (Pro-Line's Motion of '572 Non-Infringement, at 19-20.) As discussed above, however, this court recognizes genuine issues of material fact precluding summary judgment of Johnson Products' claim of direct, literal infringement of claim 1 of the '572 patent. Assuming, as Johnson Products maintains, that the direct infringement at issue here is by the customers, who use the patented invention on their hair by mixing the Pre-Relaxer Treatment with the Creme Relaxer (Johnson Products' Response, at 30, n. 11), Pro-Line is not entitled to summary judgment on the contributory infringement claim.

Nor is the court persuaded by Pro-Line's argument that its products are staples of commerce with substantial noninfringing uses. In particular, Pro-Line claims that Polyquaternium-39, which is used in the

conditioner and straightener of the "Soft & Beautiful" product, and Merquat-295, [FN16] which is found in the conditioner and straightener of the "Just for Me" product, have substantial noninfringing uses. (Pro-Line's '572 Non-Infringement Motion, at 20-21.)

> FN16. Merquat-295 is the quaternary polymer chemical found in the straightener of the "Just for Me" products. (Pro-Line's 12(M) of '572 Non-Infringement ¶ 61.)

Pro-Line, however, misconstrues the "staples of commerce" defense by failing to consider the whole device. *See Universal Electronics, 846 F.Supp. at 651*. In *Universal Electronics,* the court considered whether the "staples of commerce" defense should apply for alleged patent infringement by the defendant's remote control transmitter. *Id.* Indicating that the proper focus in the inquiry is on the "entire device," the court looked at the entire remote control unit rather than just the transmitter at issue. *Id.* Similarly, the appropriate inquiry here is whether the conditioner and straightener in the "Soft & Beautiful" and "Just for Me" products are "staples of commerce" rather than whether Polyquaternium-39 and Merquat-295 are staples of commerce. It is irrelevant that the individual chemicals have substantial noninfringing uses because the court must look to the entire device, namely the whole hair relaxer kit.

**\*19** Although the court is not persuaded by Pro-Line's challenge to the claim of contributory infringement, the court nevertheless notes its own concerns about whether the rationale behind an action for contributory infringement applies here. Contributory infringement was intended for situations where the defendant manufactured a product that did not directly violate the patent and then sold the product to another who assembled the final infringing product. *See Hewlett-Packard, 909 F.2d at 1469; Proctor & Gamble, 604 F.Supp. at 1489*. The present case differs in that Johnson Products alleges that Pro-Line's products themselves literally infringe the '572 patent. The infringement does not occur only once in the hands of the buyer. The fact that the Pre-Relaxer Treatment and Creme Relaxer are mixed together by the customer is irrelevant since the claim is that the products as a whole violate the patent, a violation that is arguably completed before it reaches the ultimate user of the product.

The court denies Pro-Line's motion for summary judgment on the contributory infringement claim, but invites further argument on the applicability of the theory to the facts presented here.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                              Page 16
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

3. Invalidity of the '572 Patent

 A party seeking summary judgment of invalidity bears a heavy initial burden because an issued patent carries a statutory presumption of validity under 35 U.S.C. § 282. *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed.Cir.1990); *Zumbro, Inc. v. Merck and Co.*, 819 F.Supp. 1387, 1405-06 (N.D.Ill.1993) (citation omitted). To satisfy the burden, courts have required the moving party to establish invalidity through clear and convincing evidence. *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed.Cir.1998). "Clear and convincing evidence" means "evidence which produce [s] in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions are highly probable." *Buildex, Inc. v. Kason Indus., Inc.*, 849 F.2d 1461, 1463 (Fed.Cir.1988) (citations omitted).

 Pro-Line makes a single argument in favor of its motion for summary judgment of the invalidity of the '572 patent: the quaternary polymer having a six-member recurring ring, as contemplated by claims 1 and 10, does not actually exist. (Pro-Line's '572 Invalidity Motion, at 4.) Consequently, according to Pro-Line, the '572 patent is invalid under 35 U.S.C. § 112 [FN17] because the claims are indefinite and the specification does not enable one skilled in the art to practice the claimed invention. (*Id.* at 5.) Johnson Products counters that when the '572 patent is construed as understood at the time of the invention in 1977, it meets the tests of enablement and definiteness. (Johnson Products' Response, at 46.)

        FN17. 35 U.S.C. § 112 requires:
        The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same....

 a. Enablement

 To be "enabling" under section 112, "the specification of a patent must teach those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.' " *Genetech, Inc. v. Novo Nordisk*, 108 F.3d 1361, 1365 (Fed.Cir.1997), *cert. denied*, 522 U.S. 963, 118 S.Ct. 397, 139 L.Ed.2d 310 (1997). Experimentation is not

fatal; some experimentation is permissible "if it is merely routine [ ] or if the specification in question provides a reasonable amount of guidance...." *Johns Hopkins Univ. v. Cellpro, Inc.*, Nos. 97-1495, 98-1017, 1998 WL 466633, at *16 (Fed.Cir. Aug. 11, 1998). If the claim incorporates incorrect or questionable theories of operation and a limitation is thus impossible to meet, however, it may be invalid because "the impossible cannot be enabled." *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed.Cir.1983). The issue of enablement is a question of law. *Id.* (citation omitted).

 **\*20** Pro-Line's contention centers on the construction of "quaternary polymer" in the '572 patent. The claims must be interpreted at the time of the invention in 1977, however. See *Eastman Kodak*, 114 F.3d at 1555. As already determined from the evidence presented at the *Markman* hearing, one skilled in the art in 1977 would have understood the quaternary polymer with six-member rings to be a graphic depiction of DMDAAC. For the same reasons enumerated in the claim construction discussion, the court finds that a genuine issue of material fact as to patent enablement precludes the grant of summary judgment.

 b. Definiteness

 Pro-Line also argues that the '522 patent is invalid for indefiniteness. (Pro-Line's '572 Invalidity Motion, at 5.) The statute, 35 U.S.C. § 112, requires each patent to include "one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." The "distinctly claiming" requirement means that the claims must have a "clear and definite meaning when construed in the light of the complete patent document." *Miles Labs., Inc. v. Shandon, Inc.*, 997 F.2d 870, 874-75 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1100, 114 S.Ct. 943, 127 L.Ed.2d 232 (1994).

 "Whether a claim is invalid for indefiniteness requires a determination whether those skilled in the art would understand what is claimed when the claim is read in light of the specification." *Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed.Cir.1993). To satisfy this requirement of section 112, the claims need only "reasonably apprise those skilled in the art of the scope of the invention." *Miles Laboratories*, 997 F.2d at 875. Compliance with section 112 is a question of law. *Id.*

 Pro-Line's argument for invalidity of the '572 patent on the grounds of indefiniteness is identical to its

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 17
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

contention on the basis of enablement; namely, that a person of ordinary skill in the art would not understand the reference to "quaternary polymer" in claim 1 because no six-member recurring ring units exist. (Pro-Line's '572 Invalidity Motion, at 5.) Pro-Line relies on *Morton International* for its position that claims are invalid for indefiniteness when the claimed compounds cannot be identified by testing and one skilled in the art cannot determine whether a given compound is within the scope of the claims. (*Id.*)

 Again, the court is not persuaded. A 1977 chemist of ordinary skill in the art would have understood the six-member ring structure depicted in the claims to refer to a DMDAAC polymer. Indeed, *Morton International* is distinguishable from the situation here precisely because one skilled in the art in 1977 would most certainly have understood the graphic depiction of the quaternary polymer to represent DMDAAC even if the chemist believed DMDAAC to have five-member rings. Accordingly, the court denies summary judgment on the invalidity of the '572 patent.

### 4. Non-Infringement of the '822 Patent

 ***21** Pro-Line's arguments for summary judgment on the '822 patent infringement claims are the same ones directed against the '572 patent infringement claim: Pro-Line contends there are no disputes of fact concerning Johnson Products' claims of literal infringement, direct infringement under the doctrine of equivalents, inducement of infringement, and contributory infringement. The court addresses these arguments below.

### a. Literal Infringement

 Pro-Line argues that there is no direct infringement because its products lack the following elements from claim 1 of the '822 patent: (1) an aqueous nonacidic cosmetic vehicle and (2) hydrolyzed proteins that are in the salt form and characterized by a positive charge. (Pro-Line's Summary Judgment Motion on Non-Infringement of the '822 Patent (hereinafter "Pro-Line's '822 Non-Infringement Motion"), at 12.) To infringe claim 1 of the '822 patent, Pro-Line claims, its products must contain a non-acidic cosmetic vehicle with either a non-proteinaceous, non-polymeric quaternary nitrogen-containing compound in salt form or a hydrolyzed protein in salt form, wherein each compound is characterized by a positive charge. (*Id.* at 27.)

Pro-Line insists that the "Soft & Beautiful" and "Just for Me" hair relaxer kits are acidic and thus fall outside the scope of the claims of the '822 patent. Pro-Line offers the affidavits of the two experts, Dr. Lochhead and Dr. Wolfram, for support. For instance, measurements by Dr. Wolfram of the pH values in the "Soft & Beautiful" and "Just for Me" pre-relaxer treatments resulted in readings at 6.0 to 6.5. (Pro-Line's Reply Brief to Johnson Products' Brief in Response to Pro-Line's Motion for Summary Judgment on Non-Infringement of the '822 Patent (hereinafter "Pro-Line's '822 Non-Infringement Reply"), at 29.) For aqueous solutions, pH values greater than 7 indicate that there are more hydroxyl ions than hydrogen ions in the solution, making it non-acidic. (*Id.*) As such, Pro-Line argues, the '822 patent does not cover its products: claim 1 of the '822 patent requires a non-acidic composition, and Pro-Line's products are acidic. [FN18]

> FN18. Pro-Line also apparently contends that claim 1 of the '822 patent is scientifically unsound because the claim simultaneously covers non-acidic compositions, which would have a pH greater than 7, but are characterized as being stable when in an aqueous medium at a pH of at least about 6.1. (*See* Pro-Line's '822 Non-Infringement Reply, at 29.) This argument is more appropriately addressed under the summary judgment motion for invalidity of the '822 patent, and the court accordingly reserves discussion of this issue until then.

 Johnson Products has presented evidence, including affidavits from experts and the two ingredient labels, suggesting that the "Soft & Beautiful" and "Just for Me" hair relaxer kits, in fact, contain every limitation of claims 1, 4, 10, and 11 of the '822 patent. (*See* Johnson Products' Response, at 32-43.) Specifically, Johnson Products counters that Pro-Line's products contain the aqueous nonacidic cosmetic vehicle required by claim 1 of the '822 patent because they contain deionized water, which is nonacidic under the '822 patent definition. (Johnson Products' Response, at 34.) The patent specification defines "nonacidic" as "vehicles containing no ionizable hydrogen-containing substances capable of neutralizing residual alkali on the hair from the hair straightener product." ('822 patent, col. 3, line 66-- col. 4, line 2.) Citing the expert testimony from both sides, Johnson Products explains that one of the ingredients in Pro-Line's Pre-Relaxer Treatment contains a monomer that is capable of neutralizing residual alkali, but that it

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

Page 18

loses that capability when connected with DMDAAC and acrylamide as part of the Polyquaternium-39 polymer. (Johnson Products' Response, at 34-35.) For instance, Dr. Lochhead, Pro-Line's expert, testified that the Polyquaternium-39 found in the Pre-Relaxer Treatment contains acrylic acid, which is capable of neutralizing residual alkali on its own. (Lochhead Dep., at 111, Ex. 36 to Johnson Products' Response). Similarly, Dr. Wolfram confirmed that acrylic acid, though capable of neutralizing residual alkali on its own, is incapable of doing so when part of the Polyquaternium-39 polymer. (Wolfram Aff. ¶ 39, Ex. 17 to Johnson Products' Response).

**\*22** Pro-Line also attempts to read the prosecution history of the parent to the '822 patent (the '860 patent) into the specification of the claims of the '822 patent. In particular, Pro-Line notes that the rejected claim 33 of the '860 patent was amended to limit the pH to compositions in the range of 8 to 11 and argues that this amendment must also apply to the '822 patent. (Pro-Line's '822 Non-Infringement Motion, at 6-8.) For the reasons discussed above, however, this court has concluded that the '822 patent is not limited by the prosecution history of the '860 patent. Accordingly, a dispute exists over whether the claims in the '822 patent cover the chemical compositions in Pro-Line's hair relaxer kits.

Finally, Pro-Line claims that its hair relaxer kits prevent the "dull sheen" problem caused by calcium deposits from the use of calcium hydroxide to relax the hair, an issue that the '822 patent does not address. (Pro-Line's '822 Non-Infringement Motion, at 28-29 .) The apparent inference is that this additional feature precludes a determination that Pro-Line's products infringe the '822 patent. As the Federal Circuit has explicitly observed, however, the "addition of features does not avoid infringement, if all of the elements of the patent claims have been adopted." *Northern Telecom, Inc. v. Datapoint Corp.,* 908 F.2d 931, 945 (Fed.Cir.1990). Pro-Line products' capacity to eliminate the "dull sheen" problem does not defeat a charge of infringement if the elements of the claim are also present.

Without a more complete understanding of the chemistry involved here, the court is unable to conclude that there are no disputes of fact as to whether Pro-Line's hair relaxer kits contain every limitation in the claims of the '822 patent. Summary judgment is therefore denied.

b. Doctrine of Equivalents

As before, because the court finds disputes of fact concerning Johnson Products' claim of literal infringement, the court need not reach the question of whether Pro-Line is entitled to summary judgment on a claim of infringement under the doctrine of equivalents.

c. Inducement of Infringement

For the same reasons Pro-Line sought summary judgment on the inducement claim with respect to the '572 patent, Pro-Line also argues it is entitled to summary judgment on the claim that it induced infringement of claims 12 and 13 of the '822 patent. Claims 12 and 13 cover the method that customers are to follow in using the hair relaxer. [FN19] Johnson Products argues that Pro-Line's instructions to customers to use the pre-treatment relaxer, the creme relaxer, and then the neutralizing shampoo on their heads induce infringement of claims 12 and 13 of the '822 patent. Pro-Line first contends that there is no direct infringement because its pre-relaxer treatment does not contain the composition of claim 1. (Pro-Line's '822 Non-Infringement Motion, at 29.) Next, Pro-Line claims that *Picker International* precludes Johnson Products from asserting an inducement of infringment claim because it is also making a direct infringement claim. (*Id.*)

> FN19. Claim 12 provides:
> A method for straightening hair comprising the steps of:
> (a) first applying to the hair a composition of claim 1; (b) then applying to the resulting hair a highly alkaline hair straightener for a time sufficient to at least partially straighten said hair;
> (c) rinsing substantially all of said straight hair with a neutralizing shampoo having a neutral to acidic pH.
> Claim 13 provides:
> A method of claim 12 wherein the applied composition in step (a) has a pH of at least about 6.1.

**\*23** As discussed above, Johnson Products has presented sufficient evidence to demonstrate that there is a genuine issue of material fact on whether Pro-Line's Pre-Relaxer Treatment contains each of the limitations in claim 1. (*See* Johnson Products' Response, at 43-45.) Pro-Line fails to respond to Johnson Products' specific claim that Pro-Line's written instructions induce infringement of the '822 patent. Furthermore, *Picker International* does not apply to the claims of inducement of infringement

Not Reported in F.Supp.2d                                                                                       Page 19
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

here because Johnson Products has not alleged direct infringement of claims 12 and 13 of the '822 patent, which are the claims at issue in the inducement of infringement charge. (*Id.* at 45.) Accordingly, the court denies summary judgment on this basis.

### d. Contributory Infringement

Pro-Line challenges Johnson Products' claim of contributory infringement of the '822 patent on the same grounds that it raised against the '572 contributory infringement claim. Specifically, Pro-Line argues again that there is no direct infringement, as required for liability under contributory infringement. (Pro-Line's '822 Non-Infringement Motion, at 30.) Additionally, Pro-Line contends that its products fall under the purview of the "staples of commerce" defense. (*Id.* at 31.)

As noted above, assuming Johnson Products' customers may be deemed third parties for purposes of contributory infringement, there is a genuine issue of material fact regarding direct infringement of the '822 patent by a third party. Further, the "staples of commerce" defense fails because it improperly focuses on the individual elements of Polyquaternium-39 and Merquat-295 rather than on the complete product of the Pre-Relaxer Treatment and Creme Relaxer of the hair relaxer kits. Although the court has reservations concerning the application of this theory to the facts here, Pro-Line's arguments do not support the grant of summary judgment to it.

### 4. Invalidity of the '822 Patent

Pro-Line argues that the '822 patent is invalid for three reasons: (1) lack of utility under 35 U.S.C. § 101, (2) indefiniteness under 35 U.S.C. § 112, or (3) prohibitive new matter under 35 U.S.C. § 112 or lack of enablement under 35 U.S.C. § 112. [FN20] (Pro-Line's Motion for Summary Judgment on Invalidity of the '822 Patent (hereinafter "Pro-Line's '822 Invalidity Motion"), at 2-3.)

> FN20. The court notes that Pro-Line's brief did not directly address the issue of enablement. Accordingly, the court considers only the first three grounds listed.

### a. Utility

Only "useful" inventions may be patented. 35 U.S.C. § 101. To meet the utility requirement, a new product or process must be shown to be "operable," meaning that it must be "capable of being used to

effect the object proposed." *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1180 (Fed.Cir.1991) (quoting *Mitchell v. Tilghman*, 86 U.S. (19 Wall.) 287, 396, 22 L.Ed. 125 (1873)). Utility only requires that the claimed invention meet at least one stated objective. *Raytheon*, 724 F.2d at 958. The utility determination is made as a matter of fact. *Id.* at 956.

Pro-Line's "no utility" argument rests on its assertion that the stated purpose of the composition in the '822 patent is to simultaneously texturize and strengthen straightened or relaxed hair. (Pro-Line's '822 Invalidity Motion, at 6.) Pro-Line draws the court's attention to one of the examples in the '822 patent, which states that "this study was unable to detect strengthening benefits from applying this particular non-acidic composition" when the pH of the hair texturing and strengthening composition was about 6.1. (*Id.*) Then, in a somewhat nonlinear display of logic, Pro-Line concludes that all claims of the patent were limited to a pH of at least 6.1 and hence cannot meet the supposed purpose of simultaneously texturing and strengthening. (*Id.*)

**\*24** Johnson Products counters that the pH limitation of 6.1 is only relevant to claims 11 and 13 of the '822 patent. Claims 1, 4, 10, and 12 merely require that the composition be "stable when in an aqueous medium at a pH of at least 6.1," not that the composition itself be limited to a pH of 6.1. (Johnson Products' Response, at 51 .) As for claims 11 and 13, which require that the composition have a pH of at least 6.1, Johnson Products contends that Pro-Line's sole source of authority is an out-of-context quote. (*Id.*) More specifically, each of the examples in the patent illustrates a different point; one may illustrate the texturing benefit while another may show the conditioning benefit. (*Id.*) Explaining the complete quote, Johnson Products contends that it only indicates that there were texturing benefits at a pH of 6.1, through the study did not find strengthening benefit. (*Id.* at 52.) The absence of a strengthening benefit finding in one study, Johnson Products argues, is not enough to establish a lack of utility; the test for utility demands that just one objective be met. (*Id.*)

If all claims in the '822 patent were limited to compositions at a pH of 6.1 and the stated objective were simultaneous texturing and conditioning, Pro-Line's position would have some force. In light of the determination from the *Markman* hearing that the compositions are not limited to a particular pH range, [FN21] however, and the further determination that the patent does not call for simultaneous texturing

and conditioning, Pro-Line has not established the absence of disputes of fact concerning its "no utility" argument. Because there are genuine issues of material fact about the utility of the '822 patent with respect to claims 1, 4, 10, 11, 12, and 13, summary judgment on this basis is denied.

> FN21. The court notes that Pro-Line's claims have been somewhat inconsistent with regard to the pH range of the composition in the '822 patent. For example, during the *Markman* hearing, Pro-Line appeared to be urging the court to find that the patent only covers compositions at a pH of 8 to 11. In the present motion for summary judgment, however, Pro-Line seems to be advocating for a finding that all claims in the '822 patent are limited to a pH of at least 6 .1.

**b. Indefiniteness**

As its second challenge to the validity of the '822 patent, Pro-Line argues that the patent is invalid for indefiniteness because its claims do not correspond in scope with what the patentee regarded as the invention. (Pro-Line's '822 Invalidity Motion, at 7.) Citing *In re Corkill,* 771 F.2d 1496, 1501 (Fed.Cir.1988), Pro-Line contends that the '822 patent is invalid for indefiniteness. The *In re Corkill* court affirmed the Patent Office's rejection of a patent for indefiniteness as it was unclear whether the particle sizes in the patent referred to single crystals or agglomerates comprised of smaller crystals. *Id.* at 1500. The patentee argued that simple experimentation would show which particles should not be used, and only those particles that worked would be covered by the claims. *Id.* at 1501. Rejecting that contention, the court found that the claims did not correspond in scope to what the patentee regarded as the claimed invention and were thus invalid under section 112. *Id.*

Pro-Line similarly notes the testimony of the inventor of the '822 patent, Mr. Akhtar, in which the inventor agreed that hair undergoing a highly alkaline straightening procedure is simultaneously textured and strengthened by compositions with a pH of at least 8 or greater. (Pro-Line's '822 Invalidity Motion, at 8; *see* Akhtar Dep., at 16-17, Ex. D to Pro-Line's Exhibits in Support of its Motions for Summary Judgment.) In other words, Pro-Line urges, the specification in the '822 patent calling for a pH of 6.1 would not provide the strengthening benefits that the inventor considered a component of the invention. (*Id.*) As further support for the proposition that the

patent should include only compositions at a pH of 8 to 11, Pro-Line again relies on the file history of the parent application of the '860 patent, in which claim 33 was amended to cover compositions at a pH range of 8 to 11. (*Id.*) Lastly, Pro-Line summarily concludes that the claims are invalid for indefiniteness because the claimed compounds that would be stable when in an aqueous medium at a pH of at least about 6.1 cannot be identified by testing and that one skilled in the art could not determine whether a given compound was within the scope of the claims. (*Id.* at 10.)

**\*25** Johnson Products first responds that *In re Corkill* is inapposite because the case concerns a rejected patent claim which, unlike the '822 patent, does not carry a presumption of validity. (Johnson Products' Response, at 53-54, n. 21.) Courts have recognized that a valid patent may permit some experimentation. *See Johns Hopkins University,* 152 F.3d 1342, 1998 WL 466633, at \*16. If there is a question of how much experimentation is allowable, there is a dispute that precludes summary judgment. As determined above, a genuine issue of material fact exists as to whether a composition at a pH of 6.1 is relevant to claims 11 and 13 and would provide strengthening benefits. Additionally, Johnson Products offers evidence that one skilled in the art would understand how to determine whether a compound is stable in an aqueous medium at a pH of "at least about 6.1." [FN22] Thus, Pro-Line's position is contraverted by evidence on the record, and summary judgment is accordingly denied.

> FN22. According to Dr. Wolfram, the test would consist of placing the compound in an aqueous medium with a pH of at least 6.1 and then observing whether or not the compound changes. (Johnson Products' Response, at 55.) If it changes into another compound by losing or gaining certain molecules, the chemist will conclude that it is not stable. (*Id.*)

**c. Prohibitive New Matter**

Pro-Line's final validity challenge relates to the doctrine of prohibitive new matter. Under 35 U.S.C. § 132, "no amendment shall introduce new matter into the disclosure of the invention." The test for determining the sufficiency of support in a parent application is whether the disclosure of that parent application "reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter...." *In re Kaslow,* 707 F.2d

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 699024 (N.D.Ill.)
**(Cite as: 1998 WL 699024 (N.D.Ill.))**

1366, 1375 (Fed.Cir.1983). Whether information is new matter depends on "the nature of the disclosure, the state of the art, and the nature of the added matter." *Brooktree Corp. v. Advanced Miro Devices, Inc.,* 977 F.2d 1555, 1574 (Fed.Cir.1992). Furthermore, claims to subject matter disclosed in the earlier patent specification cannot be considered new matter. *Kolmes v. World Fibers Corp.,* 107 F.3d 1534, 1539 (Fed.Cir.1997). A patent examiner's decision to allow an amendment without a rejection as to new matter "is entitled to an especially weighty presumption of correctness." *Brooktree,* 977 F.2d at 1574.

 Pro-Line argues that the phrase "being stable when in an aqueous medium at a pH of at least about 6.1" in claim 1 of the '822 patent is "prohibitive new matter" because the '822 patent is a continuation patent and the parent patent (the '860 patent) did not describe this pH level. (Pro-Line's '822 Invalidity Motion, at 10.) By subsequently adding a pH range of at least about 6.1, the argument follows, Johnson Products added prohibitive new matter to the '822 continuation patent. (*Id.*)

 As Johnson Products correctly notes, however, the earlier '860 patent reasonably conveys that the inventor knew of the effectiveness of hair straightening and texturing of compositions in an aqueous medium with a pH of about at least 6.1. Thus, claim 1 of the '822 patent does not contain prohibitive new matter. (Johnson Products' Response, at 56.) Moreover, the specifications of the '860 and the '822 patents both discuss the use of an aqueous medium that had an average pH of 6.18. (*Id.*) Most important, the specification of the '860 patent provides the support for claiming aqueous mediums with pHs of at least 6.1 in the continuation application. (*Id.*) Genuine issues of material fact about whether the '822 patent contains prohibitive new matter therefore preclude the granting of summary judgment.

CONCLUSION
 **\*26** For the aforementioned reasons, the court denies Pro-Line's motions for summary judgment. The parties are urged to explore the possibility of settlement and directed to appear for a status conference on October 27, 1998, at 10:00 a.m.

TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE
TABULAR OR GRAPHIC MATERIAL SET AT THIS POINT IS NOT DISPLAYABLE
Not Reported in F.Supp.2d, 1998 WL 699024

(N.D.Ill.)

 **Motions, Pleadings and Filings (Back to top)**

• 1:94cv03555 (Docket) (Jun. 08, 1994)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507                    Page 1 of 8

Case 1:06-cv-00041-JJF    Document 57-7    Filed 03/08/2006    Page 1 of 8

**FOCUS™** Terms _____ Search Within | All Documents | | **Go** →

View: **Full** | Custom ◁——— 1 of 1 ———▷    **FAST Print** | Print | I

More Like This | More Like Selected Text | *Shepardize®* | TOA

**A**  **Oki Elec. Indus. Co., Ltd. v. Lg Semicon Co., Ltd., 1998 U.S. Dist. LEXIS 22507** (Copy ↓

Service: **Get by LEXSEE®**
Citation: **1998 u.s. dist. LEXIS 22507**

*1998 U.S. Dist. LEXIS 22507, \**

OKI ELECTRIC INDUSTRY CO., LTD., Plaintiff, v. LG SEMICON CO., LTD. and LG SEMICON
AMERICA, INC., Defendants.

CIVIL NO. 97-20310 SW

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

1998 U.S. Dist. LEXIS 22507

February 25, 1998, Decided
February 25, 1998, Filed; March 6, 1998, Entered in Civil Docket

**DISPOSITION:  [\*1]**  Defendants' motion to dismiss Plaintiff's First Amended Complaint or
in alternative, motion for more definite statement (docket number 48) DENIED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent holder filed a patent infringement action
against defendant alleged infringers, claiming direct, contributory, and inducement
infringement of its patents in the United States District Court for the Northern District of
California. The alleged infringers filed a motion to dismiss for failure to state a claim under
Fed. R. Civ. P. 12(b)(6), or alternatively, a motion for a more definite statement under
Fed. R. Civ. P. 12(e).

**OVERVIEW:** The patent holder filed a first amended complaint stating five claims, each
corresponding to one of the patents in suit. Within each claim, the patent holder used
separate paragraphs for allegations concerning each alleged infringer. It also used
separate paragraphs to allege direct infringement and inducement infringement. The
alleged infringers argued that the patent holder failed to set forth in separate counts the
direct and inducement infringement claims against each alleged infringer, that it failed to
specify particular facts to support its infringement claims, and that it failed to allege that
any of the infringing devices were sold in or imported into the United States. The court
held that while it was true that each count contained more than one claim, separate
paragraphs made clear the different legal theories upon which the patent holder relied and
the separate alleged infringers against which those theories were asserted. The court
further held that the complaint exemplified the simplicity and brevity of statement that
Fed. R. Civ. P. 84 contemplated. Additionally, the court found that an explicit allegation of
infringement in the United States was not necessary.

**OUTCOME:** The court denied the alleged infringers' motions to dismiss and for a more
definite statement.

**CORE TERMS:** patent, infringement, definite, infringing, inducement, responsive pleading,

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507      Page 2 of 8

Case 1:06-cv-00041-JJF    Document 57-7    Filed 03/08/2006    Page 2 of 8

infringed, motion to dismiss, imported, notice, cause of action, separate count, simplicity, brevity, frame, Federal Rules of Civil Procedure, patent infringement, patented invention, entitled to relief, fails to meet, electric, presentation, contemplate, conclusory, cognizable, embodying, patented, selling, embody, import

## LexisNexis(R) Headnotes ♦ Hide Headnotes

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN1* A complaint shall only be dismissed under Fed. R. Civ. P. 12(b)(6) where it appears beyond doubt that no set of facts can support plaintiff's claim for relief. A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action

*HN2* In reviewing a motion under Fed. R. Civ. P. 12(b)(6), all allegations of material fact are taken as true and must be construed in the light most favorable to the non-moving party. The moving parties bear the burden of showing that there is no set of facts under which plaintiffs can be entitled to relief on the allegations of their complaint. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN3* A complaint must contain a short and plain statement of the claim, showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). In addition, each claim is founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth. Fed. R. Civ. P. 10(b). More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form

*HN4* Fed. R. Civ. P. 12(e) provides that if a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not observed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just. More Like This Headnote

Patent Law > Infringement Actions > Infringing Acts > Sale
Patent Law > Infringement Actions > Infringing Acts > Use
Patent Law > Infringement Actions > Infringing Acts > Intent & Knowledge

*HN5* Fed. R. Civ. P. Form 16 of the appendix of forms sets forth an illustrative complaint for infringement of a patent. Form 16 states a claim for patent infringement in four paragraphs, followed by a demand for relief. The first paragraph alleges jurisdiction. The second paragraph alleges ownership of the patent at issue. The third paragraph alleges that the defendant has been and still is infringing the patent by making, selling, and using electric motors embodying the patented invention. The fourth paragraph alleges notice of the patent on all products manufactured and sold by the patent owner under the patent and written notice to the defendant of the alleged infringement. These four paragraphs are sufficient under the Federal Rules of Civil Procedure and are intended to indicate the simplicity and brevity of statement that the rules contemplate. Fed. R. Civ. P. 84. More Like This Headnote |
*Sheparize:* Restrict By Headnote

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507          Page 3 of 8

Case 1:06-cv-00041-JJF     Document 57-7     Filed 03/08/2006     Page 3 of 8

Patent Law > Inequitable Conduct > General Overview
Patent Law > Infringement Actions > General Overview
**HN6** U.S.D. Ct., N.D. Cal., Civil R. 16-7 provides that 45 days after filing a pleading alleging patent infringement, the party alleging infringement must serve on all parties an "Initial Disclosure of Asserted Claims." This initial disclosure must contain each claim of each patent in suit that is allegedly infringed along with as specific an identification as possible of each accused apparatus, product, device, process, method, act, or other instrumentality. U.S.D. Ct., N.D. Cal., Civil R. 16-7(b). This rule recognizes that notice pleading does not require such specificity and that discovery disclosures are the proper context for such detailed information. More Like This Headnote

Patent Law > Infringement Actions > General Overview
**HN7** No allegation that infringing devices were made, used, or sold in, or imported into the United States is contained in Fed. R. Civ. P. Form 16, and yet form 16 is sufficient under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 84. Form 16 thus makes it clear that an explicit allegation of infringement in the United States is not necessary. More Like This Headnote

**COUNSEL:** For OKI ELECTRIC INDUSTRY CO., LTD., Plaintiff: Matthew T. Powers, Matthew D. Powers, Jared Bobrow, Elizabeth H. Rader, Emily S. Lau, Janice V. Mock, Weil Gotshal & Manges LLP, Menlo Park, CA.

For LG SEMICON CO., LTD., LG SEMICON AMERICA, defendants: Daniel J. Bergeson, Richard J. Gray, Bergeson Eliopoulos & Grady LLP, San Jose, CA.

For LG SEMICON CO., LTD., defendant: William E. Wallace, III, Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, defendant: Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, Counter-claimant: Daniel J. Bergeson, Richard J. Gray, Bergeson Eliopoulos & Grady LLP, San Jose, CA.

For LG SEMICON AMERICA, Counter-claimant: Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON CO., LTD., Counter-claimant: William E. Wallace, III, Mariam J. Naini, Morgan Lewis & Bockius LLP, Washington, DC.

For LG SEMICON AMERICA, Counter-claimant: Anthony C. Roth, Morgan Lewis & Bockius, Washington, DC.

For **[*2]** OKI ELECTRIC INDUSTRY CO., LTD., Counter-defendant: Matthew T. Powers, Matthew D. Powers, Jared Bobrow, Elizabeth H. Rader, Weil Gotshal & Manges LLP, Menlo Park, CA.

For OKI AMERICA, INC., Counter-defendant: David C. Radulescu, Weil Gotshal & Manges LLP, Menlo Park, CA.

**JUDGES:** SPENCER WILLIAMS, United States District Judge.

**OPINIONBY:** SPENCER WILLIAMS

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507     Page 4 of 8

Case 1:06-cv-00041-JJF     Document 57-7     Filed 03/08/2006     Page 4 of 8

**OPINION:** ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

Plaintiff OKI Electric Industry Co., Ltd. ("OKI") initiated this action against Defendants LG Semicon Co., Ltd. ("LG Semicon") and LG Semicon America, Inc. ("LG Semicon America") on April 2, 1997, alleging direct, contributory, and inducement infringement of five patents. In response to OKI's complaint, LG Semicon and LG Semicon America brought a motion to dismiss or, in the alternative, a motion for a more definite statement. In lieu of opposing that motion, OKI filed and served a First Amended Complaint on July 30, 1997, which alleged direct and inducement infringement of the same five patents as the original complaint. LG Semicon and LG Semicon America now bring this motion to dismiss Plaintiff's **[*3]** First Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, a motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e). For the reasons set forth below, the Court hereby DENIES Defendants' motion.

**BACKGROUND**

OKI, a Japanese corporation, owns all rights, interests, and legal title to five U.S. patents: No. 4,603,059 ("the '059 patent"), No. 4,777,732 ("the '732 patent"), No. 4,962,413 ("the '413 patent"), No. 5,075,745 ("the '745 patent"), and No. 5,280,453 ("the '453 patent"). LG Semicon is a Korean corporation and LG Semicon America is a California corporation.

OKI's First Amended Complaint ("FAC") states five claims, each corresponding to one of the patents in suit. Within each claim, OKI uses separate paragraphs for allegations concerning each Defendant. It also uses separate paragraphs to allege direct infringement and inducement infringement. That is, a separate paragraph alleges each of the following: direct infringement against LG Semicon, inducement infringement against LG Semicon, direct infringement against LG Semicon America, and inducement **[*4]** infringement against LG Semicon America.

**LEGAL STANDARD**

**A. Motion to Dismiss under Rule 12(b)(6)**

*HN1* A complaint should only be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure where it appears beyond doubt that no set of facts could support plaintiff's claim for relief. Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99, (1957); Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987), cert. denied, 484 U.S. 944, (1987). A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984).

*HN2* In reviewing a motion under Rule 12(b)(6), all allegations of material fact are taken as true and must be construed in the light most favorable to the non-moving party. Durning, 815 F.2d at 1267. As the moving parties, LG Semicon and LG Semicon America bear the burden of showing that there is no set of facts under which plaintiffs could be entitled to relief on the allegations of their complaint. **[*5]** Conley, 355 U.S. at 47.

*HN3* A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In addition, "each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b).

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507    Page 5 of 8

Case 1:06-cv-00041-JJF    Document 57-7    Filed 03/08/2006    Page 5 of 8

## B. Motion for a More Definite Statement under Rule 12(e)

*HN4* Federal Rule of Civil Procedure 12(e) provides that:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not observed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

## DISCUSSION

LG Semicon and **[*6]** LG Semicon America move the Court to dismiss OKI's FAC by arguing that it: (1) fails to set forth in separate counts OKI's direct and inducement infringement claims against each Defendant; (2) it fails to specify particular facts to support its infringement claims and instead refers vaguely and generically to nearly all of Defendants' product line; and (3) it fails to allege that any of the infringing devices are sold in or imported into the United States. Defendants move the Court, in the alternative, for a more definite statement.

## A. Motion to Dismiss Pursuant to Rule 12(b)(6)

### 1. OKI's FAC Need Not Set Forth in Separate Counts OKI's Direct Infringement and Inducement Infringement Claims Against Each Defendant

Defendants first argue that because OKI's FAC does not set forth separate causes of action in separate counts, it fails to meet the pleading standards required by this and other courts. In support of their argument, Defendants rely principally on Gen-Probe Inc. v. Amoco Corp., 926 F. Supp. 948 (S.D.Cal. 1988). The district court there held that the complaint set forth its claims "in a confusingly conclusory manner, accusing each of five defendants **[*7]** of three very different causes of action on two different patents, all in one conclusory sentence, without adequately specifying the grounds for plaintiff's belief that any of these entities have infringed." Id. at 960. To remedy this lack of organization, the court dismissed most of the plaintiff's claims with leave to amend, and required plaintiff to limit each count of the amended complaint to one cause of action. Id. at 962.

Defendants also look to this Court's opinion in Schlafly v. Public Key Partners, 1994 WL 669858 (N.D.Cal. Nov. 22, 1994) for support of their argument that each count of a complaint must be limited to a single cause of action. In Schlafly, the Court held that the "disjointed and confusing" complaint was "a hodgepodge of allegations to which no defendant could reasonably frame a responsive pleading." Id. at *2. To remedy the confusion caused by that complaint, the Court granted the defendant's motion for a more definite statement and required the plaintiff to individually list each cause of action. Id. Notably, the Court did not require separate counts for each cause of action. Neither the Gen-Probe **[*8]** nor the Schlafly case establishes a general rule that plaintiffs are required to plead each claim in their complaints in a separate count. Rather, in each case the court was addressing particular organizational deficiencies of the respective pleadings.

In contrast to those cases, here OKI has organized its claims by patent, by type of

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507          Page 6 of 8

Case 1:06-cv-00041-JJF     Document 57-7     Filed 03/08/2006     Page 6 of 8

infringement, and by defendant. While it is true that each count contains more than one claim, separate paragraphs make clear the different legal theories upon which OKI relies and the separate defendants against which those theories are asserted. The organization is "simple, concise, and direct." Fed. R. Civ. P. 8(e). Separate counts are only required "whenever a separation facilitates the clear presentation of the matters set forth." Fed. R. Civ. P. 10(b). Here, OKI's chosen organization is sufficiently clear to obviate the need to require organization of each claim into a separate count.

## 2. OKI's FAC Adequately Alleges Facts in Support of its Infringement Claims

Defendants next argue that OKI's FAC fails to meet the pleading standards by not providing adequate notice of particular facts in support of its claims. An example of the allegations **[*9]** that Defendants assert are defective is as follows: "Defendant LG America has infringed and is infringing the '059 patent in violation of 35 U.S.C. § 271, by making, importing, offering for sale, selling, and/or using devices that embody the patented methods, including 4 megabit and higher density DRAMs." Specifically, Defendants argue that this allegation refers vaguely and generically to nearly all of Defendants' product line. Therefore, they claim, they are unable to frame a responsive pleading.

HN5 Form 16 of the Appendix of Forms to the Federal Rules of Civil Procedure sets forth an illustrative complaint for infringement of a patent. See Introductory Statement to Appendix of Forms. Form 16 states a claim for patent infringement in four paragraphs, followed by a demand for relief. The first paragraph alleges jurisdiction. The second paragraph alleges ownership of the patent at issue. The third paragraph alleges that the defendant has been and still is infringing the patent by "making, selling, and using electric motors embodying the patented invention." The fourth paragraph alleges notice of the patent on all products manufactured and sold by the patent **[*10]** owner under the patent and written notice to the defendant of the alleged infringement. These four paragraphs "are sufficient under the [Federal] rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed. R. Civ. P. 84.

The phrase "devices that embody the patented methods" from OKI's allegation is substantially similar to the phrase "electric motors embodying the patented invention" found in Form 16. The similarity between the two allegations makes it clear that OKI's FAC is sufficient under the Rules. Indeed, OKI's FAC exemplifies the simplicity and brevity of statement that the Rules contemplate. See Fed. R. Civ. P. 84.

Further support for the Court's determination that OKI's FAC meets the pleading standards is found in the Northern District's Local Rules. HN6 Civil Local Rule 16-7 provides that 45 days after filing a pleading alleging patent infringement, the party alleging infringement must serve on all parties an "Initial Disclosure of Asserted Claims." This initial disclosure must contain each claim of each patent in suit that is allegedly infringed along with as specific an identification as possible of each accused apparatus, **[*11]** product, device, process, method, act or other instrumentality. Civil L. R. 16-7(b). This local rule recognizes that notice pleading does not require such specificity and that discovery disclosures are the proper context for such detailed information.

## 3. OKI's FAC Does Not Need to Explicitly Allege That Any Accused Devices Are Imported or Sold in the United States

Defendants further argue that OKI's FAC should be dismissed because it fails to allege that any of the accused devices are imported or sold in the United States. Defendants assert that as a result, OKI's FAC fails to plead an essential element of its infringement claims under 35 U.S.C. §§ 271 (a) and (g).

In support of their argument, Defendants rely on Pfizer Inc. v. Aceto Corp., 853 F. Supp. 104

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507    Page 7 of 8

Case 1:06-cv-00041-JJF    Document 57-7    Filed 03/08/2006    Page 7 of 8

(S.D.N.Y. 1994). In that case it was "undisputed that [the defendant] does not itself import the [allegedly infringing product] into the United States." Id. at 105. The court there did not allow the plaintiff to extend the reach of § 271(g) to foreign manufacturers whose infringing acts do not occur within the United States. Id.

In contrast to that case, [*12] here OKI has alleged in its FAC that the Defendants "import [], offer[] for sale, and/or sell[] [allegedly infringing products] in the United States." Indeed, four paragraphs of the FAC specify that Defendants infringe OKI's patents in the United States. Therefore, the FAC sufficiently states a claim under §§ 271(a) and (g).

Even if OKI's FAC did not allege that Defendants' products infringed in the United States, it would still be sufficient. *HN7*↑No allegation that infringing devices were made, used, or sold in, or imported into the United States is contained in Form 16, and yet the Form is "sufficient under the rules." Fed. R. Civ. P. 84. Form 16 thus makes it clear that an explicit allegation of infringement in the United States is not necessary.

### B. Motion for a More Definite Statement Pursuant to Rule 12(e)

Defendants argue that OKI should be required to amend its FAC to provide a more definite statement of its claims against Defendants. As explained above, the simplicity and brevity of notice pleading is typified in OKI's FAC, as contemplated by the Federal Rules of Civil Procedure. No more specificity is required in a patent case at the pleading stage.

In support [*13] of their motion for a more definite statement, Defendants have cited several cases involving the imposition of Rule 11 sanctions on plaintiffs who have failed to thoroughly investigate claims before bringing them in court. See, e.g., Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 110 L. Ed. 2d 359, 110 S. Ct. 2447 (1990); Judin v. United States, 110 F.3d 780 (Fed. Cir. 1997); Refac International Ltd. v. Hitachi Ltd., 1991 U.S. Dist. LEXIS 15890, 19 U.S.P.Q.2D (BNA) 1855 (C.D.Cal. 1991). Such cases are inapposite to the present action in that they properly address the question of unwarranted and frivolous legal contentions in the context of a Rule 11 motion for sanctions. Defendants here have not brought a motion for sanctions and the Court does not find on its own initiative any conduct that appears to warrant an order to show cause why sanctions should not be imposed. See Fed. R. Civ. P. 11(c)(1)(B). If the facts later show that OKI failed to investigate its claims before bringing its FAC, Defendants may bring a motion for Rule 11 sanctions.

### CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss Plaintiff's [*14] First Amended Complaint, or in the alternative, motion for a more definite statement (docket number 48) is DENIED.

IT IS SO ORDERED.

DATED: 2/25/98

SPENCER WILLIAMS

United States District Judge

View: **Full** | Custom                    ◄ 1 of 1 ►         **FAST Print**   Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | *Shepardize*® | TOA

Ⓐ  **Oki Elec. Indus. Co., Ltd. v. Lg Semicon Co., Ltd., 1998 U.S. Dist. LEXIS 22507** (Copy w/ Cite)                    Pages:   **9**

https://www.lexis.com/research/retrieve?_m=68c859b5c49b988ad1235d3f8a88429d&csvc=...    3/8/2006

Get a Document - by Citation - 1998 U.S. Dist. LEXIS 22507          Page 8 of 8

Case 1:06-cv-00041-JJF    Document 57-7    Filed 03/08/2006    Page 8 of 8

Service: **Get by LEXSEE®**
Citation: **1998 u.s. dist. LEXIS 22507**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:37 PM EST

\* Signal Legend:

🔴 - Warning: Negative treatment is indicated

🟧 - Questioned: Validity questioned by citing refs

🔺 - Caution: Possible negative treatment

➕ - Positive treatment is indicated

🅰 - Citing Refs. With Analysis Available

ⓘ - Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  |  Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110          Page 1 of 6

Case 1:06-cv-00041-JJF     Document 57-8     Filed 03/08/2006     Page 1 of 6

**FOCUS™** Terms _____     Search Within  All Documents  ▢  **Go →**

View: **Full** | Custom                    ◁ **1 of 1** ▷          **FAST Print**   Print | [

More Like This | More Like Selected Text | *Sheppardize®* | TOA

✛ **R2 Tech. v. Intelligent Sys. Software, 2002 U.S. Dist. LEXIS 19110** (Copy w/ Cite)

Service: **Get by LEXSEE®**
Citation: **2002 u.s. dist. LEXIS 19110**

*2002 U.S. Dist. LEXIS 19110, *

R2 TECHNOLOGY, INC., and SHIH-PING WANG, Plaintiffs, v. INTELLIGENT SYSTEMS
SOFTWARE, INC., Defendant.

C.A. No. 02-472 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 19110

October 9, 2002, Decided

**SUBSEQUENT HISTORY:** Patent interpreted by R2 Tech. v. Intelligent Sys. Software, Inc.,
2003 U.S. Dist. LEXIS 7436 (D. Del., Apr. 30, 2003)

**DISPOSITION:** **[*1]** Defendants' motion to transfer DENIED. Defendants' motion for more
definite statement DENIED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff manufacturers sued defendant competitors for patent
infringement. The competitors moved to transfer the case and for a more definite
statement of the complaint.

**OVERVIEW:** The manufacturers alleged the competitors were infringing on the
manufacturers' patents protecting a medical device. The competitors were affiliated
Delaware corporations with employees located in offices in New Hampshire and Florida.
Defendants moved to transfer the case to the Southern District of Florida. There could be
little dispute that the case could be brought there because the competitors' principal place
of business was located within that judicial district. The competitors did not dispute that
the instant court had personal jurisdiction over it and that venue was proper in the current
district. Upon consideration of the applicable Jumara factors, the court found that the
competitors had not met their burden of demonstrating that transfer was appropriate. The
court also found for the manufacturers on the motion for a more definite statement; the
complaint was not vague or ambiguous that the competitors could not be reasonably
required to frame a responsive pleading to it, and the manufacturers were not required to
identify in the complaint which patent claims had been infringed.

**OUTCOME:** The court denied the competitors' motions.

**CORE TERMS:** patent infringement, patent, detection, patents-in-suit, definitive, infringe,
southern district, computer-aided, infringement, mammograms, Federal Rules of Civil

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110          Page 2 of 6

Case 1:06-cv-00041-JJF     Document 57-8     Filed 03/08/2006     Page 2 of 6

Procedure, judicial district, contributory, infringed, offering, selling, induced, plead, breast cancer, collectively, manufactures, radiologists, eighty-two, entities

### LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Venue > Change of Venue in Federal Courts
**HN1** 28 U.S.C.S. § 1404(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer this action to any other district where it might have been brought. More Like This Headnote

Civil Procedure > Venue > General Venue
Copyright Law > Civil Infringement Actions > Jurisdiction & Venue > General Overview
**HN2** See 28 U.S.C.S. § 1400(b).

Civil Procedure > Venue > Change of Venue in Federal Courts
**HN3** The United States Court of Appeals for the Third Circuit has provided a list of factors to assist a district court in determining whether, on balance, the litigation would conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors include six private and five public interests which the court may consider. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form
**HN4** The decision of whether to grant or deny a motion for a more definite statement rests within the sound discretion of the district court. Courts generally view motions for a more definitive statement with disfavor. They do so because the Federal Rules of Civil Procedure require that a pleading contain only a short and plain statement of the claim showing that the party is entitled to relief. Fed. R. Civ. P. 8. As a result, a party may only move for a more definitive statement in an effort to remedy an unintelligible pleading. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form
**HN5** The Fed. R. Civ. P. 8 pleading standard does not change in an action for patent infringement. A complaint need only identify the patent, not the specific claims, being asserted. More Like This Headnote

**COUNSEL:** For R2 Technology Inc, Shih-Ping Wang, PLAINTIFFS: Maryellen Noreika, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

For Intelligent Systems Software, Inc, Issi Acquisition Corporation, Icad Inc, DEFENDANTS: Linda Richenderfer, Saul Ewing LLP, Wilmington, DE USA.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Gregory M. Sleet

**OPINION: MEMORANDUM AND ORDER**

### I. INTRODUCTION

On June 3, 2002, the plaintiffs, R2 Technology, Inc. and Shih-Ping Wang (collectively "R2"), filed the above-captioned action alleging patent infringement of a medical device that analyzes mammograms and marks possible signs of breast cancer. On July 11, 2002, R2 filed its First Amended Complaint. Rather than respond to this complaint, however, the defendants, Intelligent Systems Software, Inc. ("ISSI"), ISSI Acquisition Corporation, Inc.

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110          Page 3 of 6

Case 1:06-cv-00041-JJF      Document 57-8      Filed 03/08/2006      Page 3 of 6

("ISSI Acquisition"), and Icad, inc. ("Icad") (collectively "the defendants" or "Icad"), moved to transfer this case to the Southern District of Florida and for a more definite statement of the complaint. For the following reasons, **[*2]** the court will deny both of the defendants' motions.

## II. DISCUSSION

R2 is a privately-owned Delaware corporation, with its principal executive offices located in Northern California. It manufactures, and sells, proprietary medical systems to assist radiologists in cancer detection. In 1998, the United States Food and Drug Administration ("FDA") approved R2's ImageChecker product. ImageChecker is the first commercially manufactured computer-aided detection ("CAD") system for analyzing mammograms by marking suspicious image features. In effect, ImageChecker operates as a second pair of "eyes" to assist radiologists in detecting breast cancer. R2 has also obtained numerous other CAD-related patents.

Icad is a Delaware corporation with twenty-nine employees located in offices in New Hampshire and Florida. It is a public corporation and is listed on the NASDAQ. Like R2, Icad develops, manufactures, and sells a CAD system that analyzes mammograms. It obtained FDA approval to sell its MammoReader throughout the United States earlier this year.

### A. Motion to Transfer

Icad first moves to transfer this action to the United States District Court for the Southern District of **[*3]** Florida pursuant to 28 U.S.C. § 1404(a). n1 *HN1* Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer this action to "any other district where it might have been brought." 28 U.S.C. § 1404(a). While R2 and Icad do not expressly agree that this action could have been filed in the Southern District of Florida, there can be little dispute that this is so because Icad's principal place of business is located within that judicial district. *HN2* See 28 U.S.C. § 1400(b) (stating that "any action for patent infringement may be brought in the judicial district where the defendant resides . . . .").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Icad does not dispute that the present court has personal jurisdiction over it, nor does it dispute that venue is proper in the District of Delaware.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Having satisfied the initial section 1404(a) requirement, the court will, therefore, move on with the inquiry as directed **[*4]** by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).* In *Jumara*, *HN3* the Third Circuit provided a list of factors to assist the district court in determining "whether, on balance, the litigation would conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court may consider. *See id.*

Upon consideration of the applicable *Jumara* factors, the court finds that Icad has not met its burden of demonstrating that transfer is appropriate. In reaching this conclusion, the court relies on the following considerations, among others: (1) although Icad is a relatively small corporation, it has a nationwide presence and is publicly traded on the NASDAQ; (2) both parties are incorporated in Delaware and should reasonably expect to litigate in the forum;

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110    Page 4 of 6

Case 1:06-cv-00041-JJF    Document 57-8    Filed 03/08/2006    Page 4 of 6

(3) there is nothing on the record to suggest that any potential third-party fact witnesses are unwilling or unable to testify before the court; (4) discovery will not be unduly hampered by litigating the case in Delaware; (5) no documents will be unavailable **[\*5]** for trial in Delaware; and (6) Florida does not have a greater interest in adjudicating this case because this is a patent infringement action where the parties market their products nationally. *See Affymetrix, Inc. v. Synteni, Inc.,* 28 F. Supp. 2d 192, 207 (D. Del. 1998). Thus, in light of these considerations, the court cannot conclude that the 'balance of convenience' tips strongly in favor of transfer.

## B. Motion for a More Definite Statement

Icad also moves for a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e). In making its argument, Icad points out that the First Amended Complaint is only ten paragraphs long. Paragraph eight alleges that the defendants "have directly and contributorily infringed, and have induced others to infringe one or more claims" of the patents-in-suit "by making, using, selling, and/or offering to sell Computer-Aided Detection systems, which are identified by the trade name 'MammoReader.'" To cure this alleged defect, Icad asks that R2 be required to file another amended complaint that "identifies, for each of the three patents-in-suit, the claims at issue and states, for each defendant, whether the alleged **[\*6]** infringement of each such claim is direct, contributory, and/or inducement to infringe." Because the court does not believe that the complaint is "so vague or ambiguous" that Icad could not be "reasonably . . . required to frame a responsive pleading" to it, the court will deny Icad's motion.

**HN4** The decision of whether to grant or deny Icad's motion rests within the sound discretion of the district court. *See Scriptgen Pharmaceuticals, Inc. v. 3-Dimensional Pharmaceuticals, Inc.,* No. 98-583-GMS, slip. op. at 3 (D. Del. Feb. 22, 1999) (citing 5A CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1377, at 600-601 & n.3 (2d ed. 1990)). Courts generally view motions for a more definitive statement with disfavor. *See Frazier v. Southeastern Pennsylvania Transp. Auth.,* 868 F. Supp. 757, 763 (E.D. Pa. 1994); Geir v. Educational Serv. Unit No. 16, 144 F.R.D. 680, 685 (D. Neb. 1992). They do so because the Federal Rules of Civil Procedure require that a pleading contain only a "short and plain statement of the claim showing that the party is entitled to relief." FED. R. CIV. P. 8. As a result, a party may only move for a more definitive **[\*7]** statement in an effort to remedy an unintelligible pleading. *See In re Health Mgmt., Inc. Sec. Litig.,* 970 F. Supp. 192, 207 (E.D.N.Y. 1997).

Furthermore, **HN5** the Rule 8 standard does not change in an action for patent infringement. *See* ,Scriptgen Pharmaceuticals, Inc. 98-583-GMS, slip. op. at 3; *see also* FED. R. CIV. P. 84, Appendix of Forms, Form 16 (Complaint for Infringement of Patent). Indeed, it is apparent from the form patent infringement complaint that a complaint need only identify the patent, not the specific claims, being asserted. *See* FED. R. CIV. P. 84, Appendix of Forms, Form 16; *see also Gen-Probe, Inc. v. Amoco Corp., Inc.,* 926 F. Supp. 948, 960 (S.D. Cal. 1996) (stating that "the Federal Rules do not require that the plaintiff plead with particularity the specific patent claims that have been infringed . . .").

Icad does not dispute that there is no requirement in the Federal Rules of Civil Procedure that R2 plead with the specificity Icad now requests. It nevertheless argues that the facts of this case are such that the court should exercise its discretion in Icad's favor. In essence, Icad argues that because there are three defendants in this **[\*8]** case, and three patents with a possible eighty-two claims, the court should require a more stringent pleading standard. For the following reasons, the court disagrees.

First, it is not entirely clear that the defendants are, in fact, three "distinct entities." Although the complaint technically names three defendants, ISSI, ISSI Acquisition, and Icad, these companies appear to be the same entities using different names. Indeed, Icad's CEO, Kip

Get a Document - by Citation - 2002 U.S. Dist. LEXIS 19110          Page 5 of 6

Case 1:06-cv-00041-JJF     Document 57-8     Filed 03/08/2006     Page 5 of 6

Speyer, explained that ISSI merged into Icad on June 28, 2002, and that ISSI Acquisition is merely a shell company that has "no staff and has had no operations than to facilitate the acquisition of ISSI" Speyer Decl., PP3-6. Moreover, the three defendants are represented by the same counsel. Thus, the court is not persuaded by Icad's argument that each of the three defendants will have to independently analyze the infringement claims. Nor is the court persuaded by the fact that there are a possible eighty-two claims in this action. *See Scriptgen*, 98-583-GMS, slip op. at 3 (citing *Thomson S.A. v. TimeWarner, Inc.*, No. 94-83 slip op. at 4 (D. Del. June 2, 1994) (Longobardi, C.J.) (reaching the same conclusion in a case involving four **[\*9]**  patents which contained a total of three hundred and twenty-two claims)).

Further, after reviewing R2's First Amended Complaint, the court concludes that it otherwise conforms to federal pleading requirements. In addition to setting forth an allegation of jurisdiction and identifying the patents-in-suit, the complaint plainly and succinctly states that the defendants are being sued for their alleged direct and contributory infringement and for having induced others to infringe one or more of the claims by "making, using, selling, and/or offering to sell Computer-Aided Detection systems." Therefore the court will deny Icad's motion.

## III. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

    1. The Defendants' Motion to Transfer (D.I. 12) is DENIED.

    2. The Defendants' Motion for a More Definite Statement (D.I. 12) is DENIED.

    3. The Defendants shall file an Answer to the Plaintiffs' First Amended Complaint within twenty (20) days of the date of this order.

Dated: October 9, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE

---

View: **Full** | Custom                          1 of 1          **FAST Print**     Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | *Shepardize*® | TOA

R2 Tech. v. Intelligent Sys. Software, 2002 U.S. Dist. LEXIS 19110  (Copy w/ Cite)     Pages:     **6**

Service: **Get by LEXSEE®**
Citation: **2002 u.s. dist. LEXIS 19110**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:38 PM EST

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟡Q - Questioned: Validity questioned by citing refs
🔺 - Caution: Possible negative treatment
➕ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available

* Click on any *Shepard's* signal to *Shepardize®* that case.



About LexisNexis  | Terms & Conditions
Copyright ©  2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



▷

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
RISTVEDT-JOHNSON, INC., a Tennessee
corporation, and Cummins-Allison
Corporation, an Indiana corporation, Plaintiffs,
v.
Nelson PELTZ, an individual, and Peter W. May, an
individual, Defendants.
No. 91 C 3273.

Nov. 18, 1991.

*MEMORANDUM OPINION AND ORDER*

ANN C. WILLIAMS, District Judge.

 *1 Plaintiffs Ristvedt-Johnson, Inc. ("Ristvedt") and
Cummins-Allison Corp. ("Cummins") originally
brought a suit against Brandt, Inc. ("Brandt"), a
corporation owned by Nelson Peltz ("Peltz") and
Peter W. May ("May"), for patent infringement.  *See
Ristvedt-Johnson, Inc. v. Brandt, Inc.,* No. 88 C 3834.
The plaintiffs now bring this action, claiming that the
defendants, based upon their status as directors and
sole shareholders of Brandt, induced Brandt to
infringe upon the plaintiffs' patent in violation of 35
U.S.C. § 271(b).  Pursuant to Federal Rule of Civil
Procedure 12(b)(6), the defendants now move to
dismiss the complaint for lack of personal jurisdiction
and a failure to state a claim for which relief can be
granted.  For the reasons stated below, the Court
grants the defendants' motion to dismiss.

*Background*
 Based upon the allegations in the plaintiffs'
complaint, Ristvedt owns U.S. Patent Nos.
4,098,280;  4,234,003;  4,444,212;  4,531,531;
4,549,561;  and 4,731,043.  These patents were
issued to Ristvedt for their coin handling machines
and coin sorters.  Ristvedt exclusively licenses the
rights to these patents to Cummins.  The plaintiffs
already have brought an action against Brandt for
infringing upon these patents. [FN1]  In the instant
case, the plaintiffs allege that Peltz and May induced

these infringements in violation of 35 U.S.C. §
271(b).

 The plaintiffs allege that Peltz and May own 100%
of Brandt's outstanding stock and are two of the three
directors of the corporation.  They further allege that
Peltz and May have been paid substantial
management fees by Brandt and that they "control the
business" by reviewing monthly business reports
summarizing monthly operations, pre-approving
capital expenditures greater than $25,000, and
occasionally meeting with Brandt's president to
discuss Brandt's budget, product development, sales
promotions, engineering projects, international
developments, and Brandt's patent infringement
litigation with Ristvedt.

 The plaintiffs also allege that Peltz and May have
not left Brandt with sufficient assets to satisfy the
damages sought by the plaintiffs in this suit.  Brandt
was sold in 1984 and, as noted above, Peltz and May
became its sole shareholders in 1988.  The plaintiffs
allege that since Peltz and May began controlling
Brandt, the corporation has incurred losses of $1.1
million in 1986, $4.3 million in 1987, $2.5 million in
1988, and $1.0 million in 1990.

 The plaintiffs claim that the defendants used their
positions and control as the owners and directors of
Brandt, to induce Brandt to infringe on Ristvedt's
patents.  The plaintiffs also assert that Peltz and May
induced Brandt to infringe upon their patents by
directing officers of Brandt to copy plaintiffs'
patented products.  The defendants now move to
dismiss this case, pursuant to Federal Rule of Civil
Procedure 12(b)(6), for lack of personal jurisdiction
and a failure to state a claim for which relief can be
granted.

*Discussion*
 A. *The Motion to Dismiss for Lack of Personal
Jurisdiction*

 *2 This court only has personal jurisdiction over an
out-of-state defendant if an Illinois court could assert
such jurisdiction.  *Young v. Colgate-Palmolive Co.,
790 F.2d 567, 569 (7th Cir.1986).*   In this case, the
plaintiffs claim that this court has personal
jurisdiction over the defendants under the Illinois
long-arm statute, 110 Ill.Rev.Stat. ¶  2-209(1982).
Defendants argue that this Court does not have

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1991 WL 255691 (N.D.Ill.)
**(Cite as: 1991 WL 255691 (N.D.Ill.))**

jurisdiction over them because they are protected by
the fiduciary shield doctrine, one of the limitations
placed upon the Illinois long-arm statute by the
Illinois Supreme Court.

The fiduciary shield doctrine prohibits personal
jurisdiction over an individual when that individual's
contact with the forum state is limited to acts
performed as a representative or fiduciary of a
corporation. *State Security Insurance Co. v. Frank B.
Hall & Co., Inc.,* 530 F.Supp. 94, 97 (N.D.Ill.1981);
*Olinski v. Duce,* 155 Ill.App.3d 441, 443-44, 508
N.E.2d 398, 400 (1st Dist.1987). This doctrine
protects the defendant from defending a suit brought
against him personally "in a forum in which his only
relevant contacts are acts performed not for his own
benefit but for the benefit of his employer." *Marine
Midland Bank, N.A. v. Miller,* 664 F.2d 899, 902 (2d
Cir.1981); *Torco Oil Co. v. Innovative Thermal
Corp.,* 730 F.Supp. 126, 133 (N.D.Ill.1989). The
court's inquiry into the applicability of the fiduciary
shield doctrine thus focuses on whether the
defendant's actions advanced personal, rather than
employer, interests. *Torco Oil Co.,* 730 F.Supp. at
134.

This determination cannot be made mechanically. It
is well established that the fiduciary shield exception
is an equitable principle intended to be applied with
discretion. *Id.; Washburn v. Becker,* 186 Ill.App.3d
629, 542 N.E.2d 764 (1989). While the applicability
of the doctrine must be considered on a case-by-case
basis, Illinois Courts have carved out several standard
exceptions to the doctrine. In this case, the plaintiffs
respond to the defendant's invocation of the fiduciary
shield doctrine, citing the most common exception to
the doctrine--that the corporation is merely the "alter-
ego" of the defendants.

At this early stage of the litigation, the plaintiffs only
need to establish a prima facie case of jurisdiction in
the case. *Ameritech Mobile Communications, Inc. v.
Cellular Communications Corp.,* 664 F.Supp. 1175,
1177 (N.D.Ill.1987). As long as the plaintiffs'
allegations are not "patently without merit," the
plaintiff's claim of jurisdiction will stand. *Torco Oil
Co.,* 730 F.Supp. at 136. Application of the alter ego
exception can only be refused "where no facts are
alleged supporting a finding that the corporation is a
sham ... or where the supporting evidence is so
manifestly insufficient that the alter ego argument is
not even minimally viable." *Id.*

In *Kula v. J.K. Schofield & Co., Inc.,* the court found
that the evidence presented by the plaintiff did not

meet the minimum standard of viability required to
establish personal jurisdiction. 668 F.Supp. 1126
(N.D.Ill.1987). In that case, the plaintiff alleged that
the corporation at issue was the alter ego of the
defendant because the defendant was the chairman of
the board, chief executive officer, and sole
shareholder of the corporation. *Id.* at 1129. The
court determined, however, that these allegations did
not suffice to defeat the defendant's assertion of the
fiduciary shield doctrine. The court noted that being
a member of management or holding a controlling
position in a corporation did not nullify the protection
of the equitable doctrine. *Id.* The court further noted
that corporate officers, directors, and shareholders,
were "separate and distinct" from the corporation. *Id.*
The *Kula* court therefore refused to pierce the
fiduciary shield based upon these allegations since
the plaintiff had not alleged any other facts in his
complaint suggesting that the corporation was merely
a shell. *Id.* at 1130.

**\*3** Like *Kula,* the plaintiffs in this case allege that
the fiduciary shield doctrine should be pierced
because the defendants are the sole shareholders of
Brandt, and they actively engage in the management
and control of Brandt. As established in *Kula,* the
defendants' sole ownership of Brandt stock and their
involvement in the management of Brandt do not,
without additional evidence, suffice to establish that
the corporation is actually the alter ego of the
defendants. The plaintiffs' claims that the defendants
prepared business reports and met periodically with
Brandt's president to discuss the business of Brandt
do not provide the requisite additional evidence to
support the plaintiffs' alter ego argument. These
actions can be considered managerial tasks which, as
alleged, do not suggest that the defendants were
acting in their personal interest rather than in the
interests of the corporation.

The plaintiffs claim that their allegation that Brandt
lacked sufficient assets also provides sufficient proof
that Brandt was merely the alter ego of Ristvedt and
Cummins. This Court recognizes that inadequate
capitalization can provide a basis for piercing the
fiduciary shield, *see Torco Oil Co.,* 730 F.Supp. at
138, however, this allegation, is not sufficient here.
Even assuming this claim is true, the plaintiffs do not
suggest that Brandt's alleged undercapitalization
came about by the design of the defendants in an
attempt to benefit themselves personally. Given this
omission and the lack of allegations showing that the
defendants performed their managerial tasks or used
their positions as sole shareholders of the corporation
to directly benefit their interests rather than Brandt's,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the Court finds that the plaintiffs have not met their burden of proving that this Court has personal jurisdiction over the defendants.

B. *The Motion to Dismiss for Failure to State a Claim*

The Court must also dismiss the case for a failure to state a claim for which relief could be granted. It is well settled that a complaint cannot be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957). Furthermore, the Federal Rules of Civil Procedure generally do not require the claimant to set out these facts in detail. *Id. at 47.* Rather, the plaintiff is only required to provide "a short and plain statement of the claim" that gives the defendant fair notice of that claim and the grounds upon which it rests. *Id.*

However, as the defendants suggest, the modern requirement of mere notice pleading does not affect the requirement that the plaintiff allege every essential element to show the violations of law claimed. As the Supreme Court stated in *United States v. Employing Plasterers Ass'n.,* it is when "a bona fide complaint is filed that charges *every element necessary to recover*" that summary dismissal for failure to state a claim cannot usually be justified. 347 U.S. 186, 189 (1953) (emphasis added).

**\*4** In § 271(b) actions, corporate officers who are found to have actively assisted in their corporation's infringement of a patent may be held personally liable for inducing infringement regardless of whether the circumstances require the court to disregard the corporate entity and consider the corporation the alter ego of the defendant corporate officers. *Manville Sales Corp. v. Paramount Systems, Inc.,* 917 F.2d 544, 553 (Fed.Cir.1990). The defendants properly assert that to establish a § 271(b) claim, the plaintiffs must establish "that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." *Id.* (emphasis in original); *see Water Technologies Corp. v. Calco, Ltd.,* 850 F.2d 660, 668 (Fed.Cir.1988); *Hewlett-Packard Co. v. Bausch & Lomb Inc.,* 909 F.2d 1464, 1468-69 (Fed.Cir.1990). To properly allege that the infringer knowingly induced infringement, the plaintiffs must demonstrate that the defendants possessed specific intent to encourage their corporation's supposed infringement and not merely that the defendants had knowledge of the acts alleged

to constitute inducement. *Manville Sales Corp.,* 917 F.2d at 553.

Even construing the allegations in the complaint liberally, as Federal Rule of Civil Procedure 12(b)(6) requires, this Court finds that the allegations in the plaintiffs' complaint are so deficient that they fail to demonstrate that the plaintiffs could have a valid § 271(b) claim. For example, the plaintiffs fail to allege any facts showing how the defendants induced Brandt to infringe upon Ristvedt's patents as required under *Manville.* Instead, the plaintiffs merely assert that the defendants induced Brandt to infringe upon Ristvedt's patents. Plaintiff's Complaint at ¶ ¶ 6, 8. This bald assertion, without the allegation of any facts supporting it, plainly does not meet the pleading requirements of the Federal Rules of Civil Procedure. Moreover, the plaintiffs' reliance upon their allegations that the defendants owned and controlled Brandt are also factually insufficient to demonstrate a valid claim under § 271(b). The plaintiffs fail to allege any way in which the defendants used their supposed ownership and control over Brandt to induce the corporation to infringe upon Ristvedt's patents.

The plaintiffs also do not properly allege the second *Manville* requirement that the defendants intended to induce Brandt to infringe upon Ristvedt's patents. As already noted, regardless of the brevity of the assertion, the plaintiffs are nevertheless required to allege each element of their claim. In this case, the plaintiffs have failed to explicitly allege that the defendants had the requisite intent to induce Brandt. Furthermore, even if intent could be inferred from other allegations in the plaintiffs' complaint, *see Cannon v. University of Chicago,* 648 F.2d 1104, 1110 (7th Cir.1981), the plaintiffs' other allegations, such as that the defendants induced Brandt or that they owned and controlled Brandt, do not suggest the requisite intent on the part of the defendants to induce Brandt to infringe on Ristvedt's patents.

**\*5** As required under Federal Rule of Civil Procedure 12(b)(6), this Court recognizes that we must not dismiss a case for failure to state a claim unless it appears beyond a doubt that the plaintiff cannot establish a valid claim for relief. *See Conley,* 355 U.S. at 45-46. In this case, the plaintiffs' allegations are so factually insufficient that they do not even suggest how or when the defendants induced Brandt or that the defendants intended to induce Brandt to infringe on the plaintiffs' patens as required to prove a § 271(b) violation. Because this Court does not have proper jurisdiction over the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 255691 (N.D.Ill.)
**(Cite as: 1991 WL 255691 (N.D.Ill.))**

defendants and the plaintiffs present a claim for
which no relief can be granted, the Court grants the
defendants' motion to dismiss.

*Conclusion*

For the reasons stated above, the Court grants the
defendants' motion to dismiss for lack of personal
jurisdiction and failure to state an actionable claim.

FN1. *Ristvedt-Johnson, Inc. v. Brandt, Inc.,*
No. 88-3834.

Not Reported in F.Supp., 1991 WL 255691
(N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

• 1:91CV03273 (Docket) (May. 28, 1991)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002          Page 1 of 7

Case 1:06-cv-00041-JJF     Document 57-10     Filed 03/08/2006     Page 1 of 7

**FOCUS™** Terms _____   Search Within  All Documents   ☐ **Go** →

View: **Full** | Custom                        ◁══ 1 of 1 ══▷          **FAST Print**   Print | [

More Like This | More Like Selected Text | *Sheperdize*® | TOA

ⓘ **Symbol Techs., Inc. v. Hand Held Prods.**, 2003 U.S. Dist. LEXIS 21002  (Copy w/ Ci

Service: **Get by LEXSEE®**
Citation: **2003 u.s. dist. LEXIS 21002**

*2003 U.S. Dist. LEXIS 21002, **

SYMBOL TECHNOLOGIES, INC., Plaintiff, v. HAND HELD PRODUCTS, INC. and HHP-NC, INC.,
Defendants.

Civil Action No. 03-102-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 21002

November 14, 2003, Decided

**DISPOSITION: [*1]** Motions decided. Claims dismissed. Allegations stricken.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent holder alleged that defendant competitor
infringed, induced others to infringe, and/or committed acts of contributory infringement
of, one or more claims of each of the patent holder's numerous patents. The patent holder
sought a declaratory judgment that the patents were noninfringed, invalid, and
unenforceable. The competitor brought numerous motions to dismiss.

**OVERVIEW:** The competitor was acquired by its parent company, which was a direct
competitor of the patent holder. Shortly thereafter, the parent company's in-house
counsel corresponded with the patent holder's in-house patent counsel indicating that
certain parent company patents might "present problems" to one of the patent holder's
product lines. Having concluded that the totality of circumstances sufficiently
demonstrated a reasonable apprehension of suit, nonetheless, the court held that the
patent holder did not establish a reasonable apprehension of suit with respect to each of
the named competitor patents. At most, the affidavit and accompanying documents filed
to support the complaint suggest that only those patents referenced in the correspondence
from the parent company were proper subjects of a declaratory judgment suit.
Consequently, the court dismissed those competitor patents which were not the subject of
the correspondence. With respect to the remaining patents, the court found that the
parent holder engaged in the manufacture and production of products sufficiently similar
to competitor's patents.

**OUTCOME:** The competitor's motions were granted in part and dismissed in part.

**CORE TERMS:** patent, motion to dismiss, unenforceability, infringement, subject matter
jurisdiction, apprehension, declaratory judgment, plead, particularity, definite, infringe,
affirmatively, collectively, invalidity, competitor, correspondence, declaratory, licensing,
infringed, motion to strike, valid license, oral argument, finite number, noninfringement,

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002    Page 2 of 7

Case 1:06-cv-00041-JJF    Document 57-10    Filed 03/08/2006    Page 2 of 7

jurisdictional, discovery, totality, license, refine, notice

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Patent Law > Ownership > Conveyances > Licenses

*HN1* It is established law that a licensee that exceeds the scope of its license may be held liable for patent infringement. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Interpretation

*HN2* It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. More Like This Headnote

Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Defects of Form

*HN3* A motion under Fed. R. Civ. P. 12(e) is to correct a pleading that is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading. More Like This Headnote | *Shepardize:* Restrict By Headnote

Civil Procedure > Remedies > Declaratory Relief
Patent Law > Remedies > Declaratory Relief

*HN4* Declaratory judgment pursuant to 28 U.S.C.S. § 2201 requires that there be (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. In reaching its conclusion, the court must apply a totality of the circumstances standard. More Like This Headnote

Civil Procedure > Justiciability > Case or Controversy

*HN5* Test for finding a "controversy" for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling. The question is whether the relationship between the parties can be considered a "controversy," and that inquiry does not turn on whether the parties have used particular "magic words" in communicating with one another. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. More Like This Headnote

Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements
Patent Law > U.S. Patent & Trademark Office Proceedings > Reissues > General Overview
Patent Law > Claims & Specifications > Description Requirement > General Overview

*HN6* Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R. Civ. P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office (PTO), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. More Like This Headnote | *Shepardize:* Restrict By Headnote

**COUNSEL:** For Symbol Technologies, Inc, PLAINTIFF: Arthur G Connolly, III, Connolly, Bove, Lodge & Hutz, Wilmington, DE USA.

For Hand Held Products Inc, HHP-NC Inc, DEFENDANTS: Donald F Parsons, Jr, Mary B Graham, Morris, Nichols, Arsht & Tunnell, Wilmington, DE USA.

**JUDGES:** [*2] Sue L. Robinson, United States District Judge.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002          Page 3 of 7

Case 1:06-cv-00041-JJF     Document 57-10     Filed 03/08/2006     Page 3 of 7

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM ORDER**

## I. INTRODUCTION

Currently before the court are the following motions by the defendants Hand Held Products, Inc. and HHP-NC, Inc. (collectively "HHP"): 1) motion to dismiss U.S. Patent No. 5,591,956 of Count II for lack of subject matter jurisdiction; 2) motion to dismiss U.S. Patent No. 5,130,520 of Count I from the action because HHP holds a valid license; 3) motion to dismiss plaintiff's infringement and **[*3]** noninfringement claims from Counts I and II pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to state a claim; 4) motion to dismiss Count II of the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction for failure to satisfy the jurisdictional requirements of 28 U.S.C. § 2201; 5) motion to dismiss plaintiff's invalidity and unenforceability claims from Count II pursuant to Fed. R. Civ. P. 8 and 12(b)(6) for failure to give notice of the bases for claims of invalidity and unenforceability; 6) motion to strike plaintiff's unenforceability allegations pursuant to Fed. R. Civ. P. 12(b)(6) for failure to plead fraud with particularity; and 7) motion for a more definite statement as to Counts I and II. (D.I. 10) For the reasons and to the extent stated below, the court grants in part and denies in part HHP's motions.

## II. BACKGROUND [*4]

Plaintiff Symbol Technologies, Inc. ("Symbol") and HHP are competitors in the hand-held optical scanner industry, each holding patents and manufacturing a variety of products. Symbol is the owner of U.S. Patent Nos. 5,029,183; 5,130,520; 5,157,687; 5,479,441; 5,521,366; 5,646,390; 5,702,059; 5,783,811; 5,818,028; 6,00,612; 6,019,286; and 6,105,871 (collectively, the "Symbol Patents"). HHP is the owner of U.S. Patent Nos. 5,286,960; 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,569,902; 5,591,956; 5,723,853; 5,723,868; 5,773,806; 5,773,810; 5,780,834; 5,784,102; 5,786,586; 5,793,967; 5,801,918; 5,825,006; 5,831,254; 5,837,985; 5,838,495; 5,900,613; 5,914,476; 5,929,418; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 5,965,863; 6,015,088; 6,060,722; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199, and D400,872 (collectively the "HHP Patents").

In September 1999, HHP was acquired by Welch Allyn, Inc. ("Welch Allyn"), a direct competitor of Symbol. Later that fall, Welch Allyn announced that it intended to acquire another competitor of Symbol's, PSC, Inc., with whom Symbol was engaged in patent litigation.

On March 13, 2000, Welch Allyn's in-house counsel sent an email to Symbol's **[*5]** in-house patent counsel indicating that certain Welch Allyn patents might "present problems" to Symbol's Golden Eye product line. (D.I. 19)

On June 6, 2000, Welch Allyn began negotiating with Symbol on behalf of Welch Allyn's newly acquired subsidiary, PSC, Inc. (Id.) Later that month, a meeting was held between Symbol and Welch Allyn to discuss the licensing of certain patents held by HHP relating to the Golden Eye product line. At that meeting, a list of twenty-three (23) patents was presented to Symbol which Welch Allyn viewed as relevant. (Id.)

On June 28, 2000, a second list was provided to Symbol by HHP in response to a request made at the earlier meeting. This second list contained only ten (10) patents, eight of which were previously listed on the first list, and two of which were new additions. The June 28 letter indicated that these patents should be the topic of further licensing discussions between the parties. (Id.)

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002

Page 4 of 7

Case 1:06-cv-00041-JJF    Document 57-10    Filed 03/08/2006    Page 4 of 7

On November 30, 2000, Symbol acquired Telxon, a Texas company that was at the time engaged in patent-related disputes with Welch Allyn. Previously that year, Welch Allyn had sent a list of patents to Telxon, identical to the first list sent to **[\*6]** Symbol, and suggested that Telxon's products might be infringing. Welch Allyn had also previously raised infringement issues with Metanetics, a Telxon subsidiary. (Id.)

Relations between Symbol and Welch Allyn deteriorated completely when Welch Allyn filed a lawsuit against Symbol in North Carolina regarding a certain contract that they shared to provide products to the United States Postal Service. (Id.)

On January 21, 2003, Symbol filed a two-count complaint alleging that HHP has infringed the Symbol Patents and seeking declaratory judgment that the HHP Patents are not infringed, invalid and/or unenforceable. (D.I. 1)

In Count I of the complaint, Symbol alleges that "HHP infringed and continues to infringe, has induced and continues to induce others to infringe, and/or has committed and continues to commit acts of contributory infringement of, one or more claims of each of the Symbol Patents." (D.I. 1 at 6) In Count II of the complaint, Symbol seeks a declaratory judgment that the HHP Patents are noninfringed, invalid, and unenforceable. (Id.)

### III. DISCUSSION

#### A. HHP's Motion to Dismiss U.S. Patent No. 5,591,956

HHP contends that the court is without subject-matter **[\*7]** jurisdiction as to U.S. Patent No. 5,591,956 ("'956 patent"). (D.I. 11) At oral arguments before the court on October 28, 2003, HHP's counsel affirmatively stated that the '956 patent is dedicated to the public; therefore, this patent will be dismissed from the complaint.

#### B. HHP's Motion to Dismiss U.S. Patent No. 5,130,520

HHP contends that U.S. Patent No. 5,130,520 ("'520 patent") should be dismissed because it is the subject of a valid license from Symbol. Symbol contends that there is a license for the '520 patent, but that it pertains to a narrow field of use. *HNT* It is established law that a licensee that exceeds the scope of its license may be held liable for infringement. See General Talking Pictures Co., 304 U.S. 175, 82 L. Ed. 1273, 58 S. Ct. 849, 1938 Dec. Comm'r Pat. 831 (1938); Eli Lilly & Co. v. Genetech, Inc., 1990 U.S. Dist. LEXIS 18619, 17 U.S.P.Q.2d 1531, 1534 (S.D. Ind. 1990). Consequently, HHP's motion to dismiss the '520 patent will be denied.

#### C. HHP's Motion to Dismiss Infringement and Noninfringement Claims from Count I and II for Failure to State a Claim, Motion to Dismiss Symbol's Claims of Invalidity and Unenforceability, and Motion for a More **[\*8]** Definite Statement

HHP contends that Symbol's complaint is facially defective under Fed. R. Civ. P. 8(a), as it fails to provide sufficient notice of which of HHP's products infringe claims under the Symbol Patents and which of Symbol's products may infringe HHP Patents. (D.I. 11 at 16) HHP, however, has failed to cite any precedent binding upon this court that requires a complaint to identify the basis of an infringement claim with such particularity. n1 *HN2* It is established law that liberal pleading requirements are designed to put the parties on notice generally as to the nature of the cause of action. Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); Weston v. Pennsylvania, 251 F.3d 420, 429 (3d Cir. 2001). Particularly in complex litigation, it is through the discovery process that the parties refine and focus their claims. At this stage in the litigation, the court declines to dismiss Symbol's claims until adequate discovery has been completed.

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002          Page 5 of 7

Case 1:06-cv-00041-JJF    Document 57-10    Filed 03/08/2006    Page 5 of 7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The court notes that HHP attempts to bootstrap Fed. R. Civ. P. 11 requirements into Rule 8, without actually alleging that Symbol's complaint is frivolous. (D.I. 11 at 9-10) In the absence of an actual motion by HHP to the contrary, the court will assume that Symbol's counsel has complied with their ethical obligations under Fed. R. Civ. P. 11.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*9]**

In the alternative, HHP moves the court to require Symbol to provide a more definite statement pursuant to Fed. R. Civ. P. 12(e). *HN3* A motion under Rule 12(e) is to correct a pleading that is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." The purpose, however, of Rule 12(e) is not to make it easier for the moving party to prepare its case. Fed. R. Civ. P. 12 advisory committee's note. In this case, the crux of HHP's motion is that Symbol's complaint is simply too large. There are, however, a finite number of claims and a finite number of infringing products. Consequently, the court finds that traditional mechanisms of discovery are the proper tools to refine the scope of this litigation. HHP's motions in this regard will be denied.

### D. HHP's Motions to Dismiss Count II for Lack of Subject Matter Jurisdiction

HHP contends that the court is without subject matter jurisdiction as to the HHP Patents, as there is not an actual controversy within the meaning of § 2201. (Id.) See Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1383 (Fed. Cir. 1998). **[*10]**

*HN4* Declaratory judgment pursuant to 28 U.S.C. § 2201 requires that there be "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993). In reaching its conclusion, the court must apply a totality of the circumstances standard. See C.R.Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983).

The recent contentious and litigious history between the parties weighs in favor of a finding that Symbol has a reasonable apprehension of suit. In EMC Corp. v. Norand Corp., 89 F.3d 807 (Fed. Cir. 1996), the Federal Circuit stated that the *HN5* "test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." Id. at 811. The Court of Appeals continued **[*11]** and emphasized that "the question is whether the relationship between the parties can be considered a 'controversy,' and that inquiry does not turn on whether the parties have used particular 'magic words' in communicating with one another." Id. at 812. Therefore, the absence of an explicit threat of suit, while a factor, is not dispositive. See BP Chemicals Ltd. v. Union Carbide Corp., 4 F.3d 975, 979 (Fed. Cir. 1993) ("Declaratory judgment jurisdiction does not require direct threats.").

Further, it is relevant under Federal Circuit precedent that at oral argument HHP did not affirmatively state that it would not bring suit. In C.R. Bard Inc., the Court of Appeals held that a plaintiff had a reasonable apprehension of suit when the defendant in a declaratory judgment declined to affirmatively state at oral argument that he would not bring a suit for infringement against the plaintiff. n2 716 F.2d at 881.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002          Page 6 of 7

Case 1:06-cv-00041-JJF     Document 57-10     Filed 03/08/2006     Page 6 of 7

n2 The court is not entirely comfortable with the notion that a plaintiff might bring a declaratory judgment against a defendant for the purpose of forcing an admission of the defendant's intent to enforce its patent rights. The court is also uncomfortable with the notion that a defendant might plead that the plaintiff has no reasonable apprehension of suit, and then file in another forum once the declaratory judgment has been dismissed for want of subject matter jurisdiction. Nonetheless, the Federal Circuit in C.R. Bard made it clear that the failure to deny an intent to sue for infringement is a factor to be considered.

 - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*12]**

Having concluded that the totality of circumstances sufficiently demonstrates a reasonable apprehension of suit, nonetheless, Symbol has not established a reasonable apprehension of suit with respect to each of the named HHP Patents. At most, the affidavit and accompanying documents filed to support the complaint suggest that only those patents referenced in the June 28, 2000 correspondence from Welch Allyn are proper subjects of a declaratory judgment suit. n3 Consequently, the court will dismiss without prejudice those HHP Patents which were not the subject of the June 28, 2000 correspondence.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Those patents are: U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,780,834; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

With respect to the remaining HHP Patents, the court finds that Symbol satisfies the "present activity" requirement of § 2201. It is sufficient that Symbol engages in the manufacture and production of products sufficiently similar to HHP's patents. See Millipore Corp. v. University Patents, Inc., 682 F. Supp. 227, 232 (D. Del. 1987). **[\*13]** Moreover, the fact that HHP's own correspondence to Symbol suggests that licensing of its patents may be needed is sufficient for the court to conclude that there is "present activity" as required under § 2201.

### E. HHP's Motion to Strike Symbol's Allegations of Unenforceability for Failure to Plead with Particularity

The court will dismiss Symbol's claims for unenforceability without prejudice. _HN6_ Fraud is a clear exception to the otherwise broad notice-pleading standards under Fed. R. Civ. P. 9. A claim of patent unenforceability is premised upon inequitable conduct before the Patent & Trademark Office ("PTO"), which is a claim sounding in fraud. A plaintiff alleging unenforceability, therefore, must plead with particularity those facts which support the claim the patent holder acted fraudulently before the PTO. As Symbol has failed to adequately plead its bases for unenforceability of the remaining HHP Patents, that portion of Count II will be dismissed without prejudice.

### IV. CONCLUSION

At Wilmington this 14th day of November, 2003, having held oral argument and reviewed HHP's motion to dismiss pursuant to Fed. R. Civ. P. 8(a) , 9 **[\*14]** , 12(b)(1), 12(b)(6) and 12(f), or in the alternative for a more definite statement pursuant to Rule 12(e) (D.I. 10), and Symbol's response thereto;

Get a Document - by Citation - 2003 U.S. Dist. LEXIS 21002　　　　Page 7 of 7

Case 1:06-cv-00041-JJF　　Document 57-10　　Filed 03/08/2006　　Page 7 of 7

IT IS ORDERED that:

1. HHP's motion to dismiss Count II of Symbol's complaint with respect to U.S. Patent No. 5,591,956 is **granted.** (D.I. 10-1)

2. HHP's motion to dismiss U.S. Patent No. 5,130,520 of Count I is **denied.** (D.I. 10-2)

3. HHP's motion to dismiss infringement and noninfringement claims from Counts I and II of the complaint pursuant to Fed. R. Civ. P. 8 and 12(b)(6) is **denied.** (D.I. 10-3)

4. HHP's motion to dismiss Count II of the complaint pursuant to Fed. R. Civ P. 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction is **granted** with respect to U.S. Patent Nos. 5,291,008; 5,391,182; 5,420,409; 5,463,214; 5,697,902; 5,723,853; 5,773,806; 5,773,810; 5,786,586; 5,793,967; 5,801,918; **[*15]** 5,837,985; 5,838,495; 5,914,476; 5,932,862; 5,942,741; 5,949,052; 5,949,054; 6,015,088; 6,161,760; 6,298,176; 6,491,223; D392,282; D400,199; and D400,872, and is **denied** with respect to U.S. Patent Nos. 5,286,960; 5,900,613; 5,723,868; 5,784,102; 5,825,006; 5,831,254; 6,060,722; 5,929,418; and 5,965,863. (D.I. 10-4)

5. HHP's motion pursuant to Fed. R. Civ. P. 8 and 12(b)(6) to dismiss Symbol's invalidity and unenforceability claims from Count II is **denied.** (D.I. 10-5)

6. HHP's motion to strike Symbol's allegations of unenforceability pursuant to Fed. R. Civ. P. 12(b)(6) or 12(f) is **granted.** (D.I. 10-6)

7. HHP's motion for a more definite statement is **denied.** (D.I. 10-7)

Sue L. Robinson

United States **[*16]** District Judge

---

View: **Full** | Custom　　　　　　◁◁ 1 of 1 ▷▷　　FAST Print　　Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | Shepardize® | TOA

Ⓘ **Symbol Techs., Inc. v. Hand Held Prods., 2003 U.S. Dist. LEXIS 21002** (Copy w/ Cite)　　　　　　Pages:　**9**

Service: **Get by LEXSEE®**
Citation: **2003 u.s. dist. LEXIS 21002**
View: Full
Date/Time: Wednesday, March 8, 2006 - 12:40 PM EST

\* Signal Legend:
🔴 - Warning: Negative treatment is indicated
🟧Q - Questioned: Validity questioned by citing refs
🔺 - Caution: Possible negative treatment
➕ - Positive treatment is indicated
🅐 - Citing Refs. With Analysis Available
Ⓘ - Citation information available
\* Click on any Shepard's signal to Shepardize® that case.

 LexisNexis®　　About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.



Not Reported in F.Supp.                                                                 Page 1
Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878
**(Cite as: 1994 WL 382444 (D.Nev.))**

United States District Court, D. Nevada.
Steven P. SHEARING, Plaintiff,

v.

OPTICAL RADIATION CORPORATION,
Defendant.
Steven P. SHEARING, Plaintiff,

v.

STORZ OPHTHALMICS COMPANY, INC., Storz
Instrument Company, Defendants.
Steven P. SHEARING, Plaintiff,

v.

IOPTEX RESEARCH, INC., Defendant.
Steven P. SHEARING, Plaintiff,

v.

SURGIDEV CORPORATION, Defendant.
Steven P. SHEARING, Plaintiff,

v.

ALCON SURGICAL, INC., Defendant.
Steven P. SHEARING, Plaintiff,

v.

KABI PHARMACIA OPHTHALMICS, INC.,
Defendant.
Steven P. SHEARING, Plaintiff,

v.

DGR, INC., Isotechnics, Inc., Defendants.
Steven P. SHEARING, Plaintiff,

v.

ALLERGAN, INC., Defendant.
Steven P. SHEARING, Plaintiff,

v.

STARR SURGICAL COMPANY, Defendant.
Steven P. SHEARING, Plaintiff,

v.

INTRAOPTICS, INC., Chiron Corporation and
Chiron Intraoptics, Inc., Defendants.
Steven P. SHEARING, Plaintiff,

v.

EYE TECHNOLOGY, INC., Defendant.
Steven P. SHEARING, Plaintiff,

v.

The COOPER COMPANIES, INC., Defendant.
**Nos. CV-S-93-850-DWH(LRL), CV-S-93-859-
DWH(LRL) to CV-S-93-863-DWH(LRL), CV-S-
93-865-DWH(LRL) to CV-5-93-870-DWH(LRL).**

March 25, 1994.

ORDER

HAGEN, District Judge.

**\*1** The motions to dismiss of defendants Optical Radiation Corp., Storz Ophthalmic Co., Inc, Ioptex Research, Inc., Surgidev Corp., Alcon Surgical, Inc., Kabi Pharmicia Ophthalmics, DGR. Inc, Isotechbics, Inc., Allergan, Inc., Starr Surgical Company, Intraoptics, Inc., Chiron Corp., Chiron Intraoptics, Eye Technology Inc. and The Cooper Companies., Inc. were argued on March 24, 1994.

Because the charging allegations of each complaint attacked by each motion to dismiss are identical (save for number) to those of any other, all defendants joined in and relied upon the oral arguments presented by Storz Ophalmic Co., Inc., Allergan, Inc. and Alcon Surgical, Inc.  The common charging allegations read as follows:

"Defendant has infringed and is now infringing Shearing Patent No. 4,159,546 within the United States including Nevada by:
(a) directing or jointly participating in implantation of Defendant's intraocular lenses according to a method covered by one or more claims of the Shearing patent;
(b) actively inducing others to infringe the Shearing patent by implanting Defendant's lenses; and
(c) making and selling Defendant's intraocular lenses for use in practicing a method covered by one or more claims of the Shearing patent, knowing the lenses are especially made for use in infringing the Shearing patent."
(This, apart from number, is the text of either paragraph 6 or 7, as the case may be, of each complaint.)

Defendants say these allegations neither supply the short and plain statement of a claim showing that the pleader is entitled to relief (see Fed.R.Civ.P. 8(a)(2)), nor aver the requisite knowledge and intent of the tortfeasor (see Fed.R.Civ.P. 8(b)) nor state a claim upon which relief can be granted (see Fed.R.Civ.P. 12(b)(6)) nor provide to defendants notice of any factual basis for the infringement allegations sufficient to enable them to answer.

The tort of infringement, argue defendants, consists of violating all or combined portions of 35 U.S.C. § 271(a)-(c).

A violation of § 271(a), for example, is direct

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878
**(Cite as: 1994 WL 382444 (D.Nev.))**

infringement requiring, in this case, unauthorized use of Dr. Searing's patented method of implanting an intraocular lens in the posterior chamber of a patient's eye in cataract surgery. Defendants, corporations all, complain that they are not told by the charging allegations what they have done to participate in the tortious implantation nor how they did it or could have done it. Their business, they argue, is the manufacture and sale of a product (intraocular lenses) which can, but need not be, implanted by use of Dr. Searing's method. And, they point to *Joy Technologies, Inc. v. Flakt, Inc.,* 6 F.3d 770, 773 (Fed.Cir.1993) for the unequivocal statement "that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)." Hence, none of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(a).

**\*2** Under § 271(b) one who actively induces infringement of a patent is liable as an infringer. In order for that liability to arise, however, there must have been direct infringement by someone other than the inducer. H.F. Schwartz, Patent Law and Practice (Federal Judicial Center 1988); *Met-Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986). Nowhere in the complaint is this alleged. Moreover, for this liability to arise it must be shown that the inducer knowingly and with specific intent encouraged that other's infringement. *Manville Sales Corp. v. Paramount Sys.* 917 F.2d 544, 553 (Fed.Cir.1990). While intent and knowledge need only be averred generally, such must be averred. *See DiLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir.), *cert. denied,* 498 U.S. 941 (1990). ("[T]he complaint still must afford a basis for believing that plaintiffs could prove scienter."). None of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(b).

Just as with active inducement, liability for contributory infringement under § 271(c) cannot arise unless there is direct infringement. *Dana Corp. v. American Precision Co.,* 827 F.2d 755 (Fed.Cir.1987). None of the complaints allege this. And they also omit the final requirement of § 271(c), that of alleging the item sold is not suitable for substantial noninfringing use. *Id.* None of the complaints state a claim upon which relief can be granted under 35 U.S.C. § 271(c).

Shearing urges that his complaint tracks Form 16, Appendix of Forms (to Fed.R.Civ.P.), and by dint of Rule 84 is sufficient. But the example given by Form 16 (a § 271(a) infringement) was not followed by Shearing in at least two important details: neither the patented invention nor the (infringing) person making selling or using it is identified. Form 16, ¶ 3. And in any case, Form 16 does not contain the necessary allegations for § 271(b) and (c) liability.

Pointing to *Conley v. Gibson,* 355 U.S. 41, 47, (1957), Shearing also urges that his complaint need not set out in detail the facts upon which he bases his claim. But a closer reading of *Conley* tells one that Fed.R.Civ.P. 8(a)(2) requires the complaint to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.*

IT IS HEREBY ORDERED that all of these complaints are DISMISSED, without prejudice, for failure to state a claim upon which relief can be granted.

Not Reported in F.Supp., 1994 WL 382444 (D.Nev.), 30 U.S.P.Q.2d 1878

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.